1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      David A. Perlson (Bar No. 209502)
3     davidperlson@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
4     melissabaily@quinnemanuel.com
      John Neukom (Bar No. 275887)
5     johnneukom@quinnemanuel.com
      Jordan Jaffe (Bar No. 254886)
6     jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California 94111-4788
    Telephone:    (415) 875-6600
8   Facsimile:    (415) 875-6700

9   Attorneys for WAYMO LLC

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13  WAYMO LLC,                          CASE NO. 3:17-cv-00939

14              Plaintiff,              **PLAINTIFF WAYMO'S OFFER OF
                                        PROOF REGARDING DEFENDANTS'**
15         vs.                          **DISCOVERY MISCONDUCT**

16  UBER TECHNOLOGIES, INC.;
    OTTOMOTTO LLC; OTTO TRUCKING         Trial Date:  February 5, 2018
17  LLC,

18              Defendants.             **REDACTED VERSION OF DOCUMENT
                                        SOUGHT TO BE SEALED**

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

OFFER OF PROOF .....................................................................................................................2

I.    Uber's Failure To Produce The Jacobs Documents Concealed Material Evidence. ..................................................................................................................2

    A.    Defendants Improperly Withheld The Jacobs Documents. ...........................3

        1.    The Special Master Has Determined That The Jacobs Letter Was Responsive To Waymo's RFPs And Uber Should Have Produced It. .........................................................................3

        2.    Further Discovery Confirms That Uber Should Have Produced The Jacobs Documents. ......................................4

        3.    Uber's Attempt To Downplay Its Failure To Produce Are Meritless. ...........................................................................6

    B.    Defendants Thwarted Waymo's Investigation Into The Jacobs Documents Through Further Discovery Misconduct. ...................................7

    C.    Discovery Has Corroborated Key Allegations In The Jacobs Letter Material To Waymo's Claims. ...................................................................12

        1.    Uber Used Its ThreatOps Division To Systematically Collect Intelligence On Waymo And Other Competitors. ...........................12

        2.    Uber Used Non-Attributable Devices To Avoid Discovery Into Its Activities. .................................................................17

        3.    Uber Used Ephemeral Communication Platforms To Avoid Discovery Into Its Activities. ...........................................20

        4.    Uber Used Contrived Attorney-Client Privilege Designations To Avoid Discovery Into Its Activities. ...........................................22

        5.    Uber's Consideration Of Aggressive And Controversial Data-Retention Policies Raises Further Concerns Regarding Spoliation Of Evidence. ..................................................24

    D.    Uber Paid Off Jacobs In An Effort To Conceal His Allegations. ...............26

II.    Defendants' Discovery Misconduct With Regards To The Jacobs Documents Is Consistent With Their Prior Conduct in This Case. ..........................26

    A.    Defendants Have Committed Severe Spoliation Of Evidence. ...................27

        1.    Defendants Have Used Ephemeral Messaging Services Throughout Their Organization To Avoid Discovery In Potential Litigation. ...................................................................27

2.  Uber's Senior Management Instructed Anthony Levandowski To Destroy Five Hard Drives Of Waymo Information That He Had Improperly Retained. ..............28

3.  Defendants Systematically Destroyed Evidence Regarding Ottomotto's Formation And Early Development ..........................29

4.  Defendants Withheld Information And Discovery Regarding Levandowski's Two Non-Uber Laptops "Used for Uber Work." ..................................................................................30

5.  Defendants Structured the Tyto "Acquisition" to Destroy All Tyto Email Archives ........................................................32

B.  Defendants Have Made A Habit Of Violating The Court's Orders ............34

1.  Defendants Violated The Expedited Discovery Order And Paragraphs 2 and 4 Of The Provisional Relief Order......................34

2.  Defendants Violated Paragraph 5 Of The Provisional Relief Order..................................................................................35

C.  Defendants Have Repeatedly Failed To Adequately Search For And Produce Documents In This Case. ...............................................36

1.  Defendants Neglected To Produce Anthony Levandowski Documents From Ottomotto, Necessitating The First Trial Continuance.........................................................................36

2.  Defendants Waited Until The Eve Of The December Trial Date To Produce Shred Works Receipts Relating To Levandowski's Destruction Of The Five Drives.............................38

D.  Defendants Have Abused The Attorney-Client Privilege Throughout This Litigation. ....................................................................39

1.  Defendants Cloaked the Stroz Due Diligence Process in "Work Product" Claims Only to Selectively Waive When Convenient ...........................................................................40

2.  Defendants Misused "Attorney-Client Privilege" Designations to Avoid Discovery ..........................................42

3.  Defendants Have Used the Attorney-Client Privilege As Both a Sword and a Shield .....................................................42

4.  Defendants Have Used the Fifth Amendment and Common Interest Privileges as Both a Sword and a Shield..........................43

E.  Defendants Have Obstructed Discovery into Tyto ......................................44

Pursuant to the Court's orders (Dkt. 2331, 2447) and guidance at recent hearings (Dkt. 2310 [11/29/17 Hr'g Tr.] at 161:19-163:1; Dkt. 2342 [12/4/17 Hr'g Tr.] at 36:15-39:11, 45:14-23), Plaintiff Waymo LLC ("Waymo") submits this offer of proof regarding its discovery efforts since the Court's most recent continuance and how the discovered evidence relates to Defendants' overall discovery misconduct.

## INTRODUCTION

Defendants have engaged in a "constellation" of misconduct throughout this case. (Dkt. 2310 [11/29/17 Hr'g Tr.] at 162:24-163:1.) Even before the previously withheld Jacobs allegations came to light, the evidence showed that Defendants concealed evidence of their trade secret misappropriation through extensive spoliation of evidence. After Waymo filed this case, Defendants obstructed discovery at every turn, by concealing sources of relevant evidence and repeatedly violating the Court's orders. Defendants also frustrated Waymo's investigation through overbroad assertions of the attorney-client privilege, including over the Stroz Friedberg due diligence report which shows that Uber has known all along that Anthony Levandowski had stolen Waymo's confidential information.

The recently uncovered allegations of former Uber employee Ric Jacobs simply reinforce the pattern of Defendants' misconduct. The Jacobs allegations were only brought to the Court's attention by the U.S. Attorney on the eve of trial, and the Special Master has already determined that the Jacobs Letter was wrongfully withheld by Uber in this case. Additional discovery has shown that key allegations in the Jacobs Letter are both true and material. At the behest of their senior-most executives, Defendants engaged in a vast "competitive intelligence" gathering operation that relied upon "non-attributable" devices, the improper use of messaging applications to evade discovery, abuse of attorney-client privilege, and spoliation of evidence. In the autonomous vehicle field, this competitive intelligence operation targeted Waymo as its "top priority," was directed by Uber ATG managers (and Ottomotto co-founders) Anthony Levandowski and Lior Ron, and coincided in time with Uber's decision to "pivot" to development of the Fuji LiDAR device that is based on the information Levandowski stole. This previously undisclosed evidence both supports Waymo's substantive claims and highlights the extremes to which Defendants have gone to cover

1   up evidence of wrongdoing.

2       Taken together, all of Defendants' misconduct requires severe sanctions and a strongly

3   worded instruction permitting the jury to take full account of Defendants' behavior.[1]   These

4   measures are necessary not only to deter such tactics in the future, but also to cure the prejudice to

5   Waymo resulting from Defendants' efforts to evade discovery and destruction of relevant evidence.

6                                   **OFFER OF PROOF**

7   **I.      Uber's Failure To Produce The Jacobs Documents Concealed Material Evidence.**

8       On April 14, 2017, while Waymo's motion for preliminary injunction was pending, former

9   Uber employee Ric Jacobs sent a resignation email ("Jacobs Email") to Uber executives, including

10  then-CEO Travis Kalanick and General Counsel Salle Yoo, alleging ████████████████

11  ████████████  (Ex. 1.)[2]  On May 5, 2017, as discovery in this action was just beginning,

12  Jacobs' attorney sent Uber Head of Litigation Angela Padilla a 37-page settlement demand letter

13  ("Jacobs Letter" and, together with the Jacobs Email, "Jacobs Documents"), which alleges various

14  unlawful activities, including a corporate practice of systematically destroying evidence and efforts

15  to steal trade secrets from Waymo and others.  (Ex. 2 at 12-13 ("Jacobs is aware that Uber used the

16  MA team to steal trade secrets at least from Waymo in the U.S. . . .").)

17      Despite being widely circulated amongst senior management and members of Uber's Board

18  of Directors (Dkt. 2310 [11/29/2017 Hr'g Tr.] at 15:16-24, 20:7-13, 21:8-15, 25:2-6), Uber

19  intentionally withheld the Jacobs Documents, as well as details of its subsequent investigation into

20  the Jacobs Documents, throughout the months of ordinary discovery in this case.  The Jacobs

21  Documents only came to light on the eve of the December 4 trial when, on November 22, the U.S.

22  Attorney's office informed this Court of the existence of the Jacobs Letter.  (Dkt. 2260-1.)  Because

23  the Jacobs Letter undermined Uber's oft-repeated claim that "no Waymo confidential information

24  had ever reached Uber's servers," the Court continued the December 4 trial date—the second trial

25  continuance in as many months—and reopened discovery so that Waymo could "get to the bottom"

26  _____

27      [1]  With this Offer of Proof, Waymo is filing a precis requesting the Court's authorization to file
    a Motion for Relief based on the entirety of Defendants misconduct.

28      [2]  Citations to "Ex. __" refer to the corresponding Declaration of Jeff Nardinelli.

1   of the newly discovered evidence.  (Dkt. 2315.)

2          Discovery into the Jacobs allegations is now complete and the results are troubling, to say

3   the least.  First, as the Special Master has now confirmed—and, as Defendants do not seriously

4   contest—Defendants wrongfully withheld the Jacobs Letter and evidence of its allegations

5   throughout the course of normal discovery, resulting in yet another trial continuance.  Second,

6   Defendants have compounded the prejudice to Waymo by persisting in their obstructionist behavior

7   even during this reopened discovery period, including by abusing the attorney-client privilege,

8   failing to provide complete answers to interrogatories, and thwarting Waymo's ability to conduct

9   complete depositions.  While Waymo has worked diligently to prioritize Defendants' continuing

10  discovery failures and bring them to the Magistrate Judge, the compressed discovery schedule has

11  allowed Defendants to "run out the clock," and once again provide less than full and complete

12  discovery.  Third, discovery over the past month has confirmed the truth and materiality of key

13  allegations in the Jacobs' Letter, revealing a covert operation to gather competitive intelligence on

14  competitors in the autonomous vehicle space, including Waymo, while leaving minimal traces of

15  such behavior for discovery in potential litigation.  Although evidence has undoubtedly been

16  destroyed, and Defendants' witnesses have sought to minimize damaging documents in self-serving

17  testimony, the evidence that remains demonstrates that Uber used its "ThreatOps" division to pursue

18  confidential Waymo information at a time and in a manner that dovetails with Waymo's claims of

19  trade secret misappropriation.

20          **A.      Defendants Improperly Withheld The Jacobs Documents.**

21                  **1.      The Special Master Has Determined That The Jacobs Letter Was
                              Responsive To Waymo's RFPs And Uber Should Have Produced It.**

22

23          As an initial matter, the continuance of the December 4 trial and the entire supplemental

24  discovery process was a result of Defendants and their outside counsel improperly withholding the

25  Jacobs Letter.  During the parties' December 4 hearing, the Court specifically noted that Uber's

26  level of "culpability" in not producing the Jacobs Documents was a key issue for discovery because

27  it "helps inform me as to how much the jury should learn about all this." (Dkt. 2342 [12/4/17 Hearing

28  Tr.] at 39:16-20.)  To help determine Uber's level of culpability, the Court assigned the Special

-3-

1   Master to determine "under the way in which this case was conducted on both sides and through the

2   document requests, whether or not the email and/or 37-page and/or settlement agreement were

3   required to be produced by Uber." (*Id.* at 32:1-18; *see also* Dkt. 2334.)

4        The parties briefed Uber's nonproduction of the Jacobs Documents (Dkt. 2367-3 (Waymo);

5   Dkt. 2352-3 (Uber)), and the Special Master heard oral argument on December 12.  On December

6   15, the Special Master issued a written report, finding that the Jacobs Letter was responsive to

7   Waymo's Request for Production Nos. 29 and 73.  (Dkt. 2396 at 18-19.)  While the Special Master

8   found that the Jacobs Email was not responsive to discovery requests (*id.*), production of the Jacobs

9   Letter would certainly have led to discovery of the Email as well as all the other previously

10  unproduced evidence outlined in this Offer of Proof.  Defendants were given until December 22 to

11  object to the Special Master's report but, as the Court recognized, Defendants' "response" on

12  December 22 (Dkt. 2435) only "superficially disagreed with the special master's conclusion" but

13  did not object to it.  (Dkt. 2444).

14       The Special Master's conclusion that Uber improperly withheld evidence was undeniably

15  correct.  As the Special Master found, the Jacobs Documents were known to Uber's then-CEO

16  Travis Kalanick, general counsel Salle Yoo, and head of litigation Angela Padilla.  (Dkt. 2396 at 6-

17  8.)  Padilla admitted that she understood and appreciated the relevance of the Jacobs Letter to the

18  Waymo litigation.  (Dkt. 2310 [11/29/2017 Hr'g Tr.] at 17:2-14, 18:7-10.)  Regardless of whether

19  these documents happened to trigger the parties' search terms for email and custodial documents,

20  Uber's attorneys were obligated to ensure that known, relevant material was produced in this

21  litigation.  (Dkt. 2396 at 17 (noting that while search terms may be appropriate where a party "faces

22  the prospect of having to look for lots of needles in lots of haystacks," "[t]his needle was in Uber's

23  hands the whole time.").)

24       **2.    Further Discovery Confirms That Uber Should Have Produced The Jacobs Documents.**

25       Apart from the Special Master's report, further evidence has come to light demonstrating

26  that the Jacobs Documents were improperly withheld.  At the evidentiary hearing, Padilla claimed

27  that after handing the Jacobs Letter off to Uber's compliance department, she understood that the

28

-4-

issue was "no longer my work" and that she "should not discuss the letter with anyone inside or outside of the company for fear of jeopardizing the internal investigation." (Dkt. 2310 [11/29/17 Hr'g Tr.] at 16:4-10.)  But, contrary to Padilla's testimony that she merely reviewed the Jacobs Letter "in brief" (Dkt. 2310 [11/29/2017 Hr'g Tr.] at 15:16-24), and as explained below, the evidence shows that Padilla remained closely involved with the issues surrounding the Letter while discovery in this case was ongoing.

Specifically, discovery has shown Uber's General Counsel at the time, Salle Yoo, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A [12/14/2017 Yoo Dep. Tr. Vol. 2] at 253:25-254:5; Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 130:20-131:1.)  In this role, Padilla communicated directly with Jacobs' personal attorney who made ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Ex. 3 at UBER00332645 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮".)  Padilla also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ (Ex. 5), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 6 UBER00332473-77), and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 7).  A Court-ordered log of Padilla's withheld communications that discuss "the Jacobs letters, any investigations being done as a result of Jacobs' accusations, and the settlement with Jacobs" (Dkt. 2415 at 2), yielded ▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 8) and, as detailed below, just yesterday Defendants belatedly supplemented their Padilla log to add ▮▮ new entries, bringing the log total to ▮▮▮ entires.  (Ex. 104.)  All of this evidence demonstrates that the Jacobs Documents were, in fact, very much part of Padilla's "work" throughout this litigation, contrary to her November 29 testimony before the Court.

At the November 29 hearing, Padilla also sought to excuse her failure to share the Jacobs Letter with counsel handling the Waymo case day-to-day in part because she had been instructed to "not discuss the letter with anyone inside or outside of the company for fear of jeopardizing the internal investigation."  (Dkt. 2310 [11/29/17 Hr'g Tr.] at 16:4-10.)  Not only does the broad distribution of the Jacobs Letter undermine this claim, but Padilla did not even otherwise follow this

1    supposed directive herself.  For example, Padilla admitted at her deposition ████████████

2    ████████████████████████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████.  (Ex. B

4    [12/22/2017 Padilla Dep. Tr. Vol. 2] at 163:22-169:24; Ex. 4.)  In sum, Padilla's supposed excuse

5    of having limited involvement in the Jacobs investigation does not hold water.

6           Moreover, the facts regarding Uber's outside counsel's knowledge of the Jacobs documents

7    and allegations has evolved since they were revealed.  Uber counsel Arturo González represented

8    to the Court on November 28 that "nobody on this defense team knew about that letter before we

9    got your order and . . . the letter from the U.S. Attorney" (Dkt. 2309 [11/28/2017 Hr'g Tr.] at 150:8-

10   11).  Six days later, in the December 4 hearing, Mr. González clarified that he and Eric Tate, both

11   counsel of record in this case, received the Jacobs Email.  He further stated that two other Morrison

12   & Foerster ("MoFo") partners received the Jacobs Letter.  (Dkt. 2342 [12/4/2017 Hr'g Tr.] at 46:1-

13   50:1.)  But, subsequent discovery has shown that even Mr. González's clarification was wrong, and

14   that ████████ and ██████████, additional MoFo attorneys of record in this case, were involved

15   in communications regarding the Jacobs Email.

16          During reopened discovery, a December 12 log of communications between Uber and MoFo

17   regarding the Jacobs Documents (which was intended to obviate the need for Waymo to depose

18   outside counsel) initially included ████████ (Ex. 9 (12/12/2017 log).)  This is inconsistent with  Mr.

19   Gonzalez's representations to the Court that dissemination of the Jacobs Documents at MoFo was

20   limited.  Four days later, on December 16, MoFo's log of Jacobs communications swelled even

21   further to ████████.  (Ex. 10.)  Contrary to Mr. Gonzalez's clarification, several of the entries on

22   the log reflect communications involving MoFo attorneys ████████ and ██████████, who are

23   both counsel of record in this case.  (Ex. 10 at entries 3, 5, 6, 7, 8, 9, 16, 17, 18, 19, & 20.)  All of

24   the entries on the MoFo communication log occurred ████████████████████████████████

25   ████████████.  This raises troubling questions regarding the scope and timing of outside

26   counsel's knowledge of the unproduced Jacobs Documents.

27          **3.      Uber's Attempt To Downplay Its Failure To Produce Are Meritless.**

28          Uber's primary excuse for not producing the Jacobs Documents in its "response" to the

Special Master's report is that all of this is a "collateral issue." (Dkt. 2435 at 1.)  But Uber's withholding of the Jacobs Documents led directly to the latest continuance, which has wasted the resources of the Court and the parties, and has further delayed Waymo's ability to obtain relief on the merits for Uber's trade secret misappropriation.  Uber's willingness to conceal this relevant evidence, while pushing aggressively towards trial, also demonstrates the lengths to which Uber will go to avoid lawful discovery and further illustrates why any "lack-of-evidence" argument by either Uber or its outside counsel should not be trusted.  Uber's claim that discovery into the Jacobs Documents has not yielded any relevant evidence is simply false.  To the contrary, as outlined below (*infra* Section I.C), discovery over the past month has revealed, for example, that Uber's ThreatOps Group—with the guidance of ATG directors Anthony Levandowski and Lior Ron—engaged in a competitive intelligence gathering operation against Waymo that included, among other things,

███████████████████████████████████████████████████

████████. Uber's interest in Waymo's technology supports Waymo's trade secret misappropriation claims because, *inter alia*, it indicates that Uber understood that it was developing the same technology.

**B.** **Defendants Thwarted Waymo's Investigation Into The Jacobs Documents Through Further Discovery Misconduct.**

If, as Uber claims, the Jacobs allegations were truly baseless and irrelevant to this litigation, Uber should have been open and forthcoming during this reopened discovery period.  (*Cf.*, Dkt. 2309 [11/28/2017 Hr'g Tr.] at 157:2-5 ("[Y]ou should be the one saying: We're going to open our doors.  We are going to get all the way to the bottom of this.  We're going to show you, Judge, that this is false.  And instead, you're fighting over every little thing.").)  While Uber did provide deponents and documents, some only after motions to compel, there was no "open door" to "get to the bottom" of the Jacobs allegations.

For example, Uber limited and delayed its document production, rendering it impossible for Waymo to take complete depositions of relevant witnesses during the abbreviated discovery period. In its written responses to Waymo's RFPs, Uber objected to the shortened discovery period (which was created by its own misconduct) and caveated its response as follows: "[a]ny production that is

1   made and all searches performed are limited to what is possible to do in such a short amount of

2   time." (Ex. 12.)  Despite its "limited" search and production, however, Uber still failed to comply

3   with the timetables ordered by the Special Master and the Court.

4        The Special Master ordered that Uber complete its production of documents responsive to

5   Waymo's RFPs by Friday December 8 so that Waymo could analyze the documents in advance of

6   the start of depositions on December 11.  (Dkt. 2376-6 at 1.)  Uber did not do so.  It produced over

7   a thousand documents between December 11 and December 13 and refused, even as depositions

8   began, to confirm that its production was complete.  Waymo thus was forced to move to compel

9   Uber to complete its production, but even after Judge Corley ordered Uber to complete its

10  production by December 14 (Dkt. 2395 [12/13/2017 Hr'g] at 21:22-22:8), documents continued to

11  trickle in on December 15, 16, 19, 20, 23, 28. On December 29—over a week after the supplemental

12  discovery period had closed, and mere hours before Waymo filed its final motion to compel—Uber's

13  outside counsel informed Waymo that a "set of search results inadvertently was not pushed to us for

14  review" (Ex. 59 [12/29/2017 email from S. Rivera]), which resulted in a production of 24 additional

15  documents on December 30.  In total, nearly two-thirds of Uber's production (by number of pages)

16  was produced ***after*** the deadline originally imposed by the Special Master.

17       Uber also frustrated Waymo's attempt to investigate the extent to which its outside counsel

18  was aware of the Jacobs documents during regular discovery in this case.  As discussed previously

19  (*supra* Section I.A), after Uber objected to Waymo's request to depose MoFo attorneys who

20  received the Jacobs Documents, Waymo agreed to accept, by December 10, a log of

21  communications between Uber and outside counsel regarding the Jacobs Documents and

22  investigation.  (Dkt. 2376-7 at 2 ¶ 2.)  Uber eventually produced that log, ████████████, two

23  days late and improperly limited it to only those communications between Uber and MoFo that

24  "Substantively Refer" to the Jacobs Documents.  (Ex. 9.)  Again, Waymo was forced to seek relief

25  from the Court which, four days later, yielded an entirely new log containing ███████—more

26  than double the number initially identified.  (Ex. 10.)  The evolving story of what communications

27  exist and which outside counsel knew what about the Jacobs Documents is concerning.  Even now,

28

1    Waymo lacks a coherent explanation of which counsel knew what, and when.[3]

2         Further, Waymo served an interrogatory asking that Uber identify each employee or former

3    employee who was "aware" of the Jacobs Documents prior to November 22, 2017, and to provide

4    details of such awareness.  (Ex. 11 at Interrogatory No. 1.)  This interrogatory tracked the Court's

5    Order that Waymo may serve discovery into "the identities of all defendants' personnel who were

6    *aware* of Jacobs's letter or email before November 22," (Dkt. 2315 (emphasis added).)  Yet, Uber

7    objected that the term "aware," was "undefined and vague."  (Ex. 48 ("Response" to Interrogatory

8    No. 1).)  On this basis, Uber refused to fully answer the interrogatory.  Rather, it limited its response

9    to a list of personnel who merely *received* the Jacobs email or letter.  (Dkt. 2441-5.)  Waymo had to

10   move to compel.   Judge Corley noted that Uber's efforts to unilaterally narrow Waymo's

11   interrogatory were "not well taken."  (Dkt. 2454 at 1.)  Uber's court-ordered supplemental response

12   has yielded additional, relevant evidence such as that fact that ▮▮▮▮▮▮▮▮▮▮▮▮ was

13   aware of the Jacobs Letter (despite having not received it) prior to November 22.   (Ex. 48

14   ("Supplemental Response" to Interrogatory No. 1.)

15        Moreover, Uber has represented that it is claiming privilege over approximately *4,000*

16   documents responsive to Waymo's recent RFPs. (Dkt. 2395 [12/13/17 Hearing Tr.] at 23:22-24:1.)

17   Based on this representation regarding the volume of allegedly privileged documents, Judge Corley

18   declined to require Uber to provide a complete, individualized privilege log, but left open the

19   possibility that Uber would be required to provide additional information upon a showing of

20   relevance to a claim or defense in the case. (*Id.* at 27:17-28:3.)  In advance of the deposition of

21   Angela Padilla, Waymo obtained an order from Judge Corley requiring Uber to "produce a fully

22   compliant privilege log for documents that Uber is withholding that involve communications with

23   Ms. Padilla . . . and discuss the Jacobs letters, any investigation being done as a result of Jacobs'

24   accusations, and the settlement with Jacobs." (Dkt. 2415 at 2.)  But, when Uber served its ▮▮▮▮

25

26   _____

27        [3]   For example, the declarations from MoFo do not clearly explain whether and when counsel
     of record in this litigation learned of the <u>substance</u> of each of the Jacobs Documents.  (Ex. 52 [Tate
28   Declaration]; Ex. 53 [Duross Declaration].)

1    Padilla log on December 22 (Ex. 8), it also produced 87 new Padilla documents that Uber had

2    apparently improperly withheld until required to provide the log.  Thus, by its own admission, when

3    Uber is required to justify its assertion of privilege on an item-by-item basis, it is forced to produce

4    additional documents, that never should have been withheld in the first place, at a rate of over 10%.[4]

5          Judge Corley ordered that the Padilla privilege log "shall be produced by 5:00 p.m. on

6    December 21, 2017" (Dkt. 2415 at 2), so that Waymo would have the information in advance of

7    Ms. Padilla's December 22 deposition.  But, as discussed above, on December 29, Uber notified

8    Waymo that it had discovered a set of previously un-reviewed documents and informed Waymo that

9    it may supplement Ms. Padilla log in review of this discovery.  (Ex. 59 [12/29/2017 email from S.

10   Rivera].)  After 11:00 p.m. just last evening—a full **21 days** after Judge Corley's order—Uber

11   supplemented its Padilla privilege log to add ███████████, bringing the log total to ████. (Ex.

12   104 (1/11/2017 log).)  Waymo has not yet had an opportunity to analyze this newly produced log,

13   but Uber's incredibly late production is yet another obviously prejudicial and yet another violation

14   of the Court's orders.  This should result in waiver of the privilege of these ████████████

15   (J. Alsup Standing Order ¶ 18 ("Failure to furnish [] information [sufficient to justify the privilege]

16   at the time of the assertion will be deemed a waiver of the privilege or protection.").)

17         Also, during depositions into the Jacobs allegations, Uber's outside counsel repeatedly and

18   improperly used the attorney-client privilege to instruct witnesses not to answer questions about

19   *facts* to the extent such facts happened to have been communicated from an attorney.  (*E.g.*, Ex. C

20   [12/14/2017 Sullivan Dep. Tr.] at 218:11-22, 221:13-222:5; Ex. A [12/14/2017 Yoo Dep. Tr. Vol.

21   2] at 191:10-192:5; Ex. D [12/15/2017 Trujillo Dep. Tr.] at 74:10-74:17, 74:20-75:3, 75:4-75:11,

22

---

23   [4]  In light of this and other demonstrated irregularities with Uber's assertions of privilege, Judge
     Corley ordered Uber to provide, for *in camera* inspection, 50 pages of redacted documents chosen
24   by Waymo.[4]  (Dkt. 2454 at 2.)  Based on that review, Uber was ordered to produce full copies of 4
     documents that it had previously improperly redacted.  (Dkt. 2461.)  One of these newly unredacted
25   documents ███████████████████████████████████████████████████
     ███████████████████████████████████████████. (Ex. 49.)
26

27   Given, Defendants' history of wrongfully withholding documents under the guise of the
     attorney-client privilege, Waymo asked Judge Corley for a much broader *in camera* review.  (*See*
28   Dkt. 2441-4 at 2-4.)  Waymo expects to file a Motion for Relief from Judge Corley's Order that
     limited the *in camera* review to a mere 50 pages of documents that Defendants redacted.

---

91:23-92:6, 92:21-93:4, 109:17-110:1, 118:11-19; Ex. E [12/19/2017 Huffington Dep. Tr.] at 49:7-17, 52:20-53:7, 71:23-73:9, 74:8-18, 82:14-22, 84:20-85:4, 86:15-87:4, 87:16-22, 91:7-14, 91:22-92:3 102:19-25, 160:20-161:7; Ex. F [12/20/2017 Majalya Dep. Tr.] at 49:23-50:5, 50:17-24; Ex. G [12/20/2017 Russo Dep. Tr.] at 203:1-18.)  Uber also allowed the personal attorneys of certain Uber SSG employees to block answers to questions based on purported "national security concerns." (*E.g.*, Ex. H [12/19/2017 Nocon Dep. Tr.] at 16:17-17:4; Ex. G [12/20/2017 Russo Dep. Tr.] at 31:2-17, 157:21-158:24; Ex. I [12/21/2017 Gicinto Dep. Tr.] at 36:6-37:4, 60:2-22, 138:24-140:8, 142:10-17, 205:15-206:5, 225:5-226:13.)

In addition, Uber's outside counsel repeatedly instructed attorney-witnesses not to answer questions that would reveal their "mental impressions," even when the questioning sought information far afield from any conceivable claim of work product.  (*E.g.*, Ex. A [12/14/2017 Yoo Dep. Tr. Vol. 2] at 254:6-15, 289:5-24, 346:5-9, 354:2-7, 387:23-388:14, 415:11-24, 430:21-431:23, 432:7-11; Ex. F [12/20/2017 Majalya Dep. Tr.] at 34:5-24, 125:14-20, 162:24-163:6, 164:9-165:23, 176:25-177:12, 252:4-15; Ex. J [12/22/2017 Clark Dep. Tr.] at 124:3-125:11, 126:22-127:13, 182:6-25, 199:22-200:11, 247:7-13, 344:20-345:11; Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 129:23-130:18, 153:14-23, 164:18-24, 171:16-24, 178:9-25, 185:23-186:9, 188:12-189:12, 189:18-25, 191:11-18, 221:8-14; Ex. K [12/22/2017 Spiegler Dep. Tr.] at 89:6-22, 169:19-171:9, 192:24-193:18, 283:24-284:7.)  To take one example, Craig Clark was improperly instructed not to answer whether he had ever marked a document "attorney-client privileged" when he did not believe such document was privileged, on the grounds that such an answer would disclose Clark's "mental impressions" and thus his work product.  (Ex. J [12/22/2017 Clark Dep. Tr.] at 195:19-197:10.)  Padilla was even instructed not to reveal her "mental impressions" regarding subject matter she had previously disclosed (without objection) in her testimony at the evidentiary hearing.  Padilla was instructed not to expound upon her thought process in failing to provide the Jacobs Letter to either in-house or outside counsel handling the Waymo matter even though she provided, without objection, a high-level explanation on this same subject during the evidentiary hearing.  (*Compare, e.g.*, Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 153:14-23, *with* Dkt. 2310 [11/29/2017 Hr'g Tr.] at 17:15-18:23.)  In light of these selective assertions of "work product," Uber should be precluded

1   from offering any explanation for its failure to turn over this material evidence during discovery.

2     Uber's obstructionism over the past month of supplemental discovery has complicated what

3   was already an aggressive schedule for investigating the Jacobs Documents.   Again, the Court

4   should take appropriate measures to ensure that Uber is not able to capitalize on its misconduct.

5     **C. Discovery Has Corroborated Key Allegations In The Jacobs Letter Material To Waymo's Claims.**

6

7     The new Jacobs-related discovery that Waymo has been able to pry from Uber has led to

    material evidence pertaining to the merits of Waymo's trade secret claims.   In accordance with the
8
    Court's request, Waymo summarizes below the key evidence discovered during the reopened
9
    discovery period, how this evidence was previously unknown to Waymo, and the relevance of such
10
    evidence to Waymo's allegations in this case.   Attached hereto in Appendix A, Waymo provides
11
    the practical details of how it will implement its offer of proof, including the names of specific
12
    sponsoring witnesses for documentary evidence that Waymo intends to rely upon in its case-in-chief
13
    at trial, and an explanation as to how Waymo will overcome hearsay objections for such documents.
14
      **1. Uber Used Its ThreatOps Division To Systematically Collect Intelligence On Waymo And Other Competitors.**
15

16     Uber used its "ThreatOps" group (which included its Strategic Services Group ("SSG")) to

17   engage in a vast, previously undisclosed, "competitive intelligence" gathering program against

18   competitors in the autonomous vehicle market, including primarily Waymo.   As detailed below,

19   Uber ThreatOps coordinated these efforts with ATG personnel, including Anthony Levandowski

20   and Lior Ron, shortly after Uber's ATG group "pivoted" to development of the Fuji medium-range

21   LiDAR sensor that Waymo contends incorporates its trade secret designs.   Uber's keen interest in

22   the performance of Waymo's self-driving cars at this time is probative to Uber's intent and

23   knowledge that it was developing derivative technology that it understood would perform similarly

24   to the Waymo technology under surveillance.

25     Uber's techniques for collecting intelligence on competitors ▮▮▮▮▮▮▮▮▮▮

26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 13.)

27   SSG employee Ed Russo testified ▮▮▮▮▮▮▮▮▮▮

28   ▮▮▮▮▮▮. (Ex. G [12/20/17 Russo Dep. Tr.] at 295:5-13, 11:6-8.)

1  █████████████████████████████████████████████████████

2  ████████████████████████████████████████████ (Ex. 13 at

3  UBER00336620.) ██████████████████████████████████████

4  █████████████████████████████████████████████████████

5  ████████ (*Id.* at UBER00336625 (emphasis added).) ████████████████

6  █████████████████████████████████████████████████████

7  █████████████████████████████████████████████████████

8  █████████████████████████████████████████████████████

9  ██████████████████████████ (*Id.* at UBER00336621, UBER00336622-27.)

10  The document also discusses ████████████████████████████████████

11  █████████████████████████████████████████████████████

12  ███████████████████████████████████ (*Id.* at UBER00336628; *see*

13  *also* Ex. G [12/20/17 Russo Dep. Tr.] at 314:23-316:4; Ex. I [12/21/17 Gicinto Dep. Tr.] at 176:13-

14  178:1.)   In other words, SSG ████████████████████████████████████

15  █████████████████████████████████████████████████████

16  ███████████████████.[6]   Before the reopened discovery period, Waymo was unaware of this

17  intelligence gathering effort against autonomous vehicle competitors.

18        Documentation indicates that Uber executed upon its Collection Plan and provided regular

19  updates of its progress.  In December 2016, Uber's Strategic Services Group (a sub-group within

20  "ThreatOps") created a presentation titled ████████   (Ex. 18.)  Again, the ███████ was Uber's

21

---

22      [5]   Uber's code word for the autonomous vehicle market was the "████," and the code word

23  "████" corresponded to Google.  (Ex. 14.)

24      [6]   Uber's practice of gathering intelligence on competitors ████████████████

25  █████████████████████████████████████████████████████

26  ████████████████████████████████████████" (Ex. 17 at

UBER00338182.) ████████████████████████████████████████████

27  (*Id.* (emphasis added).) ██████████████████████████████████████

28  ████████████ (*Id.*)



1   code word for the autonomous vehicle market and ██████ was Uber's code word for ██████

2   (Ex. 14.) ████████████████████████████████████████████████████████████

3   █████████████████████████████████████████████████████ (Ex. 18 at

4   UBER00330930-31.) ██████████████████████████████ (*Id.* at UBER00330939.)

5   Before the supplemental discovery period, Waymo was unaware of Uber's efforts to conduct

6   "research" into autonomous vehicle competitors with a focus on acquiring "██████."

7          Uber's ATG Group was keenly aware and interested in Uber's competitive intelligence

8   gathering efforts.  On October 23, 2016, former Ottomotto co-founders and Uber ATG managers

9   Anthony Levandowski and Lior Ron ████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████ (Ex. 15.) ████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████ (*Compare* Ex. 15, *with* Ex. 16 at 2 ████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████ (Ex. 15.) While

17  the specific October 2016 email was produced before the Jacobs letter (although after normal

18  discovery, as it was among the "non-migrated" Levandowski Ottomotto emails), the significance of

19  Levandowski's interest in competitive intelligence gathering only became apparent in the context

20  of the other, newly discovered Jacobs material.

21         Levandowski and Ron also interfaced directly with ThreatOps in regards to competitive

22  intelligence gathering.  In late January 2017, Mat Henley, the director of Uber "Threat Ops,"

23  ██████████████████████████████████████████. (Ex. 19.)

24  ████████████████████████████████████████████████████████████

25

26  _____

27  [7]   Jacobs testified that, to his knowledge, ████████████████████████
    ████████████████████████████████████████████████████████████

28  ████████████ (Ex. L [12/20/2017 Jacobs Dep. Tr.] at 205:2-12; *see also* Ex. Z [12/22/2017 Henley Dep. Tr.] at 108:7-109:13.)

1    █████████████████ (*Id.*) ████████████████████████

2    ██████████████████████████ (*Id.*)  Shortly thereafter, a meeting

3    invitation reflecting a January 31 meeting was circulated ██████████

4    ████████████. (Ex. 20.)  Before the supplemental discovery period, Waymo was unaware

5    of Uber senior ATG members collaborating with Uber's intelligence gathering operation within

6    ThreatOps.[8]

7          SSG memoranda further reflect that Lior Ron and Anthony Levandowski had meetings with

8    ThreatOps personnel in early 2017.  (Exs. 21 & 22.) █████████████████████████

9    ███████████████████████████ (Ex. 21.)

10   █████████████████████████████████████████████

11   ███████████████████.[9]  (Ex. G [12/20/2017 Russo Dep. Tr.] at 272:12-273:3, 278:5-16.)

12   Other ThreatOps personnel confirmed ████████████████████

13   ██████████████████████████.  (Ex. C [12/14/2017 Sullivan Dep. Tr.] at 63:5-13,

14   66:15-67:1; Ex. I [12/21/2017 Gicinto Dep. Tr.] at 23:19-25:1, 33:4-20, 33:21-34:17, 44:14-45:6,

15   148:15-150:7; Ex. Z [12/22/2017 Henley Dep. Tr.] at 98:7-23, 125:8-126:2, 126:23-127:3.)

16   █████████████████████████████████████████████

17   ████████████████████████████[10]  (Ex. 21 at UBER00336616

18   ────────────────────────

19   [8]  Uber did previously produce one calendar invite for a February 14, 2017 meeting between

20   Levandowski, Ron, Mat Henley, and Nick Gicinto (among others), but there was no information in
     the produced invitation about the subject matter of the meeting or role of Henley or Ginincto (for
     example, the meeting topic was identified merely as "Mat Lior Nick").  (*See* Ex. 39.)

21   [9]  Lior Ron ████████████████████████████████ listed in Exhibit 21 (Ex.

22   X [12/12/2017 Ron Dep. Tr. Vol. 3] at 528:2-17, 529:6-13, 534:3-15).

23   [10]  Ed Russo testified that ████████████████████

24   ██████████████████.  (Ex. G [12/20/2017 Russo Dep. Tr]. at 278:17-
     280:15.)  However, the little documentary evidence that was produced and/or remains shows
     otherwise.  A ████████████████████████████████████

25   █████████████████████████████████████████████

26   █████████████████████████████████████████████

27   █████████████████████████████ (Ex. 24.)  Before the supplemental

28   discovery period, Waymo was unaware of █████████████████



1   ("████████████████████████████████████████████████████

2   ███████████████████"); *see* 18 U.S.C. § 1839 (defining "misappropriation" to include

3   "acquisition of a trade secret of another by a person **who knows or has reason to know** that the trade

4   secret was acquired by improper means") (emphasis added)).   A similar memorandum dated

5   February 15, 2017 indicates ████████████████████████████████████████████████

6   ██████████████████████ (Ex. 22.)  Before the supplemental discovery period, Waymo

7   was unaware of Uber senior ATG members directing Uber's intelligence group to obtain

8   confidential information about Waymo and other autonomous vehicle competitors.

9        The collaboration between Uber ATG and ThreatOps culminated in an intensive surveillance

10  program in the Spring of 2017.[11] ████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████

12  ████████████████████.[12]  (Ex. I [12/21/2017 Gicinto Dep. Tr.] at 23:19-34:19.)  With this

13  submission, Waymo will lodge selected copies of these videos for the Court's viewing as Exhibits

14  25 and 26.  At the time, ███████████████████████████████████████████████████

15  ████████████████████████.[13]  (Ex. I [12/21/2017 Gicinto Dep. Tr.]

16  at 24:13-25:1, 32:8-13.)  And the code word that Uber SSG used for Waymo ████████████

17  ████████████ (Ex. I [12/21/2017 Gicinto Dep. Tr.] at 136:11-14; Ex. G [12/20/2017 Russo Dep.

18  _____

19  ████████████████████████████

20      [11]   Uber's competitive intelligence gathering efforts against Waymo also resulted in ████████

21  ██████████████████████████████████████████████████████████.  (Ex.

22  45.)  Again, this report reflects Uber's interest in the performance of Waymo's technology at a time

23  ██████████████████████████████████████████████████████████████.

24      [12]   Again, Ron's testimony ████████████████████████████████████████████

25  ████████████████████████████████████████████ (Ex. X

26  [12/12/2017 Ron Dep. Tr. Vol. 3] at 547:1-550:15.)

27      [13]   Uber witnesses have insisted that their competitive intelligence gathering efforts relied
    entirely on "open source" information.  But, as shown above, the documentary evidence suggests
    otherwise.  (*Supra* n.10.)  Also, the question of whether Uber's competitive research relied upon
    proper or improper means is beside the point—regardless of the methods used, Uber's collection of
    information on Waymo is evidence of *past* misappropriation, because it reflects a level of interest
28  in the performance of Waymo's vehicles that Uber would not have had unless it was aware that its
    own Fuji system would perform similarly.

Tr.] at 328:1-3.)    Before the supplemental discovery period, Waymo was unaware of ████

████████████████.

████████████████████████████████████████████████████ (Ex.

26) ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

(*See also* Ex. G [12/20/2017 Russo Dep. Tr.] at 324:20-331:14.) ██████████

████████████████████████████████████████████████████████

(Ex. 26 at 3:10–4:11.) ████████████████████████████████

████████████████████████████████████████████████████████

██████████████ (Ex. 26 at 4:20–4:40; *see also* Ex. Z [Henley Dep. Tr. at 111:9-112:13.)

████████████████████████████████████████████████████████

████████████████████████ Before the supplemental discovery period,

Waymo was unaware of ████████████████████████████████████

████████████████████████████████████████████████████████

██████████████.

**2.    Uber Used Non-Attributable Devices To Avoid Discovery Into Its Activities.**

A document titled ████████████████████████████████████

████████████████████████████████████████████████████████

(Ex. 27.) ████████████████████████████████████████████████

████████████████████████████████████ (*Id.* at

UBER00327811-15.) ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ (*Id.* at UBER00327815.) ████████████████

████████████████████████████████████████████████████████

████████████████████████ (*Id.* at UBER00327815.)

████████████████████████████████████████████████████████

1   ▌ (*Id.*

2   at UBER00327815-17.)  SSG employee Jack Nocon testified that ▌

3   ▌

4   ▌ (Ex. H [12/19/2017

5   Nocon Dep. Tr.] at 124:14-125:13.)

6   ▌ (*Id.* at 125:14-

7   127:12.)   Before the supplemental discovery period, Waymo was unaware of Uber conducting

8   research in this manner using virtual machines, dedicated "research" computers, and non-

9   attributable MiFi connections to access specifically designed to host information separate from

10  Uber's main servers.

11          In addition to managers like Craig Clark and Mat Henley, Joe Sullivan (Uber's former Chief

12  Security Officer and a member of Uber's executive leadership team) knew of, and ostensibly

13  approved, the use of non-attributable devices for research purposes.  Sullivan ▌

14  ▌

15  ▌. (Ex. C [12/14/17 Sullivan Dep. Tr.] at 124:17-125:2, 125:22-25, 276:1-6.)

16          SSG employees Ed Russo and Nick Gicinto testified that ▌

17  ▌

18  ▌. (Ex. G

19  [12/20/2017 Russo Dep. Tr.] at 110:6-111:14, 113:5-8; Ex. I [12/21/2017 Gicinto Dep. Tr.] at 67:23-

20  71:24,  75:3-76:21.)

21  ▌

22  ▌ (Ex. G [12/20/2017 Russo Dep. Tr.] at 113:9-114:2, 123:20-

23  126:8; Ex. I [12/21/2017 Gicinto Dep. Tr.] at 89:12-90:22.)  Ed Russo testified that ▌

24  ▌ (*Id.* at 119:24-120:9.)  It is unclear what form these reports

25  took, but Waymo has located few, if any, documents that would meet Russo's description of these

26  _____

27      [14]  Ed Russo testified that ▌

28  ▌ (Ex. G [12/20/2017

Russo Dep. Tr.] at 108:24-109:24.)

-18-

1   reports in Uber's production of documents during this discovery period.  Ed Russo testified that

2   ████████████████████████████████████████████████████████████████████████████████

3   ██████████████████████████████████. (Ex. G [12/20/2017 Russo Dep. Tr.] at 132:21-134:10.)

4   Before the supplemental discovery period, Waymo was unaware of Uber hosting a █████████ server

5   to ████████████████████████████████████████.

6        At his deposition, Jacobs testified that ████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████████████

8   ████████████████████" (Ex. L [12/20/2017 Jacobs Dep. Tr.] at 93:9-16.)  Jacobs also testified that

9   ████████████████████████████████████████████████████████████████████████████████

10  ████████████████████████████ (*Id.* at 108:11-109:11.)  This reinforces Uber's

11  efforts to conceal documents from discovery concerning at least ThreatOps' activities.

12        In its January 3 Order, the Court asked whether it was true that the issue of non-attributable

13  devices "was a problem confined to SSG and MA."  (Dkt. 2447)  It is true that Uber served a log on

14  December 4 (Ex. 28)—which was supplemented and expanded immediately after Waymo

15  completed depositions on December 22 (Ex. 29)—of "non-attributable" device users that appears to

16  be limited to ThreatOps personnel.[15]  In preparing these logs, Uber appears to have unilaterally

17  limited its definition of "non-attributable" devices to the "research laptops" used by ThreatOps and

18  described during the November 29 evidentiary hearing.  (*See, e.g.*, Dkt. 2310 [11/29/17 Hr'g Tr.] at

19  146:17-148:3 (describing "non-attributable devices" as "research laptops" that were incapable of

20  storing data).)  Defendants' logs aside, it is also true that in the supplemental round of discovery,

21  Waymo did not uncover evidence that other departments utilized third party vendors to acquire

22  devices paid for by Uber for the express purpose of ensuring those devices could not be traced back

23  to Uber.  However, as explained below, Uber was aware that Levandowski was using two non-Uber

---

25      [15]   The Court also ordered that Uber search for and produce "[a]ll documents in the entire

26  company that have anything to do with . . . non-attributable devices . . . ." (Dkt. 2309 [11/28/2017
    Hr'g Tr.] at 147:10-15.)   In email correspondence, Uber unilaterally limited its search and

27  production of documents to those within the custody of certain persons at Uber (*i.e.* previously
    agreed-upon document custodians, additional personnel identified in Defendants' forensic expert

28  report, and SSG and MA personnel).  (Ex. 46.)

laptops "for Uber work" while running its self-driving car program (despite also knowing that he had retained vast amounts of Waymo confidential information after he resigned), an arrangement that gave Uber all the benefits of any misconduct committed with them, but none of the attribution. (*See* Section II.A.4. *infra*.)

### 3. Uber Used Ephemeral Communication Platforms To Avoid Discovery Into Its Activities.

At the November 28, 2017 hearing, the Court ordered Uber to provide a log of all Uber personnel who used "Wickr or any other self-deleting communication system." (Dkt. 2309 [11/28/2017 Hr'g Tr.] at 153:20-157:7.)   On November 30, Defendants counsel proposed unilaterally limiting its self-deleting communication log to only certain categories of persons at Uber (*i.e.* previously agreed-upon document custodians, additional personnel identified in Defendants' forensic expert report, and SSG and MA personnel).[16]   (Ex. 46).   A subsequent email from Defendants' counsel confirmed that this unilateral limitation on Uber's log was, in fact, imposed. (Ex. 47 at 2 ("On the call yesterday, Sylvia confirmed that Uber's productions in response to the Court's order have followed that proposal.").)

Despite these limitations, Uber's log served on December 4 (Ex. 30), which was also supplemented on December 22 (Ex. 31), identifies no less than 334 individuals and five teams "in general" that used Wickr or a "similar platform" at Uber (Ex. 31).  Not identified on Defendants' self-deleting communications log are Uber's company-wide chat program "uChat" and its predecessor "HipChat" (*see* Ex. 32), even though Uber's own witness, Ed Russo, testified that both uChat and HipChat are "███████████████" (Ex. G [12/20/2017 Russo Dep. Tr.] at 93:15-22.)  Thus, if Uber had included users of HipChat and UChat in its court-ordered logs, the number of users would have been substantially larger.

Throughout this reopened discovery period, Uber has attempted to draw an equivalence between its use of self-destructing messaging applications (such as Wickr, Telegram, and Snapchat)

---

[16] In its email correspondence, Uber purported to disclose the scope of personnel searched and queried in the interest of transparency.  (Ex. 46.)  In subsequent meet-and-confer conferences with the Special Master, Waymo made clear that that it believed this was improper and less than what the Court ordered.

1   and Google's employees' use of the "Google Hangouts" application, which includes an "off-the-

2   record" setting.  The use of these applications by Google and Uber, however, could not be more

3   different.  Discovery has shown that Uber employees used these ephemeral messaging applications

4   in a manner that would have the effect of avoiding discovery in ongoing or anticipated litigation.

5   (Ex. C [12/14/2017 Sullivan Dep. Tr.] at 214:1-12, 236:8-13, 237:3-20, 239:16-240:4; 243:6-11);

6   Ex. H [12/19/2017 Nocon Dep. Tr.] at 220:17-221:10, 221:11-14, 226:8-17; Ex. G [12/20/2017

7   Russo Dep. Tr.] at 100:6-101:2, 101:8-21; Ex. I [12/21/2017] Gicinto Dep. Tr. at 53:20-54:8, 54:9-

8   55:15; Ex. Z [12/22/2017 Henley Dep. Tr.] at 64:24-65:9, 120:20-123:4.)  For example, just one

9   month after Uber announced uChat as its standard, company-wide chat program, ███████████

10  ███████████████████████████████████████████████████████████████████████████████

11  ███████████████████ (Ex. 34.) ██████████████████████████████ (Ex. Y [12/12/2017

12  Ron 30(b)(6) Vol. 2 Dep. Tr]. at 373:21-374:22; *see also* Ex. 35.)[17]

13      By contrast, Google and Waymo witnesses have testified that their employees use Google

14  Hangouts for normal business purposes, and that there is no similar program or instruction at Google

15  or Waymo to use ephemeral messaging applications for the purpose of thwarting discovery in

16  ongoing or future litigation. █████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████████████████████████

18  █████████████████████ (Ex. 33.)  Google and Waymo 30(b)(6) witnesses have

19  testified that ████████████████████████████████████████████████████████████████

20  █████████████ (Ex. M [12/14/2017 Johnston 30(b)(6) Dep. Tr.] at 102:10-103:19.)

21      In its January 3 Order, the Court asked whether the "ephemeral messaging" issue was

22  previously known to Waymo.  (Dkt. 2447.)  Although Waymo had previously learned that certain

23  individuals used the ephemeral messaging application "Telegram," Waymo was previously unaware

24  of Uber personnel using the other logged communication platforms, including Wickr, and was also

25  _____

26  [17] ███████████████████████████████████████████████████████████████████████████

27  ████████████████████████. (Ex. Y [12/12/2017 Ron 30(b)(6) Vol. 2 Dep. Tr.] at

28  372:21-373:18.) ██████████████████████ (*Id.* at 374:24-379:9.)

unaware of the scale and scope of use of these ephemeral messaging platforms. Waymo was also

unaware that Uber's ThreatOps had specifically set up Levandowski and Ron with Wickr access

while Levandowski and Ron were requesting that ████████████████████████████████████

████████████████████████████████████████.

**4.    Uber Used Contrived Attorney-Client Privilege Designations To Avoid Discovery Into Its Activities.**

Uber's competitive intelligence gathering operations were shrouded through improper use

of the attorney-client privilege. The Jacobs Letter references a training presentation given by

ThreatOps attorney Craig Clark that included the "lawyer dog meme." (Ex. 2 at 8.) The Jacobs

Letter states that "[w]hile the presentation slides themselves did not depict or explain any unethical

or illegal practices involving attorney-client privilege," Jacobs observed Clark using the

presentation to "verbally coach[] the participants on how to use attorney-client privilege to ensure

sensitive intelligence collection activities would not surface in litigation." (*Id.*) Discovery confirms

that a version of this presentation does in fact exist (Ex. 36), ████████████████████████

████████████████████████████████████████. (Ex. L [12/20/2017

Jacobs Dep. Tr.] at 76:16-77:16.) This indicates that versions of Clark's presentation were lost or

destroyed.

Jacobs testified that ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████[18] (Ex. L [12/20/2017 Jacobs Dep. Tr.] at 80:18-81:5.) ██████████████████

---

[18]    Uber witnesses have ██████████████████████████████████████████████ For example, Padilla testified that ████████████████████
████████████████████████████████████████████████ (Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 198:16-203:11.)
████████████ And it would not be surprising for Clark to omit from the presentation to Padilla the more controversial aspects of his normal presentation. Indeed, during Uber's investigation of Clark and other ThreatOps personnel, ████████████████ (Ex. 54 at UBER00334507-08; Ex. K

1

2

3   ███████████████████ (*Id.* at 81:13-82:8.)

4

5   ██████████████████ (Ex. G [12/20/2017 Russo Dep. Tr.] at 74:13-84:4; Ex. I

6   [12/21/2017 Gicinto Dep. Tr.] at 80:6-181:5.)  Based on this training, certain ThreatOps personnel

7   were clearly left with an overbroad understanding of the use of the privilege.  For example, Russo

8   testified that ████████████████████████████████████████

9   ████████████████████████████████████████████████████

10   ██████ (Ex. G [12/20/2017 Russo Dep. Tr.] at 79:8-9; *see also* Ex. H [12/19/2017 Nocon Dep. Tr.]

11   at 171:13-172:11; Ex. AA [12/22/2017 Henley 30(b)(6) Dep. Tr.] at 115:15-116:22.)  Before

12   learning of the Jacobs Documents, Waymo was unaware of Clark's training ThreatOps personnel in

13   regards to attorney-client privilege designations.

14        The ThreatOps documents that have been produced reflect a pattern of improperly

15   designating material as attorney-client privileged.  For example, the "█████████████" document

16   authored by Russo discussed above (Ex. 13) is prominently marked as "Attorney-Client Privilege,"

17   "Confidential Work Product," and a "Eyes Only" document.  The weekly competitive intelligence

18   email ████████████████████████████ contains an "A/C privilege"

19   notation in its subject line (Ex. 15.)  The December 2016 ████████████████ is labeled as

20   "Attorney-Client Privilege" and "Confidential Work Product."  (Ex. 18.)  The ████████

21   ████████████████████████████ (Exs. 21 & 22), as well as the ████████

22   ████████████████████████ (Ex. 24) are all marked as being

23   "Created at the Direction of Legal – Attorney-Client Privilege & Confidential Work Product."  The

24   fact that all of these documents have now been produced confirms that Uber acknowledges that

25   these designations were improper. ████████████████████████████

26   ████████████████████████████████████████████████████

27

28   _____

[12/22/2017 Spiegler Dep. Tr.] at 220:9-222:19.)

███████         Before the supplemental discovery period, Waymo was unaware of any of these documents or their improper attorney-client privilege designations.

Further, newly produced documents show that ████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████ (Ex. 37.) ████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████ (Ex. 38.)  There is no question these privilege designations were improper—Uber itself has now been forced to produce these documents, again showing they were improperly marked, this time at ███████████direction.  Before the supplemental discovery period, Waymo was unaware of any of senior Uber management directing the use of contrived attorney-client privilege designations.[19]

### 5.   Uber's Consideration Of Aggressive And Controversial Data-Retention Policies Raises Further Concerns Regarding Spoliation Of Evidence.

Discovery into the Jacobs documents has also revealed that ████████████████

██████████████████████████████████████████████████████████████████

████████████ (Ex. A [12/14/2017 Yoo Dep. Tr. Vol. 2] at 434:1-435: 8, 447:4-9; Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 244:19-24, 2501:11-251:25.)  According to Padilla, ██████████

██████████████████████████████████████████████████████████████████

████████████ (Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 257:16-258:14; *see also* Ex. A [12/14/2017 Yoo Dep. Tr. Vol. 2] at 435:9-436:9.)

██████████████████████████████████████████████████████████████████

---

[19]  During her deposition, ███████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████ (Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 203:18-206:2.)  Besides Padilla's second-hand, litigation-inspired, speculation in a nonresponsive answer during her deposition, Uber has no evidence, much less admissible evidence, to support this theory.

1 | (Ex. N [12/14/2017 Kalanick Dep. Tr. Vol. 3] at 606:5-618:7.)

2 | ████████████████████████████████████████████████████████████████

3 | ███████████████████████████████████████████. (Ex. A [12/14/2017 Yoo

4 | Dep. Tr. Vol. 2] at 437:14-438:20; Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 252:25-254:13,

5 | 255:9-259:9.) ████████████████████████████████████████

6 | ████████ (Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 280:18-281:11), ████████

7 | ███████████████████. (Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 264:11-265:5;

8 | Ex. A [12/14/2017 Yoo Dep. Tr. Vol. 2] at 436:10-19, 437:3-439:12.)

9 | Padilla testified that ████████████████████████████████

10 | ████████████████████. (Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2]

11 | at 269:12-272:6, 291:1-13.)   According to Padilla, ████████████████

12 | ████████████████████████████████████████████████████████████████

13 | ████████████████████████████████████████████████████████████████

14 | ██████████ (*Id.* at 291:1-13.) Padilla also testified that ████████████

15 | ████████████████████████████████████████████████████████████████

16 | ██████████████████████████████ (*Id.* at 271:21-24.) But, when █████

17 | ████████████████████████████████████████████████████████████████

18 | ████████████████████████████████████████████████████████████████

19 | ██████████████████████ (Exs. 40 & 41), ████████████████████████

20 | ████████████████████████████████████████████████████████████████

21 | ███████████████. (Ex. 42 ¶ 6 & 43 ¶¶ 6, 7). Additionally, Padilla's testimony

22 | ████████████████████████████████████████████████████████████████

23 | ███████████[20] (Ex. 44.) In fact, ████████████████████████████

24 | ███████████████████████████████████[.]" (Ex. 44.) Padilla also ████████

25 | ████████████████████████████████████████████████████████████.

26 | (*Compare* Ex. 44 ("████████████████████████████████████████████

27 |

28 |

_____

[20] Uber does not appear to have produced performance reviews for ██████████

1  ██████████████████.”), *with* Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2] at 291:18-292:14

2  (testifying that ██████████████████████████████████████████████████

3  ████████████████████.)

4       Uber claims ████████████████████. (Ex. B [12/22/2017 Padilla Dep. Tr. Vol. 2]

5  at 285:10-19.) But its willingness to consider such a controversial policy, and the internal reaction

6  thereto, raises serious concerns regarding its preservation of relevant data in this case.

7       **D.    Uber Paid Off Jacobs In An Effort To Conceal His Allegations.**

8       Uber settled Jacobs' claims in August 2017 by agreeing to pay $4.5 million to Jacobs and

9  $3 million to his attorneys.[21]  (Dkt. 2447 [11/29/2017 Hr'g Tr.] at 62:18-63:12; Ex. 56 ¶ 2(a)

10  [UBER00326370] (Settlement Agreement).)

11       Of the $4.5 million paid to Jacobs, $2.5 million was paid over a twelve month period

12  pursuant to a consulting agreement. (Dkt. 2447 [11/29/2017 Hr'g Tr.] at 63:6-15; Ex. 57.) With

13  the settlement, ███████████████████████████████████████████████

14  ███████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████

16  ███████████████████████████” (Ex. 56 ¶ 7 [UBER00326370] (Jacobs Confidentiality

17  Agreement); Ex. 58 ¶ 3 [UBER00326386] (Counsel Confidentiality Agreement).)   Jacobs'

18  settlement agreement also included a "clawback" provision that would require Jacobs to forfeit his

19  settlement proceeds in the event of a breach of confidentiality, nondisparagement, or failure to

20  cooperate. (Dkt. 2447 [11/29/2017 Hr'g Tr.] at 57:16-58:14; Ex. 56 ¶ 2(b).) Taken together, the

21  magnitude, structure, and timing of the Jacobs settlement strongly suggest that Jacobs was paid off

22  to ensure that his allegations would never see the light of day.

23  **II.   Defendants' Discovery Misconduct With Regards To The Jacobs Documents Is
       Consistent With Their Prior Conduct in This Case.**

24

25  ――――――――――――――――

26  [21]  Clayton Halunen, Jacobs' lead attorney, has submitted a Declaration stating that his firm
      "did not maintain time records sufficient to show the time spent on Mr. Jacobs' matter or send
27  invoices to Mr. Jacobs reflecting its work on the matter." (Ex. 55 [Halunen Decl.].) He estimated
      that the time his firm spent working on the matter was approximately 230 hours. (*Id.*) He did not
28  have personal knowledge of the amount of time spent by co-counsel, but presumed it was also
      approximately 230 hours. (*Id.*)

Uber's failure to produce the Jacobs Documents and information relating to the Jacobs allegations is unfortunately, hardly the first time Defendants and their agents have sought to conceal material information in this litigation. Rather, this failure is simply one small part of a larger pattern of discovery misconduct that has come to characterize this case. As discussed below, Uber and its agents have engaged in systematic destruction of evidence, concealed sources of material information, and violated Court orders and discovery obligations. Additionally, the recently discovered evidence demonstrating that ThreatOps personnel used nonattributable devices, ephemeral communications to avoid discovery, and contrived attorney-client privilege designations harkens back to similar, but far-more widespread conduct, uncovered by Waymo during normal discovery in this case. Waymo has previously briefed many of these issues and, on August 25, provided the Court with a then-comprehensive list of Defendants' Discovery Misconduct. (Dkt. 1356.) Pursuant to the Court's directions at the December 4 hearing, Waymo collects and summarizes the most salient of those prior instances here, as they relate to the recent Jacobs-related concealment and misconduct.

**A.    Defendants Have Committed Severe Spoliation Of Evidence.**

      **1.    Defendants Have Used Ephemeral Messaging Services Throughout Their Organization To Avoid Discovery In Potential Litigation.**

Prior to the U.S. Attorney's disclosure of the Jacobs Letter, Waymo was aware that central witnesses in this case—including Levandowski, Kalanick, and Eric Meyhofer (the current head of Uber ATG)—used Telegram, an encrypted messaging application that, according to its FAQ page, offers "Secret Chats with self-destructing messages, photos, and videos."[22] Waymo also believed, as explained more fully in Waymo's Motion for Jury Instruction Based on Spoliation (Dkt. 2197-4), that Kalanick used a 30 day auto-delete setting on his iPhone that effectively turned his text messages into ephemeral communications, resulting in the spoliation of hundreds of text messages with Levandowski.[23] Waymo's concerns regarding this conduct have been reinforced by the newly

---

[22]    *See* Telegram FAQ page, available at https://telegram.org/faq, at "Who is Telegram for?" and "How are secret chats different?").)

[23]    As set forth in the two declarations provided by Matthew Schroeder, Waymo's forensic

1   discovered evidence related to the Jacobs Letter, as discussed above. (*Supra* Section I.C.3.)

2   **2.    Uber's Senior Management Instructed Anthony Levandowski To Destroy Five Hard Drives Of Waymo Information That He Had Improperly Retained.**

3

4   As set forth fully in Waymo's Motion for Jury Instruction Based on Spoliation (Dkt. 2197-4),

5   from the Stroz Report, Uber and its outside counsel have known all along in this case that

6   Levandowski retained, and then allegedly destroyed, five disks of confidential Google information.

7   An April 2, 2016 memorandum summarizing Stroz Friedberg's interview with Anthony

8   Levandowski states that Levandowski told Stroz Friedberg that in the course of gathering

9   information for the due diligence investigation, he realized he was in possession of 5 hard drives

10  containing Waymo proprietary "███████████████████████████████████████████

11  ███████████████████████." (Ex. 60 at STROZ_0001571.)  According to the notes of

12  Morrison & Foerster attorney Eric Tate, the 5 drives contained "███████████████████

13  ███████." (Ex. 61 at UBER00324024.)  Levandowski told Stroz that he had informed Uber

14  executives Travis Kalanick, Cameron Poetzcher, and Nina Qi about the disks.  (Ex. 60 at

15  STROZ_0001571.)  In response, Kalanick told Levandowski to "██████████████████████" (*Id.*

16  at STROZ_001572.)  When Levandowski told Kalanick ████████████████████████████████

17  ██████. (*Id.*)  Levandowski then claimed to Stroz that ████████████████ (*id.*), though ████

18  █████████████████████████████████. (Ex. 62 at UBER00312688.)  There is

19  no doubt that Uber reasonably contemplated litigation with Waymo at the time ██████████████

20  ████████████████████████████████████—such reasonable expectation of

21  litigation is the basis for Uber having claimed privilege over the Stroz due diligence in the first

22  place.  The fact that Uber's CEO, in the presence of senior management, and while under reasonable

23  expectation of potential litigation, would ████████████████████████████████████████

24  ████████████ further confirms Uber's willingness to engage in evidence spoliation.

25  Further, as previously briefed by Waymo (Dkt. 676-4 at 13-14), Uber's failure to timely

26  ───────────────────

27  consultants have been unable to corroborate Kalanick's assertion that he used the 30 day auto-delete setting, and Kalanick's expert has not identified which portion(s) of Kalanick's iPhone's configuration files reflect the use of that setting at time, let alone for the time period prior to the imaging of the phone in June 2017.  (*See* Dkt. 2197-12 and 2265-5.)

28

1   inform the Court and Waymo of this destruction of evidence violated the Court's Expedited

2   Discovery Order, which required Defendants, by March 31, to produce all files and documents

3   downloaded by Anthony Levandowski and, to the extent such files or documents had been "deleted,

4   destroyed, or modified," ordered Defendants to "state the extent thereof and produce all documents

5   bearing on said deletion, destruction, or modification." (Dkt. 61 ¶ 4.)  Neither Uber, nor Morrison

6   & Foerster, disclosed Levandowski's claim to have destroyed the drives until serving an

7   interrogatory response on June 5—the ***same day*** Judge Corley issued her Order compelling

8   Defendants to produce the Stroz due diligence report that included a description of Levandowski's

9   claims.

### 3.   Defendants Systematically Destroyed Evidence Regarding Ottomotto's Formation And Early Development

12   As detailed in Waymo's Motion for Jury Instruction Based on Spoliation (Dkt. 2197-4),

13   Defendants have also engaged in severe, bad faith evidence spoliation beyond that disclosed by the

14   Jacobs Documents.  Text messages between Levandowski and Uber personnel, including Travis

15   Kalanick and Nina Qi during the negotiations for Uber's acquisition of Ottomotto, were destroyed.  (*Id.*

16   at 7-9.)  Ottomotto executives, including Anthony Levandowski and Lior Ron deleted, in real time,

17   communications regarding Ottomotto's formation and early development.  (*Id.* at 11-12.)  Further, as

18   discussed below (*infra* Section II.A.5), Defendants ███████████████████████████

19   ███████████████████████████████████████████████████████████

20   ██████.  (*See also* Dkt. 2197-4 at 12-13.)  Also, as explained above (*supra* Section II.A.2),

21   Levandowski claimed to Stroz that while he was an executive at Ottomotto and a consultant for Uber,

22   and at the direction of Uber's then-CEO Travis Kalanick, he ████████████████████████

23   ████████████████████.  (*See also* Dkt. 2197-4 at 10-11.)  This

24   intentional, bad-faith destruction of evidence occurred at a time when Uber and Ottomotto—both their

25   own admission in this litigation and elsewhere—reasonably anticipated litigation with Waymo regarding

26   the very claims at issue here.[24]  (*Id.* at 2-7.)  All of this spoliation of evidence by Defendants is incredibly

27   ---

28   [24]   Additionally, an email produced from Stroz Friedberg's internal files indicates that after the due diligence report was prepared, John Gardner—Anthony Levandowski's personal attorney—sent what

troubling, as it occurred during Ottomotto's formative stages, likely breaking the clearest chain of evidence that would trace Uber's current technology back to Waymo and resulting in the loss of contemporaneous documents reflecting the knowledge and intent of Uber.

### 4. Defendants Withheld Information And Discovery Regarding Levandowski's Two Non-Uber Laptops "Used for Uber Work."

Since the outset of the case, the centerpiece of Defendants' defense has been that there was no evidence that stolen Waymo files ever made it to "Uber's servers."  Because Ottomotto and Uber policy allowed Levandowski to use non-Uber devices for work, the existence and contents of any such computers is critical evidence, even if they are not so-called "Uber servers."  Forensic investigation of the computers Levandowski provided to Stroz (much of which was uncovered by Waymo's own analysis after the Federal Circuit ruling) only highlighted that relevance, given that Stroz failed to collect from Levandowski, let alone "vault," devices and external media that may well have been used to copy and transfer Waymo trade secret files.  (Dkt. 2063 at ¶¶ 25-53.) However, as set forth in Waymo's Second Supplemental Brief in Support of its Motion for an Order to Show Cause (Dkt. 2053-4) and Motion for Jury Instruction Based on Spoliation (Dkt. 2197-4), Defendants concealed information and discovery about at least two off-server Levandowski laptops.

Recounting the timeline of Defendants' evolving representations and disclosures about these computers takes at least eight pages.  (Dkt. 2053-4 at 3-10.)  Waymo therefore only summarizes some of the most salient issues. On April 20, 2016— just six days after receiving Jacobs' resignation email—Angela Padilla sent an email to Levandowski, cc-ing Kalanick, stating that "I understand that there are two laptop computers in your possession that you've used for Uber work that have not yet been provided to us for inspection in the Waymo litigation. ██████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████."  (Ex. 63 [UBER00324612] (emphasis in original).)  Defendants withheld this email as privileged until Waymo moved to compel based on

---

Eric Friedberg characterized as a "████████████████████" (Ex. 50), which letter Uber is currently withholding on its privilege logs.  (See Ex. 51 at entry 4889.)

1   Defendants' improper use of the privilege as a sword and shield, and it was not produced to Waymo

2   until September 21—after the close of fact discovery.

3            Unknown to Waymo at the time (or the Court) – who was told **repeatedly** by Defendants

4   that they did not have access to Levandowski's personal computers because Levandowski was being

5   uncooperative – sometime in April and/or May, "[a]t Uber's request, Levandowski provided the two

6   computers to Goodwin [Levandowski's attorneys in the Google-Levandowski arbitration, as well

7   as counsel for Otto Trucking] for Goodwin to run searches provided by Uber.  Goodwin ran those

8   searches and provided the results to Uber."  (Dkt. 2019-1 [10/17/2017 R. Walsh Declaration] at 1-

9   2.)   Defendants then produced seven documents purportedly from Levandowski's non-Uber

10  computers to Waymo, without indicating that they came from the supposedly inaccessible

11  computers.  After the close of fact discovery, Uber's hired expert from Stroz included the computers

12  among those searched as part of his report on "whether any Waymo LLC ('Waymo') confidential

13  material was placed on Uber's computer systems."  (Dkt. 2017-5 [9/7/2017 Expert Report of Kevin

14  Faulkner] at 1.)  To date, Waymo still does not know what searches were purportedly run, what

15  documents may have been withheld, what documents had been destroyed before the search, and

16  what happened to the laptops (and any forensic artifacts of same) after Goodwin Procter ran the

17  searches for Uber.

18           In addition to concealing communications about these non-Uber computers behind a range

19  of purported privileges (attorney-client, Fifth Amendment, common-interest), Defendants and their

20  experts withheld even facts.  As just one example, on May 22, just five days after "Goodwin Procter

21  transmitted the results of the searches of Levandowski's computers to Morrison & Foerster" (Dkt.

22  2018-3 [10/17/2017 A. González Declaration] at 1), Waymo served its First Set of Expedited

23  Interrogatories, including one asking Uber to "**IDENTIFY all** Uber Devices and **Non-Uber Devices**

24  . . . that **LEVANDOWSKI has used** . . . or that **LEVANDOWSKI could have used** to access any

25  of DEFENDANTS' Networks[.]"  (Ex. 64 [1st Set of Expedited Rogs] at Interrogatory No. 3

26  (emphasis added).)  Uber's response, on June 5, identified only one responsive "personal MacBook

27  Pro (not issued by Uber)" that was used "to access Uber's networks[.]"  (Ex. 65 [Uber's Response

28  to 1st Set Expedited Rogs] at 5-6.)  At that time, of course, Padilla, Kalanick, and Morrison &

Foerster all knew that Levandowski had *two* non-Uber computers (both of which, according to Faulkner's expert report, were MacBook Pros) responsive to the Interrogatory.  On June 21, Waymo moved to a compel "a complete response to Interrogatory No. 3." (Dkt. 681-4 at 7).  In opposition, Uber filed a declaration from its hired expert Faulkner, that stated that "[m]y team at Stroz Friedberg worked for counsel for Uber and Uber to investigate what information the company had related to the devices used by Anthony Levandowski on Uber's network" and that "[b]ased on Stroz Friedberg's investigation to date, Stroz Friedberg has not identified any other Levandowski devices that accessed Uber's network" beyond those disclosed in the interrogatory response.  (Dkt. 749-8.)  Judge Corley denied Waymo's motion, ruling that "[w]ith the filing of the Declaration of Kevin Faulkner, Uber's response is sufficient." (Dkt. 881 at 2.)

To date, Defendants have never provided the factual basis for Padilla's April 20, 2016 "understand[ing]" in her letter to Levandowski that Levandowski used the second MacBook Pro "for Uber work," instructing Padilla not to answer questions about conversations she had with anyone about the laptops other than Levandowski's lawyers on grounds of privilege and/or work product protection.  (Ex. P [10/2/2017 A. Padilla Dep. Tr.] at 58:21-66:16.)

The upshot of this convoluted procedural history is that Defendants have claimed, in formal discovery channels, that they did not have any access to Levandowski's personal devices.  At the same time, however they secretly arranged for Goodwin Proctor to conduct some limited searches on these devices that could be used in their forensic expert reports to justify their claims that "the files never made it to Uber"—all the while shrouding the entire process and methodology in privilege and avoiding producing of harmful evidence on the laptops.  This is completely improper.

### 5. Defendants Structured the Tyto "Acquisition" to Destroy All Tyto Email Archives

As explained in Waymo's Motion for Jury Instruction Based on Spoliation (Dkt. 2197-4), Tyto—a LiDAR company owned and controlled by Levandowski and through which Defendants improperly acquired Waymo's Trade Secret No. 90—was "acquired" by Defendants in a deal structured to exclude, and then destroy, all Tyto email archives.  Important communications between Levandowski, James Haslim, Kalanick, and others involved in Tyto's LiDAR work and/or acquisition have either been

1   destroyed, withheld on grounds of purported privileges, or are otherwise missing.

2        Uber executives began discussing "████████████████" with Levandowski in mid-

3   January 2016, when Levandowski was still a Google employee.  (*See* Ex. 66 [UBER00068740].)

4   According to John Bares, then-head of ATG, "Tyto" was the "████████████" that "████████████████

5   ████████" (Ex. 67 [UBER00218264].)  An ████████ line item for the Tyto "████████" was included in

6   the first Newco Operating Plan sent to Uber.  (Ex. 68 [UBER00218400 and UBER00218401].  The

7   April 11 Put Call Agreement, signed by then-Uber CEO Travis Kalanick, required Ottomotto to "████

8   ████████████████████████████████████████████████████████████████████████████████████" (Ex.

9   69 [UBER00016983] at Section 4.3.)

10       One week later, late on the evening of April 17/early morning of April 18, Levandowski spoke

11  with Kalanick, texting him afterwards, "████████████████████████████████████" (Ex. 70

12  [UBER00073859].)  Later on April 18, Levandowski texted Lior Ron, "████████████████████████

13  ████████████████████████████████████" (Ex. 71 [RON0022532] (emphasis added).))

14  A little over an hour later, Ron texted Levandowski, "████████████████████████████████." (Ex.

15  72 [RON0022531] (emphasis added).)  The Ottomotto-Tyto term sheet was executed on April 28, with

16  no involvement by any of Defendants' attorneys until just the day before.  (Ex. 73 [TYTO-001331]; Ex.

17  74 [8/30/2017 Defendants' Tyto Categorical Privilege Log].)

18       Ron emailed Kalanick and Poetzscher, cc-ing Levandowski, the "████████████████████████

19  ████████████████████" on May 4.  (Ex. 75 [UBER00109892; UBER00109893; UBER00109919].)

20  That Asset Purchase Agreement excluded from the acquisition a handful of Tyto's assets, most

21  conspicuously "████████████████████████████████████████████" (*Id.* at Schedule C

22  [UBER00109922].)  The next day, Poetzscher emailed, "████████████████████████████████████

23  ████████." (Ex. 76 [UBER00071397] (emphasis added).)  On May 10, Poetzscher emailed Kalanick

24  to inform him that ████████ had "████████████." (Ex. 77 [UBER00100343].)

25       Ognen Stojanovski, Levandowski's long-time friend and Tyto's nominal "manager," testified

26  that the exclusion of the Tyto email archives from the acquisition "[p]robably originated from my side,

27  from the Tyto side," and that after the closing the emails were destroyed because "I didn't need to have

28  access to Tyto LiDAR e-mail anymore, so there wasn't any sense in paying for ongoing e-mail hosting

1   services."  (Ex. Q [7/20/2017 O. Stojanovski Dep. Tr.] at 308:3-311:2.)

2   **B.     Defendants Have Made A Habit Of Violating The Court's Orders**

3          **1.     Defendants Violated The Expedited Discovery Order And Paragraphs 2
               and 4 Of The Provisional Relief Order.**

4          The Court issued very clear orders early in the case requiring Defendants to produce to Waymo

5   any files taken by Levandowski, as well as the devices used to take them.  (Dkt. 61 at 2 ¶ 4; Dkt. 426 at

6   23 ¶ 2.)  Both deadlines passed without the return of a single one of the misappropriated files.  Moreover,

7   the Court's March 16 Expedited Discovery Order required Defendants to state "the full extent" of the

8   destruction of "any part of said downloaded materials."  (Dkt. 61 at 2 ¶ 4.)  Again, that deadline came

9   and went without the disclosure of a single instance of shredding or electronic deletion.  As explained

10  in Waymo's Motion for an Order to Show Cause (Dkt. 676-4), Reply in support of same (Dkt. 886-3),

11  Response to MoFo and Stroz's Order to Show Cause Responses (Dkt. 915), August 7 Supplemental

12  Brief in Support of its Motion for an Order to Show Cause (Dkt. 1095), September 10 Corrected

13  Supplemental Brief in Support of its Motion for an Order to Show Cause (Dkt. 1501-4), and Second

14  Supplemental Brief in Support of its Motion for an Order to Show Cause (Dkt. 2053-4), Defendants and

15  their agents willfully violated the Court's Orders.

16         Waymo discovered that Defendants' agents Stroz, Epiq, MoFo were sitting on literally

17  thousands of files that should have been, but were not, disclosed in response to the Court's Orders.  The

18  Court's PI Order required Defendants to "immediately and in writing exercise the full extent of their

19  corporate, employment, contractual, and other authority" to return the misappropriated files.  (Dkt. 426

20  at 23 ¶ 2.)  Defendants were also ordered to provide a detailed accounting of all individuals who have

21  received downloaded materials.  (*Id.* at 24 ¶ 4.)  Instead of complying with the Court's Orders,

22  Defendants concealed Stroz's possession of over 100 Levandowski devices, including several devices

23  that contained thousands of Waymo files.  (Dkt. 1501-4 at 2-4.)  These devices are not and could not be

24  protected by any privilege, but even so, they were never produced—or even disclosed on any of

25  Defendants' privilege logs.

26         Defendants also took full advantage of the lengthy appeals process over their privilege assertions

27  in order to obscure, and often misrepresent, the downloaded material described in the Stroz Report and

28

-34-

in the possession of their agents.  One particularly egregious example is the so-called "Sliver" that MoFo received in March 2017, denied having, and whose existence Waymo only learned based on an email from another of Defendants' law firms (Boies Schiller) in June.  Before the Federal Circuit rejected Defendants' meritless privilege argument, counsel at MoFo repeatedly characterized what they had as nothing more than just a "sliver" of Stroz materials.  (*See*, *e.g.*, Dkt. 1260 at 29:1-5 ("This is – this is a small sliver."))  Counsel at MoFo also repeatedly represented that none of the documents in their possession—either in this "Sliver" or among the exhibits to the Stroz Report—had been misappropriated by Levandowski from Waymo.  (*See*, *e.g., id.* at 28:8-10 ("Your Honor, the notion that Morrison & Foerster has the stolen documents or ever had the stolen documents is completely baseless.").)  In fact, as Waymo learned once the Federal Circuit ruled, the "Sliver" was over **68,000** files and many of them were photographs of confidential Waymo documents taken when Levanodwski was still working there and retained after he left.  (Dkt. 1928-4 at 13.)  But had the Federal Circuit not affirmed the Courts' orders compelling the Stroz Materials, Defendants' narrative about the "Sliver" would remain the only one known to the public, Waymo, or the Court.  (*See generally* Dkt. 2053-4 at 14-21.)

Waymo also learned that exhibits to the Stroz Report included documents that Waymo had specifically alleged to be "stolen documents."  (Dkt. 2053-4 at 14-17.)  These Waymo documents are not and could not be privileged either, but were not produced in response to any of the Court's Orders.  Nor did Defendants identify these undisputedly responsive "downloaded materials" in the Paragraph 4 accounting, referring rather to generalized categories of "**potentially** downloaded materials."  (*See*, *e.g.*, Dkt. 1170 (emphasis added).)

### 2.   Defendants Violated Paragraph 5 Of The Provisional Relief Order.

The Court's PI Order required Defendants to provide, at the outset of discovery, a "complete and chronologically organized log of all oral and written communications – including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails—wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants."  (Dkt. 426 at 25 ¶ 5.)  As set forth in Waymo's September 10 Corrected Supplemental Brief in Support of its Motion for an Order to Show Cause (Dkt. 1501-4), Defendants grossly violated that Order, failing to log hundreds of LiDAR-related communications

between Levandowski and Uber executives and engineers (including James Haslim, Travis Kalanick, Eric Meyhofer, and Daniel Gruver) until after the close of fact discovery.  Even that tardy disclosure (the fifth such supplementation of a log that was supposed to be "complete" by June 23) omitted important LiDAR communications, which Waymo had to uncover itself from Defendants' rolling productions.  As just one example, Defendants have never disclosed on any version of their Paragraph 5 logs the January 3, 2016 late-night white-boarding session Levandowski and Kalanick, in which the topics included (among other things) how "███████████████████████████████████████████████████ ████████████████████████████." (Ex. 78 [UBER00311294].)

Defendants' non-compliance with Paragraph 5 of the PI Order also highlights their discovery gamesmanship.  Defendants would routinely withhold documents from relevant custodians until the eve of their deposition, greatly prejudicing Waymo's ability to prepare exhibits and examination topics.  As just one example, Defendants first logged dozens of LiDAR text messages between Haslim and Levandowski on June 30—without corresponding Bates numbers.  Defendants did not include Bates numbers for those text messages because they hadn't yet been produced to Waymo – and would not be, for almost six weeks, until a document dump the day before Haslim's deposition.  (*See* Dkt. 1501-4 at 6-8.)  Defendants engaged in similar practices with regard to LiDAR communications between Levandowski and, among others, Scott Boehmke, Eric Meyhofer, Don Burnette, and Daniel Gruver.  (*Id.* at 7-11.)

### C.     Defendants Have Repeatedly Failed To Adequately Search For And Produce Documents In This Case.

#### 1.     Defendants Neglected To Produce Anthony Levandowski Documents From Ottomotto, Necessitating The First Trial Continuance.

Even before the continuance to investigate the Jacobs Documents, the Court was forced to continue the originally scheduled October 10 trial date based on Defendants' failure to produce documents from the most important witness in this case, Anthony Levandowski.  (Dkt. 1965 [10/3/2017 Hr'g Tr.] at 39:21-40:1 ("[A]nd then word comes from Uber that oh, my God, they had not produced Levandowski's own Ottomotto files, which seemed remarkable to me after 25 years of doing what you lawyers are doing, and now 18 years doing this, that the most important witness in the case somehow his own files got overlooked. Very suspicious.").

On September 20, counsel for Defendants represented to the Court that "Ottomotto documents were migrated onto the Uber computer system at the time that it was acquired. And, therefore, when we searched for documents in response to document requests we would have searched not only Uber but anything that may have migrated over from Ottomotto." (Dkt. 1723 [9/20/2017 Hr'g Tr.] at 37:17-38:17.) That representation turned out to be false. Seven days later, on September 27—less than 2 weeks before the original October 10 trial start date—Defendants' counsel notified Waymo that it had come to their attention that there "may be emails and documents from an Anthony Levandowski Ottomotto account that was not migrated over to Uber." (Ex. 79.) The next day, Waymo learned that this new cache of unsearched documents includes at least 16,000 emails and 85 GB of Google drive documents from an Ottomotto domain used by Levandowski. (Dkt. 1928-4 at 7.)

As Waymo noted in its October 2 Supplemental Motion for a Continuance, there was simply no excuse for Defendants' failure to produce these Levandowski documents from Ottomotto in light of Waymo's document requests (which were directed to both Uber and Ottomotto separately) and the Stroz report, which clearly disclosed to Defendants the Levandowski ottomotto.com domain from which these documents were drawn. (Dkt. 1925.) Indeed, it appears that Defendants only took action to look for the missing Levandowski Ottomotto emails at all because **Waymo's** expert noticed references to the domain in the Stroz Report and commented in his report on the suspicious lack of such emails in Defendants' document production. (*See* Dkt. 1928-4 at 9.) The withheld documents were also material to Waymo's case. For example, at least two documents from this belated production are cited elsewhere in this order of proof (*see* Exs. 15 & 96)—including one that has never been produced in any form other than in the Levandowski Ottomotto cache. (*See* Ex 96.)

On September 28, Judge Corley ordered Uber to file by noon on September 29, a declaration that details how the emails and documents were found, where they were found, and why Uber did not find them earlier. (Dkt. 1890 at 7.) Over two hours after the court-ordered deadline, Defendants filed a vague declaration from their paid expert at Stroz Friedberg, which Judge Corley found completely inadequate because it was "replete with hearsay regarding what unidentified Uber people supposedly said or did" and failed to "explain what information Uber had regarding the Levandowski Otto Accounts." (Dkt. 1903.) Defendants later filed two additional declarations (Dkts. 1912 & 1913), but as

1   Waymo explained in its Supplemental Motion for Continuance (Dkt. 1928-4 at 9), these declarations

2   were also inadequate because they failed to explain why Uber had failed to migrate the withheld

3   Ottomotto documents onto its own servers in the first place.

4        Documents from Levandowski during his time at Ottomotto obviously go to the heart of

5   Waymo's trade secret claims in this case.  To this day, Defendants have not provided any persuasive

6   explanation as to how these documents could have gone unnoticed, and have not suffered any

7   consequence for their late production.  This misconduct prejudiced Waymo's overall investigation, and

8   led directly to the first trial continuance.

9            **2.    Defendants Waited Until The Eve Of The December Trial Date To
             Produce Shred Works Receipts Relating To Levandowski's Destruction**
10           **Of The Five Drives.**

11       As discussed above (*supra* Section II.A.2), the Stroz Report indicates that Anthony

12   Levandowski was instructed by Uber management to destroy 5 hard drives of Waymo confidential

13   information, but Stroz was unable to confirm that this destruction ever occurred.  (*See*, *e.g.*, Ex. 62

14   [UBER00312684] (Stroz Report Exhibit 23, "Memorandum: Follow-Up Investigation regarding Shred

15   Works facility")).  Defendants have known the relevance of Shred Works receipts since April 2016, and

16   throughout the entirety of this litigation.  Nevertheless, Shred Works receipts in the possession of Uber

17   employees – and even in the possession of outside counsel – were withheld until just weeks before trial

18   was set to begin in December.  Although never previously briefed, this concealment and 11th hour

19   production is yet another example of Defendants' discovery misconduct.

20       According to counsel for Defendants, Rhian Morgan, former HR lead for Ottomotto and current

21   Uber ATG employee, provided Morrison & Foerster in April 2017 with a Shred Works receipt for "2

22   hard drives," dated March 1, 2016.  (Ex. 80 [11/17/2017 W. Ray email].)  Defendants withheld that

23   receipt from Waymo for the entirety of the discovery period.  At the time, the receipt would be unhelpful

24   to Uber because Waymo did not have the Stroz materials and did not have evidence of Ottomotto's

25   massive document destruction prior to the acquisition.

26       In September, the Federal Circuit Order affirmed the Courts' orders overruling Defendants'

27   privilege objections over the Stroz investigation.  At that point, the March 1, 2016 Shred Works receipt

28   was no longer particularly harmful to Uber, because it was cumulative of the spoliation documented in

the Stroz Report.  Nevertheless, the March 1, 2016 Shred Works receipt remained unproduced throughout the extended discovery period, and even until after the original trial date.

It was not until November 16 (over a month after the original trial date) that Defendants first notified Waymo of their possession of the receipt.  Significantly, Defendants only disclosed that receipt after Morgan purported to have "found" a hard copy of *another* Shred Works receipt at her house "while looking for something else."  (Ex. 81 [11/16/2017 W. Ray email].)  This receipt was dated March 14, 2016, and was for "5 hard drives."  Apparently, this receipt better fit Defendants' preferred timeline and narrative that Levandowski destroyed the 5 disks, and it was produced later that same day, along with the previously withheld March 1 receipt and another purportedly recently discovered Shred Works receipt.  Defendants also immediately added the March 14, 2016 receipt to a "fourth supplemental trial exhibit list" also served on November 16.  (Ex. 82 [11/16/2017 T. Na email].)  Defendants' offered explanation for not producing the highly relevant March 1, 2016 receipt during the discovery period was that at the time they received it from Morgan, in April 2017, "Uber was responding to multiple expedited depositions and document requests and moving to compel arbitration."  (Ex. 80 [11/17/2017 W. Ray email].)

Although Defendants offered to make Morgan available for an additional "30 minute deposition about the receipts" (*id.*), and Waymo did depose Morgan on November 21, Defendants' inexcusable delay in locating and/or producing the Shred Works receipts until after the close of fact discovery, and barely two weeks before the (then) trial date, severely prejudiced Waymo.  As just one example, Waymo was prevented from pursuing any third party discovery to investigate the authenticity of the purported March 14, 2016 Shred Works receipt.

> **D.   Defendants Have Abused The Attorney-Client Privilege Throughout This Litigation.**

Discovery arising from the Jacobs Letter has revealed a variety of practices at Uber intended to improperly game the protections of the attorney-client privilege in order to conceal information from civil litigation.  That same gamesmanship – not limited to attorney-client privilege, but extending to other privileges including the common-interest privilege and Fifth Amendment privilege – has been rampant in this case.

### 1. Defendants Cloaked the Stroz Due Diligence Process in "Work Product" Claims Only to Selectively Waive When Convenient

Defendants have aggressively asserted the attorney-client privilege in this litigation in order to delay the production of highly relevant material. The background and procedural history underlying the Stroz due diligence report and related documents is the most notorious example.

During a March 28 nonpublic conference requested by Defendants, Uber disclosed for the first-time that it was claiming a common interest privilege over a report of "due diligence" prepared by a third-party in advance of Uber's acquisition of Ottomotto. (Dkt. 131 [3/29/17 Hr'g Tr.] at 12-13.) On April 4, Anthony Levandowski—at that time the head of Uber's entire self-driving car program—moved to intervene and, invoking his own privilege against self-incrimination, asked the Court relieve Uber of its obligation to disclose the identity of the third-party who conducted the due diligence investigation. (Dkt. 147.) The Court rejected Levandowski's requested relief and on April 10 ordered Defendants to prepare a complete privilege log (Dkt. 202), but that order was partially stayed pending Levandowski's petition to the Federal Circuit for a writ of mandamus. (Dkt. 242.) Over the course of the next month, Defendants served various iterations of their bevy of privilege logs, which ultimately reflected that Defendants were withholding in excess of 3,500 due diligence related documents. All of these logs suffered from deficiencies, as Waymo outlined in its Motion to Compel production of the due diligence documents. (Dkt. 321.)

As the proceedings on Waymo's Motion to Compel unfolded, Defendants' privilege claims slowly unraveled. At the May 3 provisional relief hearing, the Court ordered Uber to finally produce the acquisition documents relating to Uber's purchase of Ottomotto. (Dkt. 502 [5/3/2017 Hr'g Tr. Public, a.m. session] at 30:14-32:16 ("That document should never have been withheld.").) And, at a May 25 hearing, Judge Corley ordered Defendants to produce an unredacted version of the deal Term Sheet. (Dkt. 516 [5/25/2017 Hr'g] at 15:25-16:23.) On June 5, Judge Corley granted Waymo's motion to compel documents predating the April 11, 2016 signing of the Uber-Ottomotto Put-Call Agreement (Dtk. 549), and on June 21, the Court overruled Defendants' request for relief from Judge Corley's order (Dkt. 685). Production of the due diligence materials, however, was delayed further by Levandowski's second petition for a writ of mandamus, which was finally denied by the Federal Circuit on September

13, 2017.

The Stroz due diligence report and related materials has proven itself to be a key piece of evidence because it clearly demonstrates that Uber was on notice of Levandowski's theft of Waymo confidential information prior to Uber acquiring Levandowski's company, installing him as its head of its self-driving car effort, and allowing him unrestricted access to use his personal computer devices for his LiDAR development work at Uber.  (Dkt. 1603-4 at 4-10.)  It is clear that Defendants created the convoluted "due diligence" apparatus, layered with and purportedly directed by attorneys, for no reason other than to establish a pretext against discoverability in civil litigation.  (*See* Dkt. 2053-4 at 14-21.)  While no Court who considered the issue was ever fooled, the overbroad assertions of privilege by Defendants and their allies did succeed in depriving Waymo of critical evidence for nearly six full months and until well after ordinary discovery had closed.

As with other non-privileged documents that Defendants have never intended to see the light of day in litigation, all of the Stroz materials were marked with "Privileged and Confidential" or "Attorney Work Product" designations.  (*See, e.g.*, Dkt. 1928-24 [Stroz Report].)  While Defendants zealously fought to conceal the results of the Stroz investigation on grounds of privilege and work product protection, they did not hesitate to produce Stroz-related documents whenever doing so would be helpful to their overall litigation position – regardless of whether the document was marked as "Privileged."  For example, Defendants produced unredacted copies of the Stroz retainer letters (labeled "Privileged and Confidential") to Waymo on July 7, months before the Federal Circuit Order, in order to rely on them for their Brief Regarding Imputation (filed the same day).  (*See* Dkt. 824-1; Ex. 87 [UBER00086466]; Ex. 88 [UBER00086483].)

Defendants also attempted to extend the (frivolous) "Stroz Due Diligence Privilege" to conceal documents that were not generated by or for Stroz.  In addition to the underlying source materials collected by Stroz (*see supra*, Section II.B.1.), Defendants, for example, initially withheld dozens of Ottomotto non-privileged "Employee Attestations" (which attested that the employees had not, among other things, misappropriated trade secrets from their former employer) because they were attached to emails that had been logged on a 700 page privilege log prepared in response to the March 16 Expedited

Discovery Order.[25]  Defendants subsequently produced the vast majority of the Employee Attestations in May.  (*See* Ex. 89 [Cross Reference for 4/10 Priv Log and Prod 33]; Ex. 90 [UBER00017154].)  However, Defendants continued to withhold Attestations for the five "Diligenced Employees" even though these, too, were not privileged.  Once these long-concealed Employee Attestations were finally produced, after the Federal Circuit ruling, it became apparent why Defendants tried to hide them: unlike the produced Employee Attestations, Levandowski, for example, did not attest that he had not stolen trade secrets from his former employer.  (Ex. 103 [UBER00319664].)

### 2. Defendants Misused "Attorney-Client Privilege" Designations to Avoid Discovery

Similar to ThreatOps personnel, Uber executives and employees in ATG and business units were trained to designate non-privileged materials with "Attorney-Client Privilege" headers.  Indeed, Defendants have produced dozens of documents with such markings that are not, and never have been, privileged, but which were apparently designated that way by Uber personnel in an attempt to avoid discovery in civil litigation.  Critical, non-privileged documents, such as the "Project Zing Review" presentation that Kalanick made to Uber's Board of Directors on April 11 to approve the Ottomotto deal, are labelled with "Privileged and Confidential" designations on every page.  Moreover, these erroneous markings have repeatedly delayed production of non-privileged documents due to apparent confusion by Defendants' outside counsel.  As just one example, Uber produced in July redacted versions of two ATC "Competitive Intelligence Updates" emails, both of which had been circulated with "Attorney Client Privilege" headers  (Ex. 83 [UBER00099182]; Ex. 84 [UBER00099282].)  It was apparently not until the following month that Defendants' determined that the headers were incorrectly applied in the first instance, and produced unredacted versions of these non-privileged documents.   (Ex. 85 [UBER00218666]; Ex. 86 [UBER00218437].)

### 3. Defendants Have Used the Attorney-Client Privilege As Both a Sword and a Shield

The Court is well aware of Defendants' repeated use of the privilege as both a sword and a shield, and in particular Defendants' "slick practice of including its lawyers in meetings and communications

---

[25]   A subset of these "Employee Attestations" were also produced in April, but the majority were produced for the first time with the May 22 production.

and deciding after the fact if a lawyer was actually included for the purpose of providing legal advice, all in accordance with what happens to be convenient for Uber's case." (Dkt. 1267 at 3.)  The specific conduct at issue in that Order—Angela Padilla's declaration describing a conversation with Levandowski and Kalanick that was intended to support Defendants' now-rejected "Bonus Theory"— was not only an attempt to abuse the attorney-client privilege, but also, as explained in Waymo's August 7 Supplemental Brief in Support of its Motion for an Order to Show Cause (Dkt. 1095), a violation of the Court's Expedited Discovery Order.  That Order required Defendants to disclose any deletion of downloaded material by no later than March 31, 2017.  The conversation that Padilla disclosed in her publicly filed declaration (Dkt. 1082-1) took place on March 29, just two days before that deadline.  However, it was not disclosed until months later – after Defendants' hatched the "Bonus Theory" in an attempt to turn Levandowksi's pleading of the Fifth Amendment to their own advantage.

> ### 4.   Defendants Have Used the Fifth Amendment and Common Interest Privileges as Both a Sword and a Shield

As set forth in Waymo's September 10 Corrected Supplemental Brief in Support of its Motion for an Order to Show Cause (Dkt. 1501-4), Defendants have improperly used Levandowski's assertion of the Fifth Amendment privilege as both a sword and shield.  Since (belatedly) terminating Levandowski, Defendants have cynically shifted their theory of the case—instead of defending Levandowski, they are now trying to throw him under the bus.  As part of the new litigation strategy, Defendants have been touting Levandowski's "non-cooperation" on the one hand while withholding any discovery to the contrary under claims of "privilege."   Judge Corley recognized Defendants' gamesmanship in finding that Uber had waived privilege over the April 20 Padilla email about the two concealed Levandowski non-Uber laptops.  (Dkt. 1506.)  Since then, Defendants' have continued to obstruct any discovery into Levandowski's involvement with their defense in this case.  For example, at Angela Padilla's October 2 deposition, she was repeatedly instructed not to answer questions about Levandowski's cooperation with defense counsel regarding (among other things) the May 3, 2017 Zoom meeting he attended on "Judge Alsup's order, 10 questions"; questions about LiDAR technology; the identification of relevant witnesses; and information for use at depositions taken by Defendants.   (Ex. P [10/2/2017 A. Padilla Dep. Tr.] at 55:11-57:22.)  Similarly, at Levandowski's October 18 deposition,

counsel for Defendants instructed Levandowski not to answer questions about Uber's involvement in the Goodwin Procter-led searches of the two non-Uber laptops "used for Uber work." (Ex. R [10/18/2017 A. Levandowski Dep. Tr.] at 444:13-451:4.)  And Defendants' sword/shield approach was on full display at Levandowski's August 22 deposition, where they first asked him questions purporting to demonstrate his refusal to cooperate. (*E.g.*, Ex. S [8/22/2017 A. Levandowski Dep. Tr.] at 271:13-272:18 ("MS. DUNN: Q. But you would not cooperate with Uber's investigation in this case, right?" A: invocation of the Fifth Amendment."), but when **Waymo** asked questions about this purported non-cooperation (*e,g.*, "Q Was -- what specifically did you tell Uber you would not do in relation to Uber's investigation in relation to this litigation?"; "what specifically did Uber's lawyers tell you to do in relation to Uber's investigation, in relation to this litigation, that you refused to do?"), Uber instructed Levandowski not to answer on grounds of attorney-client privilege. (*Id.* at 296:11-299:10.)

**E.     Defendants Have Obstructed Discovery into Tyto**

From the very outset of the case, Defendants and their agents have obstructed Waymo's attempts to unravel the truth about Tyto.  Tyto was a LiDAR company that Levandowski set-up to misappropriate and exploit Waymo's trade secret information.  (*Supra* Section II.A.5.)  As discussed above, the acquisition of Ottomotto by Uber was structured so that Ottomotto would first acquire Tyto, ensuring that Tyto's stolen technology would be available to Uber after closing.  (*Id.*)

Tyto was owned by an entity called the Sandstone Group, which in turn was owned by an Alaska irrevocable trust called the Bismuth Trust.  Uber and its witnesses, however, refused to come clean regarding the details of Tyto's ownership and management structure.  Only after serving more than a dozen subpoenas was Waymo able to determine that it was Levandowski who ultimately owned and controlled Tyto through a byzantine structure of shell companies.[26]

Both Defendants and their witnesses concealed Levandowski's involvement with Tyto.  Waymo

---

[26]    In order to penetrate the "Russian nesting doll" ownership structure of Tyto (Dkt. 1887-8 [Timmins Expert Report] at 27-28), and identify Anthony Levandowski at its center, Waymo was forced to serve subpoenas on lawyers Ognen Stojanovski and John Gardner; accountants Stephen Nunnemaker and Nunnemaker & Associates, Inc.; holding companies Sandstone Group LLC; Narwhal Energy, LLC; and Pouch Holdings, LLC; trustees ████████████ and ████████████; and the Bismuth Trust.

included an interrogatory in its first set seeking information about "the ownership of TYTO and/or ODIN WAVE," but in response, Defendants identified only "███████████████." (Ex. 65 [Responses to 1st Set Exp. Rogs].)  Defendants argued that they could not provide additional information about Tyto's ownership because "we are running into confidentiality issues." (Ex. 92 [6/9/2017 S. Rivera email].)  As for Defendants' witnesses, at deposition they were less than forthcoming.  For example, James Haslim, Uber's lead LiDAR hardware engineer who submitted a declaration in opposition to Waymo's motion for a preliminary injunction, was a former Tyto employee.  When Haslim was deposed early in this case (*see* Dkt. 180), he testified "I don't know of any involvement of Anthony Levandowski and Tyto LiDAR or Oden Wave."   (Ex. T [4/18/2017 J. Haslim Dep. Tr.] at 17:2-6.)  However, subsequent discovery casts doubt on Haslim's testimony.

Haslim admitted that Levandowski personally contacted him and interviewed him about the Tyto position while Haslim was still at Velodyne.  (Ex. U [8/9/2017 J. Haslim Dep. Tr.] at 493:12-25, 495:14-21; Ex. T [4/18/2017 J. Haslim Dep. Tr.] at 22:7-23:12.)  Once he started at Tyto, in September 2016, Haslim prepared a list of "Questions for Anthony" in order to orient himself to the status of Tyto's technical development.  (Ex. 101 [TYT0-001600]; Ex. U [8/9/2017 J. Haslim Dep. Tr.] at 522:18-523:9; 531:1-6.)  In his work at Tyto, Haslim ordered LiDAR parts that were invoiced directly to Levandowski.  (Ex. 100 [TYTO-001599]; Ex. 101 [TYTO-001600].)  And, Levandowski personally instructed Haslim on the proprietary fiber laser design claimed in Waymo's Trade Secret No. 90.  (Ex. V [5/4/2017 J. Haslim Dep. Tr.] at 129:24-132:13.)  Of particular note, Haslim texted Levandowski on May 1, 2016, immediately after the Tyto term sheet was signed, noting that "██ ████████████████████████████████████████████████████████████████ ██████████████" and saying he was "████████████████████████████████████████ ███████.  (Ex. 102 [Haslim-AL text message compilation] at UBER00199177.)  According to Haslim, in response to that text, Levandowski "ma[d]e an adjustment to my bonus associated with this acquisition" – from $████████ to $████████, i.e. over ████████████ dollars.  (Ex. U [8/9/2017 J. Haslim Dep. Tr.] at 564:23-565:11; 573:14-574:10.)  In light of all of this evidence, Haslim's testimony that he did not know of "any involvement of Anthony Levandowski" in Tyto is simply not credible.

1    Lior Ron—Anthony Levandowski's co-founder of Ottomotto and currently a Senior Director

2    at Uber—similarly denied any knowledge of an affiliation between Levandowski and Tyto.  (Ex. W

3    [6/19/2017 L. Ron Dep. Tr.] at 175:8-177:22; 179:19-182:3.)  But in March 2016, Ron asked Ognen

4    Stojanovski (Tyto's purported manager) to ███████████████████████████████████, and

5    Stojanovski informed him that ████████████████ (which was the code name for Tyto) "█████

6    ██████████████████████████████████████████████."   (Ex.  93

7    [STROZ_R_000176128; Ex. 94 [STROZ_R_000176134].)  Instead of asking why the Ottomotto-Tyto

8    deal would be a "████████████████████" (which it would not be absent an affiliation between

9    Levandowski  and  Tyto),  Ron  asked  Stojanovski,  "████████████████████████████████

10   ██████████████████████████"  (Ex. 95 [STROZ_R_000176238].)  Additionally, on

11   April 19, 2016, Ron emailed Levandowski about ██████ (i.e., Tyto), asking whether ███████ would

12   be "██████████" or "███████████████████."  (Ex. 96 [UBER_AL_00014042].[27])  ██████

13   obviously referred to Stojanovski, and ████████ obviously referred to the Bismuth Trust (through which

14   Levandowski owned and controlled Tyto).  Two days later, Stojanovski wrote Ron, regarding the Tyto

15   deal, that "█████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████."  (Ex. 97 [RON0024085].)  Again, all of this

18   evidence cannot be squared with Ron's testimony that he was unaware of Levandowski's affiliation with

19   Tyto.[28]

20       Finally, Ognen Stojanovski, currently Uber ATG's Head of Policy and Government Relations,

21   also implausibly claimed to be unaware of Levandowski's involvement in Tyto.  (Ex. Q [7/20/2017 O.

22

23   _____

24   [27]   This email was not produced until after the close of fact discovery, as it was among the
     missing Levandowski Ottomotto emails that necessitated the first continuance.  (*Supra* Section

25   II.C.1.)

26   [28]   Discovery into Tyto and witnesses' knowledge regarding same has also been obstructed by,
     among other things, the withholding of communications related to the Tyto deal between Ron and

27   Stojanovski on the grounds of purported attorney-client privilege, even though they were ostensibly on
     opposite sides of the transaction.  (*See, e.g.*, Ex. 98 [Tyto Privilege Log] at Entry Nos. 13- 15, 84, 87,

28   88, 99, 100-103.)

1    Stojanovski Dep. Tr.] at 28:25-37:20.)  Yet, Stojanovski was the "manager" of Tyto and of Tyto's

2    nominal owner, the Sandstone Group.  Stojanovski was also copied on a July 16, 2013 email from

3    Levandowski to ███████████████████████████████████ in which Levandowski

4    ██████████ that ██████████████████████████████████.  (Ex.  X

5    [STROZ_R_000000806].)  Stojanovswki also admitted that he was recommended for the Sandstone

6    Group role by Levandowski, and Levandowski had made a series of loans to Sandstone in 2015 (which

7    were used to capitalize Tyto), totaling approximately $████████.[29]  (Ex. Q [7/20/2017 O. Stojanovski

8    Dep. Tr.] at 30:20-33:15; 128:17-132:20.)  Stojanovski's claim that he did not know of Levandowski's

9    involvement with Tyto rings hollow.

10           The concealment by Defendants and their witnesses of Levandowski's central role at Tyto

11   is particularly nefarious.  As discussed above, James Haslim has admitted that while Levandowski

12   was a Google employee, he personally instructed Haslim regarding the details of LiDAR technology

13   that Waymo claims as Trade Secret No. 90.  (*Supra* Section II.A.5.)  Haslim then admitted that this

14   technology, developed at Tyto, was then adopted into Uber's own Spider LiDAR unit:

15           **Q**. ███████████████ that was incorporated into the Spider
             project was a continuation of the ███████████ that was done at Tyto
16           LiDAR, wasn't it?

17           **THE WITNESS**: The ███████████ investigation was developed
             using similar parts and a similar architecture or approach to the ███████
18           ███████████████ that Anthony first made me aware of.

19   (Ex. U [8/9/2017 J. Haslim Dep. Tr.] at 509:8-17.)  Thus, in attempting to conceal Levandowski's

20   role at Tyto, Defendants were, in fact, concealing evidence that their own long-range LiDAR

21   program was tainted by Waymo intellectual property.

22

23

24

25

26

27        [29]  Over 150 known communications between Stojanovski and Levandowski have been withheld
          based on an asserted attorney-client privilege.  (*See* Ex. 98 [Tyto Privilege Log] at Entry Nos. 7, 16-
28        18, 20, 33-34, 37, 40-41, 44-45, 47, 50, 65, 81, 83; *generally* Ex. 99 [AL Stroz Privilege Log].).

1    DATED:  January 12, 2018                QUINN EMANUEL URQUHART & SULLIVAN,
                                             LLP
2

3                                            By  /s/ Charles K. Verhoeven
                                                 Charles K. Verhoeven
4                                                Attorneys for WAYMO LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      David A. Perlson (Bar No. 209502)
3     davidperlson@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
4     melissabaily@quinnemanuel.com
      John Neukom (Bar No. 275887)
5     johnneukom@quinnemanuel.com
      Jordan Jaffe (Bar No. 254886)
6     jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California 94111-4788
    Telephone:     (415) 875-6600
8   Facsimile:     (415) 875-6700

9   Attorneys for WAYMO LLC

10

                    UNITED STATES DISTRICT COURT
11

        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
12

13  WAYMO LLC,                              CASE NO. 3:17-cv-00939-WHA

                 Plaintiff,                 **DECLARATION OF JEFF NARDINELLI**
14

          vs.
15

16  UBER TECHNOLOGIES, INC.;
    OTTOMOTTO LLC; OTTO TRUCKING
    LLC,
17

18               Defendants.

19

20

21

22

23

24

25

26

27

28

I, Jeffrey W. Nardinelli, hereby declare as follows.

1.      I am a member of the bar of the State of California and an associate with Quinn Emanuel Urquhart & Sullivan, LLP, counsel for Plaintiff Waymo LLC ("Waymo").  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently as follows.

2.      Attached hereto as Exhibit 1 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00326403.

3.      Attached hereto as Exhibit 2 is a true and correct copy of a letter from Clayton Halunen to Angela Padilla dated May 5, 2017.

4.      Attached hereto as Exhibit 3 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00332644.

5.      Attached hereto as Exhibit 4 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00330793.

6.      Attached hereto as Exhibit 5 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00334501.

7.      Attached hereto as Exhibit 6 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00332471.

8.      Attached hereto as Exhibit 7 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00342163.

9.      Attached hereto as Exhibit 8 is a true and correct copy of Uber's Privilege Log Pursuant to Order Regarding Discovery Disputes (ECF No. 2415), provided to Waymo by counsel for Defendants on December 22, 2017.

10.     Attached hereto as Exhibit 9 is a true and correct copy of Privilege Log of MoFo Communications Before November 22, 2017 that Substantively Refer to (1) 4/14/17 Jacobs Resignation Email; (2) 5/5/17 Jacobs Ltr; (3) Jacobs Settlement Agmt, provided to Waymo by counsel for Defendants on December 12, 2017.

11.     Attached hereto as Exhibit 10 is a true and correct copy of Supplemental Privilege Log of MoFo Communications Before November 22, 2017 that Refer to (1) 4/14/17 Jacobs

Resignation Email; (2) 5/5/17 Jacobs Ltr; (3) Jacobs Settlement Agmt, provided to Waymo by counsel for Defendants on December 16, 2017.

12.     Attached hereto as Exhibit 11 is a true and correct copy of Waymo LLC's First Set of Interrogatories to Defendants Relating to Issues in Jacobs Letter, dated December 8, 2017.

13.     Attached hereto as Exhibit 12 is a true and correct copy of Defendants' Objections and Responses To Waymo's Requests For Production Relating To Issues In Jacobs Letter (Nos. 1-40), dated December 11, 2017.

14.     Attached hereto as Exhibit 13 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00336619.

15.     Attached hereto as Exhibit 14 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00330967.

16.     Attached hereto as Exhibit 15 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00329740.

17.     Attached hereto as Exhibit 16 is a true and correct copy of an email from Scott Boehmke to James Haslim dated October 28, 2016.

18.     Attached hereto as Exhibit 17 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00338182.

19.     Attached hereto as Exhibit 18 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00330929.

20.     Attached hereto as Exhibit 19 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00328998.

21.     Attached hereto as Exhibit 20 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00328994.

22.     Attached hereto as Exhibit 21 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00336616.

23.     Attached hereto as Exhibit 22 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00336631.

24.     Attached hereto as Exhibit 23 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00330949.

25.     Attached hereto as Exhibit 24 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00330899.

26.     Earmarked as Exhibit 25 is a true and correct copy of video footage produced by Uber in this action bearing Bates number UBER00336954, which will be lodged with the Court.

27.     Earmarked as Exhibit 26 is a true and correct copy of video footage produced by Uber in this action bearing Bates number UBER00336963, which will be lodged with the Court.

28.     Attached hereto as Exhibit 27 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00327811.

29.     Attached hereto as Exhibit 28 is a true and correct copy of an Inventory of Non-Attributable Devices provided to Waymo by counsel for Defendants on December 4, 2017.

30.     Attached hereto as Exhibit 29 is a true and correct copy of an Inventory of Non-Attributable Devices provided to Waymo by counsel for Defendants on December 22, 2017.

31.     Attached hereto as Exhibit 30 is a true and correct copy of an inventory of Personnel Who Have Used Wickr or Similar Platform, provided to Waymo by counsel for Defendants on December 4, 2017.

32.     Attached hereto as Exhibit 31 is a true and correct copy of an inventory of Personnel Who Have Used Wickr or Similar Platform, provided to Waymo by counsel for Defendants on December 22, 2017.

33.     Attached hereto as Exhibit 32 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00329010.

34.     Attached hereto as Exhibit 33 is a true and correct copy of Waymo's Verified Response to Discovery Order (Dkt. No. 2454), dated January 5, 2018.

35.     Attached hereto as Exhibit 34 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00336585.

36.     Attached hereto as Exhibit 35 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00328118.

37.     Attached hereto as Exhibit 36 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00340305.

38.     Attached hereto as Exhibit 37 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00337031.

39.     Attached hereto as Exhibit 38 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00342026**.**

40.     Attached hereto as Exhibit 39 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00076799.

41.     Attached hereto as Exhibit 40 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00340637.

42.     Attached hereto as Exhibit 41 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00340616.

43.     Attached hereto as Exhibit 42 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00336927.

44.     Attached hereto as Exhibit 43 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00336919.

45.     Attached hereto as Exhibit 44 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00341463.

46.     Attached hereto as Exhibit 45 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00336591.

47.     Attached hereto as Exhibit 46 is a true and correct copy of an email between counsel in this action dated November 30, 2017.

48.     Attached hereto as Exhibit 47 is a true and correct copy of an email between counsel in this action dated December 7, 2017.

49.     Attached hereto as Exhibit 48 is a true and correct copy of Defendants' First Supplemental Responses to Waymo's First Set of Interrogatories Relating to Issues in Jacobs Letter (No. 1), dated January 8, 2018.

1       50.      Attached hereto as Exhibit 49 is a true and correct copy of a document produced by

2  Uber in this action bearing Bates number UBER00338432.

3       51.      Attached hereto as Exhibit 50 is a true and correct copy of a document produced by

4  Stroz Friedberg in this action bearing Bates number STROZ_0007034.

5       52.      Attached hereto as Exhibit 51 is a true and correct copy of the Amended Privilege

6  Log Associated with Stroz Friedberg, LLC's Sept. 16, 2017 Production of Docs, provided to

7  Waymo by counsel for Uber on September 27, 2017.

8       53.      Attached hereto as Exhibit 52 is a true and correct copy of the Declaration of Eric

9  Tate Regarding Jacobs Communications, dated December 15, 2017.

10       54.      Attached hereto as Exhibit 53 is a true and correct copy of the Declaration of

11  Charles Duross Regarding Jacobs Communications, dated December 15, 2017.

12       55.      Attached hereto as Exhibit 54 is a true and correct copy of a document produced by

13  Uber in this action bearing Bates number UBER00334507.

14       56.      Attached hereto as Exhibit 55 is a true and correct copy of the Declaration of

15  Clayton Halunen, dated January 11, 2018..

16       57.      Attached hereto as Exhibit 56 is a true and correct copy of a document produced by

17  Uber in this action bearing Bates number UBER00326370.

18       58.      Attached hereto as Exhibit 57 is a true and correct copy of a document produced by

19  Uber in this action bearing Bates number UBER00326393.

20       59.      Attached hereto as Exhibit 58 is a true and correct copy of a document produced by

21  Uber in this action bearing Bates number UBER00326386.

22       60.      Attached hereto as Exhibit 59 is a true and correct copy of an email between

23  counsel in this action dated January 11, 2018.

24       61.      Attached hereto as Exhibit 60 is a true and correct copy of a document produced by

25  Stroz Friedberg in this action bearing Bates number STROZ_001557.

26       62.      Attached hereto as Exhibit 61 is a true and correct copy of a document produced by

27  Uber in this action bearing Bates number UBER00324084.

28

63.     Attached hereto as Exhibit 62 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00312684.

64.     Attached hereto as Exhibit 63 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00324612.

65.     Attached hereto as Exhibit 64 is a true and correct copy of Waymo's First Set of Expedited Interrogatories Pursuant to Paragraph Six of the May 11, 2017 Preliminary Injunction Order (Nos. 1-9), dated May 22, 2017.

66.     Attached hereto as Exhibit 65 is a true and correct copy of Defendants' Responses to Waymo's First Set of Expedited Interrogatories Pursuant to Paragraph Six of the May 11, 2017 Preliminary Injunction Order (Nos. 1-9), dated June 5, 2017.

67.     Attached hereto as Exhibit 66 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00068740.

68.     Attached hereto as Exhibit 67 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00218264.

69.     Attached hereto as Exhibit 68 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00218400.

70.     Attached hereto as Exhibit 69 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00016983.

71.     Attached hereto as Exhibit 70 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00073859.

72.     Attached hereto as Exhibit 71 is a true and correct copy of a document produced by Lior Ron in this action bearing Bates number RON0022532.

73.     Attached hereto as Exhibit 72 is a true and correct copy of a document produced by Lior Ron in this action bearing Bates number RON0022531.

74.     Attached hereto as Exhibit 73 is a true and correct copy of a document produced by Tyto in this action bearing Bates number TYTO-001331.

75.     Attached hereto as Exhibit 74 is a true and correct copy of Defendants' Tyto LiDAR Acquisition Categorical Privilege Log, dated August 30, 2017.

76.     Attached hereto as Exhibit 75 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00109892.

77.     Attached hereto as Exhibit 76 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00071397.

78.     Attached hereto as Exhibit 77 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00100343.

79.     Attached hereto as Exhibit 78 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00311294.

80.     Attached hereto as Exhibit 79 is a true and correct copy of an email between counsel in this action dated September 27, 2017.

81.     Attached hereto as Exhibit 80 is a true and correct copy of an email between counsel in this action dated November 17, 2017.

82.     Attached hereto as Exhibit 81 is a true and correct copy of an email between counsel in this action dated November 16, 2017.

83.     Attached hereto as Exhibit 82 is a true and correct copy of an email between counsel in this action dated November 16, 2017.

84.     Attached hereto as Exhibit 83 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00099182.

85.     Attached hereto as Exhibit 84 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00099282.

86.     Attached hereto as Exhibit 85 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00218666.

87.     Attached hereto as Exhibit 86 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00218437.

88.     Attached hereto as Exhibit 87 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00086466.

89.     Attached hereto as Exhibit 88 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00086483.

90.     Attached hereto as Exhibit 89 is a true and correct copy of the Cross-Reference Of Employee Attestations Produced In Uber_033 With April 10, 2017 Privilege Log Entries, provided to Waymo by counsel for Defendants on May 26, 2017.

91.     Attached hereto as Exhibit 90 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00017154.

92.     Attached hereto as Exhibit 91 is INTENTIONALLY LEFT BLANK.

93.     Attached hereto as Exhibit 92 is a true and correct copy of an email between counsel in this action dated June 11, 2017.

94.     Attached hereto as Exhibit 93 is a true and correct copy of a document produced by Stroz Friedberg in this action bearing Bates number STROZ_R_000176128.

95.     Attached hereto as Exhibit 94 is a true and correct copy of a document produced by Stroz Friedberg in this action bearing Bates number STROZ_R_000176134.

96.     Attached hereto as Exhibit 95 is a true and correct copy of a document produced by Stroz Friedberg in this action bearing Bates number STROZ_R_000176238.

97.     Attached hereto as Exhibit 96 is a true and correct copy of a document produced by Uber in this action.  Although the document is not marked with a Bates number, Uber identified the document as Bates number UBER_AL_00014042.

98.     Attached hereto as Exhibit 97 is a true and correct copy of a document produced by Lior Ron in this action bearing Bates number RON0024085.

99.     Attached hereto as Exhibit 98 is a true and correct copy of Tyto Lidar LLC's Privilege Log, dated August 8, 2017.

100.    Attached hereto as Exhibit 99 is a true and correct copy of Anthony Levandowski's Privilege Log of Materials to be Walled Off from Waymo's Review - Updated September 25, 2017.

101.    Attached hereto as Exhibit 100 is a true and correct copy of a document produced by Tyto Lidar in this action bearing Bates number TYTO-001599.

102.    Attached hereto as Exhibit 101 is a true and correct copy of a document produced by Tyto Lidar in this action bearing Bates number TYTO-001600.

103.     Attached hereto as Exhibit 102 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00199104.

104.     Attached hereto as Exhibit 103 is a true and correct copy of a document produced by Uber in this action bearing Bates number UBER00319664.

105.     Attached hereto as Exhibit 104 is a true and correct copy of Uber's Supplemental Privilege Log Pursuant to Order Regarding Discovery Disputes (ECF No. 2415), dated January 11, 2018.

106.     Attached hereto as Exhibit A is a true and correct copy of excerpts of the deposition of Salle Yoo, taken in this action on December 14, 2017.

107.     Attached hereto as Exhibit B is a true and correct copy of excerpts of the deposition of Angela Padilla, taken in this action on December 22, 2017.

108.     Attached hereto as Exhibit C is a true and correct copy of excerpts of the deposition of Joe Sullivan, taken in this action on December 14, 2017.

109.     Attached hereto as Exhibit D is a true and correct copy of excerpts of the deposition of David Trujillo, taken in this action on December 12, 2017.

110.     Attached hereto as Exhibit E is a true and correct copy of excerpts of the deposition of Arianna Huffington, taken in this action on December 19, 2017.

111.     Attached hereto as Exhibit F is a true and correct copy of excerpts of the deposition of Sidney Majalya, taken in this action on December 20, 2017.

112.     Attached hereto as Exhibit G is a true and correct copy of excerpts of the deposition of Edward Russo, taken in this action on December 20, 2017.

113.     Attached hereto as Exhibit H is a true and correct copy of excerpts of the deposition of Jake Nocon, taken in this action on December 19, 2017.

114.     Attached hereto as Exhibit I is a true and correct copy of excerpts of the deposition of Nick Gicinto, taken in this action on December 21, 2017.

115.     Attached hereto as Exhibit J is a true and correct copy of excerpts of the deposition of Craig Clark, taken in this action on December 22, 2017.

116. Attached hereto as Exhibit K is a true and correct copy of excerpts of the deposition of Joe Spiegler, taken in this action on December 22, 2017.

117. Attached hereto as Exhibit L is a true and correct copy of excerpts of the deposition of Richard Jacobs, taken in this action on December 20, 2017.

118. Attached hereto as Exhibit M is a true and correct copy of excerpts of the deposition of Scott Johnston, taken in this action on December 14, 2017.

119. Attached hereto as Exhibit N is a true and correct copy of excerpts of the deposition of Travis Kalanick, taken in this action on December 14, 2017.

120. Attached hereto as Exhibit O is INTENTIONALLY LEFT BLANK.

121. Attached hereto as Exhibit P is a true and correct copy of excerpts of the deposition of Angela Padilla, taken in this action on October 2, 2017.

122. Attached hereto as Exhibit Q is a true and correct copy of the deposition of Ognen Stojanowski, taken in this action on July 20, 2017.

123. Attached hereto as Exhibit R is a true and correct copy of excerpts of the deposition of Anthony Levandowski, taken in this action on October 22, 2017.

124. Attached hereto as Exhibit S is a true and correct copy of excerpts of the deposition of Anthony Levandowski, taken in this action on August 22, 2017.

125. Attached hereto as Exhibit T is a true and correct copy of excerpts of the deposition of James Haslim, taken in this action on April 18, 2017.

126. Attached hereto as Exhibit U is a true and correct copy of excerpts of the deposition of James Haslim, taken in this action on August 9, 2017.

127. Attached hereto as Exhibit V is a true and correct copy of excerpts of the deposition of James Haslim, taken in this action on May 4, 2017.

128. Attached hereto as Exhibit W is a true and correct copy of excerpts of the deposition of Lior Ron, taken in this action on June 19, 2017.

129. Attached hereto as Exhibit X is a true and correct copy of excerpts of the individual deposition of Lior Ron, taken in this action on December 12, 2017.

1        130.    Attached hereto as Exhibit Y is a true and correct copy of excerpts of the 30(b)(6)

2  deposition of Lior Ron, taken in this action on December 12, 2017.

3        131.    Attached hereto as Exhibit Z is a true and correct copy of excerpts of the individual

4  deposition of Mat Henley, taken in this action on December 22, 2017.

5        132.    Attached hereto as Exhibit AA is a true and correct copy of excerpts of the 30(b)(6)

6  deposition of Mat Henley, taken in this action on December 22, 2017.

7       I declare under penalty of perjury under the laws of the State of California that the

8  foregoing is true and correct.

DATED:  January 12, 2018           */s Jeff Nardinelli*
                                        Jeff Nardinelli

## **SIGNATURE ATTESTATION**

       Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Jeff Nardinelli.

                                 */s/ Charles K. Verhoeven*
                                  Charles K. Verhoeven

# EXHIBIT 1
# FILED UNDER SEAL

# EXHIBIT 2
# FILED UNDER SEAL

# EXHIBIT 3
# FILED UNDER SEAL

# EXHIBIT 4
# FILED UNDER SEAL

# EXHIBIT 5
# FILED UNDER SEAL

# EXHIBIT 6
# FILED UNDER SEAL

# EXHIBIT 7
# FILED UNDER SEAL

# EXHIBIT 8
# FILED UNDER SEAL

# EXHIBIT 9
# FILED UNDER SEAL

# EXHIBIT 10
# FILED UNDER SEAL

# EXHIBIT 11

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Cal. Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
      David Perlson (Cal. Bar No. 209502)
3   davidperlson@quinnemanuel.com
      Melissa J. Baily (Cal. Bar No. 237649)
4   melissabaily@quinnemanuel.com
      John Neukom (Cal. Bar No. 275887)
5   johnneukom@quinnemanuel.com
      Jordan R. Jaffe (Cal. Bar No. 254886)
6   jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California  94111-4788
    Telephone:    (415) 875-6600
8   Facsimile:    (415) 875-6700

9   Attorneys for Plaintiff WAYMO LLC

10                     UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13   WAYMO LLC                          Case No. 3:17-cv-00939-WHA

14            Plaintiff,                **PLAINTIFF WAYMO LLC'S FIRST SET
                                        OF INTERROGATORIES TO
15        vs.                           DEFENDANTS RELATING TO ISSUES
                                        IN JACOBS LETTER**
16   UBER TECHNOLOGIES, INC.;
     OTTOMOTTO, LLC; OTTO TRUCKING      Honorable William H. Alsup
17   LLC

18            Defendants.

19

20

21   **PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS RELATING TO
                     ISSUES IN JACOBS LETTER**

22

23          Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Waymo LLC

24   ("Waymo") requests that Defendant Uber Technologies, Inc. ("Uber") and Ottomotto, LLC

25   ("Otto) (collectively "Defendants") answer under oath the following interrogatories within five (5)

26   calendar days of service.  Defendants are subject to a duty to timely supplement all responses to

27   these interrogatories in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

28

**DEFINITIONS**

1. "WAYMO" means Waymo LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and WAYMO's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by WAYMO, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by WAYMO.

2. "GOOGLE" means Google Inc. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and GOOGLE's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by GOOGLE, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by GOOGLE.

3. "UBER" means Uber Technologies, Inc. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and UBER's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by UBER, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by UBER.

4. "OTTOMOTTO" means Ottomotto, LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and OTTOMOTTO's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by OTTOMOTTO, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated

with, or controlled in whole or in part by OTTOMOTTO.   For the avoidance of doubt, OTTOMOTTO includes all former names under which OTTOMOTTO operated, including without limitation 280 Systems, Inc., 280 Systems, LLC, and Ottomotto, Inc.

5.    "DEFENDANTS" means UBER and OTTOMOTTO.

6.    "YOU" or "YOUR" means UBER and OTTOMOTTO.

7.    "FORMER GOOGLE/WAYMO EMPLOYEE" refers to any current or former employee of UBER or OTTOMOTTO that previously worked at GOOGLE or WAYMO.

8.    "DOCUMENTS" shall INCLUDE, without limitation, all written, graphic or otherwise recorded material, INCLUDING without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, INCLUDING e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, INCLUDING by the addition of handwritten notations or other written or printed matter of any nature, from the original.   The foregoing specifically INCLUDES information stored in a computer database and capable of being generated in documentary form, such as electronic mail, text messages (i.e., SMS messages), other electronic messages including messages sent or received via Slack, WhatsApp, Google Hangouts, Facebook Messenger, and the like.

9.    "COMMUNICATIONS" shall mean, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail ("e-mail").

10. "THING" means any tangible object, other than a DOCUMENT.

11. "PERSON" means to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies. The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

12. "REGARDING," shall mean relating to, referring to, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

13. "INCLUDE" and "INCLUDING" shall mean including without limitation.

14. Use of the singular also INCLUDES the plural and vice-versa.

15. The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests for Production.

16. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

17. The term "any" shall include "all" and "all" shall include "any."

## **INSTRUCTIONS**

The following Instructions apply to each interrogatory:

1. In answering the following interrogatories, furnish all available information, including information in the possession, custody, or control of any of DEFENDANTS' attorneys, directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and PERSONS under DEFENDANTS' control, who have knowledge, not merely information known to DEFENDANTS based on DEFENDANTS' own personal knowledge.

2. If DEFENDANTS cannot fully respond to the following interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each interrogatory that cannot be responded to fully and completely. In the latter event,

state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the interrogatories cannot be answered fully and completely; and state what knowledge, information or belief DEFENDANTS have concerning the unanswered portion of any such interrogatory.

3.      If DEFENDANTS' response to a particular Interrogatory is a statement that DEFENDANTS lack the ability to comply with that Interrogatory, specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in DEFENDANTS' possession, custody, or control, in which case the name and address of any person or entity known or believed by DEFENDANTS to have possession, custody, or control of that information or category of information must be identified.

4.      If any information requested is claimed to be privileged or otherwise immune from discovery, provide all information falling within the scope of the interrogatory which is not privileged, and for each item of information contained in a document to which a claim of privilege is made, identify such document with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

   a.   the basis on which the privilege is claimed;

   b.   the names and positions of the author of the document and all other persons participating in the preparation of the document;

   c.   the name and position of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed;

   d.   the date of the document;

   e.   a description of any accompanying material transmitted with or attached to such document;

   f.   the number of pages in such document;

   g.   the particular Interrogatory to which such document is responsive; and

   h.   whether any business or non-legal matter is contained or discussed in such document.

5.      DEFENDANTS' obligation to respond to these interrogatories is continuing and its responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

### INTERROGATORY NO. 1:

For each UBER current or former employee that was aware of the JACOBS LETTER or the JACOBS EMAIL prior to November 22, 2017, identify the name of the current or former employee, whether that person is a current or former employee, and the date on which he or she became aware of the JACOBS LETTER or the JACOBS EMAIL.

DATED: December 8, 2017                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By:     /s/ Charles K. Verhoeven
        Charles K. Verhoeven
        Attorneys for Plaintiff WAYMO LLC.

## **PROOF OF SERVICE**

I, Andrea Pallios Roberts, am employed in the County of San Mateo, State of California.

I am over the age of eighteen years and not a party to the within action.  My business address is

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065.

On December 8, 2017, I served true copies of the following document(s) described as

"PLAINTIFF WAYMO LLC'S FIRST SET OF INTERROGATORIES TO DEFENDANTS

RELATING TO ISSUES IN JACOBS LETTER"

on the interested parties in this action as follows:

| Recipient | Email Address: |
| --- | --- |
| Arturo J. Gonzalez<br>Daniel Pierre Muino<br>Eric Akira Tate<br>Esther Kim Chang<br>Matthew Ian Kreeger<br>Michael A. Jacobs<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br><br>Michelle Ching Youn Yang<br>MORRISON FOERSTER LLP<br>2000 Pennsylvania Avenue, NW<br>Washington, DC 20006<br><br>Rudolph Kim<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br><br>Wendy Joy Ray<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Suite 6000<br>Los Angeles, CA 90017 | UberWaymo@mofo.com |
| Michael Darron Jay<br>BOIES SCHILLER & FLEXNER<br>LLP<br>401 Wilshire Boulevard, Suite 850<br>Santa Monica, CA 90401<br><br>Meredith Richardson Dearborn<br>BOIES SCHILLER FLEXNER<br>LLP<br>435 Tasso Street | BSF_EXTERNAL_UberWaymoLit@bsfllp.com |

Suite 205
Palo Alto, CA 94301

Hamish Hume
Jessica E Phillips
Karen Leah Dunn
Kyle N. Smith
Martha Lea Goodman
BOIES SCHILLER FLEXNER
LLP
1401 New York Ave., NW
Washington, DC 20005
Bill Carmody                                    Uber-sg@LISTS.SUSMANGODFREY.COM
Shawn Rabin
Susman Godfrey LLP
32nd Floor
1301 Avenue of the Americas
New York, NY 10019


**BY ELECTRONIC MAIL TRANSMISSION:** by electronic mail transmission from

andreaproberts@quinnemanuel.com on December 8, 2017, by transmitting a PDF format copy of

such document(s) to each such person at the e mail address listed above.  The document(s)

was/were transmitted by electronic transmission and such transmission was reported as complete

and without error.

Executed on December 8, 2017, at Redwood Shores, California.


_____/s/ Andrea Pallios Roberts_____
Andrea Pallios Roberts

PLAINTIFF WAYMO LLC'S SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS RELATING
TO ISSUES IN JACOBS LETTER

# EXHIBIT 12
# FILED UNDER SEAL

# EXHIBIT 13
# FILED UNDER SEAL

# EXHIBIT 14
# FILED UNDER SEAL

# EXHIBIT 15
# FILED UNDER SEAL

# EXHIBIT 16
# FILED UNDER SEAL

# EXHIBIT 17
# FILED UNDER SEAL

# EXHIBIT 18
# FILED UNDER SEAL

# EXHIBIT 19
# FILED UNDER SEAL

# EXHIBIT 20
# FILED UNDER SEAL

# EXHIBIT 21
# FILED UNDER SEAL

# EXHIBIT 22
# FILED UNDER SEAL

# EXHIBIT 23
# FILED UNDER SEAL

# EXHIBIT 24
# FILED UNDER SEAL

# EXHIBIT 25
# FILED UNDER SEAL

# EXHIBIT 26
# FILED UNDER SEAL

# EXHIBIT 27
# FILED UNDER SEAL

# EXHIBIT 28

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

### 3. Inventory of Non-Attributable Devices

| Employee | Device(s) |
|---|---|
| Julie Ambrose | Chromebook |
| Susan Chiang | ASUS Laptop; MiFi Device |
| Anna Chung | Alcatel Smartphone, ASUS Laptops (2); Samsung Chromebook; Android smartphones (2) |
| Will Demaine | Dell XPS 13 |
| Nicholas Gicinto | Alcatel Smartphones (2); ASUS Laptop; ASUS Laptop (unopened in box); ZTE MIFI |
| Mat Henley | Laptops (2); MiFi Device |
| Robert Hugh | Laptop |
| Kevin Maher | 30-50 Phones or Sim Cards, primarily used by JinJian Zhai and Matthew Bryant (former Uber employees) |
| Jake Nocon | Alcatel Smartphone; ASUS Laptop; LG Smartphone; Samsung Chromebook; ZTE MIFI |
| Edward Russo | ASUS Laptops (4) |

# EXHIBIT 29

12/22/2017                    Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
                                        Case No. 3:17-cv-00939-WHA

## 3. Inventory of Non-Attributable Devices

| Employee | Device(s) |
| --- | --- |
| Julie Ambrose | Chromebook |
| Benjamin Arthur | Chromebook |
| Matthew Bryant | Macbook Laptops (2) |
| Yulin Chen | Macbook Laptop |
| Susan Chiang | ASUS Laptop; MiFi Device |
| Anna Chung | Alcatel Smartphone, ASUS Laptops (2); Samsung Chromebook; Android smartphones (2) |
| Will Demaine | Dell XPS 13 |
| Yifang Ding | Macbook Laptop |
| Nicholas Gicinto | Alcatel Smartphones (2); ASUS Laptop; ASUS Laptop (unopened in box); ZTE MIFI |
| Mat Henley | Laptops (2); MiFi Device |
| Robert Hugh | Macbook Laptop |
| Dave Hughes | Macbook Laptops (2) |
| Jonny Lee | Macbook Laptop |
| Alex Levinson | Macbook Laptops (5) |
| Kevin Maher | 30-50 Phones or Sim Cards, primarily used by JinJian Zhai and Matthew Bryant (former Uber employees), 2 Macbook Laptops |
| Mike McLoughlin | Macbook Laptop |
| Jake Nocon | Alcatel Smartphone; ASUS Laptop; LG Smartphone; Samsung Chromebook; ZTE MIFI |
| Quang Pham | Macbook Laptop |
| Frank Portman | Macbook Laptop |
| Edward Russo | ASUS Laptops (4) |
| Hui Wang | Macbook Laptop |

# EXHIBIT 30

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Rahul | Abrol | India Operations | Wickr SCIF/PRO; Wickr ME |
| Jace | Alfiere | Security | Wickr SCIF/PRO; Wickr ME |
| Laura | Alioto | Insurance Claims and Litigation | Wickr SCIF/PRO |
| Jason | Allen | Litigation | Wickr SCIF/PRO |
| Rey | Allie | Security | Wickr SCIF/PRO; Wickr ME |
| Julie | Ambrose | Strategic Services Group | Wickr SCIF/PRO |
| Nate | Anderson | Russia | Wickr SCIF/PRO |
| William | Anderson | Technology Services | Wickr SCIF/PRO |
| Pooja | Ashok | Security | Wickr SCIF/PRO |
| Scott | Atkinson | Litigation | Wickr SCIF/PRO |
| Chiraag | Aval | Security Response & Investigations | Wickr SCIF/PRO |
| Amos | Barreto | | Wickr SCIF/PRO; Wickr ME |
| Nicole | Bartow | Litigation | Wickr SCIF/PRO; Wickr ME |
| Aaron | Bergstrom | Litigation | Wickr SCIF/PRO; Telegram |
| Daniel | Borges | Security Response & Investigations | Wickr SCIF/PRO |
| Shawn | Bracken | Internal Security | Wickr SCIF/PRO |
| Dalene | Bramer | Litigation | Wickr SCIF/PRO |
| Kurt | Brasch | Legal IP | Wickr SCIF/PRO |
| Tracey | Breeden | P&C, AMERICAS, US, CENTRAL | Wickr SCIF/PRO |
| Jessica | Brooks | Security | Wickr SCIF/PRO |
| Matthew | Bryant | | Wickr SCIF/PRO; Wickr ME |
| Andres | Bucchi | Strategy & Planning | Wickr SCIF/PRO |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Jordan | Buettner | Research | Wickr SCIF/PRO |
| Charles | Burns | Security | Wickr SCIF/PRO |
| Avery | Bustamonte | Security | Wickr SCIF/PRO |
| Benjamin | Butin | | Google Hangouts (set to "incognito," "off the record" or auto-delete) |
| Jonathan | Byrne | EMEA Security | Wickr SCIF/PRO |
| David | Campbell | Security Response & Investigations | Wickr SCIF/PRO |
| Stella | Chamarelli | LATAM Security | Wickr SCIF/PRO |
| Brett | Champlin | | Wickr SCIF/PRO |
| Brett | Champlin | Security | Wickr SCIF/PRO |
| Karthik | Chandrashekar | Security Response & Investigations | Wickr SCIF/PRO |
| Frank | Chang | Safety & Insurance | Wickr SCIF/PRO |
| Sheng-Dean | Chang | Global Intelligence | Wickr SCIF/PRO |
| Yulin | Chen | Security Response & Investigations | Wickr SCIF/PRO: Wickr ME; Telegram |
| Ben | Chiang | Product Data | Wickr SCIF/PRO: Wickr ME; Telegram |
| Susan | Chiang | Security | Wickr SCIF/PRO; Wickr ME |
| Aaron | Chou | Tri-state, DOps | Wickr SCIF/PRO |
| Peter | Chovanec | EATS EMEA S&P | Wickr SCIF/PRO |
| Anna | Chung | Strategic Services Group | Wickr SCIF/PRO; Wickr ME, Telegram |
| Craig | Clark | Litigation | Wickr SCIF/PRO; Wickr ME |
| Ben | Cooper | Intrusion | Wickr SCIF/PRO; |
| Sean | Coyne | Security Response & Investigations | Wickr SCIF/PRO |
| Juan_Pablo | Crespo | Regulatory LatAm | Wickr SCIF/PRO |
| Robert | Crowley | EMEA Security | Wickr SCIF/PRO; Wickr ME |
| Brian | Cullinane | ATG | Wickr SCIF/PRO |
| Roxana | del_Toro_Lopez | Security Response & Investigations | Wickr SCIF/PRO |
| Shawnee | Delaney | Strategic Services Group | Wickr SCIF/PRO; Wickr ME |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Will | Demaine | Security Response & Investigations | Wickr SCIF/PRO; Wickr ME |
| Nirvan | Dey | India Security | Wickr SCIF/PRO |
| Yifan | Ding | Customer Security Experience | Wickr SCIF/PRO; Wickr ME |
| Qi | Dong | | Wickr SCIF/PRO; Wickr ME |
| Thibault | Doutre | Data Science | Wickr SCIF/PRO |
| Deon | DuToit | EMEA Security | Wickr SCIF/PRO |
| Melanie | Ensign | P&C, AMERICAS, US, CENTRAL | Wickr SCIF/PRO |
| Mason | Feldman | ATG-Facilities | Wickr SCIF/PRO |
| Faranak | Firozan | Security Response & Investigations | Wickr SCIF/PRO |
| Alberto | Fittarelli | EMEA Security | Wickr SCIF/PRO; Wickr ME |
| John | Flynn | Security | Wickr SCIF/PRO |
| David | Fong | Tri-state, DOps | Wickr SCIF/PRO |
| Rob | Fuller | Security Response & Investigations | Wickr SCIF/PRO |
| Raymond | Galaviz | Litigation | Wickr SCIF/PRO |
| Galeno | Garbe | LATAM Security | Wickr SCIF/PRO |
| Alex | Garbutt | ProdSec | Wickr SCIF/PRO |
| Prashant | Garg | Rahul Abrol | Wickr SCIF/PRO; Wickr ME |
| Chris | Gates | Security Response & Investigations | Wickr SCIF/PRO |
| Xin | Ge | Security | Wickr SCIF/PRO |
| Austin | Geidt | | Telegram |
| Projjal | Ghatak | SEA Strategic Ops | Wickr SCIF/PRO; Wickr ME |
| Parham | Ghods | Corporate Development | Wickr SCIF/PRO |
| Nicholas | Gicinto | Security | Wickr SCIF/PRO; Wickr ME |
| Andy | Goldin | SENA Regional Ops | Wickr SCIF/PRO |
| George | Gordon | Latin America | Wickr SCIF/PRO |
| Carla | Gray | Security | Wickr SCIF/PRO |
| Collin | Greene | EngSec | Wickr SCIF/PRO |
| Alan | Grubbe | Insurance Claims and Litigation | Wickr SCIF/PRO |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Ashley | Guest | EMEA Security | Wickr SCIF/PRO |
| Neeraja | Gunaratnam | Security | Wickr SCIF/PRO |
| Jasmine | Guo | Strategic Ops & Planning | Wickr SCIF/PRO; Wickr PRO; Wickr ME; Telegram |
| Mike | Haas | Insurance Claims and Litigation, US | Wickr SCIF/PRO |
| Randall | Haimovici | Litigation | Wickr SCIF/PRO; Wickr ME |
| Randall | Haimovici | Litigation | Wickr SCIF/PRO; Wickr ME |
| Andrew | Hasbun | P&C, AMERICAS, US, CENTRAL | Wickr SCIF/PRO |
| Laurent | Hautefeuille | Freight | Wickr SCIF/PRO |
| Spencer | Hawes | Legal | Wickr SCIF/PRO |
| Susan | Hendrick | P&C, AMERICAS, US, CENTRAL | Wickr SCIF/PRO |
| Mat | Henley | Security | Wickr SCIF/PRO; Wickr ME; Telegram, Google Hangouts (set to "incognito," "off the record" or auto-delete) |
| Art | Henry | Product & Marketplace | Wickr SCIF/PRO; Wickr ME; Telegram |
| Fires | Here | | Wickr SCIF/PRO |
| Mary | Hillas | Legal | Wickr SCIF/PRO |
| Zehao | Hu | Growth Analytics | Wickr SCIF/PRO |
| Robert | Hugh | Security Response & Investigations | Wickr SCIF/PRO |
| David | Hughes | Security Response & Investigations | Wickr SCIF/PRO; Wickr PRO; Wickr ME; Telegram |
| Naushin | Husain | Legal | Wickr SCIF/PRO |
| Linda | Isley | Global Law Enforcement Team | Wickr SCIF/PRO |
| Amr | Ismail | EMEA Security | Wickr SCIF/PRO |
| Natalie | Iturralde | Insurance Law | Wickr SCIF/PRO |
| Ric | Jacobs | Security | Wickr SCIF/PRO; Wickr ME |
| Mohamad | Jardaneh | Middle East & Africa | Wickr SCIF/PRO |
| Angela | Johnson | Litigation | Wickr SCIF/PRO |
| Jeff | Jones | Security | Wickr SCIF/PRO; Wickr ME |
| Mark | Jones | Global Law Enforcement Team | Wickr SCIF/PRO |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Travis | Kalanick | | Telegram |
| Matt | Kaminski | Global Compliance | Wickr SCIF/PRO |
| Jodi | Kawada_Page | P&C, AMERICAS, US, CENTRAL | Wickr SCIF/PRO |
| Matthew | Kell | Security Response & Investigations | Wickr SCIF/PRO |
| Billy | Kewell | Global Law Enforcement Team | Wickr SCIF/PRO |
| _xxxx | KMaher | Security | Wickr SCIF/PRO |
| Abi | Komma | Machine Learning | Wickr SCIF/PRO |
| Ashish | Kurmi | Internal Security | Wickr SCIF/PRO |
| Robert | Kyle | ATG Physical Security | Wickr SCIF/PRO |
| Steven | Lacy | Security | Wickr SCIF/PRO |
| Elisca | Lagerweij | EMEA Security | Wickr SCIF/PRO |
| Mingjie | Lai | Engineering - Growth | Wickr SCIF/PRO |
| Horace | Lam | | Wickr SCIF/PRO; Wickr PRO; Wickr ME; Telegram |
| Kieu | Lam | Technical Program Management | Wickr SCIF/PRO |
| Pablo | Lamuraglia | International Security | Wickr SCIF/PRO |
| Christina | Ledoux | Security | Wickr SCIF/PRO |
| Jonny | Lee | Security Response & Investigations | Wickr SCIF/PRO; Wickr ME; Telegram |
| Silvanus | Lee | Product Data | Wickr SCIF/PRO; Widkr ME |
| Anthony | Levandowski | ATG | Wickr SCIF/PRO; Wickr ME; Telegram |
| Alex | Levinson | Security Response & Investigations | Wickr SCIF/PRO; Wickr ME, Telegram |
| Kyle | Lewis | Insurance Claims and Litigation | Wickr SCIF/PRO |
| Lu | Li | Growth Analytics | Wickr SCIF/PRO |
| Abe | Liao | Compute Reliability | Wickr SCIF/PRO |
| Eric | Lipman | Litigation | Wickr SCIF/PRO |
| Yuwei | Liu | Growth Analytics | Wickr SCIF/PRO |
| Tipper | Llaguno | Legal | Wickr SCIF/PRO |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Andrew | Macdonald | Global Operations | Wickr SCIF/PRO |
| Kevin | Maher | Security | Wickr SCIF/PRO; Wickr ME; Telegram |
| Becky | Mar | Technical Program Management | Wickr SCIF/PRO |
| Javier | Marcos | Security Response & Investigations | Wickr SCIF/PRO |
| Mohale | Matloga | EMEA Security | Wickr SCIF/PRO |
| Liz | Mattin | Internal Security | Wickr SCIF/PRO |
| Mia | Mazza | Litigation | Wickr SCIF/PRO |
| Chris | McCann | Security Response & Investigations | Wickr SCIF/PRO |
| Brittney | McClary | LATAM Security | Wickr SCIF/PRO; Wickr ME |
| Greg | McCurdy | Litigation | Wickr SCIF/PRO |
| Peter | McKee | ATG-Software-Experience & Operations Engineering | Wickr SCIF/PRO |
| Michael | McLoughlin | Security Response & Investigations | Wickr SCIF/PRO; Wickr ME; Telegram; Signal; Facebook Messenger (using "Secret Conversation" feature with disappearing messages) |
| Eric | Meyhofer | | Telegram |
| Zac | Morris | ProdSec | Wickr SCIF/PRO |
| John | Mulgrew | Legal | Wickr SCIF/PRO |
| Jesse | Murray | Litigation | Wickr SCIF/PRO |
| Gourav | Nagar | Security Response & Investigations | Wickr SCIF/PRO; |
| Katie | Newman | Security Response & Investigations | Wickr SCIF/PRO |
| Eric | Newman | Technology Services | Wickr SCIF/PRO |
| Ken | Njuguna | Legal - Sub-Saharan Africa | Wickr SCIF/PRO |
| Jacob Donnelly | Nocon | | Wickr SCIF/PRO; Wickr ME |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

### 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Jake | Nocon | Strategic Services Group | Wickr SCIF/PRO; Wickr ME |
| Alex | Nussbacher | | Telegram |
| Lisa | O'Connor | Law Enforcement Response Team | Wickr SCIF/PRO |
| Angela | Padilla | Legal | Wickr SCIF/PRO; Telegram |
| Nick | Pailthorpe | EMEA Security | Wickr SCIF/PRO |
| Ambar | Pansari | Safety | Wickr SCIF/PRO |
| Alberto | Parada | EMEA Security | Wickr SCIF/PRO |
| Amar | Patel | UKI Partner Channels | Wickr SCIF/PRO |
| Lisen | Peng | Global Intelligence | Wickr SCIF/PRO |
| Reynaldo | Perez | Security | Wickr SCIF/PRO |
| Quang | Pham | Security Response & Investigations | Wickr SCIF/PRO |
| Quang2 | Pham | Security Response & Investigations | Wickr SCIF/PRO |
| Jeff | Pike | Security | Wickr SCIF/PRO |
| Kristy | Pilipauskas | Insurance Claims and Litigation | Wickr SCIF/PRO |
| Francisco | Pinilla | Legal - Transactions | Wickr SCIF/PRO |
| Cameron | Poetzscher | | Telegram |
| Frank | Portman | Security Response & Investigations | Wickr SCIF/PRO; Wickr ME |
| Allison | Pozzi | Legal | Wickr SCIF/PRO |
| Gopal | Purohit | India Security | Wickr SCIF/PRO |
| Yong | Qiao | EngSec | Wickr SCIF/PRO |
| Prithvi | Rai | Security | Wickr SCIF/PRO |
| Varun | Rau | ATG-Software-Robot Ops | Wickr SCIF/PRO |
| David | Richter | Executive | Wickr SCIF/PRO |
| Sergio | Romero | Legal LATAM | Wickr SCIF/PRO |
| Lior | Ron | ATG | Wickr SCIF/PRO; Wickr ME; Telegram |
| Anthony | Rose | Expansion Data Science | Wickr SCIF/PRO |
| Heather | Rothenberg | Safety & Insurance | Wickr SCIF/PRO |
| Ariel | Ruiz | Litigation | Wickr SCIF/PRO |
| Edward | Russo | Strategic Services Group | Wickr SCIF/PRO; Wickr ME |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Siddharth | Saoji | International Security | Wickr SCIF/PRO |
| Aiden | Scandella | Machine Learning Platform | Wickr SCIF/PRO |
| Sachin | Sharma | International Security | Wickr SCIF/PRO; Wickr Me |
| Weiwei | Shen | Product Analytics | Wickr SCIF/PRO |
| Bernard | Sheridan | Security Response & Investigations | Wickr SCIF/PRO; |
| Andrew | Shieh | Legal IP | Wickr SCIF/PRO |
| Chris | Shin | Legal Operations | Wickr SCIF/PRO |
| Spiro | Sideris | Security Response & Investigations | Wickr SCIF/PRO; Wickr ME |
| Matt | Smith | Security | Wickr SCIF/PRO |
| Rachael | Smith | Legal Security | Wickr SCIF/PRO; |
| Maus | Stearns | Security Response & Investigations | Wickr SCIF/PRO |
| Neil | Stegall | | Telegram |
| Jimmy | Stelter | Strategic Services Group | Wickr SCIF/PRO; Wickr ME |
| Chris | Storm | Legal IP | Wickr SCIF/PRO |
| Wade | Stormer | Global Law Enforcement Team | Wickr SCIF/PRO |
| Justin | Suhr | Litigation | Wickr SCIF/PRO |
| Joe | Sullivan | Executive | Wickr SCIF/PRO; Wickr ME |
| Mike | Sullivan | Security | Wickr SCIF/PRO |
| Richard | Sumnall | International Security | Wickr SCIF/PRO |
| Achia | Swift | Litigation | Wickr SCIF/PRO |
| Daniyal | Syed | Intrusion | Wickr SCIF/PRO |
| Matyas | Tamas | | Wickr SCIF/PRO; Wickr ME |
| Hudson | Thrift | EngSec | Wickr SCIF/PRO |
| Bart | Tissue | Technology Services | Wickr SCIF/PRO |
| Jai | Toor | Product Analytics | Wickr SCIF/PRO |
| Karen | Toro | Paralegal - Regulatory | Wickr SCIF/PRO |
| Mandy | Tory | Security Response & Investigations | Wickr SCIF/PRO |
| Tyler | Trerotola | Middle East & Africa | Wickr SCIF/PRO |
| David | Vidal | Intrusion | Wickr SCIF/PRO; |
| Gabriel | Villasenor | Insurance Claims and Litigation | Wickr SCIF/PRO |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Jose_Antonio | Villela | Legal Transactions - LatAm | Wickr SCIF/PRO |
| Julie | Viray | | Telegram |
| Ashley | Vivlamore | Abuse & Investigations | Wickr SCIF/PRO; Wickr ME |
| David | Wang | Detection Platform | Wickr SCIF/PRO |
| Hui | Wang | Security Response & Investigations | Wickr SCIF/PRO; Wickr ME |
| Runze | Wang | Growth Analytics | Wickr SCIF/PRO |
| Randy | Wanis | Strategic Services Group | Wickr SCIF/PRO |
| Caitlin | Washburn | Insurance Claims and Litigation | Wickr SCIF/PRO |
| Maxwell | Watkins | Litigation | Wickr SCIF/PRO |
| Michael Cory | Weiss-Malik | | GChat (set to "incognito," "off the record" or auto-delete), Google Hangouts (set to "incognito," "off the record" or auto-delete) |
| Kayla | Whaling | P&C, AMERICAS, US, CENTRAL | Wickr SCIF/PRO |
| Hugh | White | Security | Wickr SCIF/PRO |
| Christian | Wicks | EMEA Central Operations | Wickr SCIF/PRO |
| Anne | Widera | ATG-Product | Wickr SCIF/PRO |
| Brook | Woldemariam | Product Analytics | Wickr SCIF/PRO; Wickr ME |
| Kate | Wolf | Litigation | Wickr SCIF/PRO |
| Barry | Wong | APAC Security | Wickr SCIF/PRO |
| Ross | Worden | Security Response & Investigations | Wickr SCIF/PRO; Wickr ME; Telegram |
| Zhen | Wu | APAC Security | Wickr SCIF/PRO |
| Stephen | Yang | Global Intelligence | Wickr SCIF/PRO |
| Dongyi | Ye | Global Intelligence | Wickr SCIF/PRO |
| Catherine | Yumul | Law Enforcement Response Team | Wickr SCIF/PRO |
| Brian | Zajac | | Telegram |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform

| First name | Last Name | Organizational Unit[1] | Type of Ephemeral Messaging service |
|---|---|---|---|
| Baoguang | Zhai | | Wickr SCIF/PRO; Wickr ME |
| Jinjian | Zhai | Marketplace Analytics | Wickr SCIF/PRO; Wickr ME |
| Yingying | Zheng | Global Intelligence | Wickr SCIF/PRO |
| Noah | Zych | | Telegram |
| MA Team (in general) | | | Wickr SCIF/PRO; Wickr ME |
| Threat Ops (in general) | | | Wickr SCIF/PRO; Wickr ME |
| Benjamin Butin's Group (in general) | | | Google Hangouts (set to "incognito," "off the record" or auto-delete) |
| China and SEA Ops Team (in general) | | | Wickr SCIF/PRO; Telegram |
| Business Development Group (in general) | | | Telegram |
| 1. Legal personnel listed herein as having used Wickr had a Wickr account, but may not have used it. | | | |

# EXHIBIT 31

12/22/2017          Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
                         Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform[1]

| First name | Last Name | Type of Ephemeral Messaging Service |
|---|---|---|
| Rahul | Abrol | Wickr SCIF/PRO; Wickr ME |
| Eric | Alexander | Telegram |
| Jace | Alfiere | Wickr SCIF/PRO; Wickr ME |
| Laura | Alioto | Wickr SCIF/PRO |
| Jason | Allen | Wickr SCIF/PRO |
| Rey | Allie | Wickr SCIF/PRO; Wickr ME |
| Julie | Ambrose | Wickr SCIF/PRO |
| Nate | Anderson | Wickr SCIF/PRO |
| William | Anderson | Wickr SCIF/PRO |
| Nick | Ash | Wickr |
| Pooja | Ashok | Wickr SCIF/PRO |
| Scott | Atkinson | Wickr SCIF/PRO |
| Chiraag | Aval | Wickr SCIF/PRO |
| Amos | Barreto | Wickr SCIF/PRO; Wickr ME |
| Nicole | Bartow | Wickr SCIF/PRO; Wickr ME |
| DC | Berdy | Wickr |
| Aaron | Bergstrom | Wickr SCIF/PRO; Telegram |
| Travis | Bogard | Telegram |
| Daniel | Borges | Wickr SCIF/PRO |
| Shawn | Bracken | Wickr SCIF/PRO |
| Dalene | Bramer | Wickr SCIF/PRO |
| Kurt | Brasch | Wickr SCIF/PRO |
| Tracey | Breeden | Wickr SCIF/PRO |
| Kevin | Brinig | Telegram |
| Jessica | Brooks | Wickr SCIF/PRO |
| Mike | Brown | Telegram |
| Matthew | Bryant | Wickr SCIF/PRO; Wickr ME |
| Andres | Bucchi | Wickr SCIF/PRO |
| Jordan | Buettner | Wickr SCIF/PRO |
| Charles | Burns | Wickr SCIF/PRO |
| Avery | Bustamonte | Wickr SCIF/PRO |
| Benjamin | Butin | Google Hangouts (set to "incognito," "off the |
| Jonathan | Byrne | Wickr SCIF/PRO |
| David | Campbell | Wickr SCIF/PRO |

1. Inclusion on this list does not necessarily mean that the person used the ephemeral messaging platform listed, but it means that the person was at some point at least signed up for or invited to that platform.
2. Legal personnel listed herein as having used Wickr had a Wickr account, but may not have used it.

12/21/2017                 Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
                                        Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform[1]

| First name | Last Name | Type of Ephemeral Messaging Service |
|---|---|---|
| Stella | Chamarelli | Wickr SCIF/PRO |
| Brett | Champlin | Wickr SCIF/PRO |
| Brett | Champlin | Wickr SCIF/PRO |
| Karthik | Chandrashekar | Wickr SCIF/PRO |
| Frank | Chang | Wickr SCIF/PRO |
| Sheng-Dean | Chang | Wickr SCIF/PRO |
| Yulin | Chen | Wickr SCIF/PRO: Wickr ME; Telegram |
| Michelle | Chen | Telegram |
| Ben | Chiang | Wickr SCIF/PRO: Wickr ME; Telegram |
| Susan | Chiang | Wickr SCIF/PRO; Wickr ME |
| Aaron | Chou | Wickr SCIF/PRO |
| Peter | Chovanec | Wickr SCIF/PRO |
| Anna | Chung | Wickr SCIF/PRO; Wickr ME, Telegram |
| Craig | Clark | Wickr SCIF/PRO; Wickr ME |
| Ben | Cooper | Wickr SCIF/PRO; |
| Sean | Coyne | Wickr SCIF/PRO |
| Juan_Pablo | Crespo | Wickr SCIF/PRO |
| Robert | Crowley | Wickr SCIF/PRO; Wickr ME |
| Brian | Cullinane | Wickr SCIF/PRO |
| Roxana | del_Toro_Lopez | Wickr SCIF/PRO |
| Shawnee | Delaney | Wickr SCIF/PRO; Wickr ME; Whatsapp |
| Will | Demaine | Wickr SCIF/PRO; Wickr ME |
| Nirvan | Dey | Wickr SCIF/PRO |
| Yifan | Ding | Wickr SCIF/PRO; Wickr ME |
| Qiansha | Ding | Telegram; WeChat |
| Qi | Dong | Wickr SCIF/PRO; Wickr ME |
| Aaron | Doubt | Telegram |
| Thibault | Doutre | Wickr SCIF/PRO |
| Deon | DuToit | Wickr SCIF/PRO; Whatsapp |
| David | Dy Tang | Telegram |
| Melanie | Ensign | Wickr SCIF/PRO |
| Brooks | Entwistle | Telegram |
| Mason | Feldman | Wickr SCIF/PRO; Snapchat |
| Faranak | Firozan | Wickr SCIF/PRO |
| Alberto | Fittarelli | Wickr SCIF/PRO; Wickr ME |
| John | Flynn | Wickr SCIF/PRO |
| David | Fong | Wickr SCIF/PRO |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform[1]

| First name | Last Name | Type of Ephemeral Messaging Service |
|---|---|---|
| Leon | Foong | Telegram |
| Marissa | Foust | Telegram |
| Christian | Freese | Whatsapp; Telegram |
| Rob | Fuller | Wickr SCIF/PRO |
| Raymond | Galaviz | Wickr SCIF/PRO |
| Galeno | Garbe | Wickr SCIF/PRO |
| Alex | Garbutt | Wickr SCIF/PRO |
| Prashant | Garg | Wickr SCIF/PRO; Wickr ME |
| Chris | Gates | Wickr SCIF/PRO |
| Xin | Ge | Wickr SCIF/PRO; Telegram |
| Austin | Geidt | Telegram |
| Projjal | Ghatak | Wickr SCIF/PRO; Wickr ME |
| Parham | Ghods | Wickr SCIF/PRO |
| Nicholas | Gicinto | Wickr SCIF/PRO; Wickr ME |
| Andrew | Glickman | Telegram |
| Andy | Goldin | Wickr SCIF/PRO |
| George | Gordon | Wickr SCIF/PRO |
| Margot | Grabie | Snapchat |
| Ryan | Graves | Telegram |
| Carla | Gray | Wickr SCIF/PRO; Whatsapp |
| Collin | Greene | Wickr SCIF/PRO |
| Alan | Grubbe | Wickr SCIF/PRO |
| Ashley | Guest | Wickr SCIF/PRO |
| Neeraja | Gunaratnam | Wickr SCIF/PRO |
| Jasmine | Guo | Wickr SCIF/PRO; Wickr PRO; Wickr ME; Telegram |
| Mike | Haas | Wickr SCIF/PRO |
| Randall | Haimovici | Wickr SCIF/PRO; Wickr ME |
| Andrew | Hasbun | Wickr SCIF/PRO |
| Laurent | Hautefeuille | Wickr SCIF/PRO |
| Spencer | Hawes | Wickr SCIF/PRO |
| James | Hawkins | Telegram |
| Susan | Hendrick | Wickr SCIF/PRO |
| Mat | Henley | Wickr SCIF/PRO; Wickr ME; Telegram, Google Hangouts (set to "incognito," "off the record" or auto-delete); Facebook Messenger |
| Art | Henry | Wickr SCIF/PRO; Wickr ME; Telegram |
| Fires | Here | Wickr SCIF/PRO |

## 1. Personnel Who Have Used Wickr or Similar Platform[1]

| First name | Last Name | Type of Ephemeral Messaging Service |
|---|---|---|
| Mary | Hillas | Wickr SCIF/PRO |
| Don | Hoang | Telegram |
| Liane | Hornsey | Hangouts |
| Zehao | Hu | Wickr SCIF/PRO |
| Robert | Hugh | Wickr SCIF/PRO |
| David | Hughes | Wickr SCIF/PRO; Wickr PRO; Wickr ME; Telegram |
| Naushin | Husain | Wickr SCIF/PRO |
| Linda | Isley | Wickr SCIF/PRO |
| Amr | Ismail | Wickr SCIF/PRO |
| Natalie | Iturralde | Wickr SCIF/PRO |
| Ric | Jacobs | Wickr SCIF/PRO; Wickr ME |
| Vardhaman | Jain | Whatsapp; Telegram |
| Mohamad | Jardaneh | Wickr SCIF/PRO |
| Angela | Johnson | Wickr SCIF/PRO |
| Jeff | Jones | Wickr SCIF/PRO; Wickr ME |
| Mark | Jones | Wickr SCIF/PRO |
| Travis | Kalanick | Telegram; Snapchat |
| Matt | Kaminski | Wickr SCIF/PRO |
| Jodi | Kawada_Page | Wickr SCIF/PRO |
| Matthew | Kell | Wickr SCIF/PRO |
| Billy | Kewell | Wickr SCIF/PRO |
| _xxxx | KMaher | Wickr SCIF/PRO |
| Abi | Komma | Wickr SCIF/PRO |
| Rowena | Kong | Telegram |
| Sameer | Kshirsager | Telegram |
| Ashish | Kurmi | Wickr SCIF/PRO |
| Robert | Kyle | Wickr SCIF/PRO |
| Steven | Lacy | Wickr SCIF/PRO |
| Elisca | Lagerweij | Wickr SCIF/PRO |
| Mingjie | Lai | Wickr SCIF/PRO |
| Nimish | Lalwani | Whatsapp; Telegram |
| Horace | Lam | Wickr SCIF/PRO; Wickr PRO; Wickr ME; Telegram |
| Kieu | Lam | Wickr SCIF/PRO |
| Pablo | Lamuraglia | Wickr SCIF/PRO |

12/21/2017           Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
                              Case No. 3:17-cv-00939-WHA

## 1. Personnel Who Have Used Wickr or Similar Platform[1]

| First name | Last Name | Type of Ephemeral Messaging Service |
|---|---|---|
| Christina | Ledoux | Wickr SCIF/PRO |
| Jonny | Lee | Wickr SCIF/PRO; Wickr ME; Telegram |
| Silvanus | Lee | Wickr SCIF/PRO; Widkr ME |
| Nick | Letwin | Telegram |
| Anthony | Levandowski | Wickr SCIF/PRO; Telegram |
| Alex | Levinson | Wickr SCIF/PRO; Wickr ME, Telegram |
| Kyle | Lewis | Wickr SCIF/PRO |
| Lu | Li | Wickr SCIF/PRO |
| Abe | Liao | Wickr SCIF/PRO |
| Jonathan | Lieberman | Wickr |
| Yibo | Ling | Telegram |
| Yibo | Ling | Telegram |
| Eric | Lipman | Wickr SCIF/PRO; Telegram |
| Yuwei | Liu | Wickr SCIF/PRO |
| Zhen | Liu | Telegram |
| Tipper | Llaguno | Wickr SCIF/PRO |
| Jeremiah | Lu | Telegram |
| Jeff | Lui | Telegram |
| Fanny | Ma | Telegram; WeChat |
| Andrew | Macdonald | Wickr SCIF/PRO |
| Kevin | Maher | Wickr SCIF/PRO; Wickr ME; Telegram |
| Charles | Man | Telegram |
| Becky | Mar | Wickr SCIF/PRO |
| Javier | Marcos | Wickr SCIF/PRO |
| Mohale | Matloga | Wickr SCIF/PRO |
| Andrew | Matthews | Wickr |
| Liz | Mattin | Wickr SCIF/PRO |
| Mia | Mazza | Wickr SCIF/PRO |
| Chris | McCann | Wickr SCIF/PRO |
| Brittney | McClary | Wickr SCIF/PRO; Wickr ME |
| Greg | McCurdy | Wickr SCIF/PRO |
| Peter | McKee | Wickr SCIF/PRO |

Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
Case No. 3:17-cv-00939-WHA

## **1. Personnel Who Have Used Wickr or Similar Platform**[1]

| First name | Last Name | Type of Ephemeral Messaging Service |
|---|---|---|
| Michael | McLoughlin | Wickr SCIF/PRO; Wickr ME; Telegram; Signal; Facebook Messenger (using "Secret Conversation" feature with disappearing messages) |
| Eric | Meyhofer | Telegram |
| Matthew | Miao | Telegram |
| Emil | Michael | Telegram |
| Matthew | Moore | Telegram |
| Rhian | Morgan | Snapchat |
| Zac | Morris | Wickr SCIF/PRO |
| John | Mulgrew | Wickr SCIF/PRO |
| Jesse | Murray | Wickr SCIF/PRO |
| Gourav | Nagar | Wickr SCIF/PRO |
| David | Newberry | Wickr |
| Katie | Newman | Wickr SCIF/PRO |
| Eric | Newman | Wickr SCIF/PRO |
| Craig | Nicol | Telegram |
| Ken | Njuguna | Wickr SCIF/PRO |
| Jacob Donnelly | Nocon | Wickr SCIF/PRO; Wickr ME |
| Jake | Nocon | Wickr SCIF/PRO; Wickr ME |
| Alex | Nussbacher | Wickr SCIF/PRO; Telegram |
| Lisa | O'Connor | Wickr SCIF/PRO |
| Derrick | Ongchin | Telegram |
| Angela | Padilla | Wickr SCIF/PRO; WickrME; Telegram |
| Nick | Pailthorpe | Wickr SCIF/PRO |
| Ambar | Pansari | Wickr SCIF/PRO |
| Alberto | Parada | Wickr SCIF/PRO |
| Amar | Patel | Wickr SCIF/PRO |
| Lisen | Peng | Wickr SCIF/PRO |
| Allen | Penn | Wickr |
| Reynaldo | Perez | Wickr SCIF/PRO |
| Quang | Pham | Wickr SCIF/PRO |
| Quang2 | Pham | Wickr SCIF/PRO |
| Jeff | Pike | Wickr SCIF/PRO |
| Kristy | Pilipauskas | Wickr SCIF/PRO |
| Andi | Pimentel | Telegram |
| Francisco | Pinilla | Wickr SCIF/PRO |
| Cameron | Poetzscher | Telegram |
| Susan | Popal | Whatsapp; Telegram |
| Frank | Portman | Wickr SCIF/PRO; Wickr ME |

12/21/2017          Waymo LLC v Uber Technologies, Inc. and Ottomotto LLC
                        Case No. 3:17-cv-00939-WHA

### 1. Personnel Who Have Used Wickr or Similar Platform[1]

| First name | Last Name | Type of Ephemeral Messaging Service |
|---|---|---|
| Tylee | Potter | Telegram |
| Allison | Pozzi | Wickr SCIF/PRO |
| Gopal | Purohit | Wickr SCIF/PRO |
| Nina | Qi | Telegram |
| Yong | Qiao | Wickr SCIF/PRO |
| Miraj | Rahematpura | Snapchat |
| Prithvi | Rai | Wickr SCIF/PRO |
| Vinay | Ramani | Telegram; WeChat |
| Varun | Rau | Wickr SCIF/PRO |
| David | Richter | Wickr SCIF/PRO; Telegram |
| Fraser | Robinson | Telegram |
| Sergio | Romero | Wickr SCIF/PRO |
| Lior | Ron | Wickr SCIF/PRO; Wickr ME; Telegram |
| Anthony | Rose | Wickr SCIF/PRO |
| Heather | Rothenberg | Wickr SCIF/PRO |
| Ariel | Ruiz | Wickr SCIF/PRO |
| Edward | Russo | Wickr SCIF/PRO; Wickr ME |
| Siddharth | Saoji | Wickr SCIF/PRO |
| Aiden | Scandella | Wickr SCIF/PRO |
| Sachin | Sharma | Wickr SCIF/PRO; Wickr Me |
| Weiwei | Shen | Wickr SCIF/PRO |
| Bernard | Sheridan | Wickr SCIF/PRO |
| Lin | Shi | Wickr |
| Yi-Bing | Shi | Telegram |
| Andrew | Shieh | Wickr SCIF/PRO |
| Chris | Shin | Wickr SCIF/PRO |
| Spiro | Sideris | Wickr SCIF/PRO; Wickr ME |
| Matt | Smith | Wickr SCIF/PRO |
| Rachael | Smith | Wickr SCIF/PRO; |
| Maus | Stearns | Wickr SCIF/PRO |
| Neil | Stegall | Telegram |
| Jimmy | Stelter | Wickr SCIF/PRO; Wickr ME |
| Chris | Storm | Wickr SCIF/PRO |
| Wade | Stormer | Wickr SCIF/PRO |
| Justin | Suhr | Wickr SCIF/PRO |
| Joe | Sullivan | Wickr SCIF/PRO; Wickr ME; Hangouts; Threema |
| Mike | Sullivan | Wickr SCIF/PRO |
| Richard | Sumnall | Wickr SCIF/PRO |
| Jin | Sun | Telegram |
| Achia | Swift | Wickr SCIF/PRO |
| Daniyal | Syed | Wickr SCIF/PRO |
| Matyas | Tamas | Wickr SCIF/PRO; Wickr ME |

## 1. Personnel Who Have Used Wickr or Similar Platform[1]

| First name | Last Name | Type of Ephemeral Messaging Service |
|---|---|---|
| Kirsten | Thompson | Telegram |
| Hudson | Thrift | Wickr SCIF/PRO |
| Bart | Tissue | Wickr SCIF/PRO |
| Jai | Toor | Wickr SCIF/PRO |
| Karen | Toro | Wickr SCIF/PRO |
| Mandy | Tory | Wickr SCIF/PRO |
| Tyler | Trerotola | Wickr SCIF/PRO |
| David | Vidal | Wickr SCIF/PRO |
| Gabriel | Villasenor | Wickr SCIF/PRO |
| Jose_Antonio | Villela | Wickr SCIF/PRO |
| Julie | Viray | Telegram |
| Ashley | Vivlamore | Wickr SCIF/PRO; Wickr ME |
| Kagure | Wamunyu | Telegram |
| David | Wang | Wickr SCIF/PRO |
| Hui | Wang | Wickr SCIF/PRO; Wickr ME |
| Runze | Wang | Wickr SCIF/PRO |
| Randy | Wanis | Wickr SCIF/PRO |
| Caitlin | Washburn | Wickr SCIF/PRO |
| Maxwell | Watkins | Wickr SCIF/PRO |
| Michael Cory | Weiss-Malik | GChat (set to "incognito," "off the record" or auto-delete), Google Hangouts (set to "incognito," "off the record" or auto-delete) |
| Kayla | Whaling | Wickr SCIF/PRO |
| Hugh | White | Wickr SCIF/PRO |
| Christian | Wicks | Wickr SCIF/PRO |
| Anne | Widera | Wickr SCIF/PRO |
| Matthew | Wilson | Telegram |
| Brook | Woldemariam | Wickr SCIF/PRO; Wickr ME; Telegram |
| Kate | Wolf | Wickr SCIF/PRO |
| Barry | Wong | Wickr SCIF/PRO |
| Ross | Worden | Wickr SCIF/PRO; Wickr ME; Telegram; Facebook Messenger |
| Zhen | Wu | Wickr SCIF/PRO |
| Matt | Wyndowe | Telegram |
| Stephen | Yang | Wickr SCIF/PRO |
| Nan | Yang | Telegram |
| Dongyi | Ye | Wickr SCIF/PRO |
| Salle | Yoo | Whatsapp; Telegram |
| John | Yu | Telegram |
| Catherine | Yumul | Wickr SCIF/PRO |
| Brian | Zajac | Telegram |
| Matthew | Zehnder | Snapchat |

## 1. Personnel Who Have Used Wickr or Similar Platform[1]

| First name | Last Name | Type of Ephemeral Messaging Service |
| --- | --- | --- |
| Baoguang | Zhai | Wickr SCIF/PRO; Wickr ME |
| Jinjian | Zhai | Wickr SCIF/PRO; Wickr ME |
| Yingying | Zheng | Wickr SCIF/PRO |
| Rose | Zhong | Telegram |
| Noah | Zych | Telegram |
| Market Place Analytics (in general) | | Wickr SCIF/PRO; Wickr ME |
| Threat Ops (in general) | | Wickr SCIF/PRO; Wickr ME |
| Benjamin Butin's Group (in general) | | Google Hangouts (set to "incognito," "off the record" or auto-delete) |
| China and SEA Ops Team (in general) | | Wickr SCIF/PRO; Telegram |
| Business Development Group (in general) | | Telegram |

# EXHIBIT 32
# FILED UNDER SEAL

# EXHIBIT 33
# FILED UNDER SEAL

# EXHIBIT 34
# FILED UNDER SEAL

# EXHIBIT 35
# FILED UNDER SEAL

# EXHIBIT 36
# FILED UNDER SEAL

# EXHIBIT 37
# FILED UNDER SEAL

# EXHIBIT 38
# FILED UNDER SEAL

# EXHIBIT 39



✓ **Yes, I'm going**   Add a note or change your response

**Mat | Lior | Nick**

| 2/14/2017 | 2:00pm | to | 2:30pm | 2/14/2017 | Time zone |

☐ All day   ☐ Repeat...

Event details    Find a time

**Guests**  Rooms

| Where | SFO | 555 Market - 08th Peddar Road (9) |

map

**Video call**   Add video call

**Calendar**   Mat Henley ▼

**Created by**   Taylor Benson

**Description**

Hi there,

Taylor Benson is inviting you to a scheduled Zoom meeting.

Join from PC, Mac, Linux, iOS or Android: https://uber.zoom.us/j/791860485

Or iPhone one-tap (US Toll): +16465588656,791860485# or +14086380968,791860485#

Or Telephone:
   Dial: +1 646 558 8656 (US Toll) or +1 408 638 0968 (US Toll)
   +971 4 550 8389 (United Arab Emirates Toll)
   +62 21 2188 9017 (Indonesia Toll)
   +63 2395 3500 (Philippines Toll)
   +66 60 003 5790 (Thailand Toll)

Add guests

**Participants**                                    Email
Yes: 5, Maybe: 0, No: 0, Awaiting: 1

👤 Anthony Levandowski *                          ✓
👤 Brian Cullinane                               ✓
👤 Mat Henley                                    ✓
👤 Nick Gicinto                                  ✓
👤 Susan Chiang                                  ✓
👤 Lior Ron
🔳 SFO | 555 Market - 08th Peddar                ✓
    Road (9)
🔳 ~~SFO | 737 Harrison - 02nd Iowa~~
    ~~(8)~~

* Calendar cannot be shown. Why?

UBER00076799

# EXHIBIT 40
# FILED UNDER SEAL

# EXHIBIT 41
# FILED UNDER SEAL

# EXHIBIT 42
# FILED UNDER SEAL

# EXHIBIT 43
# FILED UNDER SEAL

# EXHIBIT 44
# FILED UNDER SEAL

# EXHIBIT 45
# FILED UNDER SEAL

# EXHIBIT 46

**James Judah**

| | |
|---|---|
| **From:** | Rivera, Sylvia <SRivera@mofo.com> |
| **Sent:** | Thursday, November 30, 2017 1:32 PM |
| **To:** | Andrea P Roberts; QE-Waymo |
| **Cc:** | UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Uber-sg@LISTS.SUSMANGODFREY.COM; 'John Cooper'; Matthew Cate |
| **Subject:** | RE: Waymo v. Uber Discovery |

Counsel,

Further to today's meet and confer call, we write to lay out Uber's proposal for its response to the Court's requests reflected in your 3rd and 5th bullet points below, focusing on the tasks concerning ephemeral messaging services. This proposal is intended to provide Waymo with any potentially relevant information without requiring a search of 15,000+ personnel, which simply is not possible to execute within the time frame contemplated by the Court.

1. Scope of Uber Personnel to be Queried/be Subject to Search:
   - Persons on the agreed-upon custodian list for search and production in response to RFPs
   - The additional personnel identified in Kevin Faulkner's September 7, 2017 report as having been searched
   - SSG and MA personnel

2. Methodology for obtaining inventory of "ephemeral" users:
   - Consult any available list of registered users of enterprise service (e.g., Wickr enterprise service)  -AND-
   - Survey the personnel listed above ("Scope of Uber Personnel") to determine what ephemeral messaging platforms they have used for business purposes
     - During this morning's call, the Special Master suggested we also inquire of them who else at the company uses such messaging platforms. We are concerned that that may delay our ability to obtain complete information by this Monday, but are open to discussing that.
   - We would like to exclude from the list persons who use a particular app purely for personal purposes – we do not think the limited time available is best used investigating apps used for messaging with family and friends, and thus propose this limitation

3. Ephemeral messaging services covered by inquiry in #2 above and to be covered by document search:
   - Wickr, Telegram, Allo, Gchat/Hangouts (set to "incognito," "off the record" or auto-delete), Confide, Blink, Cyber Dust, Viber Wink, Facebook Messenger

 We look forward to discussing this afternoon.

Sylvia

**From:** Andrea P Roberts [mailto:andreaproberts@quinnemanuel.com]
**Sent:** Wednesday, November 29, 2017 10:52 PM
**To:** UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Uber-sg@LISTS.SUSMANGODFREY.COM; 'John Cooper'; Matthew Cate
**Cc:** QE-Waymo
**Subject:** Waymo v. Uber Discovery

- External Email -

Counsel:

I write regarding the Court's orders of yesterday and today regarding additional discovery.  The Court ordered Uber to provide the following by Monday at noon:

- Ed Russo's presentation that he testified about on November 27, or confirmation that it does not exist.  (11/27/17 Hearing Tr., 114:16-22)  As we noted previously, Mr. Russo indicated that he may have shown the presentation to his boss or bosses boss so, at a minimum, they should be consulted as to whether they have it.

- A list of all of the Uber vendors "who had anything to do with non-attributable devices or had anything to do with ephemeral anything."  (11/27/17 Hearing Tr., 147:1-4)

- "All documents in the entire company that have anything to do with ephemeral, anything to do with non-attributable devices, or anything to do with using contrived attorney-client privilege."  (11/27/17 Hearing Tr., 147:10-15)

- An inventory of all of the non-attributable devices and who had them from December 1, 2015 to the present.  (11/27/17 Hearing Tr., 153:21-155:8)

- An inventory of the Wickr accounts and who had them from December 1, 2015 to the present, as well as any other self-deleting communication system.  (11/27/17 Hearing T., 153:21-156:10)

- Mr. Jacobs' personnel file, including his performance review (11/28/17 Hearing Tr., 156:10-11)

We expect that, to the extent Uber uses electronic searches to search for responsive documents, those searches will include everyone in the SSG and MA groups (including their predecessor groups), as well as other appropriate custodians.  Please provide us with the list of custodians and any search terms Uber intends to use.  Uber's searches, however, should not be limited to only search terms.

We will have additional document requests as well.

As for depositions, we will take depositions of at least the following individuals:

Richard Jacobs
Clayton Halunen
Ed Russo
Matt Henley
Nick Gicinto
Joe Sullivan
Craig Clark
Kevin Maher
Jake Nocon
Shawnee Delaney
Salle Yoo
Travis Kalanick
Lior Ron
Joe Spiegler
David Bonderman
Ariana Huffington

By tomorrow, please let us know which of these individuals are represented by Uber's counsel and which we should contact directly.  For those not represented by Uber's counsel, please provide any contact information

you have for them, including the contact information of any counsel Uber is aware that they have. We will meet and confer regarding the scheduling of these depositions. We also intend to serve a 30(b)(6) notice for a deposition of Uber relevant to the topics revealed in the Jacobs letter. We will provide that separately.

This list of discovery and depositions is not exhaustive, but given the expedited schedule we are providing our preliminary list of discovery now.

Thanks,
Andrea

**Andrea Pallios Roberts**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5023 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
andreaproberts@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

======================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 47

**Patrick Schmidt**

---

| | |
|---|---|
| **From:** | Ray, Wendy J. <WRay@mofo.com> |
| **Sent:** | Thursday, December 07, 2017 10:37 AM |
| **To:** | David Perlson; John Cooper; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Uber-sg@LISTS.SUSMANGODFREY.COM; Matthew Cate |
| **Cc:** | QE-Waymo |
| **Subject:** | RE: Waymo v. Uber |

David,

We appreciate Waymo's effort to summarize the results of yesterday's meet and confer, but note that there were several substantive issues discussed on the call that are not included in your summary. For example, while Waymo's summary includes the Special Master's timeline for the completion of Uber's document production, it omits the reciprocal deadline for Waymo's production. To the extent Waymo circulates meet and confer summaries going forward, we ask that Waymo make a good faith effort to provide complete and accurate summaries. We will do the same.

Because the summary provided in your email of 5:08PM was at times incomplete or inaccurate based on my recollection, I annotated that summary below to reflect a more complete record of the topics discussed.

Thank you,
Wendy

**From:** David Perlson [mailto:davidperlson@quinnemanuel.com]
**Sent:** Wednesday, December 06, 2017 5:08 PM
**To:** John Cooper; UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Uber-sg@LISTS.SUSMANGODFREY.COM; Matthew Cate
**Cc:** QE-Waymo
**Subject:** Waymo v. Uber

John and Counsel,

Especially after the back and forth this morning, we thought it would be useful for all of us to summarize what was discussed on yesterday's meet-and-confer:

~~Uber~~ Document Production. As confirmed in today's correspondence, the Special Master ordered ~~Uber~~ all parties to produce all documents responsive to ~~Waymo's~~ outstanding RFPs ~~on a rolling basis to be completed~~ by Friday at midnight.  Uber indicated it has already begun the process of responding to Waymo's document requests and will not withhold any documents that are available for production before Friday.

Communication logs. WilmerHale agreed to provide log of the *first* communications it had with Uber or any law firm acting on behalf of Uber, regarding the Jacobs email, the Jacobs letter, and the Jacobs settlement agreement by yesterday night. The Special Master also told WilmerHale to provide a complete log of *all* communications regarding the three Jacobs documents between WilmerHale and Uber or any law firm that represented Uber ~~on a rolling basis, with completion~~ by Friday.  Uber indicated that MoFo would not provide its own log regarding any communications with Wilmer, but instead would correct any missing entries by Sunday. The Special Master approved of this procedure to avoid make-work because MoFo's log on this issue would duplicate Wilmer's log.  The Special Master also agreed that the cut-off date for these logs would be communications occurring before the Court's notice sent to the parties on 11/22.

1

We explained that MoFo still would need to provide a complete log of its communications regarding the three documents with Uber, as well as with anyone other than Wilmer Hale, including internally at MoFo. Arturo represented that this would be a small number. The Special Master then directed Uber to produce a log of communications amongst MoFo's Waymo v. Uber litigation team attorneys, or between those attorneys and Uber or any law firm, excluding WilmerHale, that has represented Uber in this matter, by last night. The Special Master also instructed Uber to provide a full communications log for all other MoFo attorneys by Sunday.

Depositions. Waymo requested depositions of the four MoFo lawyers who received the Jacobs letter.  As we mentioned, we believe that inquiring about the discovery practices and procedures bearing on the failure to produce from these four lawyers, as we have inquired from Uber's in-house counsel, is directly within the scope of what Judge Alsup has permitted Waymo to request. Uber laid out its opposition to Waymo's position and the Special Master indicated that if Waymo wanted to pursue this request, Waymo would need to bring the issue to Magistrate Judge Corley.

The Special Master ordered that Arturo email Waymo list by Sunday of the lawyers at MoFo who saw the documents, the dates, for what purpose, and whether they sent it to anyone else but did not make any findings. We maintain that we are entitled to ask relevant questions to the MoFo lawyers under oath and will follow up separately.

The parties also discussed the 30(b)(6) topics Uber served to Waymo, and the Special Master stated Waymo needs to agree to produce at least its first witness to address the topics by this Monday.

Hard copy of letter. Although Uber represented at the hearing that it would inquire into whether there was a printed copy of the Jacobs letter, Uber refused to do so on the call yesterday. Uber indicated it would not argue that Uber had not been obligated to produce the letter solely because a printed copy did not exist. As we noted yesterday, we cannot understand how this can be reconciled with Uber's assertion that it was only obligated to produce documents responsive to the agreed-upon search terms. The Special Master indicated that whether there were hard copies of the letter or only electronic copies would have no impact on his charge as stated by Judge Alsup and declined Waymo's request to require that Uber further investigate this issue.

Redactions. During the November 29 evidentiary hearing, Waymo requested the subject matter of several redactions on two sets of Board meeting minutes. Uber agreed to provide them. Uber also requested the subject matter of a redaction in an email which appears to relate to ephemeral communications, but Uber agreed to first check Waymo's privilege log for that information. Uber's counsel asked counsel for Waymo on the call what the privilege log entry for that document stated and Waymo's counsel on the call was not prepared to defend the designations substantively and could not state the reason Waymo believed the redactions to be appropriate.

Uber's response and production in response to Court Orders:  On November  29, Andrea Roberts set forth an email outlining Waymo's position regarding what the Court ordered Uber to provide at the November 28 and 29 hearings.   On November 30, Sylvia sent an e-mail proposing Uber's plan to comply with that order since searching all Uber personnel was "simply not possible to execute." In that e-mail, Uber suggested it would narrow the scope of personnel to be searched to (1) agreed-upon custodians for responses to RFPs, (2) additional personnel identified in Kevin Faulkner's September 7, 2017 report as having been searched, and (3) SSG and MA personnel. On the call yesterday, Sylvia confirmed that Uber's productions in response to the Court's order have followed that proposal, ~~as opposed to everything the Court ordered~~. Uber also indicated that it planned to supplement the productions as not all employees have responded to its inquiries, with the exception of the list of everyone who used Wickr, which is complete.

~~Waymo discovery.  Jim Baker has provided in email responses regarding the discovery to Waymo.~~

Privilege Redactions Related to the Special Matters Committee: Counsel for Uber stated that they reached out to counsel for Waymo over the phone to discuss logistics concerning privilege redactions to documents coming from the committee. Waymo agreed to respond and discuss the issue separately.

David Perlson
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Direct: (415) 875-6344
Main Phone: (415) 875-6600
Main Fax:  (415) 875-6700
E-mail: davidperlson@quinnemanuel.com
Web:  www.quinnemanuel.com

===========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 48
# FILED UNDER SEAL

# EXHIBIT 49
# FILED UNDER SEAL

# EXHIBIT 50
# FILED UNDER SEAL

# EXHIBIT 51
# FILED UNDER SEAL

# EXHIBIT 52
# FILED UNDER SEAL

# EXHIBIT 53
# FILED UNDER SEAL

# EXHIBIT 54
# FILED UNDER SEAL

# EXHIBIT 55

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                   Plaintiff,<br><br>          vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>                   Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**DECLARATION OF CLAYTON HALUNEN**<br><br>Judge:       Hon. William H. Alsup<br>Trial Date:  February 5, 2018 |

1       I, Clayton Halunen, hereby declare as follows:

2       1.     I am an attorney licensed to practice law in the State of Minnesota and am a partner

3 in Halunen Law.  I have personal knowledge of the matters set forth in this declaration, and if

4 called as a witness I would testify competently to those matters.

5       2.     Halunen Law and Collier Law Firm, LLP jointly represented Richard Jacobs in

6 connection with certain employment-related and whistleblower-related claims that Mr. Jacobs

7 asserted against Uber in the spring and summer of 2017.  I was the lead attorney representing

8 Mr. Jacobs against Uber.

9       3.     Halunen Law and Collier Law Firm, LLP represented Mr. Jacobs on a contingency

10 fee basis.  The two firms were compensated for their representation based on a percentage of the

11 compensation that Mr. Jacobs received when he settled his claims against Uber.  Further, the

12 parties fully resolved Mr. Jacobs' claims before litigation began.  As a result, Halunen Law did not

13 maintain time records sufficient to show the time spent on Mr. Jacobs' matter or send invoices to

14 Mr. Jacobs reflecting its work on the matter.  Nonetheless, I conservatively estimate that Halunen

15 Law spent approximately 230 hours working on the matter from the time Halunen Law was

16 retained through the finalization of Mr. Jacobs' settlement with Uber.  I do not have actual

17 knowledge of the specific number of hours that Collier Law Firm, LLP expended.  I would

18 presume that the amount of time expended by Collier Law Firm, LLP would have approximated

19 the time that Halunen Law expended.

20      I declare under penalty of perjury under the laws of the State of California that the

21 foregoing is true and correct, and that this declaration was executed in Minneapolis, Minnesota on

22 January 11, 2018.

24                     Clayton Halunen

DECLARATION OF CLAYTON HALUNEN

# EXHIBIT 56
# FILED UNDER SEAL

# EXHIBIT 57
# FILED UNDER SEAL

# EXHIBIT 58
# FILED UNDER SEAL

# EXHIBIT 59

**Patrick Schmidt**

| | |
|---|---|
| **From:** | Balassone, Elizabeth <EBalassone@mofo.com> |
| **Sent:** | Thursday, January 11, 2018 11:08 PM |
| **To:** | Rivera, Sylvia; QE-Waymo |
| **Cc:** | John Cooper (JCooper@fbm.com); Matthew Cate; UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit@bsfllp.com; Uber-sg@LISTS.SUSMANGODFREY.COM |
| **Subject:** | RE: Waymo v. Uber |
| **Attachments:** | 2018.01.11 Uber's Supplemental Privilege Log Pursuant to Order Regarding Discovery Disputes (ECF No. 2415) [CONFIDENTIAL].pdf |

Per Sylvia's email below, attached please find Uber's Supplemental Privilege Log Pursuant to Order Regarding Discovery Disputes (ECF No. 2415), which has been marked Confidential and should be treated accordingly.  New entries are highlighted in yellow for ease of reference.

**ELIZABETH BALASSONE**
Associate | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
**P:** +1 (415) 268-7585
mofo.com | LinkedIn | Twitter

**From:** Rivera, Sylvia
**Sent:** Friday, December 29, 2017 4:54 PM
**To:** QE-Waymo
**Cc:** John Cooper (JCooper@fbm.com); Matthew Cate; UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit@bsfllp.com; Uber-sg@LISTS.SUSMANGODFREY.COM
**Subject:** Waymo v. Uber

Counsel:

In double-checking the completeness of Uber's search and production in this supplemental round of discovery, our e-discovery vendor determined that a set of search results inadvertently was not pushed to us for review.  Those documents were reviewed this week, we expect to produce about 20 responsive and non-privileged documents tonight or tomorrow, and will supplement the privilege log for Angela Padilla communications as needed in light of privileged documents withheld.

Regards,
Sylvia

**Sylvia Rivera**
Morrison & Foerster LLP
707 Wilshire Boulevard | Los Angeles, CA 90017-3543
P: +1 (213) 892.5734 | F: +1 (323) 210.1210
SRivera@mofo.com | www.mofo.com

======================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 60
# FILED UNDER SEAL

# EXHIBIT 61
# FILED UNDER SEAL

# EXHIBIT 62
# FILED UNDER SEAL

# EXHIBIT 63
# FILED UNDER SEAL

# EXHIBIT 64
# FILED UNDER SEAL

# EXHIBIT 65
# FILED UNDER SEAL

# EXHIBIT 66
# FILED UNDER SEAL

# EXHIBIT 67
# FILED UNDER SEAL

# EXHIBIT 68
# FILED UNDER SEAL

# EXHIBIT 69
# FILED UNDER SEAL

# EXHIBIT 70
# FILED UNDER SEAL

# EXHIBIT 71
# FILED UNDER SEAL

# EXHIBIT 72
# FILED UNDER SEAL

# EXHIBIT 73
# FILED UNDER SEAL

# EXHIBIT 74

Waymo LLC v. Uber Technologies, Inc., et al., No. 3:17-cv-00939-WHA (N.D. Cal.)

**Defendants Uber and Ottomotto's Tyto LiDAR Acquisition Categorial Privilege Log**

| Category No. | Date Range | Document Type | Senders / Recipient(s) / Copyees | Category Description | Privilege Justification | Documents Withheld |
|---|---|---|---|---|---|---|
| 1 | 5/9/2016-5/17/2016 | Email, PDF, Word | **Attorneys:** Wenting Yu, Esq. (OMM); Kyle Uhlman, Esq. (OMM); Melisa Glorighian (OMM); Adam Bentley, Esq. **Non-Attorneys:** Rhian Morgan | Documents/Communications with outside counsel regarding issues concerning acquisition of Tyto LiDAR assets. | Attorney-Client Privilege | 38 |
| 2 | 4/27/2016-5/6/2016 | Email, PDF, Word | **Attorney:** Adam Bentley, Esq. **Non-Attorneys:** Lior Ron; Rhian Morgan; Dan Gruver | Documents/Communications with in-house counsel regarding issues concerning acquisition of Tyto LiDAR assets. | Attorney-Client Privilege | 43 |
| 2 | 5/5/2016-5/7/2016 | Email, PDF, Word | **Attorney:** Andrew Glickman, Esq.; Jay Choi, Esq.; Aaron Melville, Esq.; Christian Lymn, Esq.; Julie Xu, Esq.; Justin Suhr, Esq. **Non-Attorneys:** Cameron Poetzscher; Nina Qi | Documents/Communications with in-house counsel regarding issues concerning acquisition of Tyto LiDAR assets. | Attorney-Client Privilege | 20 |

# EXHIBIT 75
# FILED UNDER SEAL

# EXHIBIT 76
# FILED UNDER SEAL

# EXHIBIT 77
# FILED UNDER SEAL

# EXHIBIT 78
# FILED UNDER SEAL

# EXHIBIT 79

| | |
|---|---|
| **From:** | Rivera, Sylvia <SRivera@mofo.com> |
| **Sent:** | Wednesday, September 27, 2017 11:50 PM |
| **To:** | QE-Waymo; Otto Trucking at Goodwin (DG-GPOttoTruckingWaymo@goodwinlaw.com) |
| **Cc:** | UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Uber-sg@LISTS.SUSMANGODFREY.COM |
| **Subject:** | Waymo v. Uber |

Counsel,

We learned a few hours ago that there may be emails and documents from an Anthony Levandowski Ottomotto account that was not migrated over to Uber.  We are treating this with the highest priority and people will be working through the night to determine if there are any documents that require further production.  If there are, we will make such a production asap.  We wanted to advise you of this immediately and we will update you as soon as we are able to obtain additional information.

Regards,

Sylvia


========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 80

**Jonathan Francis**

| | |
|---|---|
| **From:** | Ray, Wendy J. <WRay@mofo.com> |
| **Sent:** | Friday, November 17, 2017 8:08 AM |
| **To:** | James Judah; QE-Waymo; John Cooper; Matthew Cate |
| **Cc:** | UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Uber-sg@LISTS.SUSMANGODFREY.COM |
| **Subject:** | RE: Waymo - receipts |

James,

MoFo received the March 1, 2016 receipt in late April during the time when Uber was responding to multiple expedited depositions and document requests and moving to compel arbitration. The receipt was placed in Ms. Morgan's witness file. In October, Ms. Morgan testified that she had provided a receipt to legal counsel. Waymo never asked for the receipt. Please let us know why Waymo did not ask for the receipt at or after Ms. Morgan's deposition.

When Ms. Morgan provided three additional receipts yesterday, one of our team members referenced Ms. Morgan's October deposition testimony about a receipt provided to counsel. We looked for and found the receipt, determined that it did not appear to have been produced, and thus produced it today, along with the three receipts that we received yesterday. As I mentioned, we do not object to a 30 minute deposition about the receipts.

Wendy

**From:** James Judah [mailto:jamesjudah@quinnemanuel.com]
**Sent:** Thursday, November 16, 2017 7:04 PM
**To:** Ray, Wendy J.; QE-Waymo; John Cooper; Matthew Cate
**Cc:** UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Uber-sg@LISTS.SUSMANGODFREY.COM
**Subject:** RE: Waymo - receipts

**- External Email -**

Wendy and John –

We are reviewing Uber's untimely production, but in the meantime we have a few questions:

1) Which receipt did Ms. Morgan provide to Uber's counsel prior to her October 4 deposition?
2) When did Ms. Morgan provide that receipt to Uber's counsel?
3) Why didn't Uber produce that receipt before the close of fact discovery, before Ms. Morgan's August 18 deposition, before Ms. Morgan's October 4 deposition, or at any time prior to today?
4) When did Ms. Morgan find that receipt?
5) When did Ms. Morgan find the other receipts that were produced today?

Please provide responses by 9 AM tomorrow. John, we request a meet and confer tomorrow morning to the extent any of these questions are not answered by 9 AM.

Waymo reserves all rights.

Best,
James

**From:** Ray, Wendy J. [mailto:WRay@mofo.com]
**Sent:** Thursday, November 16, 2017 1:36 PM
**To:** QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Uber-sg@LISTS.SUSMANGODFREY.COM
**Subject:** Waymo - receipts

Counsel,
Rhian Morgan found hard copies of receipts from ShredWorks at her house while looking for something else, and gave them to counsel for Uber yesterday. We are processing them for production to you today. In deposition, she testified that she provided a receipt to counsel. We are producing that receipt as well. We understand you may have questions about the receipts and would not object if you would like to reopen her deposition for 30 minutes, limited to questions about these receipts.

**Wendy J. Ray**
Partner | Morrison & Foerster LLP
707 Wilshire Boulevard | Los Angeles, CA 90017-3543
**P:** +1 (213) 892-5446
mofo.com | LinkedIn | Twitter


============================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

============================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 81

**Jonathan Francis**

| | |
|---|---|
| **From:** | Ray, Wendy J. <WRay@mofo.com> |
| **Sent:** | Thursday, November 16, 2017 1:36 PM |
| **To:** | QE-Waymo |
| **Cc:** | UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Uber-sg@LISTS.SUSMANGODFREY.COM |
| **Subject:** | Waymo - receipts |

Counsel,

Rhian Morgan found hard copies of receipts from ShredWorks at her house while looking for something else, and gave them to counsel for Uber yesterday. We are processing them for production to you today. In deposition, she testified that she provided a receipt to counsel. We are producing that receipt as well. We understand you may have questions about the receipts and would not object if you would like to reopen her deposition for 30 minutes, limited to questions about these receipts.

**Wendy J. Ray**
Partner | Morrison & Foerster LLP
707 Wilshire Boulevard | Los Angeles, CA 90017-3543
**P:** +1 (213) 892-5446
mofo.com | LinkedIn | Twitter

=====================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 82

**Jonathan Francis**

| | |
|---|---|
| **From:** | Na, Terrie <tsna@mofo.com> |
| **Sent:** | Thursday, November 16, 2017 6:28 PM |
| **To:** | QE-Waymo |
| **Cc:** | BSF_EXTERNAL_UberWaymoLit@bsfllp.com; Uber-sg@LISTS.SUSMANGODFREY.COM; UberWaymoMoFoAttorneys |
| **Subject:** | Waymo v Uber - Defendants' Fourth Supplemental Exhibit List |
| **Attachments:** | 2017.11.16 Defendants' 4th Suppl Exhibit List.xlsx; 2017.11.16 Defendants' 4th Suppl Exhibit List.pdf |

Counsel,

Please find attached Defendants' fourth supplemental trial exhibit list.  Defendants have added TX-3835 through TX-3837, which adds three documents produced today.

PDF copies of the newly added exhibits will be sent under separate cover.

Defendants reserve the right to use the best quality copy of documents available as trial exhibits.  Defendants also reserve the right to use the family groups of documents listed on its trial exhibit list.

Best Regards,

**TERRIE NA**
Senior Paralegal | Morrison & Foerster LLP
12531 High Bluff Drive | San Diego, CA 92130-2040
**P:** +1 (858) 720-7948
mofo.com | LinkedIn | Twitter


=========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 83
# FILED UNDER SEAL

# EXHIBIT 84
# FILED UNDER SEAL

# EXHIBIT 85
# FILED UNDER SEAL

# EXHIBIT 86
# FILED UNDER SEAL

# EXHIBIT 87
# FILED UNDER SEAL

# EXHIBIT 88
# FILED UNDER SEAL

# EXHIBIT 89

Waymo LLC v. Uber Technologies, Inc. et al., No. 3:17-cv-00939-WHA (N.D. Cal.)

**CROSS-REFERENCE OF EMPLOYEE ATTESTATIONS PRODUCED IN UBER_033**
**WITH APRIL 10, 2017 PRIVILEGE LOG ENTRIES**

| 4/10/2017 Priv Log Entry | PROD_BEG | PROD_END |
|---|---|---|
| 334 | UBER00017154 | UBER00017154 |
| 340 | UBER00017155 | UBER00017155 |
| 341 | UBER00017156 | UBER00017156 |
| 342 | UBER00017157 | UBER00017157 |
| 343 | UBER00017158 | UBER00017158 |
| 344 | UBER00017159 | UBER00017159 |
| 345 | UBER00017160 | UBER00017160 |
| 346 | UBER00017161 | UBER00017161 |
| 347 | UBER00017162 | UBER00017162 |
| 348 | UBER00017163 | UBER00017163 |
| 349 | UBER00017164 | UBER00017164 |
| 350 | UBER00017165 | UBER00017165 |
| 351 | UBER00017166 | UBER00017166 |
| 352 | UBER00017167 | UBER00017167 |
| 353 | UBER00017168 | UBER00017168 |
| 354 | UBER00017169 | UBER00017169 |
| 355 | UBER00017170 | UBER00017170 |
| 356 | UBER00017171 | UBER00017171 |
| 357 | UBER00017172 | UBER00017172 |
| 358 | UBER00017173 | UBER00017173 |
| 359 | UBER00017174 | UBER00017174 |
| 360 | UBER00017175 | UBER00017175 |
| 361 | UBER00017176 | UBER00017176 |
| 362 | UBER00017177 | UBER00017177 |
| 363 | UBER00017178 | UBER00017178 |
| 364 | UBER00017179 | UBER00017179 |
| 365 | UBER00017180 | UBER00017180 |
| 366 | UBER00017181 | UBER00017183 |
| 367 | UBER00017184 | UBER00017184 |
| 368 | UBER00017185 | UBER00017185 |
| 369 | UBER00017186 | UBER00017186 |
| 371 | UBER00017187 | UBER00017187 |
| 372 | UBER00017188 | UBER00017188 |
| 373 | UBER00017189 | UBER00017189 |
| 374 | UBER00017190 | UBER00017190 |
| 375 | UBER00017191 | UBER00017191 |
| 376 | UBER00017192 | UBER00017192 |
| 377 | UBER00017193 | UBER00017193 |
| 378 | UBER00017194 | UBER00017194 |
| 1456 | UBER00017195 | UBER00017195 |
| 1460 | UBER00017196 | UBER00017196 |
| 1461 | UBER00017197 | UBER00017197 |

Waymo LLC v. Uber Technologies, Inc. et al., No. 3:17-cv-00939-WHA (N.D. Cal.)

**CROSS-REFERENCE OF EMPLOYEE ATTESTATIONS PRODUCED IN UBER_033**
**WITH APRIL 10, 2017 PRIVILEGE LOG ENTRIES**

| 4/10/2017 Priv Log Entry | PROD_BEG | PROD_END |
|---|---|---|
| 1462 | UBER00017198 | UBER00017198 |
| 1463 | UBER00017199 | UBER00017199 |
| 1464 | UBER00017200 | UBER00017200 |
| 1465 | UBER00017201 | UBER00017201 |
| 1466 | UBER00017202 | UBER00017202 |
| 1467 | UBER00017203 | UBER00017203 |
| 1468 | UBER00017204 | UBER00017204 |
| 1469 | UBER00017205 | UBER00017205 |
| 1470 | UBER00017206 | UBER00017206 |
| 1471 | UBER00017207 | UBER00017207 |
| 1478 | UBER00017208 | UBER00017208 |
| 1484 | UBER00017209 | UBER00017209 |
| 1485 | UBER00017210 | UBER00017210 |
| 1486 | UBER00017211 | UBER00017211 |
| 1487 | UBER00017212 | UBER00017212 |
| 1488 | UBER00017213 | UBER00017213 |
| 1489 | UBER00017214 | UBER00017214 |
| 1490 | UBER00017215 | UBER00017215 |
| 1491 | UBER00017216 | UBER00017216 |
| 1492 | UBER00017217 | UBER00017217 |
| 1493 | UBER00017218 | UBER00017218 |
| 1494 | UBER00017219 | UBER00017219 |
| 1495 | UBER00017220 | UBER00017220 |
| 1496 | UBER00017221 | UBER00017221 |
| 1497 | UBER00017222 | UBER00017222 |
| 1498 | UBER00017223 | UBER00017223 |
| 1499 | UBER00017224 | UBER00017224 |
| 1500 | UBER00017225 | UBER00017225 |
| 1501 | UBER00017226 | UBER00017226 |
| 1502 | UBER00017227 | UBER00017227 |
| 1503 | UBER00017228 | UBER00017228 |
| 1504 | UBER00017229 | UBER00017229 |
| 1505 | UBER00017230 | UBER00017230 |
| 1506 | UBER00017231 | UBER00017231 |
| 1507 | UBER00017232 | UBER00017232 |
| 1508 | UBER00017233 | UBER00017233 |
| 1509 | UBER00017234 | UBER00017234 |
| 1510 | UBER00017235 | UBER00017237 |
| 1511 | UBER00017238 | UBER00017238 |
| 1512 | UBER00017239 | UBER00017239 |
| 1513 | UBER00017240 | UBER00017240 |
| 1515 | UBER00017241 | UBER00017241 |

2

Waymo LLC v. Uber Technologies, Inc. et al., No. 3:17-cv-00939-WHA (N.D. Cal.)

**CROSS-REFERENCE OF EMPLOYEE ATTESTATIONS PRODUCED IN UBER_033**
**WITH APRIL 10, 2017 PRIVILEGE LOG ENTRIES**

| 4/10/2017 Priv Log Entry | PROD_BEG | PROD_END |
|---|---|---|
| 1516 | UBER00017242 | UBER00017242 |
| 1517 | UBER00017243 | UBER00017243 |
| 1518 | UBER00017244 | UBER00017244 |
| 1519 | UBER00017245 | UBER00017245 |
| 1520 | UBER00017246 | UBER00017246 |
| 1521 | UBER00017247 | UBER00017247 |
| 1522 | UBER00017248 | UBER00017248 |

# EXHIBIT 90
# FILED UNDER SEAL

# EXHIBIT 91 INTENTIONALLY LEFT BLANK

# EXHIBIT 92

**James Judah**

| | |
|---|---|
| **From:** | James Judah |
| **Sent:** | Sunday, June 11, 2017 3:14 PM |
| **To:** | Rivera, Sylvia; QE-Waymo |
| **Cc:** | 'John Cooper'; Matthew Cate; UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com' (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); rwalsh@goodwinlaw.com; nchatterjee@goodwinlaw.com; sbrun@goodwinlaw.com; bschuman@goodwinlaw.com |
| **Subject:** | RE: Waymo; follow up from June 7 call on Uber's responses to Set 1 of expedited discovery |

John and Sylvia,

Sylvia's email below regarding Uber's responses to Waymo's first set of expedited RFPs and interrogatories, which were due June 5, does not address all of the items that were outstanding from the June 7 meet and confer.  To the extent we do not receive answers to these outstanding questions beforehand, we request a meet and confer for on Monday.

Expedited RFP 5: In addition to identifying the Bates range of the documents produced that were in the Data Room, Uber was supposed to provide an explanation of diligence documents that were <u>not</u> put in the Data Room and the volume of such documents.  This was so that Waymo would have an understanding of what was requested in RFP 5 but Uber is refusing to produce.  Your email below explains what <u>was</u> in the Data Room.  Please provide the information requested.

Expedited RFP 8:  We look forward to your response on Monday as to whether all documents Defendants are withholding in response to this request are privileged.

Expedited Interrogatory No. 3:  Defendants were to explain what <u>source</u> they used to determine which devices Levandowski used to access Defendants' networks.  Your email below does not do this.  You say that Defendants identified Levandowksi Uber-issued MacBook.  For the other MacBook identified, you say that Uber cannot disclose the source because that would reveal work product.  Please explain the basis for this.  It seems that the source that identifies whether a device connects to Defendants' networks would be factual and not protected by work product.

Expedited Interrogatory No. 4:  We asked in Mr. Roberts' June 8 email following the June 7 meet and confer whether Uber asked Mr. Stojanovski about the information called for by Expedited Interrogatory No. 4, or asked Mr. Levandowski before his termination.  Your email does not respond to this.  You also say that, in trying to determine the ownership of Sandstone Group, which would identify the persons with an ownership interest in Tyto LiDAR—the information sought in this interrogatory—Uber is running into "confidentiality issues."  Please explain the nature of these issues and how they are preventing Uber from investigating its response to this interrogatory.

Expedited Interrogatory No. 5:  We look forward to Defendants providing more detailed information in response to this interrogatory next week.  Given that this was an expedited interrogatory and this information should have been provided by the June 5 deadline, please confirm you will provide this information by Monday at 5 pm.

Expedited Interrogatory No. 8:  Your email does not address the questions we raised about the response to this interrogatory.  We understand that Uber claims that Levandowksi did not perform any "consulting" work for Uber before August 18, 2016, and that is what the interrogatory calls for.  But, in response to this interrogatory, Uber identifies a lot of work that Levandowski did perform for Uber before August 18, 2016.  Given the description, it certainly seems like he was "consulting" for Uber, whether you use that term or not.  Thus, we asked for more detail

about what he was doing, on what terms, and what compensation he was receiving/promised for the work.  Can you explain how Uber defines "consulting" for purposes of its response to this interrogatory?

Expedited Interrogatory No. 9:   In Ms. Roberts' June 6 email, we noted that Uber refers to only two communications in response to this interrogatory but also objects on the basis of privilege.  We asked for an understanding of what Uber is withholding on the basis of privilege and why.  Your email below says that "[c]ommunications between lawyers at Uber and Mr. Levandowski related to the litigation are generally protected by the attorney-client privilege."  However, Uber cites two communications between Uber's lawyers and Levandowski in response to Interrogatory No. 9.  Why are they not privileged if the remaining communications are?  Why doesn't disclosure of those two communications about the May 11 Order waive privilege as to all of the remaining communications between Uber and Levandowski regarding the May 11 Order?  Further, if there have been any communications since Levandowski's termination, does Uber maintain that those communications are privileged?  If so, on what basis?

Best,
James

---

**From:** Rivera, Sylvia [mailto:SRivera@mofo.com]
**Sent:** Friday, June 09, 2017 11:58 PM
**To:** QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** 'John Cooper' <JCooper@fbm.com>; Matthew Cate <MCate@fbm.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com' (BSF_EXTERNAL_UberWaymoLit@bsfllp.com) <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; rwalsh@goodwinlaw.com; nchatterjee@goodwinlaw.com; sbrun@goodwinlaw.com; bschuman@goodwinlaw.com
**Subject:** Waymo; follow up from June 7 call on Uber's responses to Set 1 of expedited discovery

Quinn Team,

I write to follow up on discovery items that I understand were discussed on the June 7 meet-and-confer call, which I was unavailable to able to join.

Expedited Rog #3
Uber identified two computers in response to this interrogatory.  Uber identified the first MacBook Pro because that is the work computer that Uber issued to Anthony Levandowski and on that basis understands that that computer was used to access Uber's network.  With regard to the other MacBook Uber identified, Uber cannot state its basis for believing that computer was used to access Uber's network because doing so would reveal work product that is protected from disclosure.

Expedited Rog #4
Uber provided an accurate response to this interrogatory.  Sandstone Group LLC is the sole member of Tyto LiDAR LLC.  As we understand it, it is closely held.  The members and ultimate owners of Sandstone Group LLC were not disclosed to Ottomotto or Uber during the transaction.  In response to the issue you raised, we are trying to obtain details about Sandstone Group LLC's ownership, but are running into confidentiality issues.  We are continuing to make inquires, however, and will let you know if we ascertain the ultimate owner(s) of Tyto LiDAR LLC.

Expedited Rog #5
We believe the response to this interrogatory provides sufficient information, but we will attempt next week to obtain more detailed information about Mr. Levandowski's agreed upon compensation.

Expedited Rog #8
The interrogatory seeks information about "consulting work" Mr. Levandowski performed for Uber before August 18, 2016.  The response confirms he was not a consultant to Uber, which answers the question.  However, we nonetheless provided a description of Mr. Levandowski 's interactions at Uber during that time period.  The interrogatory is tied to

"consulting work," of which there is none, so we believe the response is more than sufficient.  To our knowledge, Mr. Levandowski was not receiving compensation from Uber during that time.  If we learn otherwise, we will advise you.

Expedited Rog #9
Communications between lawyers at Uber and Mr. Levandowski related to the litigation are generally protected by the attorney-client privilege.  That is the basis for the withholding of further information in response to this interrogatory.

Expedited RFP #5
The Bates range for the documents produced from the Data Room is UBER00043056 - UBER00048431 (except not UBER00047857 - UBER00047861).  The Data Room was the repository for diligence documents for the Uber – Otto transaction and contained hundreds of documents comprised of charters, operating agreements, Board consents, stockholder consents, offer letters, employee attestations, Employee Restricted Unit Purchase Agreements Under Plan, Founders Unit Purchase Agreements, Invention Assignment Agreements, Ottomotto Inc. Equity Incentive Plan, documents for the Tyto LiDAR LLC transaction, and various other diligence documents.

Expedited RFP #8
We are confirming whether there are non-privileged responsive documents and expect to respond on Monday.

Best,
Sylvia

=========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 93
# FILED UNDER SEAL

# EXHIBIT 94
# FILED UNDER SEAL

# EXHIBIT 95
# FILED UNDER SEAL

# EXHIBIT 96
# FILED UNDER SEAL

# EXHIBIT 97
# FILED UNDER SEAL

# EXHIBIT 98

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | February 26, 2017 at 6:09 PM – 6:24 PM | Ognen Stojanovski's phone | Messages between Ognen Stojanovski, Anthony Levandowksi, Lior Ron, and Chelsea Maughan Kohler | | | Imessages | Messages re Waymo v. Uber lawsuit | Withheld | Confidential communications with Uber PR about Waymo v. Uber lawsuit at direction of Uber legal department | Computer and phone are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 2. | January 21, 2013 at 10:18 PM | Ognen Stojanovski's Dropbox | Ognen Stojanovski | Brent Schwartz; Michiele Roderick | | Apache Office Writer | Secondment Agreement (Asheem) v1 20130122.odt | Withheld | Attorney notes on draft agreement | Computer and Dropbox are password protected; no unauthorized persons received document | Attorney Work-Product |
| 3. | March 25, 2016 at 4:26 PM | Ognen Stojanovski's email account | Alejandro Munoz | Ognen Stojanovski | | Email | uber | Withheld | Email with attorney regarding potential deal between Tyto Lidar and Uber | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 4. | April 1, 2016 at 2:28 AM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski; John Gardner | | Email | Fwd: First Put/Call Agreement | Withheld | Email requesting legal advice regarding merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5. | April 1, 2016 at 8:42 AM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski; Lior Ron | | Email | Reply to "Fwd: First Put/Call Agreement" | Withheld | Email providing legal advice regarding merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 6. | April 1, 2016 | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron; John Gardner | | Email | Reply to "Fwd: First Put/Call Agreement" | Withheld | Email providing legal advice regarding merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 7. | April 1, 2016 at 9:15 PM | Ognen Stojanovski's email account | John Gardner | Lior Ron; Ognen Stojanovski | Anthony Levandowski | Email | RE: First Put/Call Agreement | Withheld | Email providing legal advice regarding merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 8. | April 5, 2016 at 3:27 PM | Ognen Stojanovski's email account | Andy Trafford | Alisa Baker; Anthony Lewis; John Gardner | | Email | FW: Zing – Disclosure Schedules | Withheld | Email between counsel regarding merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney Work-Product |
| 9. | April 5, 2016 at 3:34 PM | Ognen Stojanovski's email account | Anthony Lewis | John F. Gardner | | Email | FW: Zing – Disclosure Schedules | Withheld | Email between counsel regarding merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney Work-Product |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10. | April 5, 2016 at 11:24 PM | Ognen Stojanovski's email account | Anthony M. Lewis | Ognen Stojanovski | | Email | FW: Zing – Disclosure Schedules | | Email providing legal advice regarding merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 11. | April 5, 2016 at 3:27 PM | Ognen Stojanovski's email account | | | | Email attachment (to document 10) - Microsoft Word Document | Disclosure schedules to merger agreement between U, Apparate International C.V., and Ottomotto LLC | Withheld | Draft of agreement with attorney notes | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 12. | December 31, 2009 at 4:00 PM | Ognen Stojanovski's email account | | | | Computer and email account are password protected; no unauthorized persons received communication | Disclosure schedules to merger agreement between U, Apparate International C.V., and Ottomotto LLC | Withheld | Draft of agreement with attorney notes | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 13. | April 27, 2016 at 10:30 AM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski; John F. Gardner | | Email chain | Tyto purchase agreement | Withheld | Email to counsel seeking legal advice regarding purchase of Tyto Lidar by Otto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 14. | April 27, 2016 at 5:32 PM | Ognen Stojanovski's email account | John Gardner | Lior Ron | Ognen Stojanovski | Email chain | RE: Tyto purchase agreement | Withheld | Email from counsel regarding asset purchase of Tyto Lidar by Otto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 15. | April 27, 2016 at 11:43 AM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | John F. Gardner | Email chain | Re: Tyto purchase agreement | Withheld | Email with counsel regarding asset purchase of Tyto Lidar by Otto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 16. | January 10, 2013 at 9:33 PM | Ognen Stojanovski's email account | Anthony Levandowski | John Gardner | | Email chain | Privileged: Redline of 2201 Dwight Way | Withheld | Email to counsel seeking legal advice regarding agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 17. | January 11, 2013 at 9:10 AM | Ognen Stojanovski's email account | John Gardner | Anthony Levandowski | | Email chain | Privileged: Redline of 2201 Dwight Way | Withheld | Email from counsel regarding agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 18. | February 3, 2013 at 10:45 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Anthony Levandowski | | Email chain | Re: Privileged: Redline of 2201 Dwight Way | Withheld | Email from counsel providing legal advice on agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 19. | February 4, 2013 at 9:30 AM | Ognen Stojanovski's email account | Ognen Stojanovski | Athony Levandowski | | Email | Re: Privileged: Redline of 2201 Dwight Way | Withheld | Email from counsel providing legal advice on agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 20. | February 4, 2013 at 12:01 AM | Ognen Stojanovski's email account | Anthony Levandowski | Ognen Stojanovski | | Email | Re: Privileged: Redline of 2201 Dwight Way | Withheld | Email to counsel regarding agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 21. | March 25, 2016 at 10:33 AM | Ognen Stojanovski's email account | Ognen Stojanovski | Alejandro Munoz | | Email | Re: uber | Withheld | Email with attorney regarding potential deal between Tyto Lidar and Uber | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 22. | March 25, 2016 at 4:43 PM | Ognen Stojanovski's email account | Alejandro Munoz | Ognen Stojanovski | | Email | RE: uber | Withheld | Email with attorney regarding potential deal between Tyto Lidar and Uber | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 23. | March 29, 2016 at 7:32 PM | Ognen Stojanovski's email account | John Gardner | Lior Ron | Ognen Stojanovski | Email | MA #1/Section2.21 | Withheld | Email from attorney regarding revised merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 24. | March 29, 2016 | Ognen Stojanovski's email account | John F. Gardner | | | Email attachment (to document 23) – Microsoft Word Document | MA #1/Section2.21 | Withheld | Draft section of merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 25. | March 29, 2016 at 12:50 PM | Ognen Stojanovski's email account | Lior Ron | John Gardner | Ognen Stojanovski | Email | Re: MA #1/Section 2.21 | Withheld | Email with counsel regarding revised merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 26. | March 29, 2016 at 9:02 AM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski | | Email | Section 2.21 | Withheld | Email from counsel regarding revised merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 27. | March 29, 2016 at 9:19 AM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | | Email | Re: Section 2.21 | Withheld | Email to counsel regarding revised merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 28. | March 29, 2016 at 4:38 PM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski | | Email | Re: Section 2.21 | Withheld | Email from counsel regarding revised merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 29. | March 31, 2016 at 4:59 PM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski; John Gardner | | Email chain | Saturn language | Withheld | Email seeking legal advice on exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 30. | March 31, 2016 at 5:11 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | | Email chain | Saturn language | Withheld | Email providing legal advice on exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 31. | March 31, 2016 | Ognen Stojanovski's email account | John Gardner | Lior Ron; Ognen Stojanovski | | Email chain | Saturn language | Withheld | Email providing legal advice on exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 32. | March 31, 2016 at 5:29 PM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski; John Gardner | | Email chain | Saturn language | Withheld | Email seeking legal advice on exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 33. | March 31, 2016 at 5:33 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | John Gardner; Anthony Levandowski | Email chain | Re: Saturn language | Withheld | Email providing legal advice on exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 34. | March 31, 2016 at 7:01 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | Anthony Levandowski | Email | Re: Saturn language | Withheld | Email seeking legal advice on exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 35. | March 31, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 34) – Microsoft Word document | Saturn Exclusivity (favoring Saturn).docx | Withheld | Draft of exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney Work-Product |
| 36. | March 31, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 34) – Microsoft Word document | Saturn Term Sheet draft v1.docx | Withheld | Draft of term sheet for exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney Work-Product |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 37. | March 31, 2016 at 7:02 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | Anthony Levandowski; Lior Ron | Email | Fw: Saturn Language | Withheld | Email seeking legal advice on exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 38. | March 31, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 37) – Microsoft Word document | Saturn Term Sheet draft v1.docx | Withheld | Draft of term sheet for exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney Work-Product |
| 39. | March 31, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 37) – Microsoft Word document | Saturn Exclusivity (favoring Saturn).docx | Withheld | Draft of exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney Work-Product |
| 40. | April 1, 2016 at 2:26 AM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski | Lior Ron; Anthony Levandowski | Email | RE: Saturn Language | Withheld | Email regarding attorney review of draft exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 41. | April 1, 2016 at 3:06 AM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski | Lior Ron; Anthony Levandowski | Email | RE: Saturn Language | Withheld | Email providing legal advice on draft exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 42. | March 31, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 41) – Microsoft Word document | Saturn Exclusivity Agreement.DOC | Withheld | Draft of exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 43. | April 1, 2016 at 3:51 AM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski | | Email | RE: Saturn Language | Withheld | Email providing legal advice on exclusivity agreement term sheet draft | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 44. | April 1, 2016 at 9:54 AM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | Lior Ron; Anthony Levandowski | Email chain | Re: First Put/Call Agreement | Withheld | Email providing legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 45. | April 1, 2016 at 10:59 AM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski | John Gardner; Anthony Levandowski | Email | Re: First Put/Call Agreement | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 46. | April 1, 2016 at 2:15 PM | Ognen Stojanovski's email account | John Gardner | Lior Ron; Ognen Stojanovski | | Email chain | Reply to Re: First Put/Call Agreement | Withheld | Email providing legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 47. | April 1, 2016 at 2:47 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | Lior Ron; Anthony Levandowski | Email chain | Re: First Put/Call Agreement | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 48. | April 1, 2016 at 3:25 PM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski | John Gardner; Anthony Levandowksi | Email | Re: First Put/Call Agreement | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 49. | March 31, 2016 at 9:14 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | | Email | Re: Saturn language | Withheld | Email regarding legal advice on exclusivity agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 50. | April 1, 2016 at 10:58 PM | Ognen Stojanovski's email account | John Gardner | Lior Ron | Ognen Stojanovski; Anthony Levandowski | Email | Re: First Put/Call Agreement | Withheld | Email providing legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 51. | April 5, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 50 - PDF | REDLINE-Project_Zing_-_Company_Di.pdf | Withheld | Draft of disclosure schedules | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 52. | April 5, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 50)- PDF | REDLINE-Project_Zing_-_Company_Dsckisyre_Schedule_(Coole…doc | Withheld | Draft of disclosure schedules | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 53. | April 5, 2016 at 4:27 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Anthony Lewis | John Gardner | Email | Re: FW: Zing – Disclosure Schedules | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 54. | April 3, 2016 at 12:12 AM | Ognen Stojanovski's email account | John Gardner | Lior Ron | | Email chain | Re: FW: Zing – Disclosure Schedules | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 55. | April 3, 2016 at 12:23 AM | Ognen Stojanovski's email account | Lior Ron | John Gardner; Ognen Stojanovski | | Email chain | | Withheld | Email seeking legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 56. | April 3, 2016 | Ognen Stojanovski's email account | John Gardner | Lior Ron; Ognen Stojanovski | | Email chain | | Withheld | Email regarding advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 57. | April 3, 2016 at 10:14 AM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | | Email chain | Re: Orange | Withheld | Email seeking legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 58. | April 3, 2016 at 11:36 AM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski | | Email chain | Reply to Re: Orange | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 59. | April 3, 2016 at 6:46 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | | Email chain | Re: Orange | Withheld | Email seeking legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 60. | April 3, 2016 at 7:16 PM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski | | Email chain | Reply to Re: Orange | Withheld | Email providing legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 61. | April 3, 2016 at 10:50 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | | Email chain | Re: Orange/Employment Matters | Withheld | Email seeking legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 62. | April 3, 2016 at 11:09 PM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski | | Email chain | Reply to Re: Orange/Employment Matters | Withheld | Email providing legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 63. | April 3, 2016 at 11:38 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | | Email chain | Re: Orange/Employment Matters | Withheld | Email seeking legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 64. | April 4, 2016 at 6:42 AM | Ognen Stojanovski's email account | John Gardner | Ognen Stojanovski | | Email chain | RE: Orange/Employment Matters | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 65. | April 5, 2016 at 3:38 PM | Ognen Stojanovski's email account | Lior Ron | Anthony Levandowski; John Gardner; Ognen Stojanovski | | Email chain | Fwd: FW: Zing – Disclosure Schedules | Withheld | Email seeking legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 66. | April 5, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 65) - PDF | REDLINE-Project_Zing _-_Company_Di.pdf | Withheld | Draft of disclosure schedules | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege ; Attorney Work-Product |
| 67. | April 5, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 65) - PDF | REDLINE-Project_Zing _-_Company_Dsckisyre_Schedule_ (Coole…doc | Withheld | Draft of disclosure schedules | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege ; Attorney Work-Product |
| 68. | April 5, 2016 at 6:48 AM PM | Ognen Stojanovski's email account | Ognen Stojanovski | John Gardner | | Email | Re: FW: Zing – Disclosure Schedules | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 69. | April 6, 2016 at 2:13 PM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski | | Email chain | FW: Consumer Merger Agreement | Withheld | Email communication giving legal advice on consumer merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 70. | April 5, 2016 at 12:51 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John F. Gardner | | Email chain | FW: Consumer Merger Agreement | Withheld | Email communication seeking legal advice on consumer merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 71. | April 5, 2016 at 11:06 AM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | John F. Gardner | Email chain | FW: Consumer Merger Agreement | Withheld | Email communication regarding consumer merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 72. | April 5, 2016 at 2:13 AM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski | John F. Gardner | Email chain | Re: Consumer Merger Agreement | Withheld | Email communication regarding consumer merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 73. | April 4, 2016 at 7:38 PM | Ognen Stojanovski's email account | Adam Bentley | Lior Ron | Paul Sieben | Email chain | Consumer Merger Agreement | Withheld | Email communication regarding consumer merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 74. | April 5, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 73)– PDF | Trucking Merger Agreement Redline.pdf | Withheld | Markup of Consumer Merger Agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 75. | April 7, 2016 at 3:06 AM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski | | Email chain | Fwd: Project Zing – Disclosure Schedules | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 76. | April 7, 2016 at 7:40 PM | Ognen Stojanovski's email account | Adam Bentley | Alisa Baker, John F. Gardner, Anthony M. Lewis | Paul Sieben, Andy Trafford, Lior Ron | Email chain | FW: Project Zing – Disclosure Schedules | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 77. | April 7, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 76) – Microsoft Word Document | #129680025 v6 NAACTIVE Project_Zing _ - _Company_D isclosure_Sch edule_.doc | Withheld | Cooley markup of company disclosure schedules | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege ; Attorney Work-Product |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|-----|---------------|----------------------|---------------|-----|-----|---------------|------------------------------------------|--------------------|----------------------|---------------------------------------|----------------|
| 78. | April 7, 2016 | Ognen Stojanovski's email account | | | | Email attachment (to document 76) – PDF | REDLINE – Project_Zing-_Company_Disclosure_Schedule_.pdf | | Cooley markup of company disclosure schedules | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege ; Attorney Work-Product |
| 79. | April 7, 2016 at 3:29 AM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski | | Email | Section 4.3/Disclosure Schedule | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 80. | April 7, 2016 | Ognen Stojanovski's email account | John F. Gardner | | | Email attachment (to document 79) – Microsoft Word Document | Document 1.docx | Withheld | Document giving legal advice regarding merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 81. | April 6, 2016 at 9:32 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | Anthony Levandowski, John F. Gardner | Email | Suggested Edits to Latest Saturn Disclosure | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 82. | April 7, 2016 at 4:34 AM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski | | Email chain | Re: Suggested Edits to Latest Saturn Disclosure | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 83. | April 7, 2016 at 1:19 PM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski, Lior Ron | Anthony Levandowski | Email chain | Saturn/Disclosure 4.3 | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 84. | April 7, 2016 at 12:02 PM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski, John F. Gardner | | Email chain | Fwd: FW: Tyto | Withheld | Email regarding legal advice regarding Tyto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 85. | April 8, 2016 4:45 AM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski | | Email chain | RE: Saturn/Disclosure 4.3 | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 86. | April 7, 2016 at 9:31 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John F. Gardner | | Email chain | Re: Saturn/Disclosure 4.3 | Withheld | Email regarding legal advice on merger agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 87. | April 7, 2016 at 11:58 AM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski, John F. Gardner | | Email chain | Fwd: FW: Tyto | Withheld | Email regarding legal advice on Tyto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |
| 88. | April 7, 2016 at 1:22 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | John F. Gardner | Email chain | Re: FW: Tyto | Withheld | Email seeking legal advice on Tyto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 89. | March 21, 2016 at 4:25 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John F. Gardner | | Email | Sandstone Group of Companies Update and Question | Withheld | Email seeking advice on Tyto acquisition and Sandstone | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 90. | March 21, 2016 at 4:32 PM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski | | Email chain | Re: Sandstone Group of Companies Update and Question | Withheld | Email regarding advice on Tyto acquisition and Sandstone | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 91. | March 21, 2016 at 4:41 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John F. Gardner | | Email chain | Re: Sandstone Group of Companies Update and Question | Withheld | Email regarding advice on Tyto acquisition and Sandstone | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 92. | March 21, 2016 at 11:58 PM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski | | Email chain | Re: Sandstone Group of Companies Update and Question | Withheld | Email regarding advice on Tyto acquisition and Sandstone | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 93. | April 27, 2016 at 11:37 PM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski | | Email chain | Re: IP Counsel | Withheld | Email regarding legal advice on potential IP counsel for Otto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 94. | April 27, 2016 at 12:43 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | | Email chain | Re: IP Counsel | Withheld | Email regarding legal advice on potential IP counsel for Otto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 95. | April 27, 2016 at 12:32 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | | Email chain | Re: IP Counsel | Withheld | Email regarding legal advice on potential IP counsel for Otto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 96. | April 27, 2016 at 12:09 PM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski | | Email chain | Re: IP Counsel | Withheld | Email regarding legal advice on potential IP counsel for Otto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 97. | April 27, 2016 at 12:00 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | | Email chain | Re: IP Counsel | Withheld | Email regarding legal advice on potential IP counsel for Otto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 98. | April 28, 2016 at 12:30 AM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | | Email chain | Re: IP Counsel | Withheld | Email regarding legal advice on potential IP counsel for Otto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 99. | April 27, 2016 at 6:53 PM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski, Lior Ron | | Email chain | Re: Tyto purchase agreement | Withheld | Email regarding legal advice on Tyto acquisition | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 100. | April 27, 2016 at 11:43 AM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | John F. Gardner | Email chain | Re: Tyto purchase agreement | Withheld | Email regarding legal advice on Tyto acquisition | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 101. | April 27, 2016 at 10:32 AM | Ognen Stojanovski's email account | Lior Ron | John F. Gardner, Ognen Stojanovski | | Email chain | Re: Tyto purchase agreement | Withheld | Email regarding legal advice on Tyto acquisition | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 102. | April 27, 2016 at 10:32 AM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski, Lior Ron | | Email chain | Re: Tyto purchase agreement | Withheld | Email regarding legal advice on Tyto acquisition | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 103. | April 27, 2016 at 10:30 AM | Ognen Stojanovski's email account | Lior Ron | John F. Gardner, Ognen Stojanovski | | Email chain | Re: Tyto purchase agreement | Withheld | Email regarding legal advice on Tyto acquisition | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 104. | May 5, 2016 at 1:29 AM | Ognen Stojanovski's email account | John F. Gardner | Ognen Stojanovski | | Email | Consul,ting Agreement | Withheld | Email regarding redline of consulting agreement between Ognen Stojanovski and Ottomotto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 105. | May 5, 2016 | Ognen Stojanovski's email account | Rhian Morgan | | | Email Attachment (to document 104)- Microsoft Word Document | Consulting Agreement.DOCX | Withheld | Redline of consulting agreement between Ognen Stojanovski and Ottomotto | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney Work-Product |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 106. | March 13, 2014 at 2:37 PM | Ognen Stojanovski's email account | Ognen Stojanovski | Alejandro Munoz | | Email | Pouch Assignments | Withheld | Email regarding legal advice on Pouch | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 107. | April 19, 2016 at 9:12 AM | Ognen Stojanovski's email account | Ognen Stojanovski | John F. Gardner | | Email | Pouch reintegration | Withheld | Email seeking legal advice on Pouch Holdings | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 108. | April 27, 2016 at 5:39 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John F. Gardner | | Email | Draft Tyto Asset Purchase Agreement | Withheld | Email seeking legal advice regarding Tyto Asset Purchase Agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 109. | April 27, 2016 at 5:46 PM | Ognen Stojanovski's email account | Ognen Stojanovski | John F. Gardner | | Email chain | Re: Draft Tyto Asset Purchase Agreement | Withheld | Email seeking legal advice regarding Tyto Asset Purchase Agreement | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 110. | March 1, 2016 at 10:42 AM | Ognen Stojanovski's email account | Ognen Stojanovski | Lior Ron | | Email chain | Re: FW: Stroz Engagement Letter | Withheld | Email regarding legal advice on Stroz | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |

*Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC*
Case No. 3:17-cv-00939-WHA
**Tyto Lidar LLC's Privilege Log**
**August 8, 2017**

| No. | Date and Time | Location Where Found | From / Author | To | CC | Document Type | Document Description/Title/ Subject Line | Redacted/ Withheld | Privilege Description | Steps Taken to Ensure Confidentiality | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 111. | March 1, 2016 at 10:34 AM | Ognen Stojanovski's email account | Lior Ron | Ognen Stojanovski | | Email chain | FW: Stroz Engagement Letter | Withheld | Email regarding legal advice on Stroz | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 112. | March 1, 2016 at 10:21 AM | Ognen Stojanovski's email account | Adam Bentley | Lior Ron | | Email chain | FW: Stroz Engagement Letter | Withheld | Email regarding legal advice on Stroz | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege |
| 113. | March 1, 2016 | Ognen Stojanovski's email account | | | | Email Attachment (to document 114)- PDF | Redline.pdf | Withheld | Redline of Stroz Engagement Letter | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney-Work Product |
| 114. | March 1, 2016 | Ognen Stojanovski's email account | | | | Email Attachment (to document 114) – Microsoft Word Document | Revised Engagement Letter | Withheld | Revised version of Stroz Engagement Letter | Computer and email account are password protected; no unauthorized persons received communication | Attorney-Client Privilege; Attorney-Work Product |

# EXHIBIT 99
# FILED UNDER SEAL

# EXHIBIT 100
# FILED UNDER SEAL

# EXHIBIT 101
# FILED UNDER SEAL

# EXHIBIT 102
# FILED UNDER SEAL

# EXHIBIT 103
# FILED UNDER SEAL

# EXHIBIT 104
# FILED UNDER SEAL

# EXHIBIT A
# FILED UNDER SEAL

# EXHIBIT B
# FILED UNDER SEAL

# EXHIBIT C
# FILED UNDER SEAL

# EXHIBIT D
# FILED UNDER SEAL

# EXHIBIT E
# FILED UNDER SEAL

# EXHIBIT F
# FILED UNDER SEAL

# EXHIBIT G
# FILED UNDER SEAL

# EXHIBIT H
# FILED UNDER SEAL

# EXHIBIT I
# FILED UNDER SEAL

# EXHIBIT J
# FILED UNDER SEAL

# EXHIBIT K
# FILED UNDER SEAL

# EXHIBIT L
# FILED UNDER SEAL

# EXHIBIT M
# FILED UNDER SEAL

# EXHIBIT N
# FILED UNDER SEAL

# EXHIBIT O
# INTENTIONALLY
# LEFT BLANK

# EXHIBIT P
# FILED UNDER SEAL

# EXHIBIT Q
# FILED UNDER SEAL

# EXHIBIT R
# FILED UNDER SEAL

# EXHIBIT S
# FILED UNDER SEAL

# EXHIBIT T
# FILED UNDER SEAL

# EXHIBIT U
# FILED UNDER SEAL

# EXHIBIT V
# FILED UNDER SEAL

# EXHIBIT W
# FILED UNDER SEAL

# EXHIBIT X
# FILED UNDER SEAL

# EXHIBIT Y
# FILED UNDER SEAL

# EXHIBIT Z
# FILED UNDER SEAL

# EXHIBIT AA
# FILED UNDER SEAL

**Appendix A:**
**Sponsoring Witnesses And Admissibility**
**For Jacobs Related Documentary Evidence**

| Exhibit | Description | Potential Sponsoring Witnesses | Potential Hearsay Exceptions |
|---|---|---|---|
| 1 | April 14, 2017 Jacobs Email | Ric Jacobs<br>Travis Kalanick<br>Salle Yoo<br>Angella Padilla<br>Joe Spiegler | **FRE 801(d)(2)(B)**: adoptive admission based on Uber's subsequent investigation and remedial action<br>**FRE 807**: residual exception<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| 2 | May 5, 2017 Jacobs Letter | Ric Jacobs<br>Angela Padilla<br>Sallie Yoo<br>Joe Spiegler | **FRE 801(d)(2)(B)**: adoptive admission based on Uber's subsequent investigation and remedial action<br>**FRE 807**: residual exception<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| 3 | June 14, 2017 email | Angela Padilla<br>Sallie Yoo | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |

| | | | |
|---|---|---|---|
| **4** | June 22, 2017 email | Angela Padilla | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br><br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| **5** | June 22, 2017 email | Angela Padilla<br>Sallie Yoo<br>Mat Henley | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br><br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| **6** | July 12, 2017 email | Angela Padilla<br>Sallie Yoo | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br><br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| **7** | August 23, 2017 email | Angela Padilla | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br><br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| **8** | December 21, 2017 log of Angela Padilla communications | *Court ordered response— No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |
| **9** | December 12, 2017 log of MoFo communications | *Court ordered response— No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |

| 10 | December 16, 2017 log of MoFo communications | *Court ordered response— No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |
|----|----|----|----|
| 11 | Waymo's Interrogatory No. 1. | *Written Discovery— No witness necessary* | The document has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| 12 | Defendants' Responses and Objections to Waymo's RFPs | *Court ordered response— No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |
| 13 | Competitive intelligence collection document | Mat Henley Ed Russo Nick Gicinto Jake Nocon Craig Clark | **FRE 801(d)(2)(D)**: Admission of party opponent agent **FRE 803(6)**: Business record |
| 14 | Autonomous vehicle market aliases | Mat Henley Ed Russ Nick Gicinto Jake Nocon Craig Clark | **FRE 801(d)(2)(D)**: Admission of party opponent agent **FRE 803(6)**: Business record No truth asserted by document |
| 15 | Email chain: [ATC] Competitive Intelligence Update: Week Ending 10/21/2016 | Lior Ron Eric Meyhofer | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
| 16 | October 26, 2016 email | Scott | |
| 17 | Email chain: Strategic Intel | Ric Jacobs | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
| 18 | December 2016 SSG competitive intelligence update | Mat Henley Ed Russ Nick Gicinto Jake Nocon Craig Clark | **FRE 801(d)(2)(D)**: Admission of party opponent agent |

| 19 | January 27, 2017 | Lior Ron<br>Mat Henley | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
|---|---|---|---|
| 20 | Calendar Invite | Lior Ron<br>Mat Henley<br>Nick Gicinto | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
| 21 | February 7, 2017 memorandum | Lior Ron<br>Mat Henley<br>Craig Clark<br>Nick Gicinto<br>Ed Russo | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record |
| 22 | February 15, 2017 memorandum | Lior Ron<br>Mat Henley<br>Nick Gicinto | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record |
| 23 | Priorities of effort document | Mat Henley<br>Ed Russo<br>Nick Gicinto<br>Jake Nocon | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record |
| 24 | January 18, 2017 memorandum | Mat Henley<br>Ed Russo<br>Nick Gicinto<br>Jake Nocon | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record |
| 25 | SSG video | Mat Henley<br>Ed Russo<br>Nick Gicinto<br>Jake Nocon | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(3)**: Present sense impression<br>**FRE 803(6)**: Business record |

| 26 | SSG video | Mat Henley<br>Ed Russo<br>Nick Gicinto<br>Jake Nocon | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(3)**: Present sense impression<br>**FRE 803(6)**: Business record |
|---|---|---|---|
| 27 | Virtual Ops capability playbook | Mat Henley<br>Nick Gicinto<br>Jake Nocon | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record |
| 28 | December 4, 2017: Uber Inventory of Non-Attributable Devices | *Court ordered response—No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |
| 29 | December 22, 2017: Uber Inventory of Non-Attributable Devices | *Court ordered response—No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |
| 30 | December 4, 2017: Uber Inventory of Ephemeral Messaging Users | *Court ordered response—No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |
| 31 | December 22, 2017: Uber Inventory of Ephemeral Messaging Users | *Court ordered response—No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |
| 32 | January 9, 2017 email | Lior Ron<br>Travis Kalanick<br>Angela Padilla<br>Salle Yoo | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
| 33 | January 5, 2017: Defendant Uber Technologies, Inc.'s Response To Court Ordered Interrogatory | *Court ordered response—No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |
| 34 | February 21, 2017 email | Lior Ron<br>Mat Henley | **FRE 801(d)(2)(D)**: Admission of party opponent agent |

| 35 | February 21, 2017 email | Lior Ron | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
|---|---|---|---|
| 36 | Legal Overview Presentation | Ric Jacobs<br>Craig Clark<br>Angela Padilla<br>Mat Henley<br>Nick Gicinto<br>Ed Russo<br>Jake Nocon | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record |
| 37 | February 19, 2016 email | Mat Henley<br>Joe Sullivan<br>Travis Kalanick | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
| 38 | March 25, 2016 email | Travis Kalanick<br>Salle Yoo | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
| 39 | Calendar Invite | Mat Henley<br>Nick Gicinto<br>Lior Ron | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| 40 | Former in-house attorney demand letter | Angela Padilla<br>Salle Yoo<br>Travis Kalanick | **FRE 801(d)(2)(B)**: adoptive admission based on Uber's subsequent investigation and remedial action<br>**FRE 807**: residual exception<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |

| 41 | Former in-house attorney demand letter | Angela Padilla<br>Salle Yoo<br>Travis Kalanick | **FRE 801(d)(2)(B)**: adoptive admission based on Uber's subsequent investigation and remedial action<br>**FRE 807**: residual exception<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| --- | --- | --- | --- |
| 42 | Settlement agreement with former in-house attorney | Angela Padilla<br>Salle Yoo<br>Travis Kalanick | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| 43 | Settlement agreement with former in-house attorney | Angela Padilla<br>Salle Yoo<br>Travis Kalanick | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| 44 | Performance review of former in-house attorney | Angela Padilla<br>Salle Yoo | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |

| | | | |
|---|---|---|---|
| **45** | Competitive intelligence report | Joe Sullivan<br>Ric Jacobs<br>Craig Clark<br>Mat Henley<br>Nick Gicinto<br>Ed Russo<br>Jake Nocon | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record |
| **48** | Supplemental Response to Waymo Interrogatory No. 1 | *Court ordered response— No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |
| **49** | January 26, 2017 email | Joe Sullivan<br>Mat Henley<br>Craig Clark | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>The document also relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| **50** | August 18, 2016 email | Eric Friedberg<br>Mary Fulginiti<br>John Gardner | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 801(d)(2)(E)**: Admission authorized by party opponent agent<br>The document also relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| **51** | Amended privilege log associated with Stroz Friedberg production | *Court ordered response— No witness necessary;* | **FRE 801(d)(2)(A)**: Admission of party opponent<br>The document also relevance for issues other than the truth of its contents such as notice, intent, and state of mind |

| **52** | Eric Tate Declaration | *Court ordered response— No witness necessary*; alternatively Arturo Gonzalez or Eric Tate | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 801(d)(2)(E)**: Admission authorized by party opponent agent |
|---|---|---|---|
| **53** | Chuck Duross Declaration | *Court ordered response— No witness necessary*; alternatively Arturo Gonzalez or Eric Tate | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 801(d)(2)(E)**: Admission authorized by party opponent agent |
| **54** | June 22, 2017 email | Angela Padilla<br>Sallie Yoo<br>Mat Henley | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| **55** | Halunen Declaration | Angela Padilla<br>Sallie Yoo<br>Ric Jacobs | **FRE 801(d)(2)(B)**: adoptive admission based on Uber's subsequent investigation and remedial action<br>**FRE 807**: residual exception<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |

| 56 | Jacobs settlement agreement | Angela Padilla<br>Sallie Yoo<br>Travis Kalanick<br>Ric Jacobs | **FRE 801(d)(2)(A)**: Admission of party opponent<br>**FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
|---|---|---|---|
| 57 | Jacobs consulting agreement | Angela Padilla<br>Sallie Yoo<br>Travis Kalanick<br>Ric Jacobs | **FRE 801(d)(2)(A)**: Admission of party opponent<br>**FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| 58 | Jacobs confidentiality agreement | Angela Padilla<br>Sallie Yoo<br>Travis Kalanick<br>Ric Jacobs | **FRE 801(d)(2)(A)**: Admission of party opponent<br>**FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also has relevance for issues other than the truth of its contents such as notice, intent, and state of mind |
| 104 | January 11, 2018 supplemental log of Angela Padilla communications | *Court ordered response—<br>No witness necessary* | **FRE 801(d)(2)(A)**: Admission of party opponent |

**Appendix B:**
**Sponsoring Witnesses And Admissibility**
**For Non-Jacobs Related Documentary Evidence**

| Exhibit | Description | Potential Sponsoring Witnesses | Potential Hearsay Exceptions |
|---|---|---|---|
| **60** | Stroz Summary Interview Memorandum of Anthony Levandowski | Eric Friedberg Hanley Chew Mary Fulginiti Eric Tate | **FRE 801(d)(2)(B)**: adoptive admission<br>**FRE 801(d)(2)(C):** Statement authorized by a party opponent<br>**FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 801(5)**: Recorded recollection<br>**FRE 803(6)**: Business record<br>**FRE 804(b)(3)**: statement against interest<br>**FRE 807**: residual exception<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |

| 61 | Email chain: FW: Stroz Day 2 Download by Stroz with OMM (Amdursky and Bentley) – EAT Notes – Why X to Unicorn's attention? | Eric Tate | **FRE 801(d)(2)(B)**: adoptive admission<br>**FRE 801(d)(2)(C):** Statement authorized by a party opponent<br>**FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 801(5)**: Recorded recollection<br>**FRE 803(6)**: Business record<br>**FRE 804(b)(3)**: statement against interest<br>**FRE 807**: residual exception<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
|----|----|----|----|
| 62 | Stroz Memorandum: Follow-Up Investigation regarding Shred Works Facility | Eric Friedberg<br>Hanley Chew<br>Mary Fulginiti<br>Eric Tate | **FRE 801(d)(2)(B)**: adoptive admission<br>**FRE 801(d)(2)(C):** Statement authorized by a party opponent<br>**FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 801(5)**: Recorded recollection<br>**FRE 803(6)**: Business record<br>**FRE 804(b)(3)**: statement against interest<br>**FRE 807**: residual exception<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |

| | | | |
|---|---|---|---|
| **63** | Email: Fw: AL computers | Angela Padilla<br>Travis Kalanick | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>**FRE 807**: residual exception<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| **66** | Email chain: Re: FW: Thank You for Visiting Us Last Night (Tyto LiDAR & Uber) | Brian McClendon<br>John Bares<br>Cameron Poetzscher | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| **67** | Email chain: Tyto | John Bares<br>Cameron Poetzscher<br>Nina Qi | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| **68** | Email chain: Newco operating plan; and attachment | Nina Qi<br>Cameron Poetzscher | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |

| 69 | Ottomotto Company Disclosure Schedules | Travis Kalanick<br>Cameron Poetzscher<br>Lior Ron<br>Adam Bentley | **FRE 801(d)(2)(A)**: Admission of party opponent<br><br>**FRE 801(d)(2)(D)**: Admission of party opponent agent<br><br>**FRE 803(6)**: Business record<br><br>**FRE 803(14)**: Property record<br><br>**FRE 803(15)**: Document that affects an interest in property<br><br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| --- | --- | --- | --- |
| 70 | Text message | Travis Kalanick | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
| 71 | Text message | Lior Ron | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
| 72 | Text message | Lior Ron | **FRE 801(d)(2)(D)**: Admission of party opponent agent |
| 73 | Tyto Term Sheet | Lior Ron<br>Adam Bentley<br>Ognen Stojanovski | **FRE 801(d)(2)(A)**: Admission of party opponent<br><br>**FRE 801(d)(2)(D)**: Admission of party opponent agent<br><br>**FRE 803(6)**: Business record<br><br>**FRE 803(14)**: Property record<br><br>**FRE 803(15)**: Document that affects an interest in property<br><br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |

| 75 | Email chain: Tyto's Asset Purchase Agreement | Travis Kalanick<br>Cameron Poetzcher<br>Lior Ron | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
|---|---|---|---|
| 76 | Email chain: Re: Tyto's Asset Purchase Agreement | Travis Kalanick<br>Cameron Poetzcher<br>Lior Ron | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| 77 | Email chain: Tyto | Travis Kalanick<br>Cameron Poetzscher | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record |
| 78 | Notes re: January 3 meeting | Travis Kalanick<br>Jeff Holden | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 801(5)**: Recorded recollection<br>**FRE 803(6)**: Business record<br>**FRE 807**: residual exception<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |

| 87 | Stroz Freidberg Engagement Letter | Eric Tate<br>Eric Friedberg | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>**FRE 807**: residual exception<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| 88 | Stroz Freidberg Engagement Letter | Eric Tate<br>Eric Friedberg | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>**FRE 807**: residual exception<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| 93 | Email chain: Fwd: Put Call Merger Agreement | Lior Ron<br>Ognen Stovanjoski | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| 94 | Redlined Put Call Agreement | Lior Ron<br>Ognen Stojanovski | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |

| 95 | Email chain: Fwd: Put Call Merger Agreement | Lior Ron<br>Ognen Stovanjoski | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| --- | --- | --- | --- |
| 96 | Email chain: topics | Lior Ron | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| 97 | Email chain: Re: Asset Purchase Agreement | Lior Ron | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| 100 | Tyto Invoice | Ognen Stojanovski<br>James Haslim | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |

| 101 | Tyto Invoice | Ognen Stojanovski<br>James Haslim | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
|---|---|---|---|
| 102 | Text Messages | James Haslim | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record<br>The document also relevant for issues other than the truth of its contents such as notice, intent, and state of mind |
| 103 | Legal Overview Presentation | Ric Jacobs<br>Craig Clark<br>Angella Padilla<br>Mat Henley<br>Nick Gincinto<br>Ed Russo<br>Jake Nocon | **FRE 801(d)(2)(D)**: Admission of party opponent agent<br>**FRE 803(6)**: Business record |