# EXHIBIT 92

**James Judah**

| | |
|---|---|
| **From:** | James Judah |
| **Sent:** | Sunday, June 11, 2017 3:14 PM |
| **To:** | Rivera, Sylvia; QE-Waymo |
| **Cc:** | 'John Cooper'; Matthew Cate; UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com' (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); rwalsh@goodwinlaw.com; nchatterjee@goodwinlaw.com; sbrun@goodwinlaw.com; bschuman@goodwinlaw.com |
| **Subject:** | RE: Waymo; follow up from June 7 call on Uber's responses to Set 1 of expedited discovery |

John and Sylvia,

Sylvia's email below regarding Uber's responses to Waymo's first set of expedited RFPs and interrogatories, which were due June 5, does not address all of the items that were outstanding from the June 7 meet and confer. To the extent we do not receive answers to these outstanding questions beforehand, we request a meet and confer for on Monday.

Expedited RFP 5: In addition to identifying the Bates range of the documents produced that were in the Data Room, Uber was supposed to provide an explanation of diligence documents that were not put in the Data Room and the volume of such documents. This was so that Waymo would have an understanding of what was requested in RFP 5 but Uber is refusing to produce. Your email below explains what was in the Data Room. Please provide the information requested.

Expedited RFP 8: We look forward to your response on Monday as to whether all documents Defendants are withholding in response to this request are privileged.

Expedited Interrogatory No. 3: Defendants were to explain what source they used to determine which devices Levandowski used to access Defendants' networks. Your email below does not do this. You say that Defendants identified Levandowksi Uber-issued MacBook. For the other MacBook identified, you say that Uber cannot disclose the source because that would reveal work product. Please explain the basis for this. It seems that the source that identifies whether a device connects to Defendants' networks would be factual and not protected by work product.

Expedited Interrogatory No. 4: We asked in Mr. Roberts' June 8 email following the June 7 meet and confer whether Uber asked Mr. Stojanovski about the information called for by Expedited Interrogatory No. 4, or asked Mr. Levandowski before his termination. Your email does not respond to this. You also say that, in trying to determine the ownership of Sandstone Group, which would identify the persons with an ownership interest in Tyto LiDAR—the information sought in this interrogatory—Uber is running into "confidentiality issues." Please explain the nature of these issues and how they are preventing Uber from investigating its response to this interrogatory.

Expedited Interrogatory No. 5: We look forward to Defendants providing more detailed information in response to this interrogatory next week. Given that this was an expedited interrogatory and this information should have been provided by the June 5 deadline, please confirm you will provide this information by Monday at 5 pm.

Expedited Interrogatory No. 8: Your email does not address the questions we raised about the response to this interrogatory. We understand that Uber claims that Levandowksi did not perform any "consulting" work for Uber before August 18, 2016, and that is what the interrogatory calls for. But, in response to this interrogatory, Uber identifies a lot of work that Levandowski did perform for Uber before August 18, 2016. Given the description, it certainly seems like he was "consulting" for Uber, whether you use that term or not. Thus, we asked for more detail

1

about what he was doing, on what terms, and what compensation he was receiving/promised for the work.  Can you explain how Uber defines "consulting" for purposes of its response to this interrogatory?

Expedited Interrogatory No. 9:   In Ms. Roberts' June 6 email, we noted that Uber refers to only two communications in response to this interrogatory but also objects on the basis of privilege.  We asked for an understanding of what Uber is withholding on the basis of privilege and why.  Your email below says that "[c]ommunications between lawyers at Uber and Mr. Levandowski related to the litigation are generally protected by the attorney-client privilege."  However, Uber cites two communications between Uber's lawyers and Levandowski in response to Interrogatory No. 9.  Why are they not privileged if the remaining communications are?  Why doesn't disclosure of those two communications about the May 11 Order waive privilege as to all of the remaining communications between Uber and Levandowski regarding the May 11 Order?  Further, if there have been any communications since Levandowski's termination, does Uber maintain that those communications are privileged?  If so, on what basis?

Best,
James

---

**From:** Rivera, Sylvia [mailto:SRivera@mofo.com]
**Sent:** Friday, June 09, 2017 11:58 PM
**To:** QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** 'John Cooper' <JCooper@fbm.com>; Matthew Cate <MCate@fbm.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com' (BSF_EXTERNAL_UberWaymoLit@bsfllp.com) <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; rwalsh@goodwinlaw.com; nchatterjee@goodwinlaw.com; sbrun@goodwinlaw.com; bschuman@goodwinlaw.com
**Subject:** Waymo; follow up from June 7 call on Uber's responses to Set 1 of expedited discovery

Quinn Team,

I write to follow up on discovery items that I understand were discussed on the June 7 meet-and-confer call, which I was unavailable to able to join.

Expedited Rog #3
Uber identified two computers in response to this interrogatory.  Uber identified the first MacBook Pro because that is the work computer that Uber issued to Anthony Levandowski and on that basis understands that that computer was used to access Uber's network.  With regard to the other MacBook Uber identified, Uber cannot state its basis for believing that computer was used to access Uber's network because doing so would reveal work product that is protected from disclosure.

Expedited Rog #4
Uber provided an accurate response to this interrogatory.  Sandstone Group LLC is the sole member of Tyto LiDAR LLC.  As we understand it, it is closely held.  The members and ultimate owners of Sandstone Group LLC were not disclosed to Ottomotto or Uber during the transaction.  In response to the issue you raised, we are trying to obtain details about Sandstone Group LLC's ownership, but are running into confidentiality issues.  We are continuing to make inquires, however, and will let you know if we ascertain the ultimate owner(s) of Tyto LiDAR LLC.

Expedited Rog #5
We believe the response to this interrogatory provides sufficient information, but we will attempt next week to obtain more detailed information about Mr. Levandowski's agreed upon compensation.

Expedited Rog #8
The interrogatory seeks information about "consulting work" Mr. Levandowski performed for Uber before August 18, 2016.  The response confirms he was not a consultant to Uber, which answers the question.  However, we nonetheless provided a description of Mr. Levandowski 's interactions at Uber during that time period.  The interrogatory is tied to

2

"consulting work," of which there is none, so we believe the response is more than sufficient. To our knowledge, Mr. Levandowski was not receiving compensation from Uber during that time. If we learn otherwise, we will advise you.

Expedited Rog #9
Communications between lawyers at Uber and Mr. Levandowski related to the litigation are generally protected by the attorney-client privilege. That is the basis for the withholding of further information in response to this interrogatory.

Expedited RFP #5
The Bates range for the documents produced from the Data Room is UBER00043056 - UBER00048431 (except not UBER00047857 - UBER00047861). The Data Room was the repository for diligence documents for the Uber – Otto transaction and contained hundreds of documents comprised of charters, operating agreements, Board consents, stockholder consents, offer letters, employee attestations, Employee Restricted Unit Purchase Agreements Under Plan, Founders Unit Purchase Agreements, Invention Assignment Agreements, Ottomotto Inc. Equity Incentive Plan, documents for the Tyto LiDAR LLC transaction, and various other diligence documents.

Expedited RFP #8
We are confirming whether there are non-privileged responsive documents and expect to respond on Monday.

Best,
Sylvia

================================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.