1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzález@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Tel: 415.268.7000 / Fax: 415.268.7522
5
    KAREN L. DUNN (*Pro Hac Vice*)
6   kdunn@bsfllp.com
    HAMISH P.M. HUME (*Pro Hac Vice*)
7   hhume@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
8   1401 New York Avenue, N.W.
    Washington DC  20005
9   Tel:  202.237.2727 / Fax: 202.237.6131

10  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SHAWN RABIN (*Pro Hac Vice*)
    srabin@susmangodfrey.com
12  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
13  New York, NY 10019-6023
    Tel:  212.336.8330 / Fax: 212.336.8340
14

15  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
16  and OTTOMOTTO LLC

17                  UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19                    SAN FRANCISCO DIVISION

20  WAYMO LLC,                          Case No.      3:17-cv-00939-WHA

21                Plaintiff,            **DEFENDANTS UBER
                                        TECHNOLOGIES, INC. AND
22         v.                           OTTOMOTTO LLC'S
                                        ADMINISTRATIVE MOTION TO
23  UBER TECHNOLOGIES, INC.,            FILE UNDER SEAL THEIR
    OTTOMOTTO LLC; OTTO TRUCKING LLC,   RESPONSE TO WAYMO'S PRECIS
24                                      IN SUPPORT OF ITS REQUEST TO
                Defendants.            FILE A MOTION FOR RELIEF
25                                      BASED ON DEFENDANTS'
                                        LITIGATION MISCONDUCT**
26

27

28

DEFENDANTS' ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL
Case No. 3:17-cv-00939-WHA
sf-3855493

Pursuant to Civil Local Rules 7-11 and 79-5, Defendants Uber Technologies, Inc. and Ottomotto LLC ("Defendants") submit this motion for an order to file under seal their Response to Waymo's Precis in Support of Its Request to File a Motion for Relief Based on Defendants' Litigation Misconduct ("Response") and the accompanying exhibits to the Declaration of Camila Tapernoux ("Tapernoux Decl.").  Defendants file under seal the below documents in accordance with Paragraph 14.4 of the Protective Order, but do not believe the Response or Exhibits F, G, or H contain sealable information from Plaintiff.

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Response | Highlighted Portions | Plaintiff |
| Tapernoux Decl. Ex. F | Entirety | Plaintiff |
| Tapernoux Decl. Ex. G | Entirety | Plaintiff |
| Tapernoux Decl. Ex. H | Entirety | Plaintiff |
| Tapernoux Decl. Ex. J | Highlighted Portions | Defendants |
| Tapernoux Decl. Ex. M | Highlighted Portions | Defendants |

Defendants do not believe the green-highlighted portions of the Response or Exhibits F, G, or H merit sealing, but Waymo designated this material "Highly Confidential – Attorneys' Eyes Only." Defendants file this material under seal in order to provide Waymo the opportunity to justify sealing pursuant to Local Rule 79-5, but oppose any attempt to seal this information. (Declaration of Michelle Yang in Support of Defendants' Administrative Motion to File Documents Under Seal ("Yang Decl.") ¶ 3.)

The blue-highlighted portions of Exhibits J and M contain highly confidential information concerning the identity of certain third party competitors, specific research objectives, financial numbers regarding research budgets, and confidential business negotiations.  This information has been maintained as confidential.  Disclosure of this information would allow competitors to understand Uber's business strategy in the self-driving industry, including what information Uber has and does not have, to the detriment of Uber's competitive standing.  (Yang Decl. ¶ 4.)

1      The blue-highlighted portions on page 38 of Exhibit J and page 208 of Exhibit M contain

2 references to a confidential third party vendor Uber used to conduct open-source research.

3 Defendants request this information be sealed to protect this confidential business relationship

4 from disclosure and this third party vendor from possible harassment.    (Yang Decl. ¶ 5.)

5      Defendants' request is narrowly tailored to portions that merit sealing.  (Yang Decl. ¶ 6.)

6      Pursuant to Civil Local Rule 79-5(d)(2), Defendants will lodge with the Clerk the

7 documents at issue, with accompanying chamber copies.

8      Defendants served Waymo with this Administrative Motion to File Documents Under

9 Seal on January 14, 2018.

10      For the foregoing reasons, Defendants request that the Court enter the accompanying

11 Proposed Order granting Defendants' Administrative Motion to File Documents Under Seal and

12 designate the service copies of these documents as "HIGHLY CONFIDENTIAL –

13 ATTORNEYS' EYES ONLY."

Dated:  January 14, 2018      MORRISON & FOERSTER LLP


By:  */s/ Arturo J. González*
      ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzález@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Tel: 415.268.7000 / Fax: 415.268.7522
5

6   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
    HAMISH P.M. HUME (*Pro Hac Vice*)
7   hhume@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
8   1401 New York Avenue, N.W.
    Washington DC  20005
9   Tel:  202.237.2727 / Fax: 202.237.6131

10  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SHAWN RABIN (*Pro Hac Vice*)
    srabin@susmangodfrey.com
12  SUSMAN GODFREY
    1301 Avenue of the Americas, 32nd Floor
13  New York, NY 10019-6023
    Tel:  212.336.8330 / Fax: 212.336.8340

14

15  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
16  and OTTOMOTTO LLC

17                  UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19                   SAN FRANCISCO DIVISION

| | |
|---|---|
| 20  WAYMO LLC, | Case No.      3:17-cv-00939-WHA |
| 21                    Plaintiff, | **DECLARATION OF MICHELLE YANG IN SUPPORT OF DEFENDANTS' ADMINISTRATIVE MOTION TO FILE UNDER SEALTHEIR RESPONSE TO WAYMO'S PRECIS IN SUPPORT OF ITS REQUEST TO FILE A MOTION FOR RELIEF BASED ON DEFENDANTS' LITIGATION MISCONDUCT** |
| 22           v. | |
| 23  UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| 24                   Defendants. | |
| 25 | |
| 26 | |

27

28

I, Michelle Yang, declare as follows:

1.      I am an attorney at the law firm of Morrison & Foerster LLP.  I make this declaration based upon matters within my own personal knowledge and if called as a witness, I could and would competently testify to the matters set forth herein.  I make this declaration in support of Defendants' Administrative Motion to File Under Seal Their Response to Waymo's Precis in Support of Its Request to File a Motion for Relief Based on Defendants' Litigation Misconduct ("Response")and the accompanying exhibits to the Declaration of Camila Tapernoux ("Tapernoux Decl.").

2.      I have reviewed the following documents and confirmed that only the portions identified below regarding Exhibits J and M merit sealing.  The portions of the Response and Exhibits F, G, or H identified below do not contain sealable information from Plaintiff:

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Response | Highlighted Portions | Plaintiff |
| Tapernoux Decl. Ex. F | Entirety | Plaintiff |
| Tapernoux Decl. Ex. G | Entirety | Plaintiff |
| Tapernoux Decl. Ex. H | Entirety | Plaintiff |
| Tapernoux Decl. Ex. J | Highlighted Portions | Defendants |
| Tapernoux Decl. Ex. M | Highlighted Portions | Defendants |

3.      Defendants do not believe the green-highlighted portions of the Response or Exhibits F, G, or H merit sealing, but Waymo designated this material "Highly Confidential – Attorneys' Eyes Only." Defendants file this material under seal in order to provide Waymo the opportunity to justify sealing pursuant to Local Rule 79-5, but oppose any attempt to seal this information.

4.      The blue-highlighted portions of Exhibits J and M contain highly confidential information concerning the identity of certain third party competitors, specific research objectives, financial numbers regarding research budgets, and confidential business negotiations.

1   This information has been maintained as confidential.  Disclosure of this information would allow

2   competitors to understand Uber's business strategy in the self-driving industry, including what

3   information Uber has and does not have, to the detriment of Uber's competitive standing.

4          5.      The blue-highlighted portions on page 38 of Exhibit J and page 208 of Exhibit M

5   contain references to a confidential third party vendor Uber used to conduct open-source research.

6   Defendants request this information be sealed to protect this confidential business relationship

7   from disclosure and this third party vendor from possible harassment.

8          6.      Defendants' request is narrowly tailored to portions that merit sealing.

9          I declare under penalty of perjury that the foregoing is true and correct.  Executed this

10  14th day of January, 2018 at Washington, District of Columbia.

11

12                                              _____/s/ Michelle Yang_____
                                                              Michelle Yang

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. Gonzalez, am the ECF User whose ID and password are being used to file this Declaration.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Michelle Yang has concurred in this filing.

Dated:  January 14, 2018

_____*/s/ Arturo J. González*_____
ARTURO J. GONZÁLEZ

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

| | |
|---|---|
| WAYMO LLC, | Case No.    3:17-cv-00939-WHA |
| Plaintiff, | **[PROPOSED] ORDER GRANTING DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL** |
| v. | |
| UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | |

1    Upon consideration of Defendants Uber Technologies, Inc. and Ottomotto LLC's

2    ("Defendants") Administrative Motion to File Documents Under Seal, and finding that good

3    cause exists, this Court hereby GRANTS Defendants' Administrative Motion to File Documents

4    Under Seal and ORDERS that the following documents shall be sealed, as indicated below:

| Document | Portions to Be Filed Under Seal |
|---|---|
| Tapernoux Decl. Ex. J | Highlighted Portions |
| Tapernoux Decl. Ex. M | Highlighted Portions |

**IT IS SO ORDERED**.

Dated: _____, 2018

_____

HONORABLE WILLIAM ALSUP

United States District Judge

1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzález@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Tel: 415.268.7000 / Fax: 415.268.7522
5

6   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
7   HAMISH P.M. HUME (*Pro Hac Vice*)
    hhume@bsfllp.com
8   BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
9   Washington DC  20005
    Tel:  202.237.2727 / Fax:  202.237.6131
10

11  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
12  SHAWN RABIN (*Pro Hac Vice*)
    srabin@susmangodfrey.com
13  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
14  New York, NY  10019-6023
    Tel: 212.336.8330 / Fax: 212.336.8340

15  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
16  and OTTOMOTTO LLC

17              UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19              SAN FRANCISCO DIVISION

20  WAYMO LLC,                           Case No. 3:17-cv-00939-WHA

21              Plaintiff,               **DEFENDANTS UBER TECHNOLOGIES,
                                         INC. AND OTTOMOTTO LLC'S RESPONSE
22      v.                               TO WAYMO'S PRECIS IN SUPPORT OF
                                         ITS REQUEST TO FILE A MOTION FOR
23  UBER TECHNOLOGIES, INC.,             RELIEF BASED ON DEFENDANTS'
    OTTOMOTTO LLC; OTTO TRUCKING         LITIGATION MISCONDUCT**
24  LLC,
                                         Date:   TBD
25              Defendants.              Time:   TBD
                                         Ctrm:  8, 19th Floor
26                                       Judge: Honorable William H. Alsup
                                         Trial Date:   February 5, 2018
27

28          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Nothing in Waymo's 50-page offer of "proof" with five binders of exhibits warrants any sanction. Yet Waymo wants to file another motion to substitute sanctions for evidence—because it cannot prove its trade secret claims. That request should be denied. This case should be tried on its merits instead of unwarranted inferences based on irrelevant innuendo. The issues Waymo raises have been briefed extensively, and the Jacobs allegations do not provide any reason to brief them further. As Uber's response to Waymo's Offer of Proof will make clear, discovery into the Jacobs allegations has confirmed that there is nothing relevant to the eight trade secrets at issue. Enough is enough. It is time for Waymo to stop whining, and try its case.

## I.     TERMINATING SANCTIONS ARE NOT WARRANTED.

Waymo came to this Court with trumpets blaring, declaring that it had slam dunk evidence of trade secret theft. When discovery confirmed that was not true, Waymo decided to raise a series of excuses, based on false allegations of discovery and other abuses, designed to have this Court bail them out. This Court should not do so. Waymo obtained extensive discovery into the Jacobs allegations—17 depositions and over 16,000 pages of documents. None of this turned up any wrongdoing connected to Waymo, much less the specific trade secrets at issue. As Uber's response will show, no one in Uber's self-driving group engaged in the misconduct alleged by Jacobs, including the use of non-attributable devices, anonymous servers, or knowingly improper attorney-client privilege designations. There is simply no evidence that Waymo was prejudiced in any way because any relevant evidence was hidden or destroyed. FED. R. CIV. P. 37(e)(1).

The same is true of ephemeral messaging. Uber employees were instructed that if they were subject to a litigation hold, they should not use ephemeral communications to discuss anything covered by the hold. (Declaration of Camila Tapernoux Exhibits ("Exs.") A-D.) There is no evidence that ephemeral messaging was used for discussing anything relevant to this case. (Exs. C, E.) Moreover, Waymo employees have used ephemeral messaging as a matter of course since the company's founding, and Google employees have used it for a decade. (Ex. F.) Google's decision to default to ephemeral messaging arose because it ███████████████ ███████████████████████████████████ (Ex. G.) Google has even argued in prior litigation (1) that a default setting to not retain chats comported with ███████████████

1    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2    (Ex. H, ¶ 8), as well as (2) that Google's default "off-the-record" setting for its chat was not

3    improper and did not support a finding of spoliation, because such chats were akin to "hallway

4    conversation[s]" and the proper avenue for discovery regarding these messages was depositions.

5    (Ex. I, *Function Media v. Google*, No. 2007-CV-279, No. 483 at 155:17-156:12 (E.D. Tex. Oct.

6    21, 2010) (post-trial motions hearing on spoliation).)  Like Uber, Google has instructed

7    employees subject to an existing litigation hold to change individual chat settings to "on the

8    record" for communications subject to a litigation hold.  (Ex. H; Ex. I at 154:15-20.)

9         The precedent on which Waymo relies does not support sanctions.  To the contrary, the

10   relevant case law highlights that Waymo's request is improper.  First, a request for terminating

11   sanctions may only be granted upon a finding of willfulness, bad faith, or fault—a standard

12   Waymo tellingly fails to identify, let alone provide evidence of.  *See Brookhaven Typesetting*

13   *Serv., Inc. v. Adobe Sys., Inc.* 332 Fed. App'x 387, 389 (9th Cir. 2009) ("'Where the drastic

14   sanctions of dismissal or default are imposed … the losing party's noncompliance must be due to

15   willfulness, fault, or bad faith.'") (affirming that terminating sanctions were not warranted);

16   *Mitchell v. Acumed, LLC,* No. 11-CV-00752 SC (NC), 2012 WL 761705, at *2 (N.D. Cal. Mar. 8,

17   2012 ("sanction orders taking the plaintiff's allegations as established and awarding judgment on

18   that basis are the most severe penalty . . . . To justify the imposition of such a harsh sanction, the

19   court must find the violations were due to willfulness, bad faith, or fault of the party.") (internal

20   citations omitted); *Mech. Mktg., Inc. v. Sixxon Precision Mach. Co.*, No. C 11-1844 EJD PSG,

21   2013 WL 1563251, at *2-3 (N.D. Cal. Apr. 12, 2013) (denying sanctions that "would have the

22   effect of entering partial judgment for [plaintiff], at least on the issue of damages[,]" noting that a

23   "terminating sanction is considered very severe and should only be imposed if the party acted

24   with willfulness, bad faith, and fault.") (internal citation omitted); *Network Appliance, Inc. v.*

25   *Bluearc Corp.*, No. C 03-5665 MHP, 2005 WL 1513099, at *3 (N.D. Cal. June 27,

26   2005), *aff'd*, 205 F. App'x 835 (Fed. Cir. 2006) ("the imposition of preclusive sanctions may be

27   tantamount to dismissal of a plaintiff's claims or entry of default judgment against a

28   defendant.  Under those circumstances . . .  a showing of bad faith is required.") (internal citation

1   omitted); *Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912 JSW (MEJ), 2012

2   WL 5904709, at *2 (N.D. Cal. Nov. 26, 2012) (denying jury instruction to take as established that

3   defendant copied trade dress, which would be "tantamount to [granting] a directed verdict...").

4        Waymo cannot make the requisite showing of bad faith.  *See, e.g., Network Appliance,*

5   2005 WL 1513099 at *1 (denying sanctions upon finding of no bad faith where defendant did not

6   produce responsive damages documents earlier because "its [CFO] had concluded that … [they]

7   were not responsive").  Even if it could, its request would fail upon consideration of the five

8   factor balancing test.  The "key factors are prejudice and availability of lesser sanctions."

9   *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).  As discussed above, Waymo has not

10  suffered prejudice, especially to the extent reflected in cases where this factor weighed in favor of

11  granting sanctions.  Waymo has had the opportunity to conduct full discovery into the evidence at

12  issue, which courts in this district agree is sufficient to remedy any potential prejudice from

13  belated discovery.  *Mitchell* 2012 WL 761705 at *3 (finding no prejudice from discovery delay

14  because trial was continued); *Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912

15  JSW MEJ, 2012 WL 5904709, at *3 (N.D. Cal. Nov. 26, 2012) (denying motion for issue

16  preclusion sanctions due to late productions where "a discovery extension would have alleviated

17  any prejudice that was caused by Defendants' malfeasance, and, most importantly, permitted the

18  Court and a jury to resolve Plaintiff's trade dress claims on the merits.").  Waymo has also not

19  suffered prejudice because, as Uber's Response to Waymo's Offer of Proof will show, the

20  evidence at issue was of minimal if any relevance.  *Keithley v. Homestore.com, Inc.*, No. C-03-

21  04447 SI (EDL), 2009 WL 55953, at *3 (N.D. Cal. Jan. 7, 2009) (denying sanctions due to

22  finding of no prejudice where late-produced documents had "little if any relevance to [the] case").

23       The cases on which Waymo relies to argue for prejudice are readily distinguishable.  In

24  *Valley Engineers Inc. v. Electric Engineering Co.*, the evidence at issue was a "smoking gun."

25  158 F.3d 1051, 1054 (9th Cir. 2000).  Here, as this Court has repeatedly observed, there is no

26  smoking gun.  No one in ATG used non-attributable devices or anonymous servers.  While there

27  was limited gathering of publicly-available information about Waymo, Waymo points to no

28  evidence of any trade secret misappropriation—because there was none.  (Tapernoux Decl., Exs.

J-M (Russo at 20:18-21:7, 37:20-38:18; Henley at 106:16-20, 107:15-23, 108:4-6; Nocon at 45:9-19; Gicinto at 145:12-19, 208:15-24, 281:16-282:16).)  Additionally, the *Valley Engineers* court found that the severity of the defendant's conduct in hiding and lying about the document intentionally throughout the litigation warranted severe sanctions because it "so damage[d] the integrity of the discovery process that there [could] never be assurance of proceeding on the true facts."  158 F.3d at 1059.  Similarly, in *Fair Housing of Marin v. Combs*, defendant "misrepresented to both counsel and to the district court that the documents did not exist" when in fact "[t]he documents were in Combs' one-bedroom apartment."  285 F.3d 899, 905-906 (2002)  There is no such evidence here.  Waymo also relies on *Fair Housing of Marin* and *Henry* for the proposition that a last-minute production does not cure prejudice.  (Dkt. No. 2472 at 2-3.)  But, unlike here, the parties in those cases did not have the opportunity to conduct discovery into the late-produced evidence.  Waymo obtained extensive follow-up discovery here, and the cases cited above make clear that such an opportunity remedies any potential prejudice.

The availability of less drastic sanctions also weighs against granting terminating sanctions.  Waymo's case, *Alexsam, Inc. v IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013), applies a far more lenient standard from the Fifth Circuit.  Further, in that case, the defendant had already received less drastic sanctions, yet continued to not comply with its obligations; it was then twice-warned of the risk of future sanctions before the court granted terminating sanctions.  *Id.* at 1344.

Waymo misleadingly claims that one of the continuances "has been determined to have resulted from the intentional concealment of evidence."  (Dkt. No. 2472-3 at 2:19 (Waymo Precis).)  There is no citation to any such "determination," nor could there be.  And, the public policy favoring disposition of cases on their merits strongly outweighs the remaining factors here.  Waymo should not be permitted to bypass the utter lack of evidence of misappropriation of the eight trade secrets at issue via a sanction based on meritless and exaggerated allegations.

## II.   REMEDIAL JURY INSTRUCTIONS ARE NOT NECESSARY.

This issue has already been extensively briefed.  (*See* Dkt Nos. 1591-4, 2240-4, and 2804.)  As noted there, and as will be discussed further in Uber's response to Waymo's Offer of Proof, Uber has not violated any Court Orders or destroyed evidence.  Remedial jury instructions

1    are not warranted.  Waymo should try its case on the merits and should not be permitted to use

2    irrelevant allegations to influence the jury into finding wrongdoing where there is none.

3        **III.    EVIDENTIARY SANCTIONS ARE NOT WARRANTED.**

4        Waymo points to no specific concealment of evidence that has compromised its

5    evaluation of Uber's independent development such that evidentiary sanctions are warranted.

6    First, Uber substantially complied with its logging obligation.  (Dkt. 1591-4 at 2 (Uber conducted

7    over 170 interviews, reviewed over 25,000 documents and spent over 700 hours preparing the

8    "LiDAR log," and voluntarily included references not just to LiDAR but to lasers, lenses, and

9    point clouds, as well as communications where others may have mentioned LiDAR and related

10   concepts to Mr. Levandowski.).  Second, Uber legitimately asserted privilege over the Stroz

11   materials, and it was not in a position to unilaterally waive the privilege when Mr. Levandowski

12   continued to assert it.  *United States v. Gonzalez*, 669 F.3d 974, 982 (9th Cir. 2012) ("the case law

13   is clear that one party to a JDA cannot unilaterally waive the privilege for other holders.").  And

14   in another half-truth, Waymo complains that it did not receive the Stroz materials "until after the

15   close of fact discovery," but fails to mention that Mr. Levandowski, not Uber, appealed this

16   Court's ruling on that issue.  Waymo also conveniently omits that it received ample discovery

17   into the Stroz diligence after the Federal Circuit ruled.  Lastly, in a final half-truth, Waymo

18   complains that it was not able to question two Uber engineers (Mr. Haslim and Mr. Boehmke)

19   about the Stroz materials.  But they fail to mention that they only requested to depose a different

20   engineer, Mr. Gruver, about the Stroz materials.  Waymo never asked to depose Mr. Haslim or

21   Mr. Boehmke after the Stroz report was released.

22       **IV.    ADDITIONAL TIME AT TRIAL IS NOT WARRANTED.**

23       Waymo should not be given additional time at trial to do nothing more than present more

24   baseless allegations of discovery misconduct in an effort to mislead the jury into thinking Waymo

25   has an actual case.  Nothing has emerged from the Jacobs letter that warrants inclusion at trial, as

26   discussed above and as will be detailed in Uber's response to Waymo's Offer of Proof.  The

27   remaining factors to which Waymo points—the due diligence process and the Ottomotto and Tyto

28   transactions—were known when the Court set the initial time allocations that Waymo agreed to.

1

2

Dated:  January 14, 2018                    MORRISON & FOERSTER LLP

3

4                                                     By:  _____/s/ Arturo J. González_____
                                                            ARTURO J. GONZÁLEZ

5                                                     Attorneys for Defendants
                                                      UBER TECHNOLOGIES, INC. and
6                                                     OTTOMOTTO LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3            SAN FRANCISCO DIVISION

4

5      _____

6    WAYMO LLC,                    )

7            Plaintiff,        )

8         v.                  ) Case No.

9    UBER TECHNOLOGIES, INC.;    ) 3:17-cv-00939-WHA

10   OTTOMOTTO LLC;              )

11   OTTO TRUCKING,              )

12            Defendants.        )

13   _____)

14

15    HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16

17     VIDEOTAPED DEPOSITION OF EDWARD RUSSO

18        WEDNESDAY, DECEMBER 20, 2017

19

20

21   REPORTED BY:

22   PAUL J. FREDERICKSON, CCR, CSR

23   JOB NO. 2771335

24

25   PAGES 1 - 367

                                    Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | surveillance?  Do you know? | 08:17:37 |
| 2 | A.    I don't. | 08:17:38 |
| 3 | Q.    Did you ever see a report about | 08:17:39 |
| 4 | it? | 08:17:40 |
| 5 | A.    I did not. | 08:17:41 |
| 6 | Q.    Did you talk to anyone about it? | 08:17:41 |
| 7 | A.    Nick Gicinto told me, you know, | 08:17:43 |
| 8 | this was something that had taken place, and | 08:17:45 |
| 9 | I -- I forget the dates, but it would have been | 08:17:47 |
| 10 | in the spring, I guess, of 2016. | 08:17:49 |
| 11 | Q.    Okay. | 08:17:51 |
| 12 | And what was the context of him | 08:17:53 |
| 13 | telling you that?  Why -- why was he telling | 08:17:54 |
| 14 | you that? | 08:17:56 |
| 15 | A.    Just to inform me on some of the | 08:17:57 |
| 16 | stuff that had -- the team had done prior to my | 08:17:59 |
| 17 | arrival. | 08:18:02 |
| 18 | Q.    Other than the surveillance of | 08:18:09 |
| 19 | ███    that happened on two separate occasions | 08:18:10 |
| 20 | -- | 08:18:10 |
| 21 | A.    Right. | 08:18:13 |
| 22 | Q.    -- and the surveillance of Waymo | 08:18:14 |
| 23 | in Arizona and the surveillance of ███ that | 08:18:16 |
| 24 | you mentioned, are there any other instances | 08:18:19 |
| 25 | that you're aware of, whether you're personally | 08:18:20 |

Page 20

| | | |
|---|---|---|
| 1 | aware of it or because you heard from someone | 08:18:23 |
| 2 | else, of any surveillance that Uber did of | 08:18:25 |
| 3 | competitors? | 08:18:29 |
| 4 | A.    No. | 08:18:29 |
| 5 | Q.    You haven't heard anything else; | 08:18:30 |
| 6 | right? | 08:18:31 |
| 7 | A.    No. | 08:18:31 |
| 8 | Q.    And explain to me the context or | 08:18:35 |
| 9 | the purpose of the due diligence surveillance | 08:18:38 |
| 10 | that was done in connection with ███. | 08:18:41 |
| 11 | A.    It was my understanding that ATG | 08:18:46 |
| 12 | was ████████████████████████████████ | 08:18:48 |
| 13 | ████████████████████████████████ | 08:18:52 |
| 14 | ████████████████████████████████ | 08:18:57 |
| 15 | ATG's -- Mr. Levandowski, Mr. Ron | 08:19:03 |
| 16 | had asked for certain -- for ████ to provide | 08:19:06 |
| 17 | certain things so they could assess the | 08:19:07 |
| 18 | technology to determine whether this would be a | 08:19:09 |
| 19 | wise business decision on -- on Uber's part. | 08:19:11 |
| 20 | Apparently ████ was not | 08:19:14 |
| 21 | forthcoming to their -- to their liking. | 08:19:16 |
| 22 | They -- they felt they were -- they lacked the | 08:19:20 |
| 23 | information they needed.  So they asked us if | 08:19:23 |
| 24 | we could videotape one of their cars so they | 08:19:25 |
| 25 | could get a sense of how good the technology | 08:19:28 |

Page 21

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| 1 | Q. Of 2017? | 08:33:57 |
| 2 | A. Yes. | 08:33:57 |
| 3 | Q. The surveillance that happened at | 08:34:07 |
| 4 | Waymo in Arizona, can you tell me how that | 08:34:09 |
| 5 | arose? | 08:34:11 |
| 6 | A. To be perfectly honest, I'm less | 08:34:15 |
| 7 | clear on the genesis of that. After we did the | 08:34:17 |
| 8 | ███ surveillance and provided the videos, | 08:34:20 |
| 9 | about a week later, if I remember correctly, | 08:34:25 |
| 10 | Mr. Gicinto called me and said that | 08:34:29 |
| 11 | Mr. Levandowski and Mr. Ron would be interested | 08:34:31 |
| 12 | in similar videos of the Waymo cars in Arizona. | 08:34:34 |
| 13 | Q. You said a week after the ███ | 08:34:40 |
| 14 | surveillance. Were you referring to the | 08:34:42 |
| 15 | March -- | 08:34:44 |
| 16 | A. Yes. | 08:34:45 |
| 17 | Q. -- 2017 surveillance? | 08:34:45 |
| 18 | A. Yeah, the March. Because we -- we | 08:34:47 |
| 19 | did the Waymo videotaping in mid April. | 08:34:49 |
| 20 | Q. What did Mr. Gicinto tell you the | 08:34:59 |
| 21 | purpose of getting videos of the Waymo cars in | 08:35:03 |
| 22 | Arizona was? | 08:35:06 |
| 23 | A. As I recall, it was just that | 08:35:08 |
| 24 | Mr. Levandowski and Mr. Ron were interested in | 08:35:11 |
| 25 | videos of Waymo cars. I -- I was unaware of a | 08:35:14 |

Page 37

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | bigger purpose behind it. | 08:35:17 |
| 2 | Q.    And what did you do in connection | 08:35:19 |
| 3 | with doing that surveillance of Waymo cars in | 08:35:21 |
| 4 | Arizona? | 08:35:23 |
| 5 | A.    Same as I just described with | 08:35:25 |
| 6 | ███.  Jake Nocon, myself went down.  One of | 08:35:27 |
| 7 | the ████████ came down or contractors came | 08:35:31 |
| 8 | down, and we videotaped the Waymo cars. | 08:35:35 |
| 9 | Q.    How long did that project last? | 08:35:51 |
| 10 | A.    Three or four days. | 08:35:53 |
| 11 | Q.    Did you get any feedback from | 08:35:57 |
| 12 | Mr. Ron or Mr. Levandowski or Mr. Gicinto or | 08:36:02 |
| 13 | anyone else about the video that you took | 08:36:06 |
| 14 | there? | 08:36:07 |
| 15 | A.    As I recall, the -- I mean, they | 08:36:11 |
| 16 | were happy we had the video, but I mean, there | 08:36:13 |
| 17 | was no specific -- specific comments that I | 08:36:15 |
| 18 | remember. | 08:36:17 |
| 19 | Q.    Do I understand correctly that | 08:36:23 |
| 20 | from August of 2016 when you were hired at Uber | 08:36:24 |
| 21 | and March of 2017, you're not aware of any | 08:36:28 |
| 22 | surveillance activities that Uber engaged? | 08:36:32 |
| 23 | A.    Other than the one I just -- we | 08:36:37 |
| 24 | talked about that took place before my being | 08:36:39 |
| 25 | hired there, right, yeah.  I'm -- | 08:36:41 |

Page 38

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q.     You're referring to ████?           08:36:42

 2        A.     The ████ , yeah.                     08:36:45

 3        Q.     Other than that, you're not aware    08:36:46

 4   of anything?                                     08:36:47

 5        A.     I'm not aware of anything.           08:36:48

 6               [Discussion off the record.]         08:37:01

 7        Q.     I should have given you that         08:37:02

 8   caveat at the beginning.                         08:37:04

 9        A.     It's okay.                           08:37:06

10        Q.     In terms of the research that you    08:37:24

11   mentioned of third parties -- third-party        08:37:26

12   competitors --                                   08:37:28

13        A.     Yes.                                 08:37:31

14        Q.     -- did you or are you aware of       08:37:31

15   anyone else at Uber ever attempting to gather    08:37:34

16   that research by speaking to individuals who     08:37:39

17   were employed at these third parties?            08:37:43

18        A.     Say that question again now.         08:37:50

19        Q.     Sure.                                08:37:51

20               Did you or are you aware of anyone   08:37:56

21   else at Uber ever attempting to gather research  08:37:59

22   about competitors of Uber by speaking to         08:38:04

23   individuals who were employed at those           08:38:08

24   competitors?                                     08:38:11

25        A.     No.                                  08:38:14
```

Page 39

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          Witness my hand this 21st day

2    of December 2017.

3

4

5

6          PAUL J. FREDERICKSON, CCR, CSR

7          WA CCR 2419   CA CSR 13164

8          Expiration date:  March 31, 2018

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 367

# EXHIBIT M

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3             SAN FRANCISCO DIVISION

4

          Case No. 3:17-cv-00939-WHA

5    _____

6    WAYMO LLC,                         )
                                        )
7             Plaintiff,                )
                                        )
8         v.                            )
                                        )
9    UBER TECHNOLOGIES, INC.;           )
     OTTOMOTTO LLC;                     )
10   OTTO TRUCKING,                     )
                                        )
11            Defendants.               )
     _____)

12

13    HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

14          VIDEOTAPED DEPOSITION OF

15             NICHOLAS GICINTO

16      DATE TAKEN:  DECEMBER 21, 2017

17

18

19

20

21   REPORTED BY:

22   PAUL J. FREDERICKSON, CCR, CSR

23   JOB NO. 2771353

24

25   Pages 1 - 338

                                    Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A.      It appears to be a philosophical | 13:18:30 |
| 2 | approach to looking at the autonomous vehicle | 13:18:33 |
| 3 | competitive landscape and -- from a collection | 13:18:37 |
| 4 | standpoint. | 13:18:41 |
| 5 | Q.      And do you see in the next | 13:18:42 |
| 6 | paragraph, it says: | 13:18:43 |
| 7 | "The primary collection | 13:18:44 |
| 8 | methodologies will be open-source and HUMINT | 13:18:45 |
| 9 | and will be conducted by assets, both internal | 13:18:48 |
| 10 | employees and external vendors"? | 13:18:52 |
| 11 | A.      I see that. | 13:18:54 |
| 12 | Q.      And did you have understanding | 13:18:56 |
| 13 | that Uber's primary collection methodologies in | 13:18:59 |
| 14 | terms of gaining competitive intelligence were | 13:19:06 |
| 15 | the things that are listed here? | 13:19:07 |
| 16 | A.      No, I disagree with that.  I mean, | 13:19:12 |
| 17 | this strategy or this -- this document here, | 13:19:13 |
| 18 | what was outlined, was never actually carried | 13:19:17 |
| 19 | out. | 13:19:21 |
| 20 | Q.      You haven't read the whole | 13:19:21 |
| 21 | document yet, have you? | 13:19:22 |
| 22 | A.      I haven't read the whole document, | 13:19:23 |
| 23 | but insofar as what you've pointed out to me, | 13:19:25 |
| 24 | these are not things that were -- that were | 13:19:28 |
| 25 | undertaken. | 13:19:30 |

Page 145

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | And one of the individuals -- the | 14:37:28 |
| 2 | first individual we interacted with as a | 14:37:33 |
| 3 | vendor, who we later called ███, traveled to | 14:37:38 |
| 4 | ██████ in response to the requirements that Ric | 14:37:41 |
| 5 | Jacobs drafted. | 14:37:45 |
| 6 | The information itself wasn't -- | 14:37:45 |
| 7 | wasn't particularly earth-shattering, but the | 14:37:49 |
| 8 | quality of the writing, the quality of the | 14:37:54 |
| 9 | assessment, was at such a higher level of -- of | 14:37:57 |
| 10 | what -- what the business was used to seeing, | 14:38:01 |
| 11 | that it was clear that we were working with a | 14:38:04 |
| 12 | vendor that had just a higher level of | 14:38:07 |
| 13 | expertise than what the business had been used | 14:38:11 |
| 14 | to working with. | 14:38:13 |
| 15 | Q.    Other than what we've discussed | 14:38:14 |
| 16 | today with respect to the surveillance of ████ | 14:38:16 |
| 17 | and Waymo vehicles, are there any other | 14:38:20 |
| 18 | activities you can recall that were engaged in | 14:38:24 |
| 19 | by these folks that you call ███ that were | 14:38:28 |
| 20 | hired by your group with respect to collecting | 14:38:32 |
| 21 | information about competitors in the AV market? | 14:38:39 |
| 22 | A.    I don't recall those individuals | 14:39:07 |
| 23 | engaging in any other collection related to AV | 14:39:11 |
| 24 | besides what we previously discussed. | 14:39:14 |
| 25 | MR. KAPGAN:  Do you want to take a | 14:39:16 |

Page 208

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | chain category? | 16:58:02 |
| 2 | A.      Hypothetically it would have been | 16:58:05 |
| 3 | for that.  But, again, we didn't engage in | 16:58:07 |
| 4 | supply chain research, so none of the money | 16:58:09 |
| 5 | went to that.  We did engage in some sourcing | 16:58:11 |
| 6 | activities, as I mentioned, related to a couple | 16:58:14 |
| 7 | of entities, neither of which were Waymo or | 16:58:18 |
| 8 | Google. | 16:58:22 |
| 9 | Q.      Did the ATG group specify that | 16:58:26 |
| 10 | efforts should be taken with respect to ███ | 16:58:28 |
| 11 | ████████████████████████████ with | 16:58:31 |
| 12 | respect to the autonomous vehicle competitors? | 16:58:33 |
| 13 | A.      They listed those as areas of | 16:58:36 |
| 14 | interest. | 16:58:37 |
| 15 | Q.      All right. | 16:58:40 |
| 16 | Was any money out of the ███ | 16:58:50 |
| 17 | ████████ budget spent on focusing on | 16:58:52 |
| 18 | Google with respect to the ██████████? | 16:58:57 |
| 19 | A.      No. | 16:58:57 |
| 20 | Q.      Was any of the ██████████████ | 16:59:00 |
| 21 | budget focused on Google with respect to | 16:59:02 |
| 22 | ██████? | 16:59:06 |
| 23 | A.      No. | 16:59:06 |
| 24 | Q.      Was any of the ████████████ | 16:59:08 |
| 25 | budget that was approved for 2017 focused on | 16:59:10 |

Page 281

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Google with respect to ████████? | 16:59:15 |
| 2 | A.     Yes. | 16:59:15 |
| 3 | Q.     Tell me what you know about that. | 16:59:21 |
| 4 | A.     The -- this budget funded our | 16:59:24 |
| 5 | public observation activities in the Phoenix | 16:59:27 |
| 6 | area as we previously discussed. | 16:59:30 |
| 7 | Q.     And is that the only activity with | 16:59:32 |
| 8 | respect to Google that was -- which came under | 16:59:35 |
| 9 | this ████████     budget? | 16:59:42 |
| 10 | A.     Yes. | 16:59:42 |
| 11 | Q.     Was there any other budget in the | 16:59:45 |
| 12 | SSG Group that related to activities focused on | 16:59:47 |
| 13 | Google for 2017? | 16:59:49 |
| 14 | A.     No. | 16:59:51 |
| 15 | Q.     What about for 2016? | 16:59:51 |
| 16 | A.     No. | 16:59:51 |
| 17 | Q.     Was all of the budget for 2000 -- | 17:00:09 |
| 18 | first of all, how much budget was there for | 17:00:10 |
| 19 | 2016 with respect to autonomous vehicles in | 17:00:13 |
| 20 | your group? | 17:00:15 |
| 21 | A.     We didn't have a budget.  We | 17:00:16 |
| 22 | weren't funded by ATG in 2016. | 17:00:18 |
| 23 | Q.     Okay. | 17:00:20 |
| 24 | You didn't have a budget at all? | 17:00:23 |
| 25 | A.     I had a -- I had a budget, but I | 17:00:24 |

Page 282

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              C E R T I F I C A T E

 2

 3              I, PAUL J. FREDERICKSON, CA
        Certified Shorthand Reporter No. 13164 and
 4      WA Certified Court Reporter No. 2419, do
        hereby certify:
 5              That prior to being examined,
        the witness named in the foregoing
 6      deposition was by me duly sworn or affirmed
 7      to testify to the truth, the whole truth and
 8      nothing but the truth;
 9              That said deposition was taken
        down by me in shorthand at the time and
10      place therein named, and thereafter reduced
11      to print by means of computer-aided
12      transcription; and the same is a true,
13      correct and complete transcript of said
14      proceedings.
                I further certify that I am not
15      interested in the outcome of the action.
16              Witness my hand this 22nd day
17      of December 2017.

18

19

20

21

22

23          PAUL J. FREDERICKSON, CCR, CSR
24          WA CCR 2419   CA CSR 13164
25          Expiration date:  March 31, 2018
```

Page 338