MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzález@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>  Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO WAYMO'S PRECIS IN SUPPORT OF ITS REQUEST TO FILE A MOTION FOR RELIEF BASED ON DEFENDANTS' LITIGATION MISCONDUCT**<br><br>Date:  TBD<br>Time:  TBD<br>Ctrm:  8, 19th Floor<br>Judge: Honorable William H. Alsup<br>Trial Date:   February 5, 2018 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Nothing in Waymo's 50-page offer of "proof" with five binders of exhibits warrants any sanction. Yet Waymo wants to file another motion to substitute sanctions for evidence—because it cannot prove its trade secret claims. That request should be denied. This case should be tried on its merits instead of unwarranted inferences based on irrelevant innuendo. The issues Waymo raises have been briefed extensively, and the Jacobs allegations do not provide any reason to brief them further. As Uber's response to Waymo's Offer of Proof will make clear, discovery into the Jacobs allegations has confirmed that there is nothing relevant to the eight trade secrets at issue. Enough is enough. It is time for Waymo to stop whining, and try its case.

## I. TERMINATING SANCTIONS ARE NOT WARRANTED.

Waymo came to this Court with trumpets blaring, declaring that it had slam dunk evidence of trade secret theft. When discovery confirmed that was not true, Waymo decided to raise a series of excuses, based on false allegations of discovery and other abuses, designed to have this Court bail them out. This Court should not do so. Waymo obtained extensive discovery into the Jacobs allegations—17 depositions and over 16,000 pages of documents. None of this turned up any wrongdoing connected to Waymo, much less the specific trade secrets at issue. As Uber's response will show, no one in Uber's self-driving group engaged in the misconduct alleged by Jacobs, including the use of non-attributable devices, anonymous servers, or knowingly improper attorney-client privilege designations. There is simply no evidence that Waymo was prejudiced in any way because any relevant evidence was hidden or destroyed. FED. R. CIV. P. 37(e)(1).

The same is true of ephemeral messaging. Uber employees were instructed that if they were subject to a litigation hold, they should not use ephemeral communications to discuss anything covered by the hold. (Declaration of Camila Tapernoux Exhibits ("Exs.") A-D.) There is no evidence that ephemeral messaging was used for discussing anything relevant to this case. (Exs. C, E.) Moreover, Waymo employees have used ephemeral messaging as a matter of course since the company's founding, and Google employees have used it for a decade. (Ex. F.) Google's decision to default to ephemeral messaging arose because it ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. G.) Google has even argued in prior litigation (1) that a default setting to not retain chats comported with ▬▬▬▬▬▬▬▬

1 ████████████████ and was ████████████████
2 (Ex. H, ¶ 8), as well as (2) that Google's default "off-the-record" setting for its chat was not
3 improper and did not support a finding of spoliation, because such chats were akin to "hallway
4 conversation[s]" and the proper avenue for discovery regarding these messages was depositions.
5 (Ex. I, *Function Media v. Google*, No. 2007-CV-279, No. 483 at 155:17-156:12 (E.D. Tex. Oct.
6 21, 2010) (post-trial motions hearing on spoliation).)  Like Uber, Google has instructed
7 employees subject to an existing litigation hold to change individual chat settings to "on the
8 record" for communications subject to a litigation hold.  (Ex. H; Ex. I at 154:15-20.)

9       The precedent on which Waymo relies does not support sanctions.  To the contrary, the
10 relevant case law highlights that Waymo's request is improper.  First, a request for terminating
11 sanctions may only be granted upon a finding of willfulness, bad faith, or fault—a standard
12 Waymo tellingly fails to identify, let alone provide evidence of.  *See Brookhaven Typesetting*
13 *Serv., Inc. v. Adobe Sys., Inc.* 332 Fed. App'x 387, 389 (9th Cir. 2009) ("'Where the drastic
14 sanctions of dismissal or default are imposed … the losing party's noncompliance must be due to
15 willfulness, fault, or bad faith.'") (affirming that terminating sanctions were not warranted);
16 *Mitchell v. Acumed, LLC,* No. 11-CV-00752 SC (NC), 2012 WL 761705, at *2 (N.D. Cal. Mar. 8,
17 2012 ("sanction orders taking the plaintiff's allegations as established and awarding judgment on
18 that basis are the most severe penalty . . . . To justify the imposition of such a harsh sanction, the
19 court must find the violations were due to willfulness, bad faith, or fault of the party.") (internal
20 citations omitted); *Mech. Mktg., Inc. v. Sixxon Precision Mach. Co.*, No. C 11-1844 EJD PSG,
21 2013 WL 1563251, at *2-3 (N.D. Cal. Apr. 12, 2013) (denying sanctions that "would have the
22 effect of entering partial judgment for [plaintiff], at least on the issue of damages[,]" noting that a
23 "terminating sanction is considered very severe and should only be imposed if the party acted
24 with willfulness, bad faith, and fault.") (internal citation omitted); *Network Appliance, Inc. v.*
25 *Bluearc Corp.*, No. C 03-5665 MHP, 2005 WL 1513099, at *3 (N.D. Cal. June 27,
26 2005), *aff'd*, 205 F. App'x 835 (Fed. Cir. 2006) ("the imposition of preclusive sanctions may be
27 tantamount to dismissal of a plaintiff's claims or entry of default judgment against a
28 defendant.  Under those circumstances . . . a showing of bad faith is required.") (internal citation

omitted); *Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912 JSW (MEJ), 2012 WL 5904709, at *2 (N.D. Cal. Nov. 26, 2012) (denying jury instruction to take as established that defendant copied trade dress, which would be "tantamount to [granting] a directed verdict...").

Waymo cannot make the requisite showing of bad faith. *See, e.g., Network Appliance,* 2005 WL 1513099 at *1 (denying sanctions upon finding of no bad faith where defendant did not produce responsive damages documents earlier because "its [CFO] had concluded that … [they] were not responsive"). Even if it could, its request would fail upon consideration of the five factor balancing test. The "key factors are prejudice and availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). As discussed above, Waymo has not suffered prejudice, especially to the extent reflected in cases where this factor weighed in favor of granting sanctions. Waymo has had the opportunity to conduct full discovery into the evidence at issue, which courts in this district agree is sufficient to remedy any potential prejudice from belated discovery. *Mitchell* 2012 WL 761705 at *3 (finding no prejudice from discovery delay because trial was continued); *Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912 JSW MEJ, 2012 WL 5904709, at *3 (N.D. Cal. Nov. 26, 2012) (denying motion for issue preclusion sanctions due to late productions where "a discovery extension would have alleviated any prejudice that was caused by Defendants' malfeasance, and, most importantly, permitted the Court and a jury to resolve Plaintiff's trade dress claims on the merits."). Waymo has also not suffered prejudice because, as Uber's Response to Waymo's Offer of Proof will show, the evidence at issue was of minimal if any relevance. *Keithley v. Homestore.com, Inc.*, No. C-03-04447 SI (EDL), 2009 WL 55953, at *3 (N.D. Cal. Jan. 7, 2009) (denying sanctions due to finding of no prejudice where late-produced documents had "little if any relevance to [the] case").

The cases on which Waymo relies to argue for prejudice are readily distinguishable. In *Valley Engineers Inc. v. Electric Engineering Co.*, the evidence at issue was a "smoking gun." 158 F.3d 1051, 1054 (9th Cir. 2000). Here, as this Court has repeatedly observed, there is no smoking gun. No one in ATG used non-attributable devices or anonymous servers. While there was limited gathering of publicly-available information about Waymo, Waymo points to no evidence of any trade secret misappropriation—because there was none. (Tapernoux Decl., Exs.

1  J-M (Russo at 20:18-21:7, 37:20-38:18; Henley at 106:16-20, 107:15-23, 108:4-6; Nocon at 45:9-
2  19; Gicinto at 145:12-19, 208:15-24, 281:16-282:16)).)  Additionally, the *Valley Engineers* court
3  found that the severity of the defendant's conduct in hiding and lying about the document
4  intentionally throughout the litigation warranted severe sanctions because it "so damage[d] the
5  integrity of the discovery process that there [could] never be assurance of proceeding on the true
6  facts."  158 F.3d at 1059.  Similarly, in *Fair Housing of Marin v. Combs*, defendant
7  "misrepresented to both counsel and to the district court that the documents did not exist" when in
8  fact "[t]he documents were in Combs' one-bedroom apartment."  285 F.3d 899, 905-906 (2002)
9  There is no such evidence here.  Waymo also relies on *Fair Housing of Marin* and *Henry* for the
10 proposition that a last-minute production does not cure prejudice.  (Dkt. No. 2472 at 2-3.)  But,
11 unlike here, the parties in those cases did not have the opportunity to conduct discovery into the
12 late-produced evidence.  Waymo obtained extensive follow-up discovery here, and the cases cited
13 above make clear that such an opportunity remedies any potential prejudice.
14     The availability of less drastic sanctions also weighs against granting terminating
15 sanctions.  Waymo's case, *Alexsam, Inc. v IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013), applies a
16 far more lenient standard from the Fifth Circuit.  Further, in that case, the defendant had already
17 received less drastic sanctions, yet continued to not comply with its obligations; it was then twice-
18 warned of the risk of future sanctions before the court granted terminating sanctions.  *Id.* at 1344.
19     Waymo misleadingly claims that one of the continuances "has been determined to have
20 resulted from the intentional concealment of evidence."  (Dkt. No. 2472-3 at 2:19 (Waymo
21 Precis).)  There is no citation to any such "determination," nor could there be.  And, the public
22 policy favoring disposition of cases on their merits strongly outweighs the remaining factors here.
23 Waymo should not be permitted to bypass the utter lack of evidence of misappropriation of the
24 eight trade secrets at issue via a sanction based on meritless and exaggerated allegations.
25     **II.     REMEDIAL JURY INSTRUCTIONS ARE NOT NECESSARY.**
26     This issue has already been extensively briefed.  (*See* Dkt Nos. 1591-4, 2240-4, and
27 2804.)  As noted there, and as will be discussed further in Uber's response to Waymo's Offer of
28 Proof, Uber has not violated any Court Orders or destroyed evidence.  Remedial jury instructions

1   are not warranted.  Waymo should try its case on the merits and should not be permitted to use

2   irrelevant allegations to influence the jury into finding wrongdoing where there is none.

3   **III.   EVIDENTIARY SANCTIONS ARE NOT WARRANTED.**

4   Waymo points to no specific concealment of evidence that has compromised its

5   evaluation of Uber's independent development such that evidentiary sanctions are warranted.

6   First, Uber substantially complied with its logging obligation.  (Dkt. 1591-4 at 2 (Uber conducted

7   over 170 interviews, reviewed over 25,000 documents and spent over 700 hours preparing the

8   "LiDAR log," and voluntarily included references not just to LiDAR but to lasers, lenses, and

9   point clouds, as well as communications where others may have mentioned LiDAR and related

10  concepts to Mr. Levandowski.).  Second, Uber legitimately asserted privilege over the Stroz

11  materials, and it was not in a position to unilaterally waive the privilege when Mr. Levandowski

12  continued to assert it.  *United States v. Gonzalez*, 669 F.3d 974, 982 (9th Cir. 2012) ("the case law

13  is clear that one party to a JDA cannot unilaterally waive the privilege for other holders.").  And

14  in another half-truth, Waymo complains that it did not receive the Stroz materials "until after the

15  close of fact discovery," but fails to mention that Mr. Levandowski, not Uber, appealed this

16  Court's ruling on that issue.  Waymo also conveniently omits that it received ample discovery

17  into the Stroz diligence after the Federal Circuit ruled.  Lastly, in a final half-truth, Waymo

18  complains that it was not able to question two Uber engineers (Mr. Haslim and Mr. Boehmke)

19  about the Stroz materials.  But they fail to mention that they only requested to depose a different

20  engineer, Mr. Gruver, about the Stroz materials.  Waymo never asked to depose Mr. Haslim or

21  Mr. Boehmke after the Stroz report was released.

22  **IV.   ADDITIONAL TIME AT TRIAL IS NOT WARRANTED.**

23  Waymo should not be given additional time at trial to do nothing more than present more

24  baseless allegations of discovery misconduct in an effort to mislead the jury into thinking Waymo

25  has an actual case.  Nothing has emerged from the Jacobs letter that warrants inclusion at trial, as

26  discussed above and as will be detailed in Uber's response to Waymo's Offer of Proof.  The

27  remaining factors to which Waymo points—the due diligence process and the Ottomotto and Tyto

28  transactions—were known when the Court set the initial time allocations that Waymo agreed to.

Case 3:17-cv-00939-WHA   Document 2477-3   Filed 01/14/18   Page 7 of 7

1  Dated: January 14, 2018                    MORRISON & FOERSTER LLP

                                              By:    */s/ Arturo J. González*
                                                     ARTURO J. GONZÁLEZ

                                              Attorneys for Defendants
                                              UBER TECHNOLOGIES, INC. and
                                              OTTOMOTTO LLC

Case No. 3:17-cv-00939-WHA
sf-3858155

6