# EXHIBIT C

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1                UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF CALIFORNIA
3                  SAN FRANCISCO DIVISION
4
5    WAYMO LLC,
6         Plaintiff,
7              vs.                Case No.
8    UBER TECHNOLOGIES, INC.;     17-cv-00939-WHA
9    OTTOMOTTO, LLC; OTTO
10   TRUCKING LLC,
11        Defendants.
     _____
12
13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15    VIDEOTAPED DEPOSITION OF UBER TECHNOLOGIES, INC.
16      30(b)(6) REPRESENTATIVE - RANDY HAIMOVICI
17                San Francisco, California
18              Thursday, December 21, 2017
19                       Volume I
20
21   REPORTED BY:
22   REBECCA L. ROMANO, RPR, CSR No. 12546
23   JOB NO. 2779670
24
25   PAGES 1 - 190
```

Page 1

| | | |
|---|---|---|
| 1 | gave me an example of how they are used.  He | 10:13:46 |
| 2 | described the purpose.  And -- and mentioned that | |
| 3 | based on his knowledge, they were only used by | |
| 4 | people in the security department. | |
| 5 |     Q.   When you say that you discussed with | 10:14:04 |
| 6 | Mr. Gicinto how nonattributable devices are used, | |
| 7 | what did he say in terms of how they were used? | |
| 8 |     A.   In the same way I just described. | |
| 9 |     Q.   Okay.  Nothing addition- -- nothing | |
| 10 | beyond what you've already -- | 10:14:15 |
| 11 |     A.   Not that I recall. | |
| 12 |     Q.   Okay.  And in terms of discussing the | |
| 13 | purpose of using nonattributable devices, did he | |
| 14 | say anything further than what you've already | |
| 15 | provided? | 10:14:23 |
| 16 |     A.   Not that I recall.  It was just basically | |
| 17 | what I told you. | |
| 18 |     Q.   You said you spoke with Eric Meyhofer? | |
| 19 |     A.   I did. | |
| 20 |     Q.   What you did and Eric Meyhofer discuss? | 10:14:34 |
| 21 |     A.   So Eric and I talked about use of | |
| 22 | nonattributable devices.  And he confirmed that | |
| 23 | they are not used by ATG.  As I'm sure you know, | |
| 24 | he's the head of ATG. | |
| 25 |     We talked about the use of ephemeral | 10:14:47 |

| | | |
|---|---|---|
| 1 | communications, and he confirmed that his use of | 10:14:50 |
| 2 | ephemeral communications were limited to social | |
| 3 | reasons almost exclusively, but that there are | |
| 4 | times when he's talking about performance issues | |
| 5 | for employees, where he's used it, that he's never | 10:15:03 |
| 6 | used ephemeral communications to discuss anything | |
| 7 | related to this case. | |
| 8 | That he has an understanding of what and | |
| 9 | how the attorney-client privilege should be used. | |
| 10 | And he's adhered to the knowledge he was given and | 10:15:18 |
| 11 | the training he was given. | |
| 12 | Q.   And in your conversations with | |
| 13 | Mr. Meyhofer, were you talking about his use | |
| 14 | specifically or ATG more generally? | |
| 15 | A.   His use specifically -- well, when you | 10:15:33 |
| 16 | say "use," just tell me what you mean. | |
| 17 | Q.   So let me -- let me break it down. | |
| 18 | A.   Okay. | |
| 19 | Q.   So for -- for nonattributable devices, | |
| 20 | you said that Mr. Meyhofer told you that they're | 10:15:42 |
| 21 | not used by anyone in ATG; is that right? | |
| 22 | A.   That's correct. | |
| 23 | Q.   Okay.  When you were talking about | |
| 24 | ephemeral communications, did you discuss with | |
| 25 | Mr. Meyhofer whether they are used by others in ATG | 10:15:50 |

Veritext Legal Solutions
866 299-5127

```
 1    business.                                              11:27:57
 2         Q.   As of when?
 3         A.   Same -- same time, the September time
 4    frame.  I don't remember the exact date, but in the
 5    same time frame we have been discussing.              11:28:04
 6         Q.   Okay.  So prior to this policy change in
 7    September 2017, it was permissible for Uber
 8    employees to use Telegram for business purposes?
 9         A.   I don't know if I'd say it that broadly.
10    It was used, and I -- I think it was authorized.      11:28:17
11         Q.   Okay.  WickrMe, you said that was a
12    non-enterprise version?
13         A.   That's right.  WickrMe.
14         Q.   WickrMe.  Okay.
15              That's a non-enterprise version of Wickr,   11:28:31
16    correct?
17         A.   As stated, yes.
18         Q.   Okay.  And it is not -- is that -- is use
19    of WickrMe currently permitted for business
20    purposes?                                             11:28:41
21         A.   No.
22         Q.   Okay.  Prior to September 2017, was use
23    of WickrMe permitted for business purposes?
24         A.   For some businesses purposes, yes.
25         Q.   When you say, "for some business            11:28:52
```

Page 76

```
 1   purposes," were there specific business purposes it      11:28:53
 2   was --
 3       A.   I don't know if they were specific, but I
 4   know people on the security team used it.
 5       Q.   Was there any guidance provided to              11:29:02
 6   employees about when it was appropriate to use
 7   WickrMe for business purposes?
 8       A.   Well, there was -- there's guidance on
 9   when not to use it and -- but it doesn't just apply
10   to WickrMe.  It applies to all chat applications.       11:29:16
11   And the guidance was not to use it to discuss
12   topics that are subject to a litigation hold.
13       Q.   And that was a guidance for all chat
14   applications --
15       A.   Yes.                                            11:29:31
16       Q.   -- is that what you said?
17            And so that, that guidance to not use
18   these chat applications for subjects covered by a
19   litigation hold, that would really only come into
20   play once there was some reason to have a               11:29:49
21   litigation hold --
22       A.   That is correct.
23       Q.   -- correct?
24            Okay.  So, for example, the -- Uber
25   acquired Otto well before this lawsuit was filed.       11:29:59
```

| | | |
|---|---|---|
| 1 | look at the bottom of Exhibit 9729 -- | 11:38:55 |
| 2 | A. Okay. | |
| 3 | Q. -- the paragraph that says, "Uber Chat | |
| 4 | Applications are the following" -- | |
| 5 | A. Yes. | 11:39:05 |
| 6 | Q. -- and does that list uChat and | |
| 7 | Google Hangouts as authorized chat applications? | |
| 8 | A. Well, it -- it -- it identifies them in | |
| 9 | there, and then it talks about them on the next | |
| 10 | page. But, yes. | 11:39:18 |
| 11 | Q. And this paragraph says that, "All other | |
| 12 | chat applications, including but not limited to | |
| 13 | Wickr, Telegram, Signal, WeChat, and Snapchat, are | |
| 14 | not Uber Chat Applications and employees are | |
| 15 | prohibited from using these for business | 11:39:28 |
| 16 | communications," correct? | |
| 17 | A. That is correct as of the date this | |
| 18 | policy went into place in September, true. | |
| 19 | Q. And prior to this date, employees were | |
| 20 | not prohibited from using any of -- any of those | 11:39:41 |
| 21 | communications applications listed there? | |
| 22 | A. Well, except for the fact they were | |
| 23 | prohibited from using them if they wanted to talk | |
| 24 | about things that were subject to a litigation | |
| 25 | hold. | 11:39:53 |

Page 85

Veritext Legal Solutions
866 299-5127

```
 1   only when appropriate.                              02:41:14
 2        Q.   Did you ask him about any training that's
 3   been provided to the ATG group about
 4   attorney-client privilege designations?
 5        A.   I didn't because I don't -- I don't know  02:41:23
 6   that he would know about that.  I did not.
 7        Q.   If we go back to Topic 2 -- and I don't
 8   know if you want to get it in front of you or
 9   not --
10        A.   Right.                                    02:41:42
11        Q.   -- but it asks about defendants' use
12   of -- use of methods or strategies to conceal facts
13   from discovery by external parties and litigation
14   or government investigations.
15             And then it lists, including improper     02:41:50
16   attorney-client and other privileged designations,
17   ephemeral or encrypted communications,
18   nonattributable devices or anonymous servers.
19             In preparing for your testimony today,
20   did you ask anybody about other methods or          02:42:07
21   strategies to conceal facts from discovery by
22   external parties?
23        A.   I focused on the ones you identified.
24        Q.   So in your discussions with Mr. Meyhofer,
25   you didn't ask him whether there are other methods  02:42:22
```

| | | |
|---|---|---|
| 1 | or strategies that the ATG group uses to conceal | 02:42:25 |
| 2 | facts from discovery by external parties? | |
| 3 |     A.   I didn't feel the need to ask him because | |
| 4 | it was clear in my discussion with him that any | |
| 5 | attempt to conceal information from discovery in | 02:42:36 |
| 6 | litigation was unacceptable. | |
| 7 |     Q.   Who said that, you or him? | |
| 8 |     A.   That's my summary of our discussion.  I | |
| 9 | didn't feel the need to ask him, was there anything | |
| 10 | else other than the three things identified in your | 02:42:50 |
| 11 | notice.  Because in whatever words he used, he made | |
| 12 | it clear to me that doing so would be unacceptable. | |
| 13 |     Q.   So he told -- | |
| 14 |     A.   Regardless of methodology. | |
| 15 |     Q.   And when you spoke with Mr. Gicinto, did | 02:43:00 |
| 16 | you ask him about the use of methods or strategies | |
| 17 | to conceal facts from discovery other than those | |
| 18 | specifically outlined in the topic? | |
| 19 |     A.   Not in way you are phrasing it, no.  I | |
| 20 | don't recall that coming up. | 02:43:15 |
| 21 |     Q.   I'm sorry, I don't understand what you're | |
| 22 | saying, not in -- not in the way you're phrasing | |
| 23 | it. | |
| 24 |     A.   I didn't discuss that topic with him the | |
| 25 | way you phrased it in your question. | 02:43:23 |

Page 184

1    I, Rebecca L. Romano, a Certified Shorthand
2    Reporter of the State of California, do hereby
3    certify:
4    That the foregoing proceedings were taken
5    before me at the time and place herein set forth;
6    that any witnesses in the foregoing proceedings,
7    prior to testifying, were administered an oath;
8    that a record of the proceedings was made by me
9    using machine shorthand which was thereafter
10   transcribed under my direction; that the foregoing
11   transcript is true record of the testimony given.
12   Further, that if the foregoing pertains to the
13   original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review
15   of the transcript [ ] was [X] was not requested.
16   I further certify I am neither financially
17   interested in the action nor a relative or employee
18   of any attorney or any party to this action.
19   IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated: December 22, 2017
22
23   _____
24   Rebecca L. Romano, RPR,
25   CSR. No 12546

Page 190