# EXHIBIT E

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4                       --oOo--
 5   WAYMO LLC,
 6                Plaintiff,
 7
     vs.                        Case No. 3:17-cv-00939-WHA
 8
 9   UBER TECHNOLOGIES, INC.;
     OTTOMOTTO LLC; OTTO TRUCKING LLC,
10                Defendants.
11   _____/
12
13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15      30(b)(6) VIDEOTAPED DEPOSITION OF LIOR RON
16                      VOLUME II
17            TUESDAY, DECEMBER 12, 2017
18
19
20   Reported by:
21   Anrae Wimberley
22   CSR No. 7778
23   Job No. 2771228B
24
25   Pages 306 - 434
```

Page 306

| | | |
|---|---|---|
| 1 | will work and be most convenient for you. | 17:26:43 |
| 2 | But you know, look. You closed the last | |
| 3 | deposition, and I'll give you some wiggle room if | |
| 4 | you made a mistake. It's okay. | |
| 5 | MR. SCHMIDT: All right. I'm going to move on | 17:26:53 |
| 6 | because this is wasting my time. | |
| 7 | MR. RABIN: So how do you want to proceed? | |
| 8 | MR. SCHMIDT: I'm going to ask the questions | |
| 9 | that I think need to be asked. And if the witness | |
| 10 | refuses to answer the questions, then we'll take it | 17:27:07 |
| 11 | up later as appropriate. | |
| 12 | I think the transcript is very clear on | |
| 13 | what's going on here. | |
| 14 | BY MR. SCHMIDT: | |
| 15 | Q. Sir, was Slack used at Ottomotto in | 17:27:21 |
| 16 | conjunction with the negotiations that led to the | |
| 17 | acquisition of Ottomotto by Uber? | |
| 18 | A. No. I do not believe we've used Slack to | |
| 19 | communicate with Uber on any matters related to the | |
| 20 | negotiation. | 17:27:41 |
| 21 | Q. Were any forms of communication that you | |
| 22 | consider ephemeral communications used during the | |
| 23 | negotiations that led to the acquisition of | |
| 24 | Ottomotto by Uber? | |
| 25 | A. No, not to the best of my knowledge. | 17:27:58 |

1  Q. What methods of communications were used 17:42:28
2  regarding the negotiations for Uber's acquisition of
3  Ottomotto?
4  A. Again, the topic here is around ephemeral,
5  and so are you asking in my personal capacity sort 17:42:43
6  of all the communication channels?
7  Q. I just want to know whatever communication
8  channels you can recall that were used to
9  communicate about the acquisition of Ottomotto by
10  Uber. 17:43:00
11  MR. RABIN: You can answer. If it's ephemeral,
12  you can do it in your corporate capacity. If it's
13  not ephemeral, you can do it in your individual
14  capacity.
15  THE WITNESS: Right. So I don't think -- in my 17:43:08
16  corporate capacity, I don't think any of the
17  communication methods were ephemeral, meaning sort
18  of used in communication channels that are designed
19  to not store messages by default.
20  In my personal capacity I believe there 17:43:22
21  was e-mail and text messages used, if I recall
22  correctly.
23  MR. RABIN: And let me just stop one second.
24  So just for the record, I'm allowing you
25  to proceed on this basis so as not to impede it. 17:43:36

Page 354

```
 1        A.   Well, as I've conversed with James, I         18:16:43
 2   don't believe he used it, and he does -- to the best
 3   of my understanding and his understanding, nobody on
 4   his team has used that tool as well.
 5            And as we've discussed before, Anthony got     18:16:56
 6   an invitation to that tool, but I'm not aware of any
 7   communication whatsoever that Anthony had on the
 8   tool at all, and on the tool specifically relating
 9   to LiDAR.
10        Q.   Did you ask Mr. Levandowski if he             18:17:15
11   communicated on Wickr about LiDAR development?
12            MR. RABIN:  Objection; form.
13            THE WITNESS:  I have not asked Anthony directly
14   that question.  But it is my understanding that he
15   got an invitation from the ThreatOps team as a         18:17:33
16   follow-up to our meeting on market data, and it had
17   nothing to do with LiDAR development whatsoever.
18   That's my understanding.
19   BY MR. SCHMIDT:
20        Q.   What's that understanding based on?           18:17:46
21        A.   It's based on the dates of that invitation
22   being sent in the time frame of our discussion with
23   the ThreatOps team.
24            It's based on the fact that the invitation
25   came on the same e-mail to the two of us, and only    18:18:04
```

```
 1    the two of us, and not to any other sort of LiDAR          18:18:08
 2    team members.
 3            And it came -- and it stems from my
 4    understanding that the LiDAR team has not used Wickr
 5    for their job.                                              18:18:22
 6            And I believe I haven't seen names of
 7    LiDAR team members on that list of Wickr users at
 8    Uber, but I'm happy to take another look to refresh
 9    my memory and be definitive on that answer.
10       Q.   I'm sorry, I just don't have time to help           18:18:40
11    you prepare for your corporate testimony.  So if
12    you're not able to say --
13       MR. RABIN:  Counsel, please be respectful to
14    the witness.
15       MR. SCHMIDT:  Counsel, don't make speaking               18:18:50
16    objections.
17       MR. RABIN:  I'm not.  I'm asking you to please,
18    as an officer of the Court, be respectful in the
19    deposition to the witness.  What you're doing is not
20    respectful.                                                 18:18:58
21       MR. SCHMIDT:  All right.  I'm moving on.
22    You're wasting my time again.
23       MR. RABIN:  And don't tell me I'm wasting your
24    time.  I'm trying to ask you to be respectful.
25    Okay?                                                       18:19:05
```

Page 379

```
 1        FEDERAL CERTIFICATE OF DEPOSITION OFFICER
 2        I, ANRAE WIMBERLEY, CSR NO. 7778, do hereby
   declare:
 3        That, prior to being examined, the witness
   named in the foregoing deposition was by me duly
 4 sworn pursuant to Section 30(f)(1) of the Federal
   Rules of Civil Procedure and the deposition is a
 5 true record of the testimony given by the witness;
 6        That said deposition was taken down by me in
   shorthand at the time and place therein named and
 7 thereafter reduced to text under my direction;
 8        --X---   That the witness was requested to
   review the transcript and make any changes to the
 9 transcript as a result of that review pursuant to
   Section 30(e) of the Federal Rules of Civil
10 Procedure;
11        -----    No changes have been provided by the
   witness during the period allowed;
12        -----    The changes made by the witness are
13 appended to the transcript;
14        -----    No request was made that the
   transcript be reviewed pursuant to Section 30(e) of
15 the Federal Rules of Civil Procedure.
16        I further declare that I have no interest in
   the event of the action.
17        I declare under penalty of perjury under the
18 laws of the United States of America that the
   foregoing is true and correct.
19        WITNESS my hand this 13th day of December,
20 2017.
21
22
23
24                         [signature: Anrae Wimberley]
25        ANRAE WIMBERLEY, CSR NO. 7778
```

Page 434