# EXHIBIT K

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY

```
 1        UNITED STATES DISTRICT COURT
 2       NORTHERN DISTRICT OF CALIFORNIA
 3           SAN FRANCISCO DIVISION
 4
 5  WAYMO LLC,
 6            Plaintiff,
 7  vs.                          Case No.
 8  UBER TECHNOLOGIES, INC.;     3:17-cv-00939-WHA
 9  OTTOMOTTO LLC; OTTO TRUCKING LLC,
10            Defendants.
11  _____/
12
13   HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15      VIDEOTAPED DEPOSITION OF MATHEW HENLEY
16            FRIDAY, DECEMBER 22, 2017
17
18
19
20  Reported by:
21  Anrae Wimberley
22  CSR No. 7778
23  Job No. 2771361B
24
25  PAGES 1 - 145
```

Page 1

```
1    that I'm limiting this to collection based on these        16:44:23

2    objectives.

3           I'm simply asking you right now, based on

4    this product -- this project, which was -- the

5    autonomous project was Zoo, I believe you said that        16:44:35

6    you understood that there was research that was

7    going to be done on some of the leading companies in

8    that space, including Google or Waymo --

9         A.   Yes.

10        Q.   -- and that you believe that the code name       16:44:52

11   Giraffe refers to Google or Waymo.

12        A.   Um-hum.

13        Q.   So I think that's been established by your

14   testimony.

15        A.   Yes.                                             16:45:02

16        Q.   Now, in light of that project, are you

17   aware of Uber uncovering any confidential

18   information of Waymo's?

19        A.   I'm not aware of any confidential

20   information.                                               16:45:17

21        Q.   Are you aware of any trade secret

22   information of Waymo's being uncovered in connection

23   with this effort to conduct research into the

24   autonomous space?

25        A.   "Trade secret" is something I need help          16:45:29
```

| | | |
|---|---|---|
| 1 | with the definition on specifically. | 16:45:33 |
| 2 | Q.   Well, do you have a concern or belief that | |
| 3 | there was some type of information of Waymo's that | |
| 4 | was uncovered?  Because I can just work backwards. | |
| 5 | Why don't you tell me all the information | 16:45:55 |
| 6 | related to Waymo that you believe was uncovered as a | |
| 7 | result of these efforts. | |
| 8 | A.   All of our efforts against Waymo that I'm | |
| 9 | aware of occurred in public space. | |
| 10 | Q.   And when you say "public space," you're | 16:46:12 |
| 11 | referring to surveillance? | |
| 12 | A.   Yeah, observation. | |
| 13 | Q.   So observation of vehicles? | |
| 14 | A.   Yes. | |
| 15 | Q.   And so you're not aware of any other | 16:46:19 |
| 16 | research activity or surveillance or investigative | |
| 17 | tool that was utilized against Waymo other than this | |
| 18 | physical surveillance of vehicles; is that correct? | |
| 19 | A.   Yeah. | |
| 20 | Q.   So anything that you observed would have | 16:46:32 |
| 21 | been the observation of these vehicles in the public | |
| 22 | space? | |
| 23 | A.   Yes, driving around. | |
| 24 | Q.   And based on that, are you aware of having | |
| 25 | discovered any trade secrets of Waymo? | 16:46:43 |

1  A.  Again, I don't know the definition of                16:46:46
2  "trade secret," but if my previous statement agrees
3  with that, then, yes.
4  Q.  Certainly no one ever told you that they
5  discovered any Waymo trade secrets; is that correct?     16:47:05
6  A.  Correct.
7  Q.  Let me ask you to take a look at the
8  fourth paragraph of this -- on page 625.  The last
9  sentence of the fourth paragraph reads, "Little, if
10 any, protected data or technical information has         16:48:21
11 leaked into the public domain."
12      Do you see that?
13 A.  The last sentence?
14 MR. UMHOFER:  Right there (indicating).
15 BY MR. LYONS:                                             16:48:35
16 Q.  What do you understand the term "protected
17 data" to refer to?
18 A.  If I'm thinking of protected data, I'm
19 thinking of data that is being secured or contained
20 within the entity that owns it.                           16:49:06
21 Q.  Were there any programs in place at Uber
22 to conduct research to see if any protected data had
23 leaked into the public domain?
24 A.  The biggest thing I would -- that I think
25 potentially that could get into an area like that         16:49:32

Page 108

| | | |
|---|---|---|
| 1 | would be we would monitor GitHub, which is a source | 16:49:36 |
| 2 | code repository.  The public GitHub.  We would | |
| 3 | monitor the public Web and -- you know, looking for | |
| 4 | context that would be usually inadvertently dropped | |
| 5 | out of there by an engineer, et cetera. | 16:50:00 |
| 6 |     Q.  Did you ever -- looking at that sentence, | |
| 7 | do you agree that little, if any, protected data or | |
| 8 | technical information regarding Waymo has leaked | |
| 9 | into the public domain? | |
| 10 |     A.  To the best of my knowledge, we've never | 16:50:31 |
| 11 | run across any -- anything that I would consider | |
| 12 | protected data through something like our GitHub | |
| 13 | public monitoring or web scraping. | |
| 14 |     Q.  Let me ask you to turn to page 627. | |
| 15 | Actually, just for context, please turn to 626.  And | 16:50:55 |
| 16 | you'll see this references is a two-prong collection | |
| 17 | method.  Prong 1 is "Establish and maintain the | |
| 18 | baseline."  And 2 refers to "Internal resources." | |
| 19 |     And then, under 2, it says, "In order to | |
| 20 | build the subject matter expertise necessary to | 16:51:23 |
| 21 | drive collection, SSG would like to meet on a | |
| 22 | semi-routine basis with our own AV experts at | |
| 23 | Iden I, Iden J, and elsewhere." | |
| 24 |     Do you know who those companies are? | |
| 25 |     A.  I don't know if they are -- if they are | 16:51:37 |

Veritext Legal Solutions
866 299-5127

```
 1          FEDERAL CERTIFICATE OF DEPOSITION OFFICER
 2
            I, ANRAE WIMBERLEY, CSR NO. 7778, do hereby
 3    declare:
 4          That, prior to being examined, the witness
      named in the foregoing deposition was by me duly
 5    sworn pursuant to Section 30(f)(1) of the Federal
      Rules of Civil Procedure and the deposition is a
 6    true record of the testimony given by the witness;
 7          That said deposition was taken down by me in
      shorthand at the time and place therein named and
 8    thereafter reduced to text under my direction;
 9          --X---   That the witness was requested to
      review the transcript and make any changes to the
10    transcript as a result of that review pursuant to
      Section 30(e) of the Federal Rules of Civil
11    Procedure;
12          -----    No changes have been provided by the
13    witness during the period allowed;
            -----    The changes made by the witness are
14    appended to the transcript;
15          -----    No request was made that the
      transcript be reviewed pursuant to Section 30(e) of
16    the Federal Rules of Civil Procedure.
17          I further declare that I have no interest in
18    the event of the action.
            I declare under penalty of perjury under the
19    laws of the United States of America that the
20    foregoing is true and correct.
            WITNESS my hand this 26th day of December,
21    2017.
22
23
                     Anrae Wimberley
24
25          ANRAE WIMBERLEY, CSR NO. 7778
```

Page 145