# EXHIBIT F
# FILED UNDER SEAL

**Patrick Schmidt**

| | |
|---|---|
| **From:** | Andrea P Roberts |
| **Sent:** | Thursday, December 28, 2017 9:25 AM |
| **To:** | John Cooper; 'Gonzalez, Arturo J.'; Jocelyn Ma |
| **Cc:** | Matthew Cate; UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit@bsfllp.com; Uber-sg@LISTS.SUSMANGODFREY.COM; QE-Waymo |
| **Subject:** | RE: Waymo v. Uber: 12/27 Meet and Confer Summary |

Sylvia and John,

As a follow up to our discussion on yesterday's meet and confer regarding Waymo's request that Uber provide a full privilege log by January 3, and in advance of today's meet and confer, we propose the following:

- We will identify a set of redacted documents that we would like John to review in camera.  We are still finalizing that list and will provide it today, but expect that it will be between 275-300 documents.
- Uber will make available to John all of the documents withheld as privileged from Clark and Sullivan's files and John will review in camera a random selection of 200 documents from each to determine if Uber is properly withholding documents as privileged.
- Uber will make available to John all of the documents withheld as privileged, regardless of custodian, and John will review in camera a random selection of 200 documents to determine if Uber is properly withholding documents as privileged.

If John determines, based on his review, that Uber's privilege calls—both for redactions and withheld documents—are legitimate, then Waymo will not pursue a full privilege log for the documents produced in this latest round of discovery.  If, however, John determines that documents are being improperly withheld, then John will direct Uber to immediately produce any improperly withheld documents.  The parties will then promptly meet and confer to address what further action is appropriate, whether it be a log of remaining documents, or further in camera review of the remaining documents.  The parties agree that further motion practice would be allowed after December 29 while the parties are working this out and that John should confer with Judge Corley to make sure this is acceptable.

Thanks,
Andrea

---

**From:** John Cooper [mailto:JCooper@fbm.com]
**Sent:** Thursday, December 28, 2017 9:15 AM
**To:** 'Gonzalez, Arturo J.' <AGonzalez@mofo.com>; Jocelyn Ma <jocelynma@quinnemanuel.com>
**Cc:** Matthew Cate <MCate@fbm.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit@bsfllp.com; Uber-sg@LISTS.SUSMANGODFREY.COM; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo v. Uber: 12/27 Meet and Confer Summary

Counsel

As a reminder, we will meet and confer regarding outstanding issues this morning at 10:00 am as we scheduled during yesterday's call.  Call in 888 759 6039 access 415 954 4410.

John

**From:** Gonzalez, Arturo J. [mailto:AGonzalez@mofo.com]
**Sent:** Wednesday, December 27, 2017 5:27 PM
**To:** Jocelyn Ma
**Cc:** Cooper, John (19) x4410; Cate, Matthew (20) x4469; UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit@bsfllp.com; Uber-sg@LISTS.SUSMANGODFREY.COM; QE-Waymo
**Subject:** Waymo v. Uber: 12/27 Meet and Confer Summary

John,

Note some brief comments on some of the items below. Overall, we should be preparing fort trial, and not responding to requests for information that is either irrelevant, disproportional to the narrow reopening of discovery, or both.

If Waymo persists, they will almost certainly have to file a motion. In light of the holiday, we should be given a reasonable opportunity to respond.

Arturo

Sent from my iPad

On Dec 27, 2017, at 4:38 PM, Jocelyn Ma <jocelynma@quinnemanuel.com> wrote:

> **- External Email -**
> _____
>
> John and Counsel –
>
> Below is a summary of what we discussed on our meet and confer earlier this morning.
>
> 1.   Parties confirmed that the deadline for discovery was last Friday, December 22 and that the final day for filing discovery motions is this Friday, December 29.
>
> 2.   Regarding James Judah's 12/26 email about Ms. Padilla's waiver of privilege during her deposition regarding the topics of the Jacobs mediation, the Jacobs investigation, the IGI project, and the ███████ investigation, the Special Master expressed that it was his belief that once Ms. Padilla testified in part about those events, the entirety of the event is discoverable.  Waymo stated its position that there was extensive testimony about the subject matter of these topics, well beyond what would be on a privilege log, and therefore Uber had effected waiver.  Uber was not prepared to address the privilege waiver issue, saying that Mr. Gonzalez was closest to the issues relating to Ms. Padilla's testimony and he was not on the call.  Uber's counsel further stated that it did not believe that the parties would reach an agreement as it denied any notion that there had been a waiver.  The Special Master scheduled a meet and confer for Thursday at 10 a.m. to discuss these issues.

It is unclear exactly what the scope of the purported waiver is here. Waymo needs to clarify its position. Is it saying, for example, that what was said by the mediator has been waived, or something else? In any event, allegations of waiver of privilege should be fully briefed and we need ample opportunity to respond to whatever motion Waymo intends to file.

The IGI issue is irrelevant. It was never implemented, and is beyond the narrow scope of the issues we are supposed to be addressing. We should be preparing for trial, not digging for more dirt.

3. Regarding the second category of unproduced documents identified in James Judah's 12/26 email – over which Uber had not claimed privilege – about attorney-client privilege presentations and communications between Jacobs and Uber IT personnel, Ms. Rivera reiterated that her team had not had the chance to discuss these issues yet. The Special Master requested that Uber go through each of the topics laid out in James Judah's email and have someone ready to respond on a meet and confer at 10 a.m. tomorrow. The Special Master also requested that Uber produce any documents it was willing to produce before 10 a.m. tomorrow. Uber did not commit to doing so but stated it would look into the issue today.

Uber has produced the four presentations by Clark, who is the lawyer accused of providing improper guidance on training. What is the basis for asking for training provided by others? There is no evidence that anyone else has provided improper training. John, the testimony from Salle Yoo and Angela Padilla is that former Google employees have infected Uber with bad habits regarding the assertion of privilege. If anyone should be producing more information on training regarding the assertion of privilege, it is Waymo and Google. Uber has complied with its obligations here. Waymo's insistence that we give the pm more is merely fishing.

4. On the evening of Friday, December 22, Uber served two documents: a list of personnel with Wickr or similar self-deleting communication systems, and an inventory of employees who have used non-attributable devices. However, Judge Alsup had ordered Uber to provide these inventories by December 4 at noon. Waymo noted that the late production was relevant to the December 21 30(b)(6) deposition of Randy Haimovici yet they had not been served until the evening after his deposition. Mr. Haimovici had testified that no one in ATG uses non-attributable devices, yet one of the additions to the non-attributable device inventory was ████████████, who is part of Uber ATG. Uber responded that the supplemental information was based on additional discussions with individuals and additional document review, and that ████████████ was a recent transfer to ATG and "does not have a non-attributable device or use a non-attributable device in his role at ATG." Additionally, Waymo noted that the new inventories did not include the group or division that each employee worked in, which was information that had been included on the initial list of personnel with Wickr or similar self-deleting communication systems, and requested that information for the supplemental entries. Uber argued that the Court had not ordered it to provide that information. Ms. Roberts responded that because Uber provided this information initially, Waymo did not serve an interrogatory seeking this information. Since Uber waited until Friday night before serving supplemental lists that did not include identification of the group or department for each employee, Waymo did not have an opportunity to serve an interrogatory directed at the additional employees. The Special Master noted that Waymo's request was reasonable and ordered that Uber report back tomorrow at 10 a.m. after discussing internally.

5. Waymo had previously requested on 12/21 that Uber confirm it had conducted a reasonably diligent search for any prior versions of the document UBER00342067 and/or explain why earlier versions of the document were no longer in existence. Uber responded that the document was a link contained inside an email to a live document. Uber had produced the document located at that link but because the file had been edited over time, there were no additional versions to produce. Uber confirmed that it had tried to find other versions that may have been sent as an attachment but has not yet found one. Additionally, Waymo requested clarification as to the two title pages in the document given that data followed only the second page dated 3/14/16 and not the first page dated 3/28/16. Sylvia noted she was certain that Uber had investigated into the issue but would try to double check with the team and respond by 10 a.m. tomorrow.

6. Similarly, Waymo had requested on 12/21 that Uber explain why Mr. Jacobs stated as his deposition that he was shown a different version of the "lawyer dog" presentation that had been produced to Waymo by Uber, identify any other versions of the document UBER00340305, and produce the version shown to Mr. Jacobs in 2016 or explain why it was no longer in existence. Uber responded that it produced four versions of the "lawyer dog" presentation: UBER00340305, UBER00340331, UBER00340360, and UBER00340391. Uber also stated that

Mr. Jacobs testified that the presentation he was shown did not have an Uber logo on it, which Uber has not been able to locate.  Additionally, Mr. Clark testified that he never created a presentation that did not contain the Uber logo.

Waymo claimed that we had only produced one version of the Clark power point. We have produced four and have identified them by Bates number.

7.  In the third point of Waymo's 12/21 email, Waymo had requested documents relating to "Vendor 1" referenced in UBER00336627 regarding collection plans. Uber responded in a 12/26 email that Vendor 1 was never hired by Uber, but such a response did not sufficiently address the request as Waymo asked for documents relating to Vendor 1 regardless of whether Vendor 1 was ultimately hired by Uber.  On the call, Uber stated that "there is no Vendor 1" based on Uber's search and inquiry, and that there was no entity behind Vendor 1 because Vendor 1 was not a code name for an actual company.  Although Uber would not confirm that there were no unproduced documents that reference Vendor 1 or what Vendor 1 was contemplated to be, Uber suggested that there was nothing else to produce regarding the matter to the extent it related to competitive intelligence performed on Waymo/Google.  Waymo pointed out that Uber's caveated responses were inadequate because Waymo had requested all documents about who or what Vendor 1 was regardless of whether Vendor 1 was ever hired to actually do the work or whether any vendor was retained to do such competitive intelligence work.  Waymo argued that such a response left open the question of whether a vendor was actually discussed and what documents exist contemplating such a vendor.  The Special Master suggested that "Vendor 1" described a hypothetical company, and Sylvia confirmed that that was her understanding but stated she would confirm with her team.  Waymo clarified that it was requesting any documents about what was contemplated regarding Vendor 1, *regardless of whether Vendor 1 was hired or whether they actually did any surveillance at Google*.  The Special Master noted that was a reasonable request and ordered Uber to include it in its search.

8.  Waymo's understanding, based on deposition testimony, is that the intelligence reports prepared by Uber's SSG division were stored on an off-Uber site called NextCloud and on Dropbox for a period of time. Nick Gicinto testified that when those storage sites were discontinued, he downloaded the reports to a thumb drive and saved them to his local hard drive.  Waymo requested that Uber confirm it has completed a search for responsive intelligence reports included in these sources where Mr. Gicinto testified they would be. Uber refused to confirm its search included these specific sources.  Uber argued it was concerned about waiving privilege by discussing these issues, but indicated that it was aware that these locations would be ones that would contain responsive information and that it had not excluded from its search any locations that it believed would be likely to contain responsive information.  Waymo and the Special Master both noted that they did not think Uber's discussion of its search would constitute a waiver of privilege on a meet and confer call. Uber noted that it had produced everything that was non-privileged and anything about intelligence reports on Waymo.  Waymo requested that Uber confirm its search specifically included NextCloud, Dropbox, and the thumb drive that Mr. Gicinto had used to take information off of those websites. The Special Master ordered MoFo to provide a statement that as responsible attorneys, they have looked at the places that would include these documents and – to the extent that they can – state specifically that they have looked at NextCloud, Dropbox accounts, and the thumb drive.

9.  Waymo has received a document that lines up code names against actual names of competitors.  Mr. Gicinto testified that there is another document that identifies additional code names, and Waymo asked that Uber produced that document.  Uber stated it had not yet had a chance to look into this issue but would do its best to respond by 10 a.m. tomorrow.  The Special Master reminded Uber that it had to provide enough information to permit Waymo to make a determination about filing a motion.

10.  Uber confirmed that all of the documents served in Friday evening's production were documents responsive to Judge Corley's 12/27 Order.  Uber confirmed that the accompanying privilege log accounted for all documents,

whether redacted or withheld entirely, over which Uber was claiming privilege.  Uber represented that the documents it had provided to the government were coextensive with the documents that Jacobs had placed on a thumb drive.  Uber represented that entries 1-4 on its privilege log were documents that were provided to the government with redactions identical to those on the documents produced to Waymo.  Uber further represented that entries 24-25 were documents that were withheld entirely from the government and were also being withheld entirely from Waymo on grounds of privilege.  Thus, Waymo understands that there were no documents or content provided to the government that were not also provided to Waymo.

11.  During Uber's examination of Craig Clark at his deposition, Uber used a document that was not produced to Waymo until the evening following his deposition.  Uber explained that the document was one that Mr. Jacobs had stolen from Uber and thus was queued up for production that Friday night.  Martha Goodman, counsel representing Uber at the deposition, provided Waymo counsel with the document at the deposition.  Waymo reserved all rights on this issue given its position that it was improper for Uber to examine witnesses with unproduced documents.

12.  Waymo expressed concern regarding Uber's inconsistent approach to redactions of documents based on privilege.  As just one example, on multiple documents where the same email appeared several times as further emails were propagated in a chain, Uber redacted an email in one document but did not redacted that exact same email in a different document. Waymo requested an explanation regarding these discrepancies.  Further, Waymo noted that given the fact that Uber produced an additional 100 non-privileged documents after it was forced to actually state its privilege assertions in a log for Ms. Padilla's communications per Judge Corley's order – which is well over 10% of the 749 entry log – Waymo believes that many of the documents Uber has claimed privileged over cannot actually sustain such an assertion. Waymo explained that both Uber's inconsistent redactions and Uber's inexplicable 100-document production post-Padilla privilege log strongly reinforces a need for not only a full privilege log for all documents but also an *in camera* review of documents by either the Special Master or Judge Corley.

Uber argued that due to the nature of email chains, it is a matter of "almost virtual certainty" that when email chains appear multiple times over, there will not be identical redactions every time because not one person is reviewing all emails.  Uber also argued that this inconsistency was a non-issue because it was only one example, and because Waymo actually possessed the unredacted version of the email even if it was marked as redacted in one document.  Waymo explained that the fact that it had the unredacted version of the email was irrelevant because the issue was that the inconsistency implicated whether everything else Uber has withheld as privileged was properly withheld.  Uber also argued that it had been very forthcoming, especially because the example email was one between Salle Yoo, general counsel for Uber at the time, and Susan Muck, outside counsel to Uber's Board of Directors.  When Waymo asked whether Uber was now clawing back the email based on privilege, Uber denied that it was doing so, but said it would need additional time to determine whether the email was in fact privileged or not.

Additionally, Uber suggested that it had been making some very difficult privilege calls.  Waymo proposed that one solution to such a situation would be to have the documents reviewed *in camera*, just as Waymo did when there was a similar dispute about documents Waymo withheld as privileged.  Uber noted that there were approximately 4,000 documents being withheld for privilege, and the Special Master suggested that Waymo identify a subset substantially smaller than 4,000 documents and a procedure in which this issue could be resolved depending on how many documents contained inconsistent redactions.  Waymo stated that it could certainly go through and identify suspicious redactions, but only a full privilege log and *in camera* review would solve the second issue of Uber improperly withholding documents.  Uber stated that it would talk to its client about whether it would do either a full privilege log or alternatively something less than a full privilege log and suggested both parties give thought to an alternative.  The Special Master noted that this issue would be discussed on tomorrow's meet and confer and also ordered Uber to respond to Waymo's inquiry as to whether Uber would be clawing back the email with inconsistent redactions.

With thousands of documents being redacted and produced on very short notice, it is not surprising that there may be some inconsistencies. Waymo should identify the specific redactions that it is referring to. We will promptly review those documents. It may be that one of the documents should have had an additional redaction. But Waymo bears the burden of identifying redactions that it believes are suspicious.

13. Waymo requested that Uber respond fully to Waymo's interrogatory asking for identification of all Uber employees who were aware of the Jacobs email or letter.  In response, Uber provided a list of employees who had *received* the documents.  On the call, Uber argued that it provided a response that was specific and non-ambiguous because being "aware of" the documents was a vague and amorphous concept.  Waymo argued it was entitled to know if there were employees who knew of the documents but never received them. The Special Master ordered Uber to provide this information or at least make an inquiry into the request.

John, we have done enough here. We have identified the people who received the documents and Waymo has taken many of their depositions, asking detailed questions about who knew what when. What they seek now is vague, overbroad, and disproportional.

14. Regarding Uber's request for production of the self-driving car forms that Waymo employees fill out when they encounter another autonomous vehicle on the road, Waymo responded that the information filled out on the form automatically populates into the spreadsheets that Waymo has already produced.  Therefore, there are no separate forms to produce besides the blank one that Waymo has provided Uber for reference.  Waymo has produced all responsive documents to all requests regarding this matter.

15. The parties exchanged information regarding ephemeral chat applications used and their default settings.  Uber provided such information in an email; however, Jim Baker requested last week that Uber provide the information in admissible form.  Arturo Gonzalez had replied suggesting that the parties chat after the holidays about a mutual exchange of such admissible information. On the call, Waymo noted that it had already provided Uber with such information in admissible form in a formal notice that was filed as required by the Court on December 4 and thus requested that Uber do the same. Sylvia noted that she was not aware Uber was under an obligation to provide such information in an admissible form but that she would check with her team and have an answer by tomorrow at 10 a.m.

It is not at all clear that what Waymo provided is in admissible format. Is Waymo willing to stipulate to an order that it's submission is admissible at trial? Any exchange here has to be reciprocal.

=====================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

_____

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP