QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S PRÉCIS IN SUPPORT OF ITS REQUEST TO FILE A MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING UBER'S INVESTIGATION INTO MR. JACOBS' ALLEGATIONS**<br><br>Judge: The Honorable William Alsup<br>Trial Date: February 5, 2018 |

01980-00104/9807225.1

Plaintiff Waymo LLC ("Waymo") submits this précis requesting permission to file a motion *in limine* to preclude Uber from introducing evidence or argument regarding its investigation and/or evaluation of the merits of the allegations in Richard Jacobs' May 5, 2017 letter to Angela Padilla (the "Jacobs Letter"). Uber has once again improperly used the privilege as both a sword and a shield. During the latest round of discovery—ordered by the Court in response to the U.S. Attorney's disclosure of the existence of the Jacobs Letter on the eve of trial—Uber witnesses sought to characterize the allegations in the Jacobs Letter with terms such as "fantastical" and "extortion." However, when Waymo inquired about the details of Uber's lengthy investigation into Mr. Jacobs' allegations, Uber and its witnesses repeatedly hid behind the attorney-client and work-product privilege, blocking Waymo from obtaining evidence to test Uber's characterizations of Mr. Jacobs' allegations. Similarly, although Uber asserted a "mediation" privilege over certain of the Jacobs mediation materials, Uber and its counsel affirmatively used or volunteered other communications that would seemingly fall within that same privilege. This Court should accordingly preclude Uber from introducing any evidence or argument regarding Uber and its counsel's or the mediator's investigation or evaluation of the merits of Mr. Jacobs' allegations.

## BACKGROUND

Since the Jacobs Letter and allegations therein were revealed to the Court and Waymo, Uber has repeatedly sought to minimize Mr. Jacobs' claims. Uber witness Angela Padilla initially claimed that Mr. Jacobs' allegations were "fantastical" (11/29/17 Hr'g Tr. at 17:16-21), and that Mr. Jacobs was an extortionist trying to extract a quick payday (*id.* at 31:1-21). In deposition, Ms. Padilla testified about communications with mediator Tony Piazza and volunteered that he and Uber's counsel were "█████████████████████████████████████████████████████████████████████████████████████████.'" (Padilla 12/22/17 Depo., 145:20-25.) Uber's counsel, Arturo Gonzalez, similarly implied at the parties' December 12 hearing before Special Master Cooper—which was before Ms. Padilla's deposition—that there was information beneficial to Uber that came out at the mediation, explaining:

> [Ms. Padilla] didn't go to [the U.S. Attorney with the Jacobs Letter] because she thought that there was damning evidence against Uber, or because it showed that we stole Waymo trade secrets. She said quite the contrary. She didn't believe that.

> And if she had – if she had been asked more questions about what was said at the mediation, you would have gotten more information about why she does not believe strongly that this has anything to do with us stealing stuff.

(12/12/17 Tr. of Hr'g Before Special Master Cooper, 101:19-102:3.) Ms. Padilla further claimed in deposition that Mr. Piazza told Uber: "█████████████████████████████████████" (Padilla 12/22/17 Depo., 147:9-14, 165:17-166:10, and 167:2-17.) She also repeatedly testified that she knew that most of Mr. Jacobs' allegations were "█████" and "███" *(see, e.g., id.* at 141:23-142:10; 228:22-230:11) based on, *inter alia*, ██ █████████████████████ *(id.* at 229:10-15), as well as ███████████████████████████ *(id.* at 229:16-22). Ms. Padilla also affirmatively relied on these interviews to assert that ████ ██████████████████████ *(id.* at 203:15-205:20).

However, when Waymo sought discovery about the Jacobs investigation, and what Uber's months-long investigation determined about the Jacobs allegations, Uber repeatedly objected. Ms. Padilla was instructed not to answer many questions regarding the details of Uber's investigation. (*See e.g.*, Padilla 12/22/17 Depo., 213:21-214:3 (instructing Ms. Padilla not to answer questions regarding "████████████████████" based on attorney-client privilege); *id.* at 225:16-24 (████████████████████████ █████████); so were several other Uber witnesses. (*See e.g.*, Joe Spiegler 12/22/17 Depo., 89:6-22 (refusing to answer whether he has personal knowledge of the veracity or substance of the allegations in the Jacobs letter); *id.* at 191:22-192:10 (██████████████████████ ██████████████████████); Sidney Majalya 12/20/17 Depo., 146:23-147:7 (instructing witness not to answer any questions regarding "actions taken by Wilmer Hale to investigate [Jacobs' allegations] and the substance of the investigation"); *id.* at 139:16-139:25 (Majalya explaining he was "instructed not to respond" to questions regarding the Jacobs investigation); *id.* at 49:23-50:5 (refusing to discuss the use of nonattributable devices at Uber); Salle Yoo 12/14/17 Depo., 247:24-248:5 (refusing to answer whether the the Jacobs investigation ████████████████

██████████); *id.* at 253:9-23 (refusing to answer whether Ms. Padilla was ██████████).[1]

With respect to mediation communications, such as the mediation statements submitted by either side or written communications with Mr. Piazza, Uber invoked the mediation privilege. (12/29/2017 S. Rivera email) ("Uber does not believe that Ms. Padilla's deposition testimony effected a waiver of the mediation privilege"). On that basis, Uber withheld an unknown volume of documents related to the mediation, including at least mediation statements, presentations made at the mediation, and communications with Mr. Piazza.

## ARGUMENT

The propriety of Uber's privilege assertions are irrelevant to this precis, and Waymo does not challenge them at this time. Uber is not, however, entitled to use privilege as both a sword and a shield; it cannot rely at trial on its investigation and/or evaluation of the merits of the allegations in the Jacobs Letter, having refused to provide Waymo with the necessary information to evaluate those assertions. The Court should therefore preclude Defendants from presenting evidence or argument regarding their investigation and/or evaluation of the merits of Mr. Jacobs' allegations, as well as any comments purportedly made by the mediator.

Uber has repeatedly attempted to use privilege as both a sword and a shield in this litigation. Early in the case, the Court gave Uber a deadline of June 1 to waive privilege if it was going to do so. (Dkts. 438, 447.) Uber chose not to do so. (Dkt. 531.) Nevertheless, Uber continues to try to rely on privileged information when it suits Uber's purposes. Sometimes Uber's selective disclosure resulted in waiver. (Dkt. 1506). In other instances, it was remedied by preclusion. (Dkt. 1172 (holding that Defendants cannot selectively waive privilege with respect to Anthony Levandowski's reasons for pleading the Fifth Amendment, and noting that "[u]nder Uber's theory all a party would have to do is cherry pick the communications they want the opposing party to see and identify those as not privileged, all the while being able to shield other not so favorable communications from disclosure even if they are about the very same topic by claiming those communications privileged.

---

[1] Additional examples of Uber witnesses' hiding behind privilege are readily available.

The law of privilege is not that unfair."); Dkt. 1267 (denying motion for relief from Magistrate Judge's Order regarding same).)  This Court characterized Uber's attempt to shroud conversations in the attorney-client privilege by having an attorney present for conversations, but then relying on those conversations that are helpful to Uber, a "slick practice." (Dkt. 1267.)  Other courts similarly preclude parties from using privilege as a sword and shield at the *in limine* stage. *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (affirming district court's *in limine* ruling prohibiting defendant from using attorney-client communications as both a sword and a shield); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 576 (1st Cir. 1989) (affirming district court's decision to bar defendant from testifying at trial due to his previous refusal to testify during discovery); *Galaxy Comp. Serv'cs, Inc. v. Baker*, 325 B.R. 544, 559 (E.D.Va. 2005) (granting motion *in limine* to prevent witness from testifying about issues she refused to answer during her deposition on attorney-client privilege grounds); *Engineered Prods. Co. v. Donaldson Co., Inc.,* 313 F.Supp. 2d 951, 1022–23 (N.D. Iowa 2004) (barring plaintiff from introducing testimony at trial on issues it prevented defendant from exploring during deposition by invoking the attorney-client privilege).  Uber cannot, for example, pick and choose when the Jacobs investigation's details are protected by privilege on the one hand, yet on the other hand reveal information when it is helpful to Uber.  Uber similarly cannot pick and choose purported comments from the mediator about the claims, but withhold communications with the mediator about the claims.  Instead, the information should be excluded altogether.

Allowing Uber to characterize the merits of Mr. Jacobs' claims based on their investigation and/or evaluation of the merits of the allegations in the Jacobs Letter would also prejudice Waymo. Under FRE 403, evidence should be excluded if its probative value is substantially outweighed by a danger of "confusing the issues" and "wasting time."  Here, if admitted, the jury could be confused about why it is hearing about the Jacobs Letter and an investigation that took place, but not the details or results of the investigation.  The parties would need to waste time explaining to the jury why it will not hear all about the investigation: Uber's privilege assertions.

## CONCLUSION

For the foregoing reasons, Waymo requests leave to file a motion *in limine* on this issue.

DATED: January 17, 2018

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles Verhoeven*
    Charles Verhoeven
    Attorneys for WAYMO LLC