IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; and OTTO<br>TRUCKING LLC,<br><br>    Defendants. | No. C 17-00939 WHA<br><br>**ORDER RE JURY<br>INSTRUCTION ON<br>DAMAGES BASED<br>ONLY ON ACQUISITION** |

## INTRODUCTION

In this action for trade secret misappropriation, no recovery theory will go to the jury for damages based solely on misappropriation by acquisition only. This order explains why.

## STATEMENT

After two continuances of the trial date and in advance of the third final pretrial conference, the judge asked the parties the following questions (Dkt. No. 2404):

> Do both sides agree that acquisition alone can be enough to support an unjust enrichment award under both CUTSA and DTSA? The Court had understood that Waymo's unjust enrichment theory in our case depended on use or disclosure. Has Waymo preserved an unjust enrichment theory based on acquisition alone?

Both sides responded and had an opportunity to respond to each other's briefs. After considering the parties' written submissions, this order concludes Waymo failed to preserve a damages theory based on acquisition alone. Accordingly, the jury will be instructed, in effect,

that while acquisition alone can legally support a damages claim, Waymo is precluded from relying on such a theory by reason of its failure to preserve it.

## ANALYSIS

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires a party to provide "a computation of each category of damages claimed." FRCP 37(c)(1) prohibits a party from using at trial information not properly disclosed under FRCP 26(a) "unless the failure was substantially justified or is harmless."

Here, both sides agree that, as a general proposition of trade secret law, acquisition *alone* (as distinct from acquisition followed by use or disclosure) can support a claim for damages (Dkt. Nos. 2406-2 at 1, 2405 at 1). They disagree, however, as to whether or not Waymo actually preserved a damages theory based on acquisition alone. Waymo cannot point to a single place amidst all the myriad submissions in this action, including in its initial disclosures, where it did. Nor has Waymo shown that its failure to disclose an acquisition-only damages theory was substantially justified or is harmless. Its numerous arguments in briefing on this issue fail to come to grips with this simple fact.

*First*, Waymo points out that its corrected supplemental initial disclosures and the parties' joint pretrial order identified no specific theory of damages (Dkt. Nos. 2406-2 at 1, 2411-3 at 9). Thus, Waymo reasons, there are no limits on what theories it may assert, including one based solely on acquisition. Insofar as Waymo suggests the parties' joint pretrial order somehow supersedes and cures any deficiencies in its initial disclosures under FRCP 26(a), it cites no authority and this order rejects the suggestion. In addition, merely showing that Waymo did not explicitly rule out the possibility of an acquisition-only damages theory does not further show that Waymo ever articulated, disclosed, or preserved any such theory.

*Second*, Waymo contends mere acquisition can confer "improper competitive benefits" beyond actual use of trade secret information (*see* Dkt. Nos. 2406-2 at 2, 2411-3 at 7–9). This general proposition is true as far as it goes, but Waymo has identified no such theory against defendants here. Waymo points to its responses to defendants' interrogatory numbers 13 and 28, wherein Waymo asserted that only the value of its misappropriated trade secrets could

2

explain Uber's acquisition of Otto (*see* Dkt. Nos. 2406-2 at 2–3, 2411-3 at 8–9). In a similar vein, Waymo cites the deposition testimony of John Bares, who agreed that, hypothetically, having access to Waymo's trade secrets would be useful for someone trying to build a medium-range LiDAR system (*see* Dkt. No. 2406-2 at 3–4). Waymo construes this to mean that Uber "saw value in acquiring the trade secrets *even if it never actually used them*" (*id.* at 4 (emphasis in original)). This is a non sequitur. The evidence disclosed and cited by Waymo arguably shows that Uber saw value in acquiring the trade secrets *because it expected to benefit from actually using them*. It in no way shows that Uber believed it would benefit from merely acquiring the trade secrets *even if it never actually used them*.

*Third*, Waymo contends "knowledge of a negative trade secret can also confer benefits apart from 'use'" (*id.* at 4–6). Again, the general proposition is true but fails to support Waymo's position. Of course, a defendant need not copy the underlying technology to use the misappropriated trade secret. For example, a defendant might *use* a negative know-how trade secret by taking its lesson to *avoid* developing apparently fruitless technology. Such theories, however, remain grounded in defendants' alleged *use* of trade secrets — not mere *acquisition*. Thus, contrary to Waymo, it did not preserve an acquisition-only damages theory by alleging that defendants misappropriated negative know-how.

*Fourth*, Waymo claims mere acquisition of trade secrets can "confer unjust benefits through the improper acquisition of control over that information." Waymo quotes extensively from three non-binding decisions for the proposition that there is "real harm to a trade secret owner from loss of control over its property and . . . corresponding real benefits accrue to the misappropriator from gaining such control, regardless of whether the misappropriator actually uses or discloses the underlying information" (*id.* at 6–8). None of the quoted language, however, said anything of the sort. *See Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 53–56 (2014) (explaining why a set of ideas qualified for trade secret protection); *AT&T Commc'ns v. Pac. Bell*, No. C 96-1691 CRB, 1998 U.S. Dist. LEXIS 13459, at *6–7 (N.D. Cal. Aug. 26, 1998) (Judge Charles Breyer) (finding "commercial use" where defendants referenced misappropriated trade secrets but failed to complete their plans to capitalize on

3

them); *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, No. C 13–02403 SI, 2014 WL 466016, at *3 (N.D. Cal. Feb. 3, 2014) (Judge Susan Illston) (denying motion to dismiss misappropriation claim because "the Court [could not] say that there is no set of facts by which [plaintiff] may prove injury"). Waymo's misinterpretation of non-binding authorities aside, its citation to its response to defendants' interrogatory number 28 makes clear that its "loss of dominion" theory remains grounded in defendants' alleged *disclosure*, not mere *acquisition*, of trade secrets (*see* Dkt. No. 2406-2 at 8–9). Again, the problem remains that Waymo failed to preserve a damages theory based on acquisition *alone* (as distinct from acquisition followed by use or disclosure).

*Fifth*, Waymo contends it can sometimes be difficult to draw the line between acquisition and use of trade secret information, and asserts without explanation that there is "little practical difference" in this case (*id.* at 9–10; *see also* Dkt. No. 2411-3 at 1–7). Thus, by its own admission, Waymo seeks a separate jury instruction regarding acquisition-only damages only in the "unlikely event" that it fails to prove disclosure or use (Dkt. No. 2406-2 at 9). No interpretation of this tortured reasoning makes sense. Of course Waymo will be allowed at trial to attempt to prove defendants' acquisition of trade secrets followed by use or disclosure. But if Waymo's acquisition theory is so inextricably bound up in its use and disclosure theories that Waymo did not need to separately disclose the former, then its failure to prove the latter at trial would also prove fatal to the former. If, on the other hand, Waymo's acquisition theory is sufficiently distinct from its use and disclosure theories to warrant a separate jury instruction on acquisition-only damages, then Waymo needed to disclose that theory and its failure to do so necessitates preclusion. Perhaps Waymo hopes that the mysterious option of "acquisition-only damages," untethered to any facts in our case, will sufficiently confuse jurors that they might award Waymo something even if it fails at trial to prove use or disclosure. We will not entertain such a gimmick.

*Sixth*, Waymo points out at length that, under general tort principles, damages can be proximately caused by trade secret misappropriation even without actual, full use of the underlying technology. Thus, Waymo argues, it need not prove that defendants made actual, full use of its trade secrets in order to hold them liable for damages (Dkt. No. 2411-3 at 1–6).

4

Waymo's abstract proposition is true as far as it goes, but its argument attacks a strawman. Defendants do not dispute that it is *generally possible* for a plaintiff to disclose, pursue, and preserve a damages theory based on something other than actual, full use of misappropriated trade secrets. Defendants' point is that *Waymo has not done so here*. This order agrees.

*Seventh*, Waymo suggests the Court already rejected defendants' arguments on this issue because a previous order dated November 2, 2017, denied their motion to strike Waymo's initial disclosures (*id.* at 10–11). That order excluded Waymo's damages expert, restricted its ability to use certain financial evidence at trial, and then stated, "With the benefit of Waymo's full damages theory and the foregoing rulings, this order finds that no further relief is necessary under these circumstances to remedy any shortfalls in Waymo's initial disclosures" (*see* Dkt. No. 2176 at 16). As defendants point out, the "full damages theory" espoused by Waymo's damages expert and considered by the November 2 order contained no acquisition-only component. Nor did that order, in declining to award relief above and beyond the exclusion of Waymo's damages expert and the restriction of its ability to present financial evidence at trial, somehow bless the adequacy of Waymo's initial disclosures. Waymo's suggestion to the contrary is unfair.

In summary, throughout this litigation the only discernible damages theories preserved by Waymo have been grounded in defendants' alleged use or disclosure of trade secrets. These theories reference acquisition only insofar as it forms a logical prerequisite to use or disclosure. Waymo has never disclosed any theory as to acquisition-only damages, nor has it given the Court or defendants any reason to think it was pursuing any such theory (*see* Dkt. No. 2404 ("The Court had understood that Waymo's unjust enrichment theory in our case depended on use or disclosure.")). Even in briefing on this very issue, Waymo could not articulate any acquisition-only damages theory based on the facts of our case (as opposed to generic legal principles and vague attorney arguments). This order concludes Waymo failed to disclose an acquisition-only damages theory as required by FRCP 26(a) and is precluded from asserting any such theory at trial under FRCP 37(c)(1). The jury instruction will conform to this holding.

What seems to be going on here is that this civil action began with vehement accusations that Uber had stolen Waymo's alleged trade secrets and used them to jump-start Uber's own LiDAR development for its competing self-driving car program. Yet subsequent discovery and inspections, Uber contends, failed to reveal much, if any, such use. Now, Waymo seeks to fall back to the contingent argument that even if Uber did not use the trade secrets, Uber still stole them and should pay. The problem remains, however, that Waymo did not put Uber on notice of this fallback position and Uber has not had a fair opportunity to organize its defenses around this amorphous possibility. Consequently, Waymo must be held to prove its showcase contention — that Uber used or disclosed Waymo's alleged trade secrets.

**IT IS SO ORDERED.**

Dated: January 18, 2018.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE