QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                    Plaintiff,<br><br>        vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>                    Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**DECLARATION OF FELIPE CORREDOR IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL THEIR RESPONSE TO WAYMO'S PRECIS IN SUPPORT OF ITS REQUEST TO FILE A MOTION FOR RELIEF BASED ON DEFENDANTS' LITIGATION MISCONDUCT** |

I, Felipe Corredor, declare as follows:

1. I am an attorney licensed to practice in the State of California and am admitted to practice before this Court. I am an associate at the law firm Quinn Emanuel Urquhart & Sullivan, LLP, counsel for the Plaintiff Waymo LLC ("Waymo"). I have personal knowledge of the matters set forth in this Declaration, and if called as a witness I would testify competently to those matters.

2. I make this declaration in support of Defendants' Uber Technologies, Inc. and Ottomotto LLC's Administrative Motion to File Under Seal Their Response to Waymo's Precis in Support of Its Request to File a Motion for Relief Based on Defendants' Litigation Misconduct (the "Administrative Motion"). The Administrative Motion seeks an order sealing highlighted portions of Defendants' Response to Waymo's Precis in Support of Its Request to File a Motion for Relief Based on Defendants' Litigation Misconduct ("Uber's Response") and of Exhibits J and M to the Tapernoux Declaration, as well as the entirety of Exhibits F-H thereto.

3. The portions of Uber's Response and Exhibits F, G, and H, as identified below contain or refer to confidential business information and/or attorney advice, which Waymo seeks to seal.

4. Uber's Response (portions highlighted in green), Exhibit F (portions highlighted in green in version filed herewith), Exhibit G (entire document), and Exhibit H (portions highlighted in green in version filed herewith) contain, reference, and/or describe highly confidential and sensitive business information. The information Waymo seeks to seal regards confidential policies regarding off-the-record communications. I understand that this confidential business information is maintained by Waymo as secret. The public disclosure of this information would give Waymo's competitors access to information about Waymo's business practices. If such information were made public, I understand that Waymo's competitive standing would be significantly harmed.

5. Uber's Response (portions highlighted in green) and Exhibit G (entire document) additionally contain, reference, and/or describe Waymo's confidential attorney advice. The information Waymo seeks to seal regards confidential attorney advice regarding company policy on off-the-record communications. I understand that this confidential information is maintained by Waymo as secret and that it is subject to Waymo's attorney-client privilege and work product protection, which have not been waived, pursuant to the Court's Order Pursuant to Rule 502, Fed. R.

Ev. (Dkt. 2363). The public disclosure of this information would be contrary to the Court's Order. If such information were made public, I understand that Waymo's competitive standing would be significantly harmed by exposure of its confidential legal strategy and advice.

6.      Waymo's request to seal is narrowly tailored to those portions of Uber's Response and Exhibits F, G, and H that merit sealing.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed in San Francisco, California, on January 18, 2018.

By  */s/ Felipe Corredor*
Felipe Corredor
Attorneys for WAYMO LLC

## ATTESTATION

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from Felipe Corredor.

By:  */s/ Charles K. Verhoeven*
Charles K. Verhoeven

# EXHIBIT F

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

---oOo---

WAYMO LLC,

       Plaintiff,


vs.                              No. 3:17-cv-00939-WHA


UBER TECHNOLOGIES, INC.;
OTTOMOTTO LLC; OTTO TRUCKING,

INC.,
       Defendants.
_____/


HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

30(b)(6) VIDEOTAPED DEPOSITION OF SCOTT JOHNSTON

SAN FRANCISCO, CALIFORNIA

THURSDAY, DECEMBER 14, 2017




BY:  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

CSR LICENSE NO. 9830

JOB NO. 2773322


Pages 1 - 107



Page  28

1    communicates via chat, yes.                                    10:05

2         MR. GONZALEZ:  I'm not too good at math.  I'm    10:05

3    doing it in my head.                                          10:05

4                                                                   10:05



                                                              10:05

7         A   It -- it's dependent on what the custom- --    10:05

8    sorry -- what the employee chooses for settings.        10:05

9                                                                   10:05



















                                                              10:06

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1                    CERTIFICATE OF REPORTER

2

3          I, ANDREA M. IGNACIO, hereby certify that the

4    witness in the foregoing deposition was by me duly

     sworn to tell the truth, the whole truth, and nothing

5    but the truth in the within-entitled cause;

6          That said deposition was taken in shorthand

7    by me, a disinterested person, at the time and place

8    therein stated, and that the testimony of the said

     witness was thereafter reduced to typewriting, by

9    computer, under my direction and supervision;

10         That before completion of the deposition,

11   review of the transcript [ ] was [x] was not

12   requested.  If requested, any changes made by the

     deponent (and provided to the reporter) during the

13   period allowed are appended hereto.

14         I further certify that I am not of counsel or

15   attorney for either or any of the parties to the said

     deposition, nor in any way interested in the event of

16   this cause, and that I am not related to any of the

17   parties thereto.

18   Dated: December 15, 2017

19

20

21

22

23   _____

24         ANDREA M. IGNACIO,

25      RPR, CRR, CCRR, CLR, CSR No. 9830


                                              Page 107

# EXHIBIT H

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# IN UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

FUNCTION MEDIA, L.L.C.,

v.

GOOGLE, INC. AND YAHOO!, INC.

Civil Case No. 2:07-cv-279 (CE)

FILED UNDER SEAL

JURY TRIAL DEMANDED

## DECLARATION OF THERESA H. BEAUMONT

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

WAYMO-UBER-00145114

I, Theresa H. Beaumont, hereby declare,

      1.    I have personal knowledge of the facts stated herein.  If called and sworn as a witness, I could and would testify competently thereto.

      2.    I am submitting this declaration in support of Google's Opposition to Function Media's Emergency Motion for Adverse Inference Instruction Regarding Google's Destruction of Evidence.

      3.    I am Discovery Counsel at Google Inc. ("Google"), a role I have occupied since May 2008.  I am responsible for facilitating information-gathering and document collections of electronically-stored information in response to discovery obligations.

      4.    Google provides an internal corporate "chat" network for employees that allows them to communicate with colleagues via instant messages.  These instant messages allow employees to determine whether colleagues are available and engage in informal communications not unlike the texting that takes place on a cell phone.

      5.    An instant message is a real-time dialogue between two or more people. It most closely resembles a telephone or face-to-face conversation.  The conversation usually appears in a small window on a user's computer screen.  The conversation is ephemeral and disappears from view when a user closes the instant messaging window.  Employees often use instant messages for conversations that are purely procedural – <u>e.g.</u>, determining whether a co-worker is free for a call – or completely irrelevant to their work – <u>e.g.</u>, making plans to meet for lunch.

█ ████████████████████████

████████████████████████████

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**                **WAYMO-UBER-00145115**



10.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

WAYMO-UBER-00145116

11.     In this case, Google has produced more than 5 million pages of documents.

12.     I understand that Function Media takes issue with the lack of duplicates of a particular email in Google's document production.  It is standard, widespread, and reasonable industry practice to "de-dupe" electronically-stored information, to the extent possible, to minimize the time, effort and expense of pre-production document review, and to avoid dumping unnecessarily voluminous quantities of documents on the opposing side in litigation.  However, the fact that a particular email was produced from the files of Ms. Wojcicki does not mean that the other copies of that email in other employees' files, including Mr. Brin's files, were not preserved.  As an example, at Google, there are many email aliases, such as ███████ which are akin to a distribution list of numerous Google employees.  During the document collection and review process, Google makes its best efforts to "de-dupe" such identical emails. If Google did not do that, the volume of Google's document productions would increase exponentially, but would be populated with numerous identical duplicate emails.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 15 day of January, 2010 at New York, New York.

_____
Theresa H. Beaumont

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**                    **WAYMO-UBER-00145117**

# EXHIBIT 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    WAYMO-UBER-00145118

Leslie Altherr - 7/30/2009
ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION


FUNCTION MEDIA LLC,

                Plaintiff,

    vs.                      No. 2007-CV-279 (CE)

GOOGLE, INC. and YAHOO!, INC.,

                Defendants.

_____/



       *** ATTORNEYS' EYES ONLY ***


   VIDEOTAPED DEPOSITION OF LESLIE ALTHERR

    30(b)(6) DEPOSITION OF GOOGLE, INC.

            July 30, 2009




Reported by:
Natalie Y. Botelho
CSR No. 9897

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY      WAYMO-UBER-00145119

Leslie Altherr - 7/30/2009
ATTORNEYS' EYES ONLY

Page 40

1    Does Google have any sort of explanation as to why
2    there's been no instant messaging production?
3    A.        A user --
4              MR. WOLFF:  Objection.
5              THE WITNESS:  A user can change their
6    settings to be off the record, which means that the
7    text of the messages are not stored anywhere.
8    They're not logged in the e-mail.  If you're on the
9    record, the text of the IM is stored with the mail.
10   So when we pull the mail from the mail server, you
11   would get those messages.
12             MR. GRINSTEIN:  Q.  Do Google employees,
13   in your experience, in gathering documents for
14   lawsuits, typically do their instant messaging off
15   the record?
16   A.        I can't speak to all of Google and what
17   they do with their instant messaging, and there's
18   no -- it's up to the user.  Instant messaging is
19   really supposed to be used to say, "Hey, are you
20   there?  Did you see my e-mail?"  It's not -- it's
21   for short messages.  I don't know if you text on
22   your phone, but it's the same idea.
23   Q.        What happens to instant messages that are
24   sent off the record after they're sent?  I should
25   be -- that's a bad question.  Let me ask again.

Leslie Altherr - 7/30/2009
ATTORNEYS' EYES ONLY

Page 41

1   How, if at all, are instant messages that are sent

2   by Google employees off the record retained?

3                MR. WOLFF:  Objection.

4                THE WITNESS:  If your setting is off the

5   record, they're not stored in your e-mail.

6   They're -- there's no log of them.

7                MR. GRINSTEIN:  Q.  So once the message is

8   sent, there is no permanent record of the message

9   kept; is that your testimony?

10  A.          If it's off -- if it's off the record.

11  Q.          If it's off the record?

12  A.          Correct.

13  Q.          All right.  If you can turn with me to the

14  page that has Bates Number 633, please.  This

15  document's entitled "EMG Reports."  Do you see that?

16  A.          Yes.

17  Q.          Do you know what the abbreviation "EMG"

18  stands for?

19  A.          "Executive Management Group."

20  Q.          And you see the first bullet point, it

21  says, "What are EMG Reports?  These weekly reports

22  provided the Executive Management Group status

23  updates for the various groups and departments."  Do

24  you see that?

25  A.          Yes.

# EXHIBIT 2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    WAYMO-UBER-00145122

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

--oOo--

FUNCTION MEDIA, L.L.C.,        )
                              )
          Plaintiff,          )
                              )
     vs.                      )  Case No. 2:07CV279
                              )
GOOGLE, INC.                  )
                              )
          Defendant.          )
_____)


DEPOSITION OF

SERGEY BRIN

_____

Thursday, January 14, 2010


**HIGHEST LEVEL OF CONFIDENTIALITY

UNDER PROTECTIVE ORDER**


REPORTED BY: COREY W. ANDERSON, CSR 4096 (425290)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          WAYMO-UBER-00145123

Sergey Brin - 1/14/2010
Highest Level of Confidentiality Under Protective Order

Page 89

1    didn't receive a lot of e-mails from your file.

2    This e-mail is actually from Ms. Wojcicki's files.

3    My question to you would be why we didn't receive

4    this e-mail from your files.

5         A.    I would have to ask the folks who produced

6    this or stuff.  I mean, I imagine that since you

7    already had it -- well, actually, wait a second.

8              Well, this e-mail was only sent to Susan

9    Wojcicki.  The one that it refers to inside was sent

10   to EMG.

11        Q.    Right.

12        A.    Yeah.

13        Q.    Okay.  You do not have a policy of

14   deleting e-mails.

15             Is that right?

16        A.    No.  I can try to search for it for you.

17   But you already have it.

18        Q.    Do you -- well, I'm not particularly

19   worried about this e-mail.

20        A.    Hmm.

21        Q.    I'm worried about the other e-mails that I

22   might not have that were sent to Susan Wojcicki

23   is -- that were not sent to Susan Wojcicki, excuse

24   me.

25             Do you use instant messaging?

Sergey Brin - 1/14/2010
Highest Level of Confidentiality Under Protective Order

Page 90

1        A.    We have a feature in Gmail built in called
2    gmail chat or Google talk -- or Google Talk, sorry.
3    Can't remember how we branded it exactly.
4            But anyway, we have a chat feature built
5    into gmail.
6        Q.    Do you use that?
7        A.    Uh-huh.
8        Q.    The e-mails are stored within Google and
9    gmail, or are they all off the record?
10        A.    Sorry, are you talking about chats?
11        Q.    Yes.
12
13
14
15
16
17
18
19        Q.    You never exchange anything meaningful --
20    let me back up.
21            You have never exchanged anything
22    meaningful by means of instant message conversation?
23        A.    That's a universal, so probably going a
24    little bit overboard.  But chat is generally
25    reserved for, you know, like can you take a look at

Sergey Brin - 1/14/2010
Highest Level of Confidentiality Under Protective Order

Page 91

1    this, where I point to something, you know, point to

2    an e-mail or point to a document or something, or --

3    but that wouldn't typically be the case, I don't

4    know.

5         Q.    Sometimes you would have substantive

6    conversations or take a look at this or relevant

7    issues that would take place by instant message?

8         MR. DeFRANCO:  Objection to form.

9         Go ahead.

10        THE WITNESS:  I -- I don't know about -- I

11   mean, I can't think of an instance of that.  So...

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          WAYMO-UBER-00145126

Sergey Brin - 1/14/201ᴜ
Highest Level of Confidentiality Under Protective Order

Page 92

1

2

3

4

5

6

7

8         Q.    Does Google have a way to search documents

9    electronically over the entire network?

10        A.    Over the entire network?

11        Q.    Yeah.

12        A.    Well, what kinds of documents?

13        Q.    E-mails.

14        A.    Oh, yeah, e-mails we can search, uh-huh.

15   I mean, oh, sorry, we can search all the ones that

16   are stored within gmail.  If somebody is using

17   different e-mails, then that would not have...

18        Q.    And so you can do one, put in a search

19   term and it will search the entire company's

20   e-mails.

21             Is that right?

22        A.    Oh, sorry.

23        Q.    I just want to be sure we are on the same

24   page here so there is no misunderstanding.

25        A.    Okay, I see what you are saying.  Oh.  You

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          WAYMO-UBER-00145127