# EXHIBIT 17

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


Case No. 3:17-cv-00939-WHA
_____

WAYMO LLC,                            )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )
                                      )
UBER TECHNOLOGIES, INC.;              )
OTTOMOTTO LLC;                        )
OTTO TRUCKING,                        )
                                      )
          Defendants.                 )
_____)


HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY


VIDEOTAPED DEPOSITION OF
JAKE NOCON
DATE TAKEN:  DECEMBER 19, 2017







REPORTED BY:

PAUL J. FREDERICKSON, CCR, CSR

JOB NO. 2771324


Pages 1 - 273

Page 56

```
 1    point, but I don't recall them specifically,     10:14:47
 2    anything about them.                              10:14:52
 3         Q.    Are you familiar with whether any      10:14:57
 4    other surveillance was done of Waymo after this   10:15:01
 5    2017 surveillance that you participated in?       10:15:05
 6         A.    I don't -- no, I don't recall          10:15:11
 7    doing any, any other work regarding Waymo.        10:15:13
 8         Q.    Is this surveillance that you          10:15:17
 9    participated in 2017 the only surveillance you    10:15:19
10    did of Waymo?                                     10:15:22
11         A.    I believe so, yes.                     10:15:24
12         Q.    Did you do any other type of           10:15:27
13    investigation or research or work in connection   10:15:33
14    with Waymo at all?                                10:15:38
15         A.    In connection with Waymo?  I'm not     10:15:43
16    sure.  I -- I -- I don't recall Waymo             10:15:50
17    specifically.  There was another instance where  10:15:51
18    we looked at a Google employee.  I'm not sure     10:15:56
19    if there was a tie to Waymo or not.               10:16:00
20         Q.    By the way, let me ask.  Was there     10:16:02
21    a code name given to Waymo at all during your     10:16:04
22    surveillance activity?                            10:16:07
23         A.    There may have been.  I don't          10:16:08
24    recall what it was.                               10:16:15
25         Q.    Okay.                                  10:16:15
```

Page 113

```
 1      designations with the specific intent of        11:52:43

 2      preventing the discovery of devices, documents   11:52:45

 3      and communications in anticipated litigation."   11:52:48

 4                 Do you see that?                       11:52:50

 5           A.    Yes, I see that.                       11:52:52

 6           Q.    Did you discuss ephemeral             11:52:55

 7      communications with anyone on your trip to       11:52:57

 8      Pittsburgh?                                       11:53:09

 9           A.    No, not that I recall.                 11:53:09

10           Q.    Did you discuss nonattributable       11:53:09

11      devices with anyone on your trip to Pittsburgh?  11:53:11

12           A.    No, not that I recall.                 11:53:13

13           Q.    Did you discuss the use of the        11:53:15

14      attorney-client privilege designation on your    11:53:16

15      trip with anyone to Pittsburgh?                   11:53:20

16           A.    No, not that I recall.                 11:53:22

17           Q.    Do you recall when it was that --     11:53:23

18      when the actual launch of the Autonomous Group   11:53:37

19      was?                                              11:53:43

20           A.    Like I mentioned previously, I        11:53:44

21      believe it was September.                         11:53:46

22                 [Sneeze.]                              11:53:49

23                 THE WITNESS:  Bless you.               11:53:49

24           A.    September of 2016.                     11:53:50

25           Q.    Did you receive any written           11:54:05
```

```
 1                      So for purposes of identifying      13:20:18
 2      yourself, to the extent that there were Uber        13:20:23
 3      networks and non-Uber networks, you would --        13:20:27
 4      would categorize this sort of cloud service         13:20:31
 5      device that you used to store your work product     13:20:34
 6      as not an Uber system.                              13:20:37
 7                      Did I understand that correctly?     13:20:41
 8          A.      Yes.  It was misattributable and        13:20:45
 9      not attributable to Uber.                           13:20:46
10          Q.      So how many of these separate           13:20:52
11      cloud storage systems are you aware of being in     13:20:56
12      existence?                                          13:21:01
13          A.      Well, I'm only aware of one I           13:21:05
14      think.                                              13:21:08
15          Q.      Are you aware of any other groups       13:21:08
16      utilizing a cloud storage system that would not    13:21:12
17      be part of the Uber network?                        13:21:17
18          A.      No, I'm not aware.                      13:21:23
19          Q.      So to the extent that there was a       13:21:24
20      cloud storage system that was not part of the       13:21:26
21      Uber network, the only one that you're familiar    13:21:29
22      with is the one that was used by your group at      13:21:31
23      Threat Operations?                                  13:21:35
24          A.      I believe so, yes.                      13:21:37
25          Q.      Let me show you what's been             13:21:37
```

Page 161

```
 1              I thought I had answered it, you know,      13:47:54

 2         to the best of my ability.                      13:47:57

 3              The -- the guidance that we were            13:47:59

 4         given, the approvals that we were given,         13:48:02

 5         you know, was obtained through --                13:48:05

 6         through legal.                                   13:48:06

 7    BY MR. LYONS:                                         13:48:07

 8         Q.    Again, that doesn't -- that               13:48:07

 9    doesn't answer my question or solve the problem       13:48:08

10    that we're having.  I mean, you seem to be            13:48:11

11    equating any communication that you had with a        13:48:13

12    lawyer as being a privileged communication even       13:48:16

13    when you had just told them, I was going to go        13:48:19

14    to the bathroom.  That doesn't necessarily            13:48:22

15    mean --                                               13:48:25

16         A.    No, that's not accurate.                  13:48:25

17              MR. UMHOFER:  Objection.  This is           13:48:27

18         getting argumentative.  Can we figure            13:48:28

19         out a way to tone this down?                     13:48:30

20         A.    That -- that's not accurate.  I do        13:48:32

21    not -- based on my understanding of, you know,        13:48:33

22    when I was instructed on the use of                   13:48:39

23    attorney-client privilege, not all                    13:48:43

24    communications with a lawyer are necessarily          13:48:45

25    privileged.                                           13:48:48
```

Page 162

```
 1            Q.     And you received that instruction        13:48:48
 2       from whom?                                           13:48:50
 3            A.     Craig Clark.                              13:48:51
 4            Q.     Okay.                                     13:48:52
 5                   So Craig Clark made it clear to           13:48:52
 6       you that not all communications with lawyers         13:48:54
 7       are privileged?                                       13:48:56
 8                   MS. CHANG:  Objection to the             13:48:57
 9                   extent it calls for a privileged         13:48:58
10                   communication.                           13:49:00
11                   I caution the witness not to            13:49:00
12                   disclose the substance of any privileged 13:49:02
13                   communication.  Mr. Clark, as you know,  13:49:05
14                   is a lawyer, so you need to be very      13:49:06
15                   careful in terms of the communications   13:49:09
16                   that you had with Mr. Clark.            13:49:11
17       BY MR. LYONS:                                        13:49:14
18            Q.     All right.                               13:49:14
19                   Let's -- why don't we get in some       13:49:14
20       exhibits here.  We'll do it that way.               13:49:17
21                   MR. LYONS:  Let's mark this next        13:49:51
22                   in order.                                13:49:52
23                   [Deposition Exhibit 9528 marked         13:49:54
24                   for identification.]                     13:49:56
25       BY MR. LYONS:                                        13:49:56
```

Page 164

```
 1    to do that?                                        13:50:47
 2               MS. CHANG:  Objection to the            13:50:48
 3          extent it calls for privileged               13:50:49
 4          communication.                               13:50:50
 5               I caution the witness not to            13:50:51
 6          disclose the substance of any privileged     13:50:52
 7          communication.                               13:50:55
 8          A.    I'm sorry, can you repeat the          13:51:01
 9    question?                                          13:51:04
10               MR. LYONS:  Let's have the              13:51:05
11          question read back.                          13:51:06
12               [Discussion off the record.]            13:51:16
13               MR. LYONS:  Here.  I'll do it.          13:51:17
14    BY MR. LYONS:                                      13:51:17
15          Q.    Did you ever have a conversation       13:51:18
16    with anyone at any point in time who told you      13:51:20
17    that you should add someone from legal to all      13:51:24
18    emails?                                            13:51:27
19               MS. CHANG:  Objection to the            13:51:29
20          extent it calls for privileged               13:51:29
21          communication.                               13:51:31
22               I caution the witness not to            13:51:31
23          disclose the substance of any privileged     13:51:32
24          communication.                               13:51:35
25          A.    No, I never had a conversation         13:51:39
```

Page 165

```
 1    where somebody told me to add an attorney to        13:51:40
 2    all emails.                                         13:51:42
 3         Q.    Did they ever tell you to               13:51:42
 4    add -- did you ever have a conversation with        13:51:44
 5    anyone who told you that you should add             13:51:46
 6    attorney-client privilege to any email?  And        13:51:49
 7    that's a yes-or-no question.                        13:51:51
 8              MS. CHANG:  Same objection.               13:51:52
 9    BY MR. LYONS:                                       13:51:52
10         Q.    And just to be clear, yes or no?         13:51:56
11    This does not call for privileged                   13:51:57
12    communication.                                      13:52:00
13              Did you have a conversation with          13:52:00
14    anyone at any time who told you to add              13:52:02
15    attorney-client privilege to any email?             13:52:05
16              MS. CHANG:  Same caution.                 13:52:07
17         A.    I can't recall.                          13:52:13
18         Q.    Did you ever have a conversation         13:52:14
19    with anyone at any time who ever told you to        13:52:15
20    add the term "attorney-client privilege" to any     13:52:18
21    document?                                           13:52:21
22              MS. CHANG:  Same -- same caution.         13:52:24
23         A.    I can't recall any specific             13:52:32
24    instances.                                          13:52:34
25         Q.    You know as a former law                13:52:34
```

Page 166

```
 1    enforcement officer that you should not        13:52:37
 2    identify documents as attorney-client privilege 13:52:38
 3    that are not, in fact, attorney-client          13:52:40
 4    privileged communications, do you?              13:52:43
 5        A.    No, I don't recall receiving that     13:52:46
 6    training as a law enforcement officer.          13:52:48
 7        Q.    Let me just -- so that the record     13:52:49
 8    is clear, is it your testimony that you are not 13:52:52
 9    aware that it is inappropriate to designate     13:52:54
10    documents as attorney-client privilege that you 13:52:57
11    know to not be attorney-client privilege?       13:52:59
12            MS. CHANG:  Objection, misstates        13:53:03
13        prior testimony, vague and ambiguous,       13:53:04
14        calls for a legal conclusion.               13:53:06
15        A.    That wasn't your question.  You       13:53:10
16    asked me as a law enforcement officer if I      13:53:11
17    knew.  I don't recall getting that training as  13:53:14
18    a law enforcement officer.  But during my time  13:53:16
19    at Uber, I do recall having -- getting a        13:53:18
20    presentation from Craig Clark where it did talk 13:53:22
21    about not marking documents inappropriately.    13:53:25
22        Q.    Is it your understanding that --      13:53:32
23    well, let me ask it this way.  If I understood  13:53:34
24    you correctly, you do not have a recollection   13:53:39
25    of anyone ever telling you to add               13:53:41
```

Page 167

```
 1      attorney-client privilege to any document.  Did   13:53:44
 2      I understand that testimony correctly?            13:53:46
 3                  MR. UMHOFER:  Objection, misstates    13:53:49
 4         prior testimony.                               13:53:50
 5                  MS. CHANG:  Join in the objection.    13:53:50
 6         A.    I don't recall what I said               13:53:58
 7      previously, but I can't remember any specific     13:54:00
 8      instances where somebody directed me to add       13:54:04
 9      that to a document.                               13:54:06
10         Q.    I'm looking at the -- the realtime       13:54:08
11      testimony.  It says:                              13:54:10
12                  "Did you ever have a conversation     13:54:11
13      with anyone at any time who ever told you to      13:54:13
14      add the term 'attorney-client privilege' to any   13:54:16
15      document?"                                         13:54:18
16                  And your answer was:                  13:54:19
17                  "I can't recall any specific          13:54:19
18      instances."                                        13:54:21
19                  Is that a truthful response to the    13:54:22
20      question?                                          13:54:24
21         A.    Yes.                                     13:54:24
22         Q.    Okay.                                    13:54:24
23                  So as you sit here right now, you     13:54:26
24      have no recollection of being told to do that?   13:54:28
25         A.    In a specific instance, no, I           13:54:38
```

Page 168

```
 1    can't -- I can't recall.                      13:54:39

 2         Q.    Do you have a general recollection  13:54:41

 3    of ever being told that?                       13:54:42

 4         A.    I have a general recollection of     13:54:43

 5    being told that if on projects that were being  13:54:45

 6    done, you know, at -- at a lawyer's direction    13:54:49

 7    and under their guidance that, yes, that it      13:54:51

 8    should be marked.                                13:54:54

 9         Q.    And is it -- was it your             13:54:54

10    understanding that everything that you did was  13:54:55

11    at a lawyer's direction?                        13:55:00

12         A.    That is not accurate.                13:55:01

13         Q.    What wasn't at a lawyer's            13:55:02

14    direction?  What tasks did you perform that you  13:55:04

15    believed were not at a lawyer's direction in     13:55:06

16    the work that you did at Uber?                   13:55:08

17         A.    I -- there's a lot of things.        13:55:10

18         Q.    I got some time.                     13:55:15

19         A.    General, you know, administrative    13:55:20

20    emails.  Working on things that, you know, were  13:55:22

21    outside of our -- our tasks as far as            13:55:26

22    collections.  You know, to say that I, you       13:55:29

23    know, marked everything attorney-client          13:55:35

24    privilege carte blanche is just inaccurate.      13:55:37

25         Q.    Well, that's not what I'm saying     13:55:40
```

Page 170

```
 1    get a sense of when you would claim something    13:56:32
 2    was at the direction of a lawyer and when it     13:56:37
 3    wasn't.  Because it sounds like you said you     13:56:39
 4    had to get approval for all                      13:56:43
 5    information-gathering projects you worked on.    13:56:45
 6          A.    That is correct.                     13:56:48
 7          Q.    So if you had to get approval from   13:56:49
 8    a lawyer for all information-gathering           13:56:51
 9    projects, how did you in your mind make a        13:56:53
10    decision as to when a document or memo or email  13:56:55
11    that you wrote was not going to be designated    13:56:58
12    as attorney-client privileged?  Because you've   13:57:01
13    already gotten the direction from a lawyer.      13:57:04
14          A.    Right.                               13:57:07
15          Q.    So if you got the -- the direction   13:57:07
16    from a lawyer and you got the lawyer's approval  13:57:09
17    to perform some investigation collection or      13:57:12
18    evidence collection or information collection,   13:57:17
19    was it your practice then that everything that   13:57:21
20    you did as a result of that approval was marked  13:57:23
21    privileged?                                      13:57:26
22          A.    No.                                  13:57:26
23          Q.    So when wasn't it?  And what         13:57:27
24    activities would you perform, investigative     13:57:30
25    collection, intelligence collection or any      13:57:33
```

Page 172

```
 1    correct?                                          13:58:41

 2         A.    Yes.  For the documents that are        13:58:46

 3    generated for that specific project, yes.          13:58:47

 4         Q.    And all -- is it your testimony         13:58:49

 5    that all documents that were generated as a        13:58:51

 6    result of that project were privileged?            13:58:54

 7         A.    I don't believe that I marked           13:59:01

 8    every single document as privileged.               13:59:02

 9         Q.    That wasn't my question.  I don't       13:59:04

10    care whether you marked it or not.                 13:59:05

11         A.    Yeah.                                    13:59:07

12         Q.    My question is whether you are          13:59:08

13    taking the position that every time you did        13:59:10

14    something or generated a document after having     13:59:12

15    received an approval from a lawyer to perform a    13:59:14

16    particular investigative task, that that was       13:59:18

17    privileged.                                         13:59:20

18              MR. UMHOFER:  Objection, calls for       13:59:20

19         a legal conclusion.                            13:59:22

20         A.    I don't know.  I don't know if --       13:59:25

21    I guess I just don't understand the question.      13:59:26

22         Q.    Okay.                                    13:59:28

23              Well, I'll -- let's -- let's ask         13:59:28

24    it differently.                                     13:59:30

25              Is it your testimony that all            13:59:34
```

Page 178

```
 1            Q.     And whether you recall sending        14:21:04
 2      them or not, would it have been your practice,     14:21:05
 3      after getting approval from a lawyer to conduct    14:21:08
 4      surveillance, to mark email communications         14:21:11
 5      about that surveillance as attorney-client         14:21:14
 6      privileged?  Would that have been your             14:21:17
 7      practice?                                          14:21:19
 8            A.     If it was about logistics between     14:21:23
 9      me and my team members, probably not, no.          14:21:25
10            Q.     Why not?                              14:21:28
11            A.     Because --                            14:21:29
12            Q.     Isn't logistics part of the          14:21:30
13      direction by your lawyer to conduct the            14:21:32
14      surveillance?  Wouldn't that have been part of     14:21:33
15      the task that you received approval for?           14:21:36
16                   MR. UMHOFER:  Objection, compound.    14:21:39
17            A.     I wouldn't have viewed it that way    14:21:41
18      if I was emailing my colleague to say, you         14:21:43
19      know, "Meet me at the airport.  I get in at        14:21:46
20      whatever time."  I -- I don't see that.  You       14:21:49
21      know, if I had to email Craig because I had a      14:21:51
22      question, you know, about the particular           14:21:54
23      operation or was looking for guidance on           14:21:57
24      something, then, yes, that would be -- that        14:21:59
25      would have been marked.                            14:22:02
```

Page 179

```
 1            Q.     So that was -- but that          14:22:03
 2     you -- that was a conversation with Craig.  So  14:22:04
 3     he was a lawyer, wasn't he?                     14:22:05
 4            A.     My understanding he still is.     14:22:09
 5            Q.     So a conversation with your lawyer 14:22:11
 6     specifically about getting legal advice, I      14:22:13
 7     don't think anyone is arguing about whether     14:22:16
 8     that's privileged or not.                       14:22:18
 9            A.     Correct.  But you asked me whether 14:22:18
10     or not I marked specific emails.  And if I was  14:22:20
11     communicating back and forth with Craig, then   14:22:22
12     yes.  But if I was communicating to work on     14:22:25
13     logistics with, you know, members of my team,   14:22:28
14     then no, I don't recall marking those.  I don't 14:22:31
15     recall marking those anything privileged.       14:22:35
16            Q.     Well, you can -- it would not have 14:22:37
17     been your expectation that those would, in      14:22:39
18     fact, be privileged?                            14:22:41
19            A.     I --                              14:22:42
20                   MR. UMHOFER:  Objection, calls for 14:22:43
21            a legal conclusion.                       14:22:45
22            A.     I don't know.  I'm not a lawyer.   14:22:45
23            Q.     But wouldn't -- regardless of      14:22:47
24     whether you're a lawyer, it would not have been 14:22:48
25     your expectation that communications about      14:22:51
```

Page 181

```
 1          communications with your coworkers?                14:23:42

 2               A.     Sure.  Yes.                             14:23:43

 3               Q.     Now, looking at Mr. Kalanick's          14:23:45

 4          email here, though, he makes a                      14:23:47

 5          slightly different -- takes a slightly              14:23:50

 6          different approach.  He says:                       14:23:52

 7                      "Add someone from legal to all of       14:23:53

 8          these emails and presentations and add language     14:23:56

 9          about attorney-client privilege to all             14:23:57

10          documents."                                         14:23:59

11                      Do you see that?                        14:24:00

12               A.     Sure.  Yes, I do.                        14:24:01

13               Q.     Now, did you ever have a                 14:24:09

14          conversation with anyone who suggested that you     14:24:11

15          should add a lawyer to an email so that you         14:24:14

16          could claim that the email was privileged?          14:24:18

17                      MR. UMHOFER:  Objection, asked and       14:24:21

18               answered.                                       14:24:21

19               A.     I don't recall that.                     14:24:23

20               Q.     Did you ever receive that               14:24:24

21          instruction?                                         14:24:25

22                      MR. UMHOFER:  Same objection.            14:24:26

23               A.     No, I do not recall that.                14:24:29

24               Q.     Did you think it was appropriate         14:24:31

25          to add someone from legal for the purpose of        14:24:32
```

Page 182

```
 1    claiming privilege?                          14:24:36

 2            A.    In what instance?              14:24:38

 3            Q.    Did you ever have an instance  14:24:41

 4    where you were told that if you added someone 14:24:43

 5    to legal, you could claim privilege to that  14:24:48

 6    communication even if you were not seeking   14:24:50

 7    legal advice from that person?               14:24:52

 8            A.    I don't recall that, no.       14:24:55

 9            Q.    Did you know that it was improper 14:24:59

10    to add someone from legal to an email for the 14:25:00

11    sole purpose of claiming privilege when you  14:25:03

12    were not seeking legal advice for that person? 14:25:05

13            A.    Yeah.  That was part of Craig's 14:25:08

14    presentation, yes.                           14:25:10

15            Q.    So looking at Mr. Kalanick's email 14:25:11

16    here, you would agree that if the purpose of 14:25:13

17    the email was not to seek legal advice, that 14:25:16

18    would be inappropriate to add someone from   14:25:20

19    legal for the purpose of claiming            14:25:22

20    attorney-client privilege?                   14:25:25

21            MR. UMHOFER:  Objection, calls for   14:25:26

22        a legal conclusion.                      14:25:28

23            MS. CHANG:  Join in the objection.   14:25:28

24            A.    I don't know what Travis --     14:25:31

25    Mr. Kalanick was intending with this email, and 14:25:35
```

Page 197

```
 1    a communication with him in his capacity as a     14:39:08

 2    lawyer, that that communication could be marked    14:39:12

 3    attorney-client privilege; correct?               14:39:15

 4         A.    I'm sorry.  Can you repeat your        14:39:18

 5    question?                                          14:39:19

 6         Q.    You understood that if you had a       14:39:19

 7    communication with him in his capacity as a        14:39:21

 8    lawyer, that that communication would be marked    14:39:23

 9    attorney-client privileged?                        14:39:25

10         A.    Yes.  Based on the information         14:39:30

11    contained in -- that he presented in this, that    14:39:31

12    if we were seeking legal advice or legal           14:39:34

13    guidance, that the -- yes, that would be           14:39:37

14    privileged.  Whether or not that we had marked     14:39:40

15    a document for that, I -- I don't know.            14:39:42

16         Q.    Okay.                                  14:39:42

17               So you understood -- just so that      14:39:45

18    I'm -- I'm clear, you understood that by           14:39:48

19    marking something attorney-client privilege,       14:39:51

20    that it could be protected from disclosure.        14:39:54

21               Did you understand that?                14:39:59

22         A.    Yes.  That was part of the             14:40:01

23    presentation.                                      14:40:02

24         Q.    Okay.                                  14:40:02

25               And certainly as it relates to         14:40:03
```

Page 198

```
 1    communications with Mr. Clark, you understood      14:40:05

 2    that if communications with him were marked as     14:40:07

 3    attorney-client privileged, they could be          14:40:12

 4    protected from disclosure?                         14:40:13

 5         A.    If they were seeking legal advice       14:40:15

 6    or guidance, yes.                                  14:40:17

 7         Q.    Okay.                                   14:40:18

 8               And so to the extent that               14:40:21

 9    Mr. Clark had communications with people           14:40:23

10    seeking legal advice or legal guidance, as long    14:40:25

11    as the communication was marked attorney-client    14:40:30

12    privilege, it would be subject from                14:40:32

13    disclosure -- excuse me, it would be protected     14:40:35

14    from disclosure.                                   14:40:37

15               You understood that?                    14:40:38

16         A.    So I don't -- I'm not sure.  I'm        14:40:42

17    not sure I'm understanding your question           14:40:47

18    properly.                                          14:40:48

19         Q.    Well, I guess maybe I'm -- maybe        14:40:50

20    I'm -- I'm trying to understand if -- if           14:40:51

21    Mr. Clark's legal advice and guidance was          14:40:56

22    protected from disclosure, what was the basis      14:41:01

23    for his preference to have telephone               14:41:03

24    conversations?  Because the written                14:41:05

25    communications would also be protected from        14:41:08
```

Page 208

```
 1      issues at the company.                           14:52:57
 2           Q.    Did Mr. Clark ever coach you on       14:53:33
 3      how to use the attorney-client privilege to      14:53:36
 4      ensure that sensitive intelligence collection    14:53:39
 5      activities would not surface in litigation?      14:53:43
 6           A.    No, I don't recall that.              14:53:50
 7           Q.    Are you familiar with something       14:53:51
 8      called the Lawyer Dog meme?                       14:54:07
 9           A.    Yes, from the presentation that       14:54:11
10      you showed previously.                           14:54:13
11           Q.    Do you recall ever receiving any      14:54:14
12      email or other document containing the Lawyer    14:54:16
13      Dog meme?                                         14:54:20
14           A.    I don't know if I received it or      14:54:24
15      not.                                              14:54:26
16           Q.    Did Mr. Clark provide any handouts    14:54:29
17      when he gave this presentation?                  14:54:31
18           A.    I don't recall that.                  14:54:36
19           Q.    Did you ever come across a            14:54:37
20      document at Uber that was marked "Draft" even    14:54:52
21      though you believed it was a final version?      14:54:55
22           A.    I -- no, I'm not sure.  I don't       14:55:11
23      think so.                                         14:55:11
24           Q.    This email says if you -- uses the    14:55:11
25      phrase "if you prefer not to write/retain        14:55:34
```

Page 231

```
 1        requesting devices; correct?                    15:23:29

 2             A.    That's correct.                       15:23:31

 3             Q.    And with regard to the information    15:23:32

 4        in the cloud, did you give them that             15:23:34

 5        information as well?                             15:23:36

 6             A.    No, I didn't have it.                 15:23:37

 7             Q.    Okay.                                 15:23:39

 8                   Did you tell them that it existed?    15:23:39

 9             A.    I don't recall what I told them.      15:23:44

10                   MS. CHANG:   Counsel, when you're     15:23:46

11             at a good stopping point, we've been        15:23:52

12             going over an hour.                         15:23:54

13                   MR. LYONS:   Okay.  Sure.  Let's      15:23:55

14             take a break.                               15:23:58

15                   THE VIDEOGRAPHER:   It's 3:23.        15:23:59

16             We're going off the record.                 15:24:02

17                   [Recess at 3:23 p.m.]                 15:24:03

18                   [Resuming at 3:44 p.m.]               15:34:42

19                   THE VIDEOGRAPHER:   We are back on    15:44:48

20             the record, and it's 3:44.                  15:44:50

21                   EXAMINATION CONTINUING               15:44:53

22        BY MR. LYONS:                                    15:44:53

23             Q.    So we were talking about Ric          15:44:54

24        Jacobs earlier.  Did he ever express to you any  15:45:00

25        concern about the use of ephemeral               15:45:06
```

Page 232

```
 1    communications or nonattributable devices?         15:45:09
 2         A.    No, I don't recall having               15:45:15
 3    conversations with him about that.                 15:45:16
 4         Q.    Did he ever express any concern to       15:45:18
 5    you about the use of improper privilege            15:45:20
 6    designations?                                       15:45:25
 7         A.    I do not recall him expressing           15:45:26
 8    that to me.                                         15:45:29
 9         Q.    Did he ever express to you any           15:45:29
10    concerns about the use of "Draft" designations     15:45:32
11    or documents designated as "Draft"?                15:45:35
12         A.    No, I don't recall that.                 15:45:40
13         Q.    Did he ever express any concern          15:45:42
14    about Uber engaging in theft of trade secrets?     15:45:44
15         A.    No.                                      15:45:44
16         Q.    Did he ever express any concern          15:45:50
17    about Uber trying to evade its obligations to      15:45:53
18    produce documents in discovery?                    15:45:55
19         A.    No, I don't recall him expressing        15:46:01
20    that.                                               15:46:03
21         Q.    Did he ever express any concern          15:46:07
22    about people hiring -- excuse me, about Uber       15:46:08
23    hiring people to support the ATG group who are     15:46:11
24    kept off of ATG's books?                           15:46:16
25         A.    I don't recall hearing him say          15:46:20
```

Page 235

```
 1    that at Uber?                              15:50:45

 2         A.    No.                             15:50:45

 3         Q.    And you have no knowledge as to 15:50:46

 4    whether that allegation is true or not?    15:50:47

 5         A.    I don't know.                   15:50:49

 6         Q.    All right.  I'm going to show you 15:50:50

 7    what's been previously mark as 9075.       15:51:10

 8               [Document passed to the witness.] 15:51:13

 9    BY MR. LYONS:                              15:51:36

10         Q.    So there's an email at the bottom 15:51:36

11    here from Mat Henley to ███████ dated      15:51:40

12    June 21 of this year.                      15:51:44

13               Do you recall ever seeing this  15:51:48

14    email before?                              15:51:50

15         A.    Yes, sir.                       15:51:50

16         Q.    When was the first time you saw 15:51:51

17    this email?                                15:51:53

18         A.    I believe that I was -- yeah, I 15:51:54

19    was cc'd on it when it went out.           15:51:58

20         Q.    Did you have any involvement in 15:52:01

21    drafting the email?                        15:52:03

22         A.    Yes, sir.                       15:52:04

23         Q.    And what was your involvement in 15:52:05

24    drafting the email?                        15:52:07

25         A.    I believe that we saw a rough   15:52:13
```

Page 236

```
 1    draft of it.                                    15:52:15
 2         Q.    Who drafted the email originally?    15:52:16
 3         A.    I don't know.                         15:52:20
 4         Q.    Okay.                                 15:52:20
 5               But you -- you saw a rough draft.     15:52:21
 6    How did you see the rough draft?                 15:52:23
 7         A.    I don't remember.                     15:52:25
 8         Q.    Did you provide any comments          15:52:27
 9    regarding the rough draft?                       15:52:29
10         A.    I don't recall.                       15:52:31
11         Q.    Did you talk to anyone about the      15:52:35
12    rough draft?                                     15:52:39
13         A.    I -- likely.  I don't remember any    15:52:45
14    of the specific conversations.                   15:52:48
15         Q.    You didn't draft the email            15:52:49
16    yourself -- excuse me, you didn't draft          15:52:51
17    the -- the rough version of this yourself?       15:52:53
18         A.    No, sir.                              15:52:55
19         Q.    So if you turn the page and you       15:52:56
20    look at the bottom of the email, it appears      15:53:08
21    that Mr. Henley has signed this on behalf of     15:53:10
22    Craig Clark, Nick Gicinto, yourself and Ed       15:53:15
23    Russo; right?                                    15:53:19
24         A.    Yes, sir.                             15:53:20
25         Q.    Do you recall any discussions         15:53:21
```

Page 237

```
 1    about Mr. Henley signing on behalf of you as          15:53:22

 2    individuals?                                          15:53:29

 3        A.      Yes, I was aware that he was going        15:53:30

 4    to sign on my behalf.                                 15:53:32

 5        Q.      Okay.                                     15:53:33

 6                And what did you understand the           15:53:34

 7    purpose of the email to be?                           15:53:35

 8           ██     ████████████████████████        ██████
██     ████████████████████████████████          ██████
██    ████████████████████████████████           ██████
██    ████████████████████████████               ██████
██    █████████████████████████████               ██████
██           ██       ██████████████████          ██████
██           ██     ███                            ██████
██           ██     ██████████████████             ██████
██           ██     ██████████████████             ██████
██    ████████████████████████████████████        ██████
██    ████████████████     ███████████████         ██████
██    ███████████    ██████████████████            ██████
██    ███████                                      ██████
██                 ███████████████████████         ██████
██    ████████████████████████████████████         ██████
██    ███████████████████████████████              ██████
██    ███████████████████████████████              ██████
██    ████████████████████████████████             15:54:29
```



Page 239





```
 1                C E R T I F I C A T E
 2
 3               I, PAUL J. FREDERICKSON, CA
 4      Certified Shorthand Reporter No. 13164 and
        WA Certified Court Reporter No. 2419, do
 5      hereby certify:
                    That prior to being examined,
 6      the witness named in the foregoing
 7      deposition was by me duly sworn or affirmed
 8      to testify to the truth, the whole truth and
        nothing but the truth;
 9               That said deposition was taken
10      down by me in shorthand at the time and
11      place therein named, and thereafter reduced
12      to print by means of computer-aided
        transcription; and the same is a true,
13      correct and complete transcript of said
14      proceedings.
15               I further certify that I am not
16      interested in the outcome of the action.
17               Witness my hand this 20th day
18      of December 2017.
19
20
21
22
23          PAUL J. FREDERICKSON, CCR, CSR
24            WA CCR 2419  CA CSR 13164
25          Expiration date:  March 31, 2018
```

Page 273