# EXHIBIT 18

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Page 112

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


Case No. 3:17-cv-00939-WHA
_____

WAYMO LLC,                          )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
UBER TECHNOLOGIES, INC.;            )
OTTOMOTTO LLC;                      )
OTTO TRUCKING,                      )
                                    )
          Defendants.               )
_____)


HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF

ANGELA PADILLA

VOLUME II

DATE TAKEN:  DECEMBER 22, 2017




REPORTED BY:

PAUL J. FREDERICKSON, CCR, CSR

JOB NO. 2780796


Pages 112 - 303

Page 169

```
 1    relation to Waymo?                              10:49:43
 2         A.    I -- I don't know.  I wasn't there   10:49:45
 3    when they had the communication.                10:49:47
 4         Q.    The -- so as of June 22, 2017, the   10:49:52
 5    internal directive was no longer to limit the   10:50:13
 6    distribution of the Jacobs letter in the manner 10:50:21
 7    that compliance had told you to do when it      10:50:29
 8    first came in?                                  10:50:32
 9              MR. GONZALEZ:  Object to form.        10:50:33
10         A.    No.  You're misstating what          10:50:34
11    I -- what I testified to.  No.  The direction   10:50:36
12    was to share the letter with the government and 10:50:39
13    no further -- and no further with inside the    10:50:44
14    company.                                        10:50:48
15         Q.    Okay.                                10:50:49
16              Except for the public relations       10:50:50
17    people?                                         10:50:52
18         A.    Except for ███ and ███ and the       10:50:52
19    reason for that was because, as part of his     10:50:55
20    extortion, Mr. Jacobs was telling us that he    10:50:59
21    was going to be going to The New York Times and 10:51:02
22    the Wall Street Journal the next day.  And so   10:51:04
23    in case that actually did happen, it would be   10:51:07
24    good for ███ and ███ to be aware of it.         10:51:10
25         Q.    Did you tell them not to share the   10:51:13
```

Page 170

```
 1    May 5, 2017 letter with anyone within the        10:51:19

 2    company?                                          10:51:23

 3         A.    Yes, and they were scrupulous          10:51:24

 4    about that.                                       10:51:25

 5         Q.    You don't say that in your email       10:51:27

 6    here.                                             10:51:28

 7         A.    No.  We had -- we had several          10:51:28

 8    phone calls.  This afternoon, we convened         10:51:31

 9    conference calls with them, special matters       10:51:33

10    committee, myself, Theodora Lee, Patrick          10:51:36

11    Robbins to discuss it.                            10:51:40

12         Q.    Did ██████████ -- or ████████████      10:51:42

13    or ████████████████ have communications with the  10:51:50

14    press regarding the letter at this time?          10:51:53

15         A.    No.                                    10:51:55

16         Q.    The -- do you have any written         10:51:56

17    correspondence with ████████████ and              10:52:04

18    ████████████████ regarding the fact that they     10:52:10

19    should not have passed along -- that they         10:52:13

20    should not pass along the May 5, 2017 letter      10:52:16

21    when they got it?                                 10:52:19

22         A.    I'm -- I don't think I said it in      10:52:20

23    writing, but I know that we said it in this       10:52:22

24    call.                                             10:52:25

25         Q.    In which call?                         10:52:27
```

| | | |
|---|---|---|
| 1 | And so when -- and we spoke to | 11:49:25 |
| 2 | them each briefly.  And I know we asked Mat, | 11:49:27 |
| 3 | Nick -- who were the other guys? -- Ed, in -- | 11:49:30 |
| 4 | in that -- in those conversations about what | 11:49:35 |
| 5 | had happened with the employment relationship | 11:49:37 |
| 6 | and was he demoted and what was the perf and | 11:49:39 |
| 7 | why -- why did the perf scores go down. | 11:49:42 |
| 8 | Because we were looking at his employment | 11:49:44 |
| 9 | performance scores very deeply, Ric's | 11:49:46 |
| 10 | performance scores.  In that context we said, | 11:49:49 |
| 11 | "And, hey..." -- and we asked if there was any | 11:49:51 |
| 12 | truth to the allegation that Craig had done | 11:49:52 |
| 13 | this mistraining with attorney-client.  They | 11:49:53 |
| 14 | all said no. | 11:49:57 |
| 15 | But the -- the one thing that they | 11:49:59 |
| 16 | did say and what -- what is true is that █████ | 11:50:00 |
| 17 | █████, who is our former head of | 11:50:05 |
| 18 | communications and policy, who was the | 11:50:07 |
| 19 | predecessor to ███████, ████ brought | 11:50:09 |
| 20 | with her to the company a convention that was | 11:50:12 |
| 21 | really -- was the first time I had ever seen | 11:50:15 |
| 22 | it, and it -- and it has been used very, very | 11:50:18 |
| 23 | widely, and it had added to the confusion about | 11:50:20 |
| 24 | what is privileged and what's not.  And the | 11:50:22 |
| 25 | convention that she brought is in memos or | 11:50:25 |

| | | |
|---|---|---|
| 1 | emails, you add a lawyer and you mark it | 11:50:29 |
| 2 | "Attorney-Client Privileged" and at the very | 11:50:33 |
| 3 | end you say, you know, "Any legal advice, | 11:50:35 |
| 4 | David?"  You know, "Any legal advice, Arturo?" | 11:50:38 |
| 5 | And she said that she had learned | 11:50:43 |
| 6 | that at Google, which is where she came from. | 11:50:45 |
| 7 | And so all of our Googlers -- we | 11:50:48 |
| 8 | call them "Googlers" -- all of our Googlers | 11:50:50 |
| 9 | brought that convention and used it.  And the | 11:50:53 |
| 10 | first time I saw it I actually thought the | 11:50:54 |
| 11 | question at the end was a -- was an actual | 11:50:56 |
| 12 | question for me, and I foolishly answered it, | 11:50:58 |
| 13 | which was kind of embarrassing.  And then I was | 11:51:01 |
| 14 | told by either ████ or ████ or someone on | 11:51:03 |
| 15 | their team, or ██████████, who had worked | 11:51:05 |
| 16 | at Google, she -- they said, "They're not | 11:51:09 |
| 17 | actually asking you a question, Angela. | 11:51:11 |
| 18 | They're not asking your legal advice.  They're | 11:51:12 |
| 19 | just putting it there because they think it | 11:51:14 |
| 20 | makes it privileged." | 11:51:18 |
| 21 | So here we go.  It's how we have a | 11:51:19 |
| 22 | lot of mix-ups about the privilege in the | 11:51:22 |
| 23 | company.  Trying to sort it out.  Despite lots | 11:51:25 |
| 24 | of training to the contrary. | 11:51:29 |
| 25 | MR. PERLSON:  Move to strike the | 11:51:29 |

Page 206

```
 1           whole conversation of Whetstone as          11:51:30

 2           nonresponsive.                              11:51:33

 3  BY MR. PERLSON:                                      11:51:38

 4           Q.     The -- so do you -- would you        11:51:38

 5      agree that it is improper to merely add someone  11:51:40

 6      as a lawyer to something, a document or an       11:51:45

 7      email, just to make it privileged when it        11:51:53

 8      isn't?                                           11:51:58

 9           A.     Look, how the -- how the             11:51:59

10      attorney-client privilege works, and I used to   11:52:01

11      teach this at VMware and in my law firm, so I'm  11:52:02

12      very, very familiar with it, is it's not         11:52:06

13      whether you mark it "attorney-client             11:52:09

14      privileged" or not and it's not whether you add  11:52:11

15      a lawyer to the cc or the to/from line.  What    11:52:14

16      it is, it's -- it's the fundamental nature of    11:52:20

17      the communication.  And it has to be the         11:52:23

18      elements:  Confidential communication to or      11:52:24

19      from the attorney with the client for the        11:52:28

20      purpose of obtaining legal advice.  That's it.   11:52:32

21      Those are the elements of attorney-client        11:52:36

22      privilege.                                       11:52:38

23              So, for example, you could -- you        11:52:39

24      could create an attorney-client privileged       11:52:41

25      document that is privileged and forget to mark   11:52:43
```

Page 207

```
 1    it "attorney-client privileged."  No matter.      11:52:44

 2    It's still privileged.                            11:52:47

 3              Similarly, you could create a           11:52:50

 4    nonprivileged document and mistakenly mark it     11:52:52

 5    "privileged."  That does not convert it into a    11:52:57

 6    privileged document.                              11:52:59

 7              So my own view is adding a lawyer       11:53:03

 8    does nothing.  Adding -- you know, as ███████     11:53:08

 9    ████████   and all the Googlers taught their      11:53:11

10    teams to do, saying at the end, "Hey, lawyer.     11:53:14

11    Any advice?"  Like, none of these things are      11:53:16

12    valuable.                                         11:53:20

13              What -- all that matters is the         11:53:20

14    substance of the communication.  And then when    11:53:22

15    we do litigation, because there are so many       11:53:24

16    mix-ups in corporate America about this topic,    11:53:26

17    outside counsel of course does an independent     11:53:30

18    review of each document and independently         11:53:33

19    assesses whether each document is                 11:53:37

20    attorney-client privileged or not.                11:53:40

21              I mean, you guys do that, MoFo          11:53:41

22    does it, every outside lawyer does it.  Because   11:53:43

23    if you relied on what the client said was         11:53:45

24    privileged or not privileged, it would be -- it   11:53:47

25    would be a car crash.                             11:53:49
```



Page  246



13:30:17



Page 249

13:33:39



Page 256



1          Q.

13:42:34

Page  257

13:43:38





Page 264

13:52:38





Page 290

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1                C E R T I F I C A T E

2

3                I, PAUL J. FREDERICKSON, CA
   Certified Shorthand Reporter No. 13164 and
4  WA Certified Court Reporter No. 2419, do
5  hereby certify:
6                That prior to being examined,
   the witness named in the foregoing
7  deposition was by me duly sworn or affirmed
8  to testify to the truth, the whole truth and
9  nothing but the truth;
10                That said deposition was taken
   down by me in shorthand at the time and
11 place therein named, and thereafter reduced
12 to print by means of computer-aided
   transcription; and the same is a true,
13 correct and complete transcript of said
14 proceedings.
                I further certify that I am not
15 interested in the outcome of the action.
16                Witness my hand this 26th day
17 of December 2017.

18

19

20

21

22    _____

23    PAUL J. FREDERICKSON, CCR, CSR
24       WA CCR 2419  CA CSR 13164
25    Expiration date:  March 31, 2018

                                    Page 303