1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Tel:    415.268.7000 / Fax:   415.268.7522
5

6   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
    HAMISH P. M. HUME (*Pro Hac Vice*)
7   hhume@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
8   1401 New York Avenue, N.W.
    Washington, D.C.  20005
9   Tel:    202.237.2727 / Fax:   202.237.6131

10  WILLIAM C. CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SHAWN J. RABIN (*Pro Hac Vice*)
    srabin@susmangodfrey.com
12  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
13  New York, New York 10019
    Tel:    212.336.8330 / Fax:   212.336.8340
14

15  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
16  and OTTOMOTTO LLC

17              UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA

                 SAN FRANCISCO DIVISION
19

20  WAYMO LLC,                          | Case No. 3:17-cv-00939-WHA

                   Plaintiff,           | **DECLARATION OF SYLVIA RIVERA
21                                       IN SUPPORT OF DEFENDANTS
         v.                              UBER TECHNOLOGIES, INC. AND
22                                       OTTOMOTTO LLC'S RESPONSE TO
                                         WAYMO'S OFFER OF PROOF**
23  UBER TECHNOLOGIES, INC.,
    OTTOMOTTO LLC; OTTO TRUCKING LLC,   | Judge:       Hon. William H. Alsup
24                                       Trial Date:  February 5, 2018
                   Defendants.
25

26

27

28

1    I, Sylvia Rivera, declare as follows:

2    1.    I am a partner with the law firm of Morrison & Foerster LLP representing

3    Defendants Uber Technologies, Inc. and Ottomotto LLC in this matter.  I am a member in good

4    standing of the Bar of the State of California.  I am admitted to practice before this Court.  I

5    submit this declaration in support of Defendants Uber Technologies, Inc. and Ottomotto LLC's

6    Response to Waymo's Offer of Proof.  I make this declaration based on personal knowledge and

7    if called as a witness, I could and would competently testify to the matters set forth herein.

8    **Uber's Document Production**

9    2.    During the supplemental discovery period, Uber responded to 42 document

10   requests from Waymo, produced approximately 7,000 documents, and identified another

11   4,000+ responsive but privileged documents.

12   3.    Waymo served 40 document requests at 10:55 p.m. on November 30, 2017.  It

13   served an additional two requests on December 8, 2017.  Attached hereto as **Exhibits A** and **B**,

14   respectively, are true and correct copies of Defendants Uber Technologies, Inc. and

15   Ottomotto LLC's Objections and Responses to Waymo's Requests for Production Relating to

16   Issues in Jacobs Letter (Nos. 1-40), served on December 10, 2017, and Defendants Uber

17   Technologies, Inc. and Ottomotto LLC's Objections and Responses to Waymo's Requests for

18   Production Relating to Issues in Jacobs Letter (Nos. 41-42), served on December 12, 2017.

19   4.    For the supplemental discovery round, Uber collected documents for more than

20   40 new custodians who previously were not custodians in this litigation.  It also performed

21   supplemental collections for certain pre-existing custodians.  The custodians for supplemental

22   discovery included at least eight in-house counsel.  Uber's counsel reviewed more than

23   135,000 documents for responsiveness.

24   5.    On December 4, 2017, Uber produced to Waymo approximately 955 documents in

25   response to the Court's order at the November 28, 2017 evidentiary hearing.

26   6.    On December 5, 2017, during a late afternoon meet-and-confer call, the Special

27   Master indicated that Uber should complete its document production in response to Waymo's

28

supplemental document requests by December 8, three days later.  Uber responded that this would not be possible in light of the breadth of Waymo's document requests and the volume of data to be reviewed, but that it understood the Special Master's instruction and would push toward that end goal.  Our document review team worked diligently, and Uber made several productions in the days that followed.

7.       In a subsequent telephonic hearing with Judge Corley on December 13, 2017, I stated that I believed Uber's production would be complete by the following day, December 14.  Judge Corley set that as the completion date.  By December 14, Uber had produced approximately 4,500 documents and identified over 4,000 privileged documents.

8.       Waymo asserts that "documents continued to trickle in on December 15, 16, 19, 20, 23, 28" (Offer of Proof ("OOP") at 8), but that does not present a fair picture.  Working around the clock, on December 15 at 2:07 a.m., Uber produced just 80 documents that were not completed two hours earlier, by December 14 at midnight.  Most of these 80 documents involved communications with in-house counsel and were produced with redactions for privilege, which delayed the review and production process.  The December 16 production consisted of only 13 documents related to MoFo's communications regarding the Jacobs documents, which were produced pursuant to an agreement reached during the December 13 telephonic hearing with Judge Corley.  The productions on December 19 and 28 consisted of just two documents that Waymo had only requested from Uber on December 16.  On December 20, Uber produced just six documents, which it had only recently identified.  Uber did not produce any documents on December 23.  It did produce approximately 80 documents on December 21 involving in-house counsel that were provisionally deemed privileged and subsequently voluntarily de-designated or determined to warrant production with redactions.  Waymo raised that issue with Judge Corley, who noted that "given the compressed time frame [Uber] had for production it is unsurprising that some documents would have been initially improperly withheld or inconsistently redacted." (Dkt. 2454 at 2.)

9.       Over the Christmas holiday, e-discovery specialists working on this matter informed us that Uber's document review team was inadvertently provided an incomplete set of

results for one of the searches run on in-house counsel emails.  On December 29, I informed Waymo of this issue and stated that Uber would thus be making a small supplemental production and would supplement the Padilla privilege log as needed.  (OOP Ex. 59.)  Uber produced 24 documents the next day and on January 11 served the supplemental Padilla privilege log.

10.     The plurality of documents from Uber's production consists of the documents that Mr. Jacobs had transferred to a thumb drive, or exfiltrated and then returned to Uber—about 13,752 pages of mostly calendar entries.  The parties had disputed their relevance and responsiveness; on December 20, Judge Corley found they were relevant to whether Mr. Jacobs was being truthful (Dkt. 2415), and Uber produced them on December 22.  Excluding that production, nearly 73% of Uber's production was completed by December 8, and over 97% by December 14.

**No Knowledge of Jacobs Demand Letter Before November 22, 2017**

11.     When this Court issued its Notice regarding the Jacobs demand letter on November 22, 2017, I did not have any recollection or knowledge of who Richard Jacobs was, nor had I ever heard of a 37-page demand letter being written by Clayton Halunen, counsel for Mr. Jacobs.

12.     On subsequent investigation, I learned that on April 26, 2017, at 9:33 p.m., I, along with others, was copied on an email from Eric Tate to Stacey Sprenkel, two of my partners in our San Francisco office.  In that email, Mr. Tate provided Ms. Sprenkel with information about contacts at Uber for e-discovery tasks and indicated that I or Wendy Ray, another of our partners, might have additional helpful general information about e-discovery.  Mr. Tate's email was a response to the immediately preceding email in the chain, which Ms. Sprenkel sent on April 26, 2017, at 9:10 p.m., and in which she requested information about Uber's e-discovery contacts and protocols.  The earlier emails in the email chain consisted of an email from Chuck Duross, one of our partners in the Washington, D.C. office, which had forwarded emails from Joe Spiegler, which included the resignation email from Mr. Jacobs, dated April 14, 2017.

13.     I further learned, on subsequent investigation, that on April 27, 2017, at 5:55 a.m., I received an email from Ms. Sprenkel addressed to me and Ms. Ray in response to Mr. Tate's

email of April 26, 2017 at 9:33 p.m.  In it, Ms. Sprenkel requested additional information about Uber's e-discovery protocols and the personnel at our firm who had experience working with Uber on e-discovery.  Ms. Ray replied to Ms. Sprenkel on April 27 at 6:18 a.m. and copied me.  I replied on April 27 at 7:00 a.m., Ms. Sprenkel responded seeking further information at 7:03 a.m., and I replied at 7:05 a.m.  Those emails all pertained to Uber's e-discovery resources and personnel.

14.     I do not recall reading the April 14, 2017 resignation email from Mr. Jacobs on April 26 or April 27, or at any time before the Court issued its November 22, 2017 Notice regarding the Jacobs demand letter.  The content of Mr. Jacobs's resignation email was not relevant to the questions that I was being asked by Ms. Sprenkel.  Moreover, my work schedule during that time period was extremely heavy.  On April 26 and 27, I was busy compiling and analyzing data for my declaration in support of Uber's sur-reply to Waymo's motion for preliminary injunction, drafting and revising my declaration and other submissions in support of Uber's sur-reply, directing Uber's on-going document review and production efforts, working with my team to revise and finalize several privilege logs that were due April 27, and following up on several discovery related meet-and-confer issues Waymo had raised.  In addition, on April 26, I worked on reply briefs in support of two demurrers and a motion to stay in matters pending in Superior Court in California for two other clients.  Given my work schedule and that I was only consulted for information about Uber's e-discovery contacts and protocols, I believe it is highly unlikely that I read Mr. Jacobs's resignation email, which was located at the bottom of an email chain of at least six emails.

15.     I had no awareness of and did not see the Jacobs demand letter until after this Court issued its November 22, 2017 Notice.  Nor was I aware of the mediation and settlement of Mr. Jacobs's claims.  I never intended to—and could not have had the intention to—hide Mr. Jacobs's resignation email, the Jacobs demand letter, or the Jacobs mediation and settlement from this Court or from Waymo.

**Other Matters**

16.     Under my supervision, my team reviewed the various privilege logs that Uber had

1   produced in this litigation up through November 22, 2017, to determine if Craig Clark was listed

2   as an author or recipient for any of the documents withheld from production.  Mr. Clark did not

3   appear on any of those Uber privilege logs.

4         17.     Waymo's Offer of Proof at page 45 references a meet-and-confer email that

5   discusses, among other things, follow up work Uber was doing in June 2017 on an interrogatory

6   regarding Tyto's ownership.  (*See* OOP Ex. 92.)  The "confidentiality issues" to which I was

7   referring to in that email were issues that Tyto raised that prevented Uber from determining

8   aspects of Tyto's ownership structure, not information that Uber was withholding from Waymo

9   for confidentiality reasons.

10         18.     During a meet-and-confer call on December 29, 2017, I confirmed to Waymo that

11   the contents of Nick Gicinto's download from the Next Cloud server used by the security team

12   were included in the scope of Uber's search for responsive documents

13         I declare under penalty of perjury that the foregoing is true and correct.  Executed this

14   19th day of January, 2018, in Los Angeles, California.

15

16                                        */s/ Sylvia Rivera*
                                                        Sylvia Rivera

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. González, am the ECF User whose ID and password are being used to file this Declaration. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Sylvia Rivera has concurred in this filing.

*/s/ Arturo J. González*
Arturo J. González