# EXHIBIT A

1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Tel:  415.268.7000 / Fax:  415.268.7522
5
   KAREN L. DUNN (*Pro Hac Vice*)
6  kdunn@bsfllp.com
   HAMISH P.M. HUME (*Pro Hac Vice*)
7  hhume@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
8  1401 New York Avenue, N.W.
   Washington DC  20005
9  Tel:  202.237.2727 / Fax:  202.237.6131

10 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
11 SHAWN RABIN (*Pro Hac Vice*)
   srabin@SusmanGodfrey.com
12 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
13 New York, NY  10019-6023
   Tel:  212.336.8330 / Fax:  212.336.8340
14

15 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
16 and OTTOMOTTO LLC

17              UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA

                 SAN FRANCISCO DIVISION
19

20 WAYMO LLC,                        | Case No.      3:17-cv-00939-WHA

21              Plaintiff,           | **DECLARATION OF CHARLES
                                     | DUROSS REGARDING JACOBS
22       v.                          | COMMUNICATIONS**

23 UBER TECHNOLOGIES, INC.,
   OTTOMOTTO LLC; OTTO TRUCKING
24 LLC,                              | Trial Date:  February 5, 2018

25              Defendants.

26

27

28

1    I, Charles Duross, declare as follows:

2    1.    I am a partner with the law firm of Morrison & Foerster LLP, where I head the

3    Firm's global anti-corruption practice out of its office in Washington, D.C.  Before joining

4    Morrison & Foerster about four years ago, I served at the U.S. Department of Justice for twelve

5    years as a federal prosecutor.  For the first five years of my career, I was an Assistant

6    U.S. Attorney in the Southern District of Florida.  I then worked as a prosecutor for seven years in

7    the Fraud Section of the Criminal Division in Washington, D.C., focused on foreign corruption

8    cases and eventually became the head of the Foreign Corrupt Practices Act Unit.  During my

9    tenure in the Fraud Section, I developed a substantial understanding of corporate compliance

10   programs, oversaw numerous corporate compliance monitorships, designed the corporate

11   compliance program requirements of corporate criminal resolutions, and helped negotiate the

12   Good Practice Guidance on Internal Controls, Ethics, and Compliance issued by the Organization

13   of Economic Co-operation and Development.

14   2.    I have personal knowledge of the facts stated herein.  I understand that the parties

15   have agreed that Morrison & Foerster would answer four questions, and that the responses to

16   those questions will not be deemed a waiver of any privilege, as noted in Docket No. 2370,

17   entered by Magistrate Jacqueline Corley, on December 12, 2017.  I have been asked to  respond

18   to two of those questions:

19   • Describe when and for what purpose any and every attorney at your law firm first

20      learned of the content or allegations contained in the:  (1) 4/14/17 Jacobs

21      Resignation Email; (2) 4/19/17 letter from Halunen Law to Salle Yoo; (3)

22      5/5/17 letter from Halunen law to Angela Padilla; and (4) Jacobs Settlement

23      Agreement, including who learned of the foregoing, how it was communicated to

24      them, and by whom.

25   • Describe to what extent any and every attorney at your law firm investigated any

26      of the allegations in the:  (1) 4/14/17 Jacobs Resignation Email; (2) 4/19/17 letter

27      from Halunen Law to Salle Yoo; (3) 5/5/17 letter from Halunen law to Angela

28      Padilla; and (4) Jacobs Settlement Agreement, including what documents were

1   collected, who was interviewed, what was the result, whether there was a written

2   report, and when each of the foregoing activities took place.

3       3.      Morrison & Foerster has not found any copy of the Jacobs Settlement Agreement

4   at the firm prior to Judge Alsup's November 22, 2017 Notice ("Notice").  Further, I have never

5   seen the Settlement Agreement and did not learn of it until after that date.

6       4.      On or about April 20, 2017, I was engaged to lead a team from Morrison &

7   Foerster to review compliance issues generally at Uber, along with Wilmer Cutler Pickering Hale

8   and Dorr LLP ("Wilmer").  On April 26 2017, Joe Spiegler from Uber forwarded to me and to

9   Wilmer a copy of the Jacobs April 14, 2017 resignation email and the April 19, 2017 document

10  preservation letter from counsel to Richard Jacobs, Clayton Halunen.  Initially, an internal

11  investigation of the Jacobs matter was to be conducted by both Wilmer and Morrison & Foerster,

12  working together.

13      5.      On April 26, 2017, I forwarded the resignation email to two of my fellow partners

14  at Morrison & Foerster, Stacey Sprenkel and Paul Friedman.  Ms. Sprenkel was the other lead

15  partner on the compliance engagement and would also be working on the Jacobs matter.

16  Mr. Friedman leads Morrison & Foerster's compliance practice, and I wanted to discuss staffing

17  issues with him.  That same day, I forwarded the resignation email and the document preservation

18  letter to six other partners (William Stern, Tiffany Cheung, Eric Tate, Stacey Sprenkel, John

19  Carlin, and Arturo Gonzalez) and to Meghan Dysart, who is on Morrison & Foerster's marketing

20  team and helps run the Uber key client team, with a copy to Mr. Friedman.  I copied

21  Messrs. Stern and Tate, Ms. Cheung, and Ms. Dysart because they are members of the firm's

22  Uber key client team, and I wanted them to know about this new engagement.  I included

23  Ms. Sprenkel and Mr. Carlin because they would be working on the Jacobs matter with me.  As

24  mentioned above, I included Mr. Friedman because of staffing issues.  I also included

25  Mr. Gonzalez because there was a reference in the resignation email to Waymo.

26      6.      Shortly thereafter, Ms. Sprenkel replied to all on the second April 26, 2017 email

27  described above, discussing e-Discovery issues.  Mr. Tate responded to that email and copied two

28  additional partners, Sylvia Rivera and Wendy Ray, who were both familiar with e-Discovery

DECLARATION OF CHARLES DUROSS REGARDING JACOBS COMMUNICATIONS
Case No. 3:17-cv-00939-WHA
sf-3849651

2

1   issues pertaining to Uber.  There was no mention in those email exchanges about Mr. Jacobs or

2   the substance of his allegations.

3         7.      Between April 26, 2017, and May 4, 2017, Morrison & Foerster worked with

4   Wilmer on preliminary steps concerning the internal investigation relating to the Jacobs

5   allegations.  For example, Morrison & Foerster prepared draft lists of custodians and search

6   terms, discussed document review platforms, and considered potential consultants.  On

7   May 1, 2017, Ms. Sprenkel forwarded the document preservation letter to two associates working

8   on the matter, Sophia Brill and Lauren Navarro.  Ms. Brill and Ms. Navarro were assisting with

9   preliminary steps in the investigation, such as constructing custodian and search term lists.

10         8.      On May 4, 2017, I was informed that Wilmer would exclusively be handling the

11   Jacobs investigation moving forward.  At that point, Morrison & Foerster had only taken

12   preliminary steps on the Jacobs matter, and was thus never involved in the document collection

13   process, custodian interviews, or any other aspects of the internal investigation of the Jacobs

14   matter.  Morrison & Foerster did, however, continue to work on global compliance issues for

15   Uber.

16         9.      On May 5, 2017, Joe Spiegler forwarded to Wilmer a letter dated May 5, 2017,

17   from Mr. Halunen ("May 5 Letter").  Ms. Sprenkel and I were copied on that email.  That same

18   day, I forwarded the email with the May 5 Letter to Ms. Sprenkel (who had already received it),

19   Mr. Carlin, Ms. Brill, and Ms. Navarro.  I wanted them to be aware of the May 5 Letter because,

20   among other things, I wanted to ensure that the compliance work did not inadvertently overlap

21   with Wilmer's investigation.  In other words, Wilmer, not Morrison & Foerster, was in charge of

22   investigating the allegations of the Jacobs letter, and I wanted to avoid overlap with the work

23   Wilmer was doing.  I do not know of anyone else at Morrison & Foerster who received the

24   May 5 Letter, or who learned of it, prior to the Notice issued by Judge Alsup on

25   November 22, 2017.

26         10.      I did not forward the May 5 Letter to the team at Morrison & Foerster working on

27   the Waymo litigation, because Morrison & Foerster was no longer working on the Jacobs matter.

28   When and how the allegations in that letter, or the letter itself, were to be disclosed more broadly

1  was a matter for the Jacobs investigative team to determine.  My distribution of that document

2  was very limited, that is, only to those team members who would be working with me on the

3  general compliance engagement for Uber.  It was never my intention to "hide" the document from

4  the Waymo litigation team at Morrison & Foerster (or from the Court).  Indeed, it was my

5  expectation that the allegations in the May 5 Letter or the May 5 Letter itself would ultimately be

6  shared with our Waymo litigation team, and I was surprised to learn last month that it had not

7  been.

8        11.    Because Morrison & Foerster was advised that Wilmer would be investigating the

9  Jacobs matter, Morrison & Foerster did not investigate the allegations in the Jacobs resignation

10  email or related letters, did not interview anyone in connection with his emails or letters, did not

11  collect documents in response to the email or letters, and did not prepare any report based on the

12  email or letters.

13        I declare until penalty of perjury that the foregoing is true and correct.  Executed this

14  15th day of December, 2017, in Washington, D.C.

15

16                                               */s/ Charles Duross*
                                               Charles Duross

17

18

19

20

21

22

23

24

25

26

27

28