# EXHIBIT 3

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WAYMO LLC,

PLAINTIFF,

CASE NO.

VS. 3:17-CV-00939-WHA

UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,

DEFENDANTS.

---

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY

VIDEOTAPED DEPOSITION OF ALEX COOPER

PALO ALTO, CALIFORNIA

WEDNESDAY, AUGUST 23, 2017

VOLUME I

Reported By:

MEGAN F. ALVAREZ, RPR, CSR No. 12470

Job No. 2686086

PAGES 1 - 114

BY MS. DAVIS: 09:42:10

Q. Sure. Start with that one first. 09:42:11

A. Not as I recall. 09:42:13

Q. Did he give you any opinions as to Tyto more generally? 09:42:16 09:42:18

A. After the visit, we had a debrief session with Anthony. And as I recall, he felt that -- that the Tyto sensor was a -- was a nice sensor or they had done nice work. As far as I recall, that was about the extent of his -- his opinion. 09:42:20 09:42:24 09:42:29 09:42:33 09:42:37

Q. I'm going to hand you a previously marked exhibit, 1752, which is WAYMO-UBER-00010459. 09:43:24 09:43:26

Go ahead and look up when you're done reading. 09:43:46 09:43:48

A. Okay. 09:48:31

Q. And are those your notes from the Tyto visit? 09:48:33 09:48:35

A. I believe so. 09:48:36

Q. And did you author the notes? 09:48:37

A. Yes. 09:48:39

Q. And do they accurately represent your visit? 09:48:40 09:48:42

A. As I recall, yes. 09:48:43

Q. And the notes look like the tour was pretty comprehensive. Do you agree? 09:48:55 09:48:57

MR. ZADO: Objection as to form. 09:49:00
THE WITNESS: That depends on your 09:49:01
definition of "comprehensive." Yes, I think it was 09:49:02
a fairly normal kind of a tour you would expect. 09:49:05
BY MS. DAVIS: 09:49:08
Q. Did they give you full access to their 09:49:09
facility? 09:49:11
MR. ZADO: Objection as to form. 09:49:12
THE WITNESS: We were shown certain 09:49:13
things. Other things we were not shown. 09:49:16
BY MS. DAVIS: 09:49:18
Q. What were you not allowed to see or what 09:49:18
were you not shown? 09:49:21
A. I don't know. 09:49:23
Q. So there wasn't anything that you wanted 09:49:23
to see that you were not permitted to see? 09:49:24
A. Not as I recall. 09:49:27
Q. Were there any rooms that you weren't 09:49:33
allowed to go into? 09:49:34
A. I don't recall. 09:49:38
Q. And on your visit, did you see anything 09:49:43
that looked like Google technology? 09:49:45
MR. ZADO: Objection as to form. 09:49:51
THE WITNESS: At that point, I was not 09:49:52
familiar with the Google technology, so I couldn't 09:49:53

have made that evaluation. 09:49:56

BY MS. DAVIS: 09:49:58

Q. But you didn't see anything that you knew was Google technology; is that correct? 09:49:59 09:50:00

MR. ZADO: Objection as to form. 09:50:02

THE WITNESS: I didn't see anything that I recognized as Google property. 09:50:04 09:50:05

BY MS. DAVIS: 09:50:08

Q. And Tyto fully showed you their -- their LIDAR system; is that correct? 09:50:13 09:50:17

MR. ZADO: Objection as to form. 09:50:19

THE WITNESS: I would not say they fully showed us their system. They showed us -- they showed us certain parts. Obviously there were some parts they most likely did not show us. But, again, I don't know what those would have been since we didn't see them. 09:50:20 09:50:22 09:50:23 09:50:29 09:50:33 09:50:35

BY MS. DAVIS: 09:50:36

Q. But they opened up and showed you the inside of the unit; isn't that correct? 09:50:37 09:50:39

MR. ZADO: Objection as to form. 09:50:41

THE WITNESS: I recall seeing components, some of the internals. 09:50:43 09:50:44

BY MS. DAVIS: 09:50:49

Q. Did you ask to see any other part of the 09:50:51

unit? 09:50:53

A. I don't recall the specifics of what we asked for. 09:50:54 09:50:56

Q. Do you recall being denied being shown any part of the unit? 09:50:57 09:51:00

A. I don't recall. 09:51:05

Q. But if the unit was based on Google technology, would -- why would they show you the inside of the unit? 09:51:06 09:51:12 09:51:14

MR. ZADO: Objection as to form. 09:51:15

THE WITNESS: I don't know what they would do or not do. I would be speculating. 09:51:17 09:51:19

BY MS. DAVIS: 09:51:21

Q. And when they showed you the inside, did you recognize anything as Google -- Google proprietary information? 09:51:26 09:51:28 09:51:29

MR. ZADO: Objection as to form. 09:51:33

THE WITNESS: As I said previously, I would not have been able to make that determination since I didn't know about the Google technology. 09:51:37 09:51:38 09:51:41

BY MS. DAVIS: 09:51:43

Q. Did you take any photographs or take any additional notes as to the technology? 09:51:44 09:51:47

MR. ZADO: Objection as to form. 09:51:50

THE WITNESS: I don't recall taking any 09:51:52

photographs. 09:51:53

BY MS. DAVIS: 09:51:54

Q. Okay. And did Anthony stay with you the entire visit to Tyto? 09:51:54 09:52:03

A. As I recall, he arrived late. And I believe we all left at about the same time. 09:52:06 09:52:09

Q. Okay. And did he prevent you from seeing anything at Tyto? 09:52:13 09:52:16

A. Not as I recall. 09:52:18

Q. Is there anything not in the notes that you recall from your Tyto visit? 09:52:32 09:52:33

A. This was a long time ago. The notes roughly match with what I recall. I don't recall anything specifically different. 09:52:38 09:52:40 09:52:44

Q. And I guess what were your general impressions after you left Tyto? Did you think that they were going to be a possible vendor or something -- someone who you would collaborate with at Google? 09:52:50 09:52:54 09:52:57 09:52:59 09:53:02

A. At that stage, it was too early to make that determination. Clearly there was potential, and we were interested to continue working with them. 09:53:03 09:53:07 09:53:08 09:53:11

Q. Was their LIDAR system ready to be utilized in its current form at Google at that 09:53:26 09:53:30

point? 09:53:34

MR. ZADO: Objection as to form. 09:53:39

THE WITNESS: Are you referring specifically to Street View or some other part of Google or... 09:53:42 09:53:43 09:53:46

BY MS. DAVIS: 09:53:47

Q. For your use, for Street View's use. 09:53:47

A. I believe at that point we did not think it was ready, but we had not made a full -- what's the word? We had not evaluated the system sufficiently to make that determination. 09:53:50 09:53:52 09:53:57 09:54:01

Q. And what were your -- what were your next steps after your visit to Tyto with regards to Tyto? 09:54:06 09:54:08

A. As I recall and I was -- as written in the notes, we wanted to get an evaluation system loaner to try it out and -- under our own conditions. And so I believe the discussion moved in that direction. 09:54:12 09:54:15 09:54:18 09:54:22

Q. And did you end up receiving a loaner unit to test? 09:54:26 09:54:29

A. We did. 09:54:30

Q. And do you recall when that was? 09:54:31

A. I don't recall specifically, but I believe it was late summer. 09:54:33 09:54:34

Q. And did you discuss -- scratch that. 09:55:18

After your initial visit to Tyto, was 09:55:43

there any discussion of [REDACTED]? 09:55:45

A. After the initial visit, no. Later on, yes. 09:55:52 09:55:55

Q. And did you ever have any discussions with Rom Clement about potentially whether -- scratch that. 09:55:56 09:56:00 09:56:03

Did you have any discussions with Rom Clement or Bob MacDonald about [REDACTED] 09:56:04 09:56:13

A. Yes. 09:56:14

Q. And did you view [REDACTED] 09:56:32

MR. ZADO: Objection as to form. 09:56:34

THE WITNESS: I didn't have any specific plans. 09:56:35 09:56:37

BY MS. DAVIS: 09:57:14

Q. And you said you had an internal debrief after the Tyto visit; is that correct? 09:57:14 09:57:17

A. Yes. 09:57:19

Q. And when did that happen? 09:57:20

A. Sometime after the meeting. I don't recall exactly when. 09:57:23 09:57:25

CERTIFICATE OF REPORTER

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were administered an oath; that a verbatim record of the proceedings was made by me using machine shorthand, which was thereafter transcribed under my direction; and that the foregoing is an accurate transcription thereof.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [ ] was [X] was not requested.

I further certify that I am neither financially interested in the action, nor a relative or employee of any attorney of any party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

DATED: August 24, 2017

MEGAN F. ALVAREZ
CSR No. 12470, RPR