# EXHIBIT 17

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


Case No. 3:17-cv-00939-WHA
_____

WAYMO LLC,                              )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )
                                        )
UBER TECHNOLOGIES, INC.;                )
OTTOMOTTO LLC;                          )
OTTO TRUCKING,                          )
                                        )
          Defendants.                   )
_____)


 HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY


VIDEOTAPED DEPOSITION OF
JAKE NOCON
DATE TAKEN:  DECEMBER 19, 2017




REPORTED BY:

PAUL J. FREDERICKSON, CCR, CSR

JOB NO. 2771324


Pages 1 - 273

Page 56

```
 1      point, but I don't recall them specifically,    10:14:47
 2      anything about them.                             10:14:52
 3           Q.    Are you familiar with whether any     10:14:57
 4      other surveillance was done of Waymo after this  10:15:01
 5      2017 surveillance that you participated in?      10:15:05
 6           A.    I don't -- no, I don't recall         10:15:11
 7      doing any, any other work regarding Waymo.       10:15:13
 8           Q.    Is this surveillance that you         10:15:17
 9      participated in 2017 the only surveillance you   10:15:19
10      did of Waymo?                                    10:15:22
11           A.    I believe so, yes.                    10:15:24
12           Q.    Did you do any other type of          10:15:27
13      investigation or research or work in connection  10:15:33
14      with Waymo at all?                               10:15:38
15           A.    In connection with Waymo?  I'm not    10:15:43
16      sure.  I -- I -- I don't recall Waymo            10:15:50
17      specifically.  There was another instance where  10:15:51
18      we looked at a Google employee.  I'm not sure    10:15:56
19      if there was a tie to Waymo or not.              10:16:00
20           Q.    By the way, let me ask.  Was there    10:16:02
21      a code name given to Waymo at all during your    10:16:04
22      surveillance activity?                           10:16:07
23           A.    There may have been.  I don't         10:16:08
24      recall what it was.                              10:16:15
25           Q.    Okay.                                 10:16:15
```

Page 113

```
 1        designations with the specific intent of        11:52:43

 2        preventing the discovery of devices, documents   11:52:45

 3        and communications in anticipated litigation."   11:52:48

 4               Do you see that?                          11:52:50

 5        A.     Yes, I see that.                          11:52:52

 6        Q.     Did you discuss ephemeral                 11:52:55

 7        communications with anyone on your trip to       11:52:57

 8        Pittsburgh?                                      11:53:09

 9        A.     No, not that I recall.                    11:53:09

10        Q.     Did you discuss nonattributable           11:53:09

11        devices with anyone on your trip to Pittsburgh?  11:53:11

12        A.     No, not that I recall.                    11:53:13

13        Q.     Did you discuss the use of the            11:53:15

14        attorney-client privilege designation on your   11:53:16

15        trip with anyone to Pittsburgh?                  11:53:20

16        A.     No, not that I recall.                    11:53:22

17        Q.     Do you recall when it was that --         11:53:23

18        when the actual launch of the Autonomous Group   11:53:37

19        was?                                             11:53:43

20        A.     Like I mentioned previously, I            11:53:44

21        believe it was September.                        11:53:46

22               [Sneeze.]                                 11:53:49

23               THE WITNESS:  Bless you.                  11:53:49

24        A.     September of 2016.                        11:53:50

25        Q.     Did you receive any written               11:54:05
```

Page 137

```
  1                 So for purposes of identifying        13:20:18
  2      yourself, to the extent that there were Uber     13:20:23
  3      networks and non-Uber networks, you would --     13:20:27
  4      would categorize this sort of cloud service      13:20:31
  5      device that you used to store your work product  13:20:34
  6      as not an Uber system.                           13:20:37
  7                 Did I understand that correctly?       13:20:41
  8          A.    Yes.  It was misattributable and       13:20:45
  9      not attributable to Uber.                         13:20:46
 10          Q.    So how many of these separate          13:20:52
 11      cloud storage systems are you aware of being in  13:20:56
 12      existence?                                        13:21:01
 13          A.    Well, I'm only aware of one I          13:21:05
 14      think.                                            13:21:08
 15          Q.    Are you aware of any other groups      13:21:08
 16      utilizing a cloud storage system that would not  13:21:12
 17      be part of the Uber network?                      13:21:17
 18          A.    No, I'm not aware.                      13:21:23
 19          Q.    So to the extent that there was a      13:21:24
 20      cloud storage system that was not part of the    13:21:26
 21      Uber network, the only one that you're familiar  13:21:29
 22      with is the one that was used by your group at   13:21:31
 23      Threat Operations?                                13:21:35
 24          A.    I believe so, yes.                      13:21:37
 25          Q.    Let me show you what's been            13:21:37
```

Page 161

```
 1              I thought I had answered it, you know,    13:47:54
 2         to the best of my ability.                     13:47:57
 3              The -- the guidance that we were           13:47:59
 4         given, the approvals that we were given,        13:48:02
 5         you know, was obtained through --               13:48:05
 6         through legal.                                  13:48:06
 7    BY MR. LYONS:                                        13:48:07
 8         Q.    Again, that doesn't -- that               13:48:07
 9    doesn't answer my question or solve the problem      13:48:08
10    that we're having.  I mean, you seem to be           13:48:11
11    equating any communication that you had with a       13:48:13
12    lawyer as being a privileged communication even      13:48:16
13    when you had just told them, I was going to go       13:48:19
14    to the bathroom.  That doesn't necessarily           13:48:22
15    mean --                                              13:48:25
16         A.    No, that's not accurate.                  13:48:25
17              MR. UMHOFER:  Objection.  This is          13:48:27
18         getting argumentative.  Can we figure           13:48:28
19         out a way to tone this down?                    13:48:30
20         A.    That -- that's not accurate.  I do        13:48:32
21    not -- based on my understanding of, you know,       13:48:33
22    when I was instructed on the use of                  13:48:39
23    attorney-client privilege, not all                   13:48:43
24    communications with a lawyer are necessarily         13:48:45
25    privileged.                                          13:48:48
```

Page 162

```
 1            Q.     And you received that instruction    13:48:48

 2      from whom?                                        13:48:50

 3            A.     Craig Clark.                          13:48:51

 4            Q.     Okay.                                 13:48:52

 5                   So Craig Clark made it clear to      13:48:52

 6      you that not all communications with lawyers      13:48:54

 7      are privileged?                                   13:48:56

 8                   MS. CHANG:   Objection to the         13:48:57

 9                   extent it calls for a privileged      13:48:58

10                   communication.                       13:49:00

11                   I caution the witness not to         13:49:00

12                   disclose the substance of any privileged  13:49:02

13                   communication.  Mr. Clark, as you know,   13:49:05

14                   is a lawyer, so you need to be very  13:49:06

15                   careful in terms of the communications  13:49:09

16                   that you had with Mr. Clark.         13:49:11

17      BY MR. LYONS:                                     13:49:14

18            Q.     All right.                            13:49:14

19                   Let's -- why don't we get in some    13:49:14

20      exhibits here.  We'll do it that way.             13:49:17

21                   MR. LYONS:   Let's mark this next     13:49:51

22                   in order.                            13:49:52

23                   [Deposition Exhibit 9528 marked      13:49:54

24                   for identification.]                 13:49:56

25      BY MR. LYONS:                                     13:49:56
```

Page 164

1    to do that?                                    13:50:47

2              MS. CHANG:  Objection to the         13:50:48

3         extent it calls for privileged            13:50:49

4         communication.                            13:50:50

5              I caution the witness not to         13:50:51

6         disclose the substance of any privileged  13:50:52

7         communication.                            13:50:55

8         A.    I'm sorry, can you repeat the       13:51:01

9    question?                                      13:51:04

10             MR. LYONS:  Let's have the           13:51:05

11        question read back.                       13:51:06

12             [Discussion off the record.]         13:51:16

13             MR. LYONS:  Here.  I'll do it.       13:51:17

14   BY MR. LYONS:                                  13:51:17

15        Q.    Did you ever have a conversation    13:51:18

16   with anyone at any point in time who told you  13:51:20

17   that you should add someone from legal to all  13:51:24

18   emails?                                        13:51:27

19             MS. CHANG:  Objection to the         13:51:29

20        extent it calls for privileged            13:51:29

21        communication.                            13:51:31

22             I caution the witness not to         13:51:31

23        disclose the substance of any privileged  13:51:32

24        communication.                            13:51:35

25        A.    No, I never had a conversation      13:51:39

Page 165

| | | |
|---|---|---|
| 1 | where somebody told me to add an attorney to | 13:51:40 |
| 2 | all emails. | 13:51:42 |
| 3 | Q.    Did they ever tell you to | 13:51:42 |
| 4 | add -- did you ever have a conversation with | 13:51:44 |
| 5 | anyone who told you that you should add | 13:51:46 |
| 6 | attorney-client privilege to any email?  And | 13:51:49 |
| 7 | that's a yes-or-no question. | 13:51:51 |
| 8 | MS. CHANG:  Same objection. | 13:51:52 |
| 9 | BY MR. LYONS: | 13:51:52 |
| 10 | Q.    And just to be clear, yes or no? | 13:51:56 |
| 11 | This does not call for privileged | 13:51:57 |
| 12 | communication. | 13:52:00 |
| 13 | Did you have a conversation with | 13:52:00 |
| 14 | anyone at any time who told you to add | 13:52:02 |
| 15 | attorney-client privilege to any email? | 13:52:05 |
| 16 | MS. CHANG:  Same caution. | 13:52:07 |
| 17 | A.    I can't recall. | 13:52:13 |
| 18 | Q.    Did you ever have a conversation | 13:52:14 |
| 19 | with anyone at any time who ever told you to | 13:52:15 |
| 20 | add the term "attorney-client privilege" to any | 13:52:18 |
| 21 | document? | 13:52:21 |
| 22 | MS. CHANG:  Same -- same caution. | 13:52:24 |
| 23 | A.    I can't recall any specific | 13:52:32 |
| 24 | instances. | 13:52:34 |
| 25 | Q.    You know as a former law | 13:52:34 |

Page 166

```
 1    enforcement officer that you should not        13:52:37
 2    identify documents as attorney-client privilege 13:52:38
 3    that are not, in fact, attorney-client          13:52:40
 4    privileged communications, do you?              13:52:43
 5         A.    No, I don't recall receiving that    13:52:46
 6    training as a law enforcement officer.          13:52:48
 7         Q.    Let me just -- so that the record    13:52:49
 8    is clear, is it your testimony that you are not 13:52:52
 9    aware that it is inappropriate to designate     13:52:54
10    documents as attorney-client privilege that you 13:52:57
11    know to not be attorney-client privilege?       13:52:59
12              MS. CHANG:  Objection, misstates      13:53:03
13         prior testimony, vague and ambiguous,      13:53:04
14         calls for a legal conclusion.              13:53:06
15         A.    That wasn't your question.  You      13:53:10
16    asked me as a law enforcement officer if I      13:53:11
17    knew.  I don't recall getting that training as  13:53:14
18    a law enforcement officer.  But during my time  13:53:16
19    at Uber, I do recall having -- getting a        13:53:18
20    presentation from Craig Clark where it did talk 13:53:22
21    about not marking documents inappropriately.    13:53:25
22         Q.    Is it your understanding that --     13:53:32
23    well, let me ask it this way.  If I understood  13:53:34
24    you correctly, you do not have a recollection   13:53:39
25    of anyone ever telling you to add               13:53:41
```

Page 167

```
 1    attorney-client privilege to any document.  Did    13:53:44

 2    I understand that testimony correctly?             13:53:46

 3               MR. UMHOFER:  Objection, misstates      13:53:49

 4       prior testimony.                                13:53:50

 5               MS. CHANG:  Join in the objection.      13:53:50

 6       A.    I don't recall what I said                13:53:58

 7    previously, but I can't remember any specific      13:54:00

 8    instances where somebody directed me to add        13:54:04

 9    that to a document.                                13:54:06

10       Q.    I'm looking at the -- the realtime        13:54:08

11    testimony.  It says:                               13:54:10

12               "Did you ever have a conversation       13:54:11

13    with anyone at any time who ever told you to       13:54:13

14    add the term 'attorney-client privilege' to any   13:54:16

15    document?"                                         13:54:18

16               And your answer was:                    13:54:19

17               "I can't recall any specific            13:54:19

18    instances."                                        13:54:21

19               Is that a truthful response to the      13:54:22

20    question?                                          13:54:24

21       A.    Yes.                                      13:54:24

22       Q.    Okay.                                     13:54:24

23               So as you sit here right now, you       13:54:26

24    have no recollection of being told to do that?    13:54:28

25       A.    In a specific instance, no, I            13:54:38
```

Page 168

```
 1    can't -- I can't recall.                        13:54:39
 2         Q.    Do you have a general recollection    13:54:41
 3    of ever being told that?                         13:54:42
 4         A.    I have a general recollection of      13:54:43
 5    being told that if on projects that were being   13:54:45
 6    done, you know, at -- at a lawyer's direction    13:54:49
 7    and under their guidance that, yes, that it      13:54:51
 8    should be marked.                                13:54:54
 9         Q.    And is it -- was it your              13:54:54
10    understanding that everything that you did was   13:54:55
11    at a lawyer's direction?                         13:55:00
12         A.    That is not accurate.                 13:55:01
13         Q.    What wasn't at a lawyer's             13:55:02
14    direction?  What tasks did you perform that you  13:55:04
15    believed were not at a lawyer's direction in     13:55:06
16    the work that you did at Uber?                   13:55:08
17         A.    I -- there's a lot of things.         13:55:10
18         Q.    I got some time.                      13:55:15
19         A.    General, you know, administrative     13:55:20
20    emails.  Working on things that, you know, were  13:55:22
21    outside of our -- our tasks as far as            13:55:26
22    collections.  You know, to say that I, you       13:55:29
23    know, marked everything attorney-client          13:55:35
24    privilege carte blanche is just inaccurate.      13:55:37
25         Q.    Well, that's not what I'm saying      13:55:40
```

Page 170

```
 1    get a sense of when you would claim something    13:56:32
 2    was at the direction of a lawyer and when it     13:56:37
 3    wasn't.  Because it sounds like you said you     13:56:39
 4    had to get approval for all                      13:56:43
 5    information-gathering projects you worked on.    13:56:45
 6         A.    That is correct.                      13:56:48
 7         Q.    So if you had to get approval from    13:56:49
 8    a lawyer for all information-gathering           13:56:51
 9    projects, how did you in your mind make a        13:56:53
10    decision as to when a document or memo or email  13:56:55
11    that you wrote was not going to be designated    13:56:58
12    as attorney-client privileged?  Because you've   13:57:01
13    already gotten the direction from a lawyer.      13:57:04
14         A.    Right.                                13:57:07
15         Q.    So if you got the -- the direction    13:57:07
16    from a lawyer and you got the lawyer's approval  13:57:09
17    to perform some investigation collection or      13:57:12
18    evidence collection or information collection,   13:57:17
19    was it your practice then that everything that   13:57:21
20    you did as a result of that approval was marked  13:57:23
21    privileged?                                      13:57:26
22         A.    No.                                   13:57:26
23         Q.    So when wasn't it?  And what          13:57:27
24    activities would you perform, investigative      13:57:30
25    collection, intelligence collection or any       13:57:33
```

Page 172

```
 1     correct?                                     13:58:41

 2            A.     Yes.   For the documents that are   13:58:46

 3     generated for that specific project, yes.    13:58:47

 4            Q.     And all -- is it your testimony   13:58:49

 5     that all documents that were generated as a   13:58:51

 6     result of that project were privileged?      13:58:54

 7            A.     I don't believe that I marked    13:59:01

 8     every single document as privileged.         13:59:02

 9            Q.     That wasn't my question.  I don't   13:59:04

10     care whether you marked it or not.           13:59:05

11            A.     Yeah.                            13:59:07

12            Q.     My question is whether you are   13:59:08

13     taking the position that every time you did   13:59:10

14     something or generated a document after having   13:59:12

15     received an approval from a lawyer to perform a   13:59:14

16     particular investigative task, that that was   13:59:18

17     privileged.                                  13:59:20

18            MR. UMHOFER:  Objection, calls for     13:59:20

19       a legal conclusion.                        13:59:22

20            A.     I don't know.  I don't know if --   13:59:25

21     I guess I just don't understand the question.   13:59:26

22            Q.     Okay.                           13:59:28

23            Well, I'll -- let's -- let's ask       13:59:28

24     it differently.                              13:59:30

25            Is it your testimony that all         13:59:34
```

Page 178

```
 1            Q.     And whether you recall sending       14:21:04
 2    them or not, would it have been your practice,      14:21:05
 3    after getting approval from a lawyer to conduct     14:21:08
 4    surveillance, to mark email communications          14:21:11
 5    about that surveillance as attorney-client          14:21:14
 6    privileged?  Would that have been your              14:21:17
 7    practice?                                           14:21:19
 8            A.     If it was about logistics between     14:21:23
 9    me and my team members, probably not, no.           14:21:25
10            Q.     Why not?                              14:21:28
11            A.     Because --                            14:21:29
12            Q.     Isn't logistics part of the          14:21:30
13    direction by your lawyer to conduct the             14:21:32
14    surveillance?  Wouldn't that have been part of      14:21:33
15    the task that you received approval for?            14:21:36
16                   MR. UMHOFER:  Objection, compound.   14:21:39
17            A.     I wouldn't have viewed it that way    14:21:41
18    if I was emailing my colleague to say, you          14:21:43
19    know, "Meet me at the airport.  I get in at         14:21:46
20    whatever time."  I -- I don't see that.  You        14:21:49
21    know, if I had to email Craig because I had a       14:21:51
22    question, you know, about the particular            14:21:54
23    operation or was looking for guidance on            14:21:57
24    something, then, yes, that would be -- that         14:21:59
25    would have been marked.                             14:22:02
```

Page 179

```
 1              Q.     So that was -- but that            14:22:03
 2       you -- that was a conversation with Craig.  So   14:22:04
 3       he was a lawyer, wasn't he?                      14:22:05
 4              A.     My understanding he still is.      14:22:09
 5              Q.     So a conversation with your lawyer 14:22:11
 6       specifically about getting legal advice, I       14:22:13
 7       don't think anyone is arguing about whether      14:22:16
 8       that's privileged or not.                        14:22:18
 9              A.     Correct.  But you asked me whether 14:22:18
10       or not I marked specific emails.  And if I was   14:22:20
11       communicating back and forth with Craig, then   14:22:22
12       yes.  But if I was communicating to work on     14:22:25
13       logistics with, you know, members of my team,   14:22:28
14       then no, I don't recall marking those.  I don't 14:22:31
15       recall marking those anything privileged.       14:22:35
16              Q.     Well, you can -- it would not have 14:22:37
17       been your expectation that those would, in      14:22:39
18       fact, be privileged?                            14:22:41
19              A.     I --                               14:22:42
20              MR. UMHOFER:  Objection, calls for        14:22:43
21         a legal conclusion.                            14:22:45
22              A.     I don't know.  I'm not a lawyer.   14:22:45
23              Q.     But wouldn't -- regardless of      14:22:47
24       whether you're a lawyer, it would not have been 14:22:48
25       your expectation that communications about      14:22:51
```

Page 181

```
 1        communications with your coworkers?              14:23:42
 2            A.      Sure.  Yes.                          14:23:43
 3            Q.      Now, looking at Mr. Kalanick's       14:23:45
 4        email here, though, he makes a                   14:23:47
 5        slightly different -- takes a slightly           14:23:50
 6        different approach.  He says:                    14:23:52
 7                    "Add someone from legal to all of    14:23:53
 8        these emails and presentations and add language  14:23:56
 9        about attorney-client privilege to all           14:23:57
10        documents."                                      14:23:59
11                    Do you see that?                     14:24:00
12            A.      Sure.  Yes, I do.                     14:24:01
13            Q.      Now, did you ever have a              14:24:09
14        conversation with anyone who suggested that you  14:24:11
15        should add a lawyer to an email so that you      14:24:14
16        could claim that the email was privileged?       14:24:18
17                    MR. UMHOFER:  Objection, asked and   14:24:21
18            answered.                                    14:24:21
19            A.      I don't recall that.                 14:24:23
20            Q.      Did you ever receive that            14:24:24
21        instruction?                                     14:24:25
22                    MR. UMHOFER:  Same objection.        14:24:26
23            A.      No, I do not recall that.            14:24:29
24            Q.      Did you think it was appropriate     14:24:31
25        to add someone from legal for the purpose of     14:24:32
```

```
 1    claiming privilege?                            14:24:36

 2          A.      In what instance?                14:24:38

 3          Q.      Did you ever have an instance    14:24:41

 4    where you were told that if you added someone  14:24:43

 5    to legal, you could claim privilege to that    14:24:48

 6    communication even if you were not seeking     14:24:50

 7    legal advice from that person?                 14:24:52

 8          A.      I don't recall that, no.         14:24:55

 9          Q.      Did you know that it was improper 14:24:59

10    to add someone from legal to an email for the  14:25:00

11    sole purpose of claiming privilege when you    14:25:03

12    were not seeking legal advice for that person? 14:25:05

13          A.      Yeah.  That was part of Craig's   14:25:08

14    presentation, yes.                             14:25:10

15          Q.      So looking at Mr. Kalanick's email 14:25:11

16    here, you would agree that if the purpose of   14:25:13

17    the email was not to seek legal advice, that   14:25:16

18    would be inappropriate to add someone from     14:25:20

19    legal for the purpose of claiming             14:25:22

20    attorney-client privilege?                     14:25:25

21          MR. UMHOFER:  Objection, calls for        14:25:26

22    a legal conclusion.                            14:25:28

23          MS. CHANG:  Join in the objection.       14:25:28

24          A.      I don't know what Travis --      14:25:31

25    Mr. Kalanick was intending with this email, and 14:25:35
```

Page 197

```
 1      a communication with him in his capacity as a          14:39:08
 2      lawyer, that that communication could be marked        14:39:12
 3      attorney-client privilege; correct?                    14:39:15
 4              A.      I'm sorry.  Can you repeat your         14:39:18
 5      question?                                              14:39:19
 6              Q.      You understood that if you had a        14:39:19
 7      communication with him in his capacity as a            14:39:21
 8      lawyer, that that communication would be marked        14:39:23
 9      attorney-client privileged?                            14:39:25
10              A.      Yes.  Based on the information          14:39:30
11      contained in -- that he presented in this, that        14:39:31
12      if we were seeking legal advice or legal               14:39:34
13      guidance, that the -- yes, that would be               14:39:37
14      privileged.  Whether or not that we had marked         14:39:40
15      a document for that, I -- I don't know.                14:39:42
16              Q.      Okay.                                  14:39:42
17                      So you understood -- just so that      14:39:45
18      I'm -- I'm clear, you understood that by               14:39:48
19      marking something attorney-client privilege,           14:39:51
20      that it could be protected from disclosure.            14:39:54
21                      Did you understand that?               14:39:59
22              A.      Yes.  That was part of the             14:40:01
23      presentation.                                          14:40:02
24              Q.      Okay.                                  14:40:02
25                      And certainly as it relates to         14:40:03
```

Page 198

```
 1        communications with Mr. Clark, you understood      14:40:05

 2        that if communications with him were marked as      14:40:07

 3        attorney-client privileged, they could be          14:40:12

 4        protected from disclosure?                          14:40:13

 5              A.    If they were seeking legal advice       14:40:15

 6        or guidance, yes.                                   14:40:17

 7              Q.    Okay.                                    14:40:18

 8                    And so to the extent that               14:40:21

 9        Mr. Clark had communications with people           14:40:23

10        seeking legal advice or legal guidance, as long    14:40:25

11        as the communication was marked attorney-client    14:40:30

12        privilege, it would be subject from                14:40:32

13        disclosure -- excuse me, it would be protected     14:40:35

14        from disclosure.                                    14:40:37

15                    You understood that?                   14:40:38

16              A.    So I don't -- I'm not sure.  I'm        14:40:42

17        not sure I'm understanding your question           14:40:47

18        properly.                                           14:40:48

19              Q.    Well, I guess maybe I'm -- maybe       14:40:50

20        I'm -- I'm trying to understand if -- if           14:40:51

21        Mr. Clark's legal advice and guidance was          14:40:56

22        protected from disclosure, what was the basis      14:41:01

23        for his preference to have telephone               14:41:03

24        conversations?  Because the written                14:41:05

25        communications would also be protected from        14:41:08
```

Page 208

```
 1    issues at the company.                       14:52:57

 2          Q.    Did Mr. Clark ever coach you on   14:53:33

 3    how to use the attorney-client privilege to   14:53:36

 4    ensure that sensitive intelligence collection 14:53:39

 5    activities would not surface in litigation?   14:53:43

 6          A.    No, I don't recall that.          14:53:50

 7          Q.    Are you familiar with something   14:53:51

 8    called the Lawyer Dog meme?                   14:54:07

 9          A.    Yes, from the presentation that   14:54:11

10    you showed previously.                        14:54:13

11          Q.    Do you recall ever receiving any  14:54:14

12    email or other document containing the Lawyer 14:54:16

13    Dog meme?                                     14:54:20

14          A.    I don't know if I received it or  14:54:24

15    not.                                          14:54:26

16          Q.    Did Mr. Clark provide any handouts 14:54:29

17    when he gave this presentation?               14:54:31

18          A.    I don't recall that.              14:54:36

19          Q.    Did you ever come across a        14:54:37

20    document at Uber that was marked "Draft" even 14:54:52

21    though you believed it was a final version?   14:54:55

22          A.    I -- no, I'm not sure.  I don't   14:55:11

23    think so.                                     14:55:11

24          Q.    This email says if you -- uses the 14:55:11

25    phrase "if you prefer not to write/retain     14:55:34
```

Page 231

```
 1      requesting devices; correct?              15:23:29

 2           A.    That's correct.                15:23:31

 3           Q.    And with regard to the information  15:23:32

 4      in the cloud, did you give them that      15:23:34

 5      information as well?                       15:23:36

 6           A.    No, I didn't have it.          15:23:37

 7           Q.    Okay.                          15:23:39

 8                 Did you tell them that it existed?  15:23:39

 9           A.    I don't recall what I told them.  15:23:44

10                 MS. CHANG:   Counsel, when you're  15:23:46

11           at a good stopping point, we've been  15:23:52

12           going over an hour.                  15:23:54

13                 MR. LYONS:   Okay.  Sure.  Let's  15:23:55

14           take a break.                        15:23:58

15                 THE VIDEOGRAPHER:   It's 3:23.  15:23:59

16           We're going off the record.          15:24:02

17                 [Recess at 3:23 p.m.]          15:24:03

18                 [Resuming at 3:44 p.m.]        15:34:42

19                 THE VIDEOGRAPHER:   We are back on  15:44:48

20           the record, and it's 3:44.           15:44:50

21                 EXAMINATION CONTINUING         15:44:53

22      BY MR. LYONS:                             15:44:53

23           Q.    So we were talking about Ric   15:44:54

24      Jacobs earlier.  Did he ever express to you any  15:45:00

25      concern about the use of ephemeral        15:45:06
```

Page 232

```
 1     communications or nonattributable devices?        15:45:09
 2          A.     No, I don't recall having            15:45:15
 3     conversations with him about that.                15:45:16
 4          Q.     Did he ever express any concern to    15:45:18
 5     you about the use of improper privilege           15:45:20
 6     designations?                                     15:45:25
 7          A.     I do not recall him expressing        15:45:26
 8     that to me.                                       15:45:29
 9          Q.     Did he ever express to you any        15:45:29
10     concerns about the use of "Draft" designations    15:45:32
11     or documents designated as "Draft"?               15:45:35
12          A.     No, I don't recall that.              15:45:40
13          Q.     Did he ever express any concern       15:45:42
14     about Uber engaging in theft of trade secrets?    15:45:44
15          A.     No.                                   15:45:44
16          Q.     Did he ever express any concern       15:45:50
17     about Uber trying to evade its obligations to     15:45:53
18     produce documents in discovery?                   15:45:55
19          A.     No, I don't recall him expressing     15:46:01
20     that.                                             15:46:03
21          Q.     Did he ever express any concern       15:46:07
22     about people hiring -- excuse me, about Uber      15:46:08
23     hiring people to support the ATG group who are    15:46:11
24     kept off of ATG's books?                          15:46:16
25          A.     I don't recall hearing him say        15:46:20
```

Page 235

```
 1    that at Uber?                                  15:50:45

 2         A.    No.                                 15:50:45

 3         Q.    And you have no knowledge as to     15:50:46

 4    whether that allegation is true or not?        15:50:47

 5         A.    I don't know.                        15:50:49

 6         Q.    All right.  I'm going to show you    15:50:50

 7    what's been previously mark as 9075.            15:51:10

 8               [Document passed to the witness.]    15:51:13

 9    BY MR. LYONS:                                   15:51:36

10         Q.    So there's an email at the bottom    15:51:36

11    here from Mat Henley to ███████████ dated       15:51:40

12    June 21 of this year.                           15:51:44

13               Do you recall ever seeing this       15:51:48

14    email before?                                   15:51:50

15         A.    Yes, sir.                            15:51:50

16         Q.    When was the first time you saw      15:51:51

17    this email?                                     15:51:53

18         A.    I believe that I was -- yeah, I      15:51:54

19    was cc'd on it when it went out.                15:51:58

20         Q.    Did you have any involvement in      15:52:01

21    drafting the email?                             15:52:03

22         A.    Yes, sir.                            15:52:04

23         Q.    And what was your involvement in     15:52:05

24    drafting the email?                             15:52:07

25         A.    I believe that we saw a rough        15:52:13
```

Page 236

```
 1     draft of it.                              15:52:15
 2          Q.    Who drafted the email originally?   15:52:16
 3          A.    I don't know.                    15:52:20
 4          Q.    Okay.                            15:52:20
 5                But you -- you saw a rough draft.  15:52:21
 6     How did you see the rough draft?          15:52:23
 7          A.    I don't remember.               15:52:25
 8          Q.    Did you provide any comments     15:52:27
 9     regarding the rough draft?                15:52:29
10          A.    I don't recall.                 15:52:31
11          Q.    Did you talk to anyone about the  15:52:35
12     rough draft?                              15:52:39
13          A.    I -- likely.  I don't remember any  15:52:45
14     of the specific conversations.            15:52:48
15          Q.    You didn't draft the email       15:52:49
16     yourself -- excuse me, you didn't draft   15:52:51
17     the -- the rough version of this yourself?  15:52:53
18          A.    No, sir.                        15:52:55
19          Q.    So if you turn the page and you  15:52:56
20     look at the bottom of the email, it appears  15:53:08
21     that Mr. Henley has signed this on behalf of  15:53:10
22     Craig Clark, Nick Gicinto, yourself and Ed  15:53:15
23     Russo; right?                             15:53:19
24          A.    Yes, sir.                       15:53:20
25          Q.    Do you recall any discussions    15:53:21
```

Page 237

```
1    about Mr. Henley signing on behalf of you as        15:53:22
2    individuals?                                         15:53:29
3         A.    Yes, I was aware that he was going        15:53:30
4    to sign on my behalf.                                15:53:32
5         Q.    Okay.                                     15:53:33
6              And what did you understand the            15:53:34
7    purpose of the email to be?                          15:53:35
```

[REDACTED]

15:54:29









```
 1                C E R T I F I C A T E

 2

 3              I, PAUL J. FREDERICKSON, CA

 4     Certified Shorthand Reporter No. 13164 and

       WA Certified Court Reporter No. 2419, do

 5     hereby certify:

               That prior to being examined,

 6     the witness named in the foregoing

 7     deposition was by me duly sworn or affirmed

 8     to testify to the truth, the whole truth and

       nothing but the truth;

 9              That said deposition was taken

10     down by me in shorthand at the time and

11     place therein named, and thereafter reduced

12     to print by means of computer-aided

       transcription; and the same is a true,

13     correct and complete transcript of said

14     proceedings.

15              I further certify that I am not

16     interested in the outcome of the action.

17              Witness my hand this 20th day

18     of December 2017.

19

20

21

22

23        PAUL J. FREDERICKSON, CCR, CSR

24          WA CCR 2419  CA CSR 13164

25       Expiration date:  March 31, 2018
```

Page 273