# EXHIBIT 18

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Page 112

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


Case No. 3:17-cv-00939-WHA
_____

WAYMO LLC,                              )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )
                                        )
UBER TECHNOLOGIES, INC.;                )
OTTOMOTTO LLC;                          )
OTTO TRUCKING,                          )
                                        )
            Defendants.                 )
_____)


HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF

ANGELA PADILLA

VOLUME II

DATE TAKEN:  DECEMBER 22, 2017




REPORTED BY:

PAUL J. FREDERICKSON, CCR, CSR

JOB NO. 2780796


Pages 112 - 303

Page 169

```
 1   relation to Waymo?                              10:49:43
 2        A.     I -- I don't know.  I wasn't there  10:49:45
 3   when they had the communication.                10:49:47
 4        Q.     The -- so as of June 22, 2017, the  10:49:52
 5   internal directive was no longer to limit the   10:50:13
 6   distribution of the Jacobs letter in the manner 10:50:21
 7   that compliance had told you to do when it      10:50:29
 8   first came in?                                  10:50:32
 9             MR. GONZALEZ:  Object to form.        10:50:33
10        A.     No.  You're misstating what         10:50:34
11   I -- what I testified to.  No.  The direction   10:50:36
12   was to share the letter with the government and 10:50:39
13   no further -- and no further with inside the    10:50:44
14   company.                                        10:50:48
15        Q.     Okay.                               10:50:49
16             Except for the public relations       10:50:50
17   people?                                         10:50:52
18        A.     Except for ███ and ███ and the      10:50:52
19   reason for that was because, as part of his     10:50:55
20   extortion, Mr. Jacobs was telling us that he    10:50:59
21   was going to be going to The New York Times and 10:51:02
22   the Wall Street Journal the next day.  And so   10:51:04
23   in case that actually did happen, it would be   10:51:07
24   good for ███ and ███ to be aware of it.         10:51:10
25        Q.     Did you tell them not to share the  10:51:13
```

Page 170

```
 1    May 5, 2017 letter with anyone within the        10:51:19
 2    company?                                          10:51:23
 3         A.    Yes, and they were scrupulous          10:51:24
 4    about that.                                       10:51:25
 5         Q.    You don't say that in your email       10:51:27
 6    here.                                             10:51:28
 7         A.    No.  We had -- we had several          10:51:28
 8    phone calls.  This afternoon, we convened         10:51:31
 9    conference calls with them, special matters       10:51:33
10    committee, myself, Theodora Lee, Patrick          10:51:36
11    Robbins to discuss it.                            10:51:40
12         Q.    Did ██████████ -- or ██████████        10:51:42
13    or ████████████ have communications with the     10:51:50
14    press regarding the letter at this time?          10:51:53
15         A.    No.                                    10:51:55
16         Q.    The -- do you have any written         10:51:56
17    correspondence with ██████████ and                10:52:04
18    ████████████ regarding the fact that they         10:52:10
19    should not have passed along -- that they         10:52:13
20    should not pass along the May 5, 2017 letter      10:52:16
21    when they got it?                                 10:52:19
22         A.    I'm -- I don't think I said it in      10:52:20
23    writing, but I know that we said it in this       10:52:22
24    call.                                             10:52:25
25         Q.    In which call?                         10:52:27
```

Page 204

| | | |
|---|---|---|
| 1 | And so when -- and we spoke to | 11:49:25 |
| 2 | them each briefly.  And I know we asked Mat, | 11:49:27 |
| 3 | Nick -- who were the other guys? -- Ed, in -- | 11:49:30 |
| 4 | in that -- in those conversations about what | 11:49:35 |
| 5 | had happened with the employment relationship | 11:49:37 |
| 6 | and was he demoted and what was the perf and | 11:49:39 |
| 7 | why -- why did the perf scores go down. | 11:49:42 |
| 8 | Because we were looking at his employment | 11:49:44 |
| 9 | performance scores very deeply, Ric's | 11:49:46 |
| 10 | performance scores.  In that context we said, | 11:49:49 |
| 11 | "And, hey..." -- and we asked if there was any | 11:49:51 |
| 12 | truth to the allegation that Craig had done | 11:49:52 |
| 13 | this mistraining with attorney-client.  They | 11:49:53 |
| 14 | all said no. | 11:49:57 |
| 15 | But the -- the one thing that they | 11:49:59 |
| 16 | did say and what -- what is true is that ████ | 11:50:00 |
| 17 | ████████, who is our former head of | 11:50:05 |
| 18 | communications and policy, who was the | 11:50:07 |
| 19 | predecessor to ███████████, ██████ brought | 11:50:09 |
| 20 | with her to the company a convention that was | 11:50:12 |
| 21 | really -- was the first time I had ever seen | 11:50:15 |
| 22 | it, and it -- and it has been used very, very | 11:50:18 |
| 23 | widely, and it had added to the confusion about | 11:50:20 |
| 24 | what is privileged and what's not.  And the | 11:50:22 |
| 25 | convention that she brought is in memos or | 11:50:25 |

```
 1    emails, you add a lawyer and you mark it              11:50:29
 2    "Attorney-Client Privileged" and at the very         11:50:33
 3    end you say, you know, "Any legal advice,            11:50:35
 4    David?"  You know, "Any legal advice, Arturo?"       11:50:38
 5              And she said that she had learned          11:50:43
 6    that at Google, which is where she came from.        11:50:45
 7              And so all of our Googlers -- we           11:50:48
 8    call them "Googlers" -- all of our Googlers          11:50:50
 9    brought that convention and used it.  And the        11:50:53
10    first time I saw it I actually thought the           11:50:54
11    question at the end was a -- was an actual           11:50:56
12    question for me, and I foolishly answered it,        11:50:58
13    which was kind of embarrassing.  And then I was      11:51:01
14    told by either ████ or ████ or someone on           11:51:03
15    their team, or ██████████, who had worked           11:51:05
16    at Google, she -- they said, "They're not            11:51:09
17    actually asking you a question, Angela.              11:51:11
18    They're not asking your legal advice.  They're       11:51:12
19    just putting it there because they think it          11:51:14
20    makes it privileged."                                11:51:18
21              So here we go.  It's how we have a         11:51:19
22    lot of mix-ups about the privilege in the            11:51:22
23    company.  Trying to sort it out.  Despite lots       11:51:25
24    of training to the contrary.                         11:51:29
25              MR. PERLSON:  Move to strike the           11:51:29
```

Page 206

```
 1          whole conversation of Whetstone as          11:51:30

 2          nonresponsive.                              11:51:33

 3   BY MR. PERLSON:                                    11:51:38

 4          Q.    The -- so do you -- would you         11:51:38

 5   agree that it is improper to merely add someone    11:51:40

 6   as a lawyer to something, a document or an         11:51:45

 7   email, just to make it privileged when it          11:51:53

 8   isn't?                                             11:51:58

 9          A.    Look, how the -- how the              11:51:59

10   attorney-client privilege works, and I used to     11:52:01

11   teach this at VMware and in my law firm, so I'm    11:52:02

12   very, very familiar with it, is it's not           11:52:06

13   whether you mark it "attorney-client               11:52:09

14   privileged" or not and it's not whether you add    11:52:11

15   a lawyer to the cc or the to/from line.  What      11:52:14

16   it is, it's -- it's the fundamental nature of      11:52:20

17   the communication.  And it has to be the           11:52:23

18   elements:  Confidential communication to or        11:52:24

19   from the attorney with the client for the          11:52:28

20   purpose of obtaining legal advice.  That's it.     11:52:32

21   Those are the elements of attorney-client          11:52:36

22   privilege.                                         11:52:38

23              So, for example, you could -- you       11:52:39

24   could create an attorney-client privileged         11:52:41

25   document that is privileged and forget to mark     11:52:43
```

Page 207

```
 1    it "attorney-client privileged."  No matter.       11:52:44
 2    It's still privileged.                             11:52:47
 3              Similarly, you could create a            11:52:50
 4    nonprivileged document and mistakenly mark it      11:52:52
 5    "privileged."  That does not convert it into a     11:52:57
 6    privileged document.                               11:52:59
 7              So my own view is adding a lawyer        11:53:03
 8    does nothing.  Adding -- you know, as ██████       11:53:08
 9    ████████   and all the Googlers taught their       11:53:11
10    teams to do, saying at the end, "Hey, lawyer.      11:53:14
11    Any advice?"  Like, none of these things are       11:53:16
12    valuable.                                          11:53:20
13              What -- all that matters is the          11:53:20
14    substance of the communication.  And then when     11:53:22
15    we do litigation, because there are so many        11:53:24
16    mix-ups in corporate America about this topic,     11:53:26
17    outside counsel of course does an independent      11:53:30
18    review of each document and independently          11:53:33
19    assesses whether each document is                  11:53:37
20    attorney-client privileged or not.                 11:53:40
21              I mean, you guys do that, MoFo           11:53:41
22    does it, every outside lawyer does it.  Because    11:53:43
23    if you relied on what the client said was          11:53:45
24    privileged or not privileged, it would be -- it    11:53:47
25    would be a car crash.                              11:53:49
```







Page 249

13:33:39





Page 257

13:43:38









HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1              C E R T I F I C A T E

2

3              I, PAUL J. FREDERICKSON, CA
   Certified Shorthand Reporter No. 13164 and
4  WA Certified Court Reporter No. 2419, do
5  hereby certify:

6              That prior to being examined,
   the witness named in the foregoing
7  deposition was by me duly sworn or affirmed
8  to testify to the truth, the whole truth and
9  nothing but the truth;

10             That said deposition was taken
   down by me in shorthand at the time and
11 place therein named, and thereafter reduced
12 to print by means of computer-aided
   transcription; and the same is a true,
13 correct and complete transcript of said
14 proceedings.

               I further certify that I am not
15 interested in the outcome of the action.

16             Witness my hand this 26th day
17 of December 2017.

18

19

20

21

22

23      PAUL J. FREDERICKSON, CCR, CSR

24         WA CCR 2419  CA CSR 13164

25      Expiration date:  March 31, 2018

                              Page 303