# EXHIBIT 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--oOo--

WAYMO LLC,

        Plaintiff,

vs.                    Case No. 3:17-cv-00939-WHA

UBER TECHNOLOGIES, INC.;

OTTOMOTTO LLC; OTTO TRUCKING LLC,

        Defendants.

_____/

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

30(b)(6) VIDEOTAPED DEPOSITION OF LIOR RON

VOLUME II

TUESDAY, DECEMBER 12, 2017

Reported by:

Anrae Wimberley

CSR No. 7778

Job No. 2771228B

Pages 306 - 434

1  will work and be most convenient for you.
2          But you know, look.  You closed the last
3  deposition, and I'll give you some wiggle room if
4  you made a mistake.  It's okay.
5      MR. SCHMIDT:  All right.  I'm going to move on
6  because this is wasting my time.
7      MR. RABIN:  So how do you want to proceed?
8      MR. SCHMIDT:  I'm going to ask the questions
9  that I think need to be asked.  And if the witness
10 refuses to answer the questions, then we'll take it
11 up later as appropriate.
12         I think the transcript is very clear on
13 what's going on here.
14 BY MR. SCHMIDT:
15     Q.  Sir, was Slack used at Ottomotto in
16 conjunction with the negotiations that led to the
17 acquisition of Ottomotto by Uber?
18     A.  No.  I do not believe we've used Slack to
19 communicate with Uber on any matters related to the
20 negotiation.
21     Q.  Were any forms of communication that you
22 consider ephemeral communications used during the
23 negotiations that led to the acquisition of
24 Ottomotto by Uber?
25     A.  No, not to the best of my knowledge.

Page 354

1    Q.   What methods of communications were used
2    regarding the negotiations for Uber's acquisition of
3    Ottomotto?
4    A.   Again, the topic here is around ephemeral,
5    and so are you asking in my personal capacity sort
6    of all the communication channels?
7    Q.   I just want to know whatever communication
8    channels you can recall that were used to
9    communicate about the acquisition of Ottomotto by
10   Uber.
11        MR. RABIN:  You can answer.  If it's ephemeral,
12   you can do it in your corporate capacity.  If it's
13   not ephemeral, you can do it in your individual
14   capacity.
15        THE WITNESS:  Right.  So I don't think -- in my
16   corporate capacity, I don't think any of the
17   communication methods were ephemeral, meaning sort
18   of used in communication channels that are designed
19   to not store messages by default.
20            In my personal capacity I believe there
21   was e-mail and text messages used, if I recall
22   correctly.
23        MR. RABIN:  And let me just stop one second.
24            So just for the record, I'm allowing you
25   to proceed on this basis so as not to impede it.

1    A.   Well, as I've conversed with James, I
2  don't believe he used it, and he does -- to the best
3  of my understanding and his understanding, nobody on
4  his team has used that tool as well.
5         And as we've discussed before, Anthony got
6  an invitation to that tool, but I'm not aware of any
7  communication whatsoever that Anthony had on the
8  tool at all, and on the tool specifically relating
9  to LiDAR.
10   Q.   Did you ask Mr. Levandowski if he
11 communicated on Wickr about LiDAR development?
12   MR. RABIN:  Objection; form.
13   THE WITNESS:  I have not asked Anthony directly
14 that question.  But it is my understanding that he
15 got an invitation from the ThreatOps team as a
16 follow-up to our meeting on market data, and it had
17 nothing to do with LiDAR development whatsoever.
18 That's my understanding.
19 BY MR. SCHMIDT:
20   Q.   What's that understanding based on?
21   A.   It's based on the dates of that invitation
22 being sent in the time frame of our discussion with
23 the ThreatOps team.
24         It's based on the fact that the invitation
25 came on the same e-mail to the two of us, and only

```
 1   the two of us, and not to any other sort of LiDAR
 2   team members.
 3           And it came -- and it stems from my
 4   understanding that the LiDAR team has not used Wickr
 5   for their job.
 6           And I believe I haven't seen names of
 7   LiDAR team members on that list of Wickr users at
 8   Uber, but I'm happy to take another look to refresh
 9   my memory and be definitive on that answer.
10      Q.   I'm sorry, I just don't have time to help
11   you prepare for your corporate testimony.  So if
12   you're not able to say --
13           MR. RABIN:  Counsel, please be respectful to
14   the witness.
15           MR. SCHMIDT:  Counsel, don't make speaking
16   objections.
17           MR. RABIN:  I'm not.  I'm asking you to please,
18   as an officer of the Court, be respectful in the
19   deposition to the witness.  What you're doing is not
20   respectful.
21           MR. SCHMIDT:  All right.  I'm moving on.
22   You're wasting my time again.
23           MR. RABIN:  And don't tell me I'm wasting your
24   time.  I'm trying to ask you to be respectful.
25   Okay?
```

Page 406

1   any Uber-related activity.
2          And just so I understand, can you help
3   clarify?
4          Are those questions part of the 30(b)(6)
5   and the topics we discussed or are those now
6   questions in my personal capacity, so I'll be clear?
7      Q.   I mean this is related to the secure
8   ephemeral messaging, in my view.
9          But, you know, I understand your counsel
10  is reserving his rights, so that's fine.
11         I just ask that you answer the questions
12  to the best of your ability.
13     A.   Okay.  Thank you.
14     Q.   Are you aware of Uber using Amazon AWS
15  servers for certain projects?
16     A.   No, not that I'm aware of.
17     Q.   Do you have any knowledge of Uber using
18  servers or networks that were set up to be separate
19  from Uber's primary corporate system?
20     MR. RABIN:  Objection; scope.
21     THE WITNESS:  No, not that I'm aware of.  I'm
22  not in the technical capacity, so I'm not familiar
23  with those details.
24  BY MR. SCHMIDT:
25     Q.   Are you aware of anyone at Uber using a

Page 407

1 virtual machine setup on a computer system that
2 would wipe clean upon the closing of a virtual
3 machine session?
4     MR. RABIN: Objection; scope.
5     THE WITNESS: No, I'm not aware of that.
6 BY MR. SCHMIDT:
7     Q. Are you familiar with the concept of a
8 virtual machine on a computer system?
9     A. I think so. From my poor recollection of
10 my computer science days, that's like, essentially,
11 a virtual machine that runs on a computer.
12     MR. SCHMIDT: Next exhibit.
13     (Plaintiff's Exhibit 9023 was marked.)
14 BY MR. SCHMIDT:
15     Q. Sir, you've had placed before you the next
16 exhibit in order, 9023.
17     I'll represent to you that this is an
18 exhibit to the Stroz Friedberg report that was
19 issued in connection with Uber's acquisition of
20 Ottomotto.
21     This is a document titled "Lior Ron
22 Preliminary Forensics Findings."
23     Have you seen this document before?
24     A. I have not seen the document. And I
25 thought there was -- am I supposed to see the

Case 3:17-cv-00939-WHA   Document 2509-20   Filed 01/19/18   Page 9 of 9
HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY


```
 1         FEDERAL CERTIFICATE OF DEPOSITION OFFICER
 2         I, ANRAE WIMBERLEY, CSR NO. 7778, do hereby
    declare:
 3         That, prior to being examined, the witness
    named in the foregoing deposition was by me duly
 4  sworn pursuant to Section 30(f)(1) of the Federal
    Rules of Civil Procedure and the deposition is a
 5  true record of the testimony given by the witness;
 6         That said deposition was taken down by me in
    shorthand at the time and place therein named and
 7  thereafter reduced to text under my direction;
 8         --X---   That the witness was requested to
    review the transcript and make any changes to the
 9  transcript as a result of that review pursuant to
    Section 30(e) of the Federal Rules of Civil
10  Procedure;
11         -----   No changes have been provided by the
    witness during the period allowed;
12         -----   The changes made by the witness are
13  appended to the transcript;
14         -----   No request was made that the
    transcript be reviewed pursuant to Section 30(e) of
15  the Federal Rules of Civil Procedure.
16         I further declare that I have no interest in
    the event of the action.
17         I declare under penalty of perjury under the
18  laws of the United States of America that the
    foregoing is true and correct.
19         WITNESS my hand this 13th day of December,
20  2017.
21
22
23
24                    [signature: Anrae Wimberley]
25         ANRAE WIMBERLEY, CSR NO. 7778

                                              Page 434
```