# EXHIBIT 25

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

_____

| | |
|---|---|
| WAYMO LLC, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. |
| ) | 17-cv-00939-WHA |
| UBER TECHNOLOGIES, INC.; ) | |
| OTTOMOTTO, LLC; OTTO TRUCKING LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

_____)


HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY

VIDEOTAPED DEPOSITION OF

OGNEN STOJANOVSKI, ESQ.

San Francisco, California

Thursday, July 20, 2017

Volume I




Reported by:
MARY J. GOFF
CSR No. 13427

Job No. 2663397

PAGES 1-321

| | | |
|---|---|---|
| 1 | Sandstone Group, right? | 09:37:48 |
| 2 | A   I had not met John Gardner before he | 09:37:48 |
| 3 | called me. | 09:37:50 |
| 4 | Q   So -- so my question is:  Why -- why did | 09:37:51 |
| 5 | he think to call you? | 09:37:54 |
| 6 | MR. SAWYER:  Objection, form. | 09:37:56 |
| 7 | MS. RAY:  Join. | 09:37:58 |
| 8 | A   He told me that he had gotten my name from | 09:38:02 |
| 9 | Anthony Levandowski. | 09:38:06 |
| 10 | Q   And what else do you remember about that | 09:38:11 |
| 11 | conversation when he called you? | 09:38:14 |
| 12 | A   He called me to tell me that he was in the | 09:38:15 |
| 13 | process of forming an investment company and asked | 09:38:20 |
| 14 | if I would be interested in being his manager.  That | 09:38:26 |
| 15 | was the gist of the first conversation. | 09:38:30 |
| 16 | Q   Does Anthony Levandowski have any | 09:38:38 |
| 17 | ownership interest in the Bismuth Trust? | 09:38:43 |
| 18 | A   I don't know. | 09:38:46 |
| 19 | Q   Have you ever communicated with Anthony | 09:38:46 |
| 20 | Levandowski about the Bismuth Trust? | 09:38:50 |
| 21 | A   Have I communicated with Anthony | 09:38:54 |
| 22 | Levandowski about the Bismuth?  Yes, I have. | 09:38:56 |
| 23 | Q   How many times have you communicated with | 09:39:00 |
| 24 | Anthony Levandowski about the Bismuth Trust? | 09:39:02 |
| 25 | A   Once or twice. | 09:39:07 |

```
 1      Q    When was the first communication you had         09:39:09
 2   with Anthony Levandowski about the Bismuth Trust?        09:39:11
 3      A    Probably right around the time of the            09:39:18
 4   formation of Sandstone.  Maybe -- maybe September or     09:39:20
 5   August of 2012.  The same time frame.                    09:39:23
 6      Q    And tell me everything you remember about        09:39:30
 7   that conversation.                                       09:39:32
 8      A    That was a very brief conversation.  I           09:39:33
 9   just asked him whether he owned the Bismuth Trust.       09:39:36
10      Q    What did he say in response?                     09:39:42
11      A    He said he did not.                              09:39:43
12      Q    Was that conversation in person or over          09:39:46
13   the phone?                                               09:39:48
14      A    I think it was in person.                        09:39:51
15      Q    Where did that conversation take place?          09:39:54
16      A    It took place in Berkeley, California.           09:39:58
17      Q    Why in Berkeley?                                 09:40:07
18      A    I'm trying to remember.  It was either at        09:40:08
19   his house or at the initial offices of Odin Wave,        09:40:11
20   which is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                09:40:15
21           THE COURT REPORTER:  Of?                         09:40:17
22      A    Huh?  It was either his --                       09:40:20
23           THE COURT REPORTER:  It was?                     09:40:20
24      A    -- Odin Wave, O D I N W A V E, which is          09:40:20
25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Berkeley.                              09:40:26
```

# VERITEXT LEGAL SOLUTIONS
## COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.