# EXHIBIT 26

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


Case No. 3:17-cv-00939-WHA
_____

| | |
|---|---|
| WAYMO LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UBER TECHNOLOGIES, INC.; | ) |
| OTTOMOTTO LLC; | ) |
| OTTO TRUCKING, | ) |
| | ) |
| Defendants. | ) |
|_____|)|

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY


VIDEOTAPED DEPOSITION OF

JOE SULLIVAN

DATE TAKEN:  DECEMBER 14, 2017




REPORTED BY:

PAUL J. FREDERICKSON, CCR, CSR

JOB NO. 2771274


Pages 1 - 361

```
 1    toward shared communication which allows the         15:17:53
 2    team to really have most information.                15:17:56
 3              So I -- I frequently encouraged            15:18:01
 4    team members to -- to bring their                    15:18:03
 5    communications into forums where other people        15:18:05
 6    can see them, like -- like the group chats.          15:18:07
 7              The second reason in the context           15:18:11
 8    of Wickr that I can think of would have been         15:18:13
 9    around data security overseas.  Those would be       15:18:15
10    my best guesses.                                     15:18:20
11         Q.   Did you ever -- are you aware of           15:18:23
12    anyone suggesting to use Wickr or other              15:18:26
13    ephemeral communications to avoid civil              15:18:29
14    discovery?                                           15:18:33
15              MS. CHANG:  Objection to the               15:18:39
16         extent it calls for privileged                  15:18:39
17         communication.  I caution the witness           15:18:41
18         not to disclose the substance of any            15:18:43
19         privileged communication.                       15:18:46
20              THE WITNESS:  Yeah.                        15:18:49
21         A.   Then I don't think I -- I mean,            15:18:49
22    other than that, I can't answer.                     15:18:51
23         Q.   Well, I'm going to press for a yes         15:18:54
24    or no answer on this one.                            15:18:56
25              Are you aware of anyone at Uber            15:18:57
```

Page 219

| | | |
|---|---|---|
| 1 | suggesting to use Wickr or another ephemeral | 15:18:59 |
| 2 | communication to avoid discovery in a civil | 15:19:02 |
| 3 | lawsuit? | 15:19:05 |
| 4 |         MS. CHANG:  Objection, calls for | 15:19:06 |
| 5 | privileged communication.  I instruct | 15:19:07 |
| 6 | the witness not to answer. | 15:19:09 |
| 7 |         A.    If it relates to an existing civil | 15:19:11 |
| 8 | lawsuit, the answer is no. | 15:19:15 |
| 9 |         Q.    What do you mean by that? | 15:19:18 |
| 10 |         A.    I mean, I'm not aware of anyone | 15:19:22 |
| 11 | saying "Use ephemeral to avoid discovery in | 15:19:23 |
| 12 | this litigation." | 15:19:28 |
| 13 |         Q.    But what about in litigation | 15:19:31 |
| 14 | generally? | 15:19:32 |
| 15 |         MS. CHANG:  Objection, calls for | 15:19:34 |
| 16 | privileged communication.  I instruct | 15:19:35 |
| 17 | the witness not to answer. | 15:19:37 |
| 18 |         A.    So I can't answer. | 15:19:43 |
| 19 |         Q.    All right. | 15:19:44 |
| 20 |         Let me ask it again because I | 15:19:46 |
| 21 | think this is going to be an issue. | 15:19:48 |
| 22 |         Are you aware of anyone at Uber | 15:19:51 |
| 23 | suggesting the use of ephemeral litigation to | 15:19:53 |
| 24 | avoid discovery in litigation? | 15:19:55 |
| 25 |         MS. CHANG:  Objection to the | 15:19:59 |

```
                                                    Page 224
 1      with that in the past.                      15:41:42
 2              Q.    Now, there's a reference to Angela   15:41:43
 3      here at the top of the last page?           15:41:51
 4              A.    I see that, yeah.             15:41:55
 5              Q.    Who does this refer to?       15:42:07
 6              A.    Angela Padilla.  She's an attorney   15:42:09
 7      in the legal department.                    15:42:16
 8              Q.    Was Ms. Padilla advising on the   15:42:18
 9      subject matter of her advice?  Was it relating   15:42:23
10      to the use of ephemeral communications?     15:42:26
11                    MS. CHANG:  Objection to the  15:42:28
12              extent it calls for privileged      15:42:29
13              communication.                      15:42:31
14                    I caution the witness not to  15:42:32
15              disclose the substance of any privileged   15:42:33
16              communication.                      15:42:36
17                    MR. ANGELI:  And to be clear, your   15:42:43
18              question was just about was she advising   15:42:44
19              on the subject matter?              15:42:46
20                    MR. JAFFE:  That's right.     15:42:47
21              A.    Yes.                          15:42:49
22              Q.    And so after that discussion from   15:42:57
23      Angela that's privileged here, you said next:   15:42:58
24                    "In security and in legal, we have   15:43:04
25      been using Wickr for ephemeral chat, and it   15:43:06
```

Page 225

| | | |
|---|---|---|
| 1 | works well.  The messages expire after a day or | 15:43:09 |
| 2 | a week depending on settings, and the company | 15:43:15 |
| 3 | has admin control rather than pushing the | 15:43:16 |
| 4 | settings to employees like WeChat or WhatsApp | 15:43:20 |
| 5 | or Signal? | 15:43:24 |
| 6 |     A.     That's right. | 15:43:24 |
| 7 |     Q.     Why did you write that? | 15:43:25 |
| 8 |     A.     I have a strong bias towards all | 15:43:26 |
| 9 | company communications being on company systems | 15:43:30 |
| 10 | and the company having control.  To me, it's a | 15:43:34 |
| 11 | problem when you have fragmented communications | 15:43:41 |
| 12 | that are outside of the control of the company | 15:43:44 |
| 13 | to manage.  And so one -- so one of the key | 15:43:45 |
| 14 | attributes of any kind of enterprise | 15:43:51 |
| 15 | communication product should be that it be an | 15:43:54 |
| 16 | enterprise managed product. | 15:43:57 |
| 17 |     Q.     How did you -- you wrote here that | 15:44:04 |
| 18 | legal has been using Wickr for ephemeral chat. | 15:44:06 |
| 19 | Do you see that? | 15:44:11 |
| 20 |     A.     I did. | 15:44:11 |
| 21 |     Q.     How do you know that, or how did | 15:44:12 |
| 22 | you know that? | 15:44:14 |
| 23 |        MS. CHANG:  Objection to the | 15:44:16 |
| 24 |    extent that it calls for privileged | 15:44:16 |
| 25 |    communication. | 15:44:18 |

Page 273

| | | |
|---|---|---|
| 1 | A.    So are you talking about -- you're | 16:59:07 |
| 2 | switching over to talk about SSG right now, or | 16:59:09 |
| 3 | are you talking about the marketplace analytics | 16:59:12 |
| 4 | team? | 16:59:14 |
| 5 | Q.    That's fair.  Let's stick with | 16:59:14 |
| 6 | marketplace analytics. | 16:59:16 |
| 7 | A.    Okay. | 16:59:18 |
| 8 | Q.    Do you have personal knowledge | 16:59:19 |
| 9 | whether the marketplace analytics team as a | 16:59:21 |
| 10 | whole stole trade secrets or not? | 16:59:24 |
| 11 | A.    I would be shocked if they had | 16:59:29 |
| 12 | engaged in something like that.  My | 16:59:32 |
| 13 | understanding was that their mission related | 16:59:35 |
| 14 | exclusively to one type of work, which was the | 16:59:38 |
| 15 | scraping, and that that work was directly | 16:59:42 |
| 16 | overseen by a number of lawyers, and -- and | 16:59:47 |
| 17 | that was the limitations to their work. | 16:59:50 |
| 18 | Q.    Okay. | 16:59:52 |
| 19 |       And going forward, it says, just | 16:59:53 |
| 20 | that same sentence, it talks about: | 16:59:56 |
| 21 |       "Carried out their efforts in | 16:59:57 |
| 22 | partnership with SSG." | 16:59:59 |
| 23 |       Do you see that? | 17:00:00 |
| 24 | A.    I do. | 17:00:01 |
| 25 | Q.    So talking about SSG and | 17:00:02 |

```
                                                         Page 301
 1      other whether the SSG team used nonattributable    17:48:41
 2      devices?                                           17:48:45
 3            A.    That's right.                          17:48:45
 4            Q.    But you do know that the Threat        17:48:45
 5      Ops team did?                                      17:48:47
 6            A.    Correct.                               17:48:48
 7            Q.    And that includes for competitive      17:48:48
 8      intelligence activities; right?                    17:48:51
 9            A.    The Marketplace Analytics team,        17:48:52
10      yes.                                               17:48:54
11            Q.    Towards the bottom of the page,        17:49:08
12      last paragraph:                                    17:49:10
13                  "By storing this data on               17:49:11
14      nonattributable devices, Uber believed it would    17:49:12
15      avoid detection and never be subject to legal      17:49:15
16      discovery."                                        17:49:18
17                  Do you see that?                       17:49:19
18            A.    I do see that.                         17:49:20
19            Q.    Is that accurate?                      17:49:24
20                  MR. ANGELI:   Objection, lacks         17:49:26
21            foundation, compound.                        17:49:27
22            A.    I highly doubt it.                     17:49:28
23            Q.    What do you mean you highly doubt      17:49:30
24      it?                                                17:49:31
25            A.    I mean, I have no knowledge -- I       17:49:31
```

```
                                                              Page 302
 1    don't know what Mr. Jacobs was referring to          17:49:35
 2    here, but I have never seen anyone at Uber act       17:49:36
 3    with the belief they could avoid detection and       17:49:40
 4    legal discovery by using nonattributable             17:49:43
 5    devices.  The context in which my team used          17:49:45
 6    nonattributable devices was for purposes of its      17:49:48
 7    interactions out on the Internet, not for            17:49:51
 8    purposes of hiding itself inside the company.        17:49:53
 9         Q.    And this goes on and says:                17:49:57
10               "This is because the standard             17:49:59
11    preservation of evidence order typically             17:50:01
12    focused on Uber work laptops, Uber networks and      17:50:03
13    Uber mobile devices.  Nonattributable devices        17:50:07
14    were deemed as not reasonably subsumed by any        17:50:09
15    preservation order, and the team could and did       17:50:12
16    'legally,' not so, dispose of any evidence or        17:50:15
17    documentation held on these devices in the           17:50:20
18    intervening period before knowledge of the           17:50:22
19    devices' existence could be uncovered."              17:50:24
20               Do you see that?                          17:50:26
21         A.    I do.                                     17:50:30
22         Q.    Is that accurate?                         17:50:31
23               MR. ANGELI:  Objection, lacks             17:50:32
24    foundation, compound.                                17:50:33
25         A.    Which part are you talking about?         17:50:34
```

```
                                                              Page 305
 1                      Do you know whether anyone at Uber       17:52:54
 2      was ever instructed to use nonattributable               17:52:56
 3      hardware or software to prevent documents from           17:52:58
 4      being subject to legal discovery?                        17:53:01
 5                      MR. ANGELI:  Objection, compound.        17:53:04
 6              A.      I have never heard of that               17:53:05
 7      happening.                                               17:53:07
 8              Q.      Continuing on here in the letter,        17:53:07
 9      and we're on page 8.  The title says:                    17:53:20
10                      "Concealment, coverup and                17:53:25
11      falsification of records through the abuse of            17:53:28
12      attorney-client privilege designations."                 17:53:30
13                      Do you see that?                         17:53:33
14              A.      I do.                                    17:53:33
15              Q.      And it says here:                        17:53:34
16                      "Clark developed training on how         17:53:36
17      to use attorney-client privilege to further              17:53:37
18      conceal activities described in any                      17:53:39
19      non-ephemeral communication channel.                     17:53:41
20      Specifically he developed training using                 17:53:43
21      innocuous legal examples and the lawyer dog              17:53:45
22      meme to produce a slide deck that taught the             17:53:49
23      Threat Ops team how to utilize attorney-client           17:53:52
24      privilege to impede discovery."                          17:53:55
25                      Do you see that?                         17:53:57
```

```
 1                  I, PAUL J. FREDERICKSON, CA
 2     Certified Shorthand Reporter No. 13164 and
 3     WA Certified Court Reporter No. 2419, do
 4     hereby certify:
                    That prior to being examined,
 5     the witness named in the foregoing
       deposition was by me duly sworn or affirmed
 6     to testify to the truth, the whole truth and
 7     nothing but the truth;
 8                  That said deposition was taken
 9     down by me in shorthand at the time and
10     place therein named, and thereafter reduced
11     to print by means of computer-aided
12     transcription; and the same is a true,
13     correct and complete transcript of said
14     proceedings.
15                  I further certify that I am not
16     interested in the outcome of the action.
17                  Witness my hand this 15th day
18     of December 2017.
19
20
21
22     _____
23         PAUL J. FREDERICKSON, CCR, CSR
24         WA CCR 2419   CA CSR 13164
25         Expiration date:  March 31, 2018
```

Page 361

Veritext Legal Solutions
866 299-5127