# EXHIBIT 35



# Legal Overview

Craig Clark, Legal Director I

October 13, 2016

PRIVILEGED & CONFIDENTIAL

CONFIDENTIAL

UBER00340360



PRIVILEGED & CONFIDENTIAL

UBER00340361





PRIVILEGED & CONFIDENTIAL

UBER00340362

# Law !== Science

PRIVILEGED & CONFIDENTIAL

UBER00340363



UBER00340364



PRIVILEGED & CONFIDENTIAL

CONFIDENTIAL

UBER00340365



From:        Uber
To:              U     V    of Global Opera tio
cc:            John  y L    Senior Co    el

Subject:   Quarte    Report        ly Confi    ntial

Attached are the    mb   for last     ter   We need to
discuss asap.  I a    m  king this attor  ey     ent privileged
due to sensitivity

PRIVILEGED & CONFIDENTIAL



From: Legal Bud...
To:      Johnny L...y, ...nior Counsel

Re:     Operations ...pdate ... ...ey-Clien... Privileged

I am happy to re...rt th... ...e me... ...for ...partment performance are ... ... Our $ spend... ... ...side counsel declined in Q1. W... also created new tool... ...o increase our efficiencies.

PRIVILEGED & CONFIDENTIAL

UBER00340367

From:       Bus Dev, Uber for Business
To:             Johnny La███████el

Re:      Need your A

I am concerned abo███████ ██ deal.  Is the
indemnity provision o█

PRIVILEGED & CONFIDENTIAL

UBER00340368

"My company needs uncapped indemnity."

"Fido, We need your advice. Can we give our vendor uncapped indemnity?"







"FYI – in case you are interested"

"Here's my advice & very sensitive strategy…."



PRIVILEGED & CONFIDENTIAL



CONFIDENTIAL

UBER00340369

From: 

"Is there legal risk if we do XYZ?  My team and I need to know."





CC: 

"Here's my sweet legal opinion & advice."

    

PRIVILEGED & CONFIDENTIAL



# How Uber secretly investigated its legal foes — and got caught

*Faced with a class action suit, the company hired a CIA-linked intelligence firm to look into the plaintiffs and their lawyer, but a judge says they may have gone too far*

By Russell Brandom and Andrew Hawkins on July 10, 2016 05:00 pm | Email | @russellbrandom

58 COMMENTS



## FEDERAL JUDGE RIPS UBER APART OVER DIRT-DIGGING INVESTIGATION

San Riddle
July 29 2016, 12:15 p.m.

**IN DECEMBER OF** last year, Yale environmental researcher Spencer Meyer filed suit against Uber, alleging price fixing by Uber's drivers and founder in violation of federal antitrust law. Hardly the first person to accuse Uber of corporate malfeasance, Meyer nonetheless became the target of private investigators, working for a security company hired by Uber, who attempted to dig up derogatory information — an act the district judge hearing the case, Jed Rakoff, has now, in a 31-page order, called "blatantly fraudulent and arguably criminal."

Emails turned over by Uber on the judge's instructions and summarized in the order show that on the day Meyer filed suit, Uber counsel Salle Yoo contacted the company's chief security officer, asking, "Could we find out a little more about this plaintiff?"

Uber investigations chief Mat Henley then selected a New York-based private investigative firm called Ergo, also known as Global Precision Research, and began working with one of its executives, Todd Egeland, Henley said in a sworn deposition. Egeland's online bios state openly that he is a 28-year veteran of the CIA with experience in counterintelligence and cyberthreats.

PRIVILEGED & CONFIDENTIAL

CONFIDENTIAL

UBER00340371

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

7/25/16

------------------------------------x
SPENCER MEYER, individually and on     :
behalf of those similarly situated,    :
                                       :
            Plaintiff,                  :          15 Civ. 9796
                                       :
            -v-                         :          OPINION AND ORDER
                                       :
TRAVIS KALANICK and                     :
UBER TECHNOLOGIES, INC.,                :
                                       :
            Defendants.                 :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

     It is a sad day when, in response to the filing of a

commercial lawsuit, a corporate defendant feels compelled to

hire unlicensed private investigators to conduct secret personal

background investigations of both the plaintiff and his counsel.

It is sadder yet when these investigators flagrantly lie to

friends and acquaintances of the plaintiff and his counsel in an

(ultimately unsuccessful) attempt to obtain derogatory

information about them. The questions here presented, however,

are whether such dubious practices result in waiver of attorney-

client privilege and work-product protection, and whether

disciplinary action is warranted.

PRIVILEGED & CONFIDENTIAL

UBER00340372

subpoenas' parameters. See id. at 4-5. In response to the subpoenas, Uber and Ergo claimed attorney-client privilege and/or work-product protection over numerous documents and voice recordings, and the Court indicated that it would need to review these materials in camera to determine whether privilege was correctly asserted and/or whether the "crime-fraud" exception to the privilege applied. See id. at 5. The Court further stated that in camera review would also be needed to determine whether plaintiff would be authorized to depose Uber's General Counsel Salle Yoo. See id. at 4-5.

PRIVILEGED & CONFIDENTIAL



| Message | |
| --- | --- |
| From: | Joe Sullivan ▮▮▮▮▮@uber.com] |
| Sent: | 12/16/2015 9:52:32 PM |
| To: | Mat Henley (▮▮▮@uber.com] |
| Subject: | FW: Antitrust Lawsuit in SDNY Against Travis |
| Attachments: | 2015-12-16 Case No. 15-cv-09796 Spencer Meyer v. Travis Kalanick (Uber Complaint).pdf |

Please do a careful check on this plaintiff (the person who is the driver/named party in the case).

From: Salle Yoo <▮▮▮@uber.com>
Date: Wednesday, December 16, 2015 at 1:42 PM
To: Joe Sullivan ▮▮▮▮▮@uber.com>
Subject: Fwd: Antitrust Lawsuit in SDNY Against Travis

ATTY CLIENT COMMUNICATION - PRIVILEGE

Joe,

Could we find out a little more about this plaintiff?

Thanks,

Salle

PRIVILEGED & CONFIDENTIAL

Eddy, has
and
rrorism at
ing the
aassador
senior
nan.
rtment's

# Emails were encrypted to "avoid potential discovery issues."



UBER00340374

0000059. Mr. Henley sent the report to Mr. Sullivan, Uber's Chief Security Officer, and to Craig Clark, Esq., Uber's Legal Director of Security and Enforcement. See id.; see also Letter dated May 20, 2016, Dkt. 79. Mr. Sullivan, in turn, passed on the report to Uber's General Counsel Salle Yoo. See Hanna Decl., Exhibit H, at UBER-0000059.

matter, on May 20, 2016 and May 27, 2016, respectively. As a result of these hearings and associated telephone conferences, the Court authorized plaintiff to depose Uber's Joe Sullivan, Craig Clark, and Mat Henley, and Ergo's Todd Egeland and Miguel Santos-Neves. See Memorandum Order dated June 7, 2016, Dkt. 76,

PRIVILEGED & CONFIDENTIAL

UBER00340375

But Ergo's argument fundamentally misapprehends the nature of the crime-fraud exception. The purpose of this exception is "to assure that the seal of secrecy . . . between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." United States v. Zolin, 491 U.S. 554, 563 (1989) (internal quotation marks omitted).[5] As the Second Circuit has stated:

> The rationale for the [crime-fraud] exclusion is closely tied to the policies underlying these privileges. Whereas confidentiality of communications and work product facilitates the rendering of sound legal advice, advice in furtherance of a fraudulent or unlawful goal cannot be considered "sound." Rather advice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection.

In re Grand Jury Subpoena, 731 F.2d at 1038. If actual damages had to be shown in order for "fraud" within the meaning of the

[5] While this formulation of the crime-fraud exception is based on the attorney-client privilege, the crime-fraud exception also applies to the work-product doctrine, as noted supra. See In re Richard Roe, 68 F.3d at 39; In re Grand Jury Subpoena, 731 F.2d at 1038.

18

However, as to certain other communications over which Uber claimed privilege, the Court found that they either were covered by attorney-client privilege and/or were covered by a work-product protection that was not overcome by substantial need. These communications included, for instance, emails between Mr. Kalanick's counsel and Uber in-house counsel addressing potential responses to plaintiff's counsel's inquiries and letters about the Ergo investigation. As to the crime-fraud exception, the Court did not find that this exception applied to the documents over which the Court upheld Uber's claims of privilege. For example, the Court did not find that Mr. Kalanick's counsel, in making inaccurate representations to plaintiff's counsel about whether Uber had commissioned the Ergo

25

U.S. Department of Justice
United States Marshals Service



# WANTED
## By U.S. MARSHALS

Name:   CEGLIA, Paul

Alias:   SEGLIA, Dean



| | |
|---|---|
| Sex | MALE |
| Race | WHITE |
| Height | 5'10" |
| Weight | 195 pounds |
| Eyes | BROWN |
| Hair | BLACK |
| Marks/Scars/Tattoos | NONE |

PRIVILEGED

Wanted For | WIRE FRAUD

DATE OF PHOTO: 10/26/2012

CONFIDENTIAL

UBER00340377

# Crime-fraud exception to attorney-client privilege – Facebook's lawsuit

**Blog** From the Sidebar

## Cozen O'Connor

 



**USA** | December 18 2014

The crime-fraud exception to attorney-client privilege: As an attorney, you may not anticipate it applying to your emails, your letters or your advice to your client. But even if you never see it coming, your client's intentions in obtaining legal advice may expose your communications to disclosure. A law firm is experiencing this problem firsthand in a series of high-profile cases involving Facebook, Mark Zuckerberg and a former business partner. The cases present an interesting study in how the crime-fraud exception can operate.

PRIVILEGED & CONFIDENTIAL

CONFIDENTIAL

UBER00340378



PRIVILEGED & CONFIDENTIAL

UBER00340379



PRIVILEGED & CONFIDENTIAL

UBER00340380

TECH

# Uber Data And ==Leaked Docs== Provide A Look At How Much Uber Drivers Make

Uber data suggests that drivers overall in three major U.S. markets — Denver, Detroit, and Houston — earned less than $13.25 an hour after expenses in late 2015, according to calculations based on more than a million trips.

posted on Jun. 22, 2016, at 3:37 p.m.


**Caroline O'Donovan**
BuzzFeed News Reporter


**Jeremy Singer-Vine**
BuzzFeed News Data Editor

PRIVILEGED & CONFIDENTIAL

CONFIDENTIAL

UBER00340381



PRIVILEGED & CONFIDENTIAL

UBER00340382

**Examples of Legal Conclusions**

- Company…

  - …is (or is not) doing something illegal.

  - …will (or will not) be sued if it [insert conduct].

  - …is (or is not) breaching a contract.

  - …does (or does not) need a license for certain technology.

  - …does (or does not) have a patent on certain technology.

PRIVILEGED & CONFIDENTIAL

CONFIDENTIAL

UBER00340383

# Best Practices

- Talk
- Zoom
- Phone (voice)
- Appropriate security
- Extreme care
- NYT/WSJ test
- Don't speculate
- Use legal

PRIVILEGED & CONFIDENTIAL



PRIVILEGED & CONFIDENTIAL



PRIVILEGED & CONFIDENTIAL

UBER00340386













PRIVILEGED & CONFIDENTIAL







PRIVILEGED & CONFIDENTIAL

UBER00340388







PRIVILEGED & CONFIDENTIAL

CONFIDENTIAL

UBER00340389



CONFIDENTIAL

UBER00340390