# EXHIBIT 58

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER REGARDING UBER'S OBLIGATION TO PRODUCE JACOBS LETTER AND RELATED DOCUMENTS**<br><br>Trial Date:   February 5, 2018 |

1  would seem logical to me it did get printed somewhere." (12/4/17 Hearing Tr., 17:15-21.)
2  Indeed, according to Ms. Padilla, the letter was "handed" over to others at Uber (*id.* at 15:16-24),
3  which suggests that the letter exists at Uber in hard copy. An electronic search protocol is
4  irrelevant to locating hard copy documents. If there are hard copies of the Jacobs letter or
5  resignation email, both of which are responsive to Waymo's document requests, then Uber's
6  arguments about search terms are moot. Uber has not yet confirmed whether hard copies exist. If
7  there were indeed hard copies of these documents responsive to Waymo's RFPs, Uber was
8  obligated to produce them.[3]

9        With respect to electronic copies of the documents, the fact that the Jacobs letter and
10 resignation email would not have hit on negotiated search terms does not excuse Uber's failure to
11 produce these known documents for several reasons. Initially, as the Special Master should recall,
12 the parties **never** entered into an agreement under which the parties agreed that they each only
13 needed to use search terms to try to locate responsive documents. Tellingly, Uber did not point
14 the Court to any such agreement at any of the recent hearings on this subject. Nor can it.

15       Search terms are intended to help parties <u>search</u> large volumes of ESI to find responsive
16 documents; they do not obviate a party's discovery obligations once responsive documents are
17 already <u>found</u>. Once Uber and its senior management and counsel had actual knowledge of the
18 Jacobs documents and their relevance to this case, they should have produced them. Indeed,
19 courts have recognized that while search terms have a place in e-discovery, it is unreasonable for
20 parties to rely entirely on such terms in searching for and producing responsive information. *See*
21 *F.D.I.C. v. Baldini*, Case No. 1:12-cv-7050, 2014 WL 1302479, at *2 (S.D. W. Va. Mar. 28, 2014)
22 ("If, however, a producing party is aware of a relevant document that is not triggered by the
23 application of the search terms, the producing party shall produce that document."); *Moore v.*
24 *Publicis Groupe*, 287 F.R.D. 182, 190-91 (S.D.N.Y. 2012) (noting the limitations of key word
25 searches); *cf Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) ("[T]he

---

[3] Waymo notes that the definition of "DOCUMENTS" in its document requests included documents in any medium, and so would call for both hard copy and electronic documents. (Ex. 3.)

-6-

WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER

DATED: December 5, 2017            QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Charles K. Verhoeven*
   Charles K. Verhoeven
   Attorneys for WAYMO LLC