1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzález@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Tel: 415.268.7000 / Fax: 415.268.7522
5
   KAREN L. DUNN (*Pro Hac Vice*)
6  kdunn@bsfllp.com
   MICHAEL BRILLE (*Pro Hac Vice*)
7  mbrille@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
8  1401 New York Avenue, N.W.
   Washington DC  20005
9  Tel:  202.237.2727 / Fax: 202.237.6131

10 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
11 SHAWN RABIN (*Pro Hac Vice*)
   srabin@susmangodfrey.com
12 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
13 New York, NY  10019-6023
   Tel: 212.336.8330 / Fax: 212.336.8340
14
   Attorneys for Defendants
15 UBER TECHNOLOGIES, INC.
   and OTTOMOTTO LLC
16
                  UNITED STATES DISTRICT COURT
17
                 NORTHERN DISTRICT OF CALIFORNIA
18
                    SAN FRANCISCO DIVISION
19

20 WAYMO LLC,                          Case No. 3:17-cv-00939-WHA

21              Plaintiff,             **DEFENDANTS UBER
                                       TECHNOLOGIES, INC. AND
22      v.                             OTTOMOTTO LLC'S AMENDED TRIAL
                                       BRIEF**
23 UBER TECHNOLOGIES, INC.,
   OTTOMOTTO LLC; OTTO TRUCKING        Pretrial Conference:  January 30, 2018
24 LLC,                               Time:    8:00 a.m.
                                       Ctrm:    12
25              Defendants.            Judge:   The Honorable William Alsup

26                                     Trial Date: February 5, 2018

27

28

1    In this trial brief, Defendants Uber Technologies, Inc. and Ottomotto LLC identify six

2    issues that should be addressed at the pretrial conference.  These are similar to, but slightly

3    different than, the six issues identified in advance of the November 28, 2017 final pretrial

4    conference.  They are:  (1) Waymo's refusal to disclose exhibits it plans to use during the direct

5    examination of an adverse witness; (2) whether Waymo can argue alleged "use" or "disclosure"

6    by MoFo or Stroz when no such use or disclosure has been pled or disclosed; (3) whether Waymo

7    can argue alleged disclosure to vendors when no such disclosure has been pled or disclosed;

8    (4) whether Waymo may call witnesses who were not disclosed in Waymo's Rule 26 disclosures;

9    (5) whether Waymo should be allowed to offer testimony from witnesses that goes beyond the

10   topics disclosed in Waymo's Rule 26 disclosures, with the exception of testimony regarding Stroz

11   that was not known to Waymo at the time of its disclosures; and (6) Waymo's failure to disclose

12   "a computation of each category of damages," as required by Rule 26(a).

13           **1.      Disclosure of Exhibits for Direct Examination of Adverse Witness**

14           Waymo wants to play "hide the ball."  It refuses to disclose exhibits to be used during the

15   direct examination of an adverse witness.  This Court's trial guidelines for civil cases state that

16   "all counsel are entitled to written firm notice of the order of witnesses for the next court day and

17   the exhibits (including merely illustrative exhibits) ***to be used on direct examination*** (other than

18   for true impeachment of a witness)."  (Guidelines for Trial & Final Pretrial Conference in Civil

19   Jury Cases ("Jury Trial Guidelines") ¶ 11 (emphasis added).)  The Court's rules require parties to

20   disclose all exhibits they plan to show any witness that the party will call to the stand (i.e., "direct

21   examination").[1]  Waymo argues, however, that there is an exception to the Court's rule for

22   "adverse" witnesses (presumably, witnesses connected to Uber in some way) and that it is not

23   required to disclose to Uber exhibits to be used on direct examination of an adverse witness.

24   (Dkt. 2254-2, Ex. 2 (11/15/17 3:29 E-mail from A. Roberts).)

25

26           [1] "At a minimum, notice must be given no later than 2:00 p.m. one calendar day
     immediately preceding."  (Jury Trial Guidelines ¶ 11 (emphasis in original).)  The parties have
27   agreed to give such notice by 3:30 p.m. two days before the witness testifies and demonstratives
     by 6:00 p.m. one day before they are used.  (Dkt. 2254-1, Ex. 1 (11/15/17 6:38 pm E-mail from
28   A. González).)

DEFENDANTS UBER AND OTTOMOTTO'S AMENDED TRIAL BRIEF
Case No. 3:17-cv-00939-WHA                                                                                    1
sf-3855827

1      The Court's rule requires disclosure of exhibits "to be used on direct examination *(other*

2 *than for true impeachment of a witness)*."  (Jury Trial Guidelines ¶ 11 (emphasis added).)  By

3 stating an exception for impeachment purposes, the rule contemplates that exhibits for direct

4 examination of an adverse witness would be covered by the rule, as impeachment applies only to

5 adverse witnesses.  If the rule were intended to apply only to "friendly" witnesses, then the

6 exception for impeachment would not have been included.

7      The position Waymo advocates threatens to disrupt the trial.  If exhibits for adverse

8 witnesses are not required to be disclosed, those exhibits would not be part of the parties' meet

9 and confer each evening.  Thus, any disputes regarding exhibits for adverse witnesses will not be

10 resolved until the witness takes the stand and the exhibits are used.  Waymo has disclosed

11 25 witnesses on its "will call" list that it may try to argue are "adverse"—out of 37 witnesses total

12 on the "will call" list.  Where, as here, the number of "adverse" witnesses exceeds the number of

13 "friendly" witnesses, the exception would swallow the rule.

14      Waymo contends exhibits to be used on direct examination of an adverse witness are akin

15 to exhibits to be used on cross-examination, and cross-examination exhibits need not be

16 exchanged.  But there is a significant distinction—a party often does not know what exhibits (if

17 any) will be used on cross-examination until after the direct examination is completed.  By

18 contrast, when a party calls a witness to the stand—whether friendly or adverse—the party knows

19 what exhibits it plans to show the witness.  Those exhibits should be exchanged in accordance

20 with this Court's rules.  To do otherwise would likely lead to an inefficient administration of the

21 trial in which disputes will most certainly arise *during* testimony that could have been resolved

22 before the witness took the stand.

23      **2.**      **Waymo's Undisclosed Theories of "Use" and "Disclosure" By MoFo or Stroz**

24      The Court's jury instructions refer to possible "use" or "disclosure" of trade secrets by

25 MoFo or Stroz.  (Dkt. 2449, Instruction No. 25.)  But there is no evidence of such use or

26 disclosure, and Waymo has never pled or identified such use or disclosure.  What specific trade

27 secret did MoFo or Stroz "use"—and when?  What trade secret did MoFo or Stroz "disclose"—

28 and to whom?  There is no such reference in Waymo's complaint or its Rule 26 disclosures.  And

Waymo has never disclosed any damages flowing from such disclosure. It would be extremely prejudicial to allow such previously undisclosed evidence at trial. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1356-57 (Fed. Cir. 2005) (affirming district court's exclusion of certain damages theories first disclosed on eve of trial); *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 556-57 (N.D. Cal. 2009) (precluding plaintiffs from introducing evidence of damages from sources not disclosed until late in discovery and finding that defendants would suffer prejudice from not being able to conduct required analysis of new claims).

If Waymo believed that Uber owes damages because MoFo or Stroz used or disclosed a trade secret, it should have disclosed that theory of liability in its Rule 26 disclosures. It should have also disclosed it in response to interrogatories:

> **Uber's Interrogatory No. 28**: "[D]escribe in detail how Uber/Otto's acquisition, use, or disclosure of such a trade secret was a substantial factor in causing Waymo's harm or Uber/Otto's unjust enrichment, including identifying whether the alleged act was acquisition, use or disclosure, and identifying all documents by bates number that relate to this allegation." (Dkt. 2252-3, Ex. 6.)

> **Uber's Interrogatory No. 13**: "[D]escribe in detail the complete basis for any damages You contend You have suffered or will suffer . . . ." (Dkt. 2252-4, Ex. 7.)

There was no such disclosure in Waymo's responses. (Dkt. 2252-3, Ex. 6.) Similarly, Waymo did not include this theory in its expert reports. And because Waymo did not disclose this theory, the parties took no fact or expert discovery on this issue. For example, Uber did not seek discovery from the as yet-undisclosed entities to which MoFo or Stroz allegedly disclosed Waymo's confidential information.

In its most recent order regarding jury instructions, the Court ruled that "no recovery theory [would] go to the jury for damages based solely on misappropriation by acquisition only." (Dkt. 2495 at 1.) This Court concluded that "Waymo failed to disclose an acquisition-only damages theory as required by FRCP 26(a) and [was thus] precluded from asserting any such theory at trial under FRCP 37(c)(1)." (*Id.* at 5.) For the same reasons, any evidence or argument regarding the unpled and undisclosed theories pertaining to any alleged "use or disclosure" by MoFo or Stroz should similarly be barred.

### 3.      Waymo's Undisclosed Theory of "Disclosure" to Vendors

Waymo also seeks to allege improper disclosure by Uber to its vendors, but that is another theory that Waymo did not properly disclose.  Waymo first disclosed this theory on November 12, 2017 (Dkt. 2189-3), when it filed its submission pursuant to the Court's order that Waymo set forth its specific offer of proof as to how Defendants disclosed Waymo's alleged trade secrets.  Before this filing, Waymo had never hinted that it was pursuing such a theory, even though it was aware of at least one basis for this theory when it filed its complaint.  (Dkt. 1 ¶¶ 58-59 (describing email from vendor attaching Ottomotto circuit board alleged to "reflect[] Waymo's highly confidential proprietary LiDAR technology and Waymo trade secrets").)

First, Waymo did not disclose this theory as part of its Rule 26 initial disclosures.  The Court at the November 14, 2017 hearing made clear that Waymo was required to disclose witnesses and documents relating to this theory in its initial disclosures if it wanted to assert this theory at trial.  (Dkt. 2222, 11/14/17 Hr'g Tr. at 72:11-73:6 ("In the disclosure itself, [Uber has] got to be on notice.  That's how they decide who to take depositions of is what's in those disclosures.")  But Waymo did not disclose any of Uber's vendors, either by name or by category, in its Rule 26(a)(1) disclosures.  Nor did any of its disclosures include any reference to communications to or from vendors.

Second, even though Uber served three interrogatories that called for the disclosure of this theory of liability, Waymo's responses did not include a single reference to the disclosure of asserted trade secrets to any of Uber's vendors.  The three interrogatories at issue are:

- **Uber Interrogatory No. 28**:  "[D]escribe in detail how Uber/Otto's acquisition, use, or disclosure of such a trade secret was a substantial factor in causing Waymo's harm or Uber/Otto's unjust enrichment, including identifying whether the alleged act was acquisition, use or disclosure, and identifying all documents by bates number that relate to this allegation."  (Dkt. 2252-3, Ex. 6.)

- **Uber Interrogatory No. 13**:  "[D]escribe in detail the complete basis for any damages You contend You have suffered or will suffer . . . ."  (Dkt. 2252-4, Ex. 7.)

- **Uber Interrogatory No. 8**:  "[D]escribe all instances in which the trade secret (or any Waymo LiDAR device utilizing the trade secret) was publicly or otherwise disclosed to third parties, and identify all Documents (by Bates number) [c]oncerning such disclosure."  (Dkt. 2252-5, Ex. 8.)

As one example, Waymo's response to Interrogatory No. 28 only mentions the harm from the "risk that Defendants will disclose" the asserted trade secrets in regulatory filings. (Dkt. 2252-3, Ex. 6.) Waymo makes no reference to Uber's vendors in its response.

Because of Waymo's failure to disclose this theory of liability, there was no fact or expert discovery on this topic. For example, none of the vendors to which Uber allegedly disclosed Waymo's information were deposed in this case. Likewise, no experts provided opinions regarding whether documents allegedly sent to vendors purported to contain Waymo's confidential information in fact disclosed the trade secrets at issue. Because Uber had no notice that it should take discovery on this issue, it is now prejudiced in its ability to mount an effective defense.

Waymo's disclosure of this theory was unjustifiably untimely, and Uber was deprived of "a fair opportunity to organize its defenses." (*see* Dkt. 2495 at 6). Rule 37(c)(1) prohibits a party from using at trial information not properly disclosed under Rule 26(a) "unless the failure was substantially justified or is harmless." Because Waymo has made no such showing, it should be precluded from advancing this theory at trial. *MicroStrategy*, 429 F.3d at 1356-57; *Oracle USA*, 264 F.R.D. at 556-57.

Moreover, because this is the only theory of misappropriation by disclosure Waymo has ever put forward against Uber (*see* Dkt. 2189 Ex. 1, Waymo's Disclosure Offer of Proof) (Waymo has arguably asserted an additional theory against Ottomotto, *see* Dkt. 2189 Ex. 1), the jury should be instructed that Waymo has chosen to proceed only on a misappropriation by use theory as against Uber. Moreover, to the extent the Court allows Waymo to assert this theory of liability as to Uber, it should preclude Waymo from asserting any damages based on it.

### 4. New Waymo Witnesses

Pursuant to the Court's standing order, which "requires certain automatic disclosures and requires them to be made in a timely manner,"[2] the Court set a deadline in June 2017 for parties to make their disclosures. (*See* Dkt. 625, 6/14/17 Hr'g Tr. at 71-72.) Similarly, this Court's Jury

---

[2] (Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases (last revised Aug. 1, 2017) ¶ 28.)

1   Trial Guidelines state that:  "All parties are reminded of their disclosure duties under

2   FRCP 26(a)(3), which begin **THIRTY CALENDAR DAYS** before trial."  (Jury Trial Guidelines

3   ¶ 1 (emphasis in original).)

4           On November 15, 2017, two weeks before jury selection for the December 4 trial date,

5   Waymo added a new witness (Prabir Adarkar) to its "will call" witness list.  Mr. Adarkar was

6   never previously disclosed in any of Waymo's Rule 26 disclosures.  The same day, Waymo also

7   added Shawn Bananzadeh to its "will call" list—he also was not disclosed in any of Waymo's

8   Rule 26 disclosures.  Moreover, Waymo added Mr. Bananzadeh to its most recent "will call"

9   witness list, against the Court's explicit directive that if Mr. Bananzadeh was allowed to testify at

10  all, it would only be in rebuttal:

11              If they use the 30(b)(6) deposition in any way before the jury,
            through an expert or directly read in, then [Mr. Bananzadeh] gets to
12          come back and explain it in your rebuttal case, but not in your case-
            in-chief.  In other words, **you can't use him in your case-in-chief**
13          **because he's a new witness**."

14  (Dkt. 2125, 10/26/17 Hr'g Tr. at 12:2-11 (emphasis added).)  Because they were not timely

15  disclosed, Mr. Adarkar and Mr. Bananzadeh should not be allowed to testify (other than rebuttal

16  testimony from Mr. Bananzadeh).

17          Uber likewise objects to the following eight witnesses who were not listed in any of

18  Waymo's timely Rule 26 initial disclosures:  Kristin Gudjonsson, Travis Bellanger, David Lawee,

19  John Krafcik, Chelsea Bailey, Gerard Dwyer, Don Harrison, and Jennifer Haroon.  (Dkts. 2252-3,

20  2242-4, and 2252-5, Exs. 3-5.)  Uber objected to these witnesses when Waymo first included

21  them on its trial witness list—in Uber's September 21, 2017 and November 22, 2017 objections.

22  (Dkts. 1725-3 and 2257-3, and Dkt. 2253, November 21, 2017 Trial Brief at 2-3.)  Although

23  Waymo filed a motion seeking to supplement its witness list with Messrs. Bananzadeh and

24  Adarkar as well as an "Uber Custodian of Records," Waymo did not move as to the other eight

25  witnesses it had failed to disclose, nor did it establish that its failure to timely disclose

26  Messrs. Bananzadeh and Adarkar was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).

27  (Dkt. 2304-3.)

28          On January 19, 2018, the same day it served its Fourth Amended trial witness list, Waymo

1   served a "Second Supplemental Initial Disclosures," which improperly sought to cure all of

2   Waymo's repeated violations of Rule 26(a)(1), including the undisclosed witnesses identified

3   above and the undisclosed testimony described below.  The Court should strike Waymo's new

4   disclosure, which violates both Rule 26(a)(1) and the Court's June 14, 2017 Order.

5        **5.     "Substance of Testimony" Beyond the Disclosures**

6        Waymo's Rule 26 initial disclosures did not adequately identify the subject matter about

7   which Waymo now indicates it will question certain Uber witnesses at trial.

8        Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to "provide to the other

9   parties . . . the name . . . of each individual likely to have discoverable information—along with

10  the subjects of that information—that the disclosing party may use to support its claims or

11  defenses, unless the use would be solely for impeachment."  "If a party fails to provide

12  information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that

13  information or witness to supply evidence . . . at a trial, unless the failure was substantially

14  justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

15       Waymo's trial witness list indicates that it plans to question Uber witnesses about subjects

16  that Waymo never identified in any of its Rule 26 disclosures.[3]  Waymo offers no justification for

17  failing to include these subjects in its disclosures, and allowing testimony on undisclosed issues at

18  trial would prejudice Uber in precisely the way Rules 26 and 37 are designed to prevent.

19  Accordingly, the Court should enforce Rule 37 and limit Waymo's questioning of these witnesses

20  to properly disclosed subject matter.

21       This Court should not allow Waymo to call the following Uber witnesses to testify about

22  the subject matter indicated in the chart below in *red italics* because that subject matter was never

23  properly disclosed by Waymo in its Rule 26 initial disclosures.  To say that Waymo's Rule 26

24  subject matter disclosures are generic and vague would be generous.  For the challenged

25  witnesses, virtually the only subject matter disclosed was the witness's knowledge of "matters

26

27       [3] Waymo's January 19, 2018 initial disclosures, which improperly sought to cure all of
     Waymo's repeated violations of Rule 26(a)(1), were improper and untimely and should be
28   stricken, because they violate both Rule 26(a)(1) and the Court's June 14, 2017 Order.

that concern the misappropriation of trade secrets." If such a useless description were sufficient, then Rule 26 has no meaning because litigants could simply state for every witness that he or she has knowledge regarding "matters that concern the [insert claim]." Despite serving three sets of Rule 26 initial disclosures, Waymo never identified these additional subjects that have now been included in the trial witness list. Waymo's witness list, however, shows that Waymo intends to call witnesses to testify about matters that go far beyond even Waymo's vague Rule 26 disclosures, which Rule 26 prohibits.

To be clear, Uber is not objecting to having witnesses testify as to the Stroz Report facts that were not known to Waymo at the time of its disclosures; this objection addresses issues other than information obtained from Stroz. Uber objects to other portions of the testimony—not highlighted in red—on other grounds as set forth in Uber's Objections to Waymo's Fourth Amended Witness List and & Exhibit A thereto.[4]

| Witness | Plaintiff Waymo LLC's Corrected Supplemental Initial Disclosures (Served June 22, 2017) | Waymo's Fourth Amended Witness List |
|---|---|---|
| Bentley, Adam | Matters that concern the misappropriation of trade secrets. | Mr. Bentley will be asked to provide non-cumulative testimony regarding *the Uber-Otto acquisition;* the Stroz due diligence analysis, investigation, and report; *and destruction of relevant evidence* |
| Burnette, Don | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Burnette will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; *the development of Waymo's self-driving car technology, including its LIDAR designs and planner software*; due diligence by Stroz for Otto acquisition by Uber; *and destruction of relevant evidence* |

---

[4] Uber's Objections to Waymo's Fourth Amended Witness List is Appendix C to the parties' forthcoming Second Amended Joint Proposed Pretrial Order, to be filed on January 23, 2018.

| Witness | Plaintiff Waymo LLC's Corrected Supplemental Initial Disclosures (Served June 22, 2017) | Waymo's Fourth Amended Witness List |
|---------|---------|---------|
| Holden, Jeff | Matters that concern misappropriation of trade secrets. | Mr. Holden will be asked to provide noncumulative testimony regarding *the state of Uber's autonomous vehicle program before the Otto acquisition; negotiations with Mr. Levandowski regarding the acquisition*; Mr. Levandowski's consulting work; *facts surrounding Mr. Levandowski's continued employment with Uber and termination*; and Defendants' misappropriation of Waymo's trade secrets |
| Kalanick, Travis | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Kalanick will be asked to provide non-cumulative testimony regarding *Uber's driverless car program; Uber's solicitation of Google and Waymo employees;* discussions with, knowledge about, Levandowksi [sic], *discussions with the Board and Benchmark partners concerning the Otto acquisition, Mr. Levandowski, and the relationship between the facts surrounding this case and his termination; negotiations with Mr. Levandowski regarding the founding of Ottomotto and Otto Trucking, and Otto acquisition*; the Uber-Otto acquisition; *solitication* [sic] *of Google/Waymo employees*; the Stroz due diligence analysis, investigation, and report; *Uber's knowledge of stolen documents,* understanding, and activity related to misappropriation of Google/Waymo trade secret and proprietary information; *Levandowski's employment and continued employment at Uber; and destruction of relevant evidence ; and* allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with Jacobs. |

| Witness | Plaintiff Waymo LLC's Corrected Supplemental Initial Disclosures (Served June 22, 2017) | Waymo's Fourth Amended Witness List |
|---|---|---|
| McClendon, Brian | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. McClendon will be asked to provide non-cumulative testimony regarding *solicitation of and negotiations with Levandowski regarding founding Ottomotto and Otto Trucking*; and *the Uber-Otto acquisition, the development of Uber's self-driving technology, including before the Otto acquisition*, Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development |
| Poetzscher, Cameron | Matters that concern misappropriation of trade secrets. | Mr. Poetzcher [sic] will be asked to provide non-cumulative testimony regarding *Uber's negotiations with Mr. Levandowski regarding the formation of Ottomotto/Otto Trucking; and the acquisition; solicitation of Google/Waymo employees; destruction of relevant evidence;* and the Stroz due diligence analysis, investigation, and report |
| Ron, Lior | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Ron will be asked to provide noncumulative testimony regarding the misappropriation of Waymo trade secrets; *founding of Ottomotto and Otto Trucking; the Uber-Otto acquisition;* the Stroz due diligence analysis, investigation, and report*; and the business and product development of Ottomotto and Otto Trucking, destruction of relevant evidence ; Uber's ATG use of ephemeral communications and non-attributable devices and its relationship with Uber's Threat Operations division; and allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with Jacobs.* |
| Morgan, Rhian | Matters that concern misappropriation of trade secrets. | Ms. Morgan will be asked to provide noncumulative testimony regarding *the founding and business of Ottomotto and Otto Trucking; Uber's acquisition of Otto;* and the Stroz due diligence analysis, investigation, report; Defendants misappropriation of Waymo's trade secrets, *destruction of relevant evidence* |

| Witness | Plaintiff Waymo LLC's Corrected Supplemental Initial Disclosures (Served June 22, 2017) | Waymo's Fourth Amended Witness List |
|---|---|---|
| Qi, Nina | Matters that concern misappropriation of trade secrets. | Ms. Qi will be asked to provide noncumulative testimony regarding *Uber's decision to acquire Ottomotto (and to enter into an option to acquire Otto Trucking); contacts between Uber and Mr. Levandowski regarding the formation of Ottomotto / Otto Trucking, Uber's acquisition of those entities, and the benefits that Uber would obtain via those acquisitions; Uber's solicitation of Google/Waymo employees; Uber's internal views on those subjects, destruction of relevant evidence;* and the Stroz due diligence analysis, investigation, and report |
| Yoo, Salle | Matters that concern misappropriation of trade secrets. | Ms.Yoo will be asked to provide noncumulative testimony *regarding the Uber- Otto acquisition*; the Stroz due diligence analysis investigation, and report*; continued employment and termination of Anthony Levandowski*; and Defendants misappropriation of Waymo's trade secrets, *destruction of relevant evidence; the Richard Jacobs letter and resignation email and allegations therein, investigation into Jacobs' allegation, and settlement with Jacobs; and Uber management's lack of deference to the legal department or legal advice.* |

6.    **Computation of Each Category of Damages**

Rule 26(a) requires plaintiffs to disclose "a computation of each category of damages" to avoid sandbagging and to ensure defendants are apprised of the extent of their exposure in the case.  *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); *Easton v. Asplundh Tree Experts, Co.*, No. C16-1694RSM, 2017 WL 5483769, at *4 (W.D. Wash. Nov. 15, 2017) (excluding damages evidence for violating Rule 26 because "making certain documents available and promising that someone (in this case Plaintiff) will testify regarding damages is not a 'computation' and fails to apprise Defendant of the extent of its exposure in this case").  With respect to unjust enrichment, Waymo has not even purported to have done this; at no point has Waymo disclosed a "computation" of its

1   purported unjust enrichment damages in the over two months since its expert report was

2   excluded.  As a result, Waymo should be precluded from presenting evidence of unjust

3   enrichment damages.  *See, e.g.*, *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-

4   80 (9th Cir. 2008) (affirming preclusion of evidence of undisclosed damages where plaintiff

5   failed to provide a Rule 26 computation:  "Finally, we reject the notion that the district court was

6   required to make a finding of willfulness or bad faith to exclude the damages evidence.  To the

7   contrary, the portion of Rule 37 relied on by the district court has been described as 'a self-

8   executing, automatic sanction to provide a strong inducement for disclosure of material.'")

9   (citation omitted).

10          Even if Waymo is permitted to offer previously undisclosed "computations of damages,"

11   it should be precluded from presenting new unjust enrichment damages theories or models.  In

12   denying Uber's *Brandywine* motion to exclude Waymo's undisclosed damages theories, this

13   Court reasoned, "With the benefit of Waymo's *full damages theory* and the foregoing rulings, this

14   order finds that no further relief is necessary under these circumstances to remedy any shortfalls

15   in Waymo's initial disclosures."  (Dkt. 2166 at 16 (emphasis added).)  While Uber continues to

16   dispute that Waymo has a properly disclosed evidentiary basis for any unjust enrichment theory,

17   at the very least Waymo should conform whatever its admissible unjust enrichment damages

18   evidence may be to the "full damages theory" disclosed in Mr. Wagner's report:  (1) the

19   accelerated development model based on the Qi slide and (2) the saved development expense

20   model based on Uber's run rate.

21          Waymo's Responsive Trial Brief argues that the Court already ruled that Waymo is not

22   limited to the damages theories in its expert report.  (Dkt. 2271-4 at 8-9.)  That is not accurate.

23   Rather, the Court noted that a judge does not have to sort out the damages numbers ahead of time

24   in every case before hearing the evidence.  (Dkt. 2222, 11/14/17 Hr'g Tr. at 88:8-89:11.)  The fact

25   that a judge need not sort out precise damages *computations* ahead of time does not mean that a

26   defendant is free to venture beyond its disclosed *theories* of damages.  Permitting Waymo to

27   change its damages theories on the eve of trial is precisely the type of unfair prejudice and

28   surprise that Rule 26 was intended to guard against.

1     Waymo's Responsive Trial Brief also suggests that it should be granted leeway on

2    presenting evidence of damages because Uber is to blame for Waymo's current predicament of

3    going to trial without a damages expert.  (*See* Dkt. 2271-4 at 9.)  Not so.  Waymo is merely facing

4    the consequences of its litigation choices:  Waymo chose to submit a deficient damages report

5    that swung for the multi-billion dollar fences, even after several warnings from the Court not to

6    be greedy.  And in excluding Mr. Wagner, the Court was fulfilling its role as an independent

7    gatekeeper to ensure that the jury is not presented with "junk science."  It would be fundamentally

8    unfair for Uber to suffer the consequences for Waymo's litigation tactics, including having to

9    defend against any undisclosed damages computations or theories.

10     As for damages evidence relevant only to reasonable royalty damages, that evidence

11    should be admitted only if the jury first finds that Uber used or disclosed a valid trade secret *and*

12    unjust enrichment damages are not calculable.  (Dkt. No. 2449 at 9, 1/3/18 Penultimate Jury

13    Instructions on Trade Secret Misappropriation.)  As a result, evidence potentially relevant to a

14    *Georgia-Pacific* reasonable royalty analysis, which is much broader than evidence relevant to

15    whether Uber was unjustly enriched, is not relevant to the first phase of the jury trial and should

16    be excluded.  (*See* Dkt. 1557-4 at 2–4, Uber's Motion in Limine to Exclude Evidence of Financial

17    Information.)  For example, evidence relating to the following topics is not relevant to whether

18    Uber was unjustly enriched by misappropriating particular trade secrets, would be unduly

19    prejudicial, would confuse the issues, and should thus be excluded: [5]

20          • Waymo's expected future revenues and profits;

21          • Waymo's costs or investments;

22          • The future expected profitability of the entire autonomous vehicle industry;

23          • Uber's current or past revenues, profitability, or other financial resources; and

24

25

26
    _____

27          [5] Waymo already must seek permission via a written offer of proof before presenting
    evidence relating to its forecasted revenues, forecasted profitability, and its investments and

28    expenses even when a reasonable royalty analysis was at issue.  (Dkt. 2166 at 15, 11/2/17 Order
    on Motion to Exclude Evidence of Financial Information.)

1         •   Uber's future expected profitability from autonomous vehicles (other than possibly

2             the Nina Qi slide, to which Uber continues to object under the Federal Rules of

3             Evidence, including Rules 402, 403, 602, and 701).

4 Waymo should be limited to presenting evidence that would permit a jury to calculate actual

5 unjust enrichment in an objective, non-speculative way, as it must do.

6        Further, should trial proceed to a reasonable royalty determination: (a) Uber continues to

7 object to the use of undisclosed computations for the reasons stated above and previously briefed

8 and (b) at the very least, Waymo should be required to conform its reasonable royalty evidence

9 and arguments to the only reasonable royalty theory that Waymo disclosed (i.e., a reasonable

10 royalty based on a percentage of Mr. Wagner's accelerated development model).

11

12 Dated: January 23, 2018                MORRISON & FOERSTER LLP

13

14                            By:       */s/ Arturo J. Gonzalez*

15                                ARTURO J. GONZÁLEZ

16                                Attorneys for Defendants
                               UBER TECHNOLOGIES, INC. and

17                                OTTOMOTTO LLC

18

19

20

21

22

23

24

25

26

27

28