# EXHIBIT 42

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

IN UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FUNCTION MEDIA, L.L.C.,

    v.

GOOGLE, INC. AND YAHOO!, INC.

Civil Case No. 2:07-cv-279 (CE)

FILED UNDER SEAL

JURY TRIAL DEMANDED

## DECLARATION OF THERESA H. BEAUMONT

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

WAYMO-UBER-00145114

I, Theresa H. Beaumont, hereby declare,

      1.     I have personal knowledge of the facts stated herein.  If called and sworn as a witness, I could and would testify competently thereto.

      2.     I am submitting this declaration in support of Google's Opposition to Function Media's Emergency Motion for Adverse Inference Instruction Regarding Google's Destruction of Evidence.

      3.     I am Discovery Counsel at Google Inc. ("Google"), a role I have occupied since May 2008.  I am responsible for facilitating information-gathering and document collections of electronically-stored information in response to discovery obligations.

      4.     Google provides an internal corporate "chat" network for employees that allows them to communicate with colleagues via instant messages.  These instant messages allow employees to determine whether colleagues are available and engage in informal communications not unlike the texting that takes place on a cell phone.

      5.     An instant message is a real-time dialogue between two or more people. It most closely resembles a telephone or face-to-face conversation.  The conversation usually appears in a small window on a user's computer screen.  The conversation is ephemeral and disappears from view when a user closes the instant messaging window.  Employees often use instant messages for conversations that are purely procedural – e.g., determining whether a co-worker is free for a call – or completely irrelevant to their work – e.g., making plans to meet for lunch.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY      WAYMO-UBER-00145115



01980.51542/3279642.3

3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

11.   In this case, Google has produced more than 5 million pages of documents.

12.   I understand that Function Media takes issue with the lack of duplicates of a particular email in Google's document production.  It is standard, widespread, and reasonable industry practice to "de-dupe" electronically-stored information, to the extent possible, to minimize the time, effort and expense of pre-production document review, and to avoid dumping unnecessarily voluminous quantities of documents on the opposing side in litigation.  However, the fact that a particular email was produced from the files of Ms. Wojcicki does not mean that the other copies of that email in other employees' files, including Mr. Brin's files, were not preserved.  As an example, at Google, there are many email aliases, such as ███████ which are akin to a distribution list of numerous Google employees.  During the document collection and review process, Google makes its best efforts to "de-dupe" such identical emails. If Google did not do that, the volume of Google's document productions would increase exponentially, but would be populated with numerous identical duplicate emails.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 15 day of January, 2010 at New York, New York.

Theresa H. Beaumont

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    WAYMO-UBER-00145117

# EXHIBIT 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Leslie Altherr - 7/30/2009
ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION


FUNCTION MEDIA LLC,

              Plaintiff,

  vs.                  No. 2007-CV-279 (CE)

GOOGLE, INC. and YAHOO!, INC.,

              Defendants.

_____/


*** ATTORNEYS' EYES ONLY ***


VIDEOTAPED DEPOSITION OF LESLIE ALTHERR

30(b)(6) DEPOSITION OF GOOGLE, INC.

July 30, 2009


Reported by:
Natalie Y. Botelho
CSR No. 9897

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY        WAYMO-UBER-00145119

Leslie Altherr - 7/30/2009
ATTORNEYS' EYES ONLY

Page 40

1    Does Google have any sort of explanation as to why

2    there's been no instant messaging production?

3    A.        A user --

4            MR. WOLFF:  Objection.

5            THE WITNESS:  A user can change their

6    settings to be off the record, which means that the

7    text of the messages are not stored anywhere.

8    They're not logged in the e-mail.  If you're on the

9    record, the text of the IM is stored with the mail.

10   So when we pull the mail from the mail server, you

11   would get those messages.

12           MR. GRINSTEIN:  Q.  Do Google employees,

13   in your experience, in gathering documents for

14   lawsuits, typically do their instant messaging off

15   the record?

16   A.        I can't speak to all of Google and what

17   they do with their instant messaging, and there's

18   no -- it's up to the user.  Instant messaging is

19   really supposed to be used to say, "Hey, are you

20   there?  Did you see my e-mail?"  It's not -- it's

21   for short messages.  I don't know if you text on

22   your phone, but it's the same idea.

23   Q.        What happens to instant messages that are

24   sent off the record after they're sent?  I should

25   be -- that's a bad question.  Let me ask again.

Leslie Altherr - 7/30/2009
ATTORNEYS' EYES ONLY

Page 41

1  How, if at all, are instant messages that are sent
2  by Google employees off the record retained?
3          MR. WOLFF:  Objection.
4          THE WITNESS:  If your setting is off the
5  record, they're not stored in your e-mail.
6  They're -- there's no log of them.
7          MR. GRINSTEIN:  Q.  So once the message is
8  sent, there is no permanent record of the message
9  kept; is that your testimony?
10 A.         If it's off -- if it's off the record.
11 Q.         If it's off the record?
12 A.         Correct.
13 Q.         All right.  If you can turn with me to the
14 page that has Bates Number 633, please.  This
15 document's entitled "EMG Reports."  Do you see that?
16 A.         Yes.
17 Q.         Do you know what the abbreviation "EMG"
18 stands for?
19 A.         "Executive Management Group."
20 Q.         And you see the first bullet point, it
21 says, "What are EMG Reports?  These weekly reports
22 provided the Executive Management Group status
23 updates for the various groups and departments."  Do
24 you see that?
25 A.         Yes.

# EXHIBIT 2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

--oOo--

FUNCTION MEDIA, L.L.C.,      )
                             )
             Plaintiff,      )
                             )
        vs.                  )  Case No. 2:07CV279
                             )
GOOGLE, INC.                 )
                             )
             Defendant.      )
_____)

DEPOSITION OF

SERGEY BRIN

_____

Thursday, January 14, 2010

**HIGHEST LEVEL OF CONFIDENTIALITY

UNDER PROTECTIVE ORDER**

REPORTED BY: COREY W. ANDERSON, CSR 4096 (425290)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          WAYMO-UBER-00145123

Sergey Brin - 1/14/2010
Highest Level of Confidentiality Under Protective Order

Page 89

1    didn't receive a lot of e-mails from your file.
2    This e-mail is actually from Ms. Wojcicki's files.
3    My question to you would be why we didn't receive
4    this e-mail from your files.
5         A.   I would have to ask the folks who produced
6    this or stuff.  I mean, I imagine that since you
7    already had it -- well, actually, wait a second.
8              Well, this e-mail was only sent to Susan
9    Wojcicki.  The one that it refers to inside was sent
10   to EMG.
11        Q.   Right.
12        A.   Yeah.
13        Q.   Okay.  You do not have a policy of
14   deleting e-mails.
15             Is that right?
16        A.   No.  I can try to search for it for you.
17   But you already have it.
18        Q.   Do you -- well, I'm not particularly
19   worried about this e-mail.
20        A.   Hmm.
21        Q.   I'm worried about the other e-mails that I
22   might not have that were sent to Susan Wojcicki
23   is -- that were not sent to Susan Wojcicki, excuse
24   me.
25             Do you use instant messaging?

Sergey Brin - 1/14/2010
Highest Level of Confidentiality Under Protective Order

Page 90

1       A.   We have a feature in Gmail built in called
2  gmail chat or Google talk -- or Google Talk, sorry.
3  Can't remember how we branded it exactly.
4       But anyway, we have a chat feature built
5  into gmail.
6       Q.   Do you use that?
7       A.   Uh-huh.
8       Q.   The e-mails are stored within Google and
9  gmail, or are they all off the record?
10      A.   Sorry, are you talking about chats?
11      Q.   Yes.
12
13
14
15
16
17
18
19      Q.   You never exchange anything meaningful --
20  let me back up.
21      You have never exchanged anything
22  meaningful by means of instant message conversation?
23      A.   That's a universal, so probably going a
24  little bit overboard.  But chat is generally
25  reserved for, you know, like can you take a look at

Sergey Brin - 1/14/2010
Highest Level of Confidentiality Under Protective Order

Page 91

1    this, where I point to something, you know, point to

2    an e-mail or point to a document or something, or --

3    but that wouldn't typically be the case, I don't

4    know.

5        Q.    Sometimes you would have substantive

6    conversations or take a look at this or relevant

7    issues that would take place by instant message?

8        MR. DeFRANCO:  Objection to form.

9        Go ahead.

10       THE WITNESS:  I -- I don't know about -- I

11   mean, I can't think of an instance of that.  So...

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          WAYMO-UBER-00145126

Sergey Brin - 1/14/2010
Highest Level of Confidentiality Under Protective Order

Page 92

8      Q.    Does Google have a way to search documents
9   electronically over the entire network?
10      A.    Over the entire network?
11      Q.    Yeah.
12      A.    Well, what kinds of documents?
13      Q.    E-mails.
14      A.    Oh, yeah, e-mails we can search, uh-huh.
15   I mean, oh, sorry, we can search all the ones that
16   are stored within gmail.  If somebody is using
17   different e-mails, then that would not have...
18      Q.    And so you can do one, put in a search
19   term and it will search the entire company's
20   e-mails.
21          Is that right?
22      A.    Oh, sorry.
23      Q.    I just want to be sure we are on the same
24   page here so there is no misunderstanding.
25      A.    Okay, I see what you are saying.  Oh.  You

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          WAYMO-UBER-00145127