QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                    Plaintiff,<br><br>          vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>                    Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL PARTIES' SECOND AMENDED JOINT PROPOSED PRETRIAL ORDER** |

Pursuant to Civil L.R. 7-11 and 79-5, Plaintiff Waymo LLC ("Waymo") respectfully requests to file under seal portions of the Second Amended Joint Proposed Pretrial Order. Specifically, Waymo requests an order granting leave to file under seal the portions of the documents as listed below:

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Second Amended Joint Proposed Pretrial Order | Highlighted Portions | Waymo (green highlights) |
| Appendix A to Second Amended Joint Proposed Pretrial Order | Entire Document | Waymo; Defendants |
| Appendix D to Second Amended Joint Proposed Pretrial Order | Highlighted Portions | Waymo (green highlights); Defendants (blue highlights) |

## I.   LEGAL STANDARD

Civil Local Rule 79-5 requires that a party seeking sealing "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law" (*i.e.*, is "sealable"). Civil L.R. 79-5(b). The sealing request must also "be narrowly tailored to seek sealing only of sealable material." *Id.* In the context of non-dispositive motions, materials may be sealed so long as the party seeking sealing makes a "particularized showing" under the "good cause" standard of Federal Rule of Civil Procedure 26(c). *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (quoting *Foltz v. State Farm Mutual Auto Insurance Co.*, 331 F.3d 1122, 1135, 1138 (9th Cir. 2003)).

## II.   THE COURT SHOULD SEAL WAYMO'S CONFIDENTIAL INFORMATION

The Court should seal portions of the Second Amended Joint Proposed Pretrial Order and Appendices A and D as identified by Waymo in the table above. Waymo seeks to file this information under seal because it discloses Waymo's trade secrets and confidential business information. *See* Declaration of Jonathan Francis ("Francis Decl.") ¶¶ 3-5. Courts have determined that trade secret information merits sealing. *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, No. 14-cv-03078, 2015 WL 3993147, at *1 (N.D. Cal. June 30, 2015) (quoting *Kamakana*, 447 F.3d at 1179); *see also Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428, 2013 WL 211115, at *1, *3

(N.D. Cal. Jan. 17, 2013) (granting request to seal document that "consists entirely of descriptions of Brocade's trade secrets").  Confidential business information that, if released, may "harm a litigant's competitive standing" also merits sealing.  *See Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598-99 (1978).  Waymo seeks to seal trade secrets that fit squarely within these categories.  Francis Decl. ¶¶ 3-5.  Waymo maintains this information as a trade secret (*see* Dkt. 25-31) and ensures the information remains secret with strict secrecy and security protocols (*see* Dkt. 25-47; Dkt. 25-49.).  *See* Francis Decl. ¶ 4.  Waymo has narrowly tailored its requests to only information meriting sealing.  *Id.* ¶ 5.  In fact, both *Music Group* and *Brocade* found the confidential information at issue in those cases met the heightened "compelling reasons" standard for sealing.  *Music Grp.*, 2015 WL 3993147, at \*1; *Brocade*, 2013 WL 211115, at \*1, \*3.  The information that Waymo seeks to seal, therefore, also meets this heightened standard.  The disclosure of Waymo's trade secret information would harm Waymo.  Francis Decl. ¶ 4.  Moreover, the scope of information that Waymo is seeking to seal is consistent with other administrative motions to seal that have already been granted by the Court in this case.  (*See, e.g.*, Dkt. 416, 414, 406, 393, 392.)  Thus, the Court should grant Waymo's administrative motion to seal.

## III.   <u>DEFENDANTS' CONFIDENTIAL INFORMATION</u>

Waymo only seeks to seal certain portions of Appendices A and D to the Amended Joint Proposed Pretrial Order as identified in the table above because Waymo believes such information is considered confidential or non-public by Defendants.  Francis Decl. ¶ 6.  Waymo takes no position as to the merits of sealing any of this designated material, and expects Defendants to file a declaration in accordance with the Local Rules.

1

## IV.    <u>CONCLUSION</u>

2          In compliance with Civil Local Rule 79-5(d), redacted and unredacted versions of the

3    above listed documents accompany this Administrative Motion.  For the foregoing reasons,

4    Waymo respectfully requests that the Court grant Waymo's Administrative Motion.

5

6    DATED:  January 23, 2018              QUINN EMANUEL URQUHART & SULLIVAN,
                                           LLP
7
                                           By  */s/ Charles Verhoeven*
8                                          _____
                                               Charles Verhoeven
9                                              Attorneys for WAYMO LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
   David A. Perlson (Bar No. 209502)
3     davidperlson@quinnemanuel.com
   Melissa Baily (Bar No. 237649)
4     melissabaily@quinnemanuel.com
   John Neukom (Bar No. 275887)
5     johnneukom@quinnemanuel.com
   Jordan Jaffe (Bar No. 254886)
6     jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:   (415) 875-6600
8  Facsimile:   (415) 875-6700

9  Attorneys for WAYMO LLC

10          UNITED STATES DISTRICT COURT

11 NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, | CASE NO. 3:17-cv-00939-WHA |
|       Plaintiff, | **DECLARATION OF JONATHAN FRANCIS IN SUPPORT OF PLAINTIFF WAYMO LLC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL PARTIES' SECOND AMENDED JOINT PROPOSED PRETRIAL ORDER** |
|    vs. | |
| UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
|      Defendants. | |

I, Jonathan Francis, declare as follows:

1.      I am an attorney licensed to practice in the State of California and am admitted to practice before this Court.  I am an associate at the law firm Quinn Emanuel Urquhart & Sullivan, LLP, counsel for the Plaintiff Waymo LLC ("Waymo").  I have personal knowledge of the matters set forth in this Declaration, and if called as a witness I would testify competently to those matters.

I make this declaration in support of Waymo's Administrative Motion to File Under Seal Portions of Parties' Second Amended Joint Proposed Pretrial Order, filed concurrently herewith (the "Administrative Motion").  The Administrative Motion seeks an order sealing the following materials filed concurrently herewith:

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Second Amended Joint Proposed Pretrial Order | Highlighted ortions | Waymo (green highlights) |
| Appendix A to Second Amended Joint Proposed Pretrial Order | Entire Document | Waymo; Defendants |
| Appendix D to Second Amended Joint Proposed Pretrial Order | Highlighted Portions | Waymo (green highlights); Defendants (blue highlights) |

2.      Specifically, the green highlighted portions of the Second Amended Joint Proposed Pretrial Order and Appendix D thereto, as well as the entirety of Appendix A to the Second Amended Joint Proposed Pretrial Order, contain or refer to trade secret and/or confidential business information, which Waymo seeks to seal.

3.      The green highlighted portions of the Second Amended Joint Proposed Pretrial Order, as well as the entirety of Appendix A to the Second Amended Joint Proposed Pretrial Order contain, reference, and/or describe Waymo's trade secrets.  The information Waymo seeks to seal includes the confidential design and functionality of Waymo's proprietary autonomous vehicle system, including its LiDAR designs, which Waymo maintains as secret.  I understand that these trade secrets are maintained as secret by Waymo (Dkt. 25-47) and that the trade secrets are valuable to Waymo's business (Dkt. 25-31).  The public disclosure of this information would give Waymo's competitors access to descriptions of the functionality or features of Waymo's autonomous vehicle system.  If such information were made public, I understand that Waymo's competitive standing would be

significantly harmed.  Appendix A to the Second Amended Joint Proposed Pretrial Order further contains, references, and/or describes Waymo's highly confidential and sensitive business information.  The information Waymo seeks to seal regards confidential details regarding Waymo's business and competition.  I understand that this confidential business information is maintained by Waymo as secret.  The public disclosure of this information would give Waymo's competitors access to Waymo's business strategy for its autonomous vehicle system.  If such information were made public, I understand that Waymo's competitive standing would be significantly harmed.

4.     In addition, the green highlighted portions of Appendix D to the Second Amended Joint Proposed Pretrial Order contain addresses or other personal information of former Waymo employees involved in this case, the disclosure of which would cause Waymo and those employees substantial harm due to the high public profile of this litigation.

5.     Waymo's request to seal is narrowly tailored to those portions of the Second Amended Joint Proposed Pretrial Order and Appendices A and D thereto that merit sealing.

6.     Waymo also seeks to seal certain portions of Appendices A and D to the Second Amended Joint Proposed Pretrial Order as identified in the table above because Waymo believes such information is considered confidential or non-public by Defendants.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed in San Francisco, California, on January 23, 2018.

By */s/ Jonathan Francis*
Jonathan Franics
Attorneys for WAYMO LLC

### SIGNATURE ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Jonathan Francis.

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

| WAYMO LLC, | CASE NO. 3:17-cv-00939-WHA |
|---|---|
| Plaintiff, | |
| vs. | **[PROPOSED] ORDER GRANTING PLAINTIFF WAYMO LLC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL PARTIES' SECOND AMENDED JOINT PROPOSED PRETRIAL ORDER** |
| UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      Plaintiff Waymo LLC ("Waymo") has filed an Administrative Motion to File Under Seal

2  Parties' Second Amended Joint Proposed Pretrial Order ("Administrative Motion").

3      Having considered the Administrative Motion, and good cause to seal having been shown,

4  the Court **GRANTS** Waymo's Administrative Motion and **ORDERS** sealed the documents listed

5  below:

| Document | Portions to Be Filed Under Seal |
|---|---|
| Second Amended Joint Proposed Pretrial Order | Highlighted Portions |
| Appendix A to Second Amended Joint Proposed Pretrial Order | Entire Document |
| Appendix D to Second Amended Joint Proposed Pretrial Order | Highlighted Portions |

12      **IT IS SO ORDERED.**

14  Dated: _____, 2018

_____
HON. WILLIAM ALSUP
United States Magistrate Judge

1

2 UNITED STATES DISTRICT COURT

3 NORTHERN DISTRICT OF CALIFORNIA

4 SAN FRANCISCO DIVISION

5

WAYMO LLC,
            Plaintiff,

6                    vs.

UBER TECHNOLOGIES, INC.;
7 OTTOMOTTO LLC; OTTO TRUCKING
LLC,
8            Defendants.

9

CASE NO. 3:17-cv-00939

**SECOND AMENDED JOINT PROPOSED
PRETRIAL ORDER**

**FILED UNDER SEAL PURSUANT TO
PROTECTIVE ORDER**

Trial Date:  February 5, 2018

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     CLAIMS AND DEFENSES THAT REMAIN TO BE DECIDED ...................................... 1

     A.     Waymo's Submission ......................................................................................... 1

     B.     Uber's Submission ............................................................................................. 4

II.     RELIEF SOUGHT ............................................................................................................ 8

     A.     Waymo's Submission ......................................................................................... 8

     B.     Uber's Submission ............................................................................................. 9

III.     STIPULATED FACTS ..................................................................................................... 9

IV.     FACTUAL ISSUES THAT REMAIN TO BE TRIED ................................................... 10

V.     EXHIBIT AND WITNESS LISTS ................................................................................. 13

VI.     MISCELLANEOUS ....................................................................................................... 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**SECOND AMENDED JOINT PROPOSED PRETRIAL ORDER**

2

Pursuant to the Court's Guidelines for Trial and Final Pretrial Conference in Civil Jury

3

Cases, the parties submit the following Second Amended Joint Proposed Pretrial Order.

4

**I.     CLAIMS AND DEFENSES THAT REMAIN TO BE DECIDED**

5

**A.     Waymo's Submission**

6

Two of Waymo's claims for relief remain to be decided.  First, Waymo asserts a violation

7

of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).  (FAC Claim 1.)  Waymo claims that

8

Uber and Ottomotto improperly acquired, used, or disclosed Waymo-owned information relating

9

to its self driving car technology, including custom LIDAR systems that are used to enable the

10

operation of fully self-driving vehicles.  This information comprises one or more of the identified

11

Waymo-owned trade secrets, including Waymo LiDAR designs, and one or more of these

12

Waymo-owned trade secrets are related to a product or service used in, or intended for use in,

13

interstate or foreign commerce.  Waymo has taken reasonable measures to keep such information

14

secret and confidential.  Waymo has at all times maintained stringent security measures to

15

preserve the secrecy of its trade secrets, and Waymo's trade secret information derives

16

independent economic value from not being generally known to, and not being readily

17

ascertainable through proper means by, another person who could obtain economic value from

18

the disclosure or use of the information.  Defendants' misappropriation of Waymo's trade secret

19

information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

20

Second, Waymo asserts a claim of violation of California Uniform Trade Secret Act, Cal.

21

Civ. Code § 3426 *et seq*.  (FAC Claim 2.)  Waymo claims that Uber and Ottomotto improperly

22

acquired, used, or disclosed Waymo-owned information relating to its self driving car technology,

23

including custom LIDAR systems that are used to enable the operation of fully self-driving

24

vehicles.  This information comprises one or more of the identified Waymo-owned trade secrets,

25

including Waymo LiDAR designs, and one or more of these Waymo-owned trade secrets were

26

trade secrets at the time of the misappropriation.  Waymo has undertaken efforts that are

27

reasonable under the circumstances to maintain the secrecy of the trade secrets at issue.

28

Defendants knew or should have known under the circumstances that the information

misappropriated by Defendants were trade secrets.  Defendants misappropriated and threaten to further misappropriate trade secrets at least by acquiring trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means, and Defendants are using and threatening to use the trade secrets acquired by improper means without Waymo's knowledge or consent.  The aforementioned acts of Defendants were willful, malicious and fraudulent.[1]  As detailed in Waymo's recent Offer of Proof (Dkt 2466-3), Defendants have systemically attempted and continue to attempt to conceal their misappropriation of Waymo's trade secrets.

Pursuant to this Court's Order (Dkt. 563), on August 1, Waymo elected nine trade secrets it would present at trial.  They are described in Waymo's trade secret list, provided before discovery began in this matter (Dkt. 25-7), including:



a.   **Waymo's Trade Secret No. 2** is

b.   **Waymo's Trade Secret No. 7** is

2".

c.   **Waymo's Trade Secret No. 9** is

---

[1]   No other Waymo claims currently remain for trial.  Waymo's patent infringement claims (FAC 3, 4, 5, 6) were dismissed by stipulation.  (Dkt. 449, 1550.)  Waymo's unfair competition claim (FAC 7) was dismissed by order of the Court.  (Dkt. 576.)  Otto Trucking was dismissed as a defendant in this case.  (Dkt. 2151.)

[2]   As described with more particularity in Dkt. 335-4.



d.   **Waymo's Trade Secret No. 13** is

e.   **Waymo's Trade Secret No. 14** is

f.   **Waymo's Trade Secret No. 25** is

g.   **Waymo's Trade Secret No. 90** is

h.   **Waymo's Trade Secret No. 111** is

Waymo reserves the right to pursue additional trade secrets, including based upon

information discovered as a result of Defendants' late disclosure of the Stroz due diligence report

and associated documents.  (Dkt. 2129 (holding in abeyance Waymo's motion for leave to add

trade secret claims).)[3]

---

[3] This Court granted Defendants' motion for summary judgment with respect to Trade Secret No. 96.  (Dkt. 2151.)

**B.    Uber's Submission**

Uber Technologies, Inc., and Ottomotto LLC (together, "Uber") deny Waymo's claims. Uber independently developed all of the technology and know-how it uses, and thus has a complete defense to Waymo's claims.  In addition, the alleged trade secrets are not protectable trade secrets under either the DTSA or CUTSA.  Waymo has not taken reasonable measures to protect the alleged trade secrets, and they do not derive independent economic value from not being generally known or readily ascertainable.  Uber has not misappropriated any of the alleged trade secrets.  Uber did not acquire the alleged trade secrets by improper means.

Significantly, Waymo did not plead a claim based on "disclosure" of the alleged trade secrets and should not be permitted to advance such a claim at trial.  Waymo likewise never pleaded theories of liability based on ratification or agency, or any theory of vicarious liability. For example, Waymo never pled that MoFo or Stroz "used" or "disclosed" the alleged trade secrets, or that Uber improperly "disclosed" trade secrets to vendors.  Even now, Waymo has never disclosed a theory of damages stemming from the alleged disclosures by Uber to its vendors or from any alleged use or disclosure by MoFo or Stroz.  Waymo should not be permitted to argue such unpled theories at trial.  Moreover, even if such claims had been pled, Uber denies that it is vicariously liable for any misappropriation by any other person or entity, or liable under principles of agency or ratification under trade secret law.

Even if Uber is found to have misappropriated Waymo trade secrets (which it has not), Waymo has not suffered any damages as a result of Uber's conduct.  Neither Uber nor Waymo has commercialized their autonomous vehicle technologies.  For that reason, Waymo admits that it has not lost any profits.  For the same reason, Uber has not gained any profits, and thus cannot have been unjustly enriched.  Indeed, the Uber technologies that Waymo claims constitute trade secret misappropriation have never even been commercially deployed on a vehicle.  There is zero revenue associated with any of that technology.  Moreover, Waymo's alleged damages are speculative and based on unreliable expert testimony and thus not recoverable.  In addition, even if Waymo were able to show that any trade secrets had been misappropriated, it would be fully protected by the injunction it seeks, and a damage award would be nothing more than a windfall.

1    Waymo is not entitled to present any reasonable royalty evidence to the jury because a reasonable

2    royalty, if any, should be determined by the Court.  Waymo's decision not to include its damages

3    theories—much less the required computation of damages—in its initial disclosures also

4    precludes it from offering any evidence of damages.

5        Alternatively, if the Court permits Waymo to pursue damages, then Waymo should not be

6    entitled to injunctive relief.  Any injury to Waymo is not immediate or irreparable, Waymo has an

7    adequate remedy at law, and both the balance of hardships and the public interest favor no

8    injunction.  Moreover, the monetary relief Waymo seeks, if granted, would preclude the grant of

9    any injunction (and likewise, as explained above, the injunctive relief Waymo seeks, if granted,

10   would preclude any damages).  In no circumstances should Waymo be permitted to seek a

11   windfall award of (supposed future) damages while also enjoining the conduct alleged to cause

12   those future damages.

13       Uber also notes that Waymo may not bring any claim under DTSA for acts of

14   misappropriation that occurred before DTSA's enactment on May 11, 2016.  As a result,

15   Waymo's theories of liability based on acquisition—all of which relate to events before

16   May 2016—cannot proceed under DTSA.

17       Uber makes the following statement about each alleged trade secret ("ATS"):

18       Uber denies that it misappropriated ATS 2, and specifically denies that it has unlawfully

19   acquired or used ATS 2.[4]  Uber independently developed the designs that Waymo accuses of

20   using ATS 2.  ATS 2 is not a trade secret, including because Waymo has not taken reasonable

21   measures to keep ATS 2 secret and because ATS 2 does not derive independent economic value

22   from not being generally known or ascertainable by the public or others who could make

23   economic use of it.  To the contrary, ATS 2 is readily ascertainable through proper means.  No

24       [4] Uber disagrees that Waymo is entitled to trial of its claims to the extent they are
     predicated on disclosure of the alleged trade secrets or to trial of its theories of liability to the
25   extent they are predicated on ratification or agency, because Waymo did not plead those issues in
     its Amended Complaint.  *See generally* Dkt. 23.  Out an abundance of caution, however, Uber
26   also denies that it unlawfully disclosed ATS 2, or any other alleged trade secret, and denies that it
     unlawfully acquired, used or disclosed ATS 2, or any other alleged trade secret, by ratification or
27   through its agents.

28

SECOND AMENDED JOINT PROPOSED PRETRIAL ORDER
CASE NO. 3:17-CV-00939-WHA                                                                          -5-

1  remedy is proper, because (i) Uber did not misappropriate ATS 2; (ii) Uber has implemented a

2  design-around that even more clearly avoids use of ATS 2; (iii) Uber has not been unjustly

3  enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites

4  for injunctive relief.

5          Uber denies that it misappropriated ATS 7, and specifically denies that it has unlawfully

6  acquired or used ATS 7.[5]  Uber independently developed the designs that Waymo accuses of

7  using ATS 7.  ATS 7 is not a trade secret, including because Waymo has not taken reasonable

8  measures to keep ATS 7 secret and because ATS 7 does not derive independent economic value

9  from not being generally known or ascertainable by the public or others who could make

10  economic use of it.  To the contrary, ATS 7 is generally known or readily ascertainable through

11  proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 7; (ii) Uber has

12  implemented a design-around that avoids use of ATS 7; (iii) Uber has not been unjustly enriched;

13  (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for

14  injunctive relief.

15          Uber denies that it misappropriated ATS 9, and specifically denies that it has unlawfully

16  acquired or used ATS 9.[6]  Uber independently developed the designs that Waymo accuses of

17  using ATS 9.  ATS 9 is not a trade secret, including because Waymo has not taken reasonable

18  measures to keep ATS 9 secret and because ATS 9 does not derive independent economic value

19  from not being generally known or ascertainable by the public or others who could make

20  economic use of it.  To the contrary, ATS 9 is generally known or readily ascertainable through

21  proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 9; (ii) Uber has

22  contracted a third-party firm to independently develop a substitute for the component alleged to

23  use ATS 9; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate;

24  and (v) Waymo cannot meet the prerequisites for injunctive relief.

25

26          [5] *See* note 4 *supra*.

27          [6] *See* note 4 *supra*.

28

Uber denies that it misappropriated ATS 13, and specifically denies that it has unlawfully acquired or used ATS 13.[7] Uber independently developed the designs that Waymo accuses of using ATS 13.  ATS 13 is not a trade secret, including because Waymo has not taken reasonable measures to keep ATS 13 secret and because ATS 13 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it.  To the contrary, ATS 13 is generally known or readily ascertainable through proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 13; (ii) Uber is implementing a design-around that avoids use of ATS 13; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated ATS 14, and specifically denies that it has unlawfully acquired or used ATS 14.[8] Uber independently developed the designs that Waymo accuses of using ATS 14.  Moreover, ATS 14 is not a trade secret, including because Waymo has not taken reasonable measures to keep ATS 14 secret and because ATS 14 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it.  To the contrary, ATS 14 is generally known or readily ascertainable through proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 14; (ii) Uber is implementing a design-around that even more clearly avoids use of ATS 14; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated ATS 25, and specifically denies that it has unlawfully acquired or used ATS 25.[9] Uber independently developed its own test scenarios and LiDAR requirements.  Moreover, ATS 25 is not identified with adequate specificity to qualify as a trade secret.  No remedy is proper, because (i) Uber did not misappropriate ATS 25; (ii) Uber has never

[7] *See* note 4 *supra*.

[8] *See* note 4 *supra*.

[9] *See* note 4 *supra*.

1   acquired or used ATS 25; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is

2   appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

3         Uber denies that it misappropriated ATS 90, and specifically denies that it has unlawfully

4   acquired or used ATS 90.[10]  Uber independently developed the designs that Waymo accuses of

5   using ATS 90.  Moreover, ATS 90 is not a trade secret, including because Waymo has not taken

6   reasonable measures to keep ATS 90 secret and because ATS 90 does not derive independent

7   economic value from not being generally known or ascertainable by the public or others who

8   could make economic use of it.  To the contrary, ATS 90 is generally known or readily

9   ascertainable through proper means.  Uber also argues that ATS 90 is not identified with adequate

10  specificity to qualify as a trade secret.  No remedy is proper, because (i) Uber did not

11  misappropriate ATS 90; (ii) Uber has not been unjustly enriched; (iii) no reasonable royalty is

12  appropriate; and (iv) Waymo cannot meet the prerequisites for injunctive relief.

13        Uber denies that it misappropriated ATS 111, and specifically denies that it has

14  unlawfully acquired or used ATS 111.[11]  Uber independently decided not to develop a system of

15  the sort referenced in ATS 111.  Moreover, ATS 111 is not a trade secret, including because

16  Waymo has not taken reasonable measures to keep ATS 111 secret and because ATS 111 does

17  not derive independent economic value from not being generally known or ascertainable by the

18  public or others who could make economic use of it.  No remedy is proper, because (i) Uber did

19  not misappropriate ATS 111; (ii) Uber has never acquired or used ATS 111; (iii) Uber has not

20  been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the

21  prerequisites for injunctive relief.

22  **II.**     **RELIEF SOUGHT**

23       **A.**     **Waymo's Submission**

24       Waymo seeks the following relief:

25

26     [10] *See* note 4 *supra*.

27     [11] *See* note 4 *supra*.

28

1.     That the Court award judgment in Waymo's favor and against Defendants on all causes of action.

2.     That the Court award Waymo damages in an amount to be further proven at trial.

3.     That the Court permanently enjoin Uber, Ottomotto LLC, and/or Otto Trucking LLC, its agents, servants, employees, attorneys, and all others in active concert or participation with the Defendants, from misappropriating Waymo's trade secrets.

4.     That the Court award Waymo exemplary damages.

5.     That the Court award Waymo attorneys' fees and costs.

6.     That the Court award Waymo such other and further relief as this Court may deem to be just and proper.

**B.     Uber's Submission**

1.     Judgment in favor of Uber and Ottomotto and against Waymo on all claims.

2.     Judgment that Waymo shall recover nothing from Uber or Ottomotto;

3.     Judgment that no injunction shall run against Uber or Ottomotto;

4.     Judgment dismissing Waymo's claims against Uber and Ottomotto with prejudice;

5.     An award of attorneys' fees under Cal. Civ. Code § 3426.4 or 18 U.S.C. § 1836(b)(3)(D);

6.     An award of costs under Cal. Civ. Code § 3426.4 and 18 U.S.C. § 1920;

7.     An award of damages for wrongful enjoinment, and execution of Waymo's preliminary injunction bond; and

8.     Such other and further relief to Uber and Ottomotto as the Court may deem just and proper.

### III.    STIPULATED FACTS

The parties jointly stipulate as follows:

1.     Plaintiff Waymo LLC is a subsidiary of Alphabet Inc. with its principal place of business located in Mountain View, California 94043.

2.     Defendant Uber Technologies, Inc. is a Delaware company with its principal place of business at 1455 Market Street, San Francisco, California.

3.     Defendant Ottomotto LLC (f/k/a 280 Systems Inc.) is a Delaware limited liability company with its principal place of business located at 737 Harrison Street, San Francisco, California.

4.     Anthony Levandowski is a former employee of Google who worked on its self-driving car program.

5.     Anthony Levandowski was Uber's Vice President of Engineering for approximately nine months and was in charge of Uber's self-driving vehicle program during that time.

6.     Anthony Levandowski was CEO and a founder of Ottomotto LLC.

7.     Levandowski left Waymo on January 27, 2016.

8.     As of August 2016, Uber had not deployed a LiDAR that was designed in-house.

9.     Uber fired Anthony Levandowski on May 26, 2017.

## IV.     FACTUAL ISSUES THAT REMAIN TO BE TRIED

The parties continue to dispute the following issues. Where fewer than all parties agree that a factual issues remains to be tried, the propounding party is indicated in brackets.

***Waymo's Reasonable Measures to Keep Its Alleged Trade Secrets Secret:***

1.     Whether Waymo takes reasonable measures to protect its trade secrets.

***Waymo's Alleged Trade Secrets Are Not Generally Known or Readily Ascertainable:***

2.     Whether any of Waymo's asserted trade secrets are generally known in the relevant field, or are readily ascertainable.

3.     Whether any of Waymo's asserted trade secrets derive independent economic value from their secrecy.

***Misappropriation of Waymo's Alleged Trade Secrets:***

4.     Whether Uber or Ottomotto misappropriated any of the alleged trade secrets by improperly acquiring, then[12] disclosing[13] or using any of the alleged trade secrets in violation of the DTSA or CUTSA.

_____

[12] [Waymo] Waymo disagrees that it must show both improper acquisition and either disclosure or use in order to prove its claim for trade secret misappropriation.  Although the

(Footnote continues on next page.)

      **a.**    [Uber] Whether Uber intended to secure dominion over any of the alleged trade secrets, as opposed to passively or inadvertently coming into possession of any alleged trade secret.

5.    Whether Uber or Ottomotto acquired any of the alleged trade secrets while knowing or having reason to know that Uber or Ottomotto, or the person from whom Uber or Ottomotto acquired the alleged trade secret, used improper means to acquire it.

6.    Whether any of the attendant circumstances required for misappropriation by use existed, including, at the time of any use:

      **a.**    Whether Uber or Ottomotto acquired knowledge of an alleged trade secret by improper means;

      **b.**    Whether Uber or Ottomotto knew or had reason to know that its knowledge of an alleged trade secret came from or through a person who had acquired the alleged trade secret through improper means; or

      **c.**    Whether Uber or Ottomotto knew or had reason to know that its knowledge of an alleged trade secret came from or through a person who had a duty to keep secret the alleged trade secret.

7.    Whether Uber or Ottomotto used any of the alleged trade secrets under circumstances that constitute misappropriation by use.

8.    Whether Uber or Ottomotto independently developed any of the designs or know-how accused of using the alleged trade secrets.

9.    Whether any misappropriation of the alleged trade secrets is ongoing.

---

(Footnote continued from previous page.)

Court's penultimate tentative jury instructions include an instruction requiring such a showing to support Waymo's recovery of unjust enrichment damages (Waymo will object to that instruction in its January 29, 2018 jury instruction submission), Waymo can prove its claim for trade secret misappropriation by showing that Defendants improperly acquired one or more Waymo trade secrets, irrespective of any use or disclosure.  A jury finding of misappropriation based solely on Defendants' improper acquisition is sufficient for the Court to enter permanent injunctive relief.

[13] [Uber] Uber and Ottomotto disagree that Waymo is entitled to trial on a disclosure theory. *See* note 4 *supra*.

*Joint and Several/Vicarious Liability*

    10.    [Waymo] Whether Uber and/or Ottomotto are liable for trade secret misappropriation based on the actions of Anthony Levandowski, Stroz Friedberg, and/or Morrison & Foerster.

*Willful and Malicious Trade Secret Misappropriation*

    11.    Whether any misappropriation of Waymo's trade secrets by Uber or Ottomotto was willful and malicious.

*Damages*

    12.    Whether Uber or Ottomotto was unjustly enriched by any misappropriation of the alleged trade secrets by Uber or Ottomotto, and if so, the amount of that unjust enrichment.

    13.    [Waymo] What amount of damages for a reasonable royalty Waymo is entitled to as a result of any misappropriation of Waymo's trade secrets by Uber or Ottomotto.

    14.    [Waymo] To the extent any misappropriation of Waymo's trade secrets by Uber or Ottomotto was willful and malicious, the amount of exemplary damages that should be awarded.

*Affirmative Defenses*

    15.    [Uber] Whether Waymo made any claim of misappropriation of any of its 121 alleged trade secrets in bad faith.

*Issues to be Tried to the Court*

    16.    [Uber] Should the jury find misappropriation and that it was willful and malicious, the Court will decide whether to award exemplary damages and, if so, what amount.

    17.    [Uber] Because Waymo has not timely or properly disclosed percipient witnesses to testify regarding its damages, and because this Court has stricken Waymo's damages expert, there is no basis for a jury to award damages in this case.  Further, Waymo has failed to proffer sufficient evidence upon which objective, non-speculative, and properly-apportioned damages could be awarded.  *See, e.g.*, *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1089, 1093 (9th Cir. 2014).

18.     [Waymo] Waymo disagrees with Uber's position.  In its order excluding Michael Wagner, the Court expressly said that Waymo would be allowed to present damages evidence to the jury and argue its damages case in closing.  (Dkt. 2166.)  And when Uber raised this issue at the November 14, 2017 hearing, the Court again confirmed that Waymo will be allowed to introduce damages evidence.  (11/14/17 Hr'g Tr. at 85-89.)  Waymo has good cause to add a limited number of witnesses to its witness list in light of the Court's exclusion of Waymo's damages expert, Michael Wagner.  Waymo submitted a précis on this subject on November 26, 2017 (Dkt. 2270), which the Court granted on November 27.  (Dkt. 2274.)  Waymo subsequently submitted its motion to supplement its trial witness list on November 29 and is currently awaiting the Court's ruling.  Waymo is also meeting and conferring with Uber regarding the authenticity and admissibility of certain exhibits it plans to admit through an Uber Custodian of Records.

19.     [Uber] Whether Waymo is entitled to a reasonable royalty for any misappropriation of the alleged trade secrets, and if so, the amount of that royalty.

20.     [Uber] The amount of any of reasonable attorney's fees awarded to any party.

21.     Whether Waymo would be irreparably harmed absent an injunction.

22.     Whether Waymo has an adequate remedy at law.

23.     Whether the balance of hardships favors granting or denying an injunction.

24.     Whether the public interest favors granting or denying an injunction.

## V.     EXHIBIT AND WITNESS LISTS

The parties attach their Second Amended Joint Exhibit List as Appendix A.  Waymo's Fourth Amended Witness List for its case-in-chief witnesses is attached as Appendix B.  Defendants' Objections to Waymo's Fourth Amended Witness List is attached as Appendix C.  Uber and Ottomotto's Second Amended Witness List for its case-in-chief witnesses is attached as Appendix D.  Waymo's Objections to Uber and Ottomotto's Second Amended Witness List is attached as Appendix E.

Waymo reserves the right to amend or supplement the Joint Proposed Pretrial Order and Joint Exhibit List and its Witness List based upon newly produced evidence.

1    Uber and Ottomotto also reserve the right to amend or supplement the Joint Proposed

2  Pretrial Order and Joint Exhibit List and its Witness List based upon newly produced evidence.

3  **VI.    MISCELLANEOUS**

4    1.    The parties agree that witnesses may be given a binder or binders containing

5  copies of the exhibits to be used during their examinations, rather than the original exhibits in the

6  courtroom.  The examining party shall give the opposing side the opportunity to inspect the

7  exhibit binder before it is handed to the witness to ensure that both sides agree that the binders

8  contain correct copies of the original exhibits.  The parties respectfully request the Court's

9  approval to do so.

10

11  Dated:  January 23, 2018             QUINN EMANUEL URQUHART & SULLIVAN, LLP

12                                    By  */s/ Charles K. Verhoeven*

13                                        Charles K. Verhoeven

14                                        Attorneys for WAYMO LLC

15  Dated:   January 23, 2018            MORRISON & FOERSTER LLP

16

17                                    By:  */s/ Arturo J. González*
                                        ARTURO J. GONZÁLEZ

18                                       Attorneys for Defendants

19                                       UBER TECHNOLOGIES, INC.
                                        and OTTOMOTTO LLC

20

21                  **ATTESTATION OF E-FILED SIGNATURE**

22    I, Charles K. Verhoeven, am the ECF User whose ID and password are being used to file

23  this Second Amended Joint Pretrial Order.  In compliance with General Order 45, X.B., I hereby

24  attest that Arturo J. González concurred in this filing.

25  Dated:  January 23, 2018             */s/ Charles K. Verhoeven*
                                        Charles K. Verhoeven

26

27

28

# APPENDIX D

1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone:     415.268.7000
5   Facsimile:     415.268.7522

6   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
7   HAMISH P.M. HUME (*Pro Hac Vice*)
    hhume@bsfllp.com
8   BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
9   Washington DC  20005
    Telephone:     202.237.2727
10  Facsimile:     202.237.6131

11  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
12  SHAWN RABIN (*Pro Hac Vice*)
    srabin@SusmanGodfrey.com
13  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
14  New York, NY  10019-6023
    Telephone:     212.336.8330
15  Facsimile:     202.336.8340

16  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
17  and OTTOMOTTO LLC

18                     UNITED STATES DISTRICT COURT

19                   NORTHERN DISTRICT OF CALIFORNIA

20                       SAN FRANCISCO DIVISION

21  WAYMO LLC,                          Case No. 3:17-cv-00939-WHA

22             Plaintiff,               **DEFENDANTS UBER
                                        TECHNOLOGIES, INC. AND
23        v.                            OTTOMOTTO LLC'S SECOND
                                        AMENDED FED. R. CIV. P. 26(A)(3)
24  UBER TECHNOLOGIES, INC.,            WITNESS LIST**
    OTTOMOTTO LLC; OTTO TRUCKING
25  LLC,                               Judge:   The Honorable William Alsup

26             Defendants.              Trial Date: February 5, 2018

27

28

1       Defendants Uber Technologies, Inc. and Ottomotto LLC ("Uber") hereby submit their

2  witness list for trial, pursuant to Fed. R. Civ. P. 26(a)(3) and the Court's Guidelines for Trial and

3  Final Pretrial Conference in Civil Jury Cases.

4       Uber identifies the name, contact information, and substance of the testimony of each

5  witness it expects to present or may present at trial, other than solely for impeachment.  Pursuant

6  to the Court's Guidelines, non-cumulative testimony is identified below in italics.

7  **I.     LIVE WITNESSES**

8       Uber expects to present live testimony from the following witnesses:

9

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| Boehmke, Scott | [Contact through counsel of record]<br><br>Uber Technologies, Inc. Advanced Technologies Center 100 32nd St, Pittsburgh, PA 15201 | *Mr. Boehmke is an engineering manager within Uber's Advanced Technologies Group, responsible for hardware development and application in the self-driving vehicle project.  He was previously a project engineer at Carnegie Mellon where he designed LiDAR and Radar sensors.  He may testify regarding design and development of Defendant's LiDAR,* Defendant's non-misappropriation of Waymo's trade secrets; inspections pursuant to the Court's provisional remedy order; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Epstein, Michael | Waymo LLC 1600 Amphitheatre Parkway Mountain View, CA 94043 | *Mr. Epstein is a product manager at Waymo.*  He is expected to testify regarding Waymo's decision to enter the Transportation as a Service ("TaaS") market, estimates and forecasts of the ride-sharing market and Waymo's share of the ride-sharing market and *Waymo's business and strategic plans (and plans generally) for the ride-sharing market,* including projections for revenue generation and profitability and *including TaaS, and competition with Uber.* |

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| Faulkner, Kevin | [Contact through counsel of record]<br><br>Stroz Friedberg<br>32 Avenue of the Americas, Floor 4<br>New York, NY 10013<br>Phone:  (212) 981-6540 | *Mr. Faulkner is Managing Director at Stroz Friedberg and is an expert retained by Uber and Ottomotto to testify regarding the forensic examination of Uber-issued devices and data and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order.  He will testify regarding the matters disclosed in his expert reports of September 7, 2017, November 17, 2017, and January 19, 2018*.* |
| Friedberg, Eric | Stroz Friedberg<br>32 Avenue of the Americas, Floor 4<br>New York, NY 10013<br>Phone:  (212) 981-6540 | *Mr. Friedberg is a co-founder of Stroz Friedberg and currently serves as the co-President.*  He will testify regarding Stroz Friedberg's investigation and due diligence for Uber's potential acquisition of Ottomotto and Otto Trucking, LLC, including with respect to the deletion of the 14,000 downloaded files. |
| Haslim, James | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Haslim is a senior engineering manager at Uber, responsible for the technical development of Uber's LiDAR sensors, and previously worked at Tyto. He may testify regarding design and development of Defendants' LiDAR*; Defendants' non-misappropriation of Waymo's trade secrets; knowledge of Odin Wave LLC and Tyto LiDAR LLC; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| Kalanick, Travis | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr Kalanick is Uber's co-founder and former Chief Executive Officer.  He may testify regarding Defendants' business model and strategy for autonomous vehicles; Defendants' non-misappropriation of Waymo's trade secrets; Uber's decision to acquire Ottomotto; steps taken by Defendants to prevent trade secrets from prior employers coming to Defendants; Defendants' autonomous vehicle program; March 11, 2016 meeting with Anthony Levandowski; knowledge of Waymo's discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space; Defendants' employment of Anthony Levandowski; and Defendants' termination of Anthony Levandowski.* |
| Krafcik, John | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Krafcik is Waymo's Chief Executive Officer.  He is expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; Waymo's business plans; knowledge of discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space; and knowledge of the Project Chauffeur bonus program.* |
| Lebby, Michael | [Contact through counsel of record]<br><br>██████████████████<br><br>Email: lebby@usc.edu | *Dr. Lebby is an expert retained by Uber and Ottomotto to testify regarding non-misappropriation of Waymo's trade secrets. He will testify regarding the matters disclosed in his expert report of September 7, 2017.* |

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| McManamon, Paul | [Contact through counsel of record]<br><br>University of Dayton<br>300 College Park<br>Fitz Hall Room 580Q<br>Dayton, OH 45469<br>Phone: (937) 344-3921 | *Dr. McManamon is an expert retained by Uber and Ottomotto to testify regarding non-misappropriation of Waymo's trade secrets. He will testify regarding the matters disclosed in his expert report of September 7, 2017, and his declaration of April 7, 2017.* |
| Meyhofer, Eric | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>Advanced Technologies Center<br>100 32nd St<br>Pittsburgh, PA 15201 | *Mr. Meyhofer is Head of Uber's Advanced Technologies Group.*  He may testify regarding the design and development of Defendants' LiDAR; Defendants' autonomous vehicle program; Defendants' non-misappropriation of Waymo's trade secrets; Defendants' business model and strategy for autonomous vehicles; Uber's decision to acquire Ottomotto; termination of Anthony Levandowski; confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; and the use or non-use of ephemeral communications, non-attributable devices, and attorney-client privileged designations within Uber's ATG*. |
| Nestinger, Stephen | 345 Digital Drive<br>Morgan Hill, CA 95037<br>Phone: (408) 465-2800<br><br>Contact through counsel:<br><br>John V. Picone III, Esq.<br>Hopkins & Carley<br>The Letitia Building<br>70 South First Street<br>San Jose CA 95113<br>Phone: (408) 286-9800<br>Email:<br>jpicone@hopkinscarley.com | *Mr. Nestinger is Director of Mechanical Engineering at Velodyne.* He is expected to testify regarding the technologies in LiDAR sensors that Velodyne has made or sold, including VLP-16, HDL-32E, HDL64E, Puck Hi-Res, and Puck Lite. |

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| Page, Larry | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Page is Google's co-founder and Chief Executive Office of Google's parent company, Alphabet Inc.*<br>He is expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; Waymo's business plans; knowledge of discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space; and knowledge of the Project Chauffeur bonus program, and his concerns about competition from Uber and Anthony Levandowski. |
| Poetzscher, Cam | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Poetzscher is Uber's Vice President of Corporate Development.*<br>He may testify regarding Defendants' non-misappropriation of Waymo's trade secrets; business of Otto Trucking LLC; Uber's decision to acquire Ottomotto; Uber's indemnification agreement with Ottomotto; Uber's meetings with Anthony Levandowski, Ottomotto and/or Otto Trucking before April 11, 2016; Stroz due diligence for the Uber/Ottomotto acquisition; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |

| Witness | Contact Information | Substance of Trial Testimony |
|---------|--------------------|-----------------------------|
| Ron, Lior | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Lior is Senior Director at OttoFreight, was a co-founder of Ottomotto, and previously worked at Google.* He may testify regarding the nature of employment at Waymo and Defendants; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; knowledge of the Project Chauffeur bonus program; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; Defendants' non-misappropriation of Waymo's trade secrets; formation, purpose, and business of Otto Trucking LLC; formation, purpose, and business of Ottomotto; Ottomotto's decision to be acquired by Uber; March 11, 2016 meeting with Anthony Levandowski; Stroz due diligence for the Uber/Ottomotto acquisition; confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order; design and development of Ottomotto's LiDAR; Uber's security group (including SSG, MA, and Threat Operations) as it relates to Uber's ATG*; Uber's competitive intelligence practices*; and the use or non-use of non-attributable devices, ephemeral communications, and attorney-client privileged designations within Uber's ATG*. |

| Witness | Contact Information | Substance of Trial Testimony |
|---------|-------------------|----------------------------|
| Sullivan, Stacy | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Ms. Sullivan is Vice President for People Operations and Chief Culture Officer at Google.  She is expected to testify regarding communication with Larry Page regarding Anthony Levandowski*, Mr. Levandowski's alleged recruitment of Waymo employees, the Chauffeur bonus plan, friction on the Chauffeur team, a meeting with Anthony Levandowski and Chelsea Bailey after Mr. Levandowksi left Google, the competition for talent, investigation (or lack thereof) of personal devices of new Google employees, and Larry Page's concerns about competition from Anthony Levandowski. |
| Urmson, Chris | ███████████████ | *Mr. Urmson was Waymo's former Chief Technology Officer.  He is* expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's employee policies concerning confidential and trade secret information; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; and knowledge of the Project Chauffeur bonus program. |

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| Zbrozek, Sasha | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Zbrozek is an electrical hardware engineer at Waymo's, and before that, Google's, self-driving car project.*  He is expected to testify regarding Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository; Waymo's employee policies concerning confidential and trade secret information; his development of instructions for logging into the SVN repository and the fact that following his instructions downloads the entire database; that the documents in that database are "low value" and that he was concerned that the lawyers were ascribing suspicion to Anthony Levandowski's alleged downloading; and his participation in Waymo's forensic investigation into alleged misappropriation of trade secrets. |
| Clark, Craig* | Stumphauzer & Sloman<br>One SE Third Avenue<br>Suite 1820<br>Miami, FL 33131 | *Craig Clark is a former legal director at Uber who worked with its security team.*  Mr. Clark is expected to testify about Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; and relationship and interaction with Uber ATG. |
| Facciola, John* | Georgetown University Law Center<br>600 New Jersey Avenue NW<br>Washington, DC 20001 | *John Facciola is a professor of law at Georgetown with substantial experience with and knowledge about data retention who advised Uber on issues related to data retention.*  He is expected to testify about his involvement in and knowledge of Uber's data retention policies and programs; and knowledge of best practices in data retention. |
| Oot, Patrick* | Shook, Hardy & Bacon<br>1155 F Street NW, Suite 200<br>Washington, DC 20004 | *Patrick Oot is a partner at Shook Hardy & Bacon with substantial experience with and knowledge about data retention who advised Uber on issues related to data retention.*  He is expected to testify about his involvement in and knowledge of Uber's data retention policies and programs; and knowledge of best practices in data retention. |

Uber may present live testimony from the following witnesses:

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Bailey, Chelsea | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Ms. Bailey is a human resources business partner at Google[x].*  She is expected to testify regarding Waymo's policies concerning confidential and trade secret information; Waymo employment and compensation issues; and the Project Chauffeur bonus program. |
| Bares, John | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>Advanced Technologies Center<br>100 32nd St, Pittsburgh, PA 15201 | *Mr. Bares is the former Operations Director at Uber's Advanced Technologies Group.*  He may testify regarding design and development of Defendants' LiDAR; Defendants' autonomous vehicle program; Defendants' non-misappropriation of Waymo's trade secrets; Defendants' business model and strategy for autonomous vehicles; Uber's  decision to acquire Ottomotto; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Bratic, Walter | [Contact through counsel of record]<br><br>OverMont<br>3737 Buffalo Speedway<br>Suite 1600<br>Houston, Texas 77098<br>Phone: (713) 403-3307<br>Email: walter.bratic@whitleypenn.com | *Mr. Bratic is an expert retained by Uber and Ottomotto to testify regarding damages.  He will testify regarding the matters disclosed in his expert report of September 7, 2017.* |

| Witness | Contact Information | Trial Testimony |
|---------|-------------------|-----------------|
| Brin, Sergey | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Brin is a co-founder of Google and President of Google's parent company, Alphabet Inc.*  He is expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; and knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski. |
| Brown, Gary | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Brown is a Forensics Security Engineer at Google.*  He is expected to testify about Waymo's first awareness of alleged trade secret misappropriation; Waymo's forensic investigation into alleged misappropriation of trade secret misappropriation, including the conclusions drawn from that investigation; and Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository. |

| Witness | Contact Information | Trial Testimony |
|---------|--------------------|-----------------|
| Burnette, Don | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Burnette is a technical lead for software at Uber, and previously worked at Google prior to co-founding Otto.* He may testify regarding the nature of employment at Waymo and Defendants; Defendants' non-misappropriation of Waymo's trade secrets; formation, purpose, and business of Ottomotto; Ottomotto's decision to be acquired by Defendants; Development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses; knowledge of the Project Chauffeur bonus program; Stroz due diligence for the Uber/Ottomotto acquisition; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Chu, Dan | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Chu is Director of Product at Waymo.* He is expected to testify regarding estimates and forecasts of the ride-sharing market and Waymo's share of the ride-sharing market and Waymo's business and strategic plans (and plans generally) for the ride-sharing market, including projections for revenue generation and profitability and including Transportation as a Service (TaaS), and the creation of documents that analyzed competition with Uber. |

| Witness | Contact Information | Trial Testimony |
|---------|---------------------|-----------------|
| Dolgov, Dmitri | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Dolgov is Vice President of Engineering at Waymo.*  He is expected to testify regarding design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets; Waymo's employee policies concerning confidential and trade secret information; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; and knowledge of the Project Chauffeur bonus program. |
| Droz, Pierre-Yves | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Droz is Principal Hardware Engineer at Waymo, serving as technical lead on Waymo's LiDAR project since its inception.*  He is expected to testify about Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets; whether and to what extent the allegedly misappropriated files contain Waymo's alleged trade secrets; Waymo's awareness of the extent to which each of the alleged Waymo trade secrets selected for trial other than trade secret 25, or elements thereof, are known or practiced outside of Waymo; and Waymo's knowledge of Odin Wave. |
| Fidric, Bernard | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Fidric is a hardware engineer at Waymo.*  He is expected to testify regarding design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets and Waymo's employee policies concerning confidential and trade secret information. |

| Witness | Contact Information | Trial Testimony |
|---------|--------------------|-----------------| 
| French, Paul | 465 California Street<br>Suite 1400<br>San Francisco, CA 94104<br>Phone: 415-321-8206<br>Email: paul@discovia.com | *Mr. French is an expert retained by Waymo to testify regarding: (1) the forensic examination of Uber-issued devices and data and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order and (2) Waymo's forensic investigation of Anthony Levandowski, Radu Raduta, and Sameer Kshirsagar and Waymo's methods to protect its confidential information and intellectual property (including trade secrets). He is expected to testify regarding the matters disclosed in his expert reports of September 14, 2017, November 17, 2017, and January 13, 2018\*.* |
| Fulginiti, Mary | c/o Melanie M. Blunschi<br>Latham & Watkins LLP<br>505 Montgomery Street<br>Suite 2000<br>San Francisco, California 94111<br>(415) 391-0600 | *Ms. Fulginiti was a managing director at Stroz Friedberg.* She will testify regarding Stroz Friedberg's investigation and due diligence for Uber's potential acquisition of Ottomoto and Otto Trucking, LLC, including with respect to the deletion of the 14,000 downloaded files. |
| Gardner, John | c/o Rogers Joseph O'Donnell<br>311 California Street, 10th Floor<br>San Francisco, CA | *Mr. Gardner is an attorney at Donahue Fitzgerald. He is expected to testify regarding representation of Anthony Levandowski*; knowledge of Odin Wave LLC, Tyto LiDAR LLC, and Sandstone Group LLC; and Stroz due diligence for the Uber/Ottomoto acquisition. |
| Gassend, Blaise | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Gassend is a software engineer at Waymo.* He is expected to testify regarding design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets and Waymo's employee policies concerning confidential and trade secret information. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Grossman, William | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Grossman is a mechanical engineer at Waymo.*  He is expected to testify regarding Waymo's knowledge of Defendants' LiDAR design; Waymo's employee policies concerning confidential and trade secret information; and Waymo's receipt of correspondence containing Defendants' LiDAR design. |
| Gruver, Dan | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Gruver is a senior program manager at Uber, responsible for sensing systems for self-driving vehicle, and was formerly employed by Google.*  He may testify regarding the design and development of Defendants' LiDAR; Defendants' non-misappropriation of Waymo's trade secrets; nature of employment at Waymo; Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; knowledge of the Project Chauffeur bonus program; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Gudjunsson, Kristinn | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Gudjunsson is Manager of Digital Forensics and Incident Management at Google.*  He is expected to testify regarding Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository; Waymo's employee policies concerning confidential and trade secret information; and Waymo's forensic investigation into alleged misappropriation of trade secret misappropriation, *including his role in the investigation* and the conclusions drawn from that investigation. |

| Witness | Contact Information | Trial Testimony |
|---------|-------------------|-----------------|
| Hesselink, Lambertus | Spilker Building, Room 301 Stanford University Stanford, California 94305 Phone: 415-269-7102 Email: Bert@kaos.stanford.edu | *Dr. Hesselink is an expert retained by Waymo to testify regarding Defendants' alleged misappropriation of Waymo's trade secrets.  He is expected to testify regarding the matters disclosed in his expert reports of August 24, 2017, and September 14, 2017, and his declaration of September 5, 2017.* |
| Holden, Jeff | [Contact through counsel of record]  Uber Technologies, Inc. 1455 Market Street, Floor 4 San Francisco, CA 94103 | *Mr. Holden is Chief Product Officer at Uber, responsible for product development.*  He may testify regarding defendants' business model and strategy for autonomous vehicles; Defendants' autonomous vehicle program; Uber's decision to acquire Ottomotto; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Ingram, Ben | Waymo LLC 1600 Amphitheatre Parkway Mountain View, CA 94043 | *Mr. Ingram is a systems engineer at Waymo.*  He is expected to testify regarding the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets; Waymo's employee policies concerning confidential and trade secret information; and Waymo's awareness of the extent to which alleged Waymo trade secret 25, or elements thereof, is known or practiced outside of Waymo. |
| Janosko, Michael | Waymo LLC 1600 Amphitheatre Parkway Mountain View, CA 94043 | *Mr. Janosko is a Security Engineering Manager at Google.*  He is expected to testify regarding Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository and Waymo's employee policies concerning confidential and trade secret information. |

| Witness | Contact Information | Trial Testimony |
|---------|---------------------|-----------------|
| Juelsgaard, Soren | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Juelshaard is a senior engineer at Uber and previously worked at 510 Systems.* He may testify regarding Stroz due diligence for the Uber/Ottomotto acquisition; Defendants' non-misappropriation of Waymo's trade secrets; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Kim, Rudy | Morrison & Foerster LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>Phone: (650) 813-5600 | *Mr. Kim is a partner at Morrison & Foerster LLP. He may testify regarding the intellectual property due diligence for the Uber/Ottomotto acquisition* and inspection pursuant to the Court's provisional remedy order. |
| Kintz, Gregory | ██████████████████ | *Mr. Kintz is an expert retained by Waymo to testify regarding Defendants' alleged misappropriation of Waymo's trade secrets. He is expected to testify regarding the matters disclosed in his declarations of March 10, 2017, and April 21, 2017.* |

| Witness | Contact Information | Trial Testimony |
|---------|-------------------|-----------------|
| Levandowski, Anthony | Contact through counsel:<br><br>Ismail Ramsey or Miles Ehrlich<br>Ramsey & Ehrlich LLP<br>803 Hearst Avenue<br>Berkeley, CA 94710 | *Mr. Levandowski was former Vice President of Engineering at Uber, co-founder of Ottomotto, and founder of 510 Systems.  He was also formerly employed by Waymo.*  He is expected to testify regarding the nature of his employment at Waymo and Defendants; design and development of Defendants' LiDAR; Defendants' autonomous vehicle program; Defendants' non-misappropriation of Waymo's trade secrets; business of Otto Trucking LLC; knowledge of Odin Wave LLC and Tyto LiDAR LLC; Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; knowledge of the Project Chauffeur bonus program; March 11, 2016 meeting with Anthony Levandowski; Stroz due diligence for the Uber/Ottomotto acquisition; and Uber's security group (including SSG, MA, and Threat Operations) as it relates to Uber's ATG*; Uber's competitive intelligence practices*; and the use of non-attributable devices, ephemeral communications, and attorney-client privileged designations within Uber's ATG*. |
| Linaval, Asheem | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Linaval is an electrical engineer at Uber and previously worked at 510 Systems, Google, Odin Wave, and Tyto.*  He may testify regarding Defendants' autonomous vehicle program and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| McCann, William | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. McCann is a mechanical engineer at Waymo.*  He is expected to testify regarding design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets; and Waymo's employee policies concerning confidential and trade secret information. |

| Witness | Contact Information | Trial Testimony |
|---------|--------------------|-----------------|
| Medford, Ron | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Medford is Waymo's Director for Safety.* He is expected to testify regarding safety assessments, public policy, and regulatory work relating to autonomous vehicles, and involvement in safety-related matters. |
| Morgan, Rhian | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Ms. Rhian is the Team Engagement Coordinator at Uber and was formerly the human resources lead at Ottomotto.* She may testify regarding hiring and onboarding process for Uber and Ottomotto, including hiring agreements; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Morriss, Zachary | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Morriss is a mechanical engineer at Waymo and previously worked at Anthony's Robots.* He is expected to testify regarding Waymo's employee policies concerning confidential and trade secret information; and the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Padilla, Angela | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Ms. Padilla is Associate General Counsel for Litigation and Employment at Uber.* She may testify regarding the termination of Anthony Levandowski; Stroz due diligence for the Uber/Ottomotto acquisition; confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order; Anthony Levandowski's claim that he downloaded and retained alleged misappropriated materials to facilitate bonus payment(s) from Waymo; the investigation and her knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney*; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations*; and involvement in and knowledge of Uber's data retention policies and programs.* |
| Palomar, Matthew | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Palomar is a hardware engineer at Uber and was previously an engineer at Tyto.* He may testify regarding the design and development of Defendants' LiDAR; Defendants' non-misappropriation of Waymo's trade secrets; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Pennecot, Gaetan | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Pennecot is a hardware engineer at Uber.  He formerly worked as a hardware engineer at 510 Systems and Google.  He may testify regarding the design and development of Defendants' LiDAR;* Defendants' non-misappropriation of Waymo's trade secrets; nature of employment at Waymo; Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; knowledge of the Project Chauffeur bonus program; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Qi, Nina | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Ms. Qi is the former Senior Manager of Corporate Development at Uber.*  She may testify regarding defendants' non-misappropriation of Waymo's trade secrets; business of Otto Trucking LLC; Uber's decision to acquire Ottomotto; March 11, 2016 meeting with Anthony Levandowski; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Sebern, Colin | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Sebern works on vehicle-building and calibration at Uber and previously worked at Ottomotto and Google.*  He may testify regarding Stroz due diligence for the Uber/Ottomotto acquisition; Defendants' non-misappropriation of Waymo's trade secrets; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Stojanowski, Ognen | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Stojanowski is Head of Policy and Government Relations at Uber.*  He may testify regarding knowledge of Odin Wave LLC, Tyto LiDAR LLC, and Sandstone Group LLC, and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |

| Witness | Contact Information | Trial Testimony |
|---------|--------------------|-----------------|
| Suhr, Justin | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Suhr is a Legal Director at Uber, specializing in employment issues.*  He may testify regarding Stroz due diligence for the Uber/Ottomotto acquisition; Uber's decision to acquire Ottomoto and structure of the acquisition; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Tate, Eric | Morrison & Foerster LLP<br>425 Market Street<br>San Francisco, CA 94105<br>Phone: (415) 268-7000 | *Mr. Tate is a partner at Morrison & Foerster LLP.*  He may testify regarding the Stroz due diligence for the Uber/Ottomotto acquisition* and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Thrun, Sebastian | ███████████<br><br>Contact through counsel:<br>Christopher B. Hockett<br>Davis Polk & Wardwell LLP<br>1600 El Camino Real<br>Menlo Park, CA 94025<br>Phone: (650) 752-2009<br>Email:<br>chris.hockett@davispolk.com | *Mr. Thrun is Chief Executive Officer of Kitty Hawk Corporation and formerly head of Waymo and Google[x].*  He is expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's employee policies concerning confidential and trade secret information; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; knowledge of the Project Chauffeur bonus program, and *his introduction of Travis Kalanick to Mr. Levandowski.* |
| Ulrich, Drew | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Ulrich is a mechanical engineer at Waymo, and previously work at 510 Systems.*  He is expected to testify regarding Waymo's employee policies concerning confidential and trade secret information and the design, development, and operation of Waymo's LiDAR systems and self-driving car project. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Wachter, Luke | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Wachter is a software engineer at Waymo and previously worked at 510 Systems.* He is expected to testify regarding the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets and Waymo's employee policies concerning confidential and trade secret information. |
| Willis, Tim | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Willis is Head of Global Supply at Waymo.* He is expected to testify regarding Waymo's supply chain operations and Waymo's employee policies concerning confidential and trade secret information. |
| Adkins, Heather* | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Heather Adkins is the director of information security and privacy at Google.* Ms. Adkins may testify regarding Google and Waymo's use of non-attributable or mis-attributable devices; and Google and Waymo's competitive intelligence gathering and market analysis. |
| Gicinto, Nick* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Nick Gicinto works in Uber's security group.* Mr. Gicinto may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Haimovici, Randy* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Randy Haimovici is a director in Uber's litigation department.* Mr. Haimovici may testify regarding the investigation and his knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations; and Uber's data retention policies and programs. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Henley, Mathew* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mathew Henley works in Uber's security group.* Mr. Henley may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Jacobs, Richard* | Boersch Shapiro<br>1611 Telegraph Avenue, Suite 806<br>Oakland, CA 94612 | *Richard Jacobs previously worked in Uber's security group.* Mr. Jacobs may testify concerning the allegations in his April 14, 2017 resignation email and the May 5, 2017 demand letter from his attorney; security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Johnston, Scott* | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Scott Johnston is the Director of Product Management at Google.* Mr. Johnston may testify regarding Waymo and Google's use of and policy regarding ephemeral communications, including "off the record" chats in electronic chat programs and apps; and Google and Waymo's policies regarding the retention of electronic communications. |
| Majalya, Sidney* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Sidney Majalya is a director in Uber's compliance group.* Mr. Majalya may testify regarding the investigation and his knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations. |

| Witness | Contact Information | Trial Testimony |
|---------|--------------------|-----------------|
| Maher, Kevin* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Kevin Maher works in Uber's security group.* Mr. Maher may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Nocon, Jake* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Jake Nocon works in Uber's security group.* Mr. Nocon may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Russo, Edward* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Edward Russo works in Uber's security group.* Mr. Russon may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Spiegler, Joe* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Joe Spiegler was previously Uber's Chief Compliance Officer.* Mr. Spiegler may testify regarding the investigation and his knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations. |
| Stewart, Shaun* | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Shaun Stewart is Waymo's Director of Operations.* Mr. Stewart may testify regarding Google and Waymo's surveillance of competitors. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Sullivan, Joe* | Angeli Law Group LLC<br>121 SW Morrison Street<br>Suite 400<br>Portland, OR 97204 | *Joe Sullivan was previously the Chief Security Officer at Uber.* Mr. Sullivan may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Yoo, Salle* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Salle Yoo is the former Chief Legal Officer, General Counsel, and Corprate Secretary for Uber.* Ms. Yoo may testify regarding the investigation and her knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations; Involvement in and knowledge of Uber's data retention policies and programs. |

Uber reserves the right to call any witness identified by Waymo. The above descriptions are not intended to cover every possible topic or sub-topic on which these witnesses may testify and are made without prejudice to Uber eliciting other testimony, including without limitation testimony regarding matters addressed during the deposition of a given witness.

## II.   DEPOSITION TESTIMONY

Uber reserves the right to present the deposition testimony of Waymo's managing agents and 30(b)(6) designees (i.e., Gary Brown, Pierre-Yves Droz, Dmitri Dolgov, Michael Xing, Joanne Chin, David Lawee, Jennifer Haroon, Ben Ingram, Aslan (Shawn) Bananzadeh, Shaun Stewart, Scott Johnston, and Heather Adkins), in addition to or in lieu of their live testimony. Uber also reserves the right to present the deposition testimony of any witnesses listed above to the extent permitted by Federal Rule of Civil Procedure 32.

Uber may present testimony from the following additional witnesses by deposition:

| Witness | Contact Information | Trial Testimony |
|---------|--------------------|----------------|
| Bares, John | [Contact through counsel of record]<br><br>Uber Technologies, Inc. Advanced Technologies Center<br>100 32nd St, Pittsburgh, PA 15201 | Mr. Bares is the former Operations Director at Uber's Advanced Technologies Group.  Uber may present his deposition testimony regarding design and development of Defendants' LiDAR; Defendants' autonomous vehicle program; Defendants' non-misappropriation of Waymo's trade secrets; Defendants' business model and strategy for autonomous vehicles; Uber's  decision to acquire Ottomotto; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Brin, Sergey | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Brin is a co-founder of Google and President of Google's parent company, Alphabet Inc.*  Uber may present his deposition testimony regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; and knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski. |
| Drummond, David | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Drummond is Senior Vice President of Corporate Development at Alphabet Inc., Google's parent company, and previously served on Uber's board of directors while employed by Alphabet Inc.* Uber may present his deposition testimony regarding Waymo's knowledge of Defendants' autonomous vehicle program; knowledge of Waymo's discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space. |

| Witness | Contact Information | Trial Testimony |
|---------|-------------------|-----------------|
| Page, Larry | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Page is Google's co-founder and Chief Executive Office of Google's parent company, Alphabet Inc.*<br>Uber may present his deposition testimony regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; Waymo's business plans; knowledge of discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space; and knowledge of the Project Chauffeur bonus program, and his concerns about competition from Uber and Anthony Levandowski. |

Uber reserves the right to designate testimony from any witness identified by Waymo.

The above descriptions are not intended to cover every possible topic or sub-topic on which Uber may offer deposition excerpts and are made without prejudice to Uber offering other testimony.

Dated:  January 19, 2018                    MORRISON & FOERSTER LLP

By:      */s/ Arturo J. González*
ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

---

* As explained in Defendants' Response to Waymo's Offer of Proof, Defendants object to Waymo offering evidence regarding the allegations made by Richard Jacobs. Defendants only identify the witnesses and trial testimony marked with an asterisk to the extent the Court disagrees and to the extent the topics fall within the subjects the Court permits at trial.