1

2 UNITED STATES DISTRICT COURT

3 NORTHERN DISTRICT OF CALIFORNIA

4 SAN FRANCISCO DIVISION

5

| | |
|---|---|
| WAYMO LLC,<br>            Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br>            Defendants. | CASE NO. 3:17-cv-00939<br><br>**SECOND AMENDED JOINT PROPOSED<br>PRETRIAL ORDER**<br><br>**FILED UNDER SEAL PURSUANT TO<br>PROTECTIVE ORDER**<br><br>Trial Date:  February 5, 2018 |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   CLAIMS AND DEFENSES THAT REMAIN TO BE DECIDED ......................................1

    A.   Waymo's Submission ......................................................................................1

    B.   Uber's Submission ...........................................................................................4

II.  RELIEF SOUGHT .............................................................................................................8

    A.   Waymo's Submission ......................................................................................8

    B.   Uber's Submission ...........................................................................................9

III. STIPULATED FACTS ......................................................................................................9

IV.  FACTUAL ISSUES THAT REMAIN TO BE TRIED .....................................................10

V.   EXHIBIT AND WITNESS LISTS ...................................................................................13

VI.  MISCELLANEOUS ..........................................................................................................14

1

**SECOND AMENDED JOINT PROPOSED PRETRIAL ORDER**

2          Pursuant to the Court's Guidelines for Trial and Final Pretrial Conference in Civil Jury

3   Cases, the parties submit the following Second Amended Joint Proposed Pretrial Order.

4   **I.     CLAIMS AND DEFENSES THAT REMAIN TO BE DECIDED**

5          **A.     Waymo's Submission**

6          Two of Waymo's claims for relief remain to be decided.  First, Waymo asserts a violation

7   of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).  (FAC Claim 1.)  Waymo claims that

8   Uber and Ottomotto improperly acquired, used, or disclosed Waymo-owned information relating

9   to its self driving car technology, including custom LIDAR systems that are used to enable the

10  operation of fully self-driving vehicles.  This information comprises one or more of the identified

11  Waymo-owned trade secrets, including Waymo LiDAR designs, and one or more of these

12  Waymo-owned trade secrets are related to a product or service used in, or intended for use in,

13  interstate or foreign commerce.  Waymo has taken reasonable measures to keep such information

14  secret and confidential.  Waymo has at all times maintained stringent security measures to

15  preserve the secrecy of its trade secrets, and Waymo's trade secret information derives

16  independent economic value from not being generally known to, and not being readily

17  ascertainable through proper means by, another person who could obtain economic value from

18  the disclosure or use of the information.  Defendants' misappropriation of Waymo's trade secret

19  information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

20          Second, Waymo asserts a claim of violation of California Uniform Trade Secret Act, Cal.

21  Civ. Code § 3426 *et seq*.  (FAC Claim 2.)  Waymo claims that Uber and Ottomotto improperly

22  acquired, used, or disclosed Waymo-owned information relating to its self driving car technology,

23  including custom LIDAR systems that are used to enable the operation of fully self-driving

24  vehicles.  This information comprises one or more of the identified Waymo-owned trade secrets,

25  including Waymo LiDAR designs, and one or more of these Waymo-owned trade secrets were

26  trade secrets at the time of the misappropriation.  Waymo has undertaken efforts that are

27  reasonable under the circumstances to maintain the secrecy of the trade secrets at issue.

28  Defendants knew or should have known under the circumstances that the information

1   misappropriated by Defendants were trade secrets.  Defendants misappropriated and threaten to

2   further misappropriate trade secrets at least by acquiring trade secrets with knowledge of or

3   reason to know that the trade secrets were acquired by improper means, and Defendants are using

4   and threatening to use the trade secrets acquired by improper means without Waymo's knowledge

5   or consent.  The aforementioned acts of Defendants were willful, malicious and fraudulent.[1]  As

6   detailed in Waymo's recent Offer of Proof (Dkt 2466-3), Defendants have systemically attempted

7   and continue to attempt to conceal their misappropriation of Waymo's trade secrets.

8          Pursuant to this Court's Order (Dkt. 563), on August 1, Waymo elected nine trade secrets

9   it would present at trial.  They are described in Waymo's trade secret list, provided before

10  discovery began in this matter (Dkt. 25-7), including:



11     **a.    Waymo's Trade Secret No. 2** is

15     **b.    Waymo's Trade Secret No. 7** is

19                                        [2]".

20     **c.    Waymo's Trade Secret No. 9** is

---

24

25     [1]   No other Waymo claims currently remain for trial.  Waymo's patent infringement claims (FAC 3, 4, 5, 6) were dismissed by stipulation.  (Dkt. 449, 1550.)  Waymo's unfair competition claim (FAC 7) was dismissed by order of the Court.  (Dkt. 576.)  Otto Trucking was dismissed as a defendant in this case.  (Dkt. 2151.)

27     [2]   As described with more particularity in Dkt. 335-4.

28

1

2

3

4   **d.**   **Waymo's Trade Secret No. 13** is

5

6

7

8   **e.**   **Waymo's Trade Secret No. 14** is

9

10

11

12

13   **f.**   **Waymo's Trade Secret No. 25** is

14

15

16

17

18   **g.**   **Waymo's Trade Secret No. 90** is

19

20   **h.**   **Waymo's Trade Secret No. 111** is

21

22        Waymo reserves the right to pursue additional trade secrets, including based upon

23   information discovered as a result of Defendants' late disclosure of the Stroz due diligence report

24   and associated documents.  (Dkt. 2129 (holding in abeyance Waymo's motion for leave to add

25   trade secret claims).)[3]

26   _____

27        [3] This Court granted Defendants' motion for summary judgment with respect to Trade
     Secret No. 96.  (Dkt. 2151.)

28

**B.     Uber's Submission**

Uber Technologies, Inc., and Ottomotto LLC (together, "Uber") deny Waymo's claims. Uber independently developed all of the technology and know-how it uses, and thus has a complete defense to Waymo's claims.  In addition, the alleged trade secrets are not protectable trade secrets under either the DTSA or CUTSA.  Waymo has not taken reasonable measures to protect the alleged trade secrets, and they do not derive independent economic value from not being generally known or readily ascertainable.  Uber has not misappropriated any of the alleged trade secrets.  Uber did not acquire the alleged trade secrets by improper means.

Significantly, Waymo did not plead a claim based on "disclosure" of the alleged trade secrets and should not be permitted to advance such a claim at trial.  Waymo likewise never pleaded theories of liability based on ratification or agency, or any theory of vicarious liability. For example, Waymo never pled that MoFo or Stroz "used" or "disclosed" the alleged trade secrets, or that Uber improperly "disclosed" trade secrets to vendors.  Even now, Waymo has never disclosed a theory of damages stemming from the alleged disclosures by Uber to its vendors or from any alleged use or disclosure by MoFo or Stroz.  Waymo should not be permitted to argue such unpled theories at trial.  Moreover, even if such claims had been pled, Uber denies that it is vicariously liable for any misappropriation by any other person or entity, or liable under principles of agency or ratification under trade secret law.

Even if Uber is found to have misappropriated Waymo trade secrets (which it has not), Waymo has not suffered any damages as a result of Uber's conduct.  Neither Uber nor Waymo has commercialized their autonomous vehicle technologies.  For that reason, Waymo admits that it has not lost any profits.  For the same reason, Uber has not gained any profits, and thus cannot have been unjustly enriched.  Indeed, the Uber technologies that Waymo claims constitute trade secret misappropriation have never even been commercially deployed on a vehicle.  There is zero revenue associated with any of that technology.  Moreover, Waymo's alleged damages are speculative and based on unreliable expert testimony and thus not recoverable.  In addition, even if Waymo were able to show that any trade secrets had been misappropriated, it would be fully protected by the injunction it seeks, and a damage award would be nothing more than a windfall.

1   Waymo is not entitled to present any reasonable royalty evidence to the jury because a reasonable

2   royalty, if any, should be determined by the Court.  Waymo's decision not to include its damages

3   theories—much less the required computation of damages—in its initial disclosures also

4   precludes it from offering any evidence of damages.

5          Alternatively, if the Court permits Waymo to pursue damages, then Waymo should not be

6   entitled to injunctive relief.  Any injury to Waymo is not immediate or irreparable, Waymo has an

7   adequate remedy at law, and both the balance of hardships and the public interest favor no

8   injunction.  Moreover, the monetary relief Waymo seeks, if granted, would preclude the grant of

9   any injunction (and likewise, as explained above, the injunctive relief Waymo seeks, if granted,

10  would preclude any damages).  In no circumstances should Waymo be permitted to seek a

11  windfall award of (supposed future) damages while also enjoining the conduct alleged to cause

12  those future damages.

13         Uber also notes that Waymo may not bring any claim under DTSA for acts of

14  misappropriation that occurred before DTSA's enactment on May 11, 2016.  As a result,

15  Waymo's theories of liability based on acquisition—all of which relate to events before

16  May 2016—cannot proceed under DTSA.

17         Uber makes the following statement about each alleged trade secret ("ATS"):

18         Uber denies that it misappropriated ATS 2, and specifically denies that it has unlawfully

19  acquired or used ATS 2.[4]  Uber independently developed the designs that Waymo accuses of

20  using ATS 2.  ATS 2 is not a trade secret, including because Waymo has not taken reasonable

21  measures to keep ATS 2 secret and because ATS 2 does not derive independent economic value

22  from not being generally known or ascertainable by the public or others who could make

23  economic use of it.  To the contrary, ATS 2 is readily ascertainable through proper means.  No

24         [4] Uber disagrees that Waymo is entitled to trial of its claims to the extent they are
    predicated on disclosure of the alleged trade secrets or to trial of its theories of liability to the
25  extent they are predicated on ratification or agency, because Waymo did not plead those issues in
    its Amended Complaint.  *See generally* Dkt. 23.  Out an abundance of caution, however, Uber
26  also denies that it unlawfully disclosed ATS 2, or any other alleged trade secret, and denies that it
    unlawfully acquired, used or disclosed ATS 2, or any other alleged trade secret, by ratification or
27  through its agents.

28

1   remedy is proper, because (i) Uber did not misappropriate ATS 2; (ii) Uber has implemented a

2   design-around that even more clearly avoids use of ATS 2; (iii) Uber has not been unjustly

3   enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites

4   for injunctive relief.

5          Uber denies that it misappropriated ATS 7, and specifically denies that it has unlawfully

6   acquired or used ATS 7.[5]  Uber independently developed the designs that Waymo accuses of

7   using ATS 7.  ATS 7 is not a trade secret, including because Waymo has not taken reasonable

8   measures to keep ATS 7 secret and because ATS 7 does not derive independent economic value

9   from not being generally known or ascertainable by the public or others who could make

10  economic use of it.  To the contrary, ATS 7 is generally known or readily ascertainable through

11  proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 7; (ii) Uber has

12  implemented a design-around that avoids use of ATS 7; (iii) Uber has not been unjustly enriched;

13  (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for

14  injunctive relief.

15         Uber denies that it misappropriated ATS 9, and specifically denies that it has unlawfully

16  acquired or used ATS 9.[6]  Uber independently developed the designs that Waymo accuses of

17  using ATS 9.  ATS 9 is not a trade secret, including because Waymo has not taken reasonable

18  measures to keep ATS 9 secret and because ATS 9 does not derive independent economic value

19  from not being generally known or ascertainable by the public or others who could make

20  economic use of it.  To the contrary, ATS 9 is generally known or readily ascertainable through

21  proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 9; (ii) Uber has

22  contracted a third-party firm to independently develop a substitute for the component alleged to

23  use ATS 9; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate;

24  and (v) Waymo cannot meet the prerequisites for injunctive relief.

25

26         [5] *See* note 4 *supra.*

27         [6] *See* note 4 *supra.*

28

Uber denies that it misappropriated ATS 13, and specifically denies that it has unlawfully acquired or used ATS 13.[7]  Uber independently developed the designs that Waymo accuses of using ATS 13.  ATS 13 is not a trade secret, including because Waymo has not taken reasonable measures to keep ATS 13 secret and because ATS 13 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it.  To the contrary, ATS 13 is generally known or readily ascertainable through proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 13; (ii) Uber is implementing a design-around that avoids use of ATS 13; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated ATS 14, and specifically denies that it has unlawfully acquired or used ATS 14.[8]  Uber independently developed the designs that Waymo accuses of using ATS 14.  Moreover, ATS 14 is not a trade secret, including because Waymo has not taken reasonable measures to keep ATS 14 secret and because ATS 14 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it.  To the contrary, ATS 14 is generally known or readily ascertainable through proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 14; (ii) Uber is implementing a design-around that even more clearly avoids use of ATS 14; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated ATS 25, and specifically denies that it has unlawfully acquired or used ATS 25.[9]  Uber independently developed its own test scenarios and LiDAR requirements.  Moreover, ATS 25 is not identified with adequate specificity to qualify as a trade secret.  No remedy is proper, because (i) Uber did not misappropriate ATS 25; (ii) Uber has never

[7] *See* note 4 *supra*.

[8] *See* note 4 *supra*.

[9] *See* note 4 *supra*.

1    acquired or used ATS 25; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is

2    appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

3          Uber denies that it misappropriated ATS 90, and specifically denies that it has unlawfully

4    acquired or used ATS 90.[10]  Uber independently developed the designs that Waymo accuses of

5    using ATS 90.  Moreover, ATS 90 is not a trade secret, including because Waymo has not taken

6    reasonable measures to keep ATS 90 secret and because ATS 90 does not derive independent

7    economic value from not being generally known or ascertainable by the public or others who

8    could make economic use of it.  To the contrary, ATS 90 is generally known or readily

9    ascertainable through proper means.  Uber also argues that ATS 90 is not identified with adequate

10   specificity to qualify as a trade secret.  No remedy is proper, because (i) Uber did not

11   misappropriate ATS 90; (ii) Uber has not been unjustly enriched; (iii) no reasonable royalty is

12   appropriate; and (iv) Waymo cannot meet the prerequisites for injunctive relief.

13         Uber denies that it misappropriated ATS 111, and specifically denies that it has

14   unlawfully acquired or used ATS 111.[11]  Uber independently decided not to develop a system of

15   the sort referenced in ATS 111.  Moreover, ATS 111 is not a trade secret, including because

16   Waymo has not taken reasonable measures to keep ATS 111 secret and because ATS 111 does

17   not derive independent economic value from not being generally known or ascertainable by the

18   public or others who could make economic use of it.  No remedy is proper, because (i) Uber did

19   not misappropriate ATS 111; (ii) Uber has never acquired or used ATS 111; (iii) Uber has not

20   been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the

21   prerequisites for injunctive relief.

22   **II.    RELIEF SOUGHT**

23         **A.    Waymo's Submission**

24         Waymo seeks the following relief:

25   _____

26         [10] *See* note 4 *supra*.

27         [11] *See* note 4 *supra*.

28

1.    That the Court award judgment in Waymo's favor and against Defendants on all causes of action.

2.    That the Court award Waymo damages in an amount to be further proven at trial.

3.    That the Court permanently enjoin Uber, Ottomotto LLC, and/or Otto Trucking LLC, its agents, servants, employees, attorneys, and all others in active concert or participation with the Defendants, from misappropriating Waymo's trade secrets.

4.    That the Court award Waymo exemplary damages.

5.    That the Court award Waymo attorneys' fees and costs.

6.    That the Court award Waymo such other and further relief as this Court may deem to be just and proper.

**B.    Uber's Submission**

1.    Judgment in favor of Uber and Ottomotto and against Waymo on all claims.

2.    Judgment that Waymo shall recover nothing from Uber or Ottomotto;

3.    Judgment that no injunction shall run against Uber or Ottomotto;

4.    Judgment dismissing Waymo's claims against Uber and Ottomotto with prejudice;

5.    An award of attorneys' fees under Cal. Civ. Code § 3426.4 or 18 U.S.C. § 1836(b)(3)(D);

6.    An award of costs under Cal. Civ. Code § 3426.4 and 18 U.S.C. § 1920;

7.    An award of damages for wrongful enjoinment, and execution of Waymo's preliminary injunction bond; and

8.    Such other and further relief to Uber and Ottomotto as the Court may deem just and proper.

**III.    STIPULATED FACTS**

The parties jointly stipulate as follows:

1.    Plaintiff Waymo LLC is a subsidiary of Alphabet Inc. with its principal place of business located in Mountain View, California 94043.

2.    Defendant Uber Technologies, Inc. is a Delaware company with its principal place of business at 1455 Market Street, San Francisco, California.

3.  Defendant Ottomotto LLC (f/k/a 280 Systems Inc.) is a Delaware limited liability company with its principal place of business located at 737 Harrison Street, San Francisco, California.

4.  Anthony Levandowski is a former employee of Google who worked on its self-driving car program.

5.  Anthony Levandowski was Uber's Vice President of Engineering for approximately nine months and was in charge of Uber's self-driving vehicle program during that time.

6.  Anthony Levandowski was CEO and a founder of Ottomotto LLC.

7.  Levandowski left Waymo on January 27, 2016.

8.  As of August 2016, Uber had not deployed a LiDAR that was designed in-house.

9.  Uber fired Anthony Levandowski on May 26, 2017.

## IV.   FACTUAL ISSUES THAT REMAIN TO BE TRIED

The parties continue to dispute the following issues. Where fewer than all parties agree that a factual issues remains to be tried, the propounding party is indicated in brackets.

***Waymo's Reasonable Measures to Keep Its Alleged Trade Secrets Secret:***

1.  Whether Waymo takes reasonable measures to protect its trade secrets.

***Waymo's Alleged Trade Secrets Are Not Generally Known or Readily Ascertainable:***

2.  Whether any of Waymo's asserted trade secrets are generally known in the relevant field, or are readily ascertainable.

3.  Whether any of Waymo's asserted trade secrets derive independent economic value from their secrecy.

***Misappropriation of Waymo's Alleged Trade Secrets:***

4.  Whether Uber or Ottomotto misappropriated any of the alleged trade secrets by improperly acquiring, then[12] disclosing[13] or using any of the alleged trade secrets in violation of the DTSA or CUTSA.

---

[12] [Waymo] Waymo disagrees that it must show both improper acquisition and either disclosure or use in order to prove its claim for trade secret misappropriation.  Although the

(Footnote continues on next page.)

      **a.**     [Uber] Whether Uber intended to secure dominion over any of the alleged trade secrets, as opposed to passively or inadvertently coming into possession of any alleged trade secret.

5.      Whether Uber or Ottomotto acquired any of the alleged trade secrets while knowing or having reason to know that Uber or Ottomotto, or the person from whom Uber or Ottomotto acquired the alleged trade secret, used improper means to acquire it.

6.      Whether any of the attendant circumstances required for misappropriation by use existed, including, at the time of any use:

      **a.**     Whether Uber or Ottomotto acquired knowledge of an alleged trade secret by improper means;

      **b.**     Whether Uber or Ottomotto knew or had reason to know that its knowledge of an alleged trade secret came from or through a person who had acquired the alleged trade secret through improper means; or

      **c.**     Whether Uber or Ottomotto knew or had reason to know that its knowledge of an alleged trade secret came from or through a person who had a duty to keep secret the alleged trade secret.

7.      Whether Uber or Ottomotto used any of the alleged trade secrets under circumstances that constitute misappropriation by use.

8.      Whether Uber or Ottomotto independently developed any of the designs or know-how accused of using the alleged trade secrets.

9.      Whether any misappropriation of the alleged trade secrets is ongoing.

---

(Footnote continued from previous page.)

Court's penultimate tentative jury instructions include an instruction requiring such a showing to support Waymo's recovery of unjust enrichment damages (Waymo will object to that instruction in its January 29, 2018 jury instruction submission), Waymo can prove its claim for trade secret misappropriation by showing that Defendants improperly acquired one or more Waymo trade secrets, irrespective of any use or disclosure. A jury finding of misappropriation based solely on Defendants' improper acquisition is sufficient for the Court to enter permanent injunctive relief.

[13] [Uber] Uber and Ottomotto disagree that Waymo is entitled to trial on a disclosure theory. *See* note 4 *supra*.

1    *Joint and Several/Vicarious Liability*

2        10.     [Waymo] Whether Uber and/or Ottomotto are liable for trade secret

3 misappropriation based on the actions of Anthony Levandowski, Stroz Friedberg, and/or

4 Morrison & Foerster.

5    *Willful and Malicious Trade Secret Misappropriation*

6        11.     Whether any misappropriation of Waymo's trade secrets by Uber or Ottomotto

7            was willful and malicious.

8    *Damages*

9        12.     Whether Uber or Ottomotto was unjustly enriched by any misappropriation of the

10 alleged trade secrets by Uber or Ottomotto, and if so, the amount of that unjust

11 enrichment.

12        13.     [Waymo] What amount of damages for a reasonable royalty Waymo is entitled to

13 as a result of any misappropriation of Waymo's trade secrets by Uber or Ottomotto.

14        14.     [Waymo] To the extent any misappropriation of Waymo's trade secrets by Uber or

15 Ottomotto was willful and malicious, the amount of exemplary damages that should be

16 awarded.

17    *Affirmative Defenses*

18        15.     [Uber] Whether Waymo made any claim of misappropriation of any of its

19 121 alleged trade secrets in bad faith.

20    *Issues to be Tried to the Court*

21        16.     [Uber] Should the jury find misappropriation and that it was willful and malicious,

22 the Court will decide whether to award exemplary damages and, if so, what amount.

23        17.     [Uber] Because Waymo has not timely or properly disclosed percipient witnesses

24 to testify regarding its damages, and because this Court has stricken Waymo's damages

25 expert, there is no basis for a jury to award damages in this case.  Further, Waymo has

26 failed to proffer sufficient evidence upon which objective, non-speculative, and properly-

27 apportioned damages could be awarded.  *See, e.g., Oracle Corp. v. SAP AG*, 765 F.3d

28 1081, 1089, 1093 (9th Cir. 2014).

1    18.    [Waymo] Waymo disagrees with Uber's position.  In its order excluding Michael

2    Wagner, the Court expressly said that Waymo would be allowed to present damages

3    evidence to the jury and argue its damages case in closing.  (Dkt. 2166.)  And when Uber

4    raised this issue at the November 14, 2017 hearing, the Court again confirmed that

5    Waymo will be allowed to introduce damages evidence.  (11/14/17 Hr'g Tr. at 85-89.)

6    Waymo has good cause to add a limited number of witnesses to its witness list in light of

7    the Court's exclusion of Waymo's damages expert, Michael Wagner.  Waymo submitted a

8    précis on this subject on November 26, 2017 (Dkt. 2270), which the Court granted on

9    November 27.  (Dkt. 2274.)  Waymo subsequently submitted its motion to supplement its

10   trial witness list on November 29 and is currently awaiting the Court's ruling.  Waymo is

11   also meeting and conferring with Uber regarding the authenticity and admissibility of

12   certain exhibits it plans to admit through an Uber Custodian of Records.

13   19.    [Uber] Whether Waymo is entitled to a reasonable royalty for any

14   misappropriation of the alleged trade secrets, and if so, the amount of that royalty.

15   20.    [Uber] The amount of any of reasonable attorney's fees awarded to any party.

16   21.    Whether Waymo would be irreparably harmed absent an injunction.

17   22.    Whether Waymo has an adequate remedy at law.

18   23.    Whether the balance of hardships favors granting or denying an injunction.

19   24.    Whether the public interest favors granting or denying an injunction.

20   **V.    EXHIBIT AND WITNESS LISTS**

21   The parties attach their Second Amended Joint Exhibit List as Appendix A.  Waymo's

22   Fourth Amended Witness List for its case-in-chief witnesses is attached as Appendix B.

23   Defendants' Objections to Waymo's Fourth Amended Witness List is attached as Appendix C.

24   Uber and Ottomotto's Second Amended Witness List for its case-in-chief witnesses is attached as

25   Appendix D.  Waymo's Objections to Uber and Ottomotto's Second Amended Witness List is

26   attached as Appendix E.

27   Waymo reserves the right to amend or supplement the Joint Proposed Pretrial Order and

28   Joint Exhibit List and its Witness List based upon newly produced evidence.

1    Uber and Ottomotto also reserve the right to amend or supplement the Joint Proposed

2    Pretrial Order and Joint Exhibit List and its Witness List based upon newly produced evidence.

3    **VI.    MISCELLANEOUS**

4    1.    The parties agree that witnesses may be given a binder or binders containing

5    copies of the exhibits to be used during their examinations, rather than the original exhibits in the

6    courtroom.  The examining party shall give the opposing side the opportunity to inspect the

7    exhibit binder before it is handed to the witness to ensure that both sides agree that the binders

8    contain correct copies of the original exhibits.  The parties respectfully request the Court's

9    approval to do so.

10

11   Dated:  January 23, 2018              QUINN EMANUEL URQUHART & SULLIVAN,
                                          LLP
12
                                          By  */s/ Charles K. Verhoeven*
13                                              Charles K. Verhoeven
                                                Attorneys for WAYMO LLC
14

15
     Dated:  January 23, 2018              MORRISON & FOERSTER LLP
16

17                                         By:  */s/ Arturo J. González*
                                                ARTURO J. GONZÁLEZ
18
                                                Attorneys for Defendants
19                                              UBER TECHNOLOGIES, INC.
                                                and OTTOMOTTO LLC
20

21              **ATTESTATION OF E-FILED SIGNATURE**

22   I, Charles K. Verhoeven, am the ECF User whose ID and password are being used to file

23   this Second Amended Joint Pretrial Order.  In compliance with General Order 45, X.B., I hereby

24   attest that Arturo J. González concurred in this filing.

25   Dated:  January 23, 2018              */s/ Charles K. Verhoeven*
                                           Charles K. Verhoeven
26

27

28

SECOND AMENDED JOINT PROPOSED PRETRIAL ORDER
CASE NO. 3:17-CV-00939-WHA                                            -14-