1

2              UNITED STATES DISTRICT COURT

3            NORTHERN DISTRICT OF CALIFORNIA

4              SAN FRANCISCO DIVISION

5   WAYMO LLC,
              Plaintiff,                    CASE NO. 3:17-cv-00939
6
          vs.                               **SECOND AMENDED JOINT PROPOSED
7   UBER TECHNOLOGIES, INC.;                PRETRIAL ORDER**
    OTTOMOTTO LLC; OTTO TRUCKING
8   LLC,                                    **FILED UNDER SEAL PURSUANT TO
              Defendants.                   PROTECTIVE ORDER**

9                                           Trial Date:  February 5, 2018

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# **TABLE OF CONTENTS**

**Page**

I.     CLAIMS AND DEFENSES THAT REMAIN TO BE DECIDED ...................................1

     A.     Waymo's Submission .................................................................................................1

     B.     Uber's Submission ....................................................................................................4

II.    RELIEF SOUGHT ...................................................................................................................8

     A.     Waymo's Submission .................................................................................................8

     B.     Uber's Submission ....................................................................................................9

III.   STIPULATED FACTS .............................................................................................................9

IV.   FACTUAL ISSUES THAT REMAIN TO BE TRIED .........................................................10

V.    EXHIBIT AND WITNESS LISTS .......................................................................................13

VI.   MISCELLANEOUS ...............................................................................................................14

1

**SECOND AMENDED JOINT PROPOSED PRETRIAL ORDER**

2         Pursuant to the Court's Guidelines for Trial and Final Pretrial Conference in Civil Jury

3    Cases, the parties submit the following Second Amended Joint Proposed Pretrial Order.

4    **I.     CLAIMS AND DEFENSES THAT REMAIN TO BE DECIDED**

5         **A.     Waymo's Submission**

6         Two of Waymo's claims for relief remain to be decided.  First, Waymo asserts a violation

7    of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).  (FAC Claim 1.)  Waymo claims that

8    Uber and Ottomotto improperly acquired, used, or disclosed Waymo-owned information relating

9    to its self driving car technology, including custom LIDAR systems that are used to enable the

10   operation of fully self-driving vehicles.  This information comprises one or more of the identified

11   Waymo-owned trade secrets, including Waymo LiDAR designs, and one or more of these

12   Waymo-owned trade secrets are related to a product or service used in, or intended for use in,

13   interstate or foreign commerce.  Waymo has taken reasonable measures to keep such information

14   secret and confidential.  Waymo has at all times maintained stringent security measures to

15   preserve the secrecy of its trade secrets, and Waymo's trade secret information derives

16   independent economic value from not being generally known to, and not being readily

17   ascertainable through proper means by, another person who could obtain economic value from

18   the disclosure or use of the information.  Defendants' misappropriation of Waymo's trade secret

19   information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

20        Second, Waymo asserts a claim of violation of California Uniform Trade Secret Act, Cal.

21   Civ. Code § 3426 *et seq*.  (FAC Claim 2.)  Waymo claims that Uber and Ottomotto improperly

22   acquired, used, or disclosed Waymo-owned information relating to its self driving car technology,

23   including custom LIDAR systems that are used to enable the operation of fully self-driving

24   vehicles.  This information comprises one or more of the identified Waymo-owned trade secrets,

25   including Waymo LiDAR designs, and one or more of these Waymo-owned trade secrets were

26   trade secrets at the time of the misappropriation.  Waymo has undertaken efforts that are

27   reasonable under the circumstances to maintain the secrecy of the trade secrets at issue.

28   Defendants knew or should have known under the circumstances that the information

1   misappropriated by Defendants were trade secrets.  Defendants misappropriated and threaten to

2   further misappropriate trade secrets at least by acquiring trade secrets with knowledge of or

3   reason to know that the trade secrets were acquired by improper means, and Defendants are using

4   and threatening to use the trade secrets acquired by improper means without Waymo's knowledge

5   or consent.  The aforementioned acts of Defendants were willful, malicious and fraudulent.[1]  As

6   detailed in Waymo's recent Offer of Proof (Dkt 2466-3), Defendants have systemically attempted

7   and continue to attempt to conceal their misappropriation of Waymo's trade secrets.

8       Pursuant to this Court's Order (Dkt. 563), on August 1, Waymo elected nine trade secrets

9   it would present at trial.  They are described in Waymo's trade secret list, provided before

10   discovery began in this matter (Dkt. 25-7), including:



11     **a.**  **Waymo's Trade Secret No. 2** is

15     **b.**  **Waymo's Trade Secret No. 7** is

19       [2]".

20     **c.**  **Waymo's Trade Secret No. 9** is

---

[1]   No other Waymo claims currently remain for trial.  Waymo's patent infringement claims (FAC 3, 4, 5, 6) were dismissed by stipulation.  (Dkt. 449, 1550.)  Waymo's unfair competition claim (FAC 7) was dismissed by order of the Court.  (Dkt. 576.)  Otto Trucking was dismissed as a defendant in this case.  (Dkt. 2151.)

[2]   As described with more particularity in Dkt. 335-4.

d.   **Waymo's Trade Secret No. 13** is

e.   **Waymo's Trade Secret No. 14** is

f.   **Waymo's Trade Secret No. 25** is

g.   **Waymo's Trade Secret No. 90** is

h.   **Waymo's Trade Secret No. 111** is

Waymo reserves the right to pursue additional trade secrets, including based upon information discovered as a result of Defendants' late disclosure of the Stroz due diligence report and associated documents.  (Dkt. 2129 (holding in abeyance Waymo's motion for leave to add trade secret claims).)[3]

---

[3] This Court granted Defendants' motion for summary judgment with respect to Trade Secret No. 96.  (Dkt. 2151.)

### B. Uber's Submission

Uber Technologies, Inc., and Ottomotto LLC (together, "Uber") deny Waymo's claims. Uber independently developed all of the technology and know-how it uses, and thus has a complete defense to Waymo's claims. In addition, the alleged trade secrets are not protectable trade secrets under either the DTSA or CUTSA. Waymo has not taken reasonable measures to protect the alleged trade secrets, and they do not derive independent economic value from not being generally known or readily ascertainable. Uber has not misappropriated any of the alleged trade secrets. Uber did not acquire the alleged trade secrets by improper means.

Significantly, Waymo did not plead a claim based on "disclosure" of the alleged trade secrets and should not be permitted to advance such a claim at trial. Waymo likewise never pleaded theories of liability based on ratification or agency, or any theory of vicarious liability. For example, Waymo never pled that MoFo or Stroz "used" or "disclosed" the alleged trade secrets, or that Uber improperly "disclosed" trade secrets to vendors. Even now, Waymo has never disclosed a theory of damages stemming from the alleged disclosures by Uber to its vendors or from any alleged use or disclosure by MoFo or Stroz. Waymo should not be permitted to argue such unpled theories at trial. Moreover, even if such claims had been pled, Uber denies that it is vicariously liable for any misappropriation by any other person or entity, or liable under principles of agency or ratification under trade secret law.

Even if Uber is found to have misappropriated Waymo trade secrets (which it has not), Waymo has not suffered any damages as a result of Uber's conduct. Neither Uber nor Waymo has commercialized their autonomous vehicle technologies. For that reason, Waymo admits that it has not lost any profits. For the same reason, Uber has not gained any profits, and thus cannot have been unjustly enriched. Indeed, the Uber technologies that Waymo claims constitute trade secret misappropriation have never even been commercially deployed on a vehicle. There is zero revenue associated with any of that technology. Moreover, Waymo's alleged damages are speculative and based on unreliable expert testimony and thus not recoverable. In addition, even if Waymo were able to show that any trade secrets had been misappropriated, it would be fully protected by the injunction it seeks, and a damage award would be nothing more than a windfall.

1   Waymo is not entitled to present any reasonable royalty evidence to the jury because a reasonable

2   royalty, if any, should be determined by the Court.  Waymo's decision not to include its damages

3   theories—much less the required computation of damages—in its initial disclosures also

4   precludes it from offering any evidence of damages.

5          Alternatively, if the Court permits Waymo to pursue damages, then Waymo should not be

6   entitled to injunctive relief.  Any injury to Waymo is not immediate or irreparable, Waymo has an

7   adequate remedy at law, and both the balance of hardships and the public interest favor no

8   injunction.  Moreover, the monetary relief Waymo seeks, if granted, would preclude the grant of

9   any injunction (and likewise, as explained above, the injunctive relief Waymo seeks, if granted,

10  would preclude any damages).  In no circumstances should Waymo be permitted to seek a

11  windfall award of (supposed future) damages while also enjoining the conduct alleged to cause

12  those future damages.

13         Uber also notes that Waymo may not bring any claim under DTSA for acts of

14  misappropriation that occurred before DTSA's enactment on May 11, 2016.  As a result,

15  Waymo's theories of liability based on acquisition—all of which relate to events before

16  May 2016—cannot proceed under DTSA.

17         Uber makes the following statement about each alleged trade secret ("ATS"):

18         Uber denies that it misappropriated ATS 2, and specifically denies that it has unlawfully

19  acquired or used ATS 2.[4]  Uber independently developed the designs that Waymo accuses of

20  using ATS 2.  ATS 2 is not a trade secret, including because Waymo has not taken reasonable

21  measures to keep ATS 2 secret and because ATS 2 does not derive independent economic value

22  from not being generally known or ascertainable by the public or others who could make

23  economic use of it.  To the contrary, ATS 2 is readily ascertainable through proper means.  No

---

24         [4] Uber disagrees that Waymo is entitled to trial of its claims to the extent they are
    predicated on disclosure of the alleged trade secrets or to trial of its theories of liability to the
25  extent they are predicated on ratification or agency, because Waymo did not plead those issues in
    its Amended Complaint.  *See generally* Dkt. 23.  Out an abundance of caution, however, Uber
26  also denies that it unlawfully disclosed ATS 2, or any other alleged trade secret, and denies that it
    unlawfully acquired, used or disclosed ATS 2, or any other alleged trade secret, by ratification or
27  through its agents.

28

1    remedy is proper, because (i) Uber did not misappropriate ATS 2; (ii) Uber has implemented a

2    design-around that even more clearly avoids use of ATS 2; (iii) Uber has not been unjustly

3    enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites

4    for injunctive relief.

5         Uber denies that it misappropriated ATS 7, and specifically denies that it has unlawfully

6    acquired or used ATS 7.[5]   Uber independently developed the designs that Waymo accuses of

7    using ATS 7.  ATS 7 is not a trade secret, including because Waymo has not taken reasonable

8    measures to keep ATS 7 secret and because ATS 7 does not derive independent economic value

9    from not being generally known or ascertainable by the public or others who could make

10   economic use of it.  To the contrary, ATS 7 is generally known or readily ascertainable through

11   proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 7; (ii) Uber has

12   implemented a design-around that avoids use of ATS 7; (iii) Uber has not been unjustly enriched;

13   (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for

14   injunctive relief.

15        Uber denies that it misappropriated ATS 9, and specifically denies that it has unlawfully

16   acquired or used ATS 9.[6]   Uber independently developed the designs that Waymo accuses of

17   using ATS 9.  ATS 9 is not a trade secret, including because Waymo has not taken reasonable

18   measures to keep ATS 9 secret and because ATS 9 does not derive independent economic value

19   from not being generally known or ascertainable by the public or others who could make

20   economic use of it.  To the contrary, ATS 9 is generally known or readily ascertainable through

21   proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 9; (ii) Uber has

22   contracted a third-party firm to independently develop a substitute for the component alleged to

23   use ATS 9; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate;

24   and (v) Waymo cannot meet the prerequisites for injunctive relief.

25

26   _____

           [5] *See* note 4 *supra.*

27         [6] *See* note 4 *supra.*

28

1    Uber denies that it misappropriated ATS 13, and specifically denies that it has unlawfully

2    acquired or used ATS 13.[7]  Uber independently developed the designs that Waymo accuses of

3    using ATS 13.  ATS 13 is not a trade secret, including because Waymo has not taken reasonable

4    measures to keep ATS 13 secret and because ATS 13 does not derive independent economic

5    value from not being generally known or ascertainable by the public or others who could make

6    economic use of it.  To the contrary, ATS 13 is generally known or readily ascertainable through

7    proper means.  No remedy is proper, because (i) Uber did not misappropriate ATS 13; (ii) Uber is

8    implementing a design-around that avoids use of ATS 13; (iii) Uber has not been unjustly

9    enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites

10   for injunctive relief.

11    Uber denies that it misappropriated ATS 14, and specifically denies that it has unlawfully

12   acquired or used ATS 14.[8] Uber independently developed the designs that Waymo accuses of

13   using ATS 14.  Moreover, ATS 14 is not a trade secret, including because Waymo has not taken

14   reasonable measures to keep ATS 14 secret and because ATS 14 does not derive independent

15   economic value from not being generally known or ascertainable by the public or others who

16   could make economic use of it.  To the contrary, ATS 14 is generally known or readily

17   ascertainable through proper means.  No remedy is proper, because (i) Uber did not

18   misappropriate ATS 14; (ii) Uber is implementing a design-around that even more clearly avoids

19   use of ATS 14; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is

20   appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

21    Uber denies that it misappropriated ATS 25, and specifically denies that it has unlawfully

22   acquired or used ATS 25.[9]  Uber independently developed its own test scenarios and LiDAR

23   requirements.  Moreover, ATS 25 is not identified with adequate specificity to qualify as a trade

24   secret.  No remedy is proper, because (i) Uber did not misappropriate ATS 25; (ii) Uber has never

25        [7] *See* note 4 *supra*.

26        [8] *See* note 4 *supra*.

27        [9] *See* note 4 *supra*.

28

1  acquired or used ATS 25; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is

2  appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

3       Uber denies that it misappropriated ATS 90, and specifically denies that it has unlawfully

4  acquired or used ATS 90.[10]  Uber independently developed the designs that Waymo accuses of

5  using ATS 90.  Moreover, ATS 90 is not a trade secret, including because Waymo has not taken

6  reasonable measures to keep ATS 90 secret and because ATS 90 does not derive independent

7  economic value from not being generally known or ascertainable by the public or others who

8  could make economic use of it.  To the contrary, ATS 90 is generally known or readily

9  ascertainable through proper means.  Uber also argues that ATS 90 is not identified with adequate

10  specificity to qualify as a trade secret.  No remedy is proper, because (i) Uber did not

11  misappropriate ATS 90; (ii) Uber has not been unjustly enriched; (iii) no reasonable royalty is

12  appropriate; and (iv) Waymo cannot meet the prerequisites for injunctive relief.

13       Uber denies that it misappropriated ATS 111, and specifically denies that it has

14  unlawfully acquired or used ATS 111.[11]  Uber independently decided not to develop a system of

15  the sort referenced in ATS 111.  Moreover, ATS 111 is not a trade secret, including because

16  Waymo has not taken reasonable measures to keep ATS 111 secret and because ATS 111 does

17  not derive independent economic value from not being generally known or ascertainable by the

18  public or others who could make economic use of it.  No remedy is proper, because (i) Uber did

19  not misappropriate ATS 111; (ii) Uber has never acquired or used ATS 111; (iii) Uber has not

20  been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the

21  prerequisites for injunctive relief.

22  **II.    RELIEF SOUGHT**

23      **A.    Waymo's Submission**

24       Waymo seeks the following relief:

26  [10] *See* note 4 *supra.*

27  [11] *See* note 4 *supra.*

1.      That the Court award judgment in Waymo's favor and against Defendants on all causes of action.

2.      That the Court award Waymo damages in an amount to be further proven at trial.

3.      That the Court permanently enjoin Uber, Ottomotto LLC, and/or Otto Trucking LLC, its agents, servants, employees, attorneys, and all others in active concert or participation with the Defendants, from misappropriating Waymo's trade secrets.

4.      That the Court award Waymo exemplary damages.

5.      That the Court award Waymo attorneys' fees and costs.

6.      That the Court award Waymo such other and further relief as this Court may deem to be just and proper.

**B.      Uber's Submission**

1.      Judgment in favor of Uber and Ottomotto and against Waymo on all claims.

2.      Judgment that Waymo shall recover nothing from Uber or Ottomotto;

3.      Judgment that no injunction shall run against Uber or Ottomotto;

4.      Judgment dismissing Waymo's claims against Uber and Ottomotto with prejudice;

5.      An award of attorneys' fees under Cal. Civ. Code § 3426.4 or 18 U.S.C. § 1836(b)(3)(D);

6.      An award of costs under Cal. Civ. Code § 3426.4 and 18 U.S.C. § 1920;

7.      An award of damages for wrongful enjoinment, and execution of Waymo's preliminary injunction bond; and

8.      Such other and further relief to Uber and Ottomotto as the Court may deem just and proper.

**III.      STIPULATED FACTS**

The parties jointly stipulate as follows:

1.      Plaintiff Waymo LLC is a subsidiary of Alphabet Inc. with its principal place of business located in Mountain View, California 94043.

2.      Defendant Uber Technologies, Inc. is a Delaware company with its principal place of business at 1455 Market Street, San Francisco, California.

1      3.      Defendant Ottomotto LLC (f/k/a 280 Systems Inc.) is a Delaware limited liability

2 company with its principal place of business located at 737 Harrison Street, San Francisco,

3 California.

4      4.      Anthony Levandowski is a former employee of Google who worked on its self-

5 driving car program.

6      5.      Anthony Levandowski was Uber's Vice President of Engineering for

7 approximately nine months and was in charge of Uber's self-driving vehicle program during that

8 time.

9      6.      Anthony Levandowski was CEO and a founder of Ottomotto LLC.

10      7.      Levandowski left Waymo on January 27, 2016.

11      8.      As of August 2016, Uber had not deployed a LiDAR that was designed in-house.

12      9.      Uber fired Anthony Levandowski on May 26, 2017.

## IV.  FACTUAL ISSUES THAT REMAIN TO BE TRIED

The parties continue to dispute the following issues. Where fewer than all parties agree that a factual issues remains to be tried, the propounding party is indicated in brackets.

***Waymo's Reasonable Measures to Keep Its Alleged Trade Secrets Secret:***

1.      Whether Waymo takes reasonable measures to protect its trade secrets.

***Waymo's Alleged Trade Secrets Are Not Generally Known or Readily Ascertainable:***

2.      Whether any of Waymo's asserted trade secrets are generally known in the relevant field, or are readily ascertainable.

3.      Whether any of Waymo's asserted trade secrets derive independent economic value from their secrecy.

***Misappropriation of Waymo's Alleged Trade Secrets:***

4.      Whether Uber or Ottomotto misappropriated any of the alleged trade secrets by improperly acquiring, then[12] disclosing[13] or using any of the alleged trade secrets in violation of the DTSA or CUTSA.

---

[12] [Waymo] Waymo disagrees that it must show both improper acquisition and either disclosure or use in order to prove its claim for trade secret misappropriation. Although the

(Footnote continues on next page.)

**a.**   [Uber] Whether Uber intended to secure dominion over any of the alleged trade secrets, as opposed to passively or inadvertently coming into possession of any alleged trade secret.

5.   Whether Uber or Ottomotto acquired any of the alleged trade secrets while knowing or having reason to know that Uber or Ottomotto, or the person from whom Uber or Ottomotto acquired the alleged trade secret, used improper means to acquire it.

6.   Whether any of the attendant circumstances required for misappropriation by use existed, including, at the time of any use:

**a.**   Whether Uber or Ottomotto acquired knowledge of an alleged trade secret by improper means;

**b.**   Whether Uber or Ottomotto knew or had reason to know that its knowledge of an alleged trade secret came from or through a person who had acquired the alleged trade secret through improper means; or

**c.**   Whether Uber or Ottomotto knew or had reason to know that its knowledge of an alleged trade secret came from or through a person who had a duty to keep secret the alleged trade secret.

7.   Whether Uber or Ottomotto used any of the alleged trade secrets under circumstances that constitute misappropriation by use.

8.   Whether Uber or Ottomotto independently developed any of the designs or know-how accused of using the alleged trade secrets.

9.   Whether any misappropriation of the alleged trade secrets is ongoing.

---

(Footnote continued from previous page.)

Court's penultimate tentative jury instructions include an instruction requiring such a showing to support Waymo's recovery of unjust enrichment damages (Waymo will object to that instruction in its January 29, 2018 jury instruction submission), Waymo can prove its claim for trade secret misappropriation by showing that Defendants improperly acquired one or more Waymo trade secrets, irrespective of any use or disclosure.  A jury finding of misappropriation based solely on Defendants' improper acquisition is sufficient for the Court to enter permanent injunctive relief.

[13] [Uber] Uber and Ottomotto disagree that Waymo is entitled to trial on a disclosure theory. *See* note 4 *supra*.

***Joint and Several/Vicarious Liability***

10.     [Waymo] Whether Uber and/or Ottomotto are liable for trade secret misappropriation based on the actions of Anthony Levandowski, Stroz Friedberg, and/or Morrison & Foerster.

***Willful and Malicious Trade Secret Misappropriation***

11.     Whether any misappropriation of Waymo's trade secrets by Uber or Ottomotto was willful and malicious.

***Damages***

12.     Whether Uber or Ottomotto was unjustly enriched by any misappropriation of the alleged trade secrets by Uber or Ottomotto, and if so, the amount of that unjust enrichment.

13.     [Waymo] What amount of damages for a reasonable royalty Waymo is entitled to as a result of any misappropriation of Waymo's trade secrets by Uber or Ottomotto.

14.     [Waymo] To the extent any misappropriation of Waymo's trade secrets by Uber or Ottomotto was willful and malicious, the amount of exemplary damages that should be awarded.

***Affirmative Defenses***

15.     [Uber] Whether Waymo made any claim of misappropriation of any of its 121 alleged trade secrets in bad faith.

***Issues to be Tried to the Court***

16.     [Uber] Should the jury find misappropriation and that it was willful and malicious, the Court will decide whether to award exemplary damages and, if so, what amount.

17.     [Uber] Because Waymo has not timely or properly disclosed percipient witnesses to testify regarding its damages, and because this Court has stricken Waymo's damages expert, there is no basis for a jury to award damages in this case.  Further, Waymo has failed to proffer sufficient evidence upon which objective, non-speculative, and properly-apportioned damages could be awarded.  *See, e.g.*, *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1089, 1093 (9th Cir. 2014).

1    18.    [Waymo] Waymo disagrees with Uber's position.  In its order excluding Michael

2    Wagner, the Court expressly said that Waymo would be allowed to present damages

3    evidence to the jury and argue its damages case in closing.  (Dkt. 2166.)  And when Uber

4    raised this issue at the November 14, 2017 hearing, the Court again confirmed that

5    Waymo will be allowed to introduce damages evidence.  (11/14/17 Hr'g Tr. at 85-89.)

6    Waymo has good cause to add a limited number of witnesses to its witness list in light of

7    the Court's exclusion of Waymo's damages expert, Michael Wagner.  Waymo submitted a

8    précis on this subject on November 26, 2017 (Dkt. 2270), which the Court granted on

9    November 27.  (Dkt. 2274.)  Waymo subsequently submitted its motion to supplement its

10   trial witness list on November 29 and is currently awaiting the Court's ruling.  Waymo is

11   also meeting and conferring with Uber regarding the authenticity and admissibility of

12   certain exhibits it plans to admit through an Uber Custodian of Records.

13   19.    [Uber] Whether Waymo is entitled to a reasonable royalty for any

14   misappropriation of the alleged trade secrets, and if so, the amount of that royalty.

15   20.    [Uber] The amount of any of reasonable attorney's fees awarded to any party.

16   21.    Whether Waymo would be irreparably harmed absent an injunction.

17   22.    Whether Waymo has an adequate remedy at law.

18   23.    Whether the balance of hardships favors granting or denying an injunction.

19   24.    Whether the public interest favors granting or denying an injunction.

20   **V.    EXHIBIT AND WITNESS LISTS**

21   The parties attach their Second Amended Joint Exhibit List as Appendix A.  Waymo's

22   Fourth Amended Witness List for its case-in-chief witnesses is attached as Appendix B.

23   Defendants' Objections to Waymo's Fourth Amended Witness List is attached as Appendix C.

24   Uber and Ottomotto's Second Amended Witness List for its case-in-chief witnesses is attached as

25   Appendix D.  Waymo's Objections to Uber and Ottomotto's Second Amended Witness List is

26   attached as Appendix E.

27   Waymo reserves the right to amend or supplement the Joint Proposed Pretrial Order and

28   Joint Exhibit List and its Witness List based upon newly produced evidence.

1   Uber and Ottomotto also reserve the right to amend or supplement the Joint Proposed

2   Pretrial Order and Joint Exhibit List and its Witness List based upon newly produced evidence.

3   **VI.     MISCELLANEOUS**

4       1.     The parties agree that witnesses may be given a binder or binders containing

5   copies of the exhibits to be used during their examinations, rather than the original exhibits in the

6   courtroom.  The examining party shall give the opposing side the opportunity to inspect the

7   exhibit binder before it is handed to the witness to ensure that both sides agree that the binders

8   contain correct copies of the original exhibits.  The parties respectfully request the Court's

9   approval to do so.

10

11  Dated:  January 23, 2018              QUINN EMANUEL URQUHART & SULLIVAN,
                                         LLP

12                                       By  */s/ Charles K. Verhoeven*

13                                           Charles K. Verhoeven
                                             Attorneys for WAYMO LLC

14

15  Dated:   January 23, 2018             MORRISON & FOERSTER LLP

16

17                                       By:  */s/ Arturo J. González*
                                             ARTURO J. GONZÁLEZ

18                                           Attorneys for Defendants
                                             UBER TECHNOLOGIES, INC.

19                                           and OTTOMOTTO LLC

20

21            **ATTESTATION OF E-FILED SIGNATURE**

22       I, Charles K. Verhoeven, am the ECF User whose ID and password are being used to file

23  this Second Amended Joint Pretrial Order.  In compliance with General Order 45, X.B., I hereby

24  attest that Arturo J. González concurred in this filing.

25  Dated:  January 23, 2018                 */s/ Charles K. Verhoeven*
                                             Charles K. Verhoeven

26

27

28

# Appendix A

# APPENDIX B

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (Bar No. 170151)
2    charlesverhoeven@quinnemanuel.com
     David A. Perlson (Bar No. 209502)
3    davidperlson@quinnemanuel.com
     Melissa Baily (Bar No. 237649)
4    melissabaily@quinnemanuel.com
     John Neukom (Bar No. 275887)
5    johnneukom@quinnemanuel.com
     Jordan Jaffe (Bar No. 254886)
6    jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for WAYMO LLC

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13  WAYMO LLC,                          CASE NO. 3:17-cv-00939

14            Plaintiff,                **PLAINTIFF WAYMO LLC'S FOURTH
                                        AMENDED RULE 26(a)(3) WITNESS
15       vs.                            LIST**

16  UBER TECHNOLOGIES, INC.;
    OTTOMOTTO LLC; OTTO TRUCKING
17  LLC,

18            Defendants.

19

20

21

22

23

24

25

26

27

28

Plaintiff Waymo LLC ("Waymo") hereby provides its fourth amended witness list pursuant to Fed. R. Civ. P., 26(a)(3) and paragraphs 1 and 2(a) of the Guidelines for Trial and Final Pre-Trial Conference in Civil Jury Cases Before the Honorable William Alsup.

Waymo identifies the name and, if not previously provided, the address, telephone number, and anticipated testimony of each witness it may present at trial other than solely for impeachment — separately identifying those the party expects to present and those it may call if the need arises. Waymo further reserves the right to call any witness on any of Defendants' witness lists, further including any of the witnesses identified by Defendants or Waymo on any subjects identified by either Defendants or Waymo.[1]

## I.   WITNESSES WAYMO WILL PRESENT AT TRIAL

| Name | Contact Information | Substance of Testimony |
|---|---|---|
| Prabir Adarkar | May be reached through counsel for Uber | Mr. Adarkar may be asked to provide non-cumulative testimony regarding Uber's financial forecasts for autonomous vehicles, and Uber's competitive relationship with Waymo, including its willingness to cut prices to compete with Waymo. |
| Shawn Bananzadeh | May be reached through counsel for Waymo | Mr. Bananzadeh will provide non-cumulative testimony regarding costs of development of, and management of Waymo's self-driving cars and autonomous vehicle technology.  Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. |
| John Bares | May be reached through counsel for Uber | Mr. Bares will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; acquisition of Otto; and Mr. |

---

[1]   Waymo's list includes witnesses who may be offered in rebuttal.

| | | |
|---|---|---|
| | | Levandowski's employment milestones. |
| Gary Brown | May be reached through counsel for Waymo | Mr. Brown will provide non-cumulative testimony concerning Google/Waymo's forensic investigation into misappropriation of trade secrets, particularly analysis of log data and hardware; Google/Waymo's reasonable efforts to maintain the secrecy of its electronic systems, digital document storage repositories, and computer networks, including but not limited to the SVN server.  Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. |
| Scott Boehmke | May be reached through counsel for Uber | Mr. Boehmke will provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development. |
| Dan Chu | May be reached through counsel for Waymo | Mr. Chu will provide non-cumulative testimony regarding matters that concern Waymo, including investment in, development of, and management of Waymo's self-driving cars and autonomous vehicle technology; the current and future nature of the relevant markets and competition in the relevant markets, and other issues related to irreparable harm and damages suffered by Waymo, Waymo's short-term and long-term business plans, Waymo's early rider program in Phoenix, Waymo's launch of its TaaS service, and Waymo's understanding of the TaaS market (including competition in that market and Waymo's competitive advantages).  Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. |
| Andy Crain | May be reached through counsel for Waymo | Mr. Crain will provide expert testimony pertaining to forensic analysis of the devices the Diligenced Employees provided to Stroz Friedberg, including flaws in the Stroz due diligence process; devices not provided to Stroz; device connections and activity on Levandowski's MacBook computer; and |

| | | |
|---|---|---|
| | | browser history and download history on Levandowski's MacBook computer. |
| Dmitri Dolgov | May be reached through counsel for Waymo | Dr. Dolgov will provide non-cumulative testimony regarding the development of Waymo's self-driving car technology, including its LIDAR designs and associated self-driving vehicle software development; the development of certain of Waymo's trade secrets, Waymo's engineering practices, and the Chauffeur Bonus Plan. Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. |
| Pierre-Yves Droz | May be reached through counsel for Waymo | Mr. Droz will provide non-cumulative testimony regarding the development of Waymo's self-driving car technology, including its LIDAR designs and the development of Waymo's trade secrets, time to develop Waymo's LIDAR designs and trade secrets, engineering practices of Waymo and the LIDAR team regarding the confidentiality of its designs and measures to keep them secret, the contents of Waymo's SVN server, and communications with Anthony Levandowski regarding Uber and formation of Otto.  Waymo further identifies the subjects of Mr. Droz's prior declarations submitted in this matter, Dkt. 25-31, 453-3 as subject he may testify about as well as the Rule 30(b)(6) topics for which he was designated as Waymo's corporate witness. |
| Eric Friedberg | May be reached through counsel for Stroz Friedberg: <br><br> Melanie Blunschi <br><br> Latham & Watkins <br><br> 505 Montgomery Street, Suite 2000 <br><br> San Francisco, CA 94111-6538 | Mr. Friedberg will be asked to provide non-cumulative testimony regarding the Stroz due diligence analysis, investigation, and report, and the Uber-Otto acquisition; Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure. |

-3-

| | | |
|---|---|---|
| | Direct Dial: +1.415.395.8129<br><br>Email:<br>melanie.blunschi@lw.com | |
| John Gardner | May be reached through counsel:<br><br>Merri Baldin<br><br>Rogers Joseph O'Donnell<br><br>311 California Street, 10th fl \| San Francisco, CA 94104 415.956.2828 main \| mbaldwin@rjo.com | Mr. Gardner will be asked to provide non-cumulative testimony regarding Ottomotto and Otto Trucking; the Uber-Otto acquisition; Mr. Levandowski's businesses; the Stroz due diligence analysis, investigation, and report; the misappropriation of Waymo trade secrets; destruction of relevant evidence; and Tyto LiDAR. |
| William Grossman | May be reached through counsel for Waymo | Mr. Grossman will provide non-cumulative testimony regarding Waymo's accidental receipt of an email containing an Otto LiDAR PCB. |
| Dan Gruver | May be reached through counsel for Uber | Mr. Gruver will be asked to provide non-cumulative testimony regarding Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; and the development of Waymo's self-driving car technology, including its LIDAR designs. |
| Mary Fulginiti | May be reached through counsel for Stroz Friedberg | Ms. Fulginiti will be asked to provide non-cumulative testimony regarding the Stroz due diligence analysis, investigation, and report. |
| Bill Gurley | May be reached through counsel:<br><br>Martin Flumenbaum<br><br>1285 Avenue of the Americas<br><br>New York, NY 10019<br><br>(212) 373-3191<br><br>mflumenbaum@paulweiss.com | Mr. Gurley will be asked to provide non-cumulative testimony regarding Uber's acquisition of Otto; board meetings, discussions, and knowledge concerning the Otto acquisition including Mr. Kalanick and others' representations; facts surrounding Mr. Kalanick and board discussions concerning his termination; negotiations with Mr. Kalanick concerning the Otto acquisition and his resignation; Stroz due diligence report; and representations made by Mr. Kalanick regarding the Stroz report and Otto acquisition; and Benchmark's claim that Mr. Kalanick committed fraud and breached his fiduciary duty with respect |

-4-

| | | |
|---|---|---|
| | | to the Otto acquisition. |
| James Haslim | May be reached through counsel for Uber | Mr. Haslim will be asked to provide non-cumulative testimony regarding Defendants misappropriation of Waymo's trade secrets (including but not limited to through Tyto LIDAR), including their acquisition, use and disclosure, and the lack of independent development. |
| Mat Henley | May be contacted through counsel:<br><br>Jennifer LaGrange<br>Matthew Umhofer<br>Spertus, Landes & Umhofer, LLP<br>1990 South Bundy Drive<br>Suite 705<br>Los Angeles, CA 90025<br>310.826.4700<br>jennifer@spertuslaw.com<br>matthew@spertuslaw.com | Mr. Henley will be asked to provide non-cumulative testimony regarding the allegations made by Richard Jacobs, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery; Uber's investigation into the Jacobs allegations and settlement with Jacobs; and Uber's competitive intelligence efforts and practices |
| Lambertus Hesselink | May be reached through counsel for Waymo | Professor Hesselink will provide expert testimony pertaining to optics as it relates to a LiDAR system for a self-driving vehicle; general optics and LiDAR principles, background state of the art; explain Waymo's disclosed trade secrets relating to LiDAR optical systems and components and is expected to provide opinions regarding the level of skill and effort required to derive such trade secrets based on the available evidence in this case. Retained Prof. Hesselink is expected to also opine that Waymo's LiDAR systems embody certain of Waymo's disclosed trade secrets.<br><br>Prof. Hesselink is expected to further offer opinions that (i) Waymo undertook reasonable efforts to maintain certain disclosed trade secrets in relative secrecy; (ii) such trade secrets are not generally known by individuals within the relevant filed and/or are not readily ascertainable; and (iii) such trade secrets derive independent economic value by virtue of their not being generally known in the relevant field. Additionally, Prof. Hesselink is expected to opine regarding Defendants' misappropriation of certain of Waymo's disclosed trade secrets based on (i) contemporaneous technical |

| | | |
|---|---|---|
| | | evidence reflecting Defendants' acquisition, use, and/or disclosure of Waymo's disclosed trade secret concepts; (ii) the similarity of Defendants' technology to Waymo's disclosed trade secrets and/or Waymo's implementation of such trade secrets in Waymo's commercial products; and/or (iii) the lack of evidence supporting Defendants' independent development of their own technology. |
| Jeff Holden | May be reached through counsel for Uber | Mr. Holden will be asked to provide non-cumulative testimony regarding the state of Uber's autonomous vehicle program before the Otto acquisition; negotiations with Mr. Levandowski regarding the acquisition; Mr. Levandowski's consulting work; facts surrounding Mr. Levandowski's continued employment with Uber and termination; and Defendants' misappropriation of Waymo's trade secrets. |
| Richard Jacobs | May be contacted through counsel:<br><br>Martha Boersch<br>Boersch Shapiro LLP<br>1611 Telegraph Avenue, Suite 806<br>Oakland, California 94612-2147<br>(415) 500-6640<br>mboersch@boerschshapiro.com | Mr. Jacobs will be asked to provide non-cumulative testimony regarding the allegations he made and Uber's reactions thereto, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices; Jacobs' settlement with Uber, and consulting services provided to Uber. |
| Michael Janosko | May be reached through counsel for Waymo | Mr. Janosko will provide non-cumulative testimony regarding reasonable measures to protect security at Google and Waymo, including Google's enterprise infrastructure. |
| Travis Kalanick | May be reached through counsel:<br><br>Melinda Haag<br><br>Orrick<br><br>405 Howard Street<br>San Francisco, CA 94105-2669<br><br>+1 415 773 5495 | Mr. Kalanick will be asked to provide non-cumulative testimony regarding Uber's driverless car program; Uber's solicitation of Google and Waymo employees; discussions with, knowledge about, Levandowksi, discussions with the Board and Benchmark partners concerning the Otto acquisition, Mr. Levandowski, and the relationship between the facts surrounding this case and his termination; negotiations with Mr. Levandowski regarding the founding of Ottomotto and Otto Trucking, and Otto |

-6-

| | | |
|---|---|---|
| | **mhaag@orrick.com** | acquisition; the Uber-Otto acquisition; solicitation of Google/Waymo employees; the Stroz due diligence analysis, investigation, and report; Uber's knowledge of stolen documents, understanding, and activity related to misappropriation of Google/Waymo trade secret and proprietary information; Levandowski's employment and continued employment at Uber; destruction of relevant evidence; and allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with Jacobs. |
| Anthony Levandowski | May be reached through counsel:<br><br>Miles Erlich<br><br>Ramsey & Ehrlich LLP<br><br>803 Hearst Avenue<br><br>Berkeley, CA 94710<br>Tel:  (510) 548-3600<br>miles@ramsey-ehrlich.com | Mr. Levandowski will be asked to provide non-cumulative testimony regarding the development of Waymo's self-driving car technology, including its LIDAR designs and the development of Waymo's trade secrets, engineering practices of Waymo and the LIDAR team regarding the confidentiality of its designs and measures to keep them secret, his performance at Waymo, the contents of Waymo's SVN server, and communications with Google employees regarding Uber and formation of Otto; Uber's driverless car program; Uber's solicitation of Google and Waymo employees; the relationship between the facts surrounding this case and his termination; negotiations regarding the founding of Ottomotto and Otto Trucking, and Otto acquisition; the Uber-Otto acquisition; the Stroz due diligence analysis, investigation, and report; Uber's knowledge of stolen documents, understanding, and activity related to misappropriation of Google/Waymo trade secret and proprietary information; Levandowski's employment and continued employment at Uber; and destruction of relevant evidence.  Waymo further identifies those subjects identified in Waymo's Statement Regarding Questions it Intends to Ask Anthony Levandowski at Trial.  Dkt. 835. |
| John Krafcik | May be reached through counsel for Waymo | Mr. Krafcik will provide non-cumulative testimony regarding Waymo's business; Anthony Levandowski, and his departure from Google; the relationship between Waymo and Google; and Waymo's development of its TaaS service, and |

| | | | |
|---|---|---|---|
| 1 | | | valuations of Chauffeur. |
| 2 | Melanie Maugeri | May be reached through counsel for Stroz Friedberg | Ms. Maugeri will be asked to provide non-cumulative testimony regarding the Stroz due diligence analysis, investigation, and report. |
| 3 | | | |
| 4 | | | |
| 5 | Brian McClendon | May be reached through counsel for Uber | Mr. McClendon will be asked to provide non-cumulative testimony regarding solicitation of and negotiations with Levandowski regarding founding Ottomotto and Otto Trucking; and the Uber-Otto acquisition, the development of Uber's self-driving technology, including before the Otto acquisition, Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development. |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | Angela Padilla | May be reached through counsel for Uber | Ms. Padilla will be asked to provide non-cumulative testimony regarding the Stroz due diligence analysis, investigation, and report; Levandowski's employment and continued employment at Uber; the relationship between the facts surrounding this case and his termination; and the Uber-Otto acquisition, Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; destruction of relevant evidence; and allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with Jacobs. |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | Gaetan Pennecot | May be reached through counsel for Uber | Mr. Pennecot will be asked to provide non-cumulative testimony regarding Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs. |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | Cameron Poetzcher | May be reached through counsel for Uber | Mr. Poetzcher will be asked to provide non-cumulative testimony regarding Uber's negotiations with Mr. Levandowski regarding the formation of Ottomotto/Otto Trucking; and the acquisition; solicitation of Google/Waymo employees; destruction of relevant evidence; and the Stroz due diligence analysis, investigation, and |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

| | | |
|---|---|---|
| 1 | | report. |
| 2<br>3<br>4<br>5<br>6<br>7<br>8<br>9 | Nina Qi | May be reached through counsel for Uber | Ms. Qi will be asked to provide non-cumulative testimony regarding Uber's decision to acquire Ottomotto (and to enter into an option to acquire Otto Trucking); contacts between Uber and Mr. Levandowski regarding the formation of Ottomotto / Otto Trucking, Uber's acquisition of those entities, and the benefits that Uber would obtain via those acquisitions; Uber's solicitation of Google/Waymo employees; Uber's internal views on those subjects, destruction of relevant evidence; and the Stroz due diligence analysis, investigation, and report. |
| 10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18 | Lior Ron | May be reached through counsel:<br><br>Taylor & Patchen, LLP<br>One Ferry Building, Suite 355<br>San Francisco, CA  94111<br>T:  (415) 788-8200 | Mr. Ron will be asked to provide non-cumulative testimony regarding the misappropriation of Waymo trade secrets; founding of Ottomotto and Otto Trucking; the Uber-Otto acquisition; the Stroz due diligence analysis, investigation, and report; and the business and product development of Ottomotto and Otto Trucking, destruction of relevant evidence; Uber ATG's use of ephemeral communications and non-attributable devices and its relationship with Uber's Threat Operations division; and allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with Jacobs. .. |
| 19<br>20<br>21<br>22<br>23<br>24<br>25 | Joe Spiegler | May be contacted through counsel:<br><br>Dave Resnicoff<br>Erin Gasparka<br>Riley Safer Holmes & Cancila LLP<br>70 W. Madison Street<br>Suite 2900<br>Chicago, Illinois 60602<br>(312) 471-8700<br>dresnicoff@rshc-law.com<br>egasparka@rshc-law.com | Mr. Spiegler will be asked to provide non-cumulative testimony regarding the Richard Jacobs letter and resignation email and allegations therein, investigation into Jacobs' allegations, and settlement with Jacobs; and Uber management's lack of deference to the legal department or legal advice. |
| 26<br>27<br>28 | Justin Suhr | May be reached through counsel for Uber | Mr. Suhr will be asked to provide non-cumulative testimony regarding the Stroz due diligence analysis, investigation, and report; and allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with |

| | | | |
|---|---|---|---|
| | | | Jacobs . |
| | Eric Tate | May be reached through counsel for MoFo | Mr. Tate will be asked to provide non-cumulative testimony regarding the Uber-Otto acquisition; the Stroz due diligence analysis, investigation, and report;destruction of relevant evidence; Uber's counsel's awareness of the Jacobs resignation email and letter and allegations therein; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. . |
| | Jim Timmins | May be reached through counsel for Waymo | Mr. Timmins will provide expert testimony regarding customary practices with respect to M&A transactions (including regarding indemnification) and the consideration paid by Uber to acquire Ottomotto (including relative to other acquisitions). |
| | Salle Yoo | May be reached through counsel for Uber | Ms.Yoo will be asked to provide non-cumulative testimony regarding the Uber-Otto acquisition; the Stroz due diligence analysis investigation, and report; continued employment and termination of Anthony Levandowski; and Defendants misappropriation of Waymo's trade secrets; destruction of relevant evidence; the Richard Jacobs letter and resignation email and allegations therein, investigation into Jacobs' allegations, and settlement with Jacobs; and Uber management's lack of deference to the legal department or legal advice. |
| | Sasha Zbrozek | May be reached through counsel for Waymo | Mr. Zbrozek will provide non-cumulative testimony concerning Google/Waymo's forensic investigation, particularly the SVN server and related log data, including Mr. Levandowski's download of the 14,000 files from the SVN server; Google/Waymo's reasonable efforts to maintain the secrecy of its electronic systems, digital document storage repositories , and computer networks |

## II.    WITNESSES WAYMO MAY PRESENT AT TRIAL IF THE NEED ARISES

| Name | Contact Information | Substance of Testimony |
|------|---------------------|------------------------|
| Rey Allie | Unknown | Matters that concern the allegations made by Richard Jacobs, and Uber's reactions thereto, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices. |
| Chelsea Bailey | May be reached through counsel for Waymo | Ms. Bailey will provide non-cumulative testimony regarding the Chauffeur Bonus Plan; Mr. Levandowski's departure from Google, including Google's collection of Levandowski's laptops and delivery of those laptops to the Google forensics team; and Mr. Levandowski's performance as a Google/Waymo employee |
| Travis Bellanger | May be reached through counsel for Waymo | Mr. Bellanger will provide non-cumulative testimony concerning Google/Waymo's forensic investigation into the activities of Anthony Levandowski, including Google's collection of Levandowski's laptops and delivery of those laptops to the Google forensics team |
| Adam Bentley | May be reached through counsel for Uber | Mr. Bentley will be asked to provide non-cumulative testimony regarding the Uber-Otto acquisition; the Stroz due diligence analysis, investigation, and report; and destruction of relevant evidence. |
| Mattew Blattmachr | Bismuth Trust; May be reached through counsel: | Mr. Battmachr will be asked to provide non-cumulative testimony regarding the ownership of Levandowski's |

-11-

| | | |
|---|---|---|
| | Diane F. Vallentine<br><br>Jermain, Dunnagan & Owens, PC<br><br>3000 A Street, Suite 300<br><br>Anchorage, AK 99503 | companies |
| Don Burnette | May be reached through<br><br>counsel for Uber | Mr. Burnette will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs and planner software; due diligence by Stroz for Otto acquisition by Uber; and destruction of relevant evidence. |
| Neel Chatterjee | May be reached through counsel for Otto Trucking | Mr. Chatterjee will be asked to provide non-cumulative testimony regarding Goodwin Procter's possession of misappropriated materials; destruction of relevant evidence; chain of custody of Anthony Levandowski's personal laptops, and searches thereof. |
| Hanley Chew | May be reached through counsel for Stroz Friedberg | Mr. Chew will be asked to provide non-cumulative testimony regarding the Stroz due diligence analysis, investigation, and report. |
| Gerard Dwyer | May be reached through counsel for Waymo | Mr. Dwyer will provide non-cumulative testimony regarding inputs to Waymo's current P&L.  He may also provide testimony regarding Waymo's current business plan. |
| Paul French | May be reached through | Rebuttal of expert testimony of Kevin Faulkner, including |

-12-

| | | |
|---|---|---|
| | counsel for Waymo | opinions related to the various flaws and errors in Stroz's search for Waymo confidential information at Uber; rebuttal of expert testimony of Erik Laykin, including opinions related to the Waymo forensic investigation, Anthony Levandowski's download of the 14,000 files, Radu Raduta's download of confidential documents from Google Drive and Sameer Kshirsagar's download of confidential documents from Google Drive |
| Nick Gicinto | May be contacted through counsel:<br><br>Jennifer LaGrange<br>Matthew Umhofer<br>Spertus, Landes & Umhofer, LLP<br>1990 South Bundy Drive<br>Suite 705<br>Los Angeles, CA 90025<br>310.826.4700<br>jennifer@spertuslaw.com<br>matthew@spertuslaw.com | Mr. Gicinto will be asked to provide non-cumulative testimony regarding the allegations made by Richard Jacobs, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. |
| Arturo Gonzalez | MoFo; May be reached through counsel for Uber | Mr. Gonzalez will be asked to provide non-cumulative testimony regarding MoFo's possession of misappropriated materials; destruction of relevant evidence; and Defendants' knowledge of same; Uber's counsel's awareness of the Jacobs resignation email and letter and allegations therein; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. As Waymo previously advised Uber, Waymo does not intend to call Mr. González as a witness unless Defendants open the door by claiming that they complied with their discovery obligations. |

| | | |
|---|---|---|
| Kristin Gunjonsson | May be reached through counsel for Waymo | Mr. Gudjonsson will provide non-cumulative testimony concerning Google/Waymo's forensic investigation into misappropriation of trade secrets, particularly analysis of hardware; Google/Waymo's reasonable efforts to maintain the secrecy of its electronic systems, digital document storage repositories, and computer networks, including but not limited to the SVN server |
| Bruce Hartley | May be reached through counsel for Waymo | Rebuttal of expert testimony of Erik Laykin, including opinions related to security measures taken by Google/Waymo to protect their confidential and proprietary information, including but not limited to materials stored in Waymo's SVN repository |
| Don Harrison | May be reached through counsel for Waymo | Mr. Harrison will provide non-cumulative testimony regarding Google's mergers and acquisitions, including the negotiation and drafting of Google's merger and acquisition agreements, the process of conducting valuations, and Waymo's valuations. |
| Jennifer Haroon | May be reached through counsel for Waymo | Ms. Haroon will provide non-cumulative testimony regarding details of Waymo's first P&L, the negotiation of the valuation used in connection with the Chauffeur Business Plan, the timing of payments made under the Chauffeur Business Plan, and the 409(a) valuation conducted when Waymo was spun off from Google.  Ms. Haroon may also provide testimony regarding the evolution of Waymo's business plan over time.  Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for |

-14-

| | | |
|---|---|---|
| | | which she was designated as Waymo's corporate witness. |
| Ben Ingram | May be reached through counsel for Waymo | Mr. Ingram will provide non-cumulative testimony regarding the development of Waymo's self-driving car technology, including its LIDAR designs and associated self-driving vehicle software development; the development of certain of Waymo's trade secrets. |
| Scott Johnston | May be reached through counsel for Waymo.<br><br>Quinn Emanuel Urquhart & Sullivan, LLP<br>50 California Street, 22nd Floor<br>San Francisco, California 94111<br>415-875-660 | Mr. Johnston will provide non-cumulative testimony regarding the use of Google Hangouts and related proprietary chat applications, including Google and Waymo's own use of and default settings for such applications. |
| Rudy Kim | MoFo<br><br>May be reached through counsel for Uber | Mr. Kim will be asked to provide non-cumulative testimony regarding the Uber-Otto acquisition; the Stroz due diligence analysis, investigation, and report; and destruction of relevant evidence. |
| Asheem Linaval | May be reached through counsel for Uber | Mr. Linaval will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs. |
| David Lawee | May be reached through counsel for Waymo | Mr. Lawee will provide non-cumulative testimony regarding Google's mergers and acquisitions, including the negotiation and drafting of Google's merger and acquisition agreements, the process of conducting |

-15-

| | | valuations, Waymo's valuations, and the Chauffeur Bonus Plan. Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. |
|---|---|---|
| Max Levandowski | May be reached through counsel for Uber | Mr. Levandowski will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs. |
| Rhian Morgan | May be reached through counsel for Uber | Ms. Morgan will be asked to provide non-cumulative testimony regarding the founding and business of Ottomotto and Otto Trucking; Uber's acquisition of Otto; and the Stroz due diligence analysis, investigation, report; Defendants misappropriation of Waymo's trade secrets, destruction of relevant evidence. |
| Jake Nocon | May be contacted through counsel:<br><br>Jennifer LaGrange<br>Matthew Umhofer<br>Spertus, Landes & Umhofer, LLP<br>1990 South Bundy Drive<br>Suite 705<br>Los Angeles, CA 90025<br>310.826.4700<br>jennifer@spertuslaw.com<br>matthew@spertuslaw.com | Mr. Nocon will be asked to provide non-cumulative testimony regarding the allegations made by Richard Jacobs, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. |
| Daniel Ratner | May be reached through counsel for Uber | Mr. Ratner will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, |

| | | |
|---|---|---|
| | | including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs. |
| Ed Russo | May be contacted through counsel:<br><br>Jennifer LaGrange<br>Matthew Umhofer<br>Spertus, Landes & Umhofer, LLP<br>1990 South Bundy Drive<br>Suite 705<br>Los Angeles, CA 90025<br>310.826.4700<br>jennifer@spertuslaw.com<br>matthew@spertuslaw.com | Mr. Russo will be asked to provide non-cumulative testimony concerning the allegations made by Richard Jacobs, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. |
| Bryan Salesky | May be contacted through counsel:<br><br>Stacy North<br><br>Pierce & Shearer LLP<br><br>snorth@pierceshearer.com<br><br>650-843-1900 | Mr. Salesky will provide non-cumulative testimony regarding the history of Google/Waymo's self-driving-car development efforts; Mr. Levandowski's performance as a Google/Waymo employee; certain of Mr. Levandowski's communications with Uber prior to his departure from Google/Waymo |
| Ognen Stojanovski | May be reached through counsel for Uber | Mr. Stojanovski will be asked to provide non-cumulative testimony regarding Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; regarding Tyto LiDAR and Otto's acquisition of Tyto; regarding communications with Mr. Levandowski regarding Tyto LIDAR and other businesses related to Mr. Levandowski. |
| Joe Sullivan | May be contacted through counsel: | Mr. Sullivan will be asked to provide non-cumulative testimony regarding the |

| | | |
|---|---|---|
| | Alan B. Exelrod<br>RUDY EXELROD ZIEFF &<br>LOWE LLP<br>351 California Street<br>Suite 700<br>San Francisco, CA 94104<br>415.434.9800<br>abe@rezlaw.com | allegations made by Richard<br>Jacobs, including the use of<br>ephemeral communications,<br>non-attributable devices, and<br>improper privilege<br>designations to avoid<br>discovery, and Uber's<br>competitive intelligence efforts<br>and practices; and Uber's<br>investigation into the Jacobs<br>allegations and settlement with<br>Jacobs. |
| Chris Urmson | May be reached through<br>counsel:<br><br>Benjamin L. Singer<br><br>601 Montgomery St.<br>Suite 1950<br>San Francisco, CA 94111<br><br>415-500-6080 | Mr. Urmson will provide non-<br>cumulative testimony<br>regarding the history and<br>development of Waymo's self-<br>driving car technology,<br>including its LIDAR designs;<br>Mr. Levandowski's<br>performance at Google and<br>circumstances surrounding his<br>termination from Google;<br>Chauffeur Bonus Plan; Waymo<br>valuation(s). |
| Tim Willis | May be reached through<br>counsel for Waymo | Mr. Willis will provide non-<br>cumulative testimony<br>regarding Waymo's supply<br>chain operation, including<br>reasonable steps taken to<br>protect confidential and<br>proprietary information shared<br>with suppliers. |

## III.  WITNESSES WHO MAY TESTIFY BY DEPOSITION

The following witnesses may testify by deposition:

Anthony Levandowski

Travis Kalanick

Nina Qi

Bill Gurley

Jeff Holden

John Bares

Gaetan Pennecot

1        Dan Gruver

2        James Haslim

3        Cameron Poetzcher

4        Scott Boehmke

5        Lior Ron

6        Adam Bentley

7        Rhian Morgan

8        Don Burnette

9        Ognen Stojanovski

10       Salle Yoo

11       Asheem Linaval

12       Angela Padilla

13       Justin Suhr

14       Eric Tate

15       Rudy Kim

16       John Gardner

17       Chris Urmson

18       Brian McClendon

19       Bryan Salesky

20       Eric Friedberg

21       Hanley Chew

22       Mary Fulginiti

23       Melanie Maugeri

24       Richard Jacobs

25       Joe Sullivan

26       Joe Spiegler

27       Mat Henley

28       Ed Russo

1       Craig Clark

2       Nick Gicinto

3       Jake Nocon

4   DATED:  January 19, 2018        QUINN EMANUEL URQUHART & SULLIVAN, LLP

5

6                     By _/s/ Charles K. Verhoeven_

                    Charles K. Verhoeven

7                       Attorneys for WAYMO LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-20-

# APPENDIX C

1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Telephone:     415.268.7000
5  Facsimile:     415.268.7522

6  KAREN L. DUNN (*Pro Hac Vice*)
   kdunn@bsfllp.com
7  MICHAEL BRILLE (*Pro Hac Vice*)
   mbrille@bsfllp.com
8  BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
9  Washington DC  20005
   Telephone:     202.237.2727
10 Facsimile:     202.237.6131

11 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
12 SHAWN RABIN (*Pro Hac Vice*)
   srabin@SusmanGodfrey.com
13 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
14 New York, NY  10019-6023
   Telephone:     212.336.8330
15 Facsimile:     212.336.8340

16 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
17 and OTTOMOTTO LLC

18              **UNITED STATES DISTRICT COURT**

19            **NORTHERN DISTRICT OF CALIFORNIA**

20                 **SAN FRANCISCO DIVISION**

21 WAYMO LLC,                          Case No. 3:17-cv-00939-WHA

22            Plaintiff,                **DEFENDANTS UBER
                                        TECHNOLOGIES, INC. AND
23       v.                            OTTOMOTTO LLC'S OBJECTIONS TO
                                        WAYMO'S FOURTH AMENDED
24 UBER TECHNOLOGIES, INC.,            WITNESS LIST**
   OTTOMOTTO LLC; OTTO TRUCKING
25 LLC,
                                        Trial Date: February 5, 2018
26            Defendants.

27

28

1    Waymo's witness list includes many witnesses not included on any of its timely

2    Rule 26(a)(1) disclosures.[1]  For most of the witnesses whom Waymo did disclose under Rule 26,

3    Waymo has drastically expanded the topics on which those witnesses are expected to testify

4    beyond that which was timely disclosed.  Defendants' specific objections are summarized below

5    and a chart is attached as Exhibit A to assist the Court.[2]

6                          **Witnesses Not Previously Disclosed**

7        *Prabir Adarkar*

8        Defendants object to the calling of Mr. Adarkar, an Uber employee who was never

9    previously disclosed in any of Waymo's timely Rule 26 disclosures. Mr. Adarkar was not timely

10   disclosed, in violation of FRCP 26(a)(1), and should be excluded pursuant to FRCP 37(c)(1).

11       *Shawn Bananzadeh*

12       Defendants object to the calling of Mr. Bananzadeh, a Waymo employee who was never

13   previously disclosed in any of Waymo's timely Rule 26 disclosures. Mr. Bananzadeh was not

14   timely disclosed, in violation of FRCP 26(a)(1), and should be excluded pursuant to FRCP

15   37(c)(1). Waymo improperly added him to its "will call" list even though this Court has made it

16   clear that if he is allowed to testify at all, if would only be in rebuttal: "If they use the 30(b)(6)

17   deposition in any way before the jury, through an expert or directly read in, then he gets to come

18   back and explain it in your rebuttal case, but not in your case-in-chief.  In other words, you can't

19   use him in your case-in-chief because he's a new witness." (Tr., 10/26/17, 12:1-7.)  Waymo's

20   motion to supplement its witness list with Mr. Adarkar and Mr. Bananzadeh, and Defendants'

21   opposition thereto, are pending before the Court.

22

23

24   _____

25       [1] Waymo served a new set of initial disclosures on January 19, 2018---the same day it
     served its Fourth Amended Witness list and two weeks before trial.  These disclosures are
26   untimely, as they come almost seven months after the Court's June 21, 2017 deadline for all
     initial disclosures, and should be stricken.  *See* Dkt. 625 at 71-72.

27       [2] These objections do not impact Defendants' ability to call any of the following witnesses
     that it has disclosed in its initial disclosures or learned about through Waymo's discovery on the
28   topics that Defendants have identified in their witness lists.

1

2

*Kristin Gudjonsson[3], Travis Bellanger, David Lawee, John Krafcik, Chelsea Bailey, Gerard Dwyer, Don Harrison, Jennifer Haroon, and Sasha Zbrozek*

3      Defendants object to the calling of these Waymo employees because they were not timely

4   disclosed, in violation of FRCP 26(a)(1), and should be excluded pursuant to FRCP 37(c)(1).

5   Waymo's failure to disclose them was not substantially justified.  Moreover, Waymo knew that

6   many of these employees were centrally involved in Mr. Levandowski's termination or the

7   ensuing investigation yet failed to timely disclose them.  In fact, the failure to disclose some

8   employees involved in the investigation, such as Sasha Zbrozek, is notable, considering the

9   evidence they possess undercutting Waymo's case.

10      *Bill Gurley*

11      If Mr. Gurley is permitted to testify, the Court has limited his testimony pursuant to

12   Docket No. 1885, as follows: "Bill Gurley may testify as to his own percipient knowledge

13   regarding his tenure as a member of Uber's board of directors (and possibly other facts) but may

14   not speculate about matters outside of his percipient knowledge. No evidence or argument about

15   Benchmark's lawsuit against Travis Kalanick will be permitted, except that defendants may use

16   that lawsuit for impeachment purposes."  Dkt. No. 1885 at 4.

17      *Arturo Gonzalez*

18      Defendants object to the calling of Mr. Gonzalez because he was not timely disclosed, in

19   violation of FRCP 26(a)(1), and should be excluded pursuant to FRCP 37(c)(1).

20      Defendants further object to the anticipated testimony of Mr. Gonzalez pursuant to FRE

21   403 because the prejudice his presence as a witness would cause Uber and Ottomotto

22   substantially outweighs any probative value of his testimony.  The Court has already suggested

23   that as trial counsel, Mr. Gonzalez should not be associated with the legal work done in

24   connection with the Uber-Otto transaction.  July 26, 2017 Hr'g. Tr. at 15-16.  Moreover,

25   Mr. Gonzalez should be excluded under FRE 602 because he was not involved in the underlying

26

27   _____

28      [3] See below regarding objections to Mr. Brown as an "expert."

1    events of the dispute and therefore any testimony he could offer would not be relevant under FRE

2    402.

3         *Neel Chatterjee*

4         Defendants object to the calling of Mr. Chatterjee because he was not timely disclosed, in

5    violation of FRCP 26(a)(1), and should be excluded pursuant to FRCP 37(c)(1).

6         Defendants further object to the anticipated testimony of Mr. Chatterjee, because the

7    prejudice his presence as a witness would cause Uber and Ottomotto substantially outweighs any

8    probative value of his testimony.  Otto Trucking is no longer a defendant in this case, and

9    Goodwin Procter has never been *Uber*'s or *Ottomotto*'s counsel.  Moreover, Waymo seeks to call

10   Mr. Chatterjee on litigation-related topics such as the "chain of custody of Anthony

11   Levandowski's personal laptops," which is unrelated to the underlying events of the dispute and

12   would pose a danger of confusing the issues before the jury.

13        *Matthew Blattmachr*

14        Defendants object to the calling of Mr. Blattmachr because he was not timely disclosed, in

15   violation of FRCP 26(a)(1).  The proposed subject of his testimony is Mr. Levandowski's

16   ownership of other companies, including presumably including any links to Tyto LiDAR.  But

17   Waymo has been pursuing Mr. Levandowski's links to Tyto LiDAR since close to the inception

18   of this case (if not prior to it) and its failure to disclose Mr. Blattmachr is not substantially

19   justified.

20        **Witnesses For Whom Waymo Seeks to Introduce New Topics**

21        *John Bares*

22        Defendants object to the calling of Mr. Bares on the subject of "the acquisition of Otto;

23   and Mr. Levandowski's employment milestones" because these subjects were not identified by

24   Waymo in its timely initial disclosures.  The omission is not substantially justified.  In fact,

25   Waymo took Mr. Bares's deposition prior to the deadline for initial disclosures and questioned

26   him on the very topics it now seeks to include in his trial testimony.

27

28

1          *Gary Brown.*[4]

2                  Defendants object to the questioning of Mr. Brown on the subject of "Google/Waymo's

3      reasonable efforts to maintain the secrecy of its electronic systems, digital document storage

4      repositories, and computer networks, including but not limited to the SVN server."  Brown is

5      Waymo's employee and it chose to only disclose him on the topic of Waymo's forensic

6      investigation into Mr. Levandowsi, Mr. Kshirsagar, and Mr. Raduta, while choosing to disclose

7      another witness on the topic of its efforts to maintain secrecy, Mr. Janosko.  Waymo's failure to

8      disclose Mr. Brown on this topic is not substantially justified.  Moreover, Mr. Brown's deposition

9      testimony reflects that he lacks personal knowledge about many of these subjects.

10         *Dmitri Dolgov*

11                 Defendants object to the calling of Mr. Dolgov on the subject of "the Chauffeur Bonus

12     Plan."  Mr. Dolgov is Waymo's employee and it chose to only disclose him for other topics.

13     Waymo's failure to disclose this topic is not substantially justified.

14         *Pierre-Yves Droz*

15                 Defendants object to the calling of Mr. Droz regarding "the confidentiality of its designs

16     and measures to keep them secret, the contents of Waymo's SVN server, and communications

17     with Anthony Levandowski regarding Uber and formation of Otto."  Mr. Droz is a Waymo

18     employee and Waymo only disclosed Mr. Droz on the topics of Waymo's "development and

19     operation of Waymo's self-driving cars and autonomous vehicle technology, including LiDAR;

20     [and] the design and development of certain of Waymo's asserted trade secrets."  The newly

21     proposed topics were known as subjects of this litigation to Waymo at the time of the disclosures

22     and the failure to disclose them is not substantially justified.

23         *John Gardner*

24                 Defendants object to Waymo questioning Mr. Gardner about "Ottomotto and Otto

25     Trucking; the Uber-Otto acquisition; [and] Mr. Levandowski's businesses," or about "destruction

26     of relevant evidence."  Before the initial disclosures were due, Waymo knew that Mr. Gardner

27     _____

28         [4] See below regarding objections to Mr. Brown as an "expert."

1    served as counsel for Mr. Levandowski in connection with the Otto acquisition and related due

2    diligence and as a personal attorney for Mr. Levandowski.  Its failure to disclose these new topics

3    is not substantially justified.  Moreover, testimony about Mr. Levandowski's "businesses" should

4    be excluded to the extent it is irrelevant or unfairly prejudicial.  *See* FRE 402, 403.

5         Defendants also object to Waymo questioning Mr. Gardner about "Tyto LiDAR," a topic

6    disclosed for this witness for the first time on November 15, 2017.  Waymo has been pursuing the

7    issue of Mr. Levandowski's links to Tyto since at least April 2017—well before the initial

8    disclosures were due. Its failure to disclose Mr. Gardner on the topic is not substantially justified.

9         *Dan Gruver, Gaetan Pennecot, Asheem Linaval, and Don Burnette*

10        These witnesses are current Uber engineers who formerly worked at Waymo.  They were

11   initially disclosed as potential witnesses by Waymo only concerning "matters that concern

12   misappropriation of trade secrets."  Waymo now seeks to add for each of these witnesses

13   testimony about "the development of Waymo's self-driving car technology, including its

14   LIDAR."  Waymo should be precluded from eliciting testimony beyond the disclosed topic of the

15   specific trade secrets alleged to have been misappropriated.  Had Waymo wanted to question its

16   former employees about their work for Waymo, it timely could have and should have disclosed

17   that subject.  Waymo's failure to disclose these topics is not substantially justified.

18        Defendants further object to the inclusion of testimony about Waymo's "planner

19   software" with respect to Mr. Burnette.  Software is not at issue in this case; permitting testimony

20   on this topic would cause unfair prejudice and pose a danger of confusing the issues before the

21   jury.  *See* 10/26/2017 Hr'g Tr. at 40 (THE COURT: "When we get into code, it's going to be

22   harder and harder for the jury to put their arms around this case.").

23        *Jeff Holden*

24        Defendants object to Waymo's questioning of Mr. Holden regarding Uber's "autonomous

25   vehicle program before the Otto acquisition; negotiations with Mr. Levandowski regarding the

26   acquisition; Mr. Levandowski's consulting work; facts surrounding Mr. Levandowksi's continued

27   employment with Uber and termination" because these were not timely identified in Waymo's

28   initial disclosures.  Waymo only disclosed Mr. Holden on the topic of "matters that concern

1   misappropriation of trade secrets" but was aware of Mr. Holden's role as a business person

2   involved with the Otto acquisition well before the deadline for initial disclosures.  Waymo's

3   failure to disclose these topics is not substantially justified.

4       *Travis Kalanick*

5       Defendants object to Waymo questioning Mr. Klanick regarding the following topics:

6           Uber's solicitation of Google and Waymo employees; discussions
            with, knowledge about, Levandowksi, discussions with the Board
7           and Benchmark partners concerning the Otto acquisition,
            Mr. Levandowski, and the relationship between the facts
8           surrounding this case and his termination; negotiations with
            Mr. Levandowski regarding the founding of Ottomotto and Otto
9           Trucking, and Otto acquisition; the Uber-Otto acquisition;
            solicitation of Google/Waymo employees; . . .  Levandowski's
10          employment and continued employment at Uber; and destruction of
            relevant evidence.

11

12  Waymo only disclosed Mr. Kalanick as a potential source of testimony regarding the broad and

13  unhelpful topic of "matters that concern misappropriation of trade secrets."  Certainly, given his

14  role, Waymo knew or should have known Mr. Kalanick's involvement in the acquisition of Otto

15  and his negotiations with Mr. Levandowski.  Waymo's failure to disclose these topics is not

16  substantially justified.

17      Moreover, any testimony regarding solicitation of Google/Waymo employees should also

18  be excluded under Rules 402 and 403 because it is irrelevant, unfairly prejudicial, and will tend to

19  confuse the jury.

20      Moreover, any testimony about Benchmark should be excluded pursuant to FRE 403 for

21  the reasons stated in Defendants' motion *in limine* (No. 24).  Dkt. No. 1548.

22      *Anthony Levandowski*

23      In addition to Defendants' already-briefed objections to the calling of Mr. Levandowski as

24  unfairly prejudicial, Defendants object to Waymo questioning Mr. Levandowski on the following

25  topics for which he was not disclosed in Waymo's timely initial disclosures:

26          development of Waymo's self-driving car technology, including its
            LIDAR designs and the development of Waymo's trade secrets,
27          engineering practices of Waymo and the LIDAR team regarding the
            confidentiality of its designs and measures to keep them secret, his
28          performance at Waymo, the contents of Waymo's SVN server, and

communications with Google employees regarding Uber and formation of Otto; Uber's driverless car program; Uber's solicitation of Google and Waymo employees; the relationship between the facts surrounding this case and his termination; negotiations regarding the founding of Ottomotto and Otto Trucking, and Otto acquisition; the Uber-Otto acquisition; . . . Levandowski's employment and continued employment at Uber; and destruction of relevant evidence. Waymo further identifies those subjects identified in Waymo's Statement Regarding Questions it Intends to Ask Anthony Levandowski at Trial. Dkt. 835.

Waymo only identified Mr. Levandowski as a potential source of testimony regarding "matters that concern misappropriation of trade secrets."  Given its allegations against Mr. Levandowski in the Complaint and Motion for Preliminary Injunction, Dkts. 23 & 24, Waymo knew that Mr. Levandowski had potentially relevant information about these other topics.  Waymo's failure to disclose these topics is not substantially justified.

Moreover, any testimony regarding solicitation of Google/Waymo employees should also be excluded under Rules 402 and 403 because it is irrelevant, unfairly prejudicial, and will tend to confuse the jury.

*Brian McClendon, Cameron Poetszcher, and Nina Qi*

Defendants object to the questioning of these witnesses regarding any topics that do not directly concern "matters concerning the misappropriation of trade secrets," the only disclosed subject for these witnesses.  Although the new subjects for each witness identified by Waymo vary slightly, they have been all generally designated to testify about such topics as:

- "Negotiations with Levandowski regarding founding Ottomotto and Otto Trucking";
- "Contacts between Uber and Mr. Levandowski regarding the formation of Ottomotto/Otto Trucking";
- "Uber's solicitation of Google/Waymo employees";
- "The benefits Uber would obtain via those acquisitions";
- "the Uber-Otto acquisition";
- "Levandowski's employment and continued employment at Uber";
- "discussions with, knowledge about, Levandowksi";
- "discussions with the Board and Benchmark partners concerning the Otto acquisition, Mr. Levandowski"; and

- "the relationship between the facts surrounding this case and his termination." From well before the date initial disclosures were due, Waymo knew that each of these individuals was involved in a business role and the Otto acquisition. Its failure to timely identify these topics is not substantially justified.

Moreover, any testimony regarding solicitation of Google/Waymo employees should also be excluded under Rules 402 and 403 because it is irrelevant, unfairly prejudicial, and will tend to confuse the jury.

Moreover, any testimony about Benchmark should be excluded pursuant to FRE 403 for the reasons stated in Defendants' motion *in limine* (No. 24). Dkt. No. 1548.

### Rhian Morgan

Defendants object to Waymo's questioning Ms. Morgan regarding the "founding and business of Ottomotto and Otto Trucking [and] Uber's acquisition of Otto." Waymo only disclosed Ms. Morgan as a potential source of testimony regarding "matters that concern misappropriation of trade secrets." Waymo's failure to disclose these topics is not substantially justified.

### Lior Ron

Defendants object to Waymo questioning Mr. Ron about the "founding of Ottomotto and Otto Trucking; the Uber-Otto acquisition" and "the business and product development of Ottomotto and Otto trucking." Before the initial disclosures were due, Waymo knew Mr. Ron was a co-founder of Otto and Otto Trucking and should have disclosed these topics then. Waymo's failure to disclose these topics is not substantially justified.

### Ognen Stojanovski

Defendants object to Waymo's questioning Mr. Stojanovski about Tyto LiDAR, Otto's acquisition of Tyto, or communications with Mr. Levandowski about Tyto. Waymo did not disclose these topics in its timely initial disclosures. Waymo has been pursuing the issue of Mr. Levandowski's links to Tyto since at least April 2017. Waymo's failure to disclose these topics for Mr. Stojanovski is not substantially justified.

1    *Bryan Salesky*

2         Defendants object to the calling of Mr. Salesky regarding "Mr. Levandowski's

3    performance as a Google/Waymo employee" and "certain of Mr. Levandowski's communications

4    with Uber prior to his departure from Google/Waymo."  Mr. Salesky was only disclosed by

5    Waymo as a witness having information about "matters that concern the development and

6    operation of Waymo's self-driving cars and autonomous vehicle technology" and "matters that

7    concern misappropriation of trade secrets by Defendants."  Mr. Salesky was a senior Waymo

8    employee during the events in question and the newly proposed topics were known as subjects of

9    this litigation to Waymo at the time its initial disclosures were due.  Waymo's failure to disclose

10   these topics is not substantially justified.

11        *Chris Urmson*

12        Defendants object to the calling of Mr. Urmson regarding "Mr. Levandowski's

13   performance as a Google/Waymo employee and circumstances surrounding his termination from

14   Google; Chauffer Bonus Plan" and "Waymo valuation(s)."  Mr. Urmson was only disclosed by

15   Waymo as a witness having information about "matters that concern the development and

16   operation of Waymo's self-driving cars and autonomous vehicle technology."  Mr. Urmson was a

17   senior Waymo employee—for a period the most senior—during the events in question, and the

18   newly proposed topics were known as subjects of this litigation to Waymo at the time its initial

19   disclosures were due.  Waymo's failure to disclose these topics is not substantially justified.

20        *Salle Yoo*

21        Defendants object to Waymo's questioning Ms. Yoo about the "continued employment

22   and termination of Anthony Levandowski."  Waymo did not include this as a topic for Ms. Yoo in

23   its timely initial disclosures despite being aware as of May 30, 2017, that Ms. Yoo signed the

24   letter terminating Mr. Levandowski.[5]  Waymo's failure to disclose this topic is not substantially

25   justified.  Moreover, any proposed testimony on the topic of the Stroz Report would be

26   _____

27   [5] In addition to being produced in this case, the termination and letter were widely
     reported in news.  *See* https://www.washingtonpost.com/news/the-switch/wp/2017/05/30/uber-
     fires-star-engineer-anthony-levandowski-at-the-center-of-self-driving-car-
28   battle/?utm_term=.58c08e1e3232

1    unnecessarily cumulative under Rule 403.  Finally, Defendants object to the newly-disclosed

2    topic for Ms. Yoo of "Uber management's lack of deference to the legal department or legal

3    advice."  Not only was this topic not timely disclosed, but it would almost certainly seek to

4    invade and improperly draw objections regarding the attorney-client privilege and should

5    therefore be excluded under FRE 403.

6            *Rudy Kim and Eric Tate*

7            Defendants object to the calling of Mr. Kim and Mr. Tate because their testimony will be

8    cumulative and waste the jury's time.  *See* FRE 403.

9            *Adam Bentley*

10           Defendants object to Mr. Bentley's testimony as unduly cumulative and likely to waste

11   the jury's time.  *See* FRE 403.

12           *Max Levandowski and Daniel Ratner*

13           Defendants object to the calling of Mr. Levandowksi and Mr. Ratner for any subjects

14   beyond the scope permitted by the Court in its October 26, 2017 ruling on Waymo's Motion to

15   Amend.  *See* 10/26/2017 Hr'g at 13:9-14 ("You can add them to your list for trial, but it's limited

16   to testimony that came out of the Stroz report or something that was newly produced in that time

17   period after the Stroz report. And you cannot get off into other subjects in your case-in-chief.").

18           *Undisclosed Damages Testimony*

19           Waymo's November 12, 2017 Offer of Proof Regarding Reasonable Royalty Damages

20   suggests that ten witnesses who were either not disclosed or disclosed for other purposes by

21   Waymo will now become Waymo's damages witnesses.  These witnesses include John Krafcik,

22   Dmitry Dolgov, Jennifer Haroon, Dan Chu, Nina Qi, Prabir Adarkar, Pierre-Yves Droz,

23   Lambertus Hesselink, and Jeff Holden.  Defendants object to any such testimony that goes

24   beyond the witnesses and subjects timely disclosed pursuant to FRCP 26(a)(1).

25           *30(b)(6) Witnesses*

26           Defendants also object to any of Waymo's witnesses testifying about "the subjects of the

27   Rule 30(b)(6) topic(s) for which [they were] designated as Waymo's corporate witness" to the

28   extent those topics go beyond the subjects disclosed in Waymo's timely initial disclosures.  In

1    addition to being untimely, there is no guarantee that these witnesses even have personal

2    knowledge over those subjects.  *See Cooper v. United Air Lines, Inc.*, 82 F. Supp. 3d 1084, 1096

3    (N.D. Cal. 2015).  The witnesses for which these subjects were added are Gary Brown, Dan Chu,

4    Dmitri Dolgov, Pierre-Yves Droz, David Lawee, and Jennifer Harroon.

5              *Destruction of Relevant Evidence*

6              Waymo has added as a topic for numerous witnesses "the destruction of relevant

7    evidence."  Any suggestion that an Uber witness destroyed relevant evidence should be excluded

8    under FRE 403.

9                    **New Witnesses and Topics from December Discovery**

10             ***Richard Jacobs' Allegations***

11             Defendants object to Waymo's efforts to inject the Richard Jacobs' allegations into a trial

12   about 8 specific alleged trade secrets.  For the reasons set forth in Defendants' response to

13   Waymo's Offer of Proof regarding the Jacobs' allegations, evidence and testimony about his

14   allegations, including those relating to ephemeral communications, non-attributable devices, the

15   improper use of the attorney client privilege, Uber's competitive intelligence practices, Uber's

16   knowledge of Jacobs' allegations, Uber's investigation into Jacobs' allegations, and Uber's

17   settlement with Jacobs, should be excluded under FRE 402 and 403 and because of the significant

18   evidentiary problems with much of the evidence supporting Waymo's Offer of Proof. *See* Dkt.

19   No. 2503 & Appendix A.   The new witnesses added for the Jacobs' allegations include Mat

20   Henley, Richard Jacobs, Joe Spiegler, Rey Allie, Nick Gicinto, Jake Nocon, Ed Russo, Joe

21   Sullivan, and Craig Clark.  The previously disclosed witnesses for which the new topics were

22   added include Travis Kalanick, Angela Padilla, Lior Ron, Justin Suhr, Eric Tate, Salle Yoo, and

23   Arturo Gonzalez.

24             ***Ephemeral Messaging***

25             Defendants further object to Waymo's efforts to add new witnesses and expand the topics

26   for existing witnesses on the subject of Uber's use of ephemeral messaging.  Waymo was aware

27   in June 2017 that Uber used ephemeral communications but chose not to make it an issue in this

28   litigation.  Dkt.  No. 2503 at 2-3, 12-13.  The new witnesses on the topic of ephemeral messaging

1   include Mat Henley, Richard Jacobs, Rey Allie, Nick Gicinto, Jake Nocon, Ed Russo, Joe

2   Sullivan, and Craig Clark. The previously disclosed witness for which the topic of ephemeral

3   communications was added is Lior Ron.  Mr. Ron was even asked about his use of ephemeral

4   communications to communicate with Mr. Levandowski at his deposition in June before the

5   deadline for amendment of initial disclosures.  *See* Dkt. No. 2503 at 13.  Waymo's failure to

6   disclose these witnesses and the topic of ephemeral communications violates FRCP 26(a)(1) and

7   should be excluded pursuant to FRCP 37(c)(1).

8        For the same reasons, Defendants object to Waymo's attempt to add one of its own

9   employees, Scott Johnston, as a witness to talk about Waymo's use of ephemeral

10  communications.  Waymo had an opportunity to make ephemeral communications an issue in this

11  case as far back as June 2017 and chose not to do so.  Its failure to disclose Mr. Johnston violates

12  FRCP 26(a)(1) and he should be excluded pursuant to FRCP 37(c)(1).

## Experts

13

14  *Paul French and Bruce Hartley*

15       Defendants object to any testimony from Waymo's "rebuttal" expert reports from French

16  and Hartley because their purpose is not "solely to contradict or rebut evidence on the same

17  subject matter identified by another [party's expert]."  Fed. R. Civ. P. 26(a)(2)(D)(ii).  Rebuttal

18  expert reports "are not . . . the proper place for presenting new arguments" and must be limited to

19  the opposition report's subject matter.  *R&O Const. Co. v. Rox Pro Int'l Grp., Ltd*., No. 2:09-CV-

20  01749-LRH-LR, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011).  But instead of rebutting

21  Laykin's report, French's and Hartley's reports present new arguments on Google's reasonable

22  efforts to protect the alleged trade secrets' secrecy; a necessary element to trade secret

23  misappropriation.  *Kirola v. City & Cty. of San Francisc*o, No. C-07-3685 SBA (EMC), 2010 WL

24  373817, at *2 (N.D. Cal. Jan. 29, 2010) ("[T]his expert opinion could not be considered rebuttal

25  evidence because its purpose was to support an element of the plaintiffs' . . . claim.").  They also

26  provide additional information regarding the reliability of the forensic investigation conducted by

27  Gary Brown and Kristinn Gudjonsson and the soundness of the conclusions Mr. Brown and

28  Mr. Gudjonsson reached.  Any testimony concerning these opinions, on which Waymo bears the

1    burden of proof, should have been disclosed in Waymo's opening reports and are untimely on

2    rebuttal.  Preclusion of the French and Hartley's testimony on these topics is "automatic and

3    mandatory" since Waymo cannot show that their failure to comply was "justified or harmless."

4    *R&O*, 2011 WL 2923703, at *3.

5            *Lambertus Hesselink*

6            Defendants object to Dr. Hesselink's testimony found in paragraphs 65 to 72 of his expert

7    report as set forth in Otto Trucking's *Daubert* motion found at Docket No. 1610.  Dr. Hesselink's

8    opinion on Waymo's protections of its trade secrets is merely a recitation of information found in

9    the declarations of fact witnesses, one of whom admits that he does not have any personal

10   knowledge of the SVN server and that the other information he attested to does not apply to that

11   server.

12           *Gary Brown and Kristinn Gudjonsson*

13           In addition to the objections stated above, Defendants object to any expert testimony by

14   Gary Brown or Kristinn Gudjonsson for the reasons stated in Otto Trucking's *Daubert* motion

15   found at Docket No. 1620.  Mr. Brown and Mr. Gudjonsson's opinions are unreliable and

16   misleading, and they do not have the requisite expertise to opine and testify about the SVN

17   server.

18                         **Testimony by Deposition**

19           Waymo has listed all or nearly all of the non-Waymo witnesses as potential witnesses to

20   be called by deposition.  Defendants object to each and every witness to the extent they do not

21   meet the requirements of Federal Rule of Civil Procedure 32.

1

Dated: January 23, 2018

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP

2

3

4

By: /s/ William Carmody
      WILLIAM CARMODY

5

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A TO DEFENDANTS' OBJECTIONS TO WAYMO'S FOURTH AMENDED WITNESS LIST**

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| | | **Will Call List** | |
| Prabir Adarkar | Not Disclosed | Mr. Adarkar may be asked to provide non-cumulative testimony regarding Uber's financial forecasts for autonomous vehicles, and Uber's competitive relationship with Waymo, including its willingness to cut prices to compete with Waymo. | FRCP 26(a)(1) & 37(c)(1) FRE 403 |
| Shawn Bananzadeh | Not Disclosed | Mr. Bananzadeh will provide noncumulative testimony regarding costs of development of, and management of Waymo's self-driving cars and autonomous vehicle technology. Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. | Per Court's ruling, if Mr. Bananzadeh is allowed to testify at all, it will be as a rebuttal witness *only*—not in Waymo's case-in-chief. *See* Tr. 10/26/17; 12:1-7. FRCP 26(a)(1) & 37(c)(1) FRE 403 |
| John Bares | Matters that concern misappropriation of trade secrets. | Mr. Bares will be asked to provide noncumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; acquisition of Otto; and Mr. Levandowski's employment milestones.[1] | FRCP 26(a)(1) & 37(c)(1) |
| Gary Brown | Matters that concern the forensic investigation into misappropriation of trade secrets by Defendants via Anthony Levandowski, Sameer Kshirsagar, and Radu Raduta. | Mr. Brown will provide non-cumulative testimony concerning Google/Waymo's forensic investigation into misappropriation of trade secrets, particularly analysis of log data and hardware; Google/Waymo's reasonable efforts to maintain the secrecy of its electronic systems, digital document storage repositories, and computer networks, including but not limited to the SVN server. Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. | FRCP 26(a)(1) & 37(c)(1) FRE 602 FRE 702 |

---

[1] Where only a portion of a witnesses' testimony is subject to objection, the objectionable portions are highlighted in yellow. If there is no yellow highlighting, Defendants object to the entirety of the proposed trial testimony.

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Dan Chu | Matters that concern Waymo, including investment in, development of, and management of Waymo's self-driving cars and autonomous vehicle technology; the current and future nature of the relevant markets and competition in the relevant markets, and other issues related to irreparable harm and damages suffered by Waymo. | Mr. Chu will provide non-cumulative testimony regarding matters that concern Waymo, including investment in, development of, and management of Waymo's self-driving cars and autonomous vehicle technology; the current and future nature of the relevant markets and competition in the relevant markets, and other issues related to irreparable harm and damages suffered by Waymo, Waymo's short-term and long-term business plans, Waymo's early rider program in Phoenix, Waymo's launch of its TaaS service, and Waymo's understanding of the TaaS market (including competition in that market and Waymo's competitive advantages). Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. | FRCP 26(a)(1) & 37(c)(1) FRE 602 |
| Dmitri Dolgov | Matters that concern Waymo, including the history, development, and management of Waymo's self-driving cars and autonomous vehicle technology; the design and development of certain of Waymo's asserted trade secrets | Dr. Dolgov will provide non-cumulative testimony regarding the development of Waymo's self-driving car technology, including its LIDAR designs and associated self-driving vehicle software development; the development of certain of Waymo's trade secrets, Waymo's engineering practices, and the Chauffeur Bonus Plan. Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. | FRCP 26(a)(1) & 37(c)(1) FRE 602 |
| Pierre-Yves Droz | Matters that concern the development and operation of Waymo's self-driving cars and autonomous vehicle technology, including LiDAR; the design and development of certain of Waymo's asserted trade secrets; conception, reduction to practice, and patenting of the inventions of U.S. Patent Nos. 8,836,922 ("the '922 patent"), 9,285,464 ("the '464 patent"), 9,368,936 ("the '936 patent"), and 9,086,273 ("the '273 patent"). | Mr. Droz will provide non-cumulative testimony regarding the development of Waymo's self-driving car technology, including its LIDAR designs and the development of Waymo's trade secrets, time to develop Waymo's LIDAR designs and trade secrets, engineering practices of Waymo and the LIDAR team regarding the confidentiality of its designs and measures to keep them secret, the contents of Waymo's SVN server, and communications with Anthony Levandowski regarding Uber and formation of Otto. Waymo further identifies the subjects of Mr. Droz's prior declarations submitted in this matter, Dkt. 25-31, 453-3 as subject he may testify about as well as the Rule 30(b)(6) topics for which he was designated as Waymo's corporate witness. | FRCP 26(a)(1) & 37(c)(1) FRE 602 |

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| John Gardner | Matters that concern misappropriation of trade secrets. | Mr. Gardner will be asked to provide noncumulative testimony regarding Ottomotto and Otto Trucking; the Uber-Otto acquisition; Mr. Levandowski's businesses; the Stroz due diligence analysis, investigation, and report; the misappropriation of Waymo trade secrets; destruction of relevant evidence; and Tyto LiDAR. | FRCP 26(a)(1) & 37(c)(1) FRE 403 |
| Dan Gruver | Matters that concern misappropriation of trade secrets and patent infringement by Defendants; conception, reduction to practice, and patenting of the inventions of the '922, '464, and '273 patents. | Mr. Gruver will be asked to provide noncumulative testimony regarding Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; and the development of Waymo's self-driving car technology, including its LIDAR designs. | FRCP 26(a)(1) & 37(c)(1) |
| Bill Gurley | Not Disclosed | Mr. Gurley will be asked to provide noncumulative testimony regarding Uber's acquisition of Otto; board meetings, discussions, and knowledge concerning the Otto acquisition including Mr. Kalanick and others' representations; facts surrounding Mr. Kalanick and board discussions concerning his termination; negotiations with Mr. Kalanick concerning the Otto acquisition and his resignation; Stroz due diligence report; and representations made by Mr. Kalanick regarding the Stroz report and Otto acquisition; and Benchmark's claim that Mr. Kalanick committed fraud and breached his fiduciary duty with respect to the Otto acquisition. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 MIL 24 |
| Mat Henley | Not Disclosed | Mr. Henley will be asked to provide noncumulative testimony regarding the allegations made by Richard Jacobs, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery; Uber's investigation into the Jacobs allegations and settlement with Jacobs; and Uber's competitive intelligence efforts and practices. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |

3

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Jeff Holden | Matters that concern misappropriation of trade secrets. | Mr. Holden will be asked to provide noncumulative testimony regarding the state of Uber's autonomous vehicle program before the Otto acquisition; negotiations with Mr. Levandowski regarding the acquisition; Mr. Levandowski's consulting work; facts surrounding Mr. Levandowski's continued employment with Uber and termination; and Defendants' misappropriation of Waymo's trade secrets. | FRCP 26(a)(1) & 37(c)(1) |
| Richard Jacobs | Not Disclosed | Mr. Jacobs will be asked to provide noncumulative testimony regarding the allegations he made and Uber's reactions thereto, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices; Jacobs' settlement with Uber, and consulting services provided to Uber. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Travis Kalanick | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Kalanick will be asked to provide non-cumulative testimony regarding Uber's driverless car program; Uber's solicitation of Google and Waymo employees; discussions with, knowledge about, Levandowksi, discussions with the Board and Benchmark partners concerning the Otto acquisition, Mr. Levandowski, and the relationship between the facts surrounding this case and his termination; negotiations with Mr. Levandowski regarding the founding of Ottomotto and Otto Trucking, and Otto acquisition; the Uber-Otto acquisition; solicitation of Google/Waymo employees; the Stroz due diligence analysis, investigation, and report; Uber's knowledge of stolen documents, understanding, and activity related to misappropriation of Google/Waymo trade secret and proprietary information; Levandowski's employment and continued employment at Uber; and destruction of relevant evidence; and allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with Jacobs. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 MIL 24 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |

4

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| John Krafcik | Not Disclosed | Mr. Krafcik will provide non-cumulative testimony regarding Waymo's business; Anthony Levandowski, and his departure from Google; the relationship between Waymo and Google; and Waymo's development of its TaaS service, and valuations of Chauffeur. | FRCP 26(a)(1) & 37(c)(1) FRE 602 |
| Anthony Levandowski | Matters that concern misappropriation of trade secrets and patent infringement by Defendants; conception, reduction to practice, and patenting of the inventions of the '922 and '464 patents | Mr. Levandowski will be asked to provide non-cumulative testimony regarding the development of Waymo's self-driving car technology, including its LIDAR designs and the development of Waymo's trade secrets, engineering practices of Waymo and the LIDAR team regarding the confidentiality of its designs and measures to keep them secret, his performance at Waymo, the contents of Waymo's SVN server, and communications with Google employees regarding Uber and formation of Otto; Uber's driverless car program; Uber's solicitation of Google and Waymo employees; the relationship between the facts surrounding this case and his termination; negotiations regarding the founding of Ottomotto and Otto Trucking, and Otto acquisition; the Uber-Otto acquisition; the Stroz due diligence analysis, investigation, and report; Uber's knowledge of stolen documents, understanding, and activity related to misappropriation of Google/Waymo trade secret and proprietary information; Levandowski's employment and continued employment at Uber; and destruction of relevant evidence. Waymo further identifies those subjects identified in Waymo's Statement Regarding Questions it Intends to Ask Anthony Levandowski at Trial. Dkt. 835. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 |
| Brian McClendon | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. McClendon will be asked to provide non-cumulative testimony regarding solicitation of and negotiations with Levandowski regarding founding Ottomotto and Otto Trucking; and the Uber-Otto acquisition, the development of Uber's self-driving technology, including before the Otto acquisition, Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development. | FRCP 26(a)(1) & 37(c)(1) FRE 403 FRE 402 |

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Angela Padilla | Not Disclosed | Ms. Padilla will be asked to provide noncumulative testimony regarding the Stroz due diligence analysis, investigation, and report; Levandowski's employment and continued employment at Uber; the relationship between the facts surrounding this case and his termination; and the Uber-Otto acquisition, Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; destruction of relevant evidence; and allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with Jacobs. | FRCP 26(a)(1) & 37(c)(1) FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Gaetan Pennecot | Matters that concern misappropriation of trade secrets and patent infringement by Defendants; conception, reduction to practice, and patenting of the inventions of the '922, '464, and '273 patents. | Mr. Pennecot will be asked to provide non-cumulative testimony regarding Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs. | FRCP 26(a)(1) & 37(c)(1) |
| Cameron Poetzscher | Matters that concern misappropriation of trade secrets | Mr. Poetzscher will be asked to provide non-cumulative testimony regarding Uber's negotiations with Mr. Levandowski regarding the formation of Ottomotto/Otto Trucking; and the acquisition; solicitation of Google/Waymo employees; destruction of relevant evidence; and the Stroz due diligence analysis investigation, and report. | FRCP 26(a)(1) & 37(c)(1) FRE 403 |
| Nina Qi | Matters that concern misappropriation of trade secrets. | Ms. Qi will be asked to provide noncumulative testimony regarding Uber's decision to acquire Ottomotto (and to enter into an option to acquire Otto Trucking); contacts between Uber and Mr. Levandowski regarding the formation of Ottomotto / Otto Trucking, Uber's acquisition of those entities, and the benefits that Uber would obtain via those acquisitions; Uber's solicitation of Google/Waymo employees; and Uber's internal views on those subjects, destruction of relevant evidence; and the Stroz due diligence analysis, investigation, and report. | FRCP 26(a)(1) & 37(c)(1) FRE 403 |

6

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Lior Ron | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Ron will be asked to provide noncumulative testimony regarding the misappropriation of Waymo trade secrets; founding of Ottomotto and Otto Trucking; the Uber-Otto acquisition; the Stroz due diligence analysis, investigation, and report; and the business and product development of Ottomotto and Otto Trucking, destruction of relevant evidence; Uber ATG's use of ephemeral communications and nonattributable devices and its relationship with Uber's Threat Operations division; and allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with Jacobs. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Joe Spiegler | Not Disclosed | Mr. Spiegler will be asked to provide non-cumulative testimony regarding the Richard Jacobs letter and resignation email and allegations therein, investigation into Jacobs' allegations, and settlement with Jacobs; and Uber management's lack of deference to the legal department or legal advice. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Justin Suhr | Not Disclosed | Mr. Suhr will be asked to provide noncumulative testimony regarding the Stroz due diligence analysis, investigation, and report; and allegations made by Richard Jacobs, Uber's investigation into the Jacobs allegations and settlement with Jacobs. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Eric Tate | Matters that concern misappropriation of trade secrets | Mr. Tate will be asked to provide noncumulative testimony regarding the Uber- Otto acquisition; the Stroz due diligence analysis, investigation, and report; and destruction of relevant evidence; Uber's counsel's awareness of the Jacobs resignation email and letter and allegations therein; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |

7

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Salle Yoo | Matters that concern misappropriation of trade secrets | Ms. Yoo will be asked to provide noncumulative testimony regarding the Uber-Otto acquisition; the Stroz due diligence analysis investigation, and report; continued employment and termination of Anthony Levandowski; and Defendants misappropriation of Waymo's trade secrets, destruction of relevant evidence; the Richard Jacobs letter and resignation email and allegations therein, investigation into Jacobs' allegations, and settlement with Jacobs; and Uber management's lack of deference to the legal department or legal advice. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Sasha Zbrozek | Not Disclosed | Mr. Zbrozek will provide non-cumulative testimony concerning Google/Waymo's forensic investigation, particularly the SVN server and related log data, including Mr. Levandowski's download of the 14,000 files from the SVN server; Google/Waymo's reasonable efforts to maintain the secrecy of its electronic systems, digital document storage repositories, and computer networks. | FRCP 26(a)(1) & 37(c)(1) FRE 602 |
| **May Call List** | | | |
| Rey Allie | Not Disclosed | Matters that concern the allegations made by Richard Jacobs, and Uber's reactions thereto, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Chelsea Bailey | Not Disclosed | Ms. Bailey will provide noncumulative testimony regarding the Chauffeur Bonus Plan; Mr. Levandowski's departure from Google, including Google's collection of Levandowski's laptops and delivery of those laptops to the Google forensics team; and Mr. Levandowski's performance as a Google/Waymo employee | FRCP 26(a)(1) & 37(c)(1) |
| Travis Bellanger | Not Disclosed | Mr. Bellanger will provide non-cumulative testimony concerning Google/Waymo's forensic investigation into the activities of Anthony Levandowski, including Google's collection of Levandowski's laptops and delivery of those laptops to the Google forensics team | FRCP 26(a)(1) & 37(c)(1) |

8

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Adam Bentley | Matters that concern misappropriation of trade secrets | Mr. Bentley will be asked to provide non-cumulative testimony regarding the Uber-Otto acquisition; the Stroz due diligence analysis, investigation, and report; and destruction of relevant evidence. | FRE 403 |
| Matthew Blattmachr | Not Disclosed | Mr. Blattmachr will be asked to provide non-cumulative testimony regarding the ownership of Levandowski's companies | FRCP 26(a)(1) & 37(c)(1) |
| Don Burnette | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Burnette will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs and planner software; due diligence by Stroz for Otto acquisition by Uber; and destruction of relevant evidence. | FRCP 26(a)(1) & 37(c)(1) FRE 403 10/26/2017 Hr'g Tr. at 40. |
| Neel Chatterjee | Not Disclosed | Mr. Chatterjee will be asked to provide non-cumulative testimony regarding Goodwin Procter's possession of misappropriated materials; destruction of relevant evidence; chain of custody of Anthony Levandowski's personal laptops, and searches thereof. | FRCP 26(a)(1) & 37(c)(1) FRE 403 |
| Gerard Dwyer | Not Disclosed | Mr. Dwyer will provide noncumulative testimony regarding inputs to Waymo's current P&L. He may also provide testimony regarding Waymo's current business plan. | FRCP 26(a)(1) & 37(c)(1) |
| Nick Gicinto | Not Disclosed | Mr. Gicinto will be asked to provide non-cumulative testimony regarding the allegations made by Richard Jacobs, including the use of ephemeral communications, non-attributable devices, and designations to avoid discovery, and Uber's competitive intelligence efforts and practices; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |

9

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Arturo Gonzalez | Not Disclosed | Mr. Gonzalez will be asked to provide non-cumulative testimony regarding MoFo's possession of misappropriated materials; destruction of relevant evidence; and Defendants' knowledge of same; Uber's counsel's awareness of the Jacobs resignation email and letter and allegations therein; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. As Waymo previously advised Uber, Waymo does not intend to call Mr. Gonzalez as a witness unless Defendants open the door by claiming that they complied with their discovery obligations. | FRCP 26(a)(1) & 37(c)(1) FRE 403 FRE 402 FRE 602 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Kristin Gudjonsson | Not Disclosed | Mr. Gudjonsson will provide noncumulative testimony concerning Google/Waymo's forensic investigation into misappropriation of trade secrets, particularly analysis of hardware; Google/Waymo's reasonable efforts to maintain the secrecy of its electronic systems, digital document storage repositories, and computer networks, including but not limited to the SVN server. | FRCP 26(a)(1) & 37(c)(1) FRE 602 FRE 702 |
| Don Harrison | Not Disclosed | Mr. Harrison will provide noncumulative testimony regarding Google's mergers and acquisitions, including the negotiation and drafting of Google's merger and acquisition agreements, the process of conducting valuations, and Waymo's valuations. | FRCP 26(a)(1) & 37(c)(1) |
| Jennifer Haroon | Not Disclosed | Ms. Haroon will provide noncumulative testimony regarding details of Waymo's first P&L, the negotiation of the valuation used in connection with the Chauffeur Business Plan, the timing of payments made under the Chauffeur Business Plan, and the 409(a) valuation conducted when Waymo was spun off from Google. Ms. Haroon may also provide testimony regarding the evolution of Waymo's business plan over time. Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which she was designated as Waymo's corporate witness. | FRCP 26(a)(1) & 37(c)(1) FRE 602 |

10

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Scott Johnston | Not Disclosed | Mr. Johnston will provide noncumulative testimony regarding the use of Google Hangouts and related proprietary chat applications, including Google and Waymo's own use of and default settings for such applications. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Rudy Kim | Matters that concern misappropriation of trade secrets. | Mr. Kim will be asked to provide noncumulative testimony regarding the Uber-Otto acquisition; the Stroz due diligence analysis, investigation, and report; and destruction of relevant evidence. | FRE 403 |
| Asheem Linaval | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Linaval will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs. | FRCP 26(a)(1) & 37(c)(1) |
| David Lawee | Not Disclosed | Mr. Lawee will provide noncumulative testimony regarding Google's mergers and acquisitions, including the negotiation and drafting of Google's merger and acquisition agreements, the process of conducting valuations, Waymo's valuations, and the Chauffeur Bonus Plan. Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness. | FRCP 26(a)(1) & 37(c)(1) FRE 602 |
| Max Levandowski | Matters that concern misappropriation of trade secrets and patent infringement by Defendants | Mr. Levandowski will be asked to provide noncumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs. | 10/26/2017 Hr'g at 13:9-14 |

11

sf-3861016

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Rhian Morgan | Matters that concern misappropriation of trade secrets. | Ms. Morgan will be asked to provide noncumulative testimony regarding the founding and business of Ottomotto and Otto Trucking; Uber's acquisition of Otto; and the Stroz due diligence analysis, investigation, report; Defendants misappropriation of Waymo's trade secrets, destruction of relevant evidence. | FRCP 26(a)(1) & 37(c)(1) |
| Jake Nocon | Not Disclosed | Mr. Nocon will be asked to provide non-cumulative testimony regarding the allegations made by Richard Jacobs, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Daniel Ratner | Not Disclosed | Mr. Ratner will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; the development of Waymo's self-driving car technology, including its LIDAR designs. | 10/26/2017 Hr'g at 13:9-14 |
| Ed Russo | Not Disclosed | Mr. Russo will be asked to provide non-cumulative testimony concerning the allegations made by Richard Jacobs, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Bryan Salesky | Matters that concern the development and operation of Waymo's self-driving cars and autonomous vehicle technology; matters that concern misappropriation of trade secrets by Defendants. | Mr. Salesky will provide non-cumulative testimony regarding the history of Google/Waymo's self-driving-car development efforts; Mr. Levandowski's performance as a Google/Waymo employee; certain of Mr. Levandowski's communications with Uber prior to his departure from Google/Waymo | FRCP 26(a)(1) & 37(c)(1) |

12

| Witness | Subject of Initial Disclosure | Subject of Trial Testimony | Objections |
|---|---|---|---|
| Ognen Stojanovski | Matters that concern misappropriation of trade secrets | Mr. Stojanovski will be asked to provide non-cumulative testimony regarding Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; regarding Tyto LiDAR and Otto's acquisition of Tyto; regarding communications with Mr. Levandowski regarding Tyto LIDAR and other businesses related to Mr. Levandowski. | FRCP 26(a)(1) & 37(c)(1) |
| Joe Sullivan | Not Disclosed | Mr. Sullivan will be asked to provide non-cumulative testimony regarding the allegations made by Richard Jacobs, including the use of ephemeral communications, non-attributable devices, and improper privilege designations to avoid discovery, and Uber's competitive intelligence efforts and practices; and Uber's investigation into the Jacobs allegations and settlement with Jacobs. | FRCP 26(a)(1) & 37(c)(1) FRE 402 FRE 403 Defendants' Response to Waymo's Offer of Proof re Jacobs Allegations |
| Chris Urmson | Matters that concern the development and operation of Waymo's self-driving cars and autonomous vehicle technology, including LiDAR; matters that concern misappropriation of trade secrets by Defendants. | Mr. Urmson will provide non-cumulative testimony regarding the history and development of Waymo's self-driving car technology, including its LIDAR designs; Mr. Levandowski's performance at Google and circumstances surrounding his termination from Google; Chauffeur Bonus Plan; Waymo valuation(s). | FRCP 26(a)(1) & 37(c)(1) |

13

# APPENDIX D

1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone:     415.268.7000
5   Facsimile:     415.268.7522

6   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
7   HAMISH P.M. HUME (*Pro Hac Vice*)
    hhume@bsfllp.com
8   BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
9   Washington DC  20005
    Telephone:     202.237.2727
10  Facsimile:     202.237.6131

11  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
12  SHAWN RABIN (*Pro Hac Vice*)
    srabin@SusmanGodfrey.com
13  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
14  New York, NY  10019-6023
    Telephone:     212.336.8330
15  Facsimile:     202.336.8340

16  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
17  and OTTOMOTTO LLC

18              UNITED STATES DISTRICT COURT

19            NORTHERN DISTRICT OF CALIFORNIA

                 SAN FRANCISCO DIVISION
20

21  WAYMO LLC,                          Case No. 3:17-cv-00939-WHA

22              Plaintiff,              **DEFENDANTS UBER
                                        TECHNOLOGIES, INC. AND
23        v.                            OTTOMOTTO LLC'S SECOND
                                        AMENDED FED. R. CIV. P. 26(A)(3)
24  UBER TECHNOLOGIES, INC.,            WITNESS LIST**
    OTTOMOTTO LLC; OTTO TRUCKING
25  LLC,                               Judge:   The Honorable William Alsup

26              Defendants.            Trial Date: February 5, 2018

27

28

1   Defendants Uber Technologies, Inc. and Ottomotto LLC ("Uber") hereby submit their

2   witness list for trial, pursuant to Fed. R. Civ. P. 26(a)(3) and the Court's Guidelines for Trial and

3   Final Pretrial Conference in Civil Jury Cases.

4   Uber identifies the name, contact information, and substance of the testimony of each

5   witness it expects to present or may present at trial, other than solely for impeachment.  Pursuant

6   to the Court's Guidelines, non-cumulative testimony is identified below in italics.

7   **I.    LIVE WITNESSES**

8   Uber expects to present live testimony from the following witnesses:

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| Boehmke, Scott | [Contact through counsel of record]<br><br>Uber Technologies, Inc. Advanced Technologies Center 100 32nd St, Pittsburgh, PA 15201 | *Mr. Boehmke is an engineering manager within Uber's Advanced Technologies Group, responsible for hardware development and application in the self-driving vehicle project.  He was previously a project engineer at Carnegie Mellon where he designed LiDAR and Radar sensors.  He may testify regarding design and development of Defendant's LiDAR,* Defendant's non-misappropriation of Waymo's trade secrets; inspections pursuant to the Court's provisional remedy order; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Epstein, Michael | Waymo LLC 1600 Amphitheatre Parkway Mountain View, CA 94043 | *Mr. Epstein is a product manager at Waymo.*  He is expected to testify regarding Waymo's decision to enter the Transportation as a Service ("TaaS") market, estimates and forecasts of the ride-sharing market and Waymo's share of the ride-sharing market and *Waymo's business and strategic plans (and plans generally) for the ride-sharing market,* including projections for revenue generation and profitability and *including TaaS, and competition with Uber.* |

| Witness | Contact Information | Substance of Trial Testimony |
|---------|---------------------|------------------------------|
| Faulkner, Kevin | [Contact through counsel of record]<br><br>Stroz Friedberg<br>32 Avenue of the Americas, Floor 4<br>New York, NY 10013<br>Phone:  (212) 981-6540 | *Mr. Faulkner is Managing Director at Stroz Friedberg and is an expert retained by Uber and Ottomotto to testify regarding the forensic examination of Uber-issued devices and data and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order.  He will testify regarding the matters disclosed in his expert reports of September 7, 2017, November 17, 2017, and January 19, 2018\*.* |
| Friedberg, Eric | Stroz Friedberg<br>32 Avenue of the Americas, Floor 4<br>New York, NY 10013<br>Phone:  (212) 981-6540 | *Mr. Friedberg is a co-founder of Stroz Friedberg and currently serves as the co-President.*  He will testify regarding Stroz Friedberg's investigation and due diligence for Uber's potential acquisition of Ottomotto and Otto Trucking, LLC, including with respect to the deletion of the 14,000 downloaded files. |
| Haslim, James | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Haslim is a senior engineering manager at Uber, responsible for the technical development of Uber's LiDAR sensors, and previously worked at Tyto.  He may testify regarding design and development of Defendants' LiDAR*; Defendants' non-misappropriation of Waymo's trade secrets; knowledge of Odin Wave LLC and Tyto LiDAR LLC; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |

| Witness | Contact Information | Substance of Trial Testimony |
|---------|--------------------|------------------------------|
| Kalanick, Travis | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr Kalanick is Uber's co-founder and former Chief Executive Officer. He may testify regarding Defendants' business model and strategy for autonomous vehicles; Defendants' non-misappropriation of Waymo's trade secrets; Uber's decision to acquire Ottomotto; steps taken by Defendants to prevent trade secrets from prior employers coming to Defendants; Defendants' autonomous vehicle program; March 11, 2016 meeting with Anthony Levandowski; knowledge of Waymo's discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space; Defendants' employment of Anthony Levandowski; and Defendants' termination of Anthony Levandowski.* |
| Krafcik, John | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Krafcik is Waymo's Chief Executive Officer. He is expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; Waymo's business plans; knowledge of discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space; and knowledge of the Project Chauffeur bonus program.* |
| Lebby, Michael | [Contact through counsel of record]<br><br>████████████<br>Email: lebby@usc.edu | *Dr. Lebby is an expert retained by Uber and Ottomotto to testify regarding non-misappropriation of Waymo's trade secrets. He will testify regarding the matters disclosed in his expert report of September 7, 2017.* |

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| McManamon, Paul | [Contact through counsel of record]<br><br>University of Dayton<br>300 College Park<br>Fitz Hall Room 580Q<br>Dayton, OH 45469<br>Phone: (937) 344-3921 | *Dr. McManamon is an expert retained by Uber and Ottomotto to testify regarding non-misappropriation of Waymo's trade secrets. He will testify regarding the matters disclosed in his expert report of September 7, 2017, and his declaration of April 7, 2017.* |
| Meyhofer, Eric | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>Advanced Technologies Center<br>100 32nd St<br>Pittsburgh, PA 15201 | *Mr. Meyhofer is Head of Uber's Advanced Technologies Group.* He may testify regarding the design and development of Defendants' LiDAR; Defendants' autonomous vehicle program; Defendants' non-misappropriation of Waymo's trade secrets; Defendants' business model and strategy for autonomous vehicles; Uber's decision to acquire Ottomotto; termination of Anthony Levandowski; confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; and the use or non-use of ephemeral communications, non-attributable devices, and attorney-client privileged designations within Uber's ATG*. |
| Nestinger, Stephen | 345 Digital Drive<br>Morgan Hill, CA 95037<br>Phone: (408) 465-2800<br><br>Contact through counsel:<br><br>John V. Picone III, Esq.<br>Hopkins & Carley<br>The Letitia Building<br>70 South First Street<br>San Jose CA 95113<br>Phone: (408) 286-9800<br>Email:<br>jpicone@hopkinscarley.com | *Mr. Nestinger is Director of Mechanical Engineering at Velodyne.* He is expected to testify regarding the technologies in LiDAR sensors that Velodyne has made or sold, including VLP-16, HDL-32E, HDL64E, Puck Hi-Res, and Puck Lite. |

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| Page, Larry | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Page is Google's co-founder and Chief Executive Office of Google's parent company, Alphabet Inc.*<br>He is expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; Waymo's business plans; knowledge of discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space; and knowledge of the Project Chauffeur bonus program, and his concerns about competition from Uber and Anthony Levandowski. |
| Poetzscher, Cam | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Poetzscher is Uber's Vice President of Corporate Development.*<br>He may testify regarding Defendants' non-misappropriation of Waymo's trade secrets; business of Otto Trucking LLC; Uber's decision to acquire Ottomotto; Uber's indemnification agreement with Ottomotto; Uber's meetings with Anthony Levandowski, Ottomotto and/or Otto Trucking before April 11, 2016; Stroz due diligence for the Uber/Ottomotto acquisition; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |

| Witness | Contact Information | Substance of Trial Testimony |
|---------|---------------------|------------------------------|
| Ron, Lior | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Lior is Senior Director at OttoFreight, was a co-founder of Ottomotto, and previously worked at Google.* He may testify regarding the nature of employment at Waymo and Defendants; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; knowledge of the Project Chauffeur bonus program; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; Defendants' non-misappropriation of Waymo's trade secrets; formation, purpose, and business of Otto Trucking LLC; formation, purpose, and business of Ottomotto; Ottomotto's decision to be acquired by Uber; March 11, 2016 meeting with Anthony Levandowski; Stroz due diligence for the Uber/Ottomotto acquisition; confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order; design and development of Ottomotto's LiDAR; Uber's security group (including SSG, MA, and Threat Operations) as it relates to Uber's ATG*; Uber's competitive intelligence practices*; and the use or non-use of non-attributable devices, ephemeral communications, and attorney-client privileged designations within Uber's ATG*. |

| Witness | Contact Information | Substance of Trial Testimony |
|---------|--------------------|-----------------------------|
| Sullivan, Stacy | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Ms. Sullivan is Vice President for People Operations and Chief Culture Officer at Google. She is expected to testify regarding communication with Larry Page regarding Anthony Levandowski*, Mr. Levandowski's alleged recruitment of Waymo employees, the Chauffeur bonus plan, friction on the Chauffeur team, a meeting with Anthony Levandowski and Chelsea Bailey after Mr. Levandowksi left Google, the competition for talent, investigation (or lack thereof) of personal devices of new Google employees, and Larry Page's concerns about competition from Anthony Levandowski. |
| Urmson, Chris | ███████████████ | *Mr. Urmson was Waymo's former Chief Technology Officer.* He is expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's employee policies concerning confidential and trade secret information; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; and knowledge of the Project Chauffeur bonus program. |

| Witness | Contact Information | Substance of Trial Testimony |
|---|---|---|
| Zbrozek, Sasha | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Zbrozek is an electrical hardware engineer on Waymo's, and before that, Google's, self-driving car project.* He is expected to testify regarding Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository; Waymo's employee policies concerning confidential and trade secret information; his development of instructions for logging into the SVN repository and the fact that following his instructions downloads the entire database; that the documents in that database are "low value" and that he was concerned that the lawyers were ascribing suspicion to Anthony Levandowski's alleged downloading; and his participation in Waymo's forensic investigation into alleged misappropriation of trade secrets. |
| Clark, Craig* | Stumphauzer & Sloman<br>One SE Third Avenue<br>Suite 1820<br>Miami, FL 33131 | *Craig Clark is a former legal director at Uber who worked with its security team.* Mr. Clark is expected to testify about Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; and relationship and interaction with Uber ATG. |
| Facciola, John* | Georgetown University Law Center<br>600 New Jersey Avenue NW<br>Washington, DC 20001 | *John Facciola is a professor of law at Georgetown with substantial experience with and knowledge about data retention who advised Uber on issues related to data retention.* He is expected to testify about his involvement in and knowledge of Uber's data retention policies and programs; and knowledge of best practices in data retention. |
| Oot, Patrick* | Shook, Hardy & Bacon<br>1155 F Street NW, Suite 200<br>Washington, DC 20004 | *Patrick Oot is a partner at Shook Hardy & Bacon with substantial experience with and knowledge about data retention who advised Uber on issues related to data retention.* He is expected to testify about his involvement in and knowledge of Uber's data retention policies and programs; and knowledge of best practices in data retention. |

Uber may present live testimony from the following witnesses:

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Bailey, Chelsea | Waymo LLC 1600 Amphitheatre Parkway Mountain View, CA 94043 | *Ms. Bailey is a human resources business partner at Google[x].*  She is expected to testify regarding Waymo's policies concerning confidential and trade secret information; Waymo employment and compensation issues; and the Project Chauffeur bonus program. |
| Bares, John | [Contact through counsel of record] Uber Technologies, Inc. Advanced Technologies Center 100 32nd St, Pittsburgh, PA 15201 | *Mr. Bares is the former Operations Director at Uber's Advanced Technologies Group.*  He may testify regarding design and development of Defendants' LiDAR; Defendants' autonomous vehicle program; Defendants' non-misappropriation of Waymo's trade secrets; Defendants' business model and strategy for autonomous vehicles; Uber's  decision to acquire Ottomotto; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Bratic, Walter | [Contact through counsel of record] OverMont 3737 Buffalo Speedway Suite 1600 Houston, Texas 77098 Phone: (713) 403-3307 Email: walter.bratic@whitleypenn.com | *Mr. Bratic is an expert retained by Uber and Ottomotto to testify regarding damages.  He will testify regarding the matters disclosed in his expert report of September 7, 2017.* |

| Witness | Contact Information | Trial Testimony |
|---------|-------------------|-----------------|
| Brin, Sergey | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Brin is a co-founder of Google and President of Google's parent company, Alphabet Inc.*  He is expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; and knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski. |
| Brown, Gary | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Brown is a Forensics Security Engineer at Google.*  He is expected to testify about Waymo's first awareness of alleged trade secret misappropriation; Waymo's forensic investigation into alleged misappropriation of trade secret misappropriation, including the conclusions drawn from that investigation; and Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Burnette, Don | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Burnette is a technical lead for software at Uber, and previously worked at Google prior to co-founding Otto.*  He may testify regarding the nature of employment at Waymo and Defendants; Defendants' non-misappropriation of Waymo's trade secrets; formation, purpose, and business of Ottomotto; Ottomotto's decision to be acquired by Defendants; Development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses; knowledge of the Project Chauffeur bonus program; Stroz due diligence for the Uber/Ottomotto acquisition; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Chu, Dan | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Chu is Director of Product at Waymo.*  He is expected to testify regarding estimates and forecasts of the ride-sharing market and Waymo's share of the ride-sharing market and Waymo's business and strategic plans (and plans generally) for the ride-sharing market, including projections for revenue generation and profitability and including Transportation as a Service (TaaS), and the creation of documents that analyzed competition with Uber. |

| Witness | Contact Information | Trial Testimony |
|---------|--------------------|-----------------| 
| Dolgov, Dmitri | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Dolgov is Vice President of Engineering at Waymo.*  He is expected to testify regarding design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets; Waymo's employee policies concerning confidential and trade secret information; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; and knowledge of the Project Chauffeur bonus program. |
| Droz, Pierre-Yves | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Droz is Principal Hardware Engineer at Waymo, serving as technical lead on Waymo's LiDAR project since its inception.*  He is expected to testify about Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets; whether and to what extent the allegedly misappropriated files contain Waymo's alleged trade secrets; Waymo's awareness of the extent to which each of the alleged Waymo trade secrets selected for trial other than trade secret 25, or elements thereof, are known or practiced outside of Waymo; and Waymo's knowledge of Odin Wave. |
| Fidric, Bernard | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Fidric is a hardware engineer at Waymo.*  He is expected to testify regarding design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets and Waymo's employee policies concerning confidential and trade secret information. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| French, Paul | 465 California Street<br>Suite 1400<br>San Francisco, CA 94104<br>Phone: 415-321-8206<br>Email: paul@discovia.com | *Mr. French is an expert retained by Waymo to testify regarding: (1) the forensic examination of Uber-issued devices and data and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order and (2) Waymo's forensic investigation of Anthony Levandowski, Radu Raduta, and Sameer Kshirsagar and Waymo's methods to protect its confidential information and intellectual property (including trade secrets). He is expected to testify regarding the matters disclosed in his expert reports of September 14, 2017, November 17, 2017, and January 13, 2018\*.* |
| Fulginiti, Mary | c/o Melanie M. Blunschi<br>Latham & Watkins LLP<br>505 Montgomery Street<br>Suite 2000<br>San Francisco, California 94111<br>(415) 391-0600 | *Ms. Fulginiti was a managing director at Stroz Friedberg.* She will testify regarding Stroz Friedberg's investigation and due diligence for Uber's potential acquisition of Ottomotto and Otto Trucking, LLC, including with respect to the deletion of the 14,000 downloaded files. |
| Gardner, John | c/o Rogers Joseph O'Donnell<br>311 California Street, 10th Floor<br>San Francisco, CA | *Mr. Gardner is an attorney at Donahue Fitzgerald. He is expected to testify regarding representation of Anthony Levandowski*; knowledge of Odin Wave LLC, Tyto LiDAR LLC, and Sandstone Group LLC; and Stroz due diligence for the Uber/Ottomotto acquisition. |
| Gassend, Blaise | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Gassend is a software engineer at Waymo.* He is expected to testify regarding design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets and Waymo's employee policies concerning confidential and trade secret information. |

| Witness | Contact Information | Trial Testimony |
|---------|---------------------|-----------------|
| Grossman, William | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Grossman is a mechanical engineer at Waymo.* He is expected to testify regarding Waymo's knowledge of Defendants' LiDAR design; Waymo's employee policies concerning confidential and trade secret information; and Waymo's receipt of correspondence containing Defendants' LiDAR design. |
| Gruver, Dan | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Gruver is a senior program manager at Uber, responsible for sensing systems for self-driving vehicle, and was formerly employed by Google.* He may testify regarding the design and development of Defendants' LiDAR; Defendants' non-misappropriation of Waymo's trade secrets; nature of employment at Waymo; Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; knowledge of the Project Chauffeur bonus program; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Gudjunsson, Kristinn | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Gudjunsson is Manager of Digital Forensics and Incident Management at Google.* He is expected to testify regarding Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository; Waymo's employee policies concerning confidential and trade secret information; and Waymo's forensic investigation into alleged misappropriation of trade secret misappropriation, *including his role in the investigation* and the conclusions drawn from that investigation. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Hesselink, Lambertus | Spilker Building, Room 301 Stanford University Stanford, California 94305 Phone: 415-269-7102 Email: Bert@kaos.stanford.edu | *Dr. Hesselink is an expert retained by Waymo to testify regarding Defendants' alleged misappropriation of Waymo's trade secrets.  He is expected to testify regarding the matters disclosed in his expert reports of August 24, 2017, and September 14, 2017, and his declaration of September 5, 2017.* |
| Holden, Jeff | [Contact through counsel of record] Uber Technologies, Inc. 1455 Market Street, Floor 4 San Francisco, CA 94103 | *Mr. Holden is Chief Product Officer at Uber, responsible for product development.*  He may testify regarding defendants' business model and strategy for autonomous vehicles; Defendants' autonomous vehicle program; Uber's decision to acquire Ottomotto; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Ingram, Ben | Waymo LLC 1600 Amphitheatre Parkway Mountain View, CA 94043 | *Mr. Ingram is a systems engineer at Waymo.*  He is expected to testify regarding the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets; Waymo's employee policies concerning confidential and trade secret information; and Waymo's awareness of the extent to which alleged Waymo trade secret 25, or elements thereof, is known or practiced outside of Waymo. |
| Janosko, Michael | Waymo LLC 1600 Amphitheatre Parkway Mountain View, CA 94043 | *Mr. Janosko is a Security Engineering Manager at Google.*  He is expected to testify regarding Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository and Waymo's employee policies concerning confidential and trade secret information. |

| Witness | Contact Information | Trial Testimony |
|---------|--------------------|-----------------|
| Juelsgaard, Soren | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Juelshaard is a senior engineer at Uber and previously worked at 510 Systems.* He may testify regarding Stroz due diligence for the Uber/Ottomotto acquisition; Defendants' non-misappropriation of Waymo's trade secrets; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Kim, Rudy | Morrison & Foerster LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>Phone: (650) 813-5600 | *Mr. Kim is a partner at Morrison & Foerster LLP.* He may testify *regarding the intellectual property due diligence for the Uber/Ottomotto acquisition* and inspection pursuant to the Court's provisional remedy order. |
| Kintz, Gregory | ██████████████ | *Mr. Kintz is an expert retained by Waymo to testify regarding Defendants' alleged misappropriation of Waymo's trade secrets. He is expected to testify regarding the matters disclosed in his declarations of March 10, 2017, and April 21, 2017.* |

| Witness | Contact Information | Trial Testimony |
|---------|---------------------|-----------------|
| Levandowski, Anthony | Contact through counsel:<br><br>Ismail Ramsey or Miles Ehrlich<br>Ramsey & Ehrlich LLP<br>803 Hearst Avenue<br>Berkeley, CA 94710 | *Mr. Levandowski was former Vice President of Engineering at Uber, co-founder of Ottomotto, and founder of 510 Systems.* He was also formerly *employed by Waymo.* He is expected to testify regarding the nature of his employment at Waymo and Defendants; design and development of Defendants' LiDAR; Defendants' autonomous vehicle program; Defendants' non-misappropriation of Waymo's trade secrets; business of Otto Trucking LLC; knowledge of Odin Wave LLC and Tyto LiDAR LLC; Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; knowledge of the Project Chauffeur bonus program; March 11, 2016 meeting with Anthony Levandowski; Stroz due diligence for the Uber/Ottomotto acquisition; and Uber's security group (including SSG, MA, and Threat Operations) as it relates to Uber's ATG*; Uber's competitive intelligence practices*; and the use of non-attributable devices, ephemeral communications, and attorney-client privileged designations within Uber's ATG*. |
| Linaval, Asheem | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Linaval is an electrical engineer at Uber and previously worked at 510 Systems, Google, Odin Wave, and Tyto.* He may testify regarding Defendants' autonomous vehicle program and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| McCann, William | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. McCann is a mechanical engineer at Waymo.* He is expected to testify regarding design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets; and Waymo's employee policies concerning confidential and trade secret information. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Medford, Ron | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Medford is Waymo's Director for Safety.* He is expected to testify regarding safety assessments, public policy, and regulatory work relating to autonomous vehicles, and involvement in safety-related matters. |
| Morgan, Rhian | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Ms. Rhian is the Team Engagement Coordinator at Uber and was formerly the human resources lead at Ottomotto.* She may testify regarding hiring and onboarding process for Uber and Ottomotto, including hiring agreements; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Morriss, Zachary | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Morriss is a mechanical engineer at Waymo and previously worked at Anthony's Robots.* He is expected to testify regarding Waymo's employee policies concerning confidential and trade secret information; and the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Padilla, Angela | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Ms. Padilla is Associate General Counsel for Litigation and Employment at Uber.* She may testify regarding the termination of Anthony Levandowski; Stroz due diligence for the Uber/Ottomotto acquisition; confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order; Anthony Levandowski's claim that he downloaded and retained alleged misappropriated materials to facilitate bonus payment(s) from Waymo; the investigation and her knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney*; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations*; and involvement in and knowledge of Uber's data retention policies and programs.* |
| Palomar, Matthew | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Palomar is a hardware engineer at Uber and was previously an engineer at Tyto.* He may testify regarding the design and development of Defendants' LiDAR; Defendants' non-misappropriation of Waymo's trade secrets; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Pennecot, Gaetan | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Pennecot is a hardware engineer at Uber.  He formerly worked as a hardware engineer at 510 Systems and Google.  He may testify regarding the design and development of Defendants' LiDAR;* Defendants' non-misappropriation of Waymo's trade secrets; nature of employment at Waymo; Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; knowledge of the Project Chauffeur bonus program; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Qi, Nina | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Ms. Qi is the former Senior Manager of Corporate Development at Uber.  She* may testify regarding defendants' non-misappropriation of Waymo's trade secrets; business of Otto Trucking LLC; Uber's decision to acquire Ottomotto; March 11, 2016 meeting with Anthony Levandowski; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Sebern, Colin | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Sebern works on vehicle-building and calibration at Uber and previously worked at Ottomotto and Google.  He* may testify regarding Stroz due diligence for the Uber/Ottomotto acquisition; Defendants' non-misappropriation of Waymo's trade secrets; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Stojanowski, Ognen | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Stojanowski is Head of Policy and Government Relations at Uber.  He* may testify regarding knowledge of Odin Wave LLC, Tyto LiDAR LLC, and Sandstone Group LLC, and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Suhr, Justin | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mr. Suhr is a Legal Director at Uber, specializing in employment issues.* He may testify regarding Stroz due diligence for the Uber/Ottomotto acquisition; Uber's decision to acquire Ottomoto and structure of the acquisition; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Tate, Eric | Morrison & Foerster LLP<br>425 Market Street<br>San Francisco, CA 94105<br>Phone: (415) 268-7000 | *Mr. Tate is a partner at Morrison & Foerster LLP.* He may testify regarding the Stroz due diligence for the Uber/Ottomotto acquisition* and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Thrun, Sebastian | ███████████<br><br>Contact through counsel:<br>Christopher B. Hockett<br>Davis Polk & Wardwell LLP<br>1600 El Camino Real<br>Menlo Park, CA 94025<br>Phone: (650) 752-2009<br>Email: chris.hockett@davispolk.com | *Mr. Thrun is Chief Executive Officer of Kitty Hawk Corporation and formerly head of Waymo and Google[x].* He is expected to testify regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's employee policies concerning confidential and trade secret information; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; knowledge of the Project Chauffeur bonus program, and *his introduction of Travis Kalanick to Mr. Levandowski.* |
| Ulrich, Drew | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Ulrich is a mechanical engineer at Waymo, and previously work at 510 Systems.* He is expected to testify regarding Waymo's employee policies concerning confidential and trade secret information and the design, development, and operation of Waymo's LiDAR systems and self-driving car project. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Wachter, Luke | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Wachter is a software engineer at Waymo and previously worked at 510 Systems.* He is expected to testify regarding the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets and Waymo's employee policies concerning confidential and trade secret information. |
| Willis, Tim | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Willis is Head of Global Supply at Waymo.* He is expected to testify regarding Waymo's supply chain operations and Waymo's employee policies concerning confidential and trade secret information. |
| Adkins, Heather* | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Heather Adkins is the director of information security and privacy at Google.* Ms. Adkins may testify regarding Google and Waymo's use of non-attributable or mis-attributable devices; and Google and Waymo's competitive intelligence gathering and market analysis. |
| Gicinto, Nick* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Nick Gicinto works in Uber's security group.* Mr. Gicinto may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Haimovici, Randy* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Randy Haimovici is a director in Uber's litigation department.* Mr. Haimovici may testify regarding the investigation and his knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations; and Uber's data retention policies and programs. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Henley, Mathew* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Mathew Henley works in Uber's security group.* Mr. Henley may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Jacobs, Richard* | Boersch Shapiro<br>1611 Telegraph Avenue, Suite 806<br>Oakland, CA 94612 | *Richard Jacobs previously worked in Uber's security group.* Mr. Jacobs may testify concerning the allegations in his April 14, 2017 resignation email and the May 5, 2017 demand letter from his attorney; security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Johnston, Scott* | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Scott Johnston is the Director of Product Management at Google.* Mr. Johnston may testify regarding Waymo and Google's use of and policy regarding ephemeral communications, including "off the record" chats in electronic chat programs and apps; and Google and Waymo's policies regarding the retention of electronic communications. |
| Majalya, Sidney* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Sidney Majalya is a director in Uber's compliance group.* Mr. Majalya may testify regarding the investigation and his knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations. |

| Witness | Contact Information | Trial Testimony |
|---------|---------------------|-----------------|
| Maher, Kevin* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Kevin Maher works in Uber's security group.*  Mr. Maher may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Nocon, Jake* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Jake Nocon works in Uber's security group.*  Mr. Nocon may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Russo, Edward* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Edward Russo works in Uber's security group.*  Mr. Russon may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Spiegler, Joe* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Joe Spiegler was previously Uber's Chief Compliance Officer.*  Mr. Spiegler may testify regarding the investigation and his knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations. |
| Stewart, Shaun* | Waymo LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Shaun Stewart is Waymo's Director of Operations.  Mr. Stewart may testify regarding Google and Waymo's surveillance of competitors.* |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Sullivan, Joe* | Angeli Law Group LLC<br>121 SW Morrison Street<br>Suite 400<br>Portland, OR 97204 | *Joe Sullivan was previously the Chief Security Officer at Uber.*  Mr. Sullivan may testify regarding Uber's security group's practices regarding non-attributable devices, ephemeral communications, and attorney-client privileged designations; Uber's competitive intelligence practices; relationship and interaction with Uber ATG. |
| Yoo, Salle* | [Contact through counsel of record]<br><br>Uber Technologies, Inc.<br>1455 Market Street, Floor 4<br>San Francisco, CA 94103 | *Salle Yoo is the former Chief Legal Officer, General Counsel, and Corproate Secretary for Uber.*  Ms. Yoo may testify regarding the investigation and her knowledge of allegations in the April 14, 2017 resignation email from Richard Jacobs and May 5, 2017 demand letter from his attorney; Uber's practices regarding non-attributable devices, competitive intelligence, ephemeral communications, and attorney-client privileged designations; Involvement in and knowledge of Uber's data retention policies and programs. |

Uber reserves the right to call any witness identified by Waymo.  The above descriptions are not intended to cover every possible topic or sub-topic on which these witnesses may testify and are made without prejudice to Uber eliciting other testimony, including without limitation testimony regarding matters addressed during the deposition of a given witness.

## II.    DEPOSITION TESTIMONY

Uber reserves the right to present the deposition testimony of Waymo's managing agents and 30(b)(6) designees (i.e., Gary Brown, Pierre-Yves Droz, Dmitri Dolgov, Michael Xing, Joanne Chin, David Lawee, Jennifer Haroon, Ben Ingram, Aslan (Shawn) Bananzadeh, Shaun Stewart, Scott Johnston, and Heather Adkins), in addition to or in lieu of their live testimony. Uber also reserves the right to present the deposition testimony of any witnesses listed above to the extent permitted by Federal Rule of Civil Procedure 32.

Uber may present testimony from the following additional witnesses by deposition:

| Witness | Contact Information | Trial Testimony |
|---------|--------------------|-----------------|
| Bares, John | [Contact through counsel of record]<br><br>Uber Technologies, Inc. Advanced Technologies Center<br>100 32nd St, Pittsburgh, PA 15201 | Mr. Bares is the former Operations Director at Uber's Advanced Technologies Group.  Uber may present his deposition testimony regarding design and development of Defendants' LiDAR; Defendants' autonomous vehicle program; Defendants' non-misappropriation of Waymo's trade secrets; Defendants' business model and strategy for autonomous vehicles; Uber's  decision to acquire Ottomotto; steps taken by Defendants to prevent trade secrets from prior employers of Defendants' employees coming to Defendants; and confirmation of the absence of evidence of trade secret misappropriation through and during compliance with the Court's provisional remedy order. |
| Brin, Sergey | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Brin is a co-founder of Google and President of Google's parent company, Alphabet Inc.*  Uber may present his deposition testimony regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; and knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski. |
| Drummond, David | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Drummond is Senior Vice President of Corporate Development at Alphabet Inc., Google's parent company, and previously served on Uber's board of directors while employed by Alphabet Inc.* Uber may present his deposition testimony regarding Waymo's knowledge of Defendants' autonomous vehicle program; knowledge of Waymo's discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space. |

| Witness | Contact Information | Trial Testimony |
|---|---|---|
| Page, Larry | Alphabet Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | *Mr. Page is Google's co-founder and Chief Executive Office of Google's parent company, Alphabet Inc.*<br>Uber may present his deposition testimony regarding development and operation of Waymo's autonomous vehicle program; Anthony Levandowski's departure from Waymo; Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski; Waymo's business plans; knowledge of discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space; and knowledge of the Project Chauffeur bonus program, and his concerns about competition from Uber and Anthony Levandowski. |

Uber reserves the right to designate testimony from any witness identified by Waymo.

The above descriptions are not intended to cover every possible topic or sub-topic on which Uber may offer deposition excerpts and are made without prejudice to Uber offering other testimony.

Dated:  January 19, 2018                    MORRISON & FOERSTER LLP

                                          By:      /s/ Arturo J. González
                                          ARTURO J. GONZÁLEZ

                                          Attorneys for Defendants
                                          UBER TECHNOLOGIES, INC.
                                          and OTTOMOTTO LLC

---

* As explained in Defendants' Response to Waymo's Offer of Proof, Defendants object to Waymo offering evidence regarding the allegations made by Richard Jacobs. Defendants only identify the witnesses and trial testimony marked with an asterisk to the extent the Court disagrees and to the extent the topics fall within the subjects the Court permits at trial.

# APPENDIX E

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      David A. Perlson (Bar No. 209502)
3     davidperlson@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
4     melissabaily@quinnemanuel.com
      John Neukom (Bar No. 275887)
5     johnneukom@quinnemanuel.com
      Jordan Jaffe (Bar No. 254886)
6     jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California 94111-4788
    Telephone:    (415) 875-6600
8   Facsimile:    (415) 875-6700

9   Attorneys for WAYMO LLC

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13  WAYMO LLC,                        CASE NO. 3:17-cv-00939

14              Plaintiff,            **PLAINTIFF WAYMO LLC'S**
                                      **OBJECTIONS TO DEFENDANTS'**
15        vs.                         **SECOND AMENDED RULE 26(a)(3)**
                                      **WITNESS LIST**
16  UBER TECHNOLOGIES, INC.;
    OTTOMOTTO LLC; OTTO TRUCKING
17  LLC,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

Plaintiff Waymo LLC ("Waymo") hereby objects to the following witnesses on Defendants Uber and Ottomotto's ("Uber") witness lists.

**Waymo's Experts Lambertus Hesselink, Gregory Kintz, and Paul French:**  Uber discloses on its witness list two expert witnesses who submitted expert reports on Waymo's behalf and upon whom Waymo intends to rely at trial (Hesselink and French)[1], as well as the expert upon whom Waymo relied during the preliminary injunction phase (Kintz) and upon whom Waymo does not intend to rely at trial.  Uber should not be permitted to call Waymo's experts as witnesses in Uber's case because doing so would be unduly prejudicial to Waymo.

Permitting Uber to call Waymo's experts at trial will substantially prejudice the jury against Waymo.  Forcing Waymo's experts to testify fails Federal Rule of Evidence 403's balancing test.  Allowing a party to call the retained expert of the opposing party should only occur when there is no other expert who can provide the jury with similar evidence.  *See e.g. Agron v. Trustees of Columbia Univ. in City of New York*, 176 F.R.D. 445, 450 (S.D.N.Y. 1997) (distinguishing its decision to require only a limiting instruction restricting the defendant from mentions of the expert's prior retention by the plaintiff on the basis that the expert's testimony was unique).  Where, as here, Uber has its own retained experts that have offered opinions on the same issues as Waymo's experts, the issues on which Uber would offer Waymo's experts to testify about would be duplicative of the issues Uber's experts will testify about.  The fact that a particular expert was originally retained by Waymo is far too prejudicial to risk a limiting instruction.  "It may be possible to keep this explosive fact from the jury at trial, but there seems little reason to require the effort if other expert witnesses are available."*Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 461 (S.D.N.Y. 1995) (citing 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure: Civil § 2032, at 447 (1994)); see also *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28 (1st Cir. 2008)(upholding the district court's decision to not compel defendant's expert to testify because there was an "absence of any showing of a need for [the plaintiff] to call the witness"); *Peterson v. Willie*, 81 F.3d 1033, n.4 (11th Cir. 1996) ("While it may generally be

---

[1]   French is one of Waymo's rebuttal expert witnesses.

possible to permit a party to call a witness without disclosing the fact of his or her prior

engagement by the opposing party, there may be little reason to require this effort if other expert

witnesses are readily available.).  Here, Uber's own expert witnesses are available to testify.  It

would be unduly prejudicial for Uber to call Waymo's experts as witnesses and inform the jury

that they are Waymo's witnesses.  If they have already testified in Waymo's case, then this will

already be clear to the jury.  Since Uber has its own experts opining on these same issues—albeit

taking differing views—there is no substantial need for Uber to rely on Waymo's experts.  Uber

should be precluded from doing so.

**Larry Page:**  Uber should be precluded from calling Alphabet's CEO and Google co-

founder as a trial witness.  Mr. Page was deposed in the case and does not have unique and

personal knowledge of the facts at issue and the evidence Uber seeks to present can be presented

through less intrusive methods.  *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374, 2007

WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (explaining the standard for seeking an apex

deposition).  The subject matter of the testimony Uber intends to present from Mr. Page is

duplicative of testimony that it can present through other, non-apex witnesses.  Much of the

subject matter of his proposed testimony is also irrelevant.

Uber says that Mr. Page will testify regarding development and operation of Waymo's

autonomous vehicle program.  All parties have several engineers on their witness lists that can

cover the same subject matter.  Further, Uber also includes on its list Sebastian Thrun, who led the

Chauffeur effort at Google, to testify on the same subject matter.  Uber also says that Mr. Page

will testify regarding Levandowski's departure from Waymo; again, several other witnesses on the

parties' witness lists are identified to provide testimony about this, including several Uber

employees, John Krafcik, and Chris Urmson.  And finally, Uber says that Mr. Page will testify

regarding "side businesses."  As Waymo previously explained, argument, evidence, or testimony

about "side businesses" should be precluded.  (Dkt. 851.)  It is not relevant and is likely to confuse

the jury.  Whether Levandowski was permitted to start "side businesses" has no bearing on

whether he stole Waymo trade secrets and whether Uber misappropriated Waymo trade secrets.  If

Uber is permitted to introduce argument, evidence, or testimony regarding "side businesses", there

is a risk that the jury will be misled and confused into thinking Levandowski's conduct at issue in this case was approved—it was not. Even if permitted, however, Uber disclosed several other witnesses to testify on this subject matter, including John Krafcik, Sebastian Thrun, Chris Urmson, and Dmitri Dolgov.

Uber further says that Mr. Page will testify on Waymo's business plans, knowledge of discussions with Uber regarding a partnership in the self-driving vehicle/ride-sharing space, knowledge of the Chauffeur Bonus Plan, and concerns about competition from others. Much of this subject matter is covered by Waymo's *Motion in Limine* No. 1, which was granted. And there are many witnesses on both sides' witness lists who can testify about the self-driving/ride-sharing market. There is no need for Uber to burden Mr. Page and Alphabet by having Mr. Page called to testify at trial on subject matter that can be provided by any number of witnesses.

Additionally, for the first time in Uber's November 17, 2017 Amended Witness List, Uber disclosed that it may call Mr. Page by deposition. Uber did not previously disclose him to testify by deposition in its original Witness List.

**Sergey Brin:**  Uber should be precluded from calling Alphabet's President and Google's co-founder as a trial witness. Mr. Brin was also deposed in the case and does not have unique and personal knowledge of the facts at issue and the evidence Uber seeks to present can be presented through less intrusive methods. *Celerity*, No. C 05-4374, 2007 WL 205067, at *3. The subject matter of the testimony Uber intends to present from Mr. Brin is duplicative of testimony that it can present through other, non-apex witnesses. Indeed, Uber says he will testify on topics that are identical to those disclosed for Mr. Page. As discussed above, there are other witnesses who can present this testimony. Further, as discussed above, much of the subject matter of Mr. Brin's proposed testimony is also irrelevant. There is no need for Uber to burden Mr. Brin and Alphabet by having Mr. Brin called to testify at trial on subject matter that can be provided by any number of witnesses.

Additionally, for the first time in Uber's November 17, 2017 Amended Witness List, Uber disclosed that it may call Mr. Brin by deposition. Uber did not previously disclose him to testify by deposition in its original Witness List.

1    **<u>Anthony Levandowski:</u>**  Uber disclosed Anthony Levandowski to testify on several

2    issues.  Uber cannot use Levandowski's assertion of the Fifth Amendment privilege as a shield and

3    then call Levandowski to trial to try to benefit from an adverse inference.  This has been Uber's

4    *modus operandi* throughout the case—hiding behind both Levandowski's Fifth Amendment

5    privilege and alleged common interest privileges except when beneficial to Uber.  The Court

6    recognized an example of Uber's gamesmanship in this regard at the August 16 hearing on

7    Waymo's motion, related to Uber's belated disclosure of Mr. Levandowski's purported destruction

8    of the five discs of downloaded Waymo files in March 2016, calling Uber's conduct a "slick"

9    practice.  (Dkt. 1261 at 44:13-45:3.)  Since that hearing, Uber has continued this improper practice

10   – selectively relying on helpful communications with Mr. Levandowski, while concealing those

11   they decide would hurt their litigation position.

12       As Waymo laid out in its Supplemental Brief on its Motion for Order to Show Cause (Dkt.

13   1502), Uber has coordinated with Levandowski to get help in the case, but relied upon privilege

14   assertions to avoid revealing discovery into the nature or scope of that cooperation.  For example,

15   calendar invitations show that Levandowski participated in meetings with Uber executives and

16   attorneys to discuss litigation strategy well after he plead the Fifth Amendment and purportedly

17   refused to cooperate with Uber's investigation.  Similarly, at Levandowski's August 22

18   deposition, Uber's counsel asked him questions purporting to demonstrate his refusal to cooperate,

19   and he refused to answer.  But, when **Waymo** asked questions about this purported non-

20   cooperation, Uber instructed him not to answer on privilege grounds.  Uber cannot have it both

21   ways, picking and choosing when its communications with  Levandowski are protected by

22   common interest privileges, and when those communications or non-responses about those

23   communications can be used against Waymo.

24       Now, after a long history of picking and choosing which communications are privileged

25   and which are not, Uber wants to call Levandowski as a witness at trial and ask questions, which

26   will presumably not be answered, so that Uber can get an adverse inference.  This is not fair and

27   another classic example of improperly using a privilege assertion as a sword and a shield.  This

28

1    Court should not permit Uber to call Levandowski as a witness and affirmatively rely on adverse

2    inferences taken from his refusal to testify.

3        **David Drummond:**  Uber disclosed David Drummond to testify by deposition only.

4    Waymo reserves the right to call Mr. Drummond in relation to Uber's designated testimony.

5        **John Bares.**  For the first time in its November 17, 2017 Amended Witness List, Uber

6    disclosed Uber consultant John Bares to testify by deposition.  He is also disclosed as a witness

7    who Uber may call if the need arises, as he was previously disclosed.  Mr. Bares is a former Uber

8    engineer and Uber's counsel has represented he is an Uber consultant.    As an Uber consultant,

9    Waymo believes that Mr. Bares is in Uber's control and Uber has not shown that he is

10   "unavailable" under Fed. R. Evid. 804 such that Uber can rely on his deposition testimony.

11   Moreover, Uber has refused to disclose the terms of the consulting agreement with Mr. Bares, and

12   has not denied that if Uber were to direct Mr. Bares to attend trial, that Mr. Bares would be

13   contractually obligated to attend.  Waymo will continue to try to work with Uber to resolve this

14   issue.

15       **John Facciola.**  For the first time in its January 19, 2018 Second Amended Witness List,

16   Uber disclosed Georgetown professor John Facciola as a Will Call witness to testify about "his

17   involvement in and knowledge of Uber's data retention policies and programs" and "knowledge of

18   best practices in data retention."  Uber did not identify Mr. Facciola in any of its interrogatory or

19   Court-Ordered responses.  Uber also did not offer a date for Mr. Facciola's deposition, and to the

20   contrary aggressively sought to limit the number of depositions Waymo could take even for those

21   witnesses that were identified in interrogatory and Court-Ordered responses.  (*See*, *e.g.*, 12/7/2017

22   A. Gonzalez email at 12:32 PM; 12/7/2017 A. Gonzalez email at 2:02 PM; 12/8/2017 A. Gonzalez

23   email; 12/18/2017 A. Gonzalez email.)  Yet based on Uber's description of the expected

24   testimony, Uber has been well aware of this subject matter for the entire duration of the case.

25   Accordingly, Uber should be precluded from relying on any testimony from Mr. Facciola

26   testimony at trial.

27       In addition, Uber appears to be seeking to introduce expert testimony from Mr. Facciola,

28   regarding "best practices in data retention," without having made any of the required disclosures

-5-

1  pursuant to Fed. R. Civ. Proc. 26(a)(2) or Dkt. 669 & 697.  Any testimony from Mr. Facciola

2  regarding "best practices in data retention" should be excluded on these grounds as well.

3       **Patrick Oot.**  As with Mr. Facciola, for the first time in its January 19, 2018 Second

4  Amended Witness List, Uber disclosed Mr. Oot as a Will Call witness to testify about "his

5  involvement in and knowledge of Uber's data retention policies and programs" and "knowledge of

6  best practices in data retention."  Uber did not identify Mr. Oot in any of its interrogatory or

7  Court-Ordered responses.  Uber also did not offer a date for Mr. Oot's deposition, and to the

8  contrary aggressively sought to limit the number of depositions Waymo could take even for those

9  witnesses that were identified in interrogatory and Court-Ordered responses.  (*See*, *e.g.*, 12/7/2017

10  A. Gonzalez email at 12:32 PM; 12/7/2017 A. Gonzalez email at 2:02 PM; 12/8/2017 A. Gonzalez

11  email; 12/18/2017 A. Gonzalez email.)  Yet based on Uber's description of the expected

12  testimony, Uber has been well aware of this subject matter for the entire duration of the case.

13  Accordingly, Uber should be precluded from relying on any testimony from Mr. Oot testimony at

14  trial.

15       In addition, Uber appears to be seeking to introduce expert testimony from Mr. Oot,

16  regarding "best practices in data retention," without having made any of the required disclosures

17  pursuant to Fed. R. Civ. Proc. 26(a)(2) or Dkt. 669 & 697.  Any testimony from Mr. Oot regarding

18  "best practices in data retention" should be excluded on these grounds as well.

19       **"Substance of Testimony" Witness List Disclosures.**  Uber previously objected to

20  several of Waymo's trial witnesses on the ground that the subject matter on which they are

21  disclosed to testify was not adequately identified in Waymo's Corrected Supplemental Initial

22  Disclosures.  (Dkt. 2253.)  To the extent Uber raises that objection, Waymo reserves the right to

23  object to Uber's trial witnesses on the same grounds.

24  DATED:  January 23, 2018              QUINN EMANUEL URQUHART & SULLIVAN,
                                         LLP
25

26                                       By  */s/ Charles K. Verhoeven*

27                                          Charles K. Verhoeven
                                           Attorneys for WAYMO LLC
28