QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                  Plaintiff,<br><br>          vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>                  Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL ITS RESPONSE TO UBER'S AMENDED TRIAL BRIEF** |

Pursuant to Civil L.R. 7-11 and 79-5, Plaintiff Waymo LLC ("Waymo") respectfully requests to file under seal portions its Response to Uber's Amended Trial Brief. ("Waymo's Response"). Specifically, Waymo requests an order granting leave to file under seal the portions of the documents as listed below:

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Waymo's Response | Highlighted in green | Waymo |

## I.  LEGAL STANDARD

Civil Local Rule 79-5 requires that a party seeking sealing "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law" (*i.e.*, is "sealable"). Civil L.R. 79-5(b). The sealing request must also "be narrowly tailored to seek sealing only of sealable material." *Id.* In the context of non-dispositive motions, materials may be sealed so long as the party seeking sealing makes a "particularized showing" under the "good cause" standard of Federal Rule of Civil Procedure 26(c). *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (quoting *Foltz v. State Farm Mutual Auto Insurance Co.*, 331 F.3d 1122, 1135, 1138 (9th Cir. 2003)).

## II.  THE COURT SHOULD SEAL WAYMO'S CONFIDENTIAL INFORMATION

The Court should seal the portions of Waymo's Response as identified by Waymo in the table above. Waymo seeks to file this information under seal because it discloses Waymo's confidential business information, including descriptions of vendors that Waymo utilizes in developing its self-driving car business. *See* Cooper Decl. ¶ 3. Confidential business information that, if released, may "harm a litigant's competitive standing," merits sealing. *See Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598-99 (1978). Waymo seeks to seal confidential business information that fits squarely within this category because it contains Waymo's vendor information, the disclosure of which may provide competitors with an advantage in the market and would harm Waymo. Cooper Decl. ¶ 3. Waymo has narrowly tailored its requests to only information meriting sealing. *Id.* Thus, the Court should grant Waymo's administrative motion to seal.

III.     **<u>CONCLUSION</u>**

In compliance with Civil Local Rule 79-5(d), redacted and unredacted versions of the above listed documents accompany this Administrative Motion.  For the foregoing reasons, Waymo respectfully requests that the Court grant Waymo's administrative motion to file under seal.

DATED:  January 27, 2018                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                            By _/s/ Charles Verhoeven_____
                                               Charles Verhoeven
                                               Attorneys for WAYMO LLC

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (Bar No. 170151)
2    charlesverhoeven@quinnemanuel.com
     David A. Perlson (Bar No. 209502)
3    davidperlson@quinnemanuel.com
     Melissa Baily (Bar No. 237649)
4    melissabaily@quinnemanuel.com
     John Neukom (Bar No. 275887)
5    johnneukom@quinnemanuel.com
     Lindsay Cooper (Bar No. 254886)
6    jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for WAYMO LLC

10                      UNITED STATES DISTRICT COURT

11         NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12  WAYMO LLC,                           CASE NO. 3:17-cv-00939-WHA

13              Plaintiff,
                                         **DECLARATION OF LINDSAY COOPER**
14        vs.                            **IN SUPPORT OF PLAINTIFF WAYMO**
                                         **LLC'S ADMINISTRATIVE MOTION TO**
15  UBER TECHNOLOGIES, INC.;             **FILE UNDER SEAL ITS RESPONSE TO**
    OTTOMOTTO LLC; OTTO TRUCKING         **UBER'S AMENDED TRIAL BRIEF**
16  LLC,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

I, Lindsay Cooper, declare as follows:

1.      I am an attorney licensed to practice in the State of California and am admitted to practice before this Court.  I am an associate at the law firm Quinn Emanuel Urquhart & Sullivan, LLP, counsel for the Plaintiff Waymo LLC ("Waymo").  I have personal knowledge of the matters set forth in this Declaration, and if called as a witness I would testify competently to those matters.

2.      I make this declaration in support of Waymo's Administrative Motion to File Under Seal its Response to Uber's Amended Trial Brief.  ("Waymo's Administrative Motion").  Waymo's Administrative Motion seeks an order sealing the following materials:

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Waymo's Response to Uber's Amended Trial Brief ("Waymo's Response") | Highlighted in green | Waymo |

3.      Portions of Waymo's Response contain, discuss, or refer to Waymo's confidential business information, including descriptions of vendors that Waymo utilizes in developing its self-driving car business.  Specifically, portions of Waymo's Response describe confidential business information that fits squarely within this category because it contains Waymo's vendor information, the disclosure of which may provide competitors with an advantage in the market and would harm Waymo.  Public disclosure of this information to Waymo's competitors would harm Waymo by giving its competitors access to Waymo's confidential business development of its self-driving car systems.  If such information were made public, I understand that Waymo's competitive standing would be significantly harmed.  Waymo's request to seal is narrowly tailored to only the confidential information.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in San Francisco, California, on January 27, 2018.

By  /s/ Lindsay Cooper
Lindsay Cooper
Attorneys for WAYMO LLC

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Lindsay Cooper.

/s/ Charles K. Verhoeven
Charles K. Verhoeven

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>        Defendants. | CASE NO. 3:17-cv-00939-WHA<br>**[PROPOSED] ORDER GRANTING<br>PLAINTIFF WAYMO LLC'S<br>ADMINISTRATIVE MOTION TO FILE<br>UNDER SEAL ITS RESPONSE TO<br>UBER'S AMENDED TRIAL BRIEF** |

1    Plaintiff Waymo LLC ("Waymo") has filed an Administrative Motion to File Under Seal

2   ("Waymo's Administrative Motion") certain information in its Response to Uber's Amended Trial

3   Brief ("Waymo's Response").

4    Having considered Waymo's Administrative Motion, and good cause to seal having been

5   shown, the Court **GRANTS** Waymo's Administrative Motion and **ORDERS** sealed the

6   documents listed below:

| Document | Portions to Be Filed Under Seal |
|---|---|
| Waymo's Response | Highlighted in green |

10   **IT IS SO ORDERED.**

11   Dated: _____, 2018

12   _____
    HON. WILLIAM ALSUP
13   United States District Court Judge

1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
       Charles K. Verhoeven (Bar No. 170151)
2      charlesverhoeven@quinnemanuel.com
       David A. Perlson (Bar No. 209502)
3      davidperlson@quinnemanuel.com
       Melissa Baily (Bar No. 237649)
4      melissabaily@quinnemanuel.com
       John Neukom (Bar No. 275887)
5      johnneukom@quinnemanuel.com
       Jordan Jaffe (Bar No. 254886)
6      jordanjaffe@quinnemanuel.com
     50 California Street, 22nd Floor
7    San Francisco, California 94111-4788
     Telephone:    (415) 875-6600
8    Facsimile:     (415) 875-6700

9    Attorneys for WAYMO LLC

10                       UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                         SAN FRANCISCO DIVISION

13   WAYMO LLC,                          CASE NO. 3:17-cv-00939

14              Plaintiff,               **PLAINTIFF WAYMO LLC'S RESPONSE
                                         TO UBER'S AMENDED TRIAL BRIEF**
15        vs.

16   UBER TECHNOLOGIES, INC.;
     OTTOMOTTO LLC; OTTO TRUCKING        Trial Date:  February 5, 2018
17   LLC,

18              Defendants.
                                         **REDACTED VERSION OF DOCUMENT
19                                       SOUGHT TO BE FILED UNDER SEAL**

20

21

22

23

24

25

26

27

28

1   Plaintiff Waymo LLC ("Waymo") hereby responds to Uber's January 23 filing it refers to

2   as its "Amended Trial Brief." (Dkt. 2517.)  Like Uber's original "Trial Brief" (Dkt. 2253), it is

3   not a "trial brief."  Rather, it raises additional motions *in limine* and other issues as an end run

4   around the Court' s requirement of a *precis* for any further motions.  (Dkt. 1954.)[1]  It should not

5   be considered at all.  Indeed, nearly all the issues Uber raises have been briefed before (including

6   along with Uber's prior "Trial Brief.")  To the extent the Court considers Uber's improper Trial

7   Brief, Waymo files this response to ensure Waymo's position on this is considered.  Further, if the

8   Court will be considering briefing outside of the *precis* procedure, Waymo includes herein issues

9   that Waymo believes the Court should address as well.

10  **Waymo Issues**

11  **1.      Motions That Are Still Pending**

12  Waymo identifies the following motions that are pending and have not been resolved.

13  Waymo requests oral argument on these issues:

14        a.      Waymo's Spoliation Motion (Dkt. 2197-4)

15        b.      Waymo's Motion *in Limine* No. 14 (Dkt. 1552, 2041-4)

16        c.      Waymo's Motion *in Limine* No. 4 (Dkt. 913, 2044-4)

17        d.      Waymo's Motion for an Order to Show Cause (Dkt. 676-4, 886-3, 915, 1095,
              1501-4, 2053-4)

18
19        e.      Waymo's Offer of Proof Regarding Defendants' Discovery Misconduct (Dkt.
              2466-3).  In connection with ordering Waymo to provide its Offer of Proof, the
20            Court indicated that it is considering how to holistically address the "constellation
              of problems" created by Defendants' discovery misconduct.  (Dkt. 2310 [11/29/17
21            Hearing Tr.] at 162:25-163:1.)  Waymo would like the opportunity to address its
              position on this issue so that the Court may consider it in devising the appropriate
22            relief.

23  The Court heard oral argument on Motions *in Limine* Nos. 4 and 14, but has not heard oral

24  argument on them since the parties supplemented their briefing after the production of the Stroz

25  report and related documents.  The Court heard oral argument on Waymo's Motion for an Order to

26  _____

27  [1] In preparation for the new February 5 trial date, Waymo filed three additional precis
    requesting leave to file motions before the Court.  (Dkts. 2472, 2488, 2490.)  The Court denied
    those requests.  (Dkt. 2494.)  In contrast, Uber engaged in self-help and again filed a purported
28  "trial brief" as an end-run around the gate-keeping function of the precis.

1   Show Cause on August 16, but did not issue a ruling.  Waymo supplemented its briefing

2   thereafter, and the Court has not heard oral argument since that supplementation occurred.  The

3   Court has not heard oral argument on Waymo's Spoliation Motion or Offer of Proof Regarding

4   Defendants' Discovery Misconduct.

5   **2.      Referencing Levandowski's Fifth Amendment Assertion in Opening Statements**

6             Waymo reiterates its objection to the Court's "Ground Rules" for the trial testimony of

7   Anthony Levandowski to the extent they prevent Waymo from mentioning Levandowski during

8   its opening statement.  (Dkt. 1535.)  Waymo previously briefed this objection (Dkt. 1811), and the

9   Court deferred ruling on this issue during the September 27 Pre-Trial Conference.  (Dkt. 1863

10  [9/27/17 Hr'g Tr.] at 145:5-150:16.)

11            The Court should not take special steps to minimize Levandowski's role in this case for the

12  benefit of Defendants.  Levandowski is at the center of this complex, multi-faceted case, and his

13  Fifth Amendment assertions are an important part of the overall evidence.  Key facts and issues

14  take on added significance in light of this expected testimony, and Waymo should be permitted to

15  truthfully inform the jury of the full story without artificial and unnecessary constraints.

16            As currently stated, the Court's Ground Rules will severely complicate Waymo's ability to

17  preview the facts and orient the jury to the key issues in the case.  Without information regarding

18  how Levandowski is expected to testify, the jury is almost certain to become confused about

19  Levandowski's role and relationship to the key issues.  Because the Court's order also precludes

20  Waymo from calling Levandowski until near the end of its case-in-chief, the jury may be confused

21  having not heard about what he has or is expected to say.  *Cerro Gordo Charity v. Fireman's*

22  *Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481 (8th Cir. 1987) (holding that party with burden of

23  proof must be permitted to inform the jury of Fifth Amendment assertions by a key witness to

24  avoid having the jury wrongly assume that the witness' testimony would have damaged their

25  case); *see also Pac. Gas & Elec. Co. v. Howard P. Foley Co., Inc.*, Case No. 85-2922-SW, 1993

26  WL 299219, at *10 (N.D. Cal. July 27, 1993).  To avoid this prejudice, Waymo should be allowed

27  to accurately and fully portray Levandowski's role during opening statement.

28            There is no prejudice to Defendants from Waymo informing the jury of Levandowski's

1    expected testimony.  As the Court correctly noted at the September 27 pre-trial conference, "[i]t's

2    99 percent likely to happen" that Levandowski will appear and assert the Fifth Amendment in

3    response to Waymo's questions.  (Dkt. 1863 [9/27/17 Hr'g Tr.] at 148:3.)  Thus, allowing Waymo

4    to rely on this fact in opening statement merely previews what the jury is almost certain to hear

5    anyway.  There is no requirement in the law that Waymo provide corroboration as a prerequisite to

6    merely including a witnesses' expected Fifth Amendment assertion in its opening statement.  And,

7    of course, as is always the case, the jury can be instructed that opening statements are not

8    evidence.  *Alvarado v. Fed. Express Corp.*, Case No. No. C 04-0098 SI, 2008 WL 744819, at *6

9    (N.D. Cal. Mar. 18, 2008); *see also Frazier v. Cupp*, 394 U.S. 731, 736 (1969) ("Certainly not

10   every variance between the advance description and the actual presentation constitutes reversible

11   error, when a proper limiting instruction has been given.")

12          Defendants' objection rings hollow, particularly in light of their proposed *voir dire*

13   questions, which asks prospective jurors whether they have "any opinion, favorable or

14   unfavorable, of individuals who plead or take the Fifth."  (Dkt. 1721.)  As Waymo pointed out at

15   the September 27 hearing, Defendants can hardly complain about Waymo informing the jury of

16   the Fifth Amendment in this case when they themselves seek to raise the issue and use it in an

17   attempt to shape the jury during *voir dire*.  (Dkt. 1863 [9/27/17 Hr'g Tr.] at 148:7-150:7.)  At the

18   September 27 hearing, Defendants did not back away from their proposed *voir dire* strategy.  (*Id.*)

19   And, when Waymo asked Defendants whether they still intended to raise the Fifth Amendment

20   during *voir dire*—both in advance of the November 28 pre-trial conference, and this pre-trial

21   conference—Defendants refused to provide a definitive response.

22          Finally, at the pre-trial conference, Waymo would like to discuss the timing of when the

23   parties will call Levandowski in their respective cases.  Although Waymo would still prefer to call

24   Levandowski at the time it prefers, the Court has overruled Waymo's objection in this regard (Dkt.

25   1863 [9/27/17 Hr'g Tr.] at 142:16-150:17), and Waymo will therefore call Levandowski "very

26   close to the end of its case-in-chief."  (Dkt. 1535.)  With this timing, however, there is no reason

27   to allow Defendants to cross-examine Levandowski beyond the scope of Waymo's direct.

28   Although the Rules of Evidence permit the Court discretion to allow examination beyond the

1    scope of direct, cross ordinarily "should not go beyond the subject matter of the direct examination

2    and matters affecting the witness's credibility."  Fed. R. Evid. 611.  To the extent the Court wishes

3    to minimize the burden on Levandowski from having to appear multiple times, Defendants can

4    simply be required to call Levandowski (corroborating evidence permitting) "very early" in their

5    case, soon after Waymo rests.  This will level the playing field, and ensure that Defendants do not

6    seek to manipulate the Court's Ground Rules for strategic advantage and "hijack" Waymo's case-

7    in-chief with extraneous issues beyond the scope of direct.

8    **3.      Jury Binders With Lists of Trade Secrets**

9          Waymo seeks the Court's permission to give the jury binders that contain a list of the trade

10   secrets by trade secret number and identifies what each one is.  Waymo believes that doing so

11   would facilitate the parties' ability to refer to the trade secrets at issue by trade secret number so

12   that the courtroom can remain open to the public as much as possible.  Before the parties filed the

13   Joint Pretrial Order, Waymo proposed this to Uber and Uber did not agree.  Uber indicated that it

14   is not opposed to the idea of something like this, but did not have time to consider it and was

15   concerned that it would be disruptive if the jury opened up a binder every time a trade secret was

16   referenced in trial.  Waymo disagrees that this would be disruptive.  Jury binders are routinely

17   used in patent cases so that the jurors can refer to the patent during the trial.  It would be no more

18   disruptive to give the jurors a list of the trade secrets than it would be to give them a copy of a

19   patent.  Since the parties filed the Joint Pretrial Order on January 23, they have continued to meet

20   and confer on this issue.  As of the filing of this brief, the parties have not yet reached agreement.

21   Waymo thus requests the Court's permission to provide such jury binders to the jurors.

22   **4.      Preclude Uber's Reliance on New Evidence of Design Arounds.**

23         Waymo requests that the Court preclude Defendants from relying on new evidence of their

24   redesign efforts since the close of fact discovery on August 24.  In the last month of discovery,

25   Defendants disclosed  some "time and cost estimates" for a redesign that they had undertaken to

26   allegedly avoid Trade Secret No. 7.  Defendants also disclosed some "time and cost estimates" for

27   hypothetical redesigns that they had not yet undertaken, but which they alleged could avoid Trade

28   Secret Nos. 2, 9, 13, and 14.  On the last day of discovery, August 24, Defendants supplemented

their interrogatory responses to indicate, for the first time, that they would undertake the redesign efforts for Trade Secret Nos. 2, 9, 13, and 14. At this time, Defendants also produced a handful of CAD drawings which, for Trade Secret Nos. 2, 7, 13, and 14 (but *not* Trade Secret No. 9), depicted the allegedly redesigned components in isolation. But, at no time during discovery did Defendant provide any information regarding the technical implementation, testing, validation, or performance of any of their proposed redesigns.

After discovery ended, Defendants provided no updates regarding their redesign efforts. Rather, Defendants' waited until January 15—just three weeks before the start of the twice-continued trial date—to inform Waymo in an email that (i) the purported redesign with respect to Trade Secret No. 7 was complete and implemented in all Fuji devices; (ii) the purported redesigns with respect to Trade Secret Nos. 2, 13, and 14 were complete and implemented in at least two Fuji devices; and (iii) the purported redesign with respect to Trade Secret No. 9 was complete and that Defendants expected to receive redesigned lenses in February 2018. Defendants further informed Waymo that James Haslim may testify at trial as to this "updated information regarding the Fuji redesigns."

On January 18, in response to Waymo's objections, Defendants offered to make James Haslim available for a January 26 deposition and offered an inspection of the redesigned Fuji prototype. On January 25, Defendants produced 275 new documents evidencing their purported redesign efforts. A large number of these newly produced documents bear dates in September and October 2017, meaning that Defendants could have, and should have, produced them long ago. Given the extremely late disclosure by Defendants, and the demands of preparing for the impending trial, Waymo maintained its objections and declined the deposition of James Haslim.

Defendants should be limited to the redesign evidence and facts disclosed before the August 24 discovery cut-off. Defendants have already caused two trial continuances in this case. The delays associated with those continuances is the only reason why Defendants' purported redesign efforts have even progressed to this point in the first place. Although Defendants' recent production suggests that the redesigns were documented in September and October of last year, Defendants failed to provide any updates regarding this progress, and instead waited to selectively

-5-

1    inform Waymo, without any context, that its efforts were complete just three weeks before trial.

2    Under these circumstances, preclusion is warranted.  *Cf. Medora v. City and Cnty of San*

3    *Francisco*, Case No. C 06-0558-EDL, 2007 WL 2221069, at *1-2 (N.D. Cal. Aug. 2, 2007)

4    (holding that failure to provide information before the discovery cut-off, without substantial

5    justification, warrants preclusion); Fed. R. Civ. P. 37(c)(1).

6    　　　　Defendants' January 25 document production and offer for a January 26 deposition of

7    James Haslim does not cure the prejudice from their belated disclosure.  These eleventh hour

8    gestures only serve to highlight the fact-intensive nature of the newly disclosed issues.  They are

9    also insufficient.  To adequately explore Defendants' post-discovery redesign efforts would

10   require adequate time for Waymo to analyze Defendants' document production, take fact

11   depositions of *at least* James Haslim, subpoena third-party vendors, and likely prepare a

12   supplemental expert report.  There simply is no time for these measures, and Waymo should not

13   be forced to delve yet again into a supplemental discovery period, on a compressed schedule, all

14   while preparing for trial.

15   　　　　Defendants have argued to Waymo that they simply intend to have Mr. Haslim inform the

16   jury of "the fact that [these redesigns are] now implemented in Fuji prototypes."  But, it is not fair

17   to allow Defendants to inform the jury of this "fact" without allowing Waymo full and fair

18   discovery into its implications.  It is entirely possible that these redesigns have posed

19   implementation problems, that they have cost an excessive amount of money, that they have

20   introduced performance issues, or that they have developed in a way that renders them not

21   "redesigns" at all, but rather derivative technology to the asserted Trade Secrets.  Waymo would

22   be entitled to explore these possibilities and provide appropriate context to the jury.  That is now

23   impossible given the timing of Defendants' disclosures.  For all of these reasons, the Court should

24   bar Defendants from offering any evidence or facts regarding their redesign efforts after August

25   24.

26   **Responses to Uber's Amended "Trial Brief"**

27   **5.    Disclosure of Exhibits During Trial**

28   　　　　The Court's Standing Order provides that "all counsel are entitled to written firm notice of

1   the order of witnesses for the next court day and the exhibits (including merely illustrative

2   exhibits) **to be used on direct examination (other than for true impeachment of a witness)**. . . .

3   At a minimum, notice must be given no later than 2:00 p.m. one calendar day *immediately*

4   preceding."  (Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before the

5   Honorable William Alsup, ¶ 11) (emphasis added; italics in original).  Uber agreed that there is no

6   requirement to disclose exhibits to be used in cross-examination, but makes a distinction without a

7   difference in contending that a party must disclose exhibits used in an adverse witness

8   examination in a party's case-in-chief.  Such an examination, however, is no different than a cross-

9   examination.  Fed. R. Evid. 611(c) allows leading questions on cross-examination and "when a

10  party calls a hostile witness, an adverse party, or a witness identified with an adverse party."

11  There is no basis for treating the disclosure of exhibits for an adverse witness differently than

12  disclosure of exhibits to be used in a cross-examination.  Indeed, the Court's Standing Order

13  recognizes the appropriateness of not disclosing exhibits to be used for impeachment—even when

14  used in a direct examination.  Uber argues that they should be treated differently because a party

15  often does not know what exhibits will be used in cross-examination until after the direct

16  examination is complete.  While that may be true, there is an additional motivation of not

17  providing to an adverse witness a roadmap to the cross-examination.

18          Defendants also argue that exhibits to be used with an adverse witness should be disclosed

19  so that the parties and the Court can resolve any disputes about them before the witness takes the

20  stand.  Defendants suggest that this is particularly the case here because so many of the witnesses

21  Waymo will call in its case-in-chief are Uber witnesses.  The same could be said for exhibits to be

22  used on cross-examination.  Yet, the parties agree that cross-examination questions should not be

23  shared.  Moreover, Uber's feigned concerns about disrupting trial should be ignored.  Waymo

24  proposed that the parties meet and confer regarding exhibits in advance of trial and has repeatedly

25  pressed for Uber's counsel to participate, in the hopes that the parties can resolve as many disputes

26  about exhibits in advance of trial as possible.  Defendants' counsel, however, called Waymo's

27

28

1   proposal that the parties meet and confer "a colossal waste of time."[2]  Thus, Uber's arguments

2   regarding disruption to trial are not sincere.

3   **6.      Waymo's Theories of Use and Disclosure by MoFo and Stroz**

4         Uber seeks to preclude Waymo from presenting theories of "use" or "disclosure" of

5   Waymo's trade secrets by Uber agents MoFo or Stroz.  Initially, this is a motion *in limine* and

6   Uber should have filed a precis pursuant to the Court's prior order.  In any event, Waymo does not

7   intend to ask for damages based on MoFo or Stroz's use or disclosure of Waymo's trade secrets.

8   Thus, Uber's procedurally improper motion *in limine* is moot.

9         That said, Waymo does intend to show that Uber wrongfully acquired the trade secrets at

10  least when its agents MoFo and Stroz took possession of them, even if there was no subsequent

11  use or disclosure by MoFo or Stroz themselves.  The wrongful acquisition by Uber, Ottomotto,

12  and/or their agents supports an award of injunctive relief.  Uber does not seek to preclude this

13  theory and makes no showing that doing so would be appropriate.

14  **7.      Waymo's Theory of Disclosure to Vendors**

15        Uber again seeks to preclude Waymo from pursuing a theory of liability based on Uber's

16  disclosure of Waymo trade secrets to vendors.  Uber raised this self-help motion *in limine* at the

17  November 14, 2017 hearing (Dkt. 2222 [11/14/17 Hearing Tr.] at 68:10-22) and before in its prior

18  "trial brief."  This motion *in limine* should have been a precis pursuant to this Court's prior order.

19        In any event, it is incorrect that this theory of misappropriation was not disclosed in this

20  case and that discovery relating to this theory was not pursued.  As the Court is aware, Waymo

21  brought this case because it discovered that Uber disclosed one of Waymo's trade secrets to a

22  vendor; Waymo discovered that because the vendor inadvertently sent an email to Waymo.  Thus,

23  Uber's assertion that Waymo did not disclose this theory in its Initial Disclosures is incorrect.

24

25        [2] Waymo notes that Uber's statement regarding the parties' agreed time for disclosure of
26  exhibits to be used in a direct examination is incorrect.  The exhibit Uber cites in footnote 1 of
    Uber's Amended Trial Brief reflects that Uber agreed to Waymo's proposal that the parties
27  disclose witnesses at 3:30 pm two days before they are called to testify.  Earlier in that email
    chain, on November 10 at 5:39 pm Mr. Gonzalez agreed to disclosure of exhibits at 5 pm the night
28  before they will be used at trial.  (Dkt. 2254-1.)

                                    -8-

1    Waymo disclosed William Grossman in its April 3, 2017 Initial Disclosures and stated that he had

2    knowledge of "matters that concern Waymo's accidental receipt of an email containing an Otto

3    LiDAR PCB." (Ex. 1.) Mr. Grossman also submitted a declaration in support of Waymo's

4    Motion for a Preliminary Injunction, filed on March 10, which identifies the vendor at issue. (Dkt.

5    24-13.)

6         Waymo served several document requests relating to communications with vendors or

7    suppliers, for example, RFP 101 seeking "Documents sufficient to show the identity of

8    DEFENDANTS' LiDAR suppliers, INCLUDING information REGARDING the specific

9    components that each supplier provides to DEFENDANTS, and information REGARDING when

10   DEFENDANTS' relationship with each supplier began;" RFP No. 131 seeking "All

11   COMMUNICATIONS between any DEFENDANT and ███████ REGARDING FAC lenses;"

12   and RFP No. 139 seeking "All COMMUNICATIONS with GORILLA CIRCUITS." Several of

13   Waymo's other document requests more generally seek documents relating to development of

14   Uber's LiDAR systems and thus would also call for documents relevant to this theory. Indeed,

15   Uber produced the documents on which Waymo intends to rely and cited in its Offer of Proof.

16   (Dkt. 2189-3.) As cited in Waymo's Offer of Proof, Waymo examined Uber witnesses in

17   deposition about communications with vendors. (*Id.*) And, Waymo's technical expert Lambertus

18   Hesselink opined in his August 24 expert report: "It is further my opinion that Defendants have

19   necessarily 'disclosed' Waymo's trade secrets through their interactions acquired to vendors,

20   partners, and other entities." (Dkt. 2271-9 [Hesselink 8/24/17 Report], ¶¶ 239, 288, 321, 347,

21   375.)

22        Uber points to three interrogatories that it claims called for disclosure of this theory. They

23   do not. Interrogatory Nos. 13 and 28 ask Waymo to provide the complete basis for its claim of

24   damages (No. 13) and to describe how Uber/Otto's acquisition, use, or disclosure of a trade secret

25   "was a substantial factor in causing Waymo's harm or Uber/Otto's unjust enrichment" (No. 28).

26   Interrogatory No. 8 asks Waymo to "describe all instances in which the trade secret (or any

27   Waymo LiDAR device utilizing the trade secret) was publicly or otherwise disclosed to third

28   parties." Waymo properly understood this interrogatory to be asking about disclosure by *Waymo*

since it asks about disclosure of any Waymo LiDAR device utilizing the trade secret.  Waymo accordingly responded to the interrogatory by saying: "Waymo is not aware of any instances in which the trade secrets identified in Response to Interrogatory No. 1 or any Waymo LiDAR device utilizing the trade secrets was publicly or otherwise disclosed to third parties."  If Uber intended to ask about disclosure by Uber, that is far from clear from the interrogatory.  Waymo should not be precluded from relying on this theory on the basis of a vague and ambiguous interrogatory.

**8.      New Waymo Witnesses**

**Shawn Banazadeh.**  Uber seeks to preclude Waymo from relying on Shawn Banazadeh as a trial witness.[3]  This is a motion *in limine* and should have been preceded by a precis.

On September 16, Waymo disclosed its Trial Witness List which included Waymo's damages expert Michael Wagner.  On November 2, this Court granted Uber's motion to exclude Wagner's testimony.  (Dkt. 2176.)  In the Court's Order, however, the Court made clear that Waymo can still present a damages theory through fact witnesses.  (*Id.* at 9) ("Insofar as the Qi slide and other evidence in this case may turn out to be good barometers of Uber's expectations going into the Ottomotto acquisition, that evidence can stand on its own for the jury's consideration."); *id.* at 10 ("Again, the documents cited by Wagner can independently come into evidence and counsel can make the argument as well as Wagner").)  At the November 14 hearing, Waymo stated "you were very clear in your order that we would still get to put on a damages case based upon documents and witness testimony. And we intend to do that."  (Dkt. 2222 [11/14/17 Hearing Tr.] at 86:15-17.)  The Court did not disagree with that understanding.

On November 15, Waymo served an Amended Trial Witness List.  In addition to narrowing the number of witnesses that Waymo "will call" at trial, Waymo added Shawn Banazedeh as a "will call" witness.  In Waymo's cover email to Uber, Waymo acknowledged that he was not included on Waymo's original Trial Witness List and explained that he was added in light of the Court's order on Uber's Motion to Exclude Wagner.

---

[3] Uber also seeks to preclude Waymo from calling Uber witness Prabir Adarkar.  Waymo does not intend to call Mr. Adarkar and so this issue is moot as to him.

1   Waymo should be permitted to call Mr. Banazadeh in light of the changed circumstance

2   that Waymo must rely exclusively on fact witnesses to present its damages case, and there is no

3   prejudice to Uber.  Nor does Uber claim that there is any prejudice.  Mr. Banazadeh is a Waymo

4   witness who testified as a 30(b)(6) witness during fact discovery.  Uber took a full day deposition

5   of Mr. Banazadeh in both his 30(b)(6) and personal capacity.  On October 23, Waymo disclosed

6   Mr. Banazadeh as a witness Waymo may call if the need arises, and disclosed that he will

7   "provide non-cumulative testimony regarding costs of development of, and management of

8   Waymo's self-driving cars and autonomous vehicle technology.  Waymo further identifies the

9   subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate

10  witness."  (Dkt. 2062-9.)  This is consistent with the subject matter on which he was already

11  deposed.  Although Waymo recognizes that the Court ruled on October 26 that Waymo may rely

12  on Mr. Banazadeh as a rebuttal witness only if Uber relies on his testimony, that ruling was before

13  the Court issued its order regarding Wagner.  Waymo respectfully requests that the Court grant

14  Waymo leave to file its motion for leave to amend its Trial Witness List, as set forth in Waymo's

15  pending precis.  (Dkt. 2305.)[4]

16  **Other Witnesses:**  Uber objects to Kristinn Gudjonsson, Travis Belanger, David Lawee,

17  John Krafcik, Chelsea Bailey, Gerard Dwyer, Don Harrison, and Jennifer Haroon, as trial

18  witnesses on the basis that they were not included in Waymo's Rule 26 Initial Disclosures.  Uber

19  does not provide any basis for excluding these witnesses beyond saying that they were not

20  included in Waymo's Initial Disclosures.  Uber does not articulate any harm or prejudice it will

21  suffer if Waymo is permitted to call these witnesses.  It cannot.  Each of these witnesses was

22  adequately disclosed to Uber during the course of discovery and so the fact that Waymo did not

23  include them in its Initial Disclosures or supplement those Initial Disclosures does not warrant

24  precluding Waymo from relying on their testimony at trial.  *Nuance Commc'ns, Inv. v. ABBYY*

25  *Software House*, No. C08-02912 JSW MEJ, 2012 WL 2838431, at *1 (N.D. Cal. July 10, 2012)

26  (quoting Fed. R. Civ. P. 26(e)(1)(A)) ("Supplementation . .. is not mandatory 'if the additional or

27

28     [4]   Waymo also asked for leave to add an Uber records custodian to Waymo's Trial Witness List.

corrective information has been made known to the other parties during the discovery process or in writing.'").

For example, Waymo CEO John Krafcik was disclosed in Uber's Initial Disclosures on April 3, 2017.  (Dkt. 2271-6.)  Uber identified Mr. Krafcik's as among the "top ten depositions" it wished to take on June 22.  (Dkt. 698.)  And Uber deposed Mr. Krafcik on August 2.  Further, Mr. Krafcik is on Uber's own Trial Witness List.  (Dkt. 2520-4.)  Similarly, Uber deposed Kristinn Gudjonsson twice—on July 28 and September 8—and documents on which his name appears were litigated extensively.  Uber moved to compel his second deposition.  (Dkt. 1414.)  The notion that Uber is somehow surprised by his inclusion as a witness is ridiculous.  He is listed as a "may call" witness on Uber's Trial Witness List (Dkt. 2520-4) and Uber disclosed him on Uber's Rule 26(a) Initial Disclosures on June 21, 2017 (Dkt. 2271-8.)  Uber likewise deposed Jennifer Haroon twice, on July 26 and as a 30(b)(6) witness on August 25.  Uber disclosed Ms. Haroon in its own Rule 26(a) Initial Disclosures on June 21.  (*Id.*)  And, Uber listed her on its own Trial Witness List as a witness who may be called by deposition.  (Dkt. 2520-4.)  The other witnesses about which Uber complains were also all disclosed to Uber during discovery and Uber deposed all but one of them.[5]  Tellingly, although Waymo made all of these arguments in response to Uber's original Trial Brief (Dkt. 2271-4), Uber does not address or refute them in its Amended Trial Brief.  Waymo should not be precluded from relying on their testimony at trial.

Further, Uber argues that Waymo's Second Supplemental Initial Disclosures, served on January 19, 2018, should be stricken because they purportedly violate Rule 26(a)(1) and the Court's June 14, 2017 Order.[6]  This is incorrect.  As noted above, these witnesses were known to Uber during the fact discovery period.  Further, Uber does not explain how they violate Rule 26(a)(1).  And, without first getting leave of Court, Uber served supplemental initial disclosures on August 31—well after the deadline in the Court's June 7 Order.  Uber does not provide any

---

[5]  Uber did not depose Travis Belanger.  He was disclosed during the August 1 deposition of Chelsea Bailey.  (Dkt. 2272-3 [Bailey Depo. Tr.] at 300:4-303:21.)

[6]  The Court's June 14, 2017 Order required the parties to submit a schedule for completing depositions by June 21.  (Dkt. 622.)  Waymo suspects that Uber intended to refer to the Court's June 7 Order, requiring Initial Disclosures to be supplemented by June 21.  (Dkt. 563.)

1   justification for why Uber is allowed to supplement after June 21, but Waymo is not.  Fairness

2   dictates denying Uber's request that Waymo's Second Supplemental Initial Disclosures be

3   stricken.

4   **9.      "Substance of Testimony" Witness List Disclosures**

5          Uber seeks to preclude Waymo from seeking testimony from Uber witnesses that is

6   beyond the scope of the testimony identified in Waymo's June 22 Corrected Supplemental Initial

7   Disclosures.  Uber raised this complaint in its original "Trial Brief."  This is a motion *in limine*

8   and should have been preceded by a precis.

9          Uber's complaints about the subject matter on which Waymo's trial witnesses will testify

10  are unfounded.  Initially, Uber complains that Waymo's disclosures in its Initial Disclosures were

11  too vague.  At no point during discovery, however, did Uber raise this issue so that Waymo could

12  address it.  Further, the witnesses Uber identifies are all Uber employees or former

13  employees.  They were all Uber employees at the outset of this case.  Waymo cannot be expected

14  to know the full scope of every Uber witness' knowledge before taking discovery.  Incredibly,

15  Uber even takes issue with Waymo disclosing that Uber witnesses will testify about "destruction

16  of relevant evidence," even though much of the evidence of such destruction was revealed through

17  the Stroz report and related documents which Uber withheld for virtually the entirety of the case

18  on overruled privilege grounds.  And, Uber takes issue with Waymo's disclosure that Lior Ron

19  will be asked to provide testimony regarding "Uber's ATG use of ephemeral communications and

20  non-attributable devices and its relationship with Uber's Threat Operations division."  But, that is

21  information that Uber withheld from Waymo, and was only discovered after the U.S. Attorney

22  informed the Court of the Jacobs letter on the eve of trial.  Finally, each of the trial witnesses at

23  issue provided deposition testimony on the same topics listed in Waymo's Trial Witness List, so

24  Uber has been on notice that they have such knowledge since at least their depositions in this case.

25         Further, Uber cannot complain about the scope of testimony disclosed in Waymo's Trial

26  Witness List because Uber similarly disclosed witnesses and testimony that were not included in

27  its Initial Disclosures served by the June 21 deadline.  It would be unfair to preclude Waymo from

28  introducing the testimony disclosed in its Trial Witness List, but to allow Uber to rely on

1   witnesses and testimony not disclosed in its Initial Disclosures served by the Court's deadline.

2   This Court previously explained that the Court exercises fairness when it comes to purported

3   violations of Rule 26:

4          Now, here's one thing. If the other side has violated Rule 26A by not giving the
           contact information for the witnesses, which is often what happens, then that may
5          be your free ticket for -- in other words, if they violate the rule, you get to violate
           the rule. So you'd better look closely at that, and make sure that you've complied
6          with the rule, too, on the Uber side.

7   (Dkt. 775 [6/29/17 Hearing Tr.] at 110:7-13.)  Here, fairness dictates rejecting Uber's arguments.

8          Specifically, at least two witnesses on Uber's Trial Witness List (Dkt. 2257-4) were not

9   included on its June 21 Initial Disclosures: Michael Epstein and Stacy Sullivan.  (Dkt. 2271-8.)

10  Similarly, the scope of testimony disclosed in Uber's Trial Witness List is also broader than that

11  disclosed in its June 21 Initial Disclosures.  (*Compare* Dkt. 2520-4 and Dkt. 2271-8.)  A few

12  examples are set forth below, with the expanded testimony reflected in red font:

| Witness | Defendants' Supplemental Initial Disclosures | Defendants' Amended Witness List |
|---|---|---|
| Pierre-Yves Droz | Inventions disclosed and claimed in the '922, '464, and '936 patents, including conception and reduction to practice; the preparation and filing of the '922, '464, and '936 patents; Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets. | Mr. Droz is Principal Hardware *Engineer at Waymo, serving as technical lead on Waymo's LiDAR project since its inception.* He is expected to testify about Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; the design, development, and operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets; whether and to what extent the allegedly misappropriated files contain Waymo's alleged trade secrets; Waymo's awareness of the extent to which each of the alleged Waymo trade secrets selected for trial other than trade secret 25, or elements thereof, are known or practiced outside of Waymo; and Waymo's knowledge of Odin Wave. |

| Witness | Defendants' Supplemental Initial Disclosures | Defendants' Amended Witness List |
|---------|----------------------------------------------|----------------------------------|
| Mary Fulginiti | Stroz due diligence for the Uber/Ottomotto acquisition* | *Ms. Fulginiti was a managing director at Stroz Friedberg.* She will testify regarding Stroz Friedberg's investigation and due diligence for Uber's potential acquisition of Ottomotto and Otto Trucking, LLC, including with respect to the deletion of the 14,000 downloaded files. |
| Gary Brown | Waymo's first awareness of alleged trade secret misappropriation; Waymo's forensic investigation into alleged misappropriation of trade secret misappropriation | *Mr. Brown is a Forensics Security Engineer at Google.* He is expected to testify about Waymo's first awareness of alleged trade secret misappropriation; Waymo's forensic investigation into alleged misappropriation of trade secret misappropriation, including the conclusions drawn from that investigation; and Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository. |

Thus, it would be unfair to preclude Waymo when Uber is guilty of the same conduct.

Uber may argue that its conduct is excused because Uber further supplemented its Initial Disclosures on August 31. Uber, however, did so after the close of fact discovery and without leave of Court. At the June 7 Case Management Conference, in response to Uber's counsel's question as to whether Uber could revise its initial disclosures after the Court's deadline, the Court said:

> No. . . No, no, no. Then you have to throw yourself on the mercies of the court and do supplements for good cause and all that. So you can try. But if there's sandbagging going on, you would not be allowed to do it. . . . [Y]ou have to have a good reason to amend your disclosures after June 12th.

(Dkt. 625 [6/717 Hearing Tr.] at 69:23-70:21.) Uber, however, did not "throw itself to the mercies of the court" or make any attempt to show good cause before supplementing its Initial Disclosures

on August 31.  Rather, it appears that Uber's late supplement without leave of Court was an attempt to sandbag Waymo because Waymo did not supplement its Initial Disclosures after the Court's deadline.  Again, Waymo made these arguments in response to Uber's original Trial Brief (Dkt. 2271-4) and Uber does not refute them.  This dispute is clearly manufactured and the Court should reject Uber's complaints.

**10.    Damages**

Uber has already sought to preclude Waymo from presenting evidence of damages under Rule 26.  The last time the Court rejected Uber's position was during a November 14 hearing.  There, Uber was arguing that the Court should preclude evidence od damages at trial and the following colloquy ensued:

> **THE COURT:** I don't believe that's what the Federal Circuit -- that's not the way you try a case. That's not the way you can possibly try a case. You're saying a judge has got to sort it out in every case -- has got to sort out the damages numbers ahead of time, in every case, and not actually hear the evidence?
> **MR. BULAND:** No, Your Honor.
> **THE COURT:** It's impossible and immoral to do that.
> **MR. BULAND:** I'm sorry to interrupt, Your Honor. That's why Rule 26 says the plaintiffs have to compute damages. That's why interrogatories say you compute it. And we have a chance to see.
> We still don't have a royalty number. We still don't know if it's a running rate, a lump sum. There's no way to calculate it.
> **THE COURT:** Well, that's because you knocked out their expert.
> **MR. BULAND:** Well, they still need to disclose under Rule 26 what it is. They have an offer of prove. There's still no royalty.
> **THE COURT:** I'm not knocking it out upfront. I may knock it out at Rule 50 time, but I'm not knocking it out --
> **MR. BULAND:** Your Honor, may we still object at trial to these specific damages figures that we do think are objectionable under --
> **THE COURT:** Object away. Object away. Maybe one or two of them you will sustain it on a case-by-case basis. But it's impossible to try a case the way you want to try the case. It's -- no. No. No more on this.

(Dkt. 2222 [11/14/17 Hearing Tr.] at 88:8-89:11.)  Waymo's understanding is that the issue is settled and that Waymo will be permitted to introduce testimony and documentary evidence relevant to damages (subject to certain offers of proof  and the Federal Rules of Evidence) and to

1 offer attorney argument based on the admitted evidence.  Having failed to file a precis to request a

2 Court order for yet another round of briefing and argument on the subject, Uber too implicitly

3 acknowledges that it has already come to the end of the road with respect to its repeated requests

4 to preclude the damages question from going to the jury.

5       Uber has made one new argument, however, in its quest to prevent the jury from

6 understanding the damages issues in this case – proposing for the first time a "second phase jury

7 trial," with a second round of live testimony and evidence relevant to a reasonable royalty

8 determination should the jury be unable to reach an unjust enrichment verdict.  This is an

9 unworkable proposal from both a substantive and a practical perspective, especially at this late

10 date.  Much of the evidence relevant to a reasonable royalty is also relevant to liability and/or to

11 unjust enrichment.  For example, Waymo has recently articulated at length (Dkt. 2530-4) why its

12 research and development costs are relevant to its burden to prove that the asserted trade secrets

13 are entitled to protection in addition to the fact of damage and the measurement of damages under

14 an unjust enrichment or a reasonable royalty approach.  It makes no sense – and would be the

15 epitome of inefficiency – to have what would likely be a half dozen or more witnesses called back

16 to the stand for a second or third time in order to provide incremental testimony (along with

17 duplicative and repetitive testimony to remind the jury of needed context) and to introduce  a

18 handful of additional documents somehow deemed "only" relevant to a reasonable royalty but not

19 to liability, the facts of harm and damage, or the calculation of an unjust enrichment measure of

20 damages.  Indeed, neither the parties nor the non-party witnesses (nor presumably the Court) have

21 planned for such an occurrence.

22       What Waymo understands the Court to have previously suggested is a short second round

23 of argument and deliberation on a reasonable royalty if the jury finds liability but cannot calculate

24 unjust enrichment.  Waymo understands the Court's concern to be that the jury instructions on

25 reasonable royalty are lengthy enough to overwhelm the jury instructions on liability and unjust

26 enrichment.  Waymo does not object to this approach, though it requests a modification.  Waymo

27 proposes that the second round of argument and deliberation regarding a reasonable royalty should

28 occur only if there is a liability verdict but regardless of whether or not the jury calculates unjust

1   enrichment damages.  That way, the Court will have all of the information it needs to resolve any

2   post-trial motions, and having the jury decide both damages issues will reduce the possibility that

3   a second damages trial with a second jury will be necessary as a result of the Court's rulings on

4   those post-trial motions.

5

6

7   DATED:  January 27, 2018                    QUINN EMANUEL URQUHART & SULLIVAN,
                                                LLP
8
                                                By   /s/ Charles K. Verhoeven
9                                                    Charles K. Verhoeven
10                                                   Attorneys for WAYMO LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28