MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
MICHAEL BRILLE (*Pro Hac Vice*)
mbrille@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO WAYMO'S OFFER OF PROOF REGARDING ADMISSIBILITY OF CERTAIN MARKET AND FINANCIAL INFORMATION**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: February 5, 2018 |

## I. INTRODUCTION

Waymo's attempt to repeatedly flash billion-dollar figures in front of the jury is completely improper and should be rejected. These huge numbers are a thinly veiled attempt to "skew the damages horizon" for the jury and to etch large numbers into the jurors' minds. These figures are entirely irrelevant to any appropriate measure of damages. This is *not* a lost profits case, as both Waymo and its own now-excluded expert have conceded. And Waymo's astronomical figures are untethered to the actual eight trade secrets at issue here. Noticeably absent from Waymo's offer of proof is any method to apportion these numbers to the value of each trade secret, as it must do. That fact alone compels that the evidence be excluded.

Waymo's arguments in its offer of proof also fail. First, Waymo's and the industry's projected revenues on autonomous vehicles is not relevant to reasonable royalty because they don't speak to the value of the eight trade secrets at issue here. And even if it were relevant to reasonable royalty, the revenue projections should not be admitted during the first phase of the trial that focuses on unjust enrichment. Second, revenue projections should not be admitted to prove motive, which is not even an element of the claim or mentioned in the jury instructions. Third, projected revenues for autonomous vehicles are not relevant to trade secret status because, again, the projections have nothing to do with the value of each trade secret at issue here.

Finally, Waymo relies extensively on an expert report from one of Uber's former experts, E. Allen Jacobs.[1] Waymo's Offer of Proof ("OOP) at 2-3, 6. But this expert is not on Uber's witness list and will not testify at trial. In addition, he is a mergers and acquisitions expert who did not opine on damages or issues relating to damages. Instead, he opined on the structure and terms of the Otto acquisition. Not only will that testimony not be offered at trial, but testimony concerning the structure of the Otto acquisition is completely irrelevant to whether Waymo can submit evidence of its own projected revenues from autonomous vehicles.

---

[1] Waymo mistakenly calls him "Michael Jacobs" throughout its brief.

## II.   ARGUMENT

### A. Waymo Cannot Apportion These Figures

Because Waymo has no method to apportion these projected revenue figures from autonomous vehicles to the eight particular trade secrets at issue here, the evidence should be excluded. It's not even a close call. Whether the entire autonomous vehicle industry will be making billions of dollars from autonomous vehicles in ten years has nothing to do with the value of these eight trade secrets. The trade secrets at issue here are directed to discrete components of LiDAR, which is itself merely one of many components in an autonomous vehicle. *See* Dkt. 1617, Ex. 19 at 9. Take TS 7 for example. Waymo wants to walk the jury through Waymo's own speculative multi-billion dollar future profit projection and suggest that it is somehow relevant to TS 7. But Waymo has no admissible evidence showing that TS 7 contributes even a single dollar to Waymo's autonomous vehicle revenues. In fact, Waymo cannot even apportion its future revenue projections to LiDAR overall, let alone the specific features of LiDAR at issue here.

The Federal Circuit has repeatedly warned about failing to apportion and admitting large numbers that are untethered to the actual trade secrets or patented features at issue in the case:

> In *Garretson*, the Supreme Court affirmed a special master's report that the patentee had submitted no proof of its damages because it failed to apportion to the value of the patented feature. *Id.* at 121–22, 4 S. Ct. 291. ***Likewise today, given the great financial incentive parties have to exploit the inherent imprecision in patent valuation, courts must be proactive to ensure that the testimony presented—using whatever methodology—is sufficiently reliable to support a damages award.*** *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("[E]stimating a reasonable royalty is not an exact science."); *VirnetX*, 767 F.3d at 1328 (explaining that a district court must exercise "its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury"). And as we have repeatedly held, "[t]he essential requirement" for reliability under *Daubert* "is that ***the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product***." *Ericsson*, 773 F.3d at 1226. In short, apportionment.
>
> …
>
> Our cases provide two justifications for this principle [the smallest salable patent-practicing unit principle]. First, ***"[w]here small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product***." *Id.*; *see also Garretson*, 111 U.S. at

121, 4 S. Ct. 291 ("[The patentee] must separate [the patented improvement's] results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated."). Second is the "important evidentiary principle" that *"care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product."* *Ericsson*, 773 F.3d at 1226. As we stated in *Uniloc USA, Inc. v. Microsoft Corp.*, *disclosure of the end product's total revenue "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."* 632 F.3d 1292, 1320 (Fed. Cir. 2011).

*Commonwealth Sci. and Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301-1302 (Fed. Cir. 2015) (emphasis added).

Here, it's undisputed that an autonomous vehicle is a multi-component product. Waymo should have attempted to calculate a reasonable royalty by reference to revenues from the component parts at issue here, such as the printed circuit boards or lenses. Instead, Waymo improperly seeks to use projected revenues from autonomous vehicles, which is "the end product's total revenue" and it "cannot help but skew the damages horizon for the jury, regardless of the contribution of the [trade secrets] to this revenue."[2] *See id.* at 1302 (internal quotation marks omitted).

With no method to apportion these multi-billion dollar figures to the trade secrets at issue here, the evidence should be excluded as not relevant, unfairly prejudicial, and likely to mislead and confuse the jury.

### B. Waymo's Future Revenues Not Relevant to Reasonable Royalty[3]

Evidence of Waymo's future profits should not be admitted to establish a reasonable royalty for several reasons. First, reasonable royalty will not be decided during the first phase of the trial. Damages evidence relevant only to a reasonable royalty should be admitted only if the jury first finds that Uber used or disclosed a valid trade secret *and* unjust enrichment damages are

---

[2] Waymo states in a footnote that it intends to introduce portions of its baseline P&L statement—including launch and scaling plans—through normal procedures. Waymo OOP at 2 n.1. It would be improper to do so. Waymo's launch and scaling plans for autonomous vehicles have nothing to do with unjust enrichment or reasonable royalty. Likewise, it is not relevant to whether the purported trade secrets are valid or misappropriated and admitting them into evidence would cause unfair prejudice, mislead the jury, and confuse the issues.

[3] Waymo's offer of proof does *not* argue that its projected revenues are relevant to unjust enrichment. Nor could it because Waymo's or the entire industry's projected profits are simply not relevant to any unjust enrichment to Uber.

not calculable.[4]  01/03/2018 Penultimate Jury Instructions on Trade Secret Misappropriation, Dkt. 2449 at 9.

Second, Waymo's future revenues from autonomous vehicles are not relevant to a reasonable royalty analysis.  Waymo's offer of proof does not even identify which *Georgia Pacific* factor it believes covers its projected revenues.  Factor 8 is the only factor that expressly addresses the licensor's profitability, but *the parties agree that Factor 8 is not applicable to this case and they agreed to drop it*.  *See* 11/17/2017 Joint Proposed Jury Instructions re Reasonable Royalty, Dkt. 2229 at 8-9.  Factor 8 is not relevant because it is directed to the "established profitability" of the product embodying the trade secret—the parties agree there is no *established* profitability of autonomous vehicles.  *See also* Dkt. 1786-3 (Wagner Dep.) at 119:9-120:10.  Indeed, the agreed instructions on reasonable royalty do not even mention the terms "revenues" or "sales."  Dkt. 2229 at 8-9.

Finally, even if future revenues were theoretically relevant to one of the fifteen factors under *Georgia-Pacific*, in practice the admission of such large numbers incurably threatens to "skew the damages horizon for the jury," *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014) (internal quotation marks omitted), and should therefore be excluded under Rule 403, *Multimedia Patent Trust v. Apple Inc.*, No. 10-CV-2618, 2012 WL 5873711, at *6 (S.D. Cal. Nov. 20, 2012).  The Federal Circuit has expressed serious concern that permitting parties to introduce large dollar figures with little or no relationship to a properly disclosed and valid damages model will "skew the damages horizon for the jury" and, ultimately, the verdict. *Virnetx*, 767 F.3d at 1333; *accord LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). While the Federal Circuit's decisions in *Virnetx*, *LaserDynamics*, and *Uniloc* concerned the misuse of the entire market value rule, the analogy to this case is apt.  In *Uniloc*, for example, the plaintiff argued that its expert permissibly used a tiny royalty rate on the overall sales of the

---

[4] Excluding evidence relevant only to reasonable royalty in the first phase of the trial provides an additional benefit: it maintains a clean record if the jury awards unjust enrichment damages by excluding irrelevant reasonable royalty evidence.

infringing product as a "check" on his separate analysis of a hypothetical negotiation. 632 F.3d at 1311, 1318-21. The Federal Circuit rejected that argument, holding that "disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Id.* at 1320. The same is true here. Waymo's forecasted revenue for a product that has not been commercialized has no legal bearing on the determination of a reasonable royalty for the alleged use of components of that product, and the multi-billion dollar "cat" cannot be "put back in the bag" once Waymo introduces it. *Id.*; *see also Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. C 12-1971, 2014 WL 4090550, at *4-5 (N.D. Cal. Aug. 19, 2014) (permitting introduction of "circumstances of" patent license but "not the actual amount" where it could skew the damages horizon).

### C. Waymo's Future Revenues Are Not Relevant to Motive Or Trade Secret Status

Waymo also claims that potentially large future revenues in the autonomous vehicle industry is evidence of Uber's motive to steal the trade secrets. Not only is that factually wrong, but motive is not an element of the claim and has never been an issue in this case. In fact, the term "motive" does not appear anywhere in the Court's Penultimate Jury Instructions on Trade Secret Misappropriation. *See* Dkt. 2449. To the extent Waymo seeks to elicit testimony about whether Uber believed the TaaS self-driving market was "winner take all" or "winner take most," that can be done without the introduction of speculative, prejudicial, and irrelevant revenue projections. And Waymo's argument should also be rejected because it would set a dangerous precedent—according to Waymo's logic, future projected revenues for an entire industry could be shown to the jury in every trade secret case to show motive. That is not the law.

Waymo *selectively* quotes from a footnote in *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182 n.9 (S.D.N.Y. 2002) to argue that Waymo's own sales projections are relevant to motive. That's not at all what the court held in *LinkCo*. In that case, the court granted the defendant's JMOL on the trade secret claim due to lack of evidence. *Id.* at 185 n.3. But the court later issued a written order after the trial concluded to set forth the reasoning for an earlier oral ruling as to the appropriate measure of damages in a trade secret case, *even though the trade secret claim was*

*dismissed*. *Id.* at 185.  In the order, the court did not address the issue of motive, but instead addressed the issue of whether the plaintiff could rely on the defendant's sales projections as a factor in the reasonable royalty analysis for damages.  The court ruled that it could not because the projections were not available before the alleged theft and therefore the projections are irrelevant, highly prejudicial to the defendant, and would tend to mislead the jury. *Id.* at 191.  In a footnote, the court noted that the defendant's sales projections were admitted for the limited purpose of explaining the defendant's motive to engage in the alleged misconduct.  But that evidentiary ruling was not challenged, the court did not provide any legal analysis for it in the order, and the court did not identify which of the three causes of action motive was even relevant to.  Accordingly, this case does not support Waymo's argument that its own future revenue projections should be admitted to prove Uber's motive.

Likewise, Waymo's future sales projections are not relevant to establish trade secret status. *See* Waymo OOP at 8-9.  Waymo's total projected revenues from autonomous vehicles have nothing to do with whether each of the eight trade secrets derive actual or potential independent economic value from not being generally known.  Waymo's citation to *Altavion* is misplaced.  In that case, the court held that the projected trade secret itself—DST—could be very lucrative in the future:

> All of the above analysis on the independent economic value element is applicable to both Altavion's DST viewed as a protectable combination of elements and to the previously identified specific design concepts underlying Altavion's DST. (See pt. III.B., *ante*.) Regarding the misappropriated design concepts, **because those concepts represented the heart of Altavion's DST concept as a whole, it was reasonable for the trial court to infer that the potential economic value was ascribable to those elements.** Substantial evidence supports the court's finding that Altavion showed its alleged trade secrets had independent economic value.

*Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 65 (2014).[5]  Here, Waymo does not argue (nor could it) that the eight alleged trade secrets represent "the heart" of the entire autonomous vehicle—they don't even represent "the heart" of LiDAR.  As a result, Waymo's

---

[5] Waymo also cites *MAI Sys. Corp. v. Peak Comp. Inc.*, 991 F.2d 511, 520-21 (9th Cir. 1993) without discussing that case.  Waymo OOP at 8.  But that case did not even address the issue of whether future revenues are admissible to establish trade secret status.

total projected revenues from autonomous vehicles should be excluded because they are not relevant, would be unfairly prejudicial, and would cause juror confusion.

## III.   CONCLUSION

The Court should exclude evidence of Waymo's and the industry's projected revenues and profits. Waymo's offer of proof does not identify how they are relevant to any issue to be decided, and Waymo does even attempt to explain how these multi-billion dollar figures could be apportioned to the eight trade secrets at issue here. Even if they had some marginal relevance, admitting them would unfairly prejudice Uber, confuse the issues, and mislead the jury.

Dated: January 28, 2018

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP


By: */s/  William Christopher Carmody*

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

UBER'S RESPONSE TO WAYMO'S OFFER OF PROOF RE MARKET AND FINANCIAL INFORMATION
Case No. 3:17-cv-00939-WHA

7

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file this Response. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that William Christopher Carmody has concurred in this filing.

Dated: January 28, 2018            */s/ Michael A. Jacobs*
                                   Michael A. Jacobs