1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      David A. Perlson (Bar No. 209502)
3     davidperlson@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
4     melissabaily@quinnemanuel.com
      John Neukom (Bar No. 275887)
5     johnneukom@quinnemanuel.com
      Jordan Jaffe (Bar No. 254886)
6     jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California 94111-4788
    Telephone:    (415) 875-6600
8   Facsimile:    (415) 875-6700

9   Attorneys for WAYMO LLC

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                          SAN FRANCISCO DIVISION

13   WAYMO LLC,                              CASE NO. 3:17-cv-00939

14              Plaintiff,                   **PLAINTIFF WAYMO LLC'S
                                             OBJECTIONS AND PROPOSED
15        vs.                                MODIFICATIONS TO THE
                                             PENULTIMATE JURY INSTRUCTIONS
16   UBER TECHNOLOGIES, INC.;                ON TRADE SECRET
     OTTOMOTTO LLC,                          MISAPPROPRIATION AND
17                                           SPECIAL VERDICT FORM**
                Defendants.
18                                           Judge: The Honorable William Alsup

19                                           Trial Date: February 5, 2018

20

21

22

23

24

25

26

27

28

1    Waymo submits the following brief in response to the Court's Penultimate Jury Instructions

2    (Dkt. 2449) (the "PenJIs") and Special Verdict Form (Dkt. 2449-1) (the "SVF").[1]  Waymo renews

3    its request for a general verdict form, *see* Dkt. 1726, provided that the jury is separately asked to

4    determine whether Defendants improperly acquired Waymo's trade secrets.  *See infra* Section I &

5    II.  Waymo also renews its request that the Court give the instructions Waymo proposed in the Joint

6    PJIs (Dkt. 1750) and in Waymo's previous briefs (Dkts. 1729, 2077, 2130, 2171, 2190, 2196, 2229,

7    2230, 2232, 2278, 2351, 2397, 2406, 2411), to the extent not already included in the PenJIs.

8    **I.    THE PENJIS AND SVF SHOULD BE REVISED TO REFLECT THAT IMPROPER ACQUISITION IS NOT REQUIRED TO FIND USE OR DISCLOSURE.**

9
10   The PenJIs and SVF incorrectly require Waymo to prove that "the defendant improperly

11   acquired, **then** used or disclosed the Alleged Trade Secret" in order to succeed on its claims for trade

12   secret misappropriation based on use or disclosure.  *See* PenJI IV.2 (emphasis added).  Neither the

13   plain language of CUTSA and DTSA nor controlling authority require that improper acquisition be

14   proven as a prerequisite to liability or damages for use or disclosure.  *See* Dkts. 2278 at 3-5; 2077

15   at 1-2; 2230 at 1-2.  Under CUTSA, the definition of misappropriation includes use or disclosure

16   without first "improperly acquiring" a trade secret:

17       (b) "Misappropriation" means:
         (1) Acquisition of a trade secret of another by a person who knows or has reason to
18       know that the trade secret was acquired by improper means; or
         (2) Disclosure or use of a trade secret of another without express or implied consent
19       by a person who:
             (A) Used improper means to acquire knowledge of the trade secret; or
20           (B) At the time of disclosure or use, knew or had reason to know that his or
             her knowledge of the trade secret was:
21               (i) Derived from or through a person who had utilized improper
                 means to acquire it;
22               (ii) Acquired under circumstances giving rise to a duty to maintain its
                 secrecy or limit its use; or
23               (iii) Derived from or through a person who owed a duty to the person
24               seeking relief to maintain its secrecy or limit its use; …

25   Cal. Civ. Code § 3426.1(b).  The same is true under DTSA:

26       (5) the term "misappropriation" means--

27   _____

28   [1]   Unless otherwise noted or redefined herein, capitalized terms are as defined in Waymo's previous briefings on jury instruction issues.

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) disclosure or use of a trade secret of another without express or implied consent by a person who--
    (i) used improper means to acquire knowledge of the trade secret;
    (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
        (I) derived from or through a person who had used improper means to acquire the trade secret;
        (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
        (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; …

18 U.S.C. § 1839(5).

It is well-established, for example, that "[a] corporation misappropriates a trade secret when (1) it discloses or uses the trade secret of another without express or implied consent, and (2) at the time of the disclosure or use, it knew or had reason to know that its knowledge of the trade secret was derived from a person who owed a duty to the entity seeking relief to maintain the trade secret's secrecy or limit its use." *Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1117 (N.D. Cal. 1999) (citing Cal. Civ. Code § 3426.1(b)(2)(B)(iii)). It is ***not*** required that the corporation improperly acquire the trade secret or derive knowledge of the trade secret from a person who had improperly acquired the trade secret. Rather, it is misappropriation if a corporation uses the trade secret with reason to know that its knowledge was derived from a person, such as an employee, who owed a duty to the owner of the trade secret to maintain its secrecy. In fact, it is a recurring fact pattern where a subsequent employer commits misappropriation by using or disclosing trade secrets from an employee who first ***properly*** acquired knowledge of the trade secrets at his or her prior employment subject to a duty to maintain their secrecy. By requiring improper acquisition, then use or disclosure, the PenJIs and SVF improperly exclude this critical fact-pattern and would significantly narrow the law to preclude liability for entire categories of trade secret cases.

The PenJIs' and SVF's failure to incorporate this improper-acquisition-free route to liability and damages constitutes reversible error. It requires Waymo to prove additional unnecessary elements and focuses the jury's attention on the wrong issues—namely, whether Levandowski's or

1  other former Waymo employees' acquisition of trade secrets was improper—when in fact that issue

2  is irrelevant if Defendants were aware that Levandowski and other former Waymo employees were

3  under an obligation to maintain the secrecy of Waymo's trade secrets.  The burden on Waymo is

4  particularly acute given that it has limited trial time, the parties have not stipulated that Levandowski

5  acquired knowledge of the trade secrets improperly (or at all), and Levandowski has limited the

6  scope of discovery into his acquisition of the trade secrets by asserting his rights under the Fifth

7  Amendment.  *See* PenJI XXVI.

8      After erroneously requiring that "the defendant improperly acquired, then used or disclosed

9  the Alleged Trade Secret" in the second element of PenJI IV, the PenJIs compound this error by

10  incorrectly defining the second element of proof in PenJI XIII to exclude all of the improper-

11  acquisition-free routes to liability and damages:

> Turning to the second element of proof for a misappropriation claim for damages,
> Waymo must also prove that the Alleged Trade Secret was used or disclosed by a
> defendant without Waymo's consent and that said defendant either acquired
> knowledge of the trade secret by improper means or at the time of use, knew or had
> reason to know that its knowledge of the trade secret came through persons who had
> acquired it by improper means.

16  Specifically, PenJI XIII excludes the alternate routes to misappropriation liability provided in Cal.

17  Civ. Code § 3426.1(b)(2)(B)(ii) and (iii) and 18 U.S.C. § 1839(5)(B)(2)(ii) and (iii) as replicated

18  and highlighted above, which provide for liability when the defendants knew or had reason to know

19  that their knowledge of the trade secret was "[a]cquired under circumstances giving rise to a duty to

20  maintain its secrecy or limit its use" or "[d]erived from or through a person who owed a duty to the

21  person seeking relief to maintain its secrecy or use."  PenJI IX, describing independent development

22  as opposed to misappropriation, similarly fails to include a description of these improper-

23  acquisition-free paths to liability and damages.

24      To remedy these defects, the Court should revise PenJIs IV, IX, and XIII to reflect that

25  improper acquisition is a separate basis for misappropriation and is not a prerequisite to

26  misappropriation by use or disclosure.  In addition, the Court should revise SVF 1 and 5 to reflect

27  that the jury need not find improper acquisition before awarding unjust enrichment damages for use

28  or disclosure.  These edits are marked in **red** in the attached Exhibit A, and are also reflected in

1   Exhibits B and C.[2]

2   **II.**    <u>**THE PENJIS SHOULD BE REVISED TO REFLECT THAT IMPROPER**</u>
<u>**ACQUISITION IS AN INDEPENDENT BASIS FOR AN INJUNCTION.**</u>

3

4         Waymo is seeking an injunction from the Court in addition to damages from the jury.  Such

an injunction may be based on the Court's finding of "actual or threatened misappropriation":

5

6        <mark>Actual or threatened misappropriation may be enjoined</mark>. Upon application to the
court, an injunction shall be terminated when the trade secret has ceased to exist,
but the injunction may be continued for an additional period of time in order to eliminate
commercial advantage that otherwise would be derived from the misappropriation.

7

8   Cal. Civ. Code § 3426.2(a); *see also* 18 U.S.C. § 1836(b)(3) (similar).  Per CUTSA's and DTSA's

9   plain language, a jury need only find that Defendants misappropriated Waymo's trade secrets—not

10  that Waymo was ***damaged*** by that misappropriation—to find misappropriation sufficient to support

11  an injunction.  Thus, even though the Court has precluded any "***recovery*** theory . . . ***for damages***

12  based solely on misappropriation by acquisition," Dkt. 2495 at 1 (emphasis added), Waymo will

13  still be entitled to injunctive relief based on a jury finding of misappropriation by improper

14  acquisition.  *See also* Dkt. 2077 at 1-2 (demonstrating that improper acquisition alone is an

15  independent basis for misappropriation liability).

16        Because the Court may impose an injunction based solely on a jury finding of improper

17  acquisition, the jury must be asked to decide whether each Defendant improperly acquired each

18  trade secret and must not be told that it can choose not to answer questions regarding improper

19  acquisition if it does not find use or disclosure.  *See* SVF 1 and 5 ("If you answer 'No' as to any

20  column, then you need not consider and need not answer as to the other columns for that particular

21  Alleged Trade Secret, although you may do so if you wish.").  Moreover, because improper

22  acquisition is not a predicate to liability for use or disclosure, the instruction in SVF 1 and 5 that

23  the jury need not answer as to enforceability, or use or disclosure, if they find no improper acquisition

24  is incorrect and must be revised.  Accordingly, Waymo proposes separate jury questions on

25  improper acquisition.  These edits are marked in **<span style="color:red">red</span>** in Exhibit A.  *See also* Exhibits B & C.

26

---

27       [2]  Exhibit A contains Waymo's proposed edits to the PenJIs with each edit marked in a color
corresponding to the issue raised in this Response.  Exhibits B (clean) and C (redline vs. Dkt. 2449-
28  1) reflect Waymo's cumulative proposed edits to the SVF.

**III.    THE PENJS SHOULD BE REVISED TO ADDRESS LIABILITY FIRST AND DAMAGES SECOND, INSTEAD OF CONFLATING THE TWO.**

The PenJIs currently conflate liability and damages on Waymo's claim for trade secret misappropriation.  PenJI III confusingly launches into a detailed discussion of Waymo's theories of damages—including an unnecessary and distracting description of theories that have been precluded and will not be asserted—before any discussion of liability.   PenJI IV then prejudicially characterizes Waymo's claim as a "claim for unjust enrichment based on alleged misappropriation," not a trade secret misappropriation claim, and requires that Waymo prove the elements for damages in order to prove its claim.  As Waymo is seeking injunctive relief as well as damages, Waymo should be given the opportunity to prove trade secret misappropriation separately from any consideration of damages.  To compound this confusion, the PenJIs inconsistently refer to Waymo's claim as a "misappropriation claim," PenJIs V & XVII, and "a misappropriation claim for damages," PenJI XIII.  The Court should separate the elements of liability and damages with the least disruption to the existing scheme by:  (i) moving PenJI III as revised to before PenJI XVII; (ii) revising PenJI IV to address only the elements of trade secret misappropriation; (iii) adding a version of PenJI IV before PenJI XVII to address the elements of unjust enrichment damages alone; (iv) removing confusing references to theories not being pursued, including by deleting PenJI XVIII; and (v) making these and other edits in <span style="color:orange">orange</span> in Exhibit A to implement these changes.[3]

**IV.    PENJI XVI SHOULD BE REVISED TO GIVE "USE" ITS PROPER SCOPE.**

The definition of "use" in PenJI XVI should be expanded to reflect controlling law by capturing any type of actual use that "reduces the value of the trade secret to the trade secret owner." *Agency Solutions.Com, LLC v. TriZetto Grp.*, 819 F. Supp. 2d 1001, 1028 (E.D. Cal. 2011).  Specifically, the jury should be instructed that "actual use" includes not just studying or copying, but other means of exploiting Waymo's trade secrets, such as accelerating Defendants' product development timeline, using Waymo's trade secrets to modify or improve Defendants' designs, and

---

[3]    PenJI III already indicates that Waymo's recovery of damages depends on proving use or disclosure and that acquisition alone is insufficient.  Repeating this in PenJI XVIII is unnecessary, especially if PenJI III is moved to a similar position near the instructions on damages.

experimenting with Waymo's trade secrets without producing a marketable product.  As detailed

below, the Court should therefore make the edits in **blue** to PenJI XVI in Exhibit A.

      ***Acceleration of Product Development.***  PenJI XVI should be modified to reflect that "use"

of a trade secret includes using the trade secret to learn how to accelerate a misappropriator's

development timeline.  This flexible view of use finds broad support in case law.  For example, the

court in *Agency Solutions* cited the Ninth Circuit (which in turn cited the Restatement of Unfair

Competition) in applying a broad definition of "use" to CUTSA:

> There are no technical limitations on the nature of the conduct that constitutes "use" of a trade secret for purposes of the rules stated in Subsection (b) [of Idaho's version of the UTSA]. As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use" under this Section. Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development or soliciting customers through the use of information that is a trade secret all constitute "use."
>
> Restatement (Third of Unfair Competition § 40, cmt. c (1995) (citation omitted)). The term "use" in the in the context of misappropriation of a trade secret generally contemplates some type of use that reduces the value of the trade secret to the trade secret owner.

*Agency Solutions.Com*, 819 F. Supp. 2d at 1028 (quoting *JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th

Cir. 2010)).  Here, where the parties have yet to commercialize their products, Defendants may have

benefitted from Waymo's trade secrets not just by incorporating Waymo's designs into their own

designs, but by learning from Waymo's mistakes and false starts in the development process, using

Waymo's early prototypes as a starting point for their own designs, and building off of Waymo's

innovations in creating their own prototypes.  The definition of "actual use" should include these

elements, particularly given the Court's instruction on negative trade secrets in PenJI VIII.

      ***Modifications or Improvements to a Design.***  PenJI XVI should also reflect that actual use

of a trade secret can involve more than producing and selling an identical product.  Actual use occurs

where a defendant modifies a competitor's prototype before releasing its own version:

> Lastly, as mentioned above, Histogen argues it has not misappropriated the Bioreactor Method or Concentration System trade secrets because it does not use several of the claimed elements. (MSJ 15–19, 20.) However, this argument misunderstands the law on this point. In the context of trade secret misappropriation, information may be improperly "used" in that it is unlawfully acquired and then built upon or modified

1
2
3
4
5
6
7

before being disclosed or benefit derived. *See, e.g., Speech Tech. Assocs. v. Adaptive Commc'n Sys.*, 1994 WL 449032 at *10 (N.D.Cal. Aug. 16, 1994) (finding misappropriation where some of the technology used in the offending new products was different from that claimed in the trade secret, but most of the functional aspects of the trade secret technology were incorporated) (citing *American Can Co. v. Mansukhani*, 742 F.2d 314, 328–29 (7th Cir.1984) ("[A] party may not use another's trade secret even with independent improvements or modifications so long as the product or process is substantially derived from the trade secret.")). Accordingly, this scattershot attempt to disclaim use of various elements of the claimed trade secrets does not foreclose the possibility that Histogen's process was not substantially derived from the claimed trade secrets, even if it differed in specifics from the process described therein.

8
9
10

*SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).   Here, this clarification is important because Waymo's stolen trade secrets were embodied in research and development prototypes.

11
12
13

Similarly, the jury should be instructed that Defendants can be held liable for incorporating less than all of the elements of Waymo's trade secrets into their own designs.  A defendant cannot dodge liability by selectively exploiting only a portion of its competitors' trade secrets:

14
15
16
17
18
19
20
21
22
23
24

This is an overly narrow view of the meaning of "use" under the CUTSA. *See SkinMedica*, 869 F. Supp. 2d at 1197 ("[T]his scattershot attempt to disclaim use of various elements of the claimed trade secrets does not foreclose the possibility that [defendant's] process was not substantially derived from the claimed trade secrets, even if it differed in specifics from the process described therein."). "Employing the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute use." *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000). Moreover, "information may be improperly 'used' in that it is unlawfully acquired and then built upon or modified before being disclosed or benefit derived." *SkinMedica*, 869 F. Supp. 2d at 1197 (citing Speech Tech., 1994 WL 449032, at *10 (finding misappropriation by use even though technology used in the offending new products was different from that claimed in the trade secret, but many of the technical and functional aspects were incorporated)); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, Inc., 399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005) ("[I]nternal experimentation with trade secret information not resulting in a market product can constitute use."). Under this broad definition of "use," the Bank cannot avoid liability for misappropriation by allegedly taking a bundle of trade secrets and not using the entire bundle, but then selectively choosing which ones it would use.

25

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2015 WL 13357646, at *5 (C.D. Cal. May 6, 2015).

26
27
28

***Internal Experimentation Not Resulting in a Market Product.***  PenJI XVI should be amended to instruct the jury that a company's internal experimentation or examination of a competitor's trade secret constitutes use, even where that experimentation does not result in a

-7-

marketable product:

> Before discussing the evidence presented at trial, the parties dispute the definition of "use." The parties agree that use does not mean mere possession of a trade secret or mere internal discussion within the company of a trade secret; the parties disagree over whether internal experimentation can constitute use. Based on the California and federal cases presented by the parties, the Court concludes that internal experimentation with trade secret information not resulting in a market product can constitute use. In *AT & T Communications v. Pacific Bell,* 1998 U.S. Dist. LEXIS 13459, at *8 (N.D.Cal.1998), the court rejected the defendant's argument that, for misappropriation and use to occur under the California UTSA, the trade secret information must be sold to the plaintiff's competitors or used to compete directly. As recently stated in *PMC, Inc. v. Kadisha,* 78 Cal.App.4th 1368, 1383, 93 Cal.Rptr.2d 663 (2000), "Employing the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute use."

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005), *amended sub nom. O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070 (N.D. Cal. 2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007), and *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007).

The current version of PenJI XVI does not adequately instruct the jury about how "use" can occur even where Defendants have not yet developed a final product to compete with Waymo's designs. This instruction is important where, as here, neither party has reached the critical first-to-market milestone. Trade secret misappropriation still occurs where a defendant's use of a trade secret falls short of commercialization or sale of a product embodying the trade secret. Trade secret law punishes misappropriation even where the competitor never succeeded in commercializing the information. *See, e.g., O2 Micro*, 399 F. Supp. 2d at 1072; *SkinMedica*, 869 F. Supp. 2d at 1197.

## V.   PENJI X SHOULD BE AMENDED TO CLARIFY THAT COMBINATIONS OF PUBLIC INFORMATION, IN CERTAIN CIRCUMSTANCES, CAN BE A TRADE SECRET.

PenJI X, in describing the level of secrecy required to prove that something is a trade secret, may mislead or confuse the jury into believing that every aspect of a trade secret must itself be secret for a trade secret to qualify as a trade secret. That is not the law. Indeed, in *United States v. Nosal*, the Ninth Circuit explained that trade secrets may be comprised of compilations of public information:

> The thrust of Nosal's argument is that the source lists are composed largely, if not entirely, of public information and therefore couldn't possibly be trade secrets. But he

overlooks the principle that a trade secret may consist of a compilation of data, public sources or a combination of proprietary and public sources. It is well recognized that

"it is the secrecy of the claimed trade secret as a whole that is determinative. The fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements.... [T]he theoretical possibility of reconstructing the secret from published materials containing scattered references to portions of the information or of extracting it from public materials unlikely to come to the attention of the appropriator will not preclude relief against the wrongful conduct...."

*Restatement (Third) of Unfair Competition* § 39 cmt. f (1995); *see also Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1074 (7th Cir. 1992) ("A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process design and operation of which in unique combination affords a competitive advantage and is a protectable trade secret" (internal citation omitted)); *Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38, 738 P.2d 665, 675 (1987) (holding that "trade secrets frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets"). Expressed differently, a compilation that affords a competitive advantage and is not readily ascertainable falls within the definition of a trade secret.

844 F.3d 1024, 1042 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 314 (2017); *see also 02 Micro*, 399 F. Supp. 2d at 1074–75 ("Combinations of public information from a variety of different sources when combined in a novel way can be a trade secret. It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known.").  Here, it is important that the jurors are not misled or confused by a reductionist argument, picking apart individual elements of Waymo's trade secrets and attempting to identify public corollaries, when the trade secret as a whole is secret and has great value to Waymo from being secret.  Accordingly, PenJI X should be edited as shown in **bright pink** in Exhibit A.

## VI.   PENJI XX SHOULD BE AMENDED TO REFLECT THAT EXPENSES HAVE ALREADY BEEN DEDUCTED FROM THE PARTIES' DAMAGES ESTIMATES.

PenJI XX instructs the jury to first calculate the dollar amount of any unjust enrichment and then deduct Defendants' reasonable expenses, including research and development costs, from that total.  This instruction may result in double-deducting the "reasonable expenses" portion of the damages calculation because Waymo's damages model already deducts reasonable expenses from the total damages estimate.  Waymo will rely at trial on an accelerated development theory of unjust

-9-

1   enrichment, based on Uber's own estimate that its acquisition of "NewCo" (that is, Ottomotto) could

2   shorten Uber's development timeline by one or two years while reducing the risk associated with

3   its then-existing laser approach.  *See* Trial Ex. 299 at 4.  Uber's own internal estimate of the value

4   of acquiring Ottomotto was calculated based on the incremental benefit of using Ottomotto's

5   intellectual property ***after*** deducting acquisition costs and other reasonable expenses.   In other

6   words, Uber's own reasonable expenses have ***already*** been factored into any net benefit.  Instructing

7   the jury to subtract reasonable expenses from a figure that already takes such expenses into account

8   would introduce confusion and could result in prejudicial double-deducting, thereby unfairly

9   reducing Waymo's recovery.

10          To remedy this potential for double-counting, the Court should delete the sentence beginning

11  "Then subtract from that amount . . . " from the second paragraph of PenJI XX, as indicated in **blue**

12  in Exhibit A.  In the alternative, at a minimum, the Court should modify that sentence as follows:

13  "Then subtract from that amount that defendant's reasonable expenses, ***including any independent***

14  ***research and development expenses, unless such expenses have already been subtracted.***"

15  **VII.    PENJI XXVI SHOULD BE AMENDED TO CLARIFY THAT THE JURY MAY**
           **DRAW AN ADVERSE FIFTH AMENDMENT INFERENCE AGAINST**
16         **DEFENDANTS, BUT NOT WAYMO.**

17          The existing jury instruction on the Fifth Amendment, PenJI XXVI, presents two problems.

18  First, it allows the jury to draw an adverse inference against ***Waymo***, even though Uber's only

19  corroborating evidence for such an inference has been excluded.  Second, it does not explicitly tell

20  the jury that it may draw an adverse inference against Defendants, even though case law supports

21  such an inference.  The Court should revise this instruction as indicated in **purple** in Exhibit A.

22          **A.     Defendants Lack A Viable Theory For an Adverse Inference Against Waymo.**

23          PenJI XXVI improperly permits the jury to draw an adverse inference against ***any*** party in

24  the case, ***including Waymo***, from Levandowski's invocation of the Fifth Amendment:

25          . . . That, however, would not necessarily be the same as being adverse to the
            position of Uber or Ottomotto ***or Waymo.***  Before finding that the answer would
26          have also been adverse ***to another party in the case***, you should consider all of the
            other evidence and circumstances. You are not required to find that any answer by
27          him would have been adverse to him ***or to any party herein***.

28  PenJI XXVI (emphasis added).   This instruction contradicts the Court's previous ruling that

-10-

1   Defendants may not present any evidence that could corroborate such an inference against Waymo.

2       In June 2017, the Court requested briefing on what adverse inferences, if any, could be drawn

3   from Levandowski's anticipated invocation of the Fifth Amendment.   Dkt. 784.   In response,

4   Defendants argued that no adverse inference should be drawn against them, claiming that, among

5   other things, (i) "there must be independent corroborating evidence of <u>every</u> fact on which an

6   inference is sought," Dkt. 821 at 3 (emphasis in original); *see also id.* at 10 (similar) (citing *Doe ex*

7   *rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000)) and (ii) the evidence would

8   show that Levandowski "is taking the Fifth because of the potential exposure associated with . . .

9   ensuring full payment of a $120 million bonus from [Waymo]," *id.* at 1.   Defendants stopped short

10   of actually requesting any adverse inference against Waymo, and have never articulated any other

11   theory by which Levandowski's invocation could result in an adverse inference against Waymo.

12   Subsequently, this Court ruled that "corroborating evidence" is required before any adverse

13   inference is allowed, *see* 11/14/17 Hr'g Tr. 107:15-16 (The Court: "There's got to be corroborating

14   evidence to support each question.").   And after Waymo's MIL 1 Re: Bonus Theory pointed out

15   that Defendant's bonus theory was based on Uber's selective waiver of part, but not all, of a

16   privileged conversation, Dkt. 1566, the Court also excluded evidence regarding Defendants' "bonus

17   theory" on the grounds that the probative value of such evidence—even if believed—was

18   substantially outweighed by the risks of confusion, misleading the jury, and wasting time.   Dkt.

19   1885 at 2.   Although Uber suggested during the September Pretrial Conference that it could

20   corroborate the "bonus theory" with other evidence (9/27/2017 Hr'g Trans. 71:16-72:24), it has

21   never presented such evidence, nor shown why the evidence it purports to have is admissible under

22   FRE 403.   *See, e.g., id.* at 85:18-20 (THE COURT: "what [Defendants] have on this alternative

23   theory is exceedingly weak.   It's – I'm not even sure a rational jury could draw [the inference

24   regarding the bonus theory]"); 86:11-12 (THE COURT: "we don't have a single piece of evidence

25   that says he did it for [the reason proposed in the bonus theory] . . . [a]nd then you want to draw a

26   far-fetched, fantastic inference from that, that that's where the probative value comes in.").

27       As corroborating evidence is required for an adverse inference and Defendants cannot

28   provide any substantial corroborating evidence for why Levandowski's invocation of the Fifth

1  Amendment should result in an adverse inference against Waymo, the jury instructions should not

2  permit such an inference.   This is particularly necessary given the significant prejudice Waymo

3  would suffer from any jury confusion in this area.

4        **B.**    **PenJI XXVI Should Explicitly Instruct The Jury That It May Draw Adverse Inferences Against Defendants.**

5        PenJI XXVI instructs the jury that it can assume Levandowski's answers would have been

6  adverse to his position, but stops short of authorizing the jury to draw an adverse inference against

7  Defendants, should it find such an inference justified.   The following is the closest PenJI XXVI

8  comes to such a statement:  "Before finding that the answer would have also been adverse to another

9  party in the case, you should consider all of the other evidence and circumstances."   This cryptic

10  statement assumes—rather than clearly states—that an adverse inference is available, and runs

11  significant risk that the jury will be confused as to whether it is permitted to draw such an inference.

12  This confusion will be highly prejudicial to Waymo given Levandowski's central role in this case.

13  Cases from multiple circuits have held that an adverse inference against a former employee is

14  appropriate where, as here, the person invoking the Fifth Amendment is a key witness who shared

15  a close relationship with the defendant and retains a similar interest in the outcome of the litigation.

16  *See* Dkt. 818-4 at 4–9 (collecting case law on adverse inferences against former employers).   In fact,

17  courts have concluded that ***not*** allowing the jury to draw an adverse inference against a former

18  employer is prejudicial to the party with the burden of proof, here Waymo, because it forces that

19  party to resort to less direct and more circumstantial forms of evidence.   *See Cerro Gordo Charity*

20  *v. Fireman's Fund*, 819 F.2d 1471, 1482 (8th Cir. 1987); *Pac. Gas & Elec. Co. v. Howard P. Foley*

21  *Co.*, 1993 WL 299219, at *10 (N.D. Cal. July 27, 1993).   And indeed, Levandowski was a ***current***

22  Uber employee, not a ***former*** one when he initially pled the Fifth during his April 2017 deposition,

23  and during the period when the relevant Uber LiDAR development took place.   This, combined with

24  the fact that Levandowski is a central figure in this case, weighs heavily in favor of instructing the

25  jury that it may hold Levandowski's invocation of the Fifth Amendment against his now-former

26  employers.   *See Coquina Investments v. TD Bank*, 760 F.3d 1300, 1311 (11th Cir. 2014) (stating

27  that a witness's role as a "key figure" in a lawsuit supported an adverse inference instruction).

28

**VIII.  PENJI XXVII SHOULD STATE THAT ANY RECOVERY AGAINST LEVANDOWSKI IN A SEPARATE PROCEEDING WILL NOT OFFSET DAMAGES AGAINST DEFENDANTS IN THIS PROCEEDING.**

PenJI XXVII properly instructs the jury to consider Defendants' liability without considering whether Levandowski would be liable for the same conduct had he been joined in this case, per the Court's ruling on Waymo's Motion in Limine No. 15.  Dkt. 857 (granting Dkt. 1543); *see also* 9/27/2017 Hr'g Tr. at 66:15-66:12 (instructing the parties that the "empty chair" defense is prohibited).  But to avoid jury confusion, the Court should make the edits to PenJI XXVII marked in teal in Exhibit A, which clarify that the jury should assess damages against Defendants without considering what recovery, if any, Waymo may receive from Levandowski in the separate proceeding, which is irrelevant to the jury's inquiry.

**IX.  THE COURT SHOULD DIRECT THE JURY TO ASSESS REASONABLE ROYALTY DAMAGES IF THE JURY FINDS LIABILITY, REGARDLESS OF ANY ASSESSMENT OF UNJUST ENRICHMENT DAMAGES.**

As previously addressed, Waymo has a Seventh Amendment right to a jury trial on its CUTSA and DTSA claims in federal court, including its claim for reasonable royalties.  Dkt. 2397 at 6-8 (citing *De Lage Landen v. Third Pillar*, 2011 WL 1627899, at *3 (E.D. Pa. Apr. 28, 2011)).  In addition, under DTSA (unlike CUTSA), a reasonable royalty is an equally available alternative to unjust enrichment damages, and Waymo is entitled to elect its remedies.   18 U.S.C. § 1836(b)(3)(B)(ii) (a plaintiff is entitled to, "in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty"); *see also* Dkt. 2077 at 4-7 (addressing treatment of royalty damages under DTSA).  Thus, the jury must be instructed on *both* unjust enrichment and reasonable royalty.

At present, PenJI XX and SVF 2 and 6 indicate that a second proceeding will only be held if the jury finds liability, unjust enrichment, and "Zero" damages.  This is incorrect for two reasons: *first*, this improperly requires an additional finding of "unjust enrichment," instead of merely liability, before making reasonable royalties available under DTSA; *second*, this improperly indicates that reasonable royalties are available only if no unjust enrichment damages are found, when in fact, the jury should determine reasonable royalties *regardless* of whether unjust enrichment damages are found as an alternative measure of relief under DTSA.  The Court should correct this

1   by removing reference to the second proceeding regarding reasonable royalties from SVF 2 and 6

2   to avoid confusion and editing PenJI XX to reflect that reasonable royalties (and exemplary damages

3   as limited by the amount of reasonable royalties) are available in **all** circumstances when the jury

4   finds a Defendant liable, regardless of the amount of unjust enrichment damages.  *See 02 Micro,*

5   399 F. Supp. 2d at 1077-79.  These edits are shown in Exhibit A in *green italics*.  *See* Exs. B & C.

6          A second proceeding on reasonable royalties on any finding of liability will have practical

7   benefits as well.  If, for example, the jury did not determine reasonable royalties and a jury award

8   of unjust enrichment damages were reduced to zero post-trial, Waymo would still be entitled to a

9   jury determination of reasonable royalties, *see, e.g.*, Dkt. 2077 at 4-7, and would also be entitled to

10  revisit the issue of exemplary damages as limited to twice the amount of reasonable royalties, *see*

11  Dkt. 2230 at 4-5.  A "backup" jury finding on reasonable royalties would avoid having to then re-

12  try damages to the jury.

13  **X.     THE PENJIS AND SVF SHOULD AVOID PREJUDICIAL LANGUAGE BY
        SUBSTITUTING "*CLAIMED*" FOR "*ALLEGED*" THROUGHOUT.**

14

15         The PenJIs and SVF presently describe the trade secrets at issue as the "Alleged Trade

16  Secrets" and elsewhere refer to "alleged misappropriation."  The use of the word "alleged" is

    prejudicial, as it may connote "*questionably* true or of a specified kind," and is synonymous with
17

18  "supposed" and "so-called."   *Definition of Alleged*, Merriam-Webster Online Dictionary,

    https://www.merriam-webster.com/dictionary/alleged (emphasis added).  As the word "claimed"
19

20  lacks this prejudicial connotation, the Court should replace "alleged" with "claimed" throughout the

    PenJIs and SVF (including with respect to the "Alleged Trade Secrets"), as reflected in **bold (black)**
21

22  in Exhibit A.[4]  *See also* Exs. B & C.

23  **XI.    THE LAST SENTENCE OF PENJI XVII IS REDUNDANT, CONFUSING AND
        SHOULD BE REMOVED.**

24         The final sentence of PenJI XVII is redundant and confusing and should be removed.  This

25  instruction explains in detail that a "substantial factor" is one that a reasonable person would

26

27         [4]  For brevity's sake, Waymo has not included in Exhibit A those PenJIs which it objects to
    solely on the ground of using "Alleged" rather than "Claimed" Trade Secret, but requests that the
28  Court make that change globally in the Instructions and Verdict Form.

consider having contributed to unjust enrichment, that it must be more than "remote or trivial," and does not have to be the only cause.  PenJI XVII.  Further explanation that "[c]onduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct" merely duplicates what the previous three sentences explained, while adding references to "harm" and "conduct."  These references are confusing because Waymo is not alleging "harm" and the causation of unjust enrichment may stem from a variety of interacting forces, not a single course of conduct.  Removing this sentence as indicated in Exhibit A in **brown** will eliminate this potential confusion and will not prejudice Defendants, as the model instructions from which this sentence is drawn specify that it is optional.  *See* CACI 430, Directions for Use.

## XII.   THE COURT SHOULD ADD INSTRUCTIONS ON AGENCY AND RATIFICATION.

PenJIs XXIII-XXV address principles of agency and the relationships between Morrison & Foerster, LLP, Stroz Friedberg, LLC and Defendants, as those concern Defendants' potential liability for trade secret misappropriation.  However, the PenJIs are silent concerning several other important relationships that directly impact Defendants' potential liability—specifically, Defendants' responsibility for the acts of their employees, agents, directors and officers performed within the scope of their authority.  Defendants Uber and Ottomotto are a corporation and limited liability company, respectively, and can only act through their employees, agents, directors and officers.  *See Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 886 (N.D. Cal. 2014) ("It is well established that corporations act through their employees").  Here, it is especially important that the jury be instructed regarding when Uber and Ottomotto are responsible for the acts of individuals such as Anthony Levandowski, Travis Kalanick, Lior Ron, and other officers, directors and employees of Uber and Ottomotto.  *See Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1171–72, 201 Cal. Rptr. 3d 390, 411 (2016), *review denied* (July 27, 2016) (finding a principal liable to third parties for the wrongful acts committed by its agents).  While Waymo previously proposed such instructions based on the model instructions, *see* Dkt. 1750 at 12, 16, and 78, consistent with PenJIs XXIII-XXV, Waymo now proposes adding a single instruction on agency, as indicated in Exhibit A in **bold**, in Proposed PenJI XXVIII.

1   DATED:  January 29, 2018                QUINN EMANUEL URQUHART & SULLIVAN, LLP

2                                           By  /s/ Charles K. Verhoeven

3                                               Charles K. Verhoeven
                                                Attorneys for WAYMO LLC

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Exhibit A</u>

Proposed Edits to PenJIs and SVF

## PenJI IV

To succeed on its claim for ~~unjust enrichment based on alleged~~ misappropriation of any given ~~Alleged~~**Claimed** Trade Secret, ~~therefore,~~ Waymo must prove all of the following:

1. That the ~~Alleged~~**Claimed** Trade Secret qualified as an enforcible trade secret at the time it was allegedly misappropriated; **and**
2. That the defendant improperly acquired, ~~then~~ used or disclosed the ~~Alleged~~**Claimed** Trade Secret~~.~~
~~3. That the defendant was thereby unjustly enriched; and~~
~~4. That such use or disclosure was a substantial factor in unjustly enriching the defendant.~~

No defendant may be held liable ~~for a damage award~~ as to any given ~~Alleged~~**Claimed** Trade Secret unless all of these elements of proof are satisfied as to that defendant and as to that given ~~Alleged~~**Claimed** Trade Secret.  It is for you, the jury, to decide whether or not all of these elements have been proven for all of the ~~Alleged~~**Claimed** Trade Secrets, for some of them, or for none of them.  **I will address damages available to Waymo if you find liability, but first** I will ~~now~~ explain these elements of proof in more detail.

## PenJI V

Turning to the first element of proof for a misappropriation claim, Waymo must prove that each ~~Alleged~~**Claimed** Trade Secret qualified as an enforcible trade secret at the time of ~~alleged~~**claimed** misappropriation.  To do so, Waymo must prove all of the following:
1. That Waymo owned the ~~Alleged~~**Claimed** Trade Secret;
2. That the ~~Alleged~~**Claimed** Trade Secret was secret at that time;
3. That the ~~Alleged~~**Claimed** Trade Secret had actual or potential independent economic value at that time because it was secret; and
4. That Waymo made reasonable efforts up to the ~~alleged~~**claimed** misappropriation to keep secret the ~~Alleged~~**Claimed** Trade Secret.
I will now explain these factors in more detail.

## PenJI X

The secrecy required to prove that something is a trade secret does not have to be absolute secrecy in the sense that no one else in the world possessed the information at the relevant time. It may have been disclosed to employees involved in the owner's use of the trade secret as long as they were instructed to keep the information secret.  It may also have been disclosed to nonemployees if they were obligated to keep it secret.  However, it must not have been generally known to the public or to others who could have obtained value from knowing it.  **In addition, combinations of public information from a variety of different sources can be a trade secret when combined in a way that is not generally known.   It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known.**

### PenJI IX

Everyone has the right to use or to disclose information that they independently develop on their own without the benefit of someone else's trade secrets.  Therefore, even if one company has a protectable trade secret in certain information, other companies are free to independently develop and use similar information on their own.  They cannot, however, improperly acquire and then use or disclose someone else's trade secrets in doing so.  **Nor can they use or disclose someone else's trade secrets if they know or have reason to know the trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use, or they know or have reason to know the trade secrets were derived through a person owing a duty to another to maintain their secrecy or limit their use**.

### PenJI XIII

Turning to the second element of proof for a misappropriation claim ~~for damages~~, Waymo must ~~also~~ prove that the ~~Alleged~~**Claimed** Trade Secret was used or disclosed by a defendant without Waymo's consent and that said defendant either acquired knowledge of the trade secret by improper means or at the time of **disclosure or** use, knew or had reason to know that its knowledge of the trade secret **(i)** came through persons who had acquired it by improper means~~.~~**; (ii) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) was derived from or through a person who owed a duty to Waymo to maintain its secrecy or limit its use.**

### PenJI XVI

**Actual** use is not limited to direct copying but includes studying and consulting.  For example, if someone took a copy of a secret design with him to his next employer and studied the copy while working on the next employer's own design, such studying would constitute **actual** use even though the two designs differed.  **Actual use does not require using all features, characteristics or elements of the trade secret.  Actual use would also occur where a company used its competitor's designs to accelerate its own research and development process.  Actual use involves not just direct copying but also using a competitor's design to modify or improve one's own design.  Experimenting internally with a stolen design counts as actual use, even if those experiments do not result in a marketable product.**

2

**Former PenJI III moved to [Proposed] PenJI XVI Part 1**

If you find one or more of the defendants liable for trade secret misappropriation, our trade secret laws allow recovery of damages.  The measure of damages that Waymo seeks is called unjust enrichment.  In this case, Waymo's theory of recovery requires it to prove that Uber and/or Ottomotto was unjustly enriched by their use or disclosure of the Claimed Trade Secrets.  ~~Although our trade secret laws allow recovery of "actual damages," once misappropriation is proven, Waymo has chosen to proceed on a measure of damages called unjust enrichment, a measure that is recognized under our trade secret laws. Furthermore, although our trade secret laws allow recovery for unjust enrichment based on improper acquisition, use or disclosure of trade secrets, Waymo proceeds in this trial on a theory of recovery that requires it to prove unjust enrichment by reason of use or disclosure of trade secrets.~~ Acquisition alone will not be enough to recover damages.

**Former PenJI IV moved to [Proposed] PenJI XVI Part 2**

To succeed on its claim for unjust enrichment **damages** based on ~~alleged~~ misappropriation of any given ~~Alleged~~**Claimed** Trade Secret, ~~therefore,~~ Waymo must prove all of the following:

~~1. That the Alleged Trade Secret qualified as an enforcible trade secret at the time it was allegedly misappropriated;~~
~~2. That the defendant improperly acquired, then used or disclosed the Alleged Trade Secret.~~
1~~3~~. That the defendant was ~~thereby~~ unjustly enriched **by its use or disclosure of the Claimed Trade Secret**; and
2~~4~~. That such use or disclosure was a substantial factor in unjustly enriching the defendant.

No defendant may be held liable for a damage award as to any given ~~Alleged~~**Claimed** Trade Secret unless all of these elements of proof are satisfied as to that defendant and as to that given ~~Alleged~~**Claimed** Trade Secret. It is for you, the jury, to decide whether or not all of these elements have been proven for all of the ~~Alleged~~**Claimed** Trade Secrets, for some of them, or for none of them. I will now explain these elements of proof in more detail.

**PenJI XVII**

Turning to the ~~third and fourth~~ elements of proof of Waymo's ~~misappropriation~~ claim **for unjust enrichment damages**, unjust enrichment occurs whenever a defendant reaps an undeserved benefit such as accelerating its own development timeline and/or saving on development costs by taking improper advantage of someone else's trade secrets.  Unjust enrichment does not occur, however, where the benefit would have been realized anyway.  The use or disclosure must have been a substantial factor in causing the unjust enrichment.  A substantial factor in causing unjust enrichment means a factor that a reasonable person would consider to have contributed to the unjust enrichment.  It must be more than a remote or trivial factor. It does not have to be the only cause.  ~~Conduct is not a substantial factor in causing unjust enrichment if the same benefit would have occurred without that conduct.~~

**PenJI XVIII**

~~Acquiring someone else's enforcible trade secret may (or may not) unjustly enrich the acquirer. In this case, however, Waymo's theory of recovery depends, as stated, on proving use or disclosure of its Alleged Trade Secret.~~

**PenJI XX**

If Waymo proves that any defendant used or disclosed one or more ~~Alleged~~**Claimed** Trade Secrets, then Waymo is entitled to recover damages if the use or disclosure was a substantial factor in causing that defendant to be unjustly enriched.

To decide the dollar amount of any unjust enrichment to a defendant, first determine the dollar value of that defendant's actual benefit that would not have been achieved except for its use or disclosure. ~~Then subtract from that amount that defendant's reasonable expenses, including the dollar value of its own independent research and development.~~ ***Alternative:*** **Then subtract from that amount that defendant's reasonable expenses, including any independent research and development expenses, unless such expenses have already been subtracted.**

Your award must be based upon evidence, and not upon speculation, guesswork, or conjecture.

If you find, as to any ~~Alleged~~**Claimed** Trade Secret, that it was used or disclosed ~~*but that Waymo has failed to prove a calculable dollar amount of unjust enrichment*~~, meaning on Special Verdict Question Nos. ~~2~~ **[Proposed] 3** and ~~6~~ **[Proposed] 8** you answer "Yes~~,~~" ~~*and "Zero,"*~~ then we may have a short supplemental instruction and supplemental closing argument to assist you in arriving at an alternative form of award.

**PenJI XXVI**

When Anthony Levandowski testified at our trial, he invoked his right not to incriminate himself under the Fifth Amendment in our Bill of Rights. This was his right to do so. Nevertheless, you may but are not required to find that the questions called for answers that would have incriminated him and that these answers would have been adverse to his position. **In addition, you also may find that any answers provided by Levandowski would have been adverse to the defendants in this case, but you are not required to do so.** ~~That, however, would not necessarily be the same as being adverse to the position of Uber or Ottomotto or Waymo. Before finding that the answer would have also been adverse to another party in the case, you should consider all of the other evidence and circumstances. You are not required to find that any answer by him would have been adverse to him or to any party herein.~~ **You should consider all of the other evidence and circumstances in determining whether to find that Levandowski's answers would have been adverse to the defendants.**

4

**PenJI XXVII**

For reasons not relevant to your decision here, Waymo is suing Anthony Levandowski in a separate proceeding, not in this case.  This trial is against only Uber and Ottomotto. That Levandowski himself might be separately liable to Waymo is not, by itself, enough to make Uber or Ottomotto liable to Waymo in this trial.   To hold them liable, or either of them, for misappropriation of any ~~Alleged~~**Claimed** Trade Secret, Waymo must prove the elements of proof set forth in these instructions.  You should not consider any recovery that Waymo might obtain from Levandowski in the other proceeding, as this will not compensate Waymo for its losses arising from any trade secret misappropriation.

**PenJI XXVIII**

**Waymo and Uber are corporations and Ottomotto is a limited liability company.**

**Under the law, corporations and limited liability companies are considered to be persons, but they can only act through their employees, directors, officers, or other agents.  A corporation or limited liability company is responsible for the acts of its employees, directors, officers, or other agents performed within the scope of their authority.  This authority may be shown by words or may be implied by the parties' conduct.**

**In this case, Uber and Ottomotto are liable for any trade secret misappropriation by any employee, director, officer or other agent if that individual was acting within the scope of his or her authority at the time that he or she misappropriated any Claimed Trade Secret.**

5

**Former SVF 1, 5 – [Proposed] SVF 1**

Separately as to each **Claimed** Trade Secret, state whether or not Waymo has proven **that the following Claimed Trade Secret is an enforcible trade secret.** ~~the following parts of its claim for misappropriation against [the relevant defendant].~~ Answer "Yes" or "No." ~~To sustain such a claim as to any Alleged Trade Secret, you must find Waymo has proven all of the elements in the three columns below, meaning "Yes" in both~~all three columns. ~~If you answer "No" as to the~~ any column, then you need not consider and need not answer as to the other columns for that particular Alleged Trade Secret, although you may do so if you wish. You are free to consider the Alleged Trade Secrets and the columns in any sequence or order you prefer.~~ In any answer, you must follow the instructions of law.

| | ENFORCIBLE TRADE SECRET? | ~~IMPROPERLY ACQUIRED?~~ | ~~USED OR DISCLOSED?~~ |
|---|---|---|---|
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 2 | _____ | ~~_____~~ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 7 | _____ | ~~_____~~ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 9 | _____ | ~~_____~~ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 13 | _____ | ~~_____~~ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 14 | _____ | ~~_____~~ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 25 | _____ | ~~_____~~ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 90 | _____ | ~~_____~~ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 111 | _____ | ~~_____~~ | ~~_____~~ |

*If you have answered "No" ~~in at least one column~~ for all eight ~~Alleged~~**Claimed** Trade Secrets, ~~then skip ahead to Question No. 5~~**then you are done—go to the end of the form and sign and date it**. Otherwise, meaning you have answered "Yes" ~~as to all three columns~~ for at least one ~~Alleged~~**Claimed** Trade Secret, continue to the next three questions.*

**Former SVF 1, 5 – [Proposed] SVF 2, 7**

Separately as to each ~~Alleged~~**Claimed** Trade Secret, state whether or not Waymo has proven **that [Uber/Ottomotto] improperly acquired the Claimed Trade Secret in question.** ~~the following parts of its claim for misappropriation against [the relevant defendant].~~ Answer "Yes" or "No." ~~To sustain such a claim as to any Alleged Trade Secret, you must find Waymo has proven all of the elements in the three columns below, meaning "Yes" in all three columns. If you answer "No" as to the~~ any column, then you need not consider and need not answer as to the other columns for that particular Alleged Trade Secret, although you may do so if you wish. You are free to consider the Alleged Trade Secrets and the columns in any sequence or order you prefer. In any answer, you must follow the instructions of law.~~

6

| | ~~ENFORCIBLE TRADE SECRET?~~ | IMPROPERLY ACQUIRED? | ~~USED OR DISCLOSED?~~ |
|---|---|---|---|
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 2 | ~~_____~~ | _____ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 7 | ~~_____~~ | _____ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 9 | ~~_____~~ | _____ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 13 | ~~_____~~ | _____ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 14 | ~~_____~~ | _____ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 25 | ~~_____~~ | _____ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 90 | ~~_____~~ | _____ | ~~_____~~ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 111 | ~~_____~~ | _____ | ~~_____~~ |

~~If you have answered "No" in at least one  column for all eight Alleged Trade Secrets, then skip ahead to Question No. 5. Otherwise, meaning you have answered "Yes" as to all three columns for at least one Alleged Trade Secret, c~~*Continue to the next question.*

### Former SVF 1, 5 – [Proposed] SVF 3, 8

Separately as to each ~~Alleged~~**Claimed** Trade Secret, state whether or not Waymo has proven **that [Uber/Ottomotto] used or disclosed the Claimed Trade Secret in question.** ~~the following parts of its claim for misappropriation against [the relevant defendant].~~ Answer "Yes" or "No." ~~To sustain such a claim as to any Alleged Trade Secret, you must find Waymo has proven all of the elements in the three columns below, meaning "Yes" in both~~all three ~~columns. If you answer "No" as to the~~ any column, then you need not consider and need not answer as to the other columns for that particular Alleged Trade Secret, although you may do so if you wish. You are free to consider the Alleged Trade Secrets and the columns in any sequence or order you prefer. In any answer, you must follow the instructions of law.~~

| | ~~ENFORCIBLE TRADE SECRET?~~ | ~~IMPROPERLY ACQUIRED?~~ | USED OR DISCLOSED? |
|---|---|---|---|
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 2 | ~~_____~~ | ~~_____~~ | _____ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 7 | ~~_____~~ | ~~_____~~ | _____ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 9 | ~~_____~~ | ~~_____~~ | _____ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 13 | ~~_____~~ | ~~_____~~ | _____ |
| ~~ALLEGED~~**CLAIMED** TRADE SECRET NO. 14 | ~~_____~~ | ~~_____~~ | _____ |

| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 25 | ___ ___ ___ | ___ ___ ___ | _____ |
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 90 | ___ ___ ___ | ___ ___ ___ | _____ |
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 111 | ___ ___ ___ | ___ ___ ___ | _____ |

*If you have answered "No" ~~in at least one  column~~ for all eight A~~lleged~~**Claimed** Trade Secrets, then skip ahead to Question No. ~~57~~.  Otherwise, meaning you have answered "Yes" ~~as to all three columns~~ for at least one A~~lleged~~**Claimed** Trade Secret, continue to the next three questions.*

**Former SVF 2, 6 – [Proposed] SVF 4, 9**

Only with respect to any A~~lleged~~**Claimed** Trade Secret for which you answered "Yes" ~~in all three columns~~ in the previous question, state whether or not Waymo has proven that Uber[/Ottomotto] was unjustly enriched and that such use or disclosure was a substantial factor in bringing about such unjust enrichment.  If you answer "Yes," then further state the dollar amount by which Waymo has proven that Uber[/Ottomotto] is unjustly enriched (or, if such amount is not calculable, then enter "Zero" in the dollar amount column).  If you answer "No," then leave the dollar amount column blank:

|  | UNJUST ENRICHMENT/ SUBSTANTIAL FACTOR? | DOLLAR AMOUNT |
|---|---|---|
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 2 | _____ | _____ |
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 7 | _____ | _____ |
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 9 | _____ | _____ |
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 13 | _____ | _____ |
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 14 | _____ | _____ |
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 25 | _____ | _____ |
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 90 | _____ | _____ |
| A~~LLEGED~~**CLAIMED** TRADE SECRET NO. 111 | _____ | _____ |

~~Remember, as I said in the jury instructions, if you answer "Yes" and "Zero" as to any Alleged Trade Secret, we may have supplemental proceedings as to that Alleged Trade Secret with respect to an alternative form of award.~~

<u>Exhibit B</u>

Proposed SVF

**JANUARY 29, 2018 [Waymo Proposed Version].**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WAYMO LLC,                                                  No. C 17-00939 WHA

          Plaintiff,

v.

UBER TECHNOLOGIES, INC.,
and OTTOMOTTO LLC,                                **SPECIAL VERDICT FORM
[PROPOSED]**

          Defendants.

_____/


*In answering this special verdict form, please refer to the Claimed Trade Secrets as
defined and numbered in Trial Exhibit _____.  Your answers must be unanimous.*


1.     Separately as to each Claimed Trade Secret, state whether or not Waymo has
proven that the following Claimed Trade Secret is an enforcible trade secret.  Answer "Yes" or
"No."  In any answer, you must follow the instructions of law.


|  | ENFORCIBLE TRADE SECRET? |
|---|---|
| CLAIMED TRADE SECRET NO. 2 | _____ |
| CLAIMED TRADE SECRET NO. 7 | _____ |
| CLAIMED TRADE SECRET NO. 9 | _____ |
| CLAIMED TRADE SECRET NO. 13 | _____ |
| CLAIMED TRADE SECRET NO. 14 | _____ |
| CLAIMED TRADE SECRET NO. 25 | _____ |

Claimed Trade Secret No. 90 _____

Claimed Trade Secret No. 111 _____

*If you have answered "No" for all eight Claimed Trade Secrets, then you are done — go to the end of the form and sign and date it.  Otherwise, meaning you have answered "Yes" for at least one Claimed Trade Secret, continue to the next two questions.*

2.      Separately as to each Claimed Trade Secret, state whether or not Waymo has proven that Uber improperly acquired the Claimed Trade Secret in question.  Answer "Yes" or "No."  In any answer, you must follow the instructions of law.

|  | Improperly Acquired? |
|---|---|
| Claimed Trade Secret No. 2 | _____ |
| Claimed Trade Secret No. 7 | _____ |
| Claimed Trade Secret No. 9 | _____ |
| Claimed Trade Secret No. 13 | _____ |
| Claimed Trade Secret No. 14 | _____ |
| Claimed Trade Secret No. 25 | _____ |
| Claimed Trade Secret No. 90 | _____ |
| Claimed Trade Secret No. 111 | _____ |

*Continue to the next question.*

2

3.      Separately as to each Claimed Trade Secret, state whether or not Waymo has proven that Uber used or disclosed the Claimed Trade Secret in question.  Answer "Yes" or "No."

USED OR DISCLOSED?

CLAIMED TRADE SECRET NO. 2       _____

CLAIMED TRADE SECRET NO. 7       _____

CLAIMED TRADE SECRET NO. 9       _____

CLAIMED TRADE SECRET NO. 13      _____

CLAIMED TRADE SECRET NO. 14      _____

CLAIMED TRADE SECRET NO. 25      _____

CLAIMED TRADE SECRET NO. 90      _____

CLAIMED TRADE SECRET NO. 111     _____

*If you have answered "No" for all eight Claimed Trade Secrets, then skip ahead to Question No. 7.  Otherwise, meaning you have answered "Yes" in Question No. 3 for at least one Claimed Trade Secret, continue to the next three questions.*

3

4.      Only with respect to any Claimed Trade Secret for which you answered "Yes" in the previous question, state whether or not Waymo has proven that Uber was unjustly enriched and that such use or disclosure was a substantial factor in bringing about such unjust enrichment. If you answer "Yes," then further state the dollar amount by which Waymo has proven that Uber was unjustly enriched (or, if such amount is not calculable, then enter "Zero" in the dollar amount column).  If you answer "No," then leave the dollar amount column blank:

| | UNJUST ENRICHMENT/ SUBSTANTIAL FACTOR? | DOLLAR AMOUNT |
|---|---|---|
| CLAIMED TRADE SECRET NO. 2 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 7 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 9 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 13 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 14 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 25 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 90 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 111 | _____ | _____ |

5.      If you entered dollar amounts greater than zero in two or more blanks in the preceding question, then, in order to eliminate any possibility of double or multiple counting, state the grand total of all such unjust enrichment to Uber without any double or multiple countings:

$_____

6.      Has Waymo proven that Uber acted willfully and maliciously with respect to any misappropriation found by you?  If "Yes," state the dollar amount of any exemplary damages you award.

YES                    NO                    AMOUNT

_____              _____              $_____


*                      *                              *


*The next group of questions concerns Ottomotto LLC and parallels the questions above.*

7.      Separately as to each Claimed Trade Secret, state whether or not Waymo has proven that Ottomotto improperly acquired the Claimed Trade Secret in question.  Answer "Yes" or "No."

IMPROPERLY ACQUIRED?

CLAIMED TRADE SECRET NO. 2        _____

CLAIMED TRADE SECRET NO. 7        _____

CLAIMED TRADE SECRET NO. 9        _____

CLAIMED TRADE SECRET NO. 13       _____

CLAIMED TRADE SECRET NO. 14       _____

CLAIMED TRADE SECRET NO. 25       _____

CLAIMED TRADE SECRET NO. 90       _____

CLAIMED TRADE SECRET NO. 111      _____

*Continue to the next question.*

8.     Separately as to each Claimed Trade Secret, state whether or not Waymo has proven that Ottomotto used or disclosed the Claimed Trade Secret in question.  Answer "Yes" or "No."

USED OR DISCLOSED?

CLAIMED TRADE SECRET NO. 2         _____

CLAIMED TRADE SECRET NO. 7         _____

CLAIMED TRADE SECRET NO. 9         _____

CLAIMED TRADE SECRET NO. 13        _____

CLAIMED TRADE SECRET NO. 14        _____

CLAIMED TRADE SECRET NO. 25        _____

CLAIMED TRADE SECRET NO. 90        _____

CLAIMED TRADE SECRET NO. 111       _____

*If you have answered "No" for all eight Claimed Trade Secrets in the previous question, then you are done — go to the end of the form and sign and date it.  Otherwise, meaning you have answered "Yes" for at least one Claimed Trade Secret, continue to the next three questions.*

9.     Only with respect to any Claimed Trade Secret for which you answered "Yes" in the previous question, state whether or not Waymo has proven that Ottomotto was unjustly enriched and that such use or disclosure was a substantial factor in bringing about such unjust enrichment.  If you answer "Yes," then further state the dollar amount by which Waymo has proven that Ottomotto was unjustly enriched (or, if such amount is not calculable, then enter "Zero" in the dollar amount column).  If you answer "No," then leave the dollar amount column blank:

6

|  | UNJUST ENRICHMENT/ SUBSTANTIAL FACTOR? | DOLLAR AMOUNT |
|---|---|---|
| CLAIMED TRADE SECRET NO. 2 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 7 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 9 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 13 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 14 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 25 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 90 | _____ | _____ |
| CLAIMED TRADE SECRET NO. 111 | _____ | _____ |

10.    If you entered a dollar amount greater than zero in two or more blanks in the preceding question, then, in order to eliminate any possibility of double or multiple counting, state the grand total of all such unjust enrichment to Ottomotto without any double or multiple countings:

$_____

11.    Has Waymo proven that Ottomotto acted willfully and maliciously with respect to any misappropriation found by you?  If "Yes," state the dollar amount of any exemplary damages you award.

YES                 NO               AMOUNT

_____         _____      $_____

*                    *                    *

7

*Your answer to all of the foregoing questions must be unanimous.*

Dated: February ____, 2018.                    _____

                                                        FOREPERSON

<u>Exhibit C</u>

Redlined Edits to SVF

**JANUARY ~~3, 2018~~29, 2018 [Waymo Proposed Version].**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

WAYMO LLC,                                              No. C 17-00939 WHA

       Plaintiff,

v.

UBER TECHNOLOGIES, INC.,
and OTTOMOTTO LLC,                            **SPECIAL VERDICT FORM**
                                                                   **[PROPOSED]**

       Defendants.

_____/


*In answering this special verdict form, please refer to the ~~Alleged~~Claimed Trade Secrets as*

*defined and numbered in Trial Exhibit _____.  Your answers must be unanimous.*


1.    ~~1.~~  Separately as to each ~~Alleged~~Claimed Trade Secret, state whether or not

Waymo has proven <u>that</u> the following ~~parts of its claim for misappropriation against Uber~~

~~Technologies, Inc.  Answer "Yes" or "No."  To sustain such a claim as to any Alleged Trade~~

~~Secret, you must find Waymo has proven all of the elements in the three columns below, meaning~~

~~"Yes" in all three columns.  If you answer "No" as to any column, then you need not consider and~~

~~need not answer as to the other columns for that particular Alleged Trade Secret, although you may~~

~~do so if you wish.  You are free to consider the Alleged Trade Secrets and the columns in any~~

~~sequence or order you prefer.~~<u>Claimed Trade Secret is an enforcible trade secret.  Answer "Yes" or</u>

<u>"No."</u>  In any answer, you must follow the instructions of law.

| | ~~E~~NFORCIBLE TRADE SECRET? | ~~IMPROPERLY ACQUIRED?~~ | ~~USED OR DISCLOSED?~~ |
|---|---|---|---|
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 2 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 7 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 9 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 13 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 14 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 25 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 90 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 111 | | | |

*If you have answered "No"* ~~*in at least one column for all eight Alleged Trade Secrets, then skip ahead to Question No. 5. Otherwise, meaning you have answered "Yes" as to all three columns for at least one Alleged Trade Secret, continue to the next three questions.*~~ *for all eight Claimed Trade Secrets, then you are done — go to the end of the form and sign and date it. Otherwise, meaning you have answered "Yes" for at least one Claimed Trade Secret, continue to the next two questions.*

~~2.      Only with respect to any Alleged Trade Secret for which you answered "Yes" in all three columns in the previous question, state whether or not Waymo has proven that Uber was unjustly enriched and that such use or disclosure was a substantial factor in bringing about such unjust enrichment. If you answer "Yes," then further state the dollar amount by which Waymo has~~

~~proven that Uber was unjustly enriched (or, if such amount is not calculable, then enter "Zero" in the dollar amount column).  If you answer "No," then leave the dollar amount column blank.~~

2.      Separately as to each Claimed Trade Secret, state whether or not Waymo has proven that Uber improperly acquired the Claimed Trade Secret in question.  Answer "Yes" or "No."  In any answer, you must follow the instructions of law.

| | IMPROPERLY ACQUIRED? |
|---|---|
| CLAIMED TRADE SECRET NO. 2 | |
| CLAIMED TRADE SECRET NO. 7 | |
| CLAIMED TRADE SECRET NO. 9 | |
| CLAIMED TRADE SECRET NO. 13 | |
| CLAIMED TRADE SECRET NO. 14 | |
| CLAIMED TRADE SECRET NO. 25 | |
| CLAIMED TRADE SECRET NO. 90 | |
| CLAIMED TRADE SECRET NO. 111 | |

*Continue to the next question.*

3.      Separately as to each Claimed Trade Secret, state whether or not Waymo has proven that Uber used or disclosed the Claimed Trade Secret in question.  Answer "Yes" or "No."

| | USED OR DISCLOSED? |
|---|---|
| CLAIMED TRADE SECRET NO. 2 | |
| CLAIMED TRADE SECRET NO. 7 | |
| CLAIMED TRADE SECRET NO. 9 | |
| CLAIMED TRADE SECRET NO. 13 | |

| | |
|---|---|
| CLAIMED TRADE SECRET NO. 14 | |
| CLAIMED TRADE SECRET NO. 25 | |
| CLAIMED TRADE SECRET NO. 90 | |
| CLAIMED TRADE SECRET NO. 111 | |

*If you have answered "No" for all eight Claimed Trade Secrets, then skip ahead to Question No. 7.  Otherwise, meaning you have answered "Yes" in Question No. 3 for at least one Claimed Trade Secret, continue to the next three questions.*

4.      Only with respect to any Claimed Trade Secret for which you answered "Yes" in the previous question, state whether or not Waymo has proven that Uber was unjustly enriched and that such use or disclosure was a substantial factor in bringing about such unjust enrichment.  If you answer "Yes," then further state the dollar amount by which Waymo has proven that Uber was unjustly enriched (or, if such amount is not calculable, then enter "Zero" in the dollar amount column).  If you answer "No," then leave the dollar amount column blank:

| | UNJUST ENRICHMENT/ SUBSTANTIAL FACTOR? | DOLLAR AMOUNT |
|---|---|---|
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 2 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 7 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 9 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 13 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 14 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. | _____ | _____ |

25 _____   _____
_____   _____

~~ALLEGED~~CLAIMED TRADE SECRET NO. 90 _____   _____

~~ALLEGED~~CLAIMED TRADE SECRET NO. 111 _____   _____

~~Remember, as I said in the jury instructions, if you answer "Yes" and "Zero" as to any~~

~~Alleged Trade Secret, we may have supplemental proceedings as to that Alleged Trade Secret with~~

~~respect to an alternative form of award.~~

     5.   ~~3.~~   If you entered dollar amounts greater than zero in two or more blanks in the preceding question, then, in order to eliminate any possibility of double or multiple counting, state the grand total of all such unjust enrichment to Uber without any double or multiple countings:

$_____

     6.   ~~4.~~   Has Waymo proven that Uber acted willfully and maliciously with respect to any misappropriation found by you?  If "Yes," state the dollar amount of any exemplary damages you award.

| YES | NO | AMOUNT |
|:---:|:---:|:---:|
| _____ | _____ | $_____ |
| * | * | * |

*The next group of questions concerns Ottomotto LLC and parallels the questions above.*

~~5.~~

5

7.     Separately as to each ~~Alleged~~Claimed Trade Secret, state whether or not Waymo has proven ~~the following parts of its claim for misappropriation against Ottomotto LLC~~that Ottomotto improperly acquired the Claimed Trade Secret in question.  Answer "Yes" or "No."  ~~To sustain such a claim as to any Alleged Trade Secret, you must find Waymo has proven all of the elements in the three columns below, meaning "Yes" in all three columns.  If you answer "No" as to any column, then you need not consider and need not answer as to the other columns for that particular Alleged Trade Secret, although you may do so if you wish.  You are free to consider the Alleged Trade Secrets and the columns in any sequence or order you prefer.  In any answer, you must follow the instructions of law for that issue.~~

| | ~~ENFORCIBLE TRADE SECRET?~~ | IMPROPERLY ACQUIRED? | ~~USED OR DISCLOSED?~~ |
|---|---|---|---|
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 2 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 7 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 9 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 13 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 14 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 25 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 90 | | | |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 111 | | | |

*Continue to the next question.*

8.      Separately as to each Claimed Trade Secret, state whether or not Waymo has proven that Ottomotto used or disclosed the Claimed Trade Secret in question.  Answer "Yes" or "No."

| | USED OR DISCLOSED? |
|---|---|
| CLAIMED TRADE SECRET NO. 2 | |
| CLAIMED TRADE SECRET NO. 7 | |
| CLAIMED TRADE SECRET NO. 9 | |
| CLAIMED TRADE SECRET NO. 13 | |
| CLAIMED TRADE SECRET NO. 14 | |
| CLAIMED TRADE SECRET NO. 25 | |
| CLAIMED TRADE SECRET NO. 90 | |
| CLAIMED TRADE SECRET NO. 111 | |

*If you have answered "No" ~~in at least one column~~ for all eight ~~Alleged~~Claimed Trade Secrets in the previous question, then you are done — go to the end of the form and sign and date it.  Otherwise, meaning you have answered "Yes" ~~as to all three columns~~ for at least one ~~Alleged~~Claimed Trade Secret, continue to the next three questions.*

9.      ~~6.~~      Only with respect to any ~~Alleged~~Claimed Trade Secret for which you answered "Yes" ~~in all three columns~~ in the previous question, state whether or not Waymo has proven that Ottomotto was unjustly enriched and that such use or disclosure was a substantial factor in bringing about such unjust enrichment.  If you answer "Yes," then further state the dollar amount by which Waymo has proven that Ottomotto was unjustly enriched (or, if such amount is

7

not calculable, then enter "Zero" in the dollar amount column).  If you answer "No," then leave the dollar amount column blank:

|  | UNJUST ENRICHMENT/ SUBSTANTIAL FACTOR? | DOLLAR AMOUNT |
|---|---|---|
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 2 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 7 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 9 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 13 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 14 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 25 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 90 | _____ | _____ |
| ~~ALLEGED~~CLAIMED TRADE SECRET NO. 111 | _____ | _____ |

~~Remember, as I said in the jury instructions, if you answer "Yes" and "Zero" as to any Alleged Trade Secret, we may have supplemental proceedings as to that Alleged Trade Secret with respect to an alternative form of award.~~

10. ~~7.~~ If you entered a dollar amount greater than zero in two or more blanks in the preceding question, then, in order to eliminate any possibility of double or multiple counting, state the grand total of all such unjust enrichment to Ottomotto without any double or multiple countings:

$_____

11.   8.———Has Waymo proven that Ottomotto acted willfully and maliciously with respect to any misappropriation found by you?  If "Yes," state the dollar amount of any exemplary damages you award.



|          | Yes | No | Amount |
|          | _____ | _____ | $_____ |

\*          \*          \*

*Your answer to all of the foregoing questions must be unanimous.*

Dated: February \_\_\_, 2018.

_____
FOREPERSON