1    MICHAEL A. JACOBS (CA SBN 111664)
     MJacobs@mofo.com
2    ARTURO J. GONZÁLEZ (CA SBN 121490)
     AGonzález@mofo.com
3    MORRISON & FOERSTER LLP
     425 Market Street
4    San Francisco, California  94105-2482
     Tel:  415.268.7000 / Fax:  415.268.7522
5
     KAREN L. DUNN (*Pro Hac Vice*)
6    kdunn@bsfllp.com
     HAMISH P.M. HUME (*Pro Hac Vice*)
7    hhume@bsfllp.com
     BOIES SCHILLER FLEXNER LLP
8    1401 New York Avenue, N.W.
     Washington DC  20005
9    Tel:  202.237.2727 / Fax:  202.237.6131

10   WILLIAM CARMODY (*Pro Hac Vice*)
     bcarmody@susmangodfrey.com
11   SHAWN RABIN (*Pro Hac Vice*)
     srabin@susmangodfrey.com
12   SUSMAN GODFREY LLP
     1301 Avenue of the Americas, 32nd Floor
13   New York, NY 10019-6023
     Tel:  212.336.8330 / Fax:  212.336.8340
14

15   Attorneys for Defendants
     UBER TECHNOLOGIES, INC.
16   and OTTOMOTTO LLC

17                      UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19                        SAN FRANCISCO DIVISION

20   WAYMO LLC,                           Case No.      3:17-cv-00939-WHA

21                   Plaintiff,           **DEFENDANTS UBER
                                          TECHNOLOGIES, INC. AND
22          v.                            OTTOMOTTO LLC'S
                                          ADMINISTRATIVE MOTION TO
23   UBER TECHNOLOGIES, INC.,             FILE UNDER SEAL THEIR
     OTTOMOTTO LLC; OTTO TRUCKING LLC,    RESPONSE TO WAYMO'S TRIAL
24                                        BRIEF**
                     Defendants.
25

26

27

28

1       Pursuant to Civil Local Rules 7-11 and 79-5, Defendants Uber Technologies, Inc. and

2    Ottomotto LLC ("Defendants") submit this motion for an order to file under seal their Response

3    to Waymo's Trial Brief ("Response"). Specifically, Defendants request an order granting leave to

4    file under seal Exhibit 5 to the Declaration of Esther Chang, based on Waymo LLC's prior

5    representations regarding the confidentiality of similar information. Defendants do not believe

6    the highlighted portions of the Response merit sealing.

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Response to Waymo's Trial Brief ("Response") | Highlighted Portions | Plaintiff |
| Exhibit 5 | Entirety | Plaintiff<br>Defendants (Red Boxes) |

12       The highlighted portions of the Response contain short, public descriptions of the subject

13    matter of the alleged trade secrets and thus do not merit sealing. Defendants file this material

14    under seal out of an abundance of caution in order to provide Waymo the opportunity to justify

15    sealing of this material to the Court. (Yang Decl. ¶ 3.)

16       The red boxes of Exhibit 5 contain screenshots of highly confidential CAD design files of

17    Uber's LiDAR. This information is not publicly known, and its confidentiality is strictly

18    maintained. I understand that disclosure of this information could allow competitors to gain

19    insight into the details of Uber's LiDAR design, allowing them to tailor their own technical

20    development to the detriment of Uber. (Yang Decl. ¶ 5.)

21       The entirety of Exhibit 5 contains information that has been designated "Highly

22    Confidential –Attorneys' Eyes Only" or "Confidential" by Waymo in accordance with the Patent

23    Local Rule 2-2 Interim Model Protective Order ("Protective Order"), which the parties have

24    agreed governs this case (Transcript of 3/16/2017 Hearing, page 6). Defendants file all this

25    material under seal in accordance with Paragraph 14.4 of the Protective Order. (Yang Decl. ¶ 5.)

26       Defendants' request to seal is narrowly tailored to the portions of their Response to

27    Waymo's Trial Brief and supporting exhibits that merit sealing. (Yang Decl. ¶ 6.)

28

1        Pursuant to Civil Local Rule 79-5(d)(2), Defendants will lodge with the Clerk the

2    documents at issue, with accompanying chamber copies.

3        Defendants served Waymo with this Administrative Motion to File Documents Under

4    Seal on January 29, 2018.

5        For the foregoing reasons, Defendants request that the Court enter the accompanying

6    Proposed Order granting Defendants' Administrative Motion to File Documents Under Seal and

7    designate the service copies of these documents as "HIGHLY CONFIDENTIAL –

8    ATTORNEYS' EYES ONLY."

9

10   Dated:  January 29, 2018                          MORRISON & FOERSTER LLP

11

12                                                     By:  /s/ Arturo J. González
                                                            Arturo J. González
13
                                                       Attorneys for Defendants
14                                                     UBER TECHNOLOGIES, INC. and
                                                       OTTOMOTTO LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Tel: 415.268.7000 / Fax: 415.268.7522
5
    KAREN L. DUNN (*Pro Hac Vice*)
6   kdunn@bsfllp.com
    HAMISH P.M. HUME (*Pro Hac Vice*)
7   hhume@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
8   1401 New York Avenue, N.W.
    Washington DC  20005
9   Tel:  202.237.2727 / Fax: 202.237.6131

10  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SHAWN RABIN (*Pro Hac Vice*)
    srabin@susmangodfrey.com
12  SUSMAN GODFREY
    1301 Avenue of the Americas, 32nd Floor
13  New York, NY 10019-6023
    Tel: 212.336.8330 / Fax: 212.336.8340

14

15  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
16  and OTTOMOTTO LLC

17              UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19                SAN FRANCISCO DIVISION

20  WAYMO LLC,                           Case No.      3:17-cv-00939-WHA

21              Plaintiff,               **DECLARATION OF MICHELLE
                                         YANG IN SUPPORT OF
22       v.                              DEFENDANTS UBER
                                         TECHNOLOGIES, INC. AND
23  UBER TECHNOLOGIES, INC.,             OTTOMOTTO LLC'S
    OTTOMOTTO LLC; OTTO TRUCKING LLC,    ADMINISTRATIVE MOTION TO
24                                       FILE UNDER SEAL THEIR
              Defendants.                RESPONSE TO WAYMO'S TRIAL
25                                       BRIEF**

26

27

28

I, Michelle Yang, declare as follows:

1.      I am an attorney at the law firm of Morrison & Foerster LLP.  I make this declaration based upon matters within my own personal knowledge and if called as a witness, I could and would competently testify to the matters set forth herein.  I make this declaration in support of Defendants' Administrative Motion to File Under Seal Their Response to Waymo's Trial Brief.

2.      Defendants request an order granting leave to file under seal Exhibit 5 to the Declaration of Esther Chang, based on Waymo LLC's prior representations regarding the confidentiality of similar information.  Defendants do not believe the highlighted portions of the Response merit sealing.

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Response to Waymo's Trial Brief ("Response") | Highlighted Portions | Plaintiff |
| Exhibit 5 | Entirety | Plaintiff<br>Defendants (Red Boxes) |

3.      The highlighted portions of the Response contain short, public descriptions of the subject matter of the alleged trade secrets and thus do not merit sealing.  Defendants file this material under seal out of an abundance of caution in order to provide Waymo the opportunity to justify sealing of this material to the Court.

4.      The red boxes of Exhibit 5 contain screenshots of highly confidential CAD design files of Uber's LiDAR.  This information is not publicly known, and its confidentiality is strictly maintained. I understand that disclosure of this information could allow competitors to gain insight into the details of Uber's LiDAR design, allowing them to tailor their own technical development to the detriment of Uber.

5.      The entirety of Exhibit 5 contains information that has been designated "Highly Confidential –Attorneys' Eyes Only" or "Confidential" by Waymo in accordance with the Patent Local Rule 2-2 Interim Model Protective Order ("Protective Order"), which the parties have

agreed governs this case (Transcript of 3/16/2017 Hearing, page 6). Defendants file all this

material under seal in accordance with Paragraph 14.4 of the Protective Order.

6.     Defendants' request to seal is narrowly tailored to the portions of their Response to

Waymo's Trial Brief and supporting exhibits that merit sealing.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this

29th day of January, 2018 at San Francisco, California.


                                        */s/ Michelle Yang*
                                        Michelle Yang


**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. Gonzalez, am the ECF User whose ID and password are being used to file this

Declaration.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Michelle Yang has

concurred in this filing.

Dated:  January 29, 2018                 */s/ Arturo J.  González*
                                        ARTURO J. GONZÁLEZ

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11  WAYMO LLC,                              Case No.      3:17-cv-00939-WHA

12              Plaintiff,                  **[PROPOSED] ORDER GRANTING
                                            DEFENDANTS UBER
13       v.                                 TECHNOLOGIES, INC. AND
                                            OTTOMOTTO LLC'S
14  UBER TECHNOLOGIES, INC.,                ADMINISTRATIVE MOTION TO
    OTTOMOTTO LLC; OTTO TRUCKING LLC,       FILE DOCUMENTS UNDER SEAL**
15
16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Upon consideration of Defendants Uber Technologies, Inc. and Ottomotto LLC's ("Defendants") Administrative Motion to File Documents Under Seal, and finding that good cause exists, this Court hereby GRANTS Defendants' Administrative Motion to File Documents Under Seal and ORDERS that the following documents shall be sealed, as indicated below:

| Document | Portions to Be Filed Under Seal |
|---|---|
| Exhibit 5 | Entirety |

**IT IS SO ORDERED**.

Dated: _____, 2017

_____
HONORABLE WILLIAM ALSUP
United States District Judge

1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Tel: 415.268.7000 / Fax: 415.268.7522
5
    KAREN L. DUNN (*Pro Hac Vice*)
6   kdunn@bsfllp.com
    MICHAEL BRILLE (*Pro Hac Vice*)
7   mbrille@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
8   1401 New York Avenue, N.W.
    Washington DC  20005
9   Tel:  202.237.2727 / Fax: 202.237.6131

10  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SHAWN RABIN (*Pro Hac Vice*)
    srabin@susmanGodfrey.com
12  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
13  New York, NY  10019-6023
    Tel:  212.336.8330 / Fax: 212.336.8340
14

15  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
16  and OTTOMOTTO LLC

17                  UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19                    SAN FRANCISCO DIVISION

20  WAYMO LLC,                          | Case No.       3:17-cv-00939-WHA

21              Plaintiff,              | **DEFENDANTS UBER
                                        | TECHNOLOGIES, INC. AND
22        v.                            | OTTOMOTTO LLC'S RESPONSE TO
                                        | WAYMO'S TRIAL BRIEF**
23  UBER TECHNOLOGIES, INC.,
    OTTOMOTTO LLC; OTTO TRUCKING
24  LLC,
                                        | Trial Date: February 5, 2018
25              Defendants.

26

27          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

28

1    Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") respond to

2    Waymo's untimely trial brief.  (Dkt. 2538-4.)  Although it purported to be a response to

3    Defendants' trial brief, Waymo's brief raises new issues that should have been raised on

4    January 23, 2018, as required by the Court's standing order.

5    **A.    WAYMO'S ISSUES**

6        **1.    The Court Should Deny Waymo's Request to Reconsider the Court's Ground
            Rules with Respect to Levandowski's Invocation of Fifth Amendment Rights**
7

8    Waymo's trial brief asks the Court to reconsider and reverse two of its ground rules

9    related to Anthony Levandowski's testimony, specifically (1) the timing of when Levandowski

10   will be questioned by Uber (if he testifies at all) and (2) whether the Fifth Amendment may be

11   referenced during opening statements or before Levandowski testifies (if he is allowed to testify).

12   (*See* Dkt. 1535 ¶¶ 1, 3.)  Neither request is valid—the Court's ground rules are consistent with the

13   governing law and Rules of Evidence, and should remain in place.

14       **a.    The Court Should Overrule Waymo's Objection to Ground
            Rule Number Three, Which Provides That Uber May Examine
            Levandowski at the End of Waymo's Case-in-Chief**
15

16   As Waymo explicitly acknowledges, "the Court has overruled Waymo's objection" to

17   requiring Levandowski to appear "very close to the end of" Waymo's case-in-chief.  (Dkt. 2538-4

18   (Waymo Trial Br. at 3 (citing Dkt. 1863 [9/27/17 Hr'g Tr.] at 142:16-150:17)); Dkt. 1535 ¶ 2.)

19   Now, Waymo has raised a brand new complaint about the Court's third ground rule, which

20   expressly gives Defendants the option to "either ask their questions based on the corroborating

21   evidence already included in the trial record before the jury at the end of Waymo's case-in-chief,

22   or to postpone their examination of Levandowski and require him to return at the end of

23   defendants' case-in-chief for further questioning."  Waymo chose not object to this ground rule as

24   part of its objections submitted in September.  (Dkt. 1811 (Waymo's objections to Fifth

25   Amendment ground rules) (objecting to Paragraphs 1, 2, and 4 of the ground rules, but not

26   objecting to Paragraph 3).)  Waymo's trial brief submission, however, seeks to undo this ground

27   rule by mandating that Uber wait until its own case-in-chief to ask its questions of Levandowski.

28   Waymo's trial brief provides no valid justification for reconsideration of the Court's

1   ground rule on this issue.  The sole "objection" that Waymo raises is that Uber should not be

2   permitted to go beyond the "subject matter of the direct examination" and "matters of the

3   witness's credibility."  But as Waymo acknowledges, "Federal Rule of Evidence 611(b) commits

4   the scope of cross-examination to the trial judge's discretion," and may "permit cross-

5   examination 'as to all matters reasonably related to the issues" that were "put in dispute by his

6   testimony on direct.'" *United States v. Vasquez*, 858 F.2d 1387, 1392 (9th Cir. 1988) (citations

7   omitted).  Furthermore, the Court has discretion under Rule 611(b) to "allow inquiry into

8   additional matters as if on direct examination." This discretion is to be exercised where it will

9   "aid in the development of the evidence or otherwise facilitate the conduct of the trial."  Notes of

10  Committee on the Judiciary, S. Rep. No. 93-1277, at 7071 (1974).  In the unique circumstance of

11  a witness invoking the Fifth Amendment, the Court's proposed ground rule number three, which

12  allows Uber to examine Levandowski during Waymo's case-in-chief, is a proper exercise of the

13  Court's discretion.

14      In deciding whether Levandowski may be called to the stand even one time, the Court

15  must balance whether the probative value of the witness's invocation of the Fifth Amendment is

16  substantially outweighed by the danger of unfair prejudice and jury confusion from admission of

17  such evidence.  *In re Urethane Antitrust Litigation*, No. 04-1616-JWL, 2013 WL 100250, at *4

18  (D. Kan. Jan. 8, 2013).  To reverse the ground rule already set by the Court and mandate that

19  Levandowski be called to the stand a second time in order to answer questions put to him by Uber

20  would exacerbate the risk of unfair prejudice and confusion.

21      The scope of Waymo's direct examination will be defined by Levandowski's (presumed)

22  invocation of the Fifth Amendment.  Any questions that Uber asks on cross-examination which

23  also elicit Fifth Amendment invocations necessarily are related to that same "subject matter,"

24  Fed. R. Evid. 611(b), because Uber's questions will (a) undermine the validity of the inferences

25  Waymo is seeking by demonstrating the lack of probative value of the invocation; (b) support the

26  competing inferences that Uber will argue are more appropriately drawn from Levandowski's

27  invocation; or (c) do both of those things.  In all of those circumstances, Uber's questioning is

28  related to the subject matter Waymo will have covered in its examination, and permitting Uber to

1    ask the questions at that time will certainly "facilitate the conduct of the trial."  The Court thus

2    properly exercised its discretion under Rule 611(b) in establishing its third ground rule and there

3    is no basis for its reversal.

4                        **b.       The Court Should Adhere to Its Proposed Ground Rule**
                                **Forbidding References to the Fifth Amendment During**
5                               **Opening Statement**

6          Waymo's trial brief also renews its objection to the Court's ground rule prohibiting

7    reference to potential Fifth Amendment invocations during opening statements.  (Dkt. 1535 ¶ 1.)

8    The proposed ground rule was proper in September and remains so now.

9          If Waymo were permitted to bring up the Fifth Amendment during their opening—or at

10   any point in trial prior to when Levandowski is called to the stand (if he is called at all)—it would

11   undoubtedly argue that the jury should infer from Levandowski's Fifth Amendment invocation

12   that *Uber* has done something wrong, and it would do so without any corroborating evidence in

13   the record or any appropriately tailored examination.  The jury will have no context or

14   understanding of the Fifth Amendment at that point; Waymo's blanket statement is an obvious

15   attempt to poison the jury against Uber from the outset without the appropriate evidentiary

16   safeguards.  This is exactly the sort of blind inference that the Ninth Circuit has strictly forbidden.

17   *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (corroborating

18   "independent evidence" must exist before any inference can be drawn).

19         Waymo's argument that the parties may ask about the Fifth Amendment in *voir dire*, its

20   primary argument in September and repeated in its trial brief, is now moot.  (Dkt. 2538-4

21   (Waymo's Trial Br. at 3); Dkt. 1863 (9/27/17 Hr'g Tr.) at 150:10–13.)  Uber has advised

22   Waymo's counsel that it would not be referencing the Fifth Amendment during *voir dire*.  (Ex. 1[1]

23   (1/27/18 Email from A. Gonzalez) ("We will not be raising this [Fifth Amendment] issue in voir

24   dire.").  In light of this concession, Waymo should not be permitted to reference Levandowski's

25   invocation in opening, or at any point prior to the time Levandowski is actually called (if at all).

26   Nor do the cases Waymo cites in support of its position—*Cerro Gordo Charity v. Fireman's*

27   _____

28        [1] All references to ("Ex.") are exhibits attached to the Declaration of Esther Kim Chang in
          Support of Defendants' Response to Waymo's Trial Brief.

1    *Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481 (8th Cir. 1987) and *Pac. Gas & Elec. Co. v. Howard*

2    *P. Foley Co.,* No. 85-2922-SW, 1993 WL 299219, at *10 (N.D. Cal. July 27, 1993)—require the

3    Court to allow Waymo to poison the jury with blanket references to the Fifth Amendment.

4    Neither case says **anything at all** about opening statement.

5          Finally, Waymo's meek claim of prejudice should again be rejected.  (Dkt. 2538-4

6    (Waymo's Trial Br. at 2).)  When Waymo sought reversal of this ground rule in September, the

7    Court clearly disagreed, saying: "I don't think you're very prejudiced."  (Dkt. 1863 (9/27/17 Hr'g

8    Tr.) at 146:13–14.)  Even if there were some potential "complication" of Waymo's opening

9    argument by virtue of the ground rule, there is still no basis for discarding it.  The Ninth Circuit

10   has cautioned that the "competing interests" of the parties where the privilege is concerned must

11   be "carefully balanced."  *Doe ex rel. Rudy-Glanzer*, 232 F.3d at 1265.  In this case, that balancing

12   requires the Court's thoughtful vetting of every question to be put to Levandowski in order to

13   prevent the jury from assigning his testimony undue weight or being improperly prejudiced

14   against Uber from the outset, as the Court's ground rules required.  (Dkt. 1535.)

15       **2.       The List of Trade Secrets Provided to the Jury Should Indicate That They
                   Are Alleged Trade Secrets and Include a Short, Public Description**
16

17         Uber agrees in principle to Waymo's proposal to provide the jury with binders that

18   contain a list of the alleged trade secrets, identifying each alleged trade secret by number and

19   including the text of the claimed trade secret.  (*See* Dkt. 25-7.)  But Uber requests that the word

20   "Alleged" be added before each trade secret number (*e.g.,* Alleged Trade Secret No. 2) and that a

21   short, public description be included for each trade secret.  Below is Uber's proposal for the short,

22   public description for each trade secret.

| Alleged Trade Secret No. | Short Description |
|---|---|
| ATS 2 | ████████████████ |
| ATS 7 | ████████ |
| ATS 9 | ████ |
| ATS 13 | ██████ |
| ATS 14 | ████ |
| ATS 25 | ████████ |
| ATS 90 | ██████ |
| ATS 111 | ██████ |

28

1

2

### 3.    The Court Should Allow Uber's Witnesses to Testify Truthfully to the Current Status of Fuji's Redesign

3

Waymo's request that the Court bar Uber's witnesses from testifying truthfully about the

4 completion of Uber's Fuji redesign represents an attempt to revisit a motion *in limine* that Waymo

5 *dropped* at the September pre-trial conference.  As the Court may recall, Waymo's MIL 17

6 sought to preclude Uber's evidence of its Fuji redesign in part on the grounds that it was not

7 timely disclosed.  (*See* Dkt. 1558 at 2 (Waymo MIL 17).)  Uber demonstrated that, to the

8 contrary, Uber had timely disclosed the relevant evidence in deposition, documents (including

9 CAD files showing the new designs), and interrogatory responses.  (*See* Dkt. 1558-8 at 1-2 (Uber

10 Opp'n); Dkt. 1558-3 at 31-35 (supplemental interrogatory responses citing redesign documents).)

11 Waymo informed the Court it was dropping the MIL, and the Court embodied that resolution in

12 its order on the MILs.  (Dkt. 1863, Tr. Hr'g at 151:3-7 (withdrawing MIL 17); Dkt. 1885, Order

13 at 3.)

14

Uber's disclosures before the close of fact discovery made clear that certain Fuji redesigns

15 were underway, and provided the details of those redesigns (including CADs).  Waymo does not

16 contest that the previously-disclosed information about the redesigns can be presented at trial.

17 The only issue is whether Uber's witnesses (particularly lead Fuji engineer James Haslim) can

18 truthfully testify that those already disclosed redesigns have been implemented in hardware, and

19 that the current prototypes of Fuji embody the previously-disclosed redesigns that avoid ATS 2,

20 7, 13, and 14.

21

Since MIL 17's resolution, Waymo has not raised questions about the Fuji redesigns or

22 sought any further discovery.  To avoid any claim of sandbagging, Uber notified Waymo of

23 Mr. Haslim's intended testimony and offered to make him available for deposition.  (Ex. 2

24 (1/15/18 Email from D. Muino); Ex. 3 at 2-3 (1/18/18 Email from D. Muino).)  At Waymo's

25 insistence, Uber also updated its document production.  (Ex. 4 at 1 (1/22/18 Email from

26 D. Muino.)  But Waymo has apparently decided that the better course is to try to hold Mr. Haslim

27 to a chronological straightjacket and even to testify untruthfully based on facts that are no longer

28 current.  That makes no sense.

1    The better course is to allow updated and truthful testimony anchored by the disclosures

2    made before the close of fact discovery.  Uber does not intend to rely on any new documents—

3    only those produced as of the fact discovery cut-off on August 24.  Uber is still willing to make

4    Mr. Haslim available for deposition, and that should be sufficient.  *See Finjan, Inc. v. Blue Coat*

5    *Sys.*, No. 13-cv-03999-BLF, 2015 WL 4129193, at *3 (N.D. Cal. July 8, 2015) (finding that "any

6    prejudice from Defendant's disclosure [of a design around after fact discovery cutoff] is better

7    addressed through discovery" and ordering a 3-hour deposition between the pretrial conference

8    and start of trial).

9    As was true when Waymo earlier sought exclusion with its MIL 17, Uber's detailed and

10    extensive disclosures of its redesigns before the discovery cut-off refute Waymo's current

11    complaints.  Uber responded to Waymo's interrogatory regarding redesign efforts with

12    descriptions of the specific redesigns it was implementing and estimates of the time and costs to

13    modify its design on July 28, 2017.  (*See* Dkt. 1558-9 at 3-11; Dkt. 1558-8, Uber Opp'n to

14    MIL 17 at 1-2 (quoting descriptions).)  Waymo deposed Mr. Haslim about each of the

15    contemplated redesigns on August 9.  (*See e.g.*, Dkt. 1558-6, 8/9/17 Haslim Dep. at 425:6-434:7,

16    702:11-703:20 (Alleged Trade Secret ("ATS") 2 redesign), 662:3-670:17 (ATS 7 redesign);

17    434:9-443:24 (ATS 9 redesign), 703:21-706:19 (ATS 13/14 redesign).)  Uber supplemented its

18    interrogatory responses and disclosed documents pertaining to the redesigns, including CAD

19    design files and the identity and statement of work (SOW) for the third-party vendor retained for

20    the ATS 9 redesign, on August 24, 2017.  (*See* Dkt. 1558-3 at 31 (TS 2), 32 (TS 7), 33-34 (TS 9),

21    34-35 (TS 13/TS 14).)  These interrogatory responses also reported on the status of the redesigns

22    as of that date.  (*See id.* at 41-42 ("Receipt of newly designed PCBs" completed for ATS 7

23    redesign, "CAD drawing" completed for ATS 2 and ATS 13/ATS 14 redesign; "SOW sent to

24    vendor" for ATS 9 redesign).)  In particular, the responses state the expected completion date for

25    the redesigns:  "[r]eplacement of all old PCBs" in about "one month" for ATS 7 redesign;

26    "[a]nticipated receipt of prototype PCBs" in 22 working days, with 7 working days of testing for

27    ATS 2, ATS 13, and ATS 14 redesign; and "anticipated receipt of prototype lenses" in 22 weeks,

28    with 3 weeks of testing for ATS 9 redesign.  (*Id.*)

1   Because Uber disclosed its CAD design files, vendor statement of work, and time and cost

2   estimates by August 24, little additional redesign evidence will be presented to the jury.  Both

3   Waymo and Uber's experts addressed the redesigns.  (*See e.g.*, Dkt. 2238-5 at 178-179 (Waymo

4   expert on Uber redesigns); Ex. 5 (Hesselink Rply Rpt. at 30-31, 38-39, 50-51, 58-60, 68-70).)  At

5   trial, Mr. Haslim would testify  that operational Fuji prototypes now implement the ATS 7,

6   ATS 2, ATS 13, and ATS 14 redesigns and that the ATS 9 redesign is expected to become

7   available soon.  He would add that the redesigns have been implemented consistent with the

8   original estimates that were disclosed to Waymo before the close of fact discovery.  He would

9   also present a redesigned Fuji prototype.  The benefit to the jurors of seeing the physical features

10  instead of merely drawings outweighs any limited prejudice to Waymo.  *See Datatreasury Corp.*

11  *v. Wells Fargo & Co.*, No. 2:06–CV–72–DF, 2011 WL 8810604, at *12 (E.D. Tex. Aug. 2, 2011)

12  (denying motion to strike supplemental declaration on implementation of non-infringing

13  alternative, where costs and technical feasibility were already addressed in original declaration

14  and declarant's deposition, and "the significance of [declarant's] supplementation, as well as its

15  limited potential prejudice, if any, are insufficient to warrant striking it").

16  Waymo complains that it had no opportunity to subpoena and depose the third-party

17  vendor for the ATS 9 redesign.  (Dkt. 2539, Waymo Resp. at 6.)  But Waymo never previously

18  sought further discovery from Uber or the identified third-party vendor when this was disclosed

19  to Waymo on August 24.  Waymo also did not engage in any discovery regarding the disclosed

20  estimated implementation dates.  Uber does not object to any additional discovery from the third

21  party vendor, and even offered to facilitate that discovery.  (Ex. 4 at 1 (1/22/18 Email from D.

22  Muino.)  If Waymo decides that it cannot complete the discovery now, that is Waymo's fault, not

23  Uber's.

24  Finally, Waymo is struggling to define its damages in light of this Court's rulings, but its

25  most recent disclosures suggest it intends to seek more than $1 billion from Uber.  Assuming

26  Waymo prevails on its "use" arguments for the old Fuji designs, it would be a bizarre outcome for

27  Waymo to collect such astronomical sums for alleged trade secrets that Uber not only plans not to

28  use in the future, but has already stopped using.  It would be unfair to deny Uber the opportunity

1  to defend itself against such claims, and the Court should allow Uber to introduce evidence of tis

2  discontinued use of those alleged secrets.

3  **B.    UBER'S ISSUES**

4          **1.    The Court's Standing Order Regarding Disclosure of Exhibits Is in Effect
              and Applies to Exhibits for Direct Examination of Adverse Witnesses**

5

6          Waymo's trial brief proceeds from a flawed conclusion regarding the disclosure of

7  exhibits during trial.  Waymo claims that Uber agreed to exchange exhibits by 5:00 p.m. the day

8  before a witness testifies.  (Dkt. 2538-4 at 8 n.2.)  That is not accurate.  Uber noted that it would

9  agree to 5:00 as a compromise, but only if Waymo agreed to disclose exhibits pertaining to

10 adverse witnesses.  (Dkt 2254-1 at 4 ("*If you agree* about adverse witnesses, then we agree to

11 your proposal that exhibits will be disclosed by 5:00 the day before they are used.") (emphasis

12 added).)  Waymo did not agree to that condition.  Thus, there was no agreement regarding the

13 disclosure of exhibits.  Lest there be any doubt, Uber has not agreed and does not agree to any

14 deviation from the Court's standing order regarding exhibit disclosures—whether for direct or

15 cross examination.  (*See* Judge Alsup's Guidelines for Trial & Pretrial Conference in Civil Jury

16 Cases (rev. May 8, 2017) (Judge Alsup's Guidelines") ¶ 11.)  Direct exhibits must be disclosed

17 one day or two days before a witness testifies, depending upon whether the discloser wishes to

18 see the other party's cross exhibits.  (*Id.*)  Waymo, as the Plaintiff, has over-designated thousands

19 of exhibits, and the only way to avoid sandbagging is to stick to this Court's Trial Guidelines.

20         Because there is no agreement about cross-examination exhibits, there is no "distinction

21 without a difference" (Dkt. 2538-4 at 7) between Uber's treatment of exhibits for adverse

22 witnesses and cross-examination exhibits.  Under the Court's standing order, both must be

23 disclosed (in the case of cross-examination exhibits, only if the party examining the witness

24 discloses its direct examination exhibits two days in advance).  Again, this Court's standing order

25 contemplates that direct examination exhibits for adverse witnesses must be disclosed:  it exempts

26 from that requirement exhibits to be used for impeachment.  If the rule requiring disclosure of

27 direct examination exhibits were intended to apply only to friendly witnesses (and not adverse

28 witnesses), it would not have included an exception for impeachment because impeachment

applies only to adverse witnesses.

Moreover, if this Court wanted to exclude direct examination of adverse witnesses from its exhibit disclosure requirement, it would have said so.  Because there is no agreement between the parties to deviate from the Court's standing order, that order controls.  And under that order, exhibits to be used in the direct examination of any witness (including adverse witnesses) must be disclosed.

Given the many complex evidentiary issues that will arise during trial, Uber requests that the parties comply with this Court's stated preference that direct examination exhibits be disclosed two days before a witness testifies.  Waymo has refused to narrow its list of trial exhibits and should not be allowed to engage in hide-the-ball litigation tactics.  The Court's Trial Guidelines are fair and both sides should follow it.

**2.** **Waymo Concedes That It Did Not Plead "Use" or "Disclosure" by MoFo or Stroz**

Waymo's response confirms that this issue should not go to the jury.  By its silence, Waymo concedes that it has never pled nor disclosed that it is pursuing a theory of trade secrets misappropriation based on any "use" or "disclosure" by MoFo or Stroz.  (*See* Dkt. 2538-4 at 8.)  Waymo also admits that it "does not intend to ask for damages based on MoFo or Stroz's use or disclosure of Waymo's trade secrets."  (*Id.*)

Nonetheless, Waymo claims that it intends to show that Uber "wrongfully acquired the trade secrets at least when its agents MoFo and Stroz took possession of them."  (*Id.*)  Waymo claims that such evidence would support "an award of injunctive relief."  (*Id.*)  But this argument misses the boat—injunctive relief is equitable.  Moreover, Waymo never disclosed that it was pursuing this claim.  And perhaps most importantly, it is undisputed that MoFo and Stroz have Google materials.  Without conceding liability, Uber would not oppose an injunction requiring MoFo and Stroz to return or destroy the materials they received as part of the Ottomotto acquisition due diligence after the end of this litigation, subject to any applicable preservation obligations, and after notice and an opportunity to object is given to affected parties.  Thus, there is no need for this issue to be presented to the jury.

DEFENDANTS' RESPONSE TO WAYMO'S TRIAL BRIEF
Case No. 3:17-cv-00939-WHA
sf-3862417

9

### 3. Waymo's Undisclosed Theory of "Disclosure" to Vendors

Having failed to timely disclose its new theory of liability based on Uber's alleged disclosure to its vendors, Waymo now attempts to shoehorn any disclosure relating to vendors as relevant to this new theory of liability.  Waymo first points to its disclosure of William Grossman as evidence that it disclosed this theory of disclosure to vendors.  But Waymo's own brief admits that Mr. Grossman was only disclosed as having "knowledge of 'matters that concern **Waymo's** accidental receipt of an email containing an ***Otto*** LiDAR PCB.'"  (Dkt. 2538-4 at 9 (emphasis added).)  The disclosure for Mr. Grossman relates to receipt of information by Waymo (not a vendor) and of Ottomotto's information (not Waymo's).  The disclosure for Mr. Grossman fails to fulfill the intended notice function of disclosures and failed to put Uber on notice that Waymo may assert a theory of liability based on disclosure to vendors.  In any event, to the extent that the disclosure for Mr. Grossman provided any notice for this theory, it was limited to disclosure by Ottomotto—not Uber.

Waymo also points to document requests asking for the identity of and communications with vendors as sufficient disclosure of its theory.  Taken to its logical end, Waymo's position would mean that Waymo could assert any theory of liability with respect to any entity for which documents were requested.  In this case, Waymo served almost 390 document requests, including requests directed at several named individuals (*e.g.*, Anthony Levandowski, Lior Ron, and Travis Kalanick), third-party entities (*e.g.*, Tyto, Odin Wave, Pouch Holdings), and groups of individuals (*e.g.*, former Waymo or Google employees).  It cannot be that by doing so, Waymo has disclosed any conceivable theory of liability with respect to the subjects of the document requests.

Waymo also attempts to excuse its failure to disclose this theory in response to interrogatories calling for such disclosure by rewriting the interrogatory.  (Dkt. 2538 at 9.)  For example, Interrogatory No. 8 asks for "all instances in which the trade secret (or any Waymo LiDAR device utilizing the trade secret) was publicly or otherwise disclosed to third parties."  (*Id.*) This interrogatory is not limited to Waymo's disclosure to third parties, but any disclosure of which Waymo was aware.  By this interrogatory, Uber sought information regarding ***any*** disclosure of the alleged trade secrets—even by someone other than Waymo—because public

1    disclosure defeats trade secret status.  Waymo now argues that the interrogatory was limited to

2    "all instances in which the trade secret (or any Waymo LiDAR device utilizing the trade secret)

3    was publicly or otherwise disclosed *by Waymo* to third parties."  (Dkt. 2538-4 at 9.)  But there is

4    no such limitation in the plain wording of the interrogatory.  (Dkt. 2517 at 4; Dkt. 2252-5.)

5           In its most recent order regarding jury instructions, the Court ruled that "no recovery

6    theory [would] go to the jury for damages based solely on misappropriation by acquisition only."

7    (Dkt. 2495 at 1.)  This Court concluded that "Waymo failed to disclose an acquisition-only

8    damages theory as required by FRCP 26(a) and [was thus] precluded from asserting any such

9    theory at trial under FRCP 37(c)(1)."  (*Id.* at 5.)  For the same reason, any evidence or argument

10   regarding Waymo's untimely disclosed theory pertaining to disclosure to vendors should be

11   barred.

12          **4.      Waymo Offers No Persuasive Reason for Violating the Court's Disclosure
                     Requirements for Waymo's New Witnesses**

13

14          Waymo complains that Uber should have filed a *precis* to raise objections to witnesses

15   and testimony that Waymo did not timely disclose.  That is simply untrue.  Uber has repeatedly

16   and timely objected to each improper witness or subject of testimony.  Uber raises them in its

17   amended trial brief only because Waymo's attempt to go beyond its Rule 26(a)(1) witness

18   disclosures is so egregious and extensive that it should be addressed before trial.

19          The problem with Waymo's position is glaring—it requires the Court to re-write

20   Rule 26(a)(1) so that it no longer requires:  (a) the disclosure of the identity of a witness as long

21   as he is deposed or (b) the disclosure of the subject matter of the testimony of anyone working for

22   the opposing party.  There are good reasons these exceptions are not in Rule 26 and they should

23   not be added now.

24          Waymo seeks to excuse its failure to disclose nine of *its own employees* because most of

25   them were deposed by Uber, including Shawn Bananzadeh, whose addition is the subject of a

26   pending motion (Dkts. 2305, 2323) and of whom the Court already ruled could not testify in

27   Waymo's case-in-chief (Dkt. 2323 at 1-2).  The Court has already addressed and rejected this

28   very argument the first time Waymo tried to add Mr. Bananzadeh:

1
        MS. ROBERTS: Well, your Honor, I think since -- since they
deposed him, their approach to preparing to cross examine him at
2
trial would be no different than their approach to cross examining
everybody else because they have his deposition.
3

4
        THE COURT: Yeah, but under that theory that everybody who got
deposed in the case then is open season. Anybody can -- can just
automatically add them to their trial list, right? Everybody who was
5
deposed.

6
        MS. ROBERTS: Fair enough, your Honor.

7
(Dkt. 2124 (10/26/2017 Hr'g Tr. at 12:13-22).)  The prejudice to Uber from this sandbagging is

8
significant.  The fact that Uber sought to depose a Waymo witness to gather evidence for *its case*

9
does not excuse Waymo's failure to disclose its own intent to rely on that witness for *Waymo's*

10
case.  A deposition taken by a party to gather affirmative evidence is very different from one

11
taken of a witness the opposing party intends to call at trial.  If Waymo's position were accepted,

12
Uber would have needed to exhaust the knowledge on every conceivably relevant topic for all the

13
dozens of individuals it noticed for deposition, in the event Waymo should decide to affirmatively

14
offer their testimony at trial.

15
      Waymo likewise argues that its addition of eight of its ***own*** employees—including its

16
CEO—is justified because Uber added two ***Waymo*** employees from whom documents were

17
produced during discovery.  The two are not remotely comparable.  Waymo added its own

18
witnesses; Uber added two adverse witnesses.  Uber added witnesses from Waymo for which

19
discovery revealed testimony may be needed at trial.  Waymo, on the other hand, offers no

20
justification for adding ***its own employees*** after the close of discovery.

21
      **5.**      **Waymo Likewise Offers No Persuasive Reason for Why Its Witnesses Should
Be Allowed to Testify Beyond the Scope of the Testimony in the Disclosures**
22

23
      Uber's objections to the scope of testimony on Waymo's trial witness list are valid.  As

24
noted above, many of Waymo's untimely additions are for its own Waymo witnesses.  Waymo

25
was aware of the relevant subjects for these witnesses well before the end of discovery.  Waymo

26
falsely claims equivalence between Uber's minor additions and clarifications to the topics for

27
three witnesses (Dkt. 2538-4 at 14-15) and Waymo's massive rewriting of its vague initial

28
disclosures that listed, for nearly every witness, just the subject "matters that concern the

1   misappropriation of trade secrets." (Dkt. 2517 at 7-8.) Uber refers the Court to Exhibit A of

2   Uber's objections to Waymo's Fourth Amended Witness list, which demonstrates the

3   egregiousness of Waymo's attempts to expand the subjects on which it now seeks to question

4   witnesses. (Dkt. 2520-3.)

5        Moreover, Uber's minor modifications to the scope of testimony for three witnesses were

6   for non-Uber witnesses: two Waymo employees, including Gary Brown (who was involved in

7   the Google forensic investigation that Waymo initially tried to shield from discovery) and a Stroz

8   Friedberg employee for whom Uber clarified—but did not change—the scope of the anticipated

9   testimony.

10       **6.        Waymo Is Bound to Its Disclosed Damages Computation and Should Not Be
                     Allowed to Admit Evidence of Reasonable Royalty Until the Proper Time**

11

12       Waymo is not correct that all issues relating to Waymo's damages case (other than the two

13  offers of proof) are settled. As Uber explained in its amended trial brief, Waymo has still failed

14  to provide a computation of damages, as required by Rule 26. As a result, Rule 37 precludes

15  Waymo from offering any damages computation that was not in its disclosures. In addition, with

16  respect to theories of damages, Waymo cites the same colloquy with the Court, but fails to

17  respond to the following point in Uber's amended trial brief: "The fact that a judge need not sort

18  out precise damages *computations* ahead of time does not mean that a defendant is free to venture

19  beyond its disclosed *theories* of damages." (Dkt. 2517 (Uber Trial Brief) at 12.) Trial is not the

20  time for Waymo to disclose new theories of damages.

21       Waymo also wants to admit evidence relevant only to a reasonable royalty in the main

22  case even though the jury will not be asked to compute a reasonable royalty. Such an approach

23  would unduly prejudice Uber, confuse the issues, and mislead the jury. Fed. R. Evid. 403.

24  Obviously, if evidence is relevant to liability or unjust enrichment, it can come in. But if

25  evidence is relevant only to the issue of reasonable royalty, then it should not be admitted until a

26  potential later phase that addresses reasonable royalty. Rather than allowing reasonable royalty

27  evidence during the liability phase, the Court should allow unjust enrichment evidence in the

28  reasonable royalty phase. Uber identified the types of evidence relevant only to unjust

1   enrichment in its trial brief.  (Dkt. 2517 (Uber Trial Brief) at 13-14.)  Admitting this limited

2   evidence during the reasonable royalty phase would take little extra time, and it would be time

3   well spent to ensure that Uber is not unduly prejudiced and the issues are not confused.

4          Finally, Uber objects to Waymo's proposal to have the jury compute reasonable royalty

5   damages even if they are able to calculate unjust enrichment.  Such an approach is contrary to the

6   law that reasonable royalty damages are available only if unjust enrichment cannot be calculated,

7   and it would not be an efficient use of time.  *See*, *e.g.*, CUTSA § 3426.3(b); Dkt. 2229 at 2 (joint

8   proposed reasonable royalty instructions).  Waymo's concern about losing an unjust enrichment

9   award in post-trial briefing is not a legitimate excuse to have the Court, the parties, and the jury

10  engage in the advisory exercise of computing reasonable royalty damages.

11

12  Dated:  January 29, 2018              MORRISON & FOERSTER LLP

13

14                                       By:      */s/ Arturo J. González*
                                                ARTURO J. GONZÁLEZ
15
                                         Attorneys for Defendants
16                                       UBER TECHNOLOGIES, INC.
                                         and OTTOMOTTO LLC
17

18

19

20

21

22

23

24

25

26

27

28