1    MICHAEL A. JACOBS (CA SBN 111664)
     MJacobs@mofo.com
2    ARTURO J. GONZÁLEZ (CA SBN 121490)
     AGonzalez@mofo.com
3    MORRISON & FOERSTER LLP
     425 Market Street
4    San Francisco, California  94105-2482
     Tel: 415.268.7000 / Fax: 415.268.7522
5

6    KAREN L. DUNN (*Pro Hac Vice*)
     kdunn@bsfllp.com
7    MICHAEL BRILLE (*Pro Hac Vice*)
     mbrille@bsfllp.com
8    BOIES SCHILLER FLEXNER LLP
     1401 New York Avenue, N.W.
9    Washington DC  20005
     Tel: 202.237.2727 / Fax: 202.237.6131

10   WILLIAM CARMODY (*Pro Hac Vice*)
     bcarmody@susmangodfrey.com
11   SHAWN RABIN (*Pro Hac Vice*)
     srabin@susmanGodfrey.com
12   SUSMAN GODFREY LLP
     1301 Avenue of the Americas, 32nd Floor
13   New York, NY  10019-6023
     Tel: 212.336.8330 / Fax: 212.336.8340
14

15   Attorneys for Defendants
     UBER TECHNOLOGIES, INC.
16   and OTTOMOTTO LLC

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                      SAN FRANCISCO DIVISION

20   WAYMO LLC,                          Case No.      3:17-cv-00939-WHA

21                    Plaintiff,          **DEFENDANTS UBER
                                          TECHNOLOGIES, INC. AND
22          v.                            OTTOMOTTO LLC'S RESPONSE TO
                                          WAYMO'S TRIAL BRIEF**
23   UBER TECHNOLOGIES, INC.,
     OTTOMOTTO LLC; OTTO TRUCKING
24   LLC,
                                          Trial Date: February 5, 2018
25                    Defendants.

26

27              **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

28

1    Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") respond to

2    Waymo's untimely trial brief.  (Dkt. 2538-4.)  Although it purported to be a response to

3    Defendants' trial brief, Waymo's brief raises new issues that should have been raised on

4    January 23, 2018, as required by the Court's standing order.

5    **A.    WAYMO'S ISSUES**

6         **1.    The Court Should Deny Waymo's Request to Reconsider the Court's Ground
              Rules with Respect to Levandowski's Invocation of Fifth Amendment Rights**
7

8         Waymo's trial brief asks the Court to reconsider and reverse two of its ground rules

9    related to Anthony Levandowski's testimony, specifically (1) the timing of when Levandowski

10   will be questioned by Uber (if he testifies at all) and (2) whether the Fifth Amendment may be

11   referenced during opening statements or before Levandowski testifies (if he is allowed to testify).

12   (*See* Dkt. 1535 ¶¶ 1, 3.)  Neither request is valid—the Court's ground rules are consistent with the

13   governing law and Rules of Evidence, and should remain in place.

14             **a.    The Court Should Overrule Waymo's Objection to Ground
                   Rule Number Three, Which Provides That Uber May Examine
15                 Levandowski at the End of Waymo's Case-in-Chief**

16        As Waymo explicitly acknowledges, "the Court has overruled Waymo's objection" to

17   requiring Levandowski to appear "very close to the end of" Waymo's case-in-chief.  (Dkt. 2538-4

18   (Waymo Trial Br. at 3 (citing Dkt. 1863 [9/27/17 Hr'g Tr.] at 142:16-150:17)); Dkt. 1535 ¶ 2.)

19   Now, Waymo has raised a brand new complaint about the Court's third ground rule, which

20   expressly gives Defendants the option to "either ask their questions based on the corroborating

21   evidence already included in the trial record before the jury at the end of Waymo's case-in-chief,

22   or to postpone their examination of Levandowski and require him to return at the end of

23   defendants' case-in-chief for further questioning."  Waymo chose not object to this ground rule as

24   part of its objections submitted in September.  (Dkt. 1811 (Waymo's objections to Fifth

25   Amendment ground rules) (objecting to Paragraphs 1, 2, and 4 of the ground rules, but not

26   objecting to Paragraph 3).)  Waymo's trial brief submission, however, seeks to undo this ground

27   rule by mandating that Uber wait until its own case-in-chief to ask its questions of Levandowski.

28        Waymo's trial brief provides no valid justification for reconsideration of the Court's

1  ground rule on this issue.  The sole "objection" that Waymo raises is that Uber should not be

2  permitted to go beyond the "subject matter of the direct examination" and "matters of the

3  witness's credibility."  But as Waymo acknowledges, "Federal Rule of Evidence 611(b) commits

4  the scope of cross-examination to the trial judge's discretion," and may "permit cross-

5  examination 'as to all matters reasonably related to the issues" that were "put in dispute by his

6  testimony on direct.'" *United States v. Vasquez*, 858 F.2d 1387, 1392 (9th Cir. 1988) (citations

7  omitted).  Furthermore, the Court has discretion under Rule 611(b) to "allow inquiry into

8  additional matters as if on direct examination." This discretion is to be exercised where it will

9  "aid in the development of the evidence or otherwise facilitate the conduct of the trial."  Notes of

10 Committee on the Judiciary, S. Rep. No. 93-1277, at 7071 (1974).  In the unique circumstance of

11 a witness invoking the Fifth Amendment, the Court's proposed ground rule number three, which

12 allows Uber to examine Levandowski during Waymo's case-in-chief, is a proper exercise of the

13 Court's discretion.

14      In deciding whether Levandowski may be called to the stand even one time, the Court

15 must balance whether the probative value of the witness's invocation of the Fifth Amendment is

16 substantially outweighed by the danger of unfair prejudice and jury confusion from admission of

17 such evidence.  *In re Urethane Antitrust Litigation*, No. 04-1616-JWL, 2013 WL 100250, at *4

18 (D. Kan. Jan. 8, 2013).  To reverse the ground rule already set by the Court and mandate that

19 Levandowski be called to the stand a second time in order to answer questions put to him by Uber

20 would exacerbate the risk of unfair prejudice and confusion.

21      The scope of Waymo's direct examination will be defined by Levandowski's (presumed)

22 invocation of the Fifth Amendment.  Any questions that Uber asks on cross-examination which

23 also elicit Fifth Amendment invocations necessarily are related to that same "subject matter,"

24 Fed. R. Evid. 611(b), because Uber's questions will (a) undermine the validity of the inferences

25 Waymo is seeking by demonstrating the lack of probative value of the invocation; (b) support the

26 competing inferences that Uber will argue are more appropriately drawn from Levandowski's

27 invocation; or (c) do both of those things.  In all of those circumstances, Uber's questioning is

28 related to the subject matter Waymo will have covered in its examination, and permitting Uber to

1    ask the questions at that time will certainly "facilitate the conduct of the trial."  The Court thus

2    properly exercised its discretion under Rule 611(b) in establishing its third ground rule and there

3    is no basis for its reversal.

4            **b.      The Court Should Adhere to Its Proposed Ground Rule**
             **Forbidding References to the Fifth Amendment During**
5            **Opening Statement**

6            Waymo's trial brief also renews its objection to the Court's ground rule prohibiting

7    reference to potential Fifth Amendment invocations during opening statements.  (Dkt. 1535 ¶ 1.)

8    The proposed ground rule was proper in September and remains so now.

9            If Waymo were permitted to bring up the Fifth Amendment during their opening—or at

10   any point in trial prior to when Levandowski is called to the stand (if he is called at all)—it would

11   undoubtedly argue that the jury should infer from Levandowski's Fifth Amendment invocation

12   that *Uber* has done something wrong, and it would do so without any corroborating evidence in

13   the record or any appropriately tailored examination.  The jury will have no context or

14   understanding of the Fifth Amendment at that point; Waymo's blanket statement is an obvious

15   attempt to poison the jury against Uber from the outset without the appropriate evidentiary

16   safeguards.  This is exactly the sort of blind inference that the Ninth Circuit has strictly forbidden.

17   *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (corroborating

18   "independent evidence" must exist before any inference can be drawn).

19           Waymo's argument that the parties may ask about the Fifth Amendment in *voir dire*, its

20   primary argument in September and repeated in its trial brief, is now moot.  (Dkt. 2538-4

21   (Waymo's Trial Br. at 3); Dkt. 1863 (9/27/17 Hr'g Tr.) at 150:10–13.)  Uber has advised

22   Waymo's counsel that it would not be referencing the Fifth Amendment during *voir dire*.  (Ex. 1[1]

23   (1/27/18 Email from A. Gonzalez) ("We will not be raising this [Fifth Amendment] issue in voir

24   dire.").  In light of this concession, Waymo should not be permitted to reference Levandowski's

25   invocation in opening, or at any point prior to the time Levandowski is actually called (if at all).

26   Nor do the cases Waymo cites in support of its position—*Cerro Gordo Charity v. Fireman's*

27   _____

28           [1] All references to ("Ex.") are exhibits attached to the Declaration of Esther Kim Chang in
     Support of Defendants' Response to Waymo's Trial Brief.

DEFENDANTS' RESPONSE TO WAYMO'S TRIAL BRIEF
Case No. 3:17-cv-00939-WHA                                                                3
sf-3862417

1  *Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481 (8th Cir. 1987) and *Pac. Gas & Elec. Co. v. Howard*

2  *P. Foley Co.,* No. 85-2922-SW, 1993 WL 299219, at *10 (N.D. Cal. July 27, 1993)—require the

3  Court to allow Waymo to poison the jury with blanket references to the Fifth Amendment.

4  Neither case says ***anything at all*** about opening statement.

5        Finally, Waymo's meek claim of prejudice should again be rejected.  (Dkt. 2538-4

6  (Waymo's Trial Br. at 2).)  When Waymo sought reversal of this ground rule in September, the

7  Court clearly disagreed, saying: "I don't think you're very prejudiced."  (Dkt. 1863 (9/27/17 Hr'g

8  Tr.) at 146:13–14.)  Even if there were some potential "complication" of Waymo's opening

9  argument by virtue of the ground rule, there is still no basis for discarding it.  The Ninth Circuit

10  has cautioned that the "competing interests" of the parties where the privilege is concerned must

11  be "carefully balanced."  *Doe ex rel. Rudy-Glanzer*, 232 F.3d at 1265.  In this case, that balancing

12  requires the Court's thoughtful vetting of every question to be put to Levandowski in order to

13  prevent the jury from assigning his testimony undue weight or being improperly prejudiced

14  against Uber from the outset, as the Court's ground rules required.  (Dkt. 1535.)

      **2.**      **The List of Trade Secrets Provided to the Jury Should Indicate That They Are Alleged Trade Secrets and Include a Short, Public Description**

17        Uber agrees in principle to Waymo's proposal to provide the jury with binders that

18  contain a list of the alleged trade secrets, identifying each alleged trade secret by number and

19  including the text of the claimed trade secret.  (*See* Dkt. 25-7.)  But Uber requests that the word

20  "Alleged" be added before each trade secret number (*e.g.,* Alleged Trade Secret No. 2) and that a

21  short, public description be included for each trade secret.  Below is Uber's proposal for the short,

22  public description for each trade secret.

| Alleged Trade Secret No. | Short Description |
|---|---|
| ATS 2 | |
| ATS 7 | |
| ATS 9 | |
| ATS 13 | |
| ATS 14 | |
| ATS 25 | |
| ATS 90 | |
| ATS 111 | |

1

    **3.**      **The Court Should Allow Uber's Witnesses to Testify Truthfully to the Current Status of Fuji's Redesign**

2

3        Waymo's request that the Court bar Uber's witnesses from testifying truthfully about the

4   completion of Uber's Fuji redesign represents an attempt to revisit a motion *in limine* that Waymo

5   *dropped* at the September pre-trial conference.  As the Court may recall, Waymo's MIL 17

6   sought to preclude Uber's evidence of its Fuji redesign in part on the grounds that it was not

7   timely disclosed.  (*See* Dkt. 1558 at 2 (Waymo MIL 17).)  Uber demonstrated that, to the

8   contrary, Uber had timely disclosed the relevant evidence in deposition, documents (including

9   CAD files showing the new designs), and interrogatory responses.  (*See* Dkt. 1558-8 at 1-2 (Uber

10  Opp'n); Dkt. 1558-3 at 31-35 (supplemental interrogatory responses citing redesign documents).)

11  Waymo informed the Court it was dropping the MIL, and the Court embodied that resolution in

12  its order on the MILs.  (Dkt. 1863, Tr. Hr'g at 151:3-7 (withdrawing MIL 17); Dkt. 1885, Order

13  at 3.)

14       Uber's disclosures before the close of fact discovery made clear that certain Fuji redesigns

15  were underway, and provided the details of those redesigns (including CADs).  Waymo does not

16  contest that the previously-disclosed information about the redesigns can be presented at trial.

17  The only issue is whether Uber's witnesses (particularly lead Fuji engineer James Haslim) can

18  truthfully testify that those already disclosed redesigns have been implemented in hardware, and

19  that the current prototypes of Fuji embody the previously-disclosed redesigns that avoid ATS 2,

20  7, 13, and 14.

21       Since MIL 17's resolution, Waymo has not raised questions about the Fuji redesigns or

22  sought any further discovery.  To avoid any claim of sandbagging, Uber notified Waymo of

23  Mr. Haslim's intended testimony and offered to make him available for deposition.  (Ex. 2

24  (1/15/18 Email from D. Muino); Ex. 3 at 2-3 (1/18/18 Email from D. Muino).)  At Waymo's

25  insistence, Uber also updated its document production.  (Ex. 4 at 1 (1/22/18 Email from

26  D. Muino.)  But Waymo has apparently decided that the better course is to try to hold Mr. Haslim

27  to a chronological straightjacket and even to testify untruthfully based on facts that are no longer

28  current.  That makes no sense.

The better course is to allow updated and truthful testimony anchored by the disclosures made before the close of fact discovery.  Uber does not intend to rely on any new documents— only those produced as of the fact discovery cut-off on August 24.  Uber is still willing to make Mr. Haslim available for deposition, and that should be sufficient.  *See Finjan, Inc. v. Blue Coat Sys.*, No. 13-cv-03999-BLF, 2015 WL 4129193, at *3 (N.D. Cal. July 8, 2015) (finding that "any prejudice from Defendant's disclosure [of a design around after fact discovery cutoff] is better addressed through discovery" and ordering a 3-hour deposition between the pretrial conference and start of trial).

As was true when Waymo earlier sought exclusion with its MIL 17, Uber's detailed and extensive disclosures of its redesigns before the discovery cut-off refute Waymo's current complaints.  Uber responded to Waymo's interrogatory regarding redesign efforts with descriptions of the specific redesigns it was implementing and estimates of the time and costs to modify its design on July 28, 2017.  (*See* Dkt. 1558-9 at 3-11; Dkt. 1558-8, Uber Opp'n to MIL 17 at 1-2 (quoting descriptions).)  Waymo deposed Mr. Haslim about each of the contemplated redesigns on August 9.  (*See e.g.*, Dkt. 1558-6, 8/9/17 Haslim Dep. at 425:6-434:7, 702:11-703:20 (Alleged Trade Secret ("ATS") 2 redesign), 662:3-670:17 (ATS 7 redesign); 434:9-443:24 (ATS 9 redesign), 703:21-706:19 (ATS 13/14 redesign).)  Uber supplemented its interrogatory responses and disclosed documents pertaining to the redesigns, including CAD design files and the identity and statement of work (SOW) for the third-party vendor retained for the ATS 9 redesign, on August 24, 2017.  (*See* Dkt. 1558-3 at 31 (TS 2), 32 (TS 7), 33-34 (TS 9), 34-35 (TS 13/TS 14).)  These interrogatory responses also reported on the status of the redesigns as of that date.  (*See id.* at 41-42 ("Receipt of newly designed PCBs" completed for ATS 7 redesign, "CAD drawing" completed for ATS 2 and ATS 13/ATS 14 redesign; "SOW sent to vendor" for ATS 9 redesign).)  In particular, the responses state the expected completion date for the redesigns:  "[r]eplacement of all old PCBs" in about "one month" for ATS 7 redesign; "[a]nticipated receipt of prototype PCBs" in 22 working days, with 7 working days of testing for ATS 2, ATS 13, and ATS 14 redesign; and "anticipated receipt of prototype lenses" in 22 weeks, with 3 weeks of testing for ATS 9 redesign.  (*Id.*)

Because Uber disclosed its CAD design files, vendor statement of work, and time and cost estimates by August 24, little additional redesign evidence will be presented to the jury. Both Waymo and Uber's experts addressed the redesigns. (*See e.g.*, Dkt. 2238-5 at 178-179 (Waymo expert on Uber redesigns); Ex. 5 (Hesselink Rply Rpt. at 30-31, 38-39, 50-51, 58-60, 68-70).) At trial, Mr. Haslim would testify that operational Fuji prototypes now implement the ATS 7, ATS 2, ATS 13, and ATS 14 redesigns and that the ATS 9 redesign is expected to become available soon. He would add that the redesigns have been implemented consistent with the original estimates that were disclosed to Waymo before the close of fact discovery. He would also present a redesigned Fuji prototype. The benefit to the jurors of seeing the physical features instead of merely drawings outweighs any limited prejudice to Waymo. *See Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06–CV–72–DF, 2011 WL 8810604, at *12 (E.D. Tex. Aug. 2, 2011) (denying motion to strike supplemental declaration on implementation of non-infringing alternative, where costs and technical feasibility were already addressed in original declaration and declarant's deposition, and "the significance of [declarant's] supplementation, as well as its limited potential prejudice, if any, are insufficient to warrant striking it").

Waymo complains that it had no opportunity to subpoena and depose the third-party vendor for the ATS 9 redesign. (Dkt. 2539, Waymo Resp. at 6.) But Waymo never previously sought further discovery from Uber or the identified third-party vendor when this was disclosed to Waymo on August 24. Waymo also did not engage in any discovery regarding the disclosed estimated implementation dates. Uber does not object to any additional discovery from the third party vendor, and even offered to facilitate that discovery. (Ex. 4 at 1 (1/22/18 Email from D. Muino.) If Waymo decides that it cannot complete the discovery now, that is Waymo's fault, not Uber's.

Finally, Waymo is struggling to define its damages in light of this Court's rulings, but its most recent disclosures suggest it intends to seek more than $1 billion from Uber. Assuming Waymo prevails on its "use" arguments for the old Fuji designs, it would be a bizarre outcome for Waymo to collect such astronomical sums for alleged trade secrets that Uber not only plans not to use in the future, but has already stopped using. It would be unfair to deny Uber the opportunity

1  to defend itself against such claims, and the Court should allow Uber to introduce evidence of tis

2  discontinued use of those alleged secrets.

3  **B.      UBER'S ISSUES**

4              **1.      The Court's Standing Order Regarding Disclosure of Exhibits Is in Effect
                       and Applies to Exhibits for Direct Examination of Adverse Witnesses**
5

6              Waymo's trial brief proceeds from a flawed conclusion regarding the disclosure of

7  exhibits during trial.  Waymo claims that Uber agreed to exchange exhibits by 5:00 p.m. the day

8  before a witness testifies.  (Dkt. 2538-4 at 8 n.2.)  That is not accurate.  Uber noted that it would

9  agree to 5:00 as a compromise, but only if Waymo agreed to disclose exhibits pertaining to

10 adverse witnesses.  (Dkt 2254-1 at 4 ("*If you agree* about adverse witnesses, then we agree to

11 your proposal that exhibits will be disclosed by 5:00 the day before they are used.") (emphasis

12 added).)  Waymo did not agree to that condition.  Thus, there was no agreement regarding the

13 disclosure of exhibits.  Lest there be any doubt, Uber has not agreed and does not agree to any

14 deviation from the Court's standing order regarding exhibit disclosures—whether for direct or

15 cross examination.  (*See* Judge Alsup's Guidelines for Trial & Pretrial Conference in Civil Jury

16 Cases (rev. May 8, 2017) (Judge Alsup's Guidelines") ¶ 11.)  Direct exhibits must be disclosed

17 one day or two days before a witness testifies, depending upon whether the discloser wishes to

18 see the other party's cross exhibits.  (*Id.*)  Waymo, as the Plaintiff, has over-designated thousands

19 of exhibits, and the only way to avoid sandbagging is to stick to this Court's Trial Guidelines.

20             Because there is no agreement about cross-examination exhibits, there is no "distinction

21 without a difference" (Dkt. 2538-4 at 7) between Uber's treatment of exhibits for adverse

22 witnesses and cross-examination exhibits.  Under the Court's standing order, both must be

23 disclosed (in the case of cross-examination exhibits, only if the party examining the witness

24 discloses its direct examination exhibits two days in advance).  Again, this Court's standing order

25 contemplates that direct examination exhibits for adverse witnesses must be disclosed:  it exempts

26 from that requirement exhibits to be used for impeachment.  If the rule requiring disclosure of

27 direct examination exhibits were intended to apply only to friendly witnesses (and not adverse

28 witnesses), it would not have included an exception for impeachment because impeachment

1   applies only to adverse witnesses.

2          Moreover, if this Court wanted to exclude direct examination of adverse witnesses from

3   its exhibit disclosure requirement, it would have said so.  Because there is no agreement between

4   the parties to deviate from the Court's standing order, that order controls.  And under that order,

5   exhibits to be used in the direct examination of any witness (including adverse witnesses) must be

6   disclosed.

7          Given the many complex evidentiary issues that will arise during trial, Uber requests that

8   the parties comply with this Court's stated preference that direct examination exhibits be

9   disclosed two days before a witness testifies.  Waymo has refused to narrow its list of trial

10  exhibits and should not be allowed to engage in hide-the-ball litigation tactics.  The Court's Trial

11  Guidelines are fair and both sides should follow it.

12          **2.      Waymo Concedes That It Did Not Plead "Use" or "Disclosure" by MoFo or
                       Stroz**

13          Waymo's response confirms that this issue should not go to the jury.  By its silence,

14  Waymo concedes that it has never pled nor disclosed that it is pursuing a theory of trade secrets

15  misappropriation based on any "use" or "disclosure" by MoFo or Stroz.  (*See* Dkt. 2538-4 at 8.)

16  Waymo also admits that it "does not intend to ask for damages based on MoFo or Stroz's use or

17  disclosure of Waymo's trade secrets."  (*Id.*)

18          Nonetheless, Waymo claims that it intends to show that Uber "wrongfully acquired the

19  trade secrets at least when its agents MoFo and Stroz took possession of them."  (*Id.*)  Waymo

20  claims that such evidence would support "an award of injunctive relief."  (*Id.*)  But this argument

21  misses the boat—injunctive relief is equitable.  Moreover, Waymo never disclosed that it was

22  pursuing this claim.  And perhaps most importantly, it is undisputed that MoFo and Stroz have

23  Google materials.  Without conceding liability, Uber would not oppose an injunction requiring

24  MoFo and Stroz to return or destroy the materials they received as part of the Ottomotto

25  acquisition due diligence after the end of this litigation, subject to any applicable preservation

26  obligations, and after notice and an opportunity to object is given to affected parties.  Thus, there

27  is no need for this issue to be presented to the jury.

28

DEFENDANTS' RESPONSE TO WAYMO'S TRIAL BRIEF
Case No. 3:17-cv-00939-WHA
sf-3862417

9

### 3. Waymo's Undisclosed Theory of "Disclosure" to Vendors

Having failed to timely disclose its new theory of liability based on Uber's alleged disclosure to its vendors, Waymo now attempts to shoehorn any disclosure relating to vendors as relevant to this new theory of liability. Waymo first points to its disclosure of William Grossman as evidence that it disclosed this theory of disclosure to vendors. But Waymo's own brief admits that Mr. Grossman was only disclosed as having "knowledge of 'matters that concern ***Waymo's*** accidental receipt of an email containing an ***Otto*** LiDAR PCB.'" (Dkt. 2538-4 at 9 (emphasis added).) The disclosure for Mr. Grossman relates to receipt of information by Waymo (not a vendor) and of Ottomotto's information (not Waymo's). The disclosure for Mr. Grossman fails to fulfill the intended notice function of disclosures and failed to put Uber on notice that Waymo may assert a theory of liability based on disclosure to vendors. In any event, to the extent that the disclosure for Mr. Grossman provided any notice for this theory, it was limited to disclosure by Ottomotto—not Uber.

Waymo also points to document requests asking for the identity of and communications with vendors as sufficient disclosure of its theory. Taken to its logical end, Waymo's position would mean that Waymo could assert any theory of liability with respect to any entity for which documents were requested. In this case, Waymo served almost 390 document requests, including requests directed at several named individuals (*e.g.*, Anthony Levandowski, Lior Ron, and Travis Kalanick), third-party entities (*e.g.*, Tyto, Odin Wave, Pouch Holdings), and groups of individuals (*e.g.*, former Waymo or Google employees). It cannot be that by doing so, Waymo has disclosed any conceivable theory of liability with respect to the subjects of the document requests.

Waymo also attempts to excuse its failure to disclose this theory in response to interrogatories calling for such disclosure by rewriting the interrogatory. (Dkt. 2538 at 9.) For example, Interrogatory No. 8 asks for "all instances in which the trade secret (or any Waymo LiDAR device utilizing the trade secret) was publicly or otherwise disclosed to third parties." (*Id.*) This interrogatory is not limited to Waymo's disclosure to third parties, but any disclosure of which Waymo was aware. By this interrogatory, Uber sought information regarding ***any*** disclosure of the alleged trade secrets—even by someone other than Waymo—because public

1   disclosure defeats trade secret status.  Waymo now argues that the interrogatory was limited to

2   "all instances in which the trade secret (or any Waymo LiDAR device utilizing the trade secret)

3   was publicly or otherwise disclosed *by Waymo* to third parties."  (Dkt. 2538-4 at 9.)  But there is

4   no such limitation in the plain wording of the interrogatory.  (Dkt. 2517 at 4; Dkt. 2252-5.)

5        In its most recent order regarding jury instructions, the Court ruled that "no recovery

6   theory [would] go to the jury for damages based solely on misappropriation by acquisition only."

7   (Dkt. 2495 at 1.)  This Court concluded that "Waymo failed to disclose an acquisition-only

8   damages theory as required by FRCP 26(a) and [was thus] precluded from asserting any such

9   theory at trial under FRCP 37(c)(1)."  (*Id.* at 5.)  For the same reason, any evidence or argument

10  regarding Waymo's untimely disclosed theory pertaining to disclosure to vendors should be

11  barred.

12  **4.     Waymo Offers No Persuasive Reason for Violating the Court's Disclosure**
        **Requirements for Waymo's New Witnesses**

13

14       Waymo complains that Uber should have filed a *precis* to raise objections to witnesses

15  and testimony that Waymo did not timely disclose.  That is simply untrue.  Uber has repeatedly

16  and timely objected to each improper witness or subject of testimony.  Uber raises them in its

17  amended trial brief only because Waymo's attempt to go beyond its Rule 26(a)(1) witness

18  disclosures is so egregious and extensive that it should be addressed before trial.

19       The problem with Waymo's position is glaring—it requires the Court to re-write

20  Rule 26(a)(1) so that it no longer requires:  (a) the disclosure of the identity of a witness as long

21  as he is deposed or (b) the disclosure of the subject matter of the testimony of anyone working for

22  the opposing party.  There are good reasons these exceptions are not in Rule 26 and they should

23  not be added now.

24       Waymo seeks to excuse its failure to disclose nine of *its own employees* because most of

25  them were deposed by Uber, including Shawn Bananzadeh, whose addition is the subject of a

26  pending motion (Dkts. 2305, 2323) and of whom the Court already ruled could not testify in

27  Waymo's case-in-chief (Dkt. 2323 at 1-2).  The Court has already addressed and rejected this

28  very argument the first time Waymo tried to add Mr. Bananzadeh:

1

2

3

    MS. ROBERTS: Well, your Honor, I think since -- since they deposed him, their approach to preparing to cross examine him at trial would be no different than their approach to cross examining everybody else because they have his deposition.

4

5

    THE COURT: Yeah, but under that theory that everybody who got deposed in the case then is open season. Anybody can -- can just automatically add them to their trial list, right? Everybody who was deposed.

6

    MS. ROBERTS: Fair enough, your Honor.

7 (Dkt. 2124 (10/26/2017 Hr'g Tr. at 12:13-22).)  The prejudice to Uber from this sandbagging is

8 significant.  The fact that Uber sought to depose a Waymo witness to gather evidence for *its case*

9 does not excuse Waymo's failure to disclose its own intent to rely on that witness for *Waymo's*

10 case.  A deposition taken by a party to gather affirmative evidence is very different from one

11 taken of a witness the opposing party intends to call at trial.  If Waymo's position were accepted,

12 Uber would have needed to exhaust the knowledge on every conceivably relevant topic for all the

13 dozens of individuals it noticed for deposition, in the event Waymo should decide to affirmatively

14 offer their testimony at trial.

15     Waymo likewise argues that its addition of eight of its ***own*** employees—including its

16 CEO—is justified because Uber added two ***Waymo*** employees from whom documents were

17 produced during discovery.  The two are not remotely comparable.  Waymo added its own

18 witnesses; Uber added two adverse witnesses.  Uber added witnesses from Waymo for which

19 discovery revealed testimony may be needed at trial.  Waymo, on the other hand, offers no

20 justification for adding ***its own employees*** after the close of discovery.

21

22

    **5.    Waymo Likewise Offers No Persuasive Reason for Why Its Witnesses Should Be Allowed to Testify Beyond the Scope of the Testimony in the Disclosures**

23     Uber's objections to the scope of testimony on Waymo's trial witness list are valid.  As

24 noted above, many of Waymo's untimely additions are for its own Waymo witnesses.  Waymo

25 was aware of the relevant subjects for these witnesses well before the end of discovery.  Waymo

26 falsely claims equivalence between Uber's minor additions and clarifications to the topics for

27 three witnesses (Dkt. 2538-4 at 14-15) and Waymo's massive rewriting of its vague initial

28 disclosures that listed, for nearly every witness, just the subject "matters that concern the

1  misappropriation of trade secrets." (Dkt. 2517 at 7-8.) Uber refers the Court to Exhibit A of

2  Uber's objections to Waymo's Fourth Amended Witness list, which demonstrates the

3  egregiousness of Waymo's attempts to expand the subjects on which it now seeks to question

4  witnesses. (Dkt. 2520-3.)

5       Moreover, Uber's minor modifications to the scope of testimony for three witnesses were

6  for non-Uber witnesses: two Waymo employees, including Gary Brown (who was involved in

7  the Google forensic investigation that Waymo initially tried to shield from discovery) and a Stroz

8  Friedberg employee for whom Uber clarified—but did not change—the scope of the anticipated

9  testimony.

10      **6.      Waymo Is Bound to Its Disclosed Damages Computation and Should Not Be
           Allowed to Admit Evidence of Reasonable Royalty Until the Proper Time**

11

12      Waymo is not correct that all issues relating to Waymo's damages case (other than the two

13  offers of proof) are settled. As Uber explained in its amended trial brief, Waymo has still failed

14  to provide a computation of damages, as required by Rule 26. As a result, Rule 37 precludes

15  Waymo from offering any damages computation that was not in its disclosures. In addition, with

16  respect to theories of damages, Waymo cites the same colloquy with the Court, but fails to

17  respond to the following point in Uber's amended trial brief: "The fact that a judge need not sort

18  out precise damages *computations* ahead of time does not mean that a defendant is free to venture

19  beyond its disclosed *theories* of damages." (Dkt. 2517 (Uber Trial Brief) at 12.) Trial is not the

20  time for Waymo to disclose new theories of damages.

21      Waymo also wants to admit evidence relevant only to a reasonable royalty in the main

22  case even though the jury will not be asked to compute a reasonable royalty. Such an approach

23  would unduly prejudice Uber, confuse the issues, and mislead the jury. Fed. R. Evid. 403.

24  Obviously, if evidence is relevant to liability or unjust enrichment, it can come in. But if

25  evidence is relevant only to the issue of reasonable royalty, then it should not be admitted until a

26  potential later phase that addresses reasonable royalty. Rather than allowing reasonable royalty

27  evidence during the liability phase, the Court should allow unjust enrichment evidence in the

28  reasonable royalty phase. Uber identified the types of evidence relevant only to unjust

1    enrichment in its trial brief.  (Dkt. 2517 (Uber Trial Brief) at 13-14.)  Admitting this limited

2    evidence during the reasonable royalty phase would take little extra time, and it would be time

3    well spent to ensure that Uber is not unduly prejudiced and the issues are not confused.

4           Finally, Uber objects to Waymo's proposal to have the jury compute reasonable royalty

5    damages even if they are able to calculate unjust enrichment.  Such an approach is contrary to the

6    law that reasonable royalty damages are available only if unjust enrichment cannot be calculated,

7    and it would not be an efficient use of time.  *See*, *e.g.*, CUTSA § 3426.3(b); Dkt. 2229 at 2 (joint

8    proposed reasonable royalty instructions).  Waymo's concern about losing an unjust enrichment

9    award in post-trial briefing is not a legitimate excuse to have the Court, the parties, and the jury

10   engage in the advisory exercise of computing reasonable royalty damages.

11

12   Dated:  January 29, 2018                    MORRISON & FOERSTER LLP

13

14                                              By:  _____*/s/ Arturo J. González*_____

15                                                    ARTURO J. GONZÁLEZ

16                                              Attorneys for Defendants
                                                UBER TECHNOLOGIES, INC.
17                                              and OTTOMOTTO LLC

18

19

20

21

22

23

24

25

26

27

28

1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzález@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Tel: 415.268.7000 / Fax: 415.268.7522
5
   KAREN L. DUNN (*Pro Hac Vice*)
6  kdunn@bsfllp.com
   MICHAEL BRILLE (*Pro Hac Vice*)
7  mbrille@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
8  1401 New York Avenue, N.W.
   Washington DC  20005
9  Tel:  202.237.2727 / Fax: 202.237.6131

10 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
11 SHAWN RABIN (*Pro Hac Vice*)
   srabin@susmangodfrey.com
12 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
13 New York, NY  10019-6023
   Tel:  212.336.8330 / Fax:  212.336.8340

14

15 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
16 and OTTOMOTTO LLC

17                   UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                     SAN FRANCISCO DIVISION

20

21 WAYMO LLC,                          | Case No.      3:17-cv-00939-WHA

22              Plaintiff,             | **DECLARATION OF ESTHER KIM
                                       | CHANG IN SUPPORT OF**
23        v.                           | **DEFENDANTS UBER
                                       | TECHNOLOGIES, INC. AND**
24 UBER TECHNOLOGIES, INC.,            | **OTTOMOTTO LLC'S RESPONSE TO
   OTTOMOTTO LLC; OTTO TRUCKING        | WAYMO'S TRIAL BRIEF**
25 LLC,                               |
                                       | Trial Date: February 5, 2018
26              Defendants.            |

27

28

I, Esther Kim Chang, declare as follows:

1.      I am an attorney with the law firm of Morrison & Foerster LLP.  I am a member in good standing of the Bar of the State of California.  I make this declaration based on personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.  I make this declaration in support of Defendants Uber Technologies, Inc. and Ottomotto LLC's Response to Waymo's Trial Brief.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently as to these facts.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of an email from Arturo Gonzalez, counsel for Uber, to Andrea Roberts, counsel for Waymo, dated January 27, 2018.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of an email from Daniel Muino, counsel for Uber, to counsel for Waymo, dated January 15, 2018.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of an email from Daniel Muino, counsel for Uber, to Jordan Jaffe, counsel for Waymo, dated January 18, 2018.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of an email from Daniel Muino, counsel for Uber, to Jordan Jaffe, counsel for Waymo, dated January 22, 2018.

6.      Attached hereto as **Exhibit 5** are true and correct copies of relevant pages from the Reply Expert Report of Lambertus Hesselink, Ph.D, dated September 14, 2017.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 29th day of January, 2018 in San Francisco, California.

_/s/ Esther Kim Chang_
ESTHER KIM CHANG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. Gonzalez, am the ECF User whose ID and password are being used to file this Declaration.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Esther Kim Chang has concurred in this filing.

Dated:  January 29, 2018

_____/s/ Arturo J. González_____
ARTURO J. GONZÁLEZ

# EXHIBIT 1

| | |
|---|---|
| **From:** | Gonzalez, Arturo J. |
| **Sent:** | Saturday, January 27, 2018 4:28 PM |
| **To:** | Andrea P Roberts; 'John Cooper'; Chang, Esther Kim |
| **Cc:** | UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Uber-sg@LISTS.SUSMANGODFREY.COM; Matthew Cate; QE-Waymo |
| **Subject:** | Waymo v. Uber Voir Dire |

Andrea,

We will not be raising this issue in voir dire.

**ARTURO J. GONZÁLEZ**
Partner | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
**P:** +1 (415) 268-7020
mofo.com | LinkedIn | Twitter

**From:** Andrea P Roberts [mailto:andreaproberts@quinnemanuel.com]
**Sent:** Saturday, January 27, 2018 4:26 PM
**To:** Gonzalez, Arturo J.; 'John Cooper'; Chang, Esther Kim
**Cc:** UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Uber-sg@LISTS.SUSMANGODFREY.COM; Matthew Cate; QE-Waymo
**Subject:** RE: Waymo v. Uber Voir Dire

**- External Email -**

Arturo,

I'm following up on my email below.  Please let us know if Uber has made a decision on this issue.

Thanks,
Andrea

**From:** Andrea P Roberts
**Sent:** Thursday, January 25, 2018 8:38 PM
**To:** 'Gonzalez, Arturo J.' <AGonzalez@mofo.com>; 'John Cooper' <JCooper@fbm.com>; Chang, Esther Kim <echang@mofo.com>
**Cc:** UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Uber-sg@LISTS.SUSMANGODFREY.COM; Matthew Cate <MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo v. Uber Voir Dire

Arturo,

Has Uber decided whether it will raise in voir dire whether the potential jurors have any views if a witness invokes the Fifth Amendment?

Thanks,
Andrea

**From:** Gonzalez, Arturo J. [mailto:AGonzalez@mofo.com]
**Sent:** Sunday, November 26, 2017 7:29 PM
**To:** 'John Cooper' <JCooper@fbm.com>; Chang, Esther Kim <echang@mofo.com>
**Cc:** Andrea P Roberts <andreaproberts@quinnemanuel.com>; UberWaymoMoFoAttorneys
<UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit
<BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Uber-sg@LISTS.SUSMANGODFREY.COM; Matthew Cate
<MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** Waymo v. Uber Voir Dire

Andrea,

We have not made a final decision on whether to raise this issue in voir dire.  As of now, the Court has told the parties
not to mention it in opening statement.  If we plan to raise it in voir dire, we will let you know.

Arturo

---

**From:** John Cooper [mailto:JCooper@fbm.com]
**Sent:** Sunday, November 26, 2017 5:06 PM
**To:** Chang, Esther Kim
**Cc:** Andrea P Roberts; UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Uber-sg@LISTS.SUSMANGODFREY.COM; Matthew Cate; QE-Waymo
**Subject:** Re: Waymo v. Uber Voir Dire

Esther

Please respond to Andrea's email of November 15 below. Thank you.

John

John L. Cooper
Farella Braun + Martel LLP
Direct: 415 954 4410
jcooper@fbm.com

On Nov 26, 2017, at 4:51 PM, Chang, Esther Kim <echang@mofo.com> wrote:

> Apologies.  We thought the meet and confer at 4:30 pm was cancelled, in light of our response regarding
> the Jacobs letter and John's email cancelling the meet and confer.

On Nov 26, 2017, at 4:46 PM, Andrea P Roberts <andreaproberts@quinnemanuel.com> wrote:

> **- External Email -**
>
> ---
>
> Counsel,
>
> We were on the line with John for the 4:30 meet and confer, but no one from
> Uber's side that was prepared to discuss this issue joined the call.  There is
> another meet and confer scheduled for tomorrow.  Please provide a response to
> my November 15 email on this issue before that time.

Thanks,
Andrea

---

**From:** John Cooper [mailto:JCooper@fbm.com]
**Sent:** Sunday, November 26, 2017 3:49 PM
**To:** Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Cc:** UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>;
BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Uber-sg@LISTS.SUSMANGODFREY.COM; Matthew Cate <MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** Re: Waymo v. Uber Voir Dire

Counsel

Notwithstanding my previous message removing the 4:30 meet and confer, in light of Andrea's message we will meet and confer at 4:30. Call in 888-759-6039 access 415-954-4410.

John

John L. Cooper
Farella Braun + Martel LLP
Direct: 415 954 4310
jcooper@fbm.com

On Nov 26, 2017, at 3:45 PM, Andrea P Roberts <andreaproberts@quinnemanuel.com> wrote:

> I understand that there is a meet and confer today at 4:30 pm. We would like to discuss this issue on that call.
>
> Thanks.
>
> ---
>
> **From:** Andrea P Roberts
> **Sent:** Wednesday, November 22, 2017 9:45 AM
> **To:** UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>;
> BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Uber-sg@LISTS.SUSMANGODFREY.COM
> **Cc:** QE-Waymo <qewaymo@quinnemanuel.com>
> **Subject:** RE: Waymo v. Uber Voir Dire
>
> Counsel,
>
> Can you please provide a response to my email below?
>
> Thanks,
> Andrea

3

**From:** Andrea P Roberts
**Sent:** Wednesday, November 15, 2017 2:33 PM
**To:** UberWaymoMoFoAttorneys
<UberWaymoMoFoAttorneys@mofo.com>;
BSF_EXTERNAL_UberWaymoLit
<BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Uber-
sg@LISTS.SUSMANGODFREY.COM
**Cc:** QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** Waymo v. Uber Voir Dire

Counsel,

I write to follow up on the parties' discussion at the September 27
Pretrial Conference regarding voir dire.  Specifically, Waymo and
the Court asked Uber if it will raise in voir dire whether the
potential jurors have any views if a witness invokes the Fifth
Amendment.  This arose in connection with whether Waymo will
be permitted to tell the jury in its opening statement that
Levandowski will plead the Fifth.  (9/27/17 Hearing Tr.,  147:15-
150:17.)  Please let us know if Uber intends to do so.

Thanks,

Andrea


**Andrea Pallios Roberts**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5023 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
andreaproberts@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

_____

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

```
========================================================================
=======
```

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

```
========================================================================
```

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Muino, Daniel P. |
| **Sent:** | Monday, January 15, 2018 8:16 PM |
| **To:** | QE-Waymo |
| **Cc:** | UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com'; Uber-sg@LISTS.SUSMANGODFREY.COM |
| **Subject:** | Waymo v. Uber:  Fuji Redesigns |

Counsel,

As Uber disclosed in its supplemental responses to Common Interrogatories 1 and 4 on August 24, 2017, Uber has been working on redesigns of certain accused features of Fuji.  We write to disclose the status of that effort.  Please be informed that James Haslim may testify at trial to the following updated information regarding the Fuji redesigns:

- The redesign disclosed in the response to Common Interrogatory 4 with respect to alleged TS 7 is complete and has been implemented in the transmit boards of all operational Fuji prototypes.
- The redesigns disclosed in the response to Common Interrogatory 4 with respect to alleged TS 2, 13, and 14 are complete and have been implemented in at least two operational Fuji prototypes.
- The FAC lens optical design disclosed in the response to Common Interrogatory 4 with respect to alleged TS 9 is complete and the lenses are expected to be available in February 2018.

Best regards,

**DANIEL P. MUINO**
Partner | Morrison & Foerster LLP
2000 Pennsylvania Avenue, NW | Washington, DC 20006-1888
**P:** +1 (202) 887-1501
mofo.com | LinkedIn | Twitter
Visit MoFo@ITC Blog

1

# EXHIBIT 3

**From:**           Muino, Daniel P.
**Sent:**           Thursday, January 18, 2018 10:06 AM
**To:**              Jordan Jaffe; QE-Waymo
**Cc:**              UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com'; Uber-
                       sg@LISTS.SUSMANGODFREY.COM
**Subject:**       RE: Waymo v. Uber:  Fuji Redesigns

Counsel,

Uber has already produced information regarding the Fuji redesigns with respect to alleged TS 2, 7, 13, and 14.  Uber's August 24, 2017 supplemental response to Common Rog. 4 disclosed (1) detailed descriptions of the redesigns; (2) documents pertaining to the redesigns, including CAD drawings; and (3) the identity of Uber witnesses knowledgeable about the redesigns, including Mr. Haslim.  Waymo's expert, Dr. Hesselink, already had the opportunity to address the redesigns in his expert reports of August 24 and September 14, 2017, and devoted a number of pages to that subject.  Uber's expert, Dr. Lebby, likewise addressed the redesigns in his expert report of September 7, 2017.  Both sides had the opportunity to depose the experts concerning the redesigns.  Waymo has not previously sought any further discovery regarding the Fuji redesigns.

Our email of January 15 was simply to inform you that the previously-disclosed redesigns with respect to alleged TS 2, 7, 13, and 14 are finished and have been implemented in Fuji prototypes.  Uber does not intend to rely on additional documents beyond the ones previously disclosed on August 24, 2017.  Uber expects to present one of the redesigned Fuji prototypes at trial.  Should Waymo care to inspect that physical prototype, we will make it available for inspection.  With respect to your questions concerning the timing of completion of the redesigns, testing, etc., Uber is willing to make Mr. Haslim available for a further deposition of reasonable length on January 26 to address those questions.

With respect to alleged TS 9, Uber previously disclosed on August 24, 2017, that it had retained an independent vendor to design a new FAC lens.  That design is now finished, although the FAC lenses have not yet been installed in Fuji prototypes.  We will make Mr. Haslim available to testify on this as well.

Best regards,
Dan

---

**From:** Jordan Jaffe [mailto:jordanjaffe@quinnemanuel.com]
**Sent:** Wednesday, January 17, 2018 2:30 PM
**To:** Muino, Daniel P.; QE-Waymo
**Cc:** UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com'; Uber-sg@LISTS.SUSMANGODFREY.COM
**Subject:** RE: Waymo v. Uber: Fuji Redesigns

- External Email -

---

Counsel,

Prior to your email over the three day weekend, Uber had not provided any additional details regarding its alleged design-around efforts since the close of discovery in August 2017.   With trial "nigh at hand" as explained yesterday by Judge Alsup, there is insufficient time to allow Waymo proper discovery into this new

information, including possibly reviewing new documentary evidence, taking one or more Uber fact depositions, issuing third party subpoena(s), supplemental expert reports by both Waymo and Uber experts, and another round of expert depositions.  If Uber wanted to rely on alleged design arounds, there's no reason it could not have begun working on them earlier.  Uber should not be able to benefit from its tactful delay to deprive Waymo proper discovery before trial.  The information below is still scant at best.

So that we can better understand Uber's position and what it is proposing, please identify when Uber learned the information communicated below and what Uber's reason for not disclosing it earlier?  The email further does not indicate when each of these alleged re-designs was "completed" or what "completed" refers to in this context.  Nor does the email explain whether these alleged re-designs have been tested or validated, or their performance effects.  In contrast, during the most recent, August 9th deposition of James Haslim, Mr. Haslim confirmed that, as of that date, none of these design-arounds had yet been implemented, none had yet been tested or validated, and that Uber had not yet even made a final decision as to whether to proceed with many of them.  Please explain.  Also, your email makes no mention of documents relating to the alleged design-arounds, which would presumably exist.  Does Uber intend to provide documents as well?  If so, when and what is the volume?  When does Uber intend to complete its production?  Who was involved in the alleged redesign effort and does Uber intend to make them available for deposition about the alleged re-designs?  If so, when does Uber propose that these depositions be completed?

Waymo reserves all rights, including the right to seek preclusion and/or additional appropriate discovery into Uber's continuing design-around efforts.

Best regards,

Jordan R. Jaffe // Quinn Emanuel // 415.498.0556 // jordanjaffe@quinnemanuel.com

---

**From:** Muino, Daniel P. [mailto:DMuino@mofo.com]
**Sent:** Monday, January 15, 2018 8:16 PM
**To:** QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>;
'BSF_EXTERNAL_UberWaymoLit@bsfllp.com' <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; Uber-sg@LISTS.SUSMANGODFREY.COM
**Subject:** Waymo v. Uber: Fuji Redesigns

Counsel,

As Uber disclosed in its supplemental responses to Common Interrogatories 1 and 4 on August 24, 2017, Uber has been working on redesigns of certain accused features of Fuji.  We write to disclose the status of that effort.  Please be informed that James Haslim may testify at trial to the following updated information regarding the Fuji redesigns:

-   The redesign disclosed in the response to Common Interrogatory 4 with respect to alleged TS 7 is complete and has been implemented in the transmit boards of all operational Fuji prototypes.
-   The redesigns disclosed in the response to Common Interrogatory 4 with respect to alleged TS 2, 13, and 14 are complete and have been implemented in at least two operational Fuji prototypes.
-   The FAC lens optical design disclosed in the response to Common Interrogatory 4 with respect to alleged TS 9 is complete and the lenses are expected to be available in February 2018.

Best regards,

**DANIEL P. MUINO**
Partner | Morrison & Foerster LLP
2000 Pennsylvania Avenue, NW | Washington, DC 20006-1888

**P:** +1 (202) 887-1501
mofo.com | LinkedIn | Twitter
Visit MoFo@ITC Blog

========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 4

| From: | Muino, Daniel P. |
|---|---|
| Sent: | Monday, January 22, 2018 7:15 PM |
| To: | Jordan Jaffe; QE-Waymo |
| Cc: | UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com'; Uber-sg@LISTS.SUSMANGODFREY.COM |
| Subject: | RE: Waymo v. Uber:  Fuji Redesigns |

Counsel,

Waymo has known about the Fuji redesigns since prior to August 24, 2017, and yet has not previously asked for any additional discovery.  It's not our job to tell you what discovery to conduct.  As we informed you, Mr. Haslim may testify at trial regarding the previously-disclosed redesigns and the fact that they're now implemented in Fuji prototypes.  If you want to take additional discovery on this subject, now is your chance.  Otherwise, we will inform the Court that we offered and you declined.

With respect to documents concerning the redesigns, we do not intend to introduce any beyond the ones already produced.  However, since you have asked about other documents concerning the completion of the redesigns, we will produce whatever other documents exist and reserve the right to use them as trial exhibits.  We understand that there aren't very many such documents.  If Waymo wishes to subpoena the FAC vendor for testimony, we will help expedite that process.  We remain willing, of course, to produce Mr. Haslim for deposition this Friday.  Please let us know promptly if Waymo wishes to proceed.

Best regards,
Dan

**From:** Jordan Jaffe [mailto:jordanjaffe@quinnemanuel.com]
**Sent:** Friday, January 19, 2018 10:42 PM
**To:** Muino, Daniel P.; QE-Waymo
**Cc:** UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com'; Uber-sg@LISTS.SUSMANGODFREY.COM
**Subject:** RE: Waymo v. Uber: Fuji Redesigns

**- External Email -**

Counsel,
Your response fails to answer several of the basic questions we posed.  For example, Uber apparently even refuses to disclose when it learned of the information communicated in your original email and its basis for not disclosing it earlier.  As a substantive matter, at this late date, Waymo will not have an opportunity to conduct proper discovery concerning these allegedly complete redesigns.  For example, Waymo has no opportunity to subpoena the third party vendor for the alleged new FAC lens design, take its deposition, and conduct supplemental expert discovery based on this new information.  In fact, based on Uber's proposal, Waymo will not have discovery as to a single document concerning the "completion" of these alleged redesigns at trial.

Waymo objects.  Uber may not rely on these allegedly completed redesigns at trial but deprive Waymo of proper discovery about them.
To the extent that Uber reconsiders its position, we are willing to meet and confer.  Please inform us of any change in position before 5pm on Monday, Jan. 22.

Best regards,

Jordan R. Jaffe // Quinn Emanuel // 415.498.0556 //jordanjaffe@quinnemanuel.com

**From:** Muino, Daniel P.
**Sent:** Thursday, January 18, 2018 10:06 AM
**To:** Jordan Jaffe; QE-Waymo
**Cc:** UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com'; Uber-sg@LISTS.SUSMANGODFREY.COM
**Subject:** RE: Waymo v. Uber: Fuji Redesigns

Counsel,

Uber has already produced information regarding the Fuji redesigns with respect to alleged TS 2, 7, 13, and 14.  Uber's August 24, 2017 supplemental response to Common Rog. 4 disclosed (1) detailed descriptions of the redesigns; (2) documents pertaining to the redesigns, including CAD drawings; and (3) the identity of Uber witnesses knowledgeable about the redesigns, including Mr. Haslim.  Waymo's expert, Dr. Hesselink, already had the opportunity to address the redesigns in his expert reports of August 24 and September 14, 2017, and devoted a number of pages to that subject.  Uber's expert, Dr. Lebby, likewise addressed the redesigns in his expert report of September 7, 2017.  Both sides had the opportunity to depose the experts concerning the redesigns.  Waymo has not previously sought any further discovery regarding the Fuji redesigns.

Our email of January 15 was simply to inform you that the previously-disclosed redesigns with respect to alleged TS 2, 7, 13, and 14 are finished and have been implemented in Fuji prototypes.  Uber does not intend to rely on additional documents beyond the ones previously disclosed on August 24, 2017.  Uber expects to present one of the redesigned Fuji prototypes at trial.  Should Waymo care to inspect that physical prototype, we will make it available for inspection.  With respect to your questions concerning the timing of completion of the redesigns, testing, etc., Uber is willing to make Mr. Haslim available for a further deposition of reasonable length on January 26 to address those questions.

With respect to alleged TS 9, Uber previously disclosed on August 24, 2017, that it had retained an independent vendor to design a new FAC lens.  That design is now finished, although the FAC lenses have not yet been installed in Fuji prototypes.  We will make Mr. Haslim available to testify on this as well.

Best regards,
Dan

**From:** Jordan Jaffe [mailto:jordanjaffe@quinnemanuel.com]
**Sent:** Wednesday, January 17, 2018 2:30 PM
**To:** Muino, Daniel P.; QE-Waymo
**Cc:** UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com'; Uber-sg@LISTS.SUSMANGODFREY.COM
**Subject:** RE: Waymo v. Uber: Fuji Redesigns

**- External Email -**

Counsel,
Prior to your email over the three day weekend, Uber had not provided any additional details regarding its alleged design-around efforts since the close of discovery in August 2017.   With trial "nigh at hand" as explained yesterday by Judge Alsup, there is insufficient time to allow Waymo proper discovery into this new information, including possibly reviewing new documentary evidence, taking one or more Uber fact depositions, issuing third party subpoena(s), supplemental expert reports by both Waymo and Uber experts, and another round of expert depositions.   If Uber wanted to rely on alleged design arounds, there's no reason it could not have begun working on them earlier.  Uber should not be able to benefit from its tactful delay to deprive Waymo proper discovery before trial.  The information below is still scant at best.

So that we can better understand Uber's position and what it is proposing, please identify when Uber learned the information communicated below and what Uber's reason for not disclosing it earlier? The email further does not indicate when each of these alleged re-designs was "completed" or what "completed" refers to in this context. Nor does the email explain whether these alleged re-designs have been tested or validated, or their performance effects. In contrast, during the most recent, August 9th deposition of James Haslim, Mr. Haslim confirmed that, as of that date, none of these design-arounds had yet been implemented, none had yet been tested or validated, and that Uber had not yet even made a final decision as to whether to proceed with many of them. Please explain. Also, your email makes no mention of documents relating to the alleged design-arounds, which would presumably exist. Does Uber intend to provide documents as well? If so, when and what is the volume? When does Uber intend to complete its production? Who was involved in the alleged redesign effort and does Uber intend to make them available for deposition about the alleged re-designs? If so, when does Uber propose that these depositions be completed?

Waymo reserves all rights, including the right to seek preclusion and/or additional appropriate discovery into Uber's continuing design-around efforts.

Best regards,

Jordan R. Jaffe // Quinn Emanuel // 415.498.0556 // jordanjaffe@quinnemanuel.com

---

**From:** Muino, Daniel P. [mailto:DMuino@mofo.com]
**Sent:** Monday, January 15, 2018 8:16 PM
**To:** QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>;
'BSF_EXTERNAL_UberWaymoLit@bsfllp.com' <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; Uber-sg@LISTS.SUSMANGODFREY.COM
**Subject:** Waymo v. Uber: Fuji Redesigns

Counsel,

As Uber disclosed in its supplemental responses to Common Interrogatories 1 and 4 on August 24, 2017, Uber has been working on redesigns of certain accused features of Fuji. We write to disclose the status of that effort. Please be informed that James Haslim may testify at trial to the following updated information regarding the Fuji redesigns:

- The redesign disclosed in the response to Common Interrogatory 4 with respect to alleged TS 7 is complete and has been implemented in the transmit boards of all operational Fuji prototypes.
- The redesigns disclosed in the response to Common Interrogatory 4 with respect to alleged TS 2, 13, and 14 are complete and have been implemented in at least two operational Fuji prototypes.
- The FAC lens optical design disclosed in the response to Common Interrogatory 4 with respect to alleged TS 9 is complete and the lenses are expected to be available in February 2018.

Best regards,

**DANIEL P. MUINO**
Partner | Morrison & Foerster LLP
2000 Pennsylvania Avenue, NW | Washington, DC 20006-1888
**P:** +1 (202) 887-1501
mofo.com | LinkedIn | Twitter
Visit MoFo@ITC Blog

================================================================

3

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

=======================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

# EXHIBIT 5

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED