QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                Plaintiff,<br><br>        vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>                Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**DECLARATION OF FELIPE CORREDOR IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL THEIR RESPONSE TO WAYMO'S OFFER OF PROOF RE DEVELOPMENT EXPENSES AND EXHIBITS THERETO** |

1    I, Felipe Corredor, declare as follows:

2        1.      I am an attorney licensed to practice in the State of California and am admitted to

3    practice before this Court.  I am an associate at the law firm Quinn Emanuel Urquhart & Sullivan,

4    LLP, counsel for the Plaintiff Waymo LLC ("Waymo").  I have personal knowledge of the matters set

5    forth in this Declaration, and if called as a witness I would testify competently to those matters.

6        2.      I make this declaration in support of Defendants' Uber Technologies, Inc. and

7    Ottomotto LLC's Administrative Motion to File Under Seal Their Response to Waymo's Offer of

8    Proof re Development Expenses and Exhibits Thereto (the "Administrative Motion").  The

9    Administrative Motion seeks an order sealing the highlighted portions of Defendants' Response to

10   Offer of Proof re Development Expenses ("Uber's Response") and of Exhibits 1 and 4 thereto, as well

11   as the entirety of Exhibit 3.

12       3.      The portions of Uber's Response and Exhibits 1 and 3-4 identified below contain or

13   refer to trade secrets and/or confidential business information, which Waymo seeks to seal.

14       4.      Uber's Response (portions marked in red boxes in version filed herewith), and Exhibits

15   1 and 4 (portions marked in red boxes in version filed herewith) contain, reference, and/or describe

16   Waymo's trade secrets.  The information Waymo seeks to seal includes the confidential design and

17   functionality of Waymo's proprietary autonomous vehicle system, including its LiDAR designs,

18   which Waymo maintains as secret.  I understand that these trade secrets are maintained as secret by

19   Waymo (Dkt. 25-47) and that the trade secrets are valuable to Waymo's business (Dkt. 25-31).  The

20   public disclosure of this information would give Waymo's competitors access to descriptions of the

21   functionality or features of Waymo's autonomous vehicle system.  If such information were made

22   public, I understand that Waymo's competitive standing would be significantly harmed.

23       5.      Uber's Response (portions marked in red boxes in version filed herewith), Exhibit 1

24   (portions marked in red boxes in version filed herewith) and Exhibit 3 (entire document) also contain,

25   reference, and/or describe Waymo's highly confidential and sensitive business information.  The

26   information Waymo seeks to seal regards confidential analysis of Waymo's business and competition,

27   including financial details.  I understand that this confidential business information is maintained by

28   Waymo as secret.  The public disclosure of this information would give Waymo's competitors access

to in-depth insight into—and analysis of—Waymo's business strategy for its autonomous vehicle system.  If such information were made public, I understand that Waymo's competitive standing would be significantly harmed.

6.      Waymo's request to seal is narrowly tailored to those portions of Uber's Response and Exhibits 1 and 3-4 that merit sealing.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed in San Francisco, California, on February 1, 2018.

By _/s/ Felipe Corredor_
Felipe Corredor
Attorneys for WAYMO LLC

**ATTESTATION**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from Felipe Corredor.

By: _/s/ Charles K. Verhoeven_
Charles K. Verhoeven

MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
MICHAEL BRILLE (*Pro Hac Vice*)
mbrille@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>               Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>               Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO WAYMO'S OFFER OF PROOF RE DEVELOPMENT EXPENSES**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: February 5, 2018 |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I.      INTRODUCTION

Waymo's motivations are transparent: having abdicated its responsibility to develop a coherent damages model, it seeks to show to the jury as many billion dollar figures as possible in order to skew any damages award.  The numbers that Waymo seeks to admit are not "development costs" for the eight trade secrets; they are program costs for Waymo's entire autonomous vehicle program since inception.  For each trade secret, Waymo has just taken Google's total spend on anything related to its autonomous vehicle program—including cameras, radar, sensors, software, firmware, on-board computers, and building its own vehicles—from 2009 to the date Waymo claims the alleged trade secret was finalized.  Josephs Decl., Ex. 1, Bananzadeh 30(b)(6) Dep. at 78:7-13; 94:3-25; 102:9-103:23; 105:4-17; 109:1-12; 146:20-147:6. Among other things, these program costs include the cost of all the other 113 trade secrets alleged in this case, including the trade secret upon which summary judgment was already granted in Uber's favor, along with the costs associated with the patents that have all been dropped.

These aggregate program costs are not probative of the independent economic value of the trade secrets because they have nothing to do with the eight trade secrets.  And they do nothing to inform the damages analysis because any unjust enrichment or royalty would be for the alleged trade secrets—not for Waymo's entire autonomous vehicle program.  It would be unfairly prejudicial and would mislead the jury to permit Waymo to wave around billion dollar numbers that bear no connection to the alleged trade secrets.

Waymo knows that these numbers do not represent development costs for the actual trade secrets.  In response to Uber's interrogatory on development costs, Waymo promised to provide actual development costs through an expert, stating that "Waymo does not track costs on a trade secret by trade secret basis in the ordinary course of business, and the cost of developing [the trade secret] will be the subject of expert testimony."  Dkt. 2325 (Plaintiff's Amended Fourth Supplemental Objections and Responses to Uber's Interrog. Nos. 1-11 at Interrog. 6). Waymo's 30(b)(6) witness on development costs promised the same thing, stating that he did not know what the trade secrets were, could not allocate costs to any trade secret, and that an expert would do this:

1      Q Do you understand that you were designated corporate witness, so you're
2  supposed to do testify on behalf of the company regarding the cost of each of the
    alleged trade secrets? Are you not prepared to testify as to that today?

3      A So—so I'm—I'm prepared to testify. And—and I have been trying to testify
    about the numbers and the costs incurred by this program. **I am not technically**
4  **minded to say that a trade secret involved this cost versus that cost. I think**
    **that's a more expert-based formulation.** And I'm not prepared or capable of—of
5  creating—like, I'm not an expert, right. Like, my understanding is you—you have
    expert reports on these kinds of things, and there will be a whole, you know,
6  rigmarole around that. But I am prepared to tell you about what are the costs and
    what we have been discussing about what the expenses that we're showing in these
7  various years.

8  Josephs Decl., Ex. 1, Bananzadeh 30(b)(6) Dep. at 95:1-21 (emphasis added); *see also id.* at 88:2-

9  89:3. Indeed, Waymo's 30(b)(6) witness could not even estimate the development costs

10  associated with LiDAR, again deferring questions to some expert.[1]

11      In total, Waymo's 30(b)(6) witness deferred to this undisclosed expert over 25 times.   He

12  also distanced himself from the argument that Waymo is now making to the Court:

13      I think you said that my testimony was that it costs 1.1 billion to formulate those
    two trade secrets.  So I just want to say first that, like, that's – *that's not my*
14  *testimony*. What—what I'm saying is that insofar is that an expert calculated this,
    it's—I'm showing the—my testimony is that in the years 2009 through 2015, those
15  were the expenses incurred. With respect to your—the—the core of the question
    or, like, the latter part of what you just said of: Is there a double count, I don't
16  think I am technically minded enough to say whether that is true or not.

17  *Id.* at 94:12-25 (emphasis added); *see also* 93:11-15 ("Again, like, my under—my understanding

18  is, like, that's the method the expert used to surmise the—the data—the costs incurred based upon

19  historical spend that we—that I—that we provided.").

20      Waymo's promised expert testimony never materialized, and Waymo has never provided

21  any estimates of actual development costs for the eight trade secrets—notwithstanding an

22  interrogatory directly calling for it and a Rule 30(b)(6) deposition on that very topic.  Undeterred,

23  Waymo now tries to characterize its overall program costs as development costs for the eight

24  alleged trade secrets, and argues that they are relevant for two reasons: (1) to show that the trade

25  _____

26      [1] *Id.* at 75:17-21 ("My understanding is that we have experts who are going to provide the
    reports and provide, like, a conclusion about a number that relates to that. So at least that's my
27  understanding of what's going on in this litigation."); *id.* at 78:2-6 ("[I]f you're asking for the
    LiDAR-related cost of, like, developing a LiDAR system in an SDS system, I think this is a
28  fundamentally, like, technical question that I—I'm not prepared to answer for you, right.").

1  secrets have independent economic value and (2) for reasonable royalty and damages purposes.

2  Both arguments are meritless and should be rejected.  Waymo's offer of proof underscores the

3  concerns expressed by this Court—Waymo has utterly failed to produce any evidence regarding

4  the costs it incurred in developing the eight alleged trade secrets that the jury will evaluate.

5  Waymo's overall program costs should be excluded both because they are irrelevant and because

6  any marginal relevance is substantially outweighed by the probability that the jury will be misled

7  and Uber will be unfairly prejudiced.

8  **II.     ARGUMENT**

9      **1.  Waymo's Aggregate Program Costs Are Not Probative Of The Independent
            Economic Value of the Trade Secrets**

10         By definition, whether a trade secret has <u>independent</u> economic value is based on the

11  competitive advantage afforded by that specific trade secret.  *See Mattel, Inc. v. MGA Entm't,*

12  *Inc.*, 782 F. Supp. 2d 911, 959 (C.D. Cal. 2011) (stating that a trade secret "derives independent

13  economic value from not being generally known when its secrecy 'provides a business with a

14  substantial business advantage.'") (citing *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522

15  (1997) (internal quotation marks omitted)).  Waymo's aggregate program costs reflect the amount

16  that Waymo claims it spent on its entire autonomous vehicle program, including cameras,

17  multiple radar systems, telematics, computers, domes, software, and firmware.  Indeed, Waymo's

18  AV hardware is itself comprised of at least

19

20

21

22

23

24

25

26

27

28

1    Dkt. 1617 at 9.  That Waymo spent millions or billions developing self-driving vehicles does

2    nothing to show the independent economic value of the specific trade secrets at issue in this case.

3    In addition, Waymo's aggregate program costs also include the cost to develop the patents that

4    Waymo has now dropped from the case and the purported trade secret (96) on which the Court

5    granted summary judgment—Waymo obviously cannot recover development costs for the patents

6    it has dropped and the trade secret claim that it lost.

7         To the extent that Waymo is arguing that its program costs represent development costs

8    for the trade secrets because everything is iterative and the product of prior work, this argument is

9    meritless and contradicted by Waymo's prior promises to provide actual development costs for

10   the trade secrets.  It is nonsensical to suggest that things like the concept of a ███████████

11   ████████████  required years of work on wholly unrelated hardware and software

12   systems at a cost of $120 million.  *See, e.g.*, Dkt. 2531 at 9.  And, under Waymo's methodology,

13   anything developed in 2015—whether the most groundbreaking invention or entirely worthless—

14   would have necessarily cost $1.1 billion because it was the product of all the prior work.  *See*

15   Josephs Decl., Ex. 1, Bananzadeh 30(b)(6) Dep. at 90:25-91:3 ("So I—again, I think my

16   understanding of how the expert who created that value is that they took the numbers of spend

17   historically since inception through a certain date.").  This is wholly illogical, and confirms that

18   Waymo's purported "development expenses" are not probative in any way to demonstrating

19   independent economic value.

20        **2.  Waymo's Aggregate Program Costs Are Irrelevant to Damages**

21        Waymo's program costs are similarly not relevant to damages, and their introduction

22   would be unfairly prejudicial.  We know these program costs are *not* Waymo's costs to develop

23   the eight alleged trade secrets.  The cases cited by Waymo all involve the use of the plaintiff's

24   development costs for the trade secrets at issue; none permit a plaintiff to use its aggregate

25   program costs to establish the value of one out of thousands of components.  Indeed, Waymo has

26   claimed that there are at least 113 other trade secrets related to LiDAR alone, Dkt. 25-7, showing

27   that the alleged trade secrets are even a small part of LiDAR, let alone a fully autonomous

28

vehicle.[2]  In *Nilssen v. Motorola, Inc*., No. 93 C 6333, 1998 WL 513090, at *6 (N.D. Ill. Aug. 14, 1998) (Illinois UTSA), the district court highlighted the problem of admitting non-apportioned damages evidence:

> Hence even if Motorola itself (rather than Nilssen, as Motorola contends) had valued Nilssen's entire technology at $50 million, Motorola unquestionably did *not* place that value, or any identifiable portion of that value, on the trade secrets that are at issue in this litigation. It would thus create a gross potential for unfair prejudice and jury confusion if the $50 million figure were to be placed before the jury in any guise. So even if the $50 million overall evaluation were somehow able to pass muster for admissibility under Rule 401 (a highly doubtful proposition at best), Rule 403 would still require its exclusion.

*Id.*

Waymo cites to an unpublished California Court of Appeals case, *Syntron Bioresearch, Inc. v. Fan*, No. D033894, 2002 WL 660446 (Cal. App. 4th 2002), to suggest that aggregate development costs can be used and strict apportionment is not required, but the facts in that case bear no resemblance to the facts here. There, a former employee misappropriated extensive trade secrets relating to pregnancy test kits, which allowed his new company to immediately clone the products and become "instantaneously commercially active." *Id.* at *13. The kits "played the dominant role in generating income for both [the plaintiff and defendant]," and the court of appeals concluded that the trial court engaged in a reasonable apportionment analysis whereby it concluded that roughly 75% of plaintiff's research and development costs were attributable to the kits and the defendant received the full benefit of those expenditures. *Id.*

Here, Waymo claims hundreds (if not thousands) of trade secrets are embodied in its LiDAR technology alone, which is only one of ███████████████ within a self-driving car.  And there is no evidence that Uber was able to take the eight alleged trade secrets and gain the benefit of all of Waymo's development work for the prior seven years.  In short, *Syntron* and the other cases cited by Waymo stand for the unremarkable proposition that a plaintiff alleging an

---

[2] That Waymo has asserted other trade secrets against Uber highlights one of the problems with Waymo's evidence.  It will presumably assert the exact same program costs for each trade secret and try to get the jury to award the same damages over and over.  Even within the confines of the case, Waymo is inviting the jury to double-count (or more) damages by claiming the same program costs for multiple trade secrets.

1    intentional tort need not apportion with surgical precision; they do not permit a plaintiff to

2    sidestep apportionment all together, or to do it with a baseball bat.

3        Further, even assuming arguendo that there were any connection between Waymo's

4    program costs and the trade secrets (which there is not), Waymo would still need to show how

5    Waymo's costs could be probative as to Uber's costs. Waymo has absolutely no evidence that

6    Uber's costs would be comparable to Waymo's costs. Different companies have different

7    processes, priorities, and personnel.[3] *See* Dkt. 2176 at 15 ("It seems unlikely that this type of

8    simple comparison between two very different corporations' expenses could add much probative

9    value[.]"); *see also* Dkt. 2516 at 2-3. And having started seven years after Waymo in a fast-

10   developing field, Uber had the benefit of experienced engineers, improved technology, and

11   extensive public research into autonomous vehicles, including Waymo's own patent applications,

12   which disclose extensive details about its programs and prototypes. *See* Josephs Decl., Ex. 2,

13   Bares 6/16/2017 Dep. at 129:3-7 ("I thought we could catch up and technology of course is on

14   our side, computers get faster every year, storage gets cheaper. So starting later in this game has

15   an inherited advantage just of that."). Having designated no expert on the subject nor conducted

16   any development cycle analysis, Waymo has no evidence upon which the jury could rationally

17   infer that Waymo's costs are in any way a proxy for Uber's saved costs.

18       Lastly, in addition to the unfair prejudice and confusion, the admission of Waymo's

19   program costs will create a sideshow at trial because they are wrong: contemporaneous

20   management presentations show that, as of September 25, 2015 (three months before the alleged

21   misappropriation), Waymo had expended only ████████. Josephs Decl., Ex. 3, Chauffeur

22   Presentation at 3 ███████████████████████████████████████

23   ██████████████████. Uber should not be required to waste its precious time delving into

24   this irrelevant topic.

25

26

27   _____

28   [3] As just one example of the differences, Waymo has spent extensive resources building its own
     vehicle, while Uber has always focused on outsourcing to OEMs.

### 3.  Waymo Is Precluded From Adducing Evidence Of Program Costs

Waymo should also be barred under Rule 37 from offering its program costs as a proxy for development costs. Waymo was served with an interrogatory asking it to identify how much each trade secret cost to develop.  In response, Waymo did not claim that it was impossible, just that "Waymo does not track costs on a trade secret by trade secret basis in the ordinary course of business, and the cost of developing [the trade secret] will be the subject of expert testimony." Dkt. 2325.  Waymo then presented an unprepared Rule 30(b)(6) witness who knew nothing about the trade secrets or the costs associated with them and deferred questions to the undisclosed expert.  Josephs Decl., Ex. 1, Bananzadeh 30(b)(6) Dep. at 88:2-9; 95:1-21.  Waymo ultimately never disclosed any such expert testimony, and now—on the eve of trial—wants to misleadingly suggest to the jury that its aggregate program costs are the same as the development costs of the trade secrets.  In addition to being irrelevant and unfairly prejudicial, this evidence should additionally be precluded under Rule 37.

### 4.  Waymo Does Not Have a Sponsoring Witness for its Program Costs

An offer of proof is typically required to identify the witnesses who will offer testimony or introduce evidence.  While Waymo's offer of proof identifies Dr. Dolgov and Mr. Droz for background testimony on various trade secrets, Waymo generically cites "Waymo testimony and documentary evidence" as the basis for the program costs.  *See* Dkt. 2531 at 7, 9, 10, 13, 14, 15. In the absence of a sponsoring witness, this evidence cannot be admitted, and Uber further objects on that basis.  For example, Mr. Droz, who was initially designated as Waymo's corporate representative on development costs, is plainly unqualified to testify on that issue:

> Q.  So how much did it cost to develop the trade secret of ███████ ████
>
> MR. JAFFE: Objection; form; outside the scope.
>
> A.  So—so from my personal knowledge, the—you know, the—I don't—you know, I don't have an actual tracking of all the cost used to—to—that we put in this. But, you know—you know, in there is probably the cost of making prototypes, the cost of of—you know, the cost of the engineering on designing those boards.
>
> Q.  So, you're not prepared to talk about the cost of development of Trade Secret No. 2 as Waymo's corporate designated witness; is that correct?

1          A.      I'm not.

2    Josephs Decl., Ex. 4, Droz 8/3/2017 30(b)(6) Dep. at 155:23-156:13.

3          Finally, to the extent that Waymo is now going to try to identify a percipient witness, it is

4    far too late for that.  Waymo has never identified any percipient witness to testify regarding the

5    cost of developing the eight purported trade secrets.

6    **III.     CONCLUSION**

7          For the foregoing reasons, the Court should exclude evidence of Waymo's purported

8    development costs under Rules 402 and 403 and FRCP 37.

9

10   Dated: January 28, 2018                    MORRISON & FOERSTER LLP
                                                BOIES SCHILLER FLEXNER LLP
11                                              SUSMAN GODFREY LLP

12

13                                              By: */s/  William Christopher Carmody*

14                                              Attorneys for Defendants
                                                UBER TECHNOLOGIES, INC. and
15                                              OTTOMOTTO LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file this Response.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that William Christopher Carmody has concurred in this filing.


Dated:  January 28, 2018                              */s/ Michael A. Jacobs*

Michael A. Jacobs

# EXHIBIT 1

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4    _____

5    WAYMO LLC,                          )

6                                        )

              Plaintiff,                 )

7        vs.                             )   Case No.

                                         )   17-cv-00939-WHA

8    UBER TECHNOLOGIES, INC.;            )

     OTTOMOTTO, LLC; OTTO TRUCKING LLC,  )

9                                        )

              Defendants.                )

10   _____)

11

12

       HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY

13

14       VIDEOTAPED 30(b)(6) DEPOSITION of WAYMO LLC

15        by and through its Designated Representative

16              ASLAN (SHAWN) BANANZADEH

17              San Francisco, California

18              Thursday, August 24, 2017

19                   Volume I

20

21   Reported by:

22   MARY J. GOFF

     CSR No. 13427

23   Job No. 2688513

24

25   PAGES 1 - 235

                                           Page 1

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                SAN FRANCISCO DIVISION

 4    _____

 5    WAYMO LLC,                          )

 6                                        )

 7                 Plaintiff,             )

         vs.                             )   Case No.

 8                                        )   17-cv-00939-WHA

      UBER TECHNOLOGIES, INC.;            )

 9    OTTOMOTTO, LLC; OTTO TRUCKING LLC, )

                                          )

10                 Defendants.            )

      _____)

11

12

13        Highly Confidential Videotaped Deposition of

14    ASLAN (SHAWN) BANANZADEH, Volume I, taken on behalf

15    of Plaintiff Waymo LLC, at Morrison & Foerster LLP,

16    425 Market Street, 33rd Floor, San Francisco,

17    California, 94105, beginning at 9:54 a.m. and ending

18    at 5:53 p.m., on August 24, 2017, before MARY GOFF,

19    Certified Shorthand Reporter No. 13427.

20

21

22

23

24

25

                                               Page  2
```

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | resistor could specify that this resistor should be | 11:36:25 |
| 2 | expensed against the cost for the LiDAR sensor or -- | 11:36:29 |
| 3 | MR. MACK:  Objection. | 11:36:37 |
| 4 | Q    (BY MS. CHANG) -- the timing board or | 11:36:37 |
| 5 | whatever it is that the resistor is intended to be | 11:36:38 |
| 6 | used for. | 11:36:42 |
| 7 | MR. MACK:  Objection, form. | 11:36:43 |
| 8 | A    So it -- when you say -- it -- Waymo set | 11:36:44 |
| 9 | up a system in the time that I have been there?  I | 11:36:50 |
| 10 | haven't -- I haven't set up a system to say | 11:36:53 |
| 11 | specifically:  This is the part. | 11:36:56 |
| 12 | Like, I don't tell someone:  Go back and | 11:36:57 |
| 13 | revise this and tell me the exact part number. | 11:37:01 |
| 14 | Dating back to, let's just say, 2009, I -- | 11:37:03 |
| 15 | I don't know the answer whether somebody told | 11:37:07 |
| 16 | somebody to go give them an individual part number, | 11:37:09 |
| 17 | et cetera. | 11:37:14 |
| 18 | Q    (BY MS. CHANG) Do you know if, at Waymo, | 11:37:14 |
| 19 | it's possible to break out each of these GL expenses | 11:37:15 |
| 20 | to correlate it to the various components of Waymo's | 11:37:19 |
| 21 | self-driving car? | 11:37:22 |
| 22 | MR. MACK:  Objection, form. | 11:37:22 |
| 23 | A    Like, possible -- again, like, if -- if | 11:37:25 |
| 24 | you told someone hypothetically to go, like, label | 11:37:28 |
| 25 | every P&L they put to an individual part number when | 11:37:33 |

Page 70

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | they purchased it, theoretically you could do that, | 11:37:36 |
| 2 | I guess, right. | 11:37:38 |
| 3 | Q    (BY MS. CHANG) To understand your | 11:37:39 |
| 4 | testimony, you're saying it would be possible for | 11:37:40 |
| 5 | Waymo to retroactively go back and recategorize the | 11:37:42 |
| 6 | expenses? | 11:37:49 |
| 7 | MR. MACK:  Objection, form. | 11:37:50 |
| 8 | A    No.  No.  No, that wasn't my testimony. I | 11:37:51 |
| 9 | -- | 11:37:54 |
| 10 | Q    (BY MS. CHANG) I'm just trying to | 11:37:55 |
| 11 | understand whether it's possible -- could we go to | 11:37:56 |
| 12 | Waymo today somewhere and either by looking at the | 11:37:58 |
| 13 | data sources or other information available at | 11:38:01 |
| 14 | Waymo, could we break out each of these GL -- | 11:38:04 |
| 15 | GL account expenses and map them to various | 11:38:06 |
| 16 | components of the self-driving car? | 11:38:11 |
| 17 | MR. MACK:  Objection, form. | 11:38:13 |
| 18 | A    I -- I -- I don't know, because I don't | 11:38:15 |
| 19 | know what everyone did historically every time they | 11:38:17 |
| 20 | purchased something. | 11:38:20 |
| 21 | Q    (BY MS. CHANG) To your knowledge, as you | 11:38:22 |
| 22 | sit here today, it's not possible to break out each | 11:38:23 |
| 23 | of these GL account expenses to the various | 11:38:26 |
| 24 | components of the self-driving car? | 11:38:30 |
| 25 | MR. MACK:  Same objection. | 11:38:33 |

Page 71

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

```
 1        A    So it -- it -- can -- can you just repeat        11:38:34

 2   the question?  I -- I got lost.                            11:38:39

 3        Q    (BY MS. CHANG) You're the company               11:38:42

 4   representative --                                          11:38:43

 5        A    Right.                                           11:38:43

 6        Q    -- on the cost of developing the trade          11:38:43

 7   secrets?  I want to know whether it's possible to          11:38:46

 8   break out each of these GL account values and map          11:38:49

 9   them to how much of a particular GL account relates        11:38:54

10   to a certain component on the self-driving car.            11:39:01

11        You testified that based on the                       11:39:03

12   information in Exhibit 1400, which has Bates label          11:39:05

13   WAYMO-UBER-00027045, that it was not possible to           11:39:11

14   break out each GL account into the components of the       11:39:15

15   self-driving car.                                          11:39:20

16        Is there information available at Waymo               11:39:21

17   that would allow you to do that?                           11:39:23

18        MR. MACK:  Objection, form.                           11:39:25

19        A    So -- so I mean -- I mean, like, there's         11:39:27

20   the element of, like, did you buy -- because I             11:39:32

21   want -- I want to -- like, there's kind of different       11:39:34

22   ways of looking at it.                                     11:39:36

23        Did you buy a -- again, like, a resistor             11:39:39

24   for this?  And did it -- what did it cost?  Right.         11:39:41

25   That's -- that's one way of saying:  What did it           11:39:43
```

Page 72

| | | |
|---|---|---|
| 1 | cost to create that?  Right.  Well, there's that. | 11:39:46 |
| 2 | In contrast, if you said, for example: | 11:39:48 |
| 3 | What is the cost of the system as a whole, like, | 11:39:50 |
| 4 | insofar as it -- like, it all works together, right | 11:39:55 |
| 5 | like, you -- you know, there's different ways of | 11:39:58 |
| 6 | looking at it. | 11:40:00 |
| 7 | So I -- I'm going to go back to saying | 11:40:00 |
| 8 | that -- like:  Could you say a particular part costs | 11:40:03 |
| 9 | this?  It would be dependent on what it was coded as | 11:40:06 |
| 10 | and put through, right.  But not knowing whether | 11:40:09 |
| 11 | that happened, like, I -- I can't answer that, like, | 11:40:11 |
| 12 | sitting here right now. | 11:40:15 |
| 13 | Q    (BY MS. CHANG) Are you aware of any way to | 11:40:18 |
| 14 | break out each of these GL accounts to map onto | 11:40:20 |
| 15 | various components of the self-driving car? | 11:40:24 |
| 16 | MR. MACK:  Objection, form. | 11:40:30 |
| 17 | A    Mapping. | 11:40:31 |
| 18 | Q    (BY MS. CHANG) So let's take one example. | 11:40:31 |
| 19 | Let's take the "Equipment and Related EXP" | 11:40:33 |
| 20 | GL account.  If you look at 2016, there's a very | 11:40:38 |
| 21 | large number that starts with -- or that reads | 11:40:47 |
| 22 | ███████████ | 11:40:53 |
| 23 | Do you see that number? | 11:40:59 |
| 24 | A    Yeah.  I8?  Cell -- Cell I8?  Is that what | 11:41:00 |
| 25 | you're referring to?  Right? | 11:41:04 |

Page  73

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | Q    Yes. | 11:41:05 |
| 2 | A    Yes. | 11:41:05 |
| 3 | Q    Are you aware of a breakdown of this | 11:41:16 |
| 4 | number at Waymo for each of the components that make | 11:41:19 |
| 5 | up the self-driving car? | 11:41:25 |
| 6 | A    So there is -- like, if you go back to the | 11:41:27 |
| 7 | "Raw Data" tab, right, you can obviously divide it | 11:41:31 |
| 8 | up by cost center, right?  So that's a breakup of | 11:41:33 |
| 9 | that expense already. | 11:41:38 |
| 10 | Then when it comes to -- and that shows | 11:41:41 |
| 11 | you different, like, budget owners' cost center | 11:41:43 |
| 12 | areas.  So that's, like, a division that you could | 11:41:46 |
| 13 | have. | 11:41:48 |
| 14 | As far as, like, part numbers, I think, | 11:41:50 |
| 15 | is -- is, like, you're trying to go farther than | 11:41:52 |
| 16 | saying, like, big budget areas. | 11:41:55 |
| 17 | But then part numbers -- in some instances | 11:41:56 |
| 18 | people will code to a part number.  And others, they | 11:42:00 |
| 19 | won't.  So it -- it's -- again, it's a possibility, | 11:42:03 |
| 20 | but I -- I don't know for a fact that that breakdown | 11:42:06 |
| 21 | exists. | 11:42:09 |
| 22 | Q    Are you aware of any information at Waymo | 11:42:15 |
| 23 | that would indicate how much of the "Equipment and | 11:42:21 |
| 24 | Related EXP" GL account relates to the LiDAR in | 11:42:26 |
| 25 | Waymo's self-driving car? | 11:42:32 |

Page 74

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

```
 1              MR. MACK:  Objection, form.            11:42:33

 2        A    Like, I don't think I can make that     11:42:37

 3    determination.  Because, again, like, what you view  11:42:39

 4    the LiDAR as is -- in the con -- in the context of  11:42:41

 5    the whole of the -- the -- the SDS system is      11:42:43

 6    something that I don't think I can technically tell  11:42:48

 7    you.  So I don't think I can sit here and tell you:  11:42:51

 8    This is how I would isolate that cost.            11:42:54

 9        Q    (BY MS. CHANG) Can -- has Waymo isolated  11:42:57

10    that cost?                                        11:43:00

11        A    Which -- which -- sorry.  When you say   11:43:00

12    "that cost," what are you referring to again?     11:43:01

13        Q    The LiDAR-related cost portion -- sorry. 11:43:04

14             The LiDAR-related portion of the         11:43:07

15    "Equipment and Related EXP" GL account?           11:43:08

16             MR. MACK:  Objection, form.              11:43:12

17        A    My understanding is that we have experts 11:43:13

18    who are going to provide the reports and provide, 11:43:16

19    like, a conclusion about a number that relates to 11:43:18

20    that.  So at least that's my understanding of what's 11:43:21

21    going on in this litigation.                      11:43:24

22        Q    (BY MS. CHANG) Does Waymo currently have 11:43:26

23    that information?                                 11:43:28

24             MR. MACK:  Objection, form.              11:43:30

25        A    The -- like, to the extent that the -- the  11:43:34
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | expert has, like, said there's this number that | 11:43:37 |
| 2 | relates to it, I know what that number is.  I -- I | 11:43:39 |
| 3 | have seen it in interrogatory responses, yes. | 11:43:42 |
| 4 | Q    (BY MS. CHANG) But that number is not | 11:43:45 |
| 5 | indicated in Exhibit 1400? | 11:43:47 |
| 6 | MR. MACK:  Objection, form. | 11:43:50 |
| 7 | A    I don't know if that -- that's true. | 11:43:55 |
| 8 | Because the -- the number, I think, is -- is | 11:43:56 |
| 9 | partially derived from the numbers that we provided | 11:43:58 |
| 10 | of how the program has, like, expensed things over | 11:44:01 |
| 11 | time so... | 11:44:04 |
| 12 | Q    (BY MS. CHANG) Can you show me where in | 11:44:05 |
| 13 | Exhibit 1400, the LiDAR portion of any of these | 11:44:08 |
| 14 | GL accounts is indicated? | 11:44:11 |
| 15 | MR. MACK:  Objection, form. | 11:44:14 |
| 16 | A    Sorry.  Again, going back to how the -- | 11:44:17 |
| 17 | the -- what's it called -- the -- the expert | 11:44:21 |
| 18 | formulated the conclusion, my understanding is they | 11:44:25 |
| 19 | used, like, a -- like, the whole is -- like, you | 11:44:29 |
| 20 | can't -- again, like I said, you can't take this | 11:44:34 |
| 21 | thing apart and say:  This is it and that's | 11:44:36 |
| 22 | isolated. | 11:44:38 |
| 23 | So you use the whole development cost of | 11:44:38 |
| 24 | program that -- if you wanted to ask on those -- an | 11:44:41 |
| 25 | individual basis, like, I'm familiar with what these | 11:44:43 |

Page 76

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | numbers are on this and how that was informed. | 11:44:46 |
| 2 | Q    But Exhibit 1400 doesn't break out the | 11:44:49 |
| 3 | LiDAR-related expense of "Equipment and Related | 11:44:53 |
| 4 | Expenses" GL account? | 11:45:00 |
| 5 | MR. MACK:  Objection, form. | 11:45:02 |
| 6 | A    Again, like, I don't think that I know how | 11:45:05 |
| 7 | to tell you what "LiDAR-related" means.  Like -- | 11:45:07 |
| 8 | like, to me, that's a technical thing, and I'm not | 11:45:10 |
| 9 | equipped -- I can tell you what these numbers | 11:45:13 |
| 10 | represent.  I can tell you, like, how they're | 11:45:16 |
| 11 | formulated, et cetera. | 11:45:17 |
| 12 | But to the extent that you're asking, if I | 11:45:17 |
| 13 | understand you correctly, like:  What is the number | 11:45:19 |
| 14 | to create a LiDAR, I think that's, like, a technical | 11:45:21 |
| 15 | question that an expert could opine on.  I can tell | 11:45:24 |
| 16 | you about the numbers, right. | 11:45:27 |
| 17 | Q    (BY MS. CHANG) I'm not asking you for | 11:45:28 |
| 18 | technical definition.  I just want to know if this | 11:45:30 |
| 19 | spreadsheet has a breakout of the LiDAR-related | 11:45:33 |
| 20 | portion of any of these GL accounts. | 11:45:35 |
| 21 | MR. MACK:  Objection, form. | 11:45:37 |
| 22 | A    I mean, I -- I'm not -- like, I -- I just | 11:45:39 |
| 23 | don't -- like, "LiDAR related," to me, like, I | 11:45:41 |
| 24 | can't -- I can't -- I can't understand what this is. | 11:45:43 |
| 25 | Like, if you could help me -- like -- like | 11:45:45 |

Page 77

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | I have said, like, this doesn't show a part-by-part | 11:45:46 |
| 2 | number, right.  But if you're asking for the | 11:45:49 |
| 3 | LiDAR-related cost of, like, developing a LiDAR | 11:45:52 |
| 4 | system in an SDS system, I think this is a | 11:45:54 |
| 5 | fundamentally, like, technical question that I -- | 11:45:58 |
| 6 | I'm not prepared to answer for you, right. | 11:45:59 |
| 7 | Q    (BY MS. CHANG) But your testimony is that | 11:46:02 |
| 8 | each of these accounts relates to the expenses for | 11:46:03 |
| 9 | the entire self-driving car? | 11:46:05 |
| 10 | A    The -- so this -- this -- these accounts | 11:46:08 |
| 11 | in totality capture the cost of creating a | 11:46:10 |
| 12 | self-driving system within which the LiDAR is an | 11:46:14 |
| 13 | integral part. | 11:46:19 |
| 14 | Q    You stated that LiDAR is an integral part | 11:46:55 |
| 15 | of the self-driving system.  What other integral | 11:46:59 |
| 16 | parts are you aware of? | 11:47:04 |
| 17 | A    I mean, again, my nontechnical | 11:47:07 |
| 18 | understanding is that, like, you need to have LiDAR | 11:47:10 |
| 19 | to do this.  Like, that's about as far as my, like, | 11:47:12 |
| 20 | nontechnical understanding of this goes. | 11:47:16 |
| 21 | Q    You're not aware of any other integral | 11:47:19 |
| 22 | parts of the self-driving system? | 11:47:22 |
| 23 | MR. MACK:  Objection, form. | 11:47:24 |
| 24 | A    The -- like, I don't pretend to -- to say | 11:47:24 |
| 25 | that, like, one is better than the other or | 11:47:30 |

Page 78

| | | |
|---|---|---|
| 1 | anything, but I know that the LiDAR is part of the | 11:47:32 |
| 2 | whole solution. | 11:47:35 |
| 3 | Q    (BY MS. CHANG) Are you aware of any other | 11:47:36 |
| 4 | part of the whole solution for Waymo's self-driving | 11:47:39 |
| 5 | system? | 11:47:43 |
| 6 | MR. MACK:  Objection, form. | 11:47:44 |
| 7 | A    I -- I believe -- like, again, my | 11:47:45 |
| 8 | nontechnical understanding is that there are other | 11:47:48 |
| 9 | parts to it.  But I -- I wasn't prepared here to | 11:47:50 |
| 10 | talk about what the technical elements of the | 11:47:53 |
| 11 | self-driving system are. | 11:47:56 |
| 12 | Q    (BY MS. CHANG) Are there other integral | 11:47:57 |
| 13 | parts of the Waymo self-driving system, other than | 11:47:57 |
| 14 | LiDAR that you're aware of as you sit here today | 11:48:00 |
| 15 | you? | 11:48:04 |
| 16 | MR. MACK:  Objection, form; beyond the | 11:48:05 |
| 17 | scope. | 11:48:05 |
| 18 | A    Like, I don't -- I -- I don't -- like, I | 11:48:07 |
| 19 | can't say what are other technical -- or sorry.  I | 11:48:10 |
| 20 | -- I don't know what to -- or I don't know what | 11:48:14 |
| 21 | other integral parts are, no. | 11:48:18 |
| 22 | Q    (BY MS. CHANG) But you would characterize | 11:48:19 |
| 23 | LiDAR as an integral part? | 11:48:21 |
| 24 | MR. MACK:  Objection, form; beyond the | 11:48:23 |
| 25 | scope. | 11:48:23 |

Page 79

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | A    It -- in a nontechnical way without having | 11:48:24 |
| 2 | any kind of, like, technical training or | 11:48:28 |
| 3 | understanding, yes, I just did. | 11:48:30 |
| 4 | MR. MACK:  Esther, I think we have been | 11:48:33 |
| 5 | going well over an hour, if now is a good time to | 11:48:35 |
| 6 | break. | 11:48:40 |
| 7 | MS. CHANG:  Yeah. | 11:48:40 |
| 8 | THE VIDEOGRAPHER:  We are off the record | 11:48:41 |
| 9 | at 11:49 a.m. | 11:48:41 |
| 10 | (A break was taken from 11:49 a.m. to | 11:48:44 |
| 11 | 12:37 p.m.) | 11:48:48 |
| 12 | THE VIDEOGRAPHER:  Okay.  We are back on | 12:36:02 |
| 13 | the record at 12:37 p.m. | 12:36:35 |
| 14 | Q    (BY MS. CHANG) I'm handing you what's been | 12:36:43 |
| 15 | marked as Exhibit 1520.  Exhibit 1520 is | 12:36:45 |
| 16 | "Plaintiff's Amended Fourth Supplemental Objections | 12:37:03 |
| 17 | and Responses to Uber's First Set of | 12:37:07 |
| 18 | Interrogatories, Nos. 1 through 11." | 12:37:09 |
| 19 | Do you recognize this document? | 12:37:15 |
| 20 | A    Yes, I believe so. | 12:37:16 |
| 21 | Q    You previously testified that in | 12:37:46 |
| 22 | preparation to provide testimony in your capacity as | 12:37:48 |
| 23 | the corporate witness for the cost aspect of | 12:37:56 |
| 24 | Topic 9, that you had reviewed responses to | 12:38:00 |
| 25 | interrogatory requests. | 12:38:05 |

Page 80

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | Are these the responses that you reviewed? | 12:38:06 |
| 2 | A    Yes, I believe so. | 12:38:08 |
| 3 | Q    If you turn to page 61, you'll see | 12:38:20 |
| 4 | Interrogatory 6 listed here.  And it reads, | 12:38:28 |
| 5 | Separately for each alleged Waymo trade secret | 12:38:33 |
| 6 | identified in response to Interrogatory No. 1, | 12:38:37 |
| 7 | describe how long it took and how much it cost to | 12:38:40 |
| 8 | develop. | 12:38:43 |
| 9 | Do you recall reviewing the response to | 12:38:47 |
| 10 | Interrogatory No. 6? | 12:38:53 |
| 11 | A    I -- I don't recall reviewing that | 12:38:54 |
| 12 | specific one, no. | 12:38:58 |
| 13 | Q    Did you help prepare the response to | 12:39:08 |
| 14 | Interrogatory No. 6? | 12:39:12 |
| 15 | MR. MACK:  Objection, form.  Again, I'll | 12:39:13 |
| 16 | just caution the witness not to reveal the substance | 12:39:19 |
| 17 | of any attorney/client privileged communications, | 12:39:23 |
| 18 | but you may answer. | 12:39:25 |
| 19 | A    So like, to the extent there are, like, | 12:39:26 |
| 20 | dollar values in here and to the extent that those | 12:39:30 |
| 21 | dollar values were derived from, like, this report | 12:39:33 |
| 22 | that we have on the screen right now, then you could | 12:39:36 |
| 23 | perhaps say that, like, I helped prepare this. | 12:39:40 |
| 24 | But I did not, like, directly draft or -- | 12:39:43 |
| 25 | or answer -- answer this in any way, if -- if that | 12:39:47 |

Page 81

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | answers your question. | 12:39:51 |
| 2 | Q     (BY MS. CHANG) Going back to Exhibit 2090, | 12:39:53 |
| 3 | you were designated as Waymo's corporate | 12:40:10 |
| 4 | representative to testify to the cost of developing | 12:40:14 |
| 5 | each of the alleged Waymo trade secrets selected for | 12:40:18 |
| 6 | trial. | 12:40:21 |
| 7 | Did you review a list of the alleged Waymo | 12:40:23 |
| 8 | trade secrets selected for trial? | 12:40:27 |
| 9 | A     So my understanding is -- is that there | 12:40:35 |
| 10 | were many trade secrets at issue in this case.  Some | 12:40:37 |
| 11 | of them -- like, I think some of them are no longer | 12:40:40 |
| 12 | part of the case.  I don't -- I don't know exactly, | 12:40:45 |
| 13 | to be honest. | 12:40:47 |
| 14 | But I believe there are some at issue, and | 12:40:48 |
| 15 | I -- and I did see those numbers that are still at | 12:40:51 |
| 16 | issue in the case. | 12:40:55 |
| 17 | Q     Did you also review the descriptions or | 12:40:56 |
| 18 | the substance of the trade secret numbers?  You -- | 12:40:58 |
| 19 | you mentioned that you had reviewed the numbers? | 12:41:00 |
| 20 | A     Right. | 12:41:03 |
| 21 | Q     Did you also review the substance or the | 12:41:03 |
| 22 | description of that trade secret number? | 12:41:06 |
| 23 | A     I believe I looked at a document that | 12:41:10 |
| 24 | listed them and had, like, detailed explanations.  I | 12:41:12 |
| 25 | didn't -- I didn't read in detail any of them, no, | 12:41:16 |

Page 82

| | | |
|---|---|---|
| 1 | so I... | 12:41:18 |
| 2 | Q    Turning to page 103 of Exhibit 1520, | 12:41:37 |
| 3 | trade -- you'll see that there are a "Trade | 12:41:45 |
| 4 | Secret 2" header. | 12:41:55 |
| 5 | A    Um-hum. | 12:41:57 |
| 6 | Q    And under this section it reads, | 12:41:58 |
| 7 | Information potentially relevant to determining such | 12:42:10 |
| 8 | cost estimates includes information that has been | 12:42:15 |
| 9 | produced at WAYMO-UBER-00027045, | 12:42:19 |
| 10 | WAYMO-UBER-00014506, WAYMO-UBER-00012830, | 12:42:20 |
| 11 | WAYMO-UBER-00014078, and WAYMO-UBER-00014489. | 12:42:31 |
| 12 | WAYMO-UBER-27045 is Exhibit 1400, and | 12:42:42 |
| 13 | that's the spreadsheet that we have been looking at. | 12:42:48 |
| 14 | A    Okay. | 12:42:52 |
| 15 | Q    I'm going to mark as exhibits, the | 12:42:54 |
| 16 | remaining documents that are cited in this | 12:42:58 |
| 17 | interrogatory response. | 12:43:02 |
| 18 | Exhibit 1413, which I have just handed | 12:43:53 |
| 19 | you, is the next document, WAYMO-UBER-00014506.  So | 12:43:56 |
| 20 | did I give you the wrong -- no, I didn't.  Is | 12:44:07 |
| 21 | that -- is that the document that you have? | 12:44:10 |
| 22 | A    Yes. | 12:44:13 |
| 23 | Q    Have you seen this document before? | 12:44:17 |
| 24 | A    Yes.  I saw it yesterday. | 12:44:19 |
| 25 | Q    What is your understanding of what this | 12:44:22 |

Page 83

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | document is? | 12:44:24 |
| 2 | A    This is the Term Sheet of the acquisition | 12:44:27 |
| 3 | of 510 Systems. | 12:44:31 |
| 4 | Q    Had you seen it before yesterday? | 12:44:34 |
| 5 | A    No. | 12:44:35 |
| 6 | Q    The next document, WAYMO-UBER-00012830, | 12:44:38 |
| 7 | was previously marked as Exhibit 1414.  This | 12:44:46 |
| 8 | document is the "Agreement and Plan of Merger By and | 12:45:12 |
| 9 | Among Google Inc., Plus 490 LLC; 510 Systems LLC; | 12:45:16 |
| 10 | each of the members of 510 Systems LLC; and with | 12:45:20 |
| 11 | respect to Articles VI, VIII, IX, and X only, | 12:45:24 |
| 12 | Anthony Levandowksi, as member representative; and | 12:45:26 |
| 13 | U.S. Bank National Association as escrow agent," | 12:45:30 |
| 14 | dated as of July 28, 2011. | 12:45:34 |
| 15 | Do you recognize this document? | 12:45:36 |
| 16 | A    Only insofar as I saw it yesterday. | 12:45:41 |
| 17 | Q    Had you seen it before yesterday? | 12:45:45 |
| 18 | A    No. | 12:45:46 |
| 19 | Q    The next document listed in Waymo's | 12:45:49 |
| 20 | response to Interrogatory No. 6 for Trade Secret 2 | 12:45:54 |
| 21 | on page 103 of Exhibit 1520 is WAYMO-UBER-00014078. | 12:45:59 |
| 22 | This document was previously marked as Exhibit 1415. | 12:46:12 |
| 23 | Exhibit 1415 is the "Google Inc. Project | 12:46:33 |
| 24 | Chauffeur Bonus Program." | 12:46:39 |
| 25 | Do you recognize this document? | 12:46:41 |

Page 84

| | | |
|---|---|---|
| 1 | A    Yes, insofar as I saw it yesterday. | 12:46:45 |
| 2 | Q    Before yesterday, had you seen this | 12:46:48 |
| 3 | document? | 12:46:49 |
| 4 | A    I hadn't seen the document, but I was | 12:46:51 |
| 5 | generally familiar with the 2011 special bonus plan. | 12:46:54 |
| 6 | Q    The final document listed in Waymo's | 12:46:59 |
| 7 | Interrogatory Response No. 6 for Trade Secret 2 is | 12:47:02 |
| 8 | WAYMO-UBER-00014489. | 12:47:06 |
| 9 |     This document was previously marked as | 12:47:13 |
| 10 | Exhibit 1416.  Exhibit 1416 is a letter from Google, | 12:47:16 |
| 11 | in particular, David Lawee, who was vice president | 12:47:32 |
| 12 | of corporate development at the time, to Anthony | 12:47:38 |
| 13 | Levandowksi, dated April 13, 2011. | 12:47:40 |
| 14 |     Do you recognize this document? | 12:47:46 |
| 15 | A    Only insofar as I read it yesterday. | 12:47:49 |
| 16 | Q    Before yesterday had you seen this | 12:47:53 |
| 17 | document? | 12:47:55 |
| 18 | A    No. | 12:47:55 |
| 19 | Q    Looking back at Exhibit 1520, which is | 12:48:47 |
| 20 | Waymo's interrogatory responses, on page 103, the | 12:48:50 |
| 21 | next sentence reads, That information -- referring | 12:48:55 |
| 22 | to the five documents listed before that sentence -- | 12:49:00 |
| 23 | reflects that costs Waymo necessarily incurred for | 12:49:10 |
| 24 | the development, Trade Secret 2 are in the | 12:49:13 |
| 25 | 1.1 billion range. | 12:49:18 |

Page 85

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | Did you help prepare that 1.1 billion | 12:49:24 |
| 2 | range number for Trade Secret 2? | 12:49:28 |
| 3 | MR. MACK:  Objection, form. | 12:49:30 |
| 4 | A    So -- so -- so again, insofar as that | 12:49:34 |
| 5 | number is derived from the numbers that you see of, | 12:49:37 |
| 6 | like, the historical spend at Waymo, to the extent | 12:49:39 |
| 7 | it incorporates those numbers, I would say yes. | 12:49:44 |
| 8 | Q    (BY MS. CHANG) Do you know how that | 12:49:48 |
| 9 | 1.1 billion number was calculated? | 12:49:54 |
| 10 | A    So my understanding is that -- and this | 12:49:59 |
| 11 | is, I believe, a -- a formulation based on the | 12:50:04 |
| 12 | expert's calculations.  But what -- what it is is a | 12:50:08 |
| 13 | summation -- am I allowed to alter this just so I | 12:50:12 |
| 14 | can read it easier?  Can I make it into dollars? | 12:50:19 |
| 15 | No? | 12:50:23 |
| 16 | Q    Yes, we -- yes, we can, but I think we | 12:50:24 |
| 17 | would then need to mark it as new exhibit, so -- | 12:50:25 |
| 18 | A    Okay. | 12:50:28 |
| 19 | Q    -- what we'll do is we'll mark this as | 12:50:28 |
| 20 | Exhibit 2091. | 12:50:31 |
| 21 | A    It -- it's okay.  I don't -- I won't | 12:50:36 |
| 22 | change it, just to keep it -- sorry. | 12:50:37 |
| 23 | Q    Are you sure? | 12:50:39 |
| 24 | A    Yeah.  Yeah. | 12:50:40 |
| 25 | Q    Okay. | 12:50:41 |

Page 86

| | | |
|---|---|---|
| 1 | A      Sorry about that.  So my understanding is | 12:50:41 |
| 2 | that because of the nature of the development of the | 12:50:48 |
| 3 | program as a whole, right, what it was is a -- kind | 12:50:54 |
| 4 | of a calculation of historical spend through the end | 12:50:57 |
| 5 | of 2015. | 12:51:00 |
| 6 | So if -- on the screen you can see that | 12:51:02 |
| 7 | essentially I'm -- I'm highlighting all the cells in | 12:51:04 |
| 8 | Row 16, Columns B through H. | 12:51:08 |
| 9 | And in the bottom corner, Excel does a | 12:51:12 |
| 10 | sum.  So what that sum is saying is that this is | 12:51:15 |
| 11 | approximately $1.1 billion. | 12:51:17 |
| 12 | Q    For the record, the exact sum that is | 12:51:40 |
| 13 | shown in Exhibit 1400 when you highlight Cells B16 | 12:51:47 |
| 14 | to H16, is -- | 12:51:52 |
| 15 | A    Do you want me to read it out? | 12:52:00 |
| 16 | Q    -- you can read it out.  Or I was going | 12:52:02 |
| 17 | to, but you can. | 12:52:04 |
| 18 | A    Oh, I'm sorry.  I'm sorry.  Okay. | 12:52:05 |
| 19 | Q    It is 1084495404; is that right? | 12:52:07 |
| 20 | A    Yes, that's what the screen shows. | 12:52:20 |
| 21 | Q    And that's the number that is the basis | 12:52:23 |
| 22 | for the $1.1 billion range that's shown as the | 12:52:26 |
| 23 | development cost for Trade Secret 2? | 12:52:33 |
| 24 | MR. MACK:  Objection, form. | 12:52:37 |
| 25 | A    That's -- that's my understanding of how | 12:52:37 |

Page 87

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

```
 1    it was formulated.                                12:52:39

 2         Q    (BY MS. CHANG) Do you know what Trade    12:52:41

 3    Secret 2 is?                                       12:52:42

 4         A    Like -- like, in technical detail, no.   12:52:46

 5         Q    In any level of detail?                  12:52:50

 6              MR. MACK:  Objection, form.              12:52:52

 7         A    I -- I know that it's at issue in the    12:52:57

 8    case, but I don't -- like, I don't know the        12:53:00

 9    technical details of it, no.                       12:53:02

10         Q    (BY MS. CHANG) Do you know anything about 12:53:03

11    Trade Secret 2?                                    12:53:04

12         A    In -- I -- I mean, I didn't ask -- like, 12:53:07

13    no, I didn't ask detailed questions about Trade    12:53:10

14    Secret 2.                                          12:53:13

15         Q    What do you know about Trade Secret 2,   12:53:14

16    other than that it's $1.1 billion to develop?      12:53:15

17         A    That to the extent it is -- take -- how do 12:53:23

18    I say this?                                        12:53:29

19              That its development was not limited to, 12:53:30

20    a -- like, a discrete point in time.  And it --    12:53:33

21    it -- the formulation of it and the basis for --   12:53:36

22    thereby the basis of the calculation is that it is 12:53:37

23    the kind of -- from inception to the date of the   12:53:43

24    cutoff of -- whatever informs that cutoff date is  12:53:47

25    how it -- it's informed, right.                    12:53:52
```

Page 88

| | | |
|---|---|---|
| 1 | So there's a development time.  It's not | 12:53:52 |
| 2 | like a discrete thing with, like, a discrete item. | 12:53:54 |
| 3 | It is a totality.  And that's why, you know... | 12:53:57 |
| 4 | Q    Other than the number, what do you know | 12:54:03 |
| 5 | about the technology that's captured by Trade | 12:54:08 |
| 6 | Secret 2? | 12:54:11 |
| 7 | MR. MACK:  Objection, form. | 12:54:12 |
| 8 | A    So what I know about technology is that it | 12:54:21 |
| 9 | was developed at Waymo.  That would be -- and it was | 12:54:23 |
| 10 | technology that was developed in the program as a | 12:54:32 |
| 11 | whole. | 12:54:36 |
| 12 | Q    (BY MS. CHANG) Do you know what aspect of | 12:54:36 |
| 13 | the technology that was developed by Waymo that | 12:54:38 |
| 14 | Trade Secret 2 relates to? | 12:54:42 |
| 15 | MR. MACK:  Objection, form. | 12:54:44 |
| 16 | A    Well, I think based off of my | 12:54:45 |
| 17 | understanding of how it was calculated, aspect -- | 12:54:47 |
| 18 | aspect is a little -- I guess I would take issue | 12:54:51 |
| 19 | with the word "aspect."  Is that -- it -- it's a -- | 12:54:55 |
| 20 | it's a trade secret that is kind of comprehensive in | 12:54:58 |
| 21 | the program as a whole. | 12:55:01 |
| 22 | Like -- but again, that's just a -- like, | 12:55:01 |
| 23 | a nontechnical understanding of, like, how this | 12:55:03 |
| 24 | number was calculated.  And I'm kind of deriving it | 12:55:06 |
| 25 | based off of that calculation. | 12:55:09 |

Page 89

| | | | |
|---|---|---|---|
| 1 | Q    (BY MS. CHANG) If you turn to page 172 of | | 12:55:11 |
| 2 | Exhibit 1520. | | 12:55:14 |
| 3 | A    I'm sorry.  What page again? | | 12:55:16 |
| 4 | Q    172. | | 12:55:19 |
| 5 | A    Okay. | | 12:55:20 |
| 6 | Q    This is Waymo's Response to | | 12:55:36 |
| 7 | Interrogatory No. 6 with respect to Trade Secret 25. | | 12:55:39 |
| 8 | If you look in the middle of the first paragraph, | | 12:55:43 |
| 9 | under that header it reads, Information potentially | | 12:55:48 |
| 10 | relevant to determining such cost estimates includes | | 12:55:52 |
| 11 | information that has been produced at | | 12:55:55 |
| 12 | WAYMO-UBER-00027045, WAYMO-UBER-00014506 | | 12:55:58 |
| 13 | WAYMO-UBER-00012830, WAYMO-UBER-00014078, and | | 12:56:06 |
| 14 | WAYMO-UBER-00014489. | | 12:56:15 |
| 15 | I can represent to you that those are the | | 12:56:20 |
| 16 | same five documents that were cited for Trade | | 12:56:23 |
| 17 | Secret 2 that we just looked at. | | 12:56:26 |
| 18 | The next sentence reads, That information | | 12:56:30 |
| 19 | reflects that costs Waymo necessarily incurred for | | 12:56:34 |
| 20 | the development of Trade Secret 25 are in the | | 12:56:39 |
| 21 | 1.1 billion range. | | 12:56:43 |
| 22 | What is the basis of the $1.1 billion | | 12:57:02 |
| 23 | range number cited for Trade Secret 25 in Waymo's | | 12:57:05 |
| 24 | response to Interrogatory No. 6 for Trade Secret 25? | | 12:57:09 |
| 25 | A    So I -- again, I think my understanding of | | 12:57:16 |

Page 90

| | | |
|---|---|---|
| 1 | how the expert who created that value is that they | 12:57:22 |
| 2 | took the numbers of spend historically since | 12:57:26 |
| 3 | inception through a certain date.  And like, same as | 12:57:28 |
| 4 | the previous one is that it goes through on -- | 12:57:32 |
| 5 | whichever exhibit number we labeled the screen. | 12:57:35 |
| 6 | Q    1400. | 12:57:41 |
| 7 | A    Sorry.  Yeah, 1400 is, again, from a -- | 12:57:42 |
| 8 | 2009 through end of year 2015, which represents that | 12:57:44 |
| 9 | approximately 1.1 billion number. | 12:57:48 |
| 10 | Q    It's the same calculation that was used | 12:57:57 |
| 11 | for Trade Secret 2 that we previously discussed? | 12:58:00 |
| 12 | A    So -- so when you say "the same | 12:58:05 |
| 13 | calculation," I -- like, again, the -- to the | 12:58:07 |
| 14 | extent, like, an expert created that calculation, | 12:58:11 |
| 15 | I -- I can't tell you how precisely they calculate | 12:58:13 |
| 16 | it, right. | 12:58:16 |
| 17 | But my understanding is that it is a | 12:58:17 |
| 18 | culmination of all of the work that precedes -- took | 12:58:19 |
| 19 | -- took place preceding.  And therefore, perhaps in | 12:58:23 |
| 20 | broad strokes it's a similar calculation.  I don't | 12:58:28 |
| 21 | want to speak out of turn and say it's, like, the | 12:58:30 |
| 22 | same calculation. | 12:58:33 |
| 23 | Q    I just want to make sure that I'm | 12:58:34 |
| 24 | understanding your testimony.  You testified that | 12:58:36 |
| 25 | Trade Secret 2, which cited a $1.1 billion cost, was | 12:58:38 |

Page 91

| | | |
|---|---|---|
| 1 | the sum of Cells B16 to H16 of Exhibit 1400, and | 12:58:43 |
| 2 | that was for Trade Secret 2? | 12:58:52 |
| 3 |     A    Yeah, the -- the last -- yes, correct. | 12:58:54 |
| 4 |     Q    And now we're looking at Trade Secret 25, | 12:58:56 |
| 5 | which also cites a 1.1 cost? | 12:58:59 |
| 6 |     A    Um-hum. | 12:59:03 |
| 7 |     Q    The calculation for that 1.1 billion | 12:59:03 |
| 8 | number, is it also the sum of Cells B16 to H16 of | 12:59:06 |
| 9 | Exhibit 1400? | 12:59:12 |
| 10 |           MR. MACK:  Objection, form. | 12:59:14 |
| 11 |     A    Yes, those same numbers inform that | 12:59:19 |
| 12 | number. | 12:59:22 |
| 13 |     Q    (BY MS. CHANG) Why is it that only the | 12:59:23 |
| 14 | costs incurred in 2009 through 2015 are used to | 12:59:28 |
| 15 | calculate the $1.1 billion cost estimate for Trade | 12:59:34 |
| 16 | Secrets 2 and 25? | 12:59:41 |
| 17 |     A    Sorry.  Why is -- why only those years as | 12:59:46 |
| 18 | opposed to what other years, I guess? | 12:59:48 |
| 19 |     Q    Why wasn't 2016 included? | 12:59:52 |
| 20 |     A    Well, my understanding based off of, | 12:59:56 |
| 21 | again, like, the trade secret being a technical | 12:59:58 |
| 22 | thing is that this says it took a period of time. | 01:00:00 |
| 23 |           And that secret -- again, not being | 01:00:03 |
| 24 | technically minded about what a trade secret is | 01:00:07 |
| 25 | legally defined as or anything else, it's -- it's | 01:00:10 |

Page 92

| | | |
|---|---|---|
| 1 | formulation took that span of time; and therefore, | 01:00:14 |
| 2 | they're capturing that period of time's expense, | 01:00:16 |
| 3 | therefore. | 01:00:22 |
| 4 | Q    Your testimony is that the development of | 01:00:23 |
| 5 | Trade Secret 25 incurred cost only up through 2015? | 01:00:27 |
| 6 | MR. MACK:  Objection, form. | 01:00:34 |
| 7 | A    My -- my testimony is that that is my | 01:00:37 |
| 8 | understanding of how it was calculated, yes. | 01:00:39 |
| 9 | Q    (BY MS. CHANG) The same answer for Trade | 01:00:41 |
| 10 | Secret 2? | 01:00:45 |
| 11 | A    Again, like, my under -- my understanding | 01:00:48 |
| 12 | is, like, that's the method the expert used to | 01:00:50 |
| 13 | surmise the -- the data -- the costs incurred based | 01:00:55 |
| 14 | upon historical spend that we -- that I -- that we | 01:00:58 |
| 15 | provided. | 01:01:02 |
| 16 | Q    Do you know what the technology, that | 01:01:08 |
| 17 | Trade Secret 25 relates to, is? | 01:01:11 |
| 18 | MR. MACK:  Objection, form. | 01:01:16 |
| 19 | A    I don't know the specific technology or | 01:01:20 |
| 20 | technological elements that it informs.  My | 01:01:23 |
| 21 | understanding is it's -- it's technology that is -- | 01:01:27 |
| 22 | was developed within Waymo Chauffeur -- | 01:01:30 |
| 23 | Q    (BY MS. CHANG) Is that -- | 01:01:33 |
| 24 | A    -- but that would be the extent of it. | 01:01:34 |
| 25 | Q    You don't know any more details regarding | 01:01:35 |

Page 93

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | Trade Secret 25? | 01:01:38 |
| 2 | A    No, I don't have any more details. | 01:01:40 |
| 3 | Q    You testified that Trade Secret 2 incurred | 01:01:44 |
| 4 | a $1.1 billion cost for development.  You also | 01:01:47 |
| 5 | testified that Trade Secret 25 incurred the same | 01:01:52 |
| 6 | $1.1 billion cost for development. | 01:01:57 |
| 7 | Is there any chance that costs of | 01:02:20 |
| 8 | development is being double counted between Trade | 01:02:23 |
| 9 | Secret 2 and Trade Secret 25? | 01:02:26 |
| 10 | MR. MACK:  Objection, form. | 01:02:29 |
| 11 | A    So one thing in -- in answering your | 01:02:30 |
| 12 | question, I think you said that my testimony was | 01:02:33 |
| 13 | that it costs 1.1 billion to formulate those two | 01:02:36 |
| 14 | trade secrets. | 01:02:40 |
| 15 | So I just want to say first that, like, | 01:02:40 |
| 16 | that's -- that's not my testimony.  What -- what I'm | 01:02:41 |
| 17 | saying is that insofar is that an expert calculated | 01:02:43 |
| 18 | this, it's -- I'm showing the -- my testimony is | 01:02:46 |
| 19 | that in the years 2009 through 2015, those were the | 01:02:49 |
| 20 | expenses incurred. | 01:02:54 |
| 21 | With respect to your -- the -- the core of | 01:02:56 |
| 22 | the question or, like, the latter part of what you | 01:02:59 |
| 23 | just said of:  Is there a double count, I don't | 01:03:01 |
| 24 | think I am technically minded enough to say whether | 01:03:05 |
| 25 | that is true or not. | 01:03:10 |

Page 94

| 1 | Q     (BY MS. CHANG) Do you understand that you | 01:03:11 |
| 2 | were designated corporate witness, so you're | 01:03:13 |
| 3 | supposed to do testify on behalf of the company | 01:03:16 |
| 4 | regarding the cost of each of the alleged trade | 01:03:19 |
| 5 | secrets?  Are you not prepared to testify as to that | 01:03:21 |
| 6 | today? | 01:03:25 |
| 7 | A     So -- so I'm -- I'm prepared to testify. | 01:03:26 |
| 8 | And -- and I have been trying to testify about the | 01:03:29 |
| 9 | numbers and the costs incurred by this program. | 01:03:32 |
| 10 | I am not technically minded to say that a | 01:03:37 |
| 11 | trade secret involved this cost versus that cost.  I | 01:03:39 |
| 12 | think that's a more expert-based formulation. | 01:03:44 |
| 13 | And I'm not prepared or capable of -- of | 01:03:49 |
| 14 | creating -- like, I'm not an expert, right.  Like, | 01:03:52 |
| 15 | my understanding is you -- you have expert reports | 01:03:54 |
| 16 | on these kinds of things, and there will be a whole, | 01:03:56 |
| 17 | you know, rigmarole around that. | 01:03:58 |
| 18 | But I am prepared to tell you about what | 01:04:01 |
| 19 | are the costs and what we have been discussing about | 01:04:01 |
| 20 | what the expenses that we're showing in these | 01:04:04 |
| 21 | various years. | 01:04:07 |
| 22 | Q     If I understand your testimony correctly, | 01:04:08 |
| 23 | you're prepared to testify about the costs incurred | 01:04:10 |
| 24 | by Waymo's self-driving car program, but you are not | 01:04:12 |
| 25 | prepared to testify about the costs of each | 01:04:19 |

Page 95

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | individual trade secret; is that right? | 01:04:22 |
| 2 | MR. MACK:  Objection to form. | 01:04:23 |
| 3 | A    So again, insofar as that -- in this | 01:04:26 |
| 4 | interrogatory response there is a response that says | 01:04:30 |
| 5 | the trade secret costs $1.1 billion.  I can tell you | 01:04:31 |
| 6 | what numbers inform that. | 01:04:36 |
| 7 | So -- so yes, there's an -- there's an | 01:04:37 |
| 8 | expert conclusion about this, and I can help show | 01:04:39 |
| 9 | you -- like, to the two preceding questions you | 01:04:42 |
| 10 | asked, I showed you how that 1.1 billion was | 01:04:45 |
| 11 | informed.  So that extent, I am providing my | 01:04:48 |
| 12 | testimony and the -- the basis for that $1.1 billion | 01:04:51 |
| 13 | calculation. | 01:04:54 |
| 14 | Q    (BY MS. CHANG) You know how the number was | 01:04:54 |
| 15 | calculated, but you're not offering any testimony as | 01:04:56 |
| 16 | to how that number relates to each of the trade | 01:04:59 |
| 17 | secrets? | 01:05:02 |
| 18 | MR. MACK:  Objection, form. | 01:05:02 |
| 19 | A    I don't -- I don't understand what you | 01:05:05 |
| 20 | mean by "how it relates to each of the trade | 01:05:06 |
| 21 | secrets." | 01:05:09 |
| 22 | Q    (BY MS. CHANG) You're not providing any | 01:05:09 |
| 23 | testimony that -- for example, where it says, Trade | 01:05:11 |
| 24 | Secret 2 costs $1.1 billion, you're not offering | 01:05:14 |
| 25 | that Trade Secret 2 actually costs $1.1 billion; | 01:05:17 |

Page 96

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | you're just offering testimony about how | 01:05:19 |
| 2 | $1.1 billion was calculated? | 01:05:22 |
| 3 | MR. MACK:  Objection, form. | 01:05:26 |
| 4 | A    Sorry.  Sorry.  Like, let me -- let me try | 01:05:30 |
| 5 | to -- can -- can you repeat the question?  It's kind | 01:05:34 |
| 6 | of long, so I -- I don't want to get lost in it. | 01:05:37 |
| 7 | MS. CHANG:  Could you read the question | 01:05:40 |
| 8 | back to the witness? | 01:05:41 |
| 9 | (The Reporter read the record as follows: | 01:05:43 |
| 10 | QUESTION:  You're not providing any testimony | 01:05:43 |
| 11 | that -- for example, where it says, Trade Secret 2 | 01:05:43 |
| 12 | costs $1.1 billion, you're not offering that Trade | 01:05:43 |
| 13 | Secret 2 actually costs $1.1 billion; you're just | 01:05:43 |
| 14 | offering testimony about how $1.1 billion was | 01:05:43 |
| 15 | calculated?) | 01:05:43 |
| 16 | MR. MACK:  Same objection. | 01:06:15 |
| 17 | A    So my understanding is that -- that these | 01:06:17 |
| 18 | trade secrets are a development over time; and | 01:06:21 |
| 19 | therefore, that -- it takes all of the preceding | 01:06:27 |
| 20 | work. | 01:06:30 |
| 21 | And to the extent that trade secret was | 01:06:30 |
| 22 | formulated from inception of the program through the | 01:06:33 |
| 23 | time period that we marked on that at the end of the | 01:06:37 |
| 24 | year, which it's -- it's now blacked out, but I | 01:06:40 |
| 25 | think it was 2015 or 2016, that is the cost of the | 01:06:42 |

Page 97

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | trade secret. | 01:06:46 |
| 2 |     Q    (BY MS. CHANG) You are testifying that -- | 01:06:48 |
| 3 | it is your testimony under oath that Trade Secret 2 | 01:06:49 |
| 4 | costs $1.1 billion? | 01:06:54 |
| 5 |         MR. MACK:  Objection, form. | 01:06:57 |
| 6 |     A    Again, to -- to the extent the expert | 01:06:58 |
| 7 | formulated that and -- and the basis is that all of | 01:07:01 |
| 8 | the work took -- took -- it's all of the preceding | 01:07:03 |
| 9 | work up until that time and that our -- the -- | 01:07:06 |
| 10 | the program's historical spend is that, then -- then | 01:07:09 |
| 11 | yes, consistent with that, $1.1 billion is a correct | 01:07:12 |
| 12 | number. | 01:07:16 |
| 13 |     Q    (BY MS. CHANG) But you don't know what | 01:07:16 |
| 14 | Trade Secret 2 actually is? | 01:07:17 |
| 15 |         MR. MACK:  Objection, form. | 01:07:19 |
| 16 |     A    The -- the discrete technical elements of | 01:07:21 |
| 17 | it, no. | 01:07:23 |
| 18 |     Q    (BY MS. CHANG) And you don't know what | 01:07:25 |
| 19 | Trade Secret 25 is? | 01:07:27 |
| 20 |         MR. MACK:  Same objection. | 01:07:28 |
| 21 |     A    Again, the -- the discrete technical | 01:07:29 |
| 22 | elements of it, no.  I -- like, to the extent it was | 01:07:32 |
| 23 | formulated over time and it is -- it is a product of | 01:07:34 |
| 24 | work since the inception of a program, that's -- | 01:07:37 |
| 25 | that's what I understand. | 01:07:39 |

Page 98

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | Q     (BY MS. CHANG) Do you know if there was | 01:07:46 |
| 2 | any chance of double counting between the technology | 01:07:47 |
| 3 | that is claimed in Trade Secret 2 and the technology | 01:07:50 |
| 4 | that is claimed in Trade Secret 25? | 01:07:54 |
| 5 | MR. MACK:  Objection to form. | 01:07:57 |
| 6 | A     I -- like, what -- what would you consider | 01:08:01 |
| 7 | double counting? | 01:08:06 |
| 8 | Q     (BY MS. CHANG) Claiming the claim cost | 01:08:13 |
| 9 | twice. | 01:08:15 |
| 10 | A     Between -- between -- so -- so saying the | 01:08:16 |
| 11 | costs of developing one trade secret versus the | 01:08:19 |
| 12 | other are duplicative? | 01:08:21 |
| 13 | Q     Yes. | 01:08:26 |
| 14 | A     Without -- without understanding the | 01:08:27 |
| 15 | technical elements of -- of the trade secrets, | 01:08:29 |
| 16 | which -- which I admittedly don't understand the | 01:08:30 |
| 17 | technical elements, I -- I don't know that I can | 01:08:34 |
| 18 | answer that. | 01:08:35 |
| 19 | Q     How are you able to testify that Trade | 01:08:36 |
| 20 | Secret 25 costs 1.1 billion if you don't understand | 01:08:38 |
| 21 | the technical details that are claimed by Trade | 01:08:42 |
| 22 | Secret 25? | 01:08:45 |
| 23 | MR. MACK:  Objection, form. | 01:08:46 |
| 24 | A     Again, because -- my understanding is -- | 01:08:49 |
| 25 | is that the trade secret was formulated since the | 01:08:50 |

Page 99

| | | |
|---|---|---|
| 1 | inception of the program.  And it is the totality of | 01:08:55 |
| 2 | the technology as whole that -- that allows the | 01:08:57 |
| 3 | system to work.  And therefore, all of the expenses | 01:09:01 |
| 4 | that come through that year that we ended on is why | 01:09:03 |
| 5 | that number is right. | 01:09:06 |
| 6 | So it's -- it's the -- the fact that a | 01:09:07 |
| 7 | given trade secret is a part of this entire | 01:09:12 |
| 8 | solution; and therefore, we took the expense of the | 01:09:15 |
| 9 | entire program and took them over a period of time | 01:09:17 |
| 10 | to what is determined as the date where it's, like, | 01:09:19 |
| 11 | formulated or -- not -- like, I don't know how to | 01:09:23 |
| 12 | describe it in whatever might be the applicable | 01:09:25 |
| 13 | term. | 01:09:28 |
| 14 | But that period of time you then take that | 01:09:28 |
| 15 | whole expense of the whole exclusion and say you | 01:09:30 |
| 16 | have now -- it's come to fruition, so to speak or | 01:09:33 |
| 17 | whatever, and that's how you will come up with the | 01:09:34 |
| 18 | $1.1 billion. | 01:09:37 |
| 19 | Q    (BY MS. CHANG) Your testimony is that | 01:09:38 |
| 20 | Trade Secret 2 costs $1.1 billion to develop; is | 01:09:40 |
| 21 | that right? | 01:09:44 |
| 22 | MR. MACK:  Objection, form. | 01:09:44 |
| 23 | A    My testimony is that to the extent that | 01:09:47 |
| 24 | the -- the expert has surmised that this is, like, a | 01:09:49 |
| 25 | full-on, like, evolution and it -- all of the steps | 01:09:53 |

Page 100

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | preceding takes time to create the solution.  You | 01:09:59 |
| 2 | take all of that spend, and it's 1.1 billion of | 01:10:03 |
| 3 | spend that occurred during that time.  And | 01:10:05 |
| 4 | therefore, that's the way you come up to the | 01:10:06 |
| 5 | $1.1 billion range identified in the interrogatory. | 01:10:09 |
| 6 | Q    (BY MS. CHANG) It's your testimony that | 01:10:12 |
| 7 | Trade Secret 25 costs $1.1 billion to develop; is | 01:10:14 |
| 8 | that right? | 01:10:17 |
| 9 | MR. MACK:  Same objection. | 01:10:18 |
| 10 | A    I -- I would answer that in the same way I | 01:10:19 |
| 11 | did the preceding question. | 01:10:22 |
| 12 | Q    (BY MS. CHANG) What is your answer to the | 01:10:23 |
| 13 | question:  What was the cost of developing Trade | 01:10:24 |
| 14 | Secret 2 and Trade Secret 25? | 01:10:27 |
| 15 | MR. MACK:  Objection, form. | 01:10:32 |
| 16 | A    So it -- to -- to -- what was the cost of | 01:10:33 |
| 17 | developing the trade secret? | 01:10:38 |
| 18 | Q    (BY MS. CHANG) To clarify, the question | 01:10:41 |
| 19 | is:  What was the cost of developing Trade Secret 2 | 01:10:42 |
| 20 | and Trade Secret 25?  So I want to know the combined | 01:10:46 |
| 21 | cost of developing those two trade secrets. | 01:10:51 |
| 22 | A    I -- I don't know that I could answer | 01:10:54 |
| 23 | that, because I don't have, again, the technical | 01:10:55 |
| 24 | element of what the trade secret is. | 01:10:57 |
| 25 | I think that's -- that's something that I | 01:10:58 |

Page 101

| | | |
|---|---|---|
| 1 | don't know.  But to the extent that -- like, if an | 01:11:02 |
| 2 | expert were to help -- like, tell me how you capture | 01:11:05 |
| 3 | those things, and we said:  Well, is there, like, | 01:11:09 |
| 4 | this time element, for example, or something of that | 01:11:12 |
| 5 | sort, then I could look at that amount of time or | 01:11:15 |
| 6 | however and then come up with a number.  Kind of | 01:11:17 |
| 7 | like what I have been describing in the preceding | 01:11:19 |
| 8 | answers. | 01:11:22 |
| 9 | Q    You testified that Trade Secret 2 used the | 01:11:22 |
| 10 | same calculation as Trade Secret 25? | 01:11:24 |
| 11 | MR. MACK:  Objection, form. | 01:11:30 |
| 12 | A    Like -- so I -- I don't think I used the | 01:11:31 |
| 13 | word "calculation."  But again, I think that we said | 01:11:34 |
| 14 | that in a similar manner, like, you took the whole | 01:11:37 |
| 15 | program's spend from inception to the time where | 01:11:41 |
| 16 | that trade secret was -- is determined to have, | 01:11:44 |
| 17 | like, come to fruition or whatever. | 01:11:45 |
| 18 | And you take all of that spend, because | 01:11:48 |
| 19 | these trade secrets are part of an integrated | 01:11:51 |
| 20 | whole -- like, it's a whole solution, right.  And | 01:11:54 |
| 21 | that's my understanding of how that determination | 01:11:56 |
| 22 | was made. | 01:11:57 |
| 23 | Q    (BY MS. CHANG) But isn't the calculation | 01:11:59 |
| 24 | of Trade Secret 2 based on that analysis, the same | 01:12:02 |
| 25 | way that you're calculating the cost for Trade | 01:12:06 |

Page 102

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | Secret 25? | 01:12:08 |
| 2 | MR. MACK:  Objection, form. | 01:12:11 |
| 3 | Q    (BY MS. CHANG) You seem to be implying | 01:12:12 |
| 4 | that the calculation is not the same, so I'm just | 01:12:13 |
| 5 | trying to figure out exactly what your testimony is | 01:12:16 |
| 6 | with respect to the calculations. | 01:12:20 |
| 7 | A    Sure.  And -- and -- again, like -- like I | 01:12:21 |
| 8 | said earlier -- I think a bit earlier is that -- | 01:12:24 |
| 9 | like, the precise calculation of what informs and | 01:12:25 |
| 10 | costs of the trade secret, I think it requires | 01:12:29 |
| 11 | certain technical elements. | 01:12:31 |
| 12 | But to the extent that it was a | 01:12:32 |
| 13 | time-based, like, evolution of the entire | 01:12:35 |
| 14 | technological solution, to the extent that is what I | 01:12:39 |
| 15 | understand of it, then perhaps it -- then in that | 01:12:42 |
| 16 | vein, yes.  But again, I'm not the -- the -- the | 01:12:47 |
| 17 | expert who calculated that number, per se. | 01:12:49 |
| 18 | Q    Okay.  Stepping back, you keep on | 01:12:53 |
| 19 | mentioning an "expert."  Is there a particular | 01:12:54 |
| 20 | expert you're referring to? | 01:12:56 |
| 21 | A    I'm assuming who -- whichever expert | 01:12:58 |
| 22 | that -- it says "will be the subject of expert | 01:13:01 |
| 23 | testimony" here in the interrogatory. | 01:13:05 |
| 24 | Q    That's true.  I believe Waymo's experts | 01:13:07 |
| 25 | will be using this interrogatory response.  But | 01:13:10 |

Page 103

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | these are interrogatory responses from Waymo -- | 01:13:13 |
| 2 | A    Um-hum. | 01:13:17 |
| 3 | Q    -- so an expert did not draft -- I can | 01:13:17 |
| 4 | represent to you that an expert did not draft these | 01:13:21 |
| 5 | responses. | 01:13:25 |
| 6 | A    Okay. | 01:13:25 |
| 7 | Q    Waymo -- your counsel can correct me if | 01:13:25 |
| 8 | I'm wrong.  I just wanted to know whether you had a | 01:13:27 |
| 9 | particular expert in mind when you keep on | 01:13:32 |
| 10 | mentioning this expert. | 01:13:34 |
| 11 | A    I -- I don't have a name in mind, no. | 01:13:36 |
| 12 | Q    Moving on to Trade Secret 90, which is | 01:13:48 |
| 13 | another one of the trade secrets that are still at | 01:13:51 |
| 14 | issue in this case, if you could turn to page 126 of | 01:13:54 |
| 15 | Exhibit 1520. | 01:13:58 |
| 16 | The response to Interrogatory No. 6 for | 01:14:08 |
| 17 | Trade Secret 90 starts on exhibit starts on page 126 | 01:14:20 |
| 18 | and continues on to page 127. | 01:14:23 |
| 19 | If you look at the middle of the first | 01:14:27 |
| 20 | paragraph to the response regarding Trade Secret 90, | 01:14:30 |
| 21 | it states, Information potentially relevant to | 01:14:37 |
| 22 | determining such cost estimate has been produced at | 01:14:42 |
| 23 | WAYMO-UBER-00027045, WAYMO-UBER-00014506 | 01:14:46 |
| 24 | WAYMO-UBER-00012830, WAYMO-UBER-00014078, and | 01:14:57 |
| 25 | WAYMO-UBER-00014489. | 01:15:06 |

Page 104

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | I can represent to you that those are the | 01:15:09 |
| 2 | same five documents that were cited for Trade | 01:15:12 |
| 3 | Secret 2 and Trade Secret 25 that we just looked at. | 01:15:15 |
| 4 | The next sentence reads, That information | 01:15:18 |
| 5 | reflects that costs Waymo necessarily incurred for | 01:15:23 |
| 6 | the development of Trade Secret 90 are in the | 01:15:27 |
| 7 | 1.1 billion range. | 01:15:31 |
| 8 | What was the basis for calculating that | 01:15:33 |
| 9 | $1.1 billion cost estimate? | 01:15:36 |
| 10 | A    So again, my understanding is that it is a | 01:15:41 |
| 11 | cost that captures the entire program spend from | 01:15:43 |
| 12 | inception to the period of time where it stops -- I | 01:15:47 |
| 13 | think it's 2015, 2016, that 1.08 that you round up | 01:15:54 |
| 14 | to 1.1 billion. | 01:15:59 |
| 15 | It is informed by those same sets of | 01:16:00 |
| 16 | numbers for the totality of the program spend for | 01:16:04 |
| 17 | that period of time. | 01:16:05 |
| 18 | Q    The calculation that was the basis of the | 01:16:06 |
| 19 | $1.1 billion cost estimate for Trade Secret 90 is | 01:16:09 |
| 20 | the same calculation that was done for Trade | 01:16:13 |
| 21 | Secret 2 and Trade Secret 25? | 01:16:16 |
| 22 | MR. MACK:  Objection, form. | 01:16:18 |
| 23 | A    Again, my understanding being that it | 01:16:23 |
| 24 | covers the -- the time period for the formulation of | 01:16:24 |
| 25 | that trade secret, without knowing the technical | 01:16:27 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | elements of it, is -- is a time period that spans | 01:16:29 |
| 2 | the program's total spend of $1.1 billion. | 01:16:32 |
| 3 | Q    (BY MS. CHANG) And that calculation is the | 01:16:36 |
| 4 | sum of Cells B16 to H16 in Exhibit 1400? | 01:16:40 |
| 5 | A    I'll -- I'll accept that.  I don't see it | 01:16:50 |
| 6 | on the screen, but I believe so.  It's -- it's the | 01:16:52 |
| 7 | cells that I had highlighted earlier. | 01:16:53 |
| 8 | Q    And that's the same 1.08 -- | 01:16:58 |
| 9 | A    Correct. | 01:17:02 |
| 10 | Q    -- billion number that we have been | 01:17:02 |
| 11 | looking at? | 01:17:05 |
| 12 | A    Correct. | 01:17:05 |
| 13 | Q    Do you know what -- the technical aspects | 01:17:10 |
| 14 | that is claimed by Trade Secret 90? | 01:17:20 |
| 15 | MR. MACK:  Objection, form. | 01:17:24 |
| 16 | A    I'm not familiar with the -- the precise | 01:17:25 |
| 17 | individual technical aspects of -- or sorry.  Let me | 01:17:29 |
| 18 | rephrase. | 01:17:31 |
| 19 | I'm not -- I'm not familiar with the -- | 01:17:31 |
| 20 | the technical aspects of the individual trade | 01:17:33 |
| 21 | secret.  My understanding is that insofar as it is | 01:17:38 |
| 22 | part of the entirety of this self-driving system. | 01:17:42 |
| 23 | Therefore, all of the costs of the program since | 01:17:45 |
| 24 | inception to the time are what then informs that | 01:17:48 |
| 25 | $1.1 billion number. | 01:17:52 |

Page 106

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | Q    (BY MS. CHANG) If I understand your | 01:17:54 |
| 2 | testimony correctly, the costs of the program from | 01:17:56 |
| 3 | inception to 2015 forms the basis for the | 01:18:05 |
| 4 | development cost for Trade Secret 2, Trade | 01:18:12 |
| 5 | Secret 25, and Trade Secret 90; is that correct? | 01:18:15 |
| 6 | MR. MACK:  Objection, form. | 01:18:20 |
| 7 | A    Can I get the question read back? | 01:18:24 |
| 8 | Q    (BY MS. CHANG) If I understand your | 01:18:28 |
| 9 | testimony correctly, the costs of the self-driving | 01:18:29 |
| 10 | car program from inception to 2015 forms the basis | 01:18:32 |
| 11 | for the development cost for Trade Secret 2, Trade | 01:18:36 |
| 12 | Secret 25, and -- and now Trade Secret 90? | 01:18:39 |
| 13 | MR. MACK:  Same objection. | 01:18:45 |
| 14 | A    I -- I believe so, yes, if I understand | 01:18:48 |
| 15 | your question. | 01:18:52 |
| 16 | Q    (BY MS. CHANG) Is there a part of the | 01:18:54 |
| 17 | question that you don't understand? | 01:18:55 |
| 18 | A    So -- sorry.  Can -- can you read it back | 01:18:57 |
| 19 | one more time?  I apologize. | 01:19:01 |
| 20 | Q    Your testimony is that the costs of the | 01:19:03 |
| 21 | self-driving car program from inception to 2015 | 01:19:08 |
| 22 | forms the basis for the development costs of Trade | 01:19:12 |
| 23 | Secret 2, Trade Secret 25, and now Trade Secret 90? | 01:19:16 |
| 24 | A    My understanding is that -- that since | 01:19:23 |
| 25 | inception through the year that you just identified | 01:19:25 |

Page 107

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | informs the $1.1 billion number that was placed into | 01:19:27 |
| 2 | this interrogatory. | 01:19:31 |
| 3 |     Q    For each of those three trade secrets that | 01:19:32 |
| 4 | we have discussed so far? | 01:19:34 |
| 5 |     A    Correct.  That period of spend is what | 01:19:36 |
| 6 | informed that number.  And if I may add.  The one | 01:19:38 |
| 7 | thing, like -- and we had reviewed this a little bit | 01:19:41 |
| 8 | earlier in the deposition.  Is that -- to the extent | 01:19:43 |
| 9 | that there are historical expenses not captured, | 01:19:45 |
| 10 | that number is potentially higher. | 01:19:47 |
| 11 |     But because of the way the Alphabet | 01:19:50 |
| 12 | structure was run historically, et cetera, | 01:19:52 |
| 13 | et cetera, that number is -- is reported lower in | 01:19:54 |
| 14 | the Exhibit 1400, I think, is the one that -- that's | 01:20:00 |
| 15 | the spreadsheet so... | 01:20:04 |
| 16 |     Q    To clarify, you're saying that the | 01:20:12 |
| 17 | number -- the 1.08 billion number that's shown in | 01:20:14 |
| 18 | Exhibit 1400 is actually lower than the actual spend | 01:20:20 |
| 19 | of the program from inception to 2015? | 01:20:23 |
| 20 |     A    Correct.  Correct.  As I mentioned | 01:20:25 |
| 21 | earlier, there are -- there are equity that's | 01:20:26 |
| 22 | missing from this, as well as, like, the | 01:20:28 |
| 23 | intracompany expenses of the allocated expensive. | 01:20:30 |
| 24 | Because, again, alphabetization, which is that | 01:20:33 |
| 25 | spinout, was something that happened later. | 01:20:36 |

Page 108

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | Q     What is the cost of developing Trade | 01:20:40 |
| 2 | Secret 2, Trade Secret 25, and Trade Secret 90? | 01:20:42 |
| 3 | MR. MACK:  Objection, form. | 01:20:46 |
| 4 | A     So to the extent that the expert has | 01:20:48 |
| 5 | surmised that development of that trade secret is | 01:20:55 |
| 6 | something that is kind of program inception to the | 01:20:58 |
| 7 | date that, again, this comes to, like, fruition or | 01:21:02 |
| 8 | whatever you want to call it, it -- it is that | 01:21:04 |
| 9 | 1 point -- it is the spend for the entirety of the | 01:21:08 |
| 10 | program from that inception to the date that that's | 01:21:11 |
| 11 | cut off at, which is 2015 or '16, based on the | 01:21:14 |
| 12 | spreadsheet. | 01:21:19 |
| 13 | Q     (BY MS. CHANG) Given that the entirety of | 01:21:19 |
| 14 | the program cost from inception to 2015 is about | 01:21:21 |
| 15 | $1.1 billion, would it be fair to say that the costs | 01:21:28 |
| 16 | of developing Trade Secret 2 is the same as the cost | 01:21:31 |
| 17 | of developing Trade Secrets 2, 25, and 90 together? | 01:21:35 |
| 18 | MR. MACK:  Objection, form. | 01:21:40 |
| 19 | A     You're asking:  Is -- is the cost of | 01:21:43 |
| 20 | developing -- is the cost of developing one, the | 01:21:45 |
| 21 | same as the cost of developing all of them? | 01:21:49 |
| 22 | Q     (BY MS. CHANG) All three of them that we | 01:21:53 |
| 23 | just discussed. | 01:21:54 |
| 24 | A     I -- like, I don't know that I understand? | 01:21:56 |
| 25 | Like, is the cost the same?  I mean, I guess my | 01:22:08 |

Page 109

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | answer would be that -- that they're all | 01:22:20 |
| 2 | wholly-integrated solutions in the system.  And | 01:22:24 |
| 3 | like, this is (inaudible), like, a self-driving | 01:22:26 |
| 4 | system, so -- | 01:22:26 |
| 5 | THE COURT REPORTER:  What is that?  This | 01:22:34 |
| 6 | is? | 01:22:34 |
| 7 | A    Sorry? | 01:22:35 |
| 8 | THE COURT REPORTER:  They're | 01:22:35 |
| 9 | wholly-integrated solutions in the system.  And | 01:22:35 |
| 10 | like? | 01:22:35 |
| 11 | A    They're all wholly-integrated solutions in | 01:22:35 |
| 12 | the same system is what I meant to say.  That -- | 01:22:38 |
| 13 | sorry.  I lost my train of thought. | 01:22:48 |
| 14 | Q    (BY MS. CHANG) You're the corporate -- | 01:22:52 |
| 15 | A    Yeah. | 01:22:55 |
| 16 | Q    -- representative on the cost of each of | 01:22:55 |
| 17 | the trade secrets? | 01:22:56 |
| 18 | A    Right. | 01:22:58 |
| 19 | Q    And I'm just trying to figure out how this | 01:22:58 |
| 20 | cost calculation works.  You're testifying that | 01:23:01 |
| 21 | Trade Secret 2 costs $1.1 billion, which is the | 01:23:05 |
| 22 | entire program cost from inception to 2015. | 01:23:09 |
| 23 | You're testifying that Trade Secret 25 | 01:23:13 |
| 24 | costs $1.1 billion, which is also the cost of the | 01:23:16 |
| 25 | entire program from inception to 2015. | 01:23:23 |

Page 110

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | And you're also claiming that Trade | 01:23:25 |
| 2 | Secret 90 costs $1.1 billion, which is the cost of | 01:23:27 |
| 3 | the entire program from inception to 2015. | 01:23:34 |
| 4 | Because you're claiming the entire program | 01:23:39 |
| 5 | cost for each of these trade secrets, I want to | 01:23:42 |
| 6 | understand that if it's your testimony that the cost | 01:23:47 |
| 7 | of developing all three trade secrets is also the | 01:23:50 |
| 8 | entire cost of the program from inception to 2015. | 01:23:53 |
| 9 | MR. MACK:  Objection, form; beyond the | 01:23:58 |
| 10 | scope. | 01:23:59 |
| 11 | A    I -- I don't know that I know how to | 01:24:01 |
| 12 | answer that.  Because, again, like, given they all | 01:24:04 |
| 13 | have an interplay and -- and are all required, I -- | 01:24:07 |
| 14 | I don't think I -- I -- I have the technical | 01:24:11 |
| 15 | know-how to -- to -- to answer, like, if you | 01:24:13 |
| 16 | developed one wholly independently versus all of the | 01:24:16 |
| 17 | others, what would the costs be. | 01:24:19 |
| 18 | Q    (BY MS. CHANG) That's not my question. | 01:24:23 |
| 19 | A    I'm sorry.  All right.  I'm just having a | 01:24:26 |
| 20 | hard understanding -- | 01:24:28 |
| 21 | Q    Yeah. | 01:24:29 |
| 22 | A    -- to be honest. | 01:24:29 |
| 23 | Q    Well -- so maybe -- I think there are two | 01:24:30 |
| 24 | potential answers to this question, and there could | 01:24:36 |
| 25 | also be an alternate answer.  One potential answer | 01:24:38 |

Page 111

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | is because I'm already claiming the entire cost of | 01:24:44 |
| 2 | the program for -- for one of the trade secrets, | 01:24:48 |
| 3 | there's not more that I could claim for developing | 01:24:50 |
| 4 | all three. | 01:24:53 |
| 5 | Or you could say because I'm claiming | 01:24:53 |
| 6 | $1.1 billion for one trade secret, $1.1 billion for | 01:24:58 |
| 7 | another trade secret, and $1.1 billion for a third | 01:25:02 |
| 8 | trade secret, that the cost of developing all three | 01:25:07 |
| 9 | of those would be 3.3 billion, even thought that | 01:25:09 |
| 10 | exceeds the costs of the entire program. | 01:25:12 |
| 11 | I just want to know what your testimony | 01:25:17 |
| 12 | is.  I -- if I wanted to figure out what is the cost | 01:25:18 |
| 13 | of developing three of these trade secrets that are | 01:25:22 |
| 14 | still at issue in this case, is it just -- | 01:25:25 |
| 15 | A    Can -- I'm sorry.  I'm sorry.  Like, I | 01:25:28 |
| 16 | want -- I want -- I want to make sure I understand. | 01:25:29 |
| 17 | Could I -- could I restate it back to you so that, | 01:25:30 |
| 18 | like -- like, you're essentially posing a | 01:25:33 |
| 19 | hypothetical of:  If you developed only one of these | 01:25:36 |
| 20 | trade secrets, how much would it cost versus if you | 01:25:38 |
| 21 | developed all three at the same time? | 01:25:41 |
| 22 | Q    It's not a hypothetical, because Waymo has | 01:25:42 |
| 23 | responded that developing one trade secret costs | 01:25:45 |
| 24 | $1.1 billion. | 01:25:48 |
| 25 | A    Right. | 01:25:49 |

Page 112

| | | |
|---|---|---|
| 1 | Q     That's not a hypothetical.  That's Waymo's | 01:25:50 |
| 2 | response. | 01:25:52 |
| 3 | A     Sure. | 01:25:52 |
| 4 | Q     And you're Waymo's corporate | 01:25:53 |
| 5 | representative to give that testimony. | 01:25:54 |
| 6 | A     Right. | 01:25:56 |
| 7 | Q     My question is:  Is the cost the same for | 01:25:58 |
| 8 | all three trade secrets -- if -- if I -- is the cost | 01:26:01 |
| 9 | of developing Trade Secret 2 the same as the cost of | 01:26:08 |
| 10 | developing Trade Secrets 2, 25, and 90? | 01:26:11 |
| 11 | MR. MACK:  Objection, form; beyond the | 01:26:14 |
| 12 | scope. | 01:26:15 |
| 13 | A     Again, to the extent they're identified as | 01:26:16 |
| 14 | the same number, then this is -- like, between the | 01:26:19 |
| 15 | responses for the individual trade secrets, the same | 01:26:23 |
| 16 | number is identified.  Like, that's in -- in the | 01:26:26 |
| 17 | answer.  So I -- | 01:26:28 |
| 18 | Q     (BY MS. CHANG) I understand. | 01:26:29 |
| 19 | A     -- don't know what else you're asking me | 01:26:30 |
| 20 | add to that. | 01:26:33 |
| 21 | Q     So for each -- you have -- you have | 01:26:34 |
| 22 | identified a cost for each one -- for each trade | 01:26:34 |
| 23 | secret; is that correct? | 01:26:37 |
| 24 | A     Right.  They're -- in -- in the Responses | 01:26:39 |
| 25 | to Interrogatories, there's a cost identified for | 01:26:40 |

Page 113

| | | |
|---|---|---|
| 1 | MR. MACK:  Objection, form; beyond the | 02:29:34 |
| 2 | scope. | 02:29:34 |
| 3 | A    Again -- so you're saying if it finishes | 02:29:46 |
| 4 | in a period, like, in the -- in the -- in the | 02:29:50 |
| 5 | between period, are there expenses that are backed | 02:29:52 |
| 6 | out? | 02:29:56 |
| 7 | Q    (BY MS. CHANG) My question is:  If | 02:29:58 |
| 8 | development actually ends in the middle of a | 02:30:01 |
| 9 | month -- | 02:30:04 |
| 10 | A    Okay. | 02:30:05 |
| 11 | Q    -- by including the cost through the end | 02:30:06 |
| 12 | of the month, are you overstating that development | 02:30:09 |
| 13 | cost? | 02:30:13 |
| 14 | MR. MACK:  Same objections. | 02:30:14 |
| 15 | A    I mean, hypothetic -- hypothetically, I -- | 02:30:15 |
| 16 | like, I think it's -- it's -- it's a potential -- | 02:30:20 |
| 17 | there's a potential that if something is done | 02:30:25 |
| 18 | earlier, then it's not done later.  I guess that's | 02:30:28 |
| 19 | what I'm understanding you saying. | 02:30:31 |
| 20 | Q    (BY MS. CHANG) Let's say the development | 02:30:33 |
| 21 | cost -- | 02:30:35 |
| 22 | A    Right. | 02:30:35 |
| 23 | Q    -- for December 2013 -- the month of | 02:30:35 |
| 24 | December 2013 is a hundred thousand dollars. | 02:30:38 |
| 25 | A    Okay. | 02:30:43 |

Page 142

| | | |
|---|---|---|
| 1 | Q    Let's say development actually ends | 02:30:44 |
| 2 | somewhere in the month -- | 02:30:47 |
| 3 | A    Okay. | 02:30:49 |
| 4 | Q    -- somewhere in the middle of the month. | 02:30:50 |
| 5 | A    All right. | 02:30:53 |
| 6 | Q    Would claiming a $100,000 development cost | 02:30:54 |
| 7 | for December 2013 overstate the actual cost? | 02:30:59 |
| 8 | MR. MACK:  Objection, form; beyond the | 02:31:06 |
| 9 | scope. | 02:31:06 |
| 10 | A    Again, it -- you would have to make a | 02:31:07 |
| 11 | whole series of other assumptions that, in fact, the | 02:31:09 |
| 12 | work -- the work and the dollars that are flowing | 02:31:11 |
| 13 | through in that later period are not attributable to | 02:31:15 |
| 14 | work that has already been completed that -- to | 02:31:18 |
| 15 | enable -- to enable -- in order -- in order to be | 02:31:19 |
| 16 | able to, like, differentiate, right. | 02:31:21 |
| 17 | Something about, you know, the way the | 02:31:21 |
| 18 | books are closed is they represent liabilities that | 02:31:24 |
| 19 | are indiscernibly captured in -- within a period. | 02:31:26 |
| 20 | So if you somehow sliced in a bright line | 02:31:31 |
| 21 | that everything is done, et cetera, and every single | 02:31:36 |
| 22 | person invoiced exactly on time as soon as it was | 02:31:39 |
| 23 | done, all of those things, then that's a | 02:31:42 |
| 24 | possibility, assuming there's a whole other set of | 02:31:44 |
| 25 | things potentially that have to go right to be able | 02:31:47 |

Page 143

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | to do that. | 02:31:50 |
| 2 | There is a possibility.  I think the | 02:31:51 |
| 3 | circumstances would have to be very clear in that | 02:31:53 |
| 4 | situation. | 02:31:57 |
| 5 | Q    (BY MS. CHANG) Do you know when | 02:31:57 |
| 6 | development of Trade Secret 7 was actually | 02:32:00 |
| 7 | completed?  Trade Secret 7 claims a development cost | 02:32:06 |
| 8 | of $120 million. | 02:32:11 |
| 9 | MR. MACK:  Objection, form; beyond the | 02:32:14 |
| 10 | scope. | 02:32:14 |
| 11 | A    I -- I don't have the technical expertise | 02:32:15 |
| 12 | to -- to say when development of that trade secret | 02:32:18 |
| 13 | was completed, no. | 02:32:21 |
| 14 | Q    (BY MS. CHANG) Trade Secret 9 also claims | 02:32:24 |
| 15 | a development cost of $120 million.  Do you know | 02:32:26 |
| 16 | when development of Trade Secret 9 was actually | 02:32:29 |
| 17 | completed? | 02:32:34 |
| 18 | MR. MACK:  Same objections. | 02:32:36 |
| 19 | A    So same -- same answer as the preceding | 02:32:37 |
| 20 | one. | 02:32:40 |
| 21 | Q    (BY MS. CHANG) Trade Secret 13 claims a | 02:32:40 |
| 22 | development cost of $120 million.  Do you know when | 02:32:43 |
| 23 | development of Trade Secret 13 was actually | 02:32:48 |
| 24 | completed? | 02:32:51 |
| 25 | MR. MACK:  Same objections. | 02:32:51 |

Page 144

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | A     The same answer.  And -- and to just kind | 02:32:52 |
| 2 | of clarify generally, I don't know the precise | 02:32:55 |
| 3 | period in which a given -- I don't have the | 02:32:58 |
| 4 | technical expertise to say when a precise | 02:33:00 |
| 5 | development of any trade secret was completed. | 02:33:02 |
| 6 | I -- I do understand that based off of | 02:33:06 |
| 7 | the -- the expertise, that the calculation | 02:33:08 |
| 8 | represents periods that have ended in the various | 02:33:11 |
| 9 | respective endpoints, which we have discussed in the | 02:33:15 |
| 10 | preceding questions. | 02:33:17 |
| 11 | Q     (BY MS. CHANG) Is your testimony the same | 02:33:20 |
| 12 | for all the trade secrets that you do not know when | 02:33:22 |
| 13 | actual development for any of the nine trade secrets | 02:33:26 |
| 14 | at issue was actually completed? | 02:33:29 |
| 15 | MR. MACK:  Objection, form; beyond the | 02:33:34 |
| 16 | scope. | 02:33:34 |
| 17 | A     Correct.  I do not have the technical | 02:33:36 |
| 18 | expertise to know when the -- the formula -- the | 02:33:38 |
| 19 | formulation, I think was the word you used, of | 02:33:40 |
| 20 | the -- the trade secrets was completed for any of | 02:33:43 |
| 21 | them. | 02:33:46 |
| 22 | What I do understand and know is that the | 02:33:47 |
| 23 | numbers in the responses to the interrogatories | 02:33:49 |
| 24 | represent the various time periods which we have | 02:33:53 |
| 25 | just discussed and that the numbers that I have | 02:33:55 |

Page 145

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | pointed out in -- in the data that we have provided | 02:33:58 |
| 2 | in Exhibit -- Exhibit 1400. | 02:34:01 |
| 3 | Q    (BY MS. CHANG) To clarify, I asked about | 02:34:03 |
| 4 | when development of each of the trade secrets was | 02:34:05 |
| 5 | completed. | 02:34:09 |
| 6 | A    Right.  And -- and what I'm saying is to | 02:34:10 |
| 7 | the extent that I understand what informed the | 02:34:12 |
| 8 | number, that would be how I would understand that to | 02:34:14 |
| 9 | be true -- an ending would have occurred.  Like, it | 02:34:18 |
| 10 | would have been complete -- formulation would be | 02:34:22 |
| 11 | complete. | 02:34:26 |
| 12 | Q    Your understanding of when each of the | 02:34:28 |
| 13 | trade secrets completed development coincides with | 02:34:30 |
| 14 | the end period used to form the basis of the | 02:34:36 |
| 15 | calculation for the development cost? | 02:34:44 |
| 16 | MR. MACK:  Objection, form; beyond the | 02:34:48 |
| 17 | scope. | 02:34:48 |
| 18 | A    That would be my nontechnical | 02:34:49 |
| 19 | understanding. | 02:34:52 |
| 20 | Q    (BY MS. CHANG) As an example, Trade | 02:34:52 |
| 21 | Secret 2 claims a development cost of $1.1 billion, | 02:34:54 |
| 22 | which you testified was based on the entire program | 02:35:01 |
| 23 | spend for Waymo's self-driving system from inception | 02:35:06 |
| 24 | to 2015. | 02:35:10 |
| 25 | Based on that calculation, your | 02:35:13 |

Page 146

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| 1 | understanding is that Trade Secret 2 completed its | 02:35:20 |
| 2 | development in December 2015; is that right? | 02:35:23 |
| 3 | MR. MACK:  Objection, form; beyond the | 02:35:27 |
| 4 | scope. | 02:35:27 |
| 5 | A    That would be my nontechnical | 02:35:29 |
| 6 | understanding. | 02:35:32 |
| 7 | Q    (BY MS. CHANG) I'm handing you what was | 02:35:38 |
| 8 | previously marked as Exhibit 1079.  Exhibit 1079 is | 02:35:40 |
| 9 | Exhibit 1 to the Declaration of Jordan Jaffe in | 02:36:11 |
| 10 | support of Waymo's Motion for Preliminary | 02:36:19 |
| 11 | Injunction.  I can represent that to you. | 02:36:21 |
| 12 | If you turn to the second page, this | 02:36:26 |
| 13 | document is identified as "Plaintiff's List of | 02:36:31 |
| 14 | Asserted Trade Secrets Pursuant to California Code | 02:36:34 |
| 15 | Civil Procedure Section 2019.210. | 02:36:39 |
| 16 | Do you recognize this document? | 02:36:43 |
| 17 | A    No. | 02:36:48 |
| 18 | Q    You have never seen this document before? | 02:36:48 |
| 19 | A    No. | 02:36:50 |
| 20 | Q    If you turn to page 2 of Exhibit 1079, it | 02:37:25 |
| 21 | reads, | 02:37:34 |
| | | 02:37:40 |
| | | 02:37:43 |
| | | 02:37:47 |
| | | 02:37:50 |

Page 147

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

| | | |
|---|---|---|
| | | 02:37:53 |
| | | 02:37:58 |
| | | 02:38:00 |
| | | 02:38:05 |
| | | 02:38:07 |
| | | 02:38:10 |
| | | 02:38:13 |
| | | 02:38:16 |
| | | 02:38:18 |

```
10          See supra paragraph 1, second bullet, for       02:38:22

11   reasonable steps -- steps taken to maintain secrecy.    02:38:26

12          The last bullet point is the scope of            02:38:30

13   Trade Secret 2, and that reads, The trade secret        02:38:37

14   claim is ████████████████████████████████████           02:38:41
```

| | | |
|---|---|---|
| | | 02:38:47 |
| | | 02:38:51 |
| | | 02:38:55 |
| | | 02:38:59 |

```
19          Is this the first time that you're seeing       02:39:07

20   a description of Trade Secret 2?                         02:39:10

21       A    Yes.                                           02:39:12

22       Q    Do you know if Waymo's self-driving car        02:39:18

23   system has components other than ███████████             02:39:22
```

| | | |
|---|---|---|
| | | 02:39:28 |
| | | 02:39:34 |

Page 148

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS EYES ONLY

|  | |
|---|---|
| | 02:39:36 |
| | 02:39:40 |
| | 02:39:43 |

4              MR. MACK:  Objection, form; beyond the      02:39:45

5     scope.      02:39:45

6        A   Is -- if I could kind of try to synthesize     02:39:52

7     your question a bit.  Like, essentially is -- is     02:39:56

8     there more to the self-driving system than a LiDAR?     02:39:58

9        Q   (BY MS. CHANG) Yes.  And specifically the     02:40:03

10    LiDAR described in the last bullet point of     02:40:04

11    paragraph -- paragraph 2.     02:40:07

12              MR. MACK:  Same objections.     02:40:10

13       A   Again, I'm not technically trained or --     02:40:10

14    and I'm -- my general layman's understanding is that     02:40:14

15    there is more to our self-driving system than a     02:40:18

16    LiDAR, yes.     02:40:21

17        Q   (BY MS. CHANG) If you turn to page 5,     02:40:23

18    Trade Secret 7 is listed on page 5.     02:40:40

| | 02:40:50 |
| | 02:40:54 |
| | 02:40:59 |
| | 02:41:03 |
| | 02:41:07 |
| | 02:41:11 |
| | 02:41:14 |

Page 149

# EXHIBIT 4


# UNREDACTED VERSION
# OF DOCUMENT SOUGHT
# TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                SAN FRANCISCO DIVISION

4                     ---oOo---

5

6    WAYMO LLC,

7           Plaintiff,

8    vs.                        No. 3:17-cv-00939-WHA

9    UBER TECHNOLOGIES, INC.;

     OTTOMOTTO LLC; OTTO TRUCKING,

10   INC.,

11          Defendants.

                              /

12

13       HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

14

15            WAYMO LLC RULE 30(b)(6)

16    VIDEOTAPED DEPOSITION OF PIERRE-YVES DROZ

17            PALO ALTO, CALIFORNIA

18           THURSDAY, AUGUST 3, 2017

19

20

21   REPORTED BY:

22   ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

23   CSR LICENSE NO. 9830

24   JOB NO. 2663199

25   PAGES 1 - 371

                                        Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                SAN FRANCISCO DIVISION

 4                    ---oOo---

 5   WAYMO LLC,

 6          Plaintiff,

 7   vs.                          No. 3:17-cv-00939-WHA

 8   UBER TECHNOLOGIES, INC.;

     OTTOMOTTO LLC; OTTO TRUCKING,

 9   INC.,

10          Defendants.

                                    /

11

12

13          Videotaped Deposition of Pierre-Yves Droz

14      taken on behalf of the Defendant, on August 3,

15      2017, at Morrison & Foerster LLP, 950 Page Mill

16      Road, Palo Alto, California, beginning 9:27 a.m.,

17      and commencing at 7:25 p.m., Pursuant to Notice,

18      and before me, ANDREA M. IGNACIO, CSR, RPR, CRR,

19      CLR ~ License No. 9830.

20

21

22

23

24

25

                                        Page  2
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



|    |                                                           |       |
|----|-----------------------------------------------------------|-------|
| 13 | MR. KIM:  All right.                                      | 13:33 |
| 14 | Q   So I -- I don't understand why you're saying          | 13:33 |
| 15 | from your personal knowledge.  You know, we -- we         | 13:33 |
| 16 | looked earlier at your deposition topics.                 | 13:33 |
| 17 | A   Yep.  Okay.                                            | 13:33 |
| 18 | Q   And Exhibit 1273 specifically asks for the            | 13:33 |
| 19 | time cost and specific people involved in developing      | 13:33 |
| 20 | each of the alleged trade secrets.                        | 13:33 |
| 21 | MR. JAFFE:  Which topic are you reading from?             | 13:33 |
| 22 | MR. KIM:  Deposition Topic No. 9.                         | 13:33 |
| 23 | Q   And so I'm asking you about the -- the cost           | 13:33 |
| 24 | to implement ███████████████ --                           | 13:33 |
| 25 | A   So, are you asking what --                             | 13:34 |

Page 154

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | THE WITNESS:  Sorry.  Go ahead. | 13:34 |
| 2 | MR. JAFFE:  One -- one second here. | 13:34 |
| 3 | THE WITNESS:  Yes. | 13:34 |
| 4 | MR. JAFFE:  So, Mr. Droz is here subject to | 13:34 |
| 5 | our objections.  As I stated at the outset of this | 13:34 |
| 6 | deposition, he's designated on the development of the | 13:34 |
| 7 | asserted trade secrets other than 25.  So I just want | 13:34 |
| 8 | to make that clear for the record. | 13:34 |
| 9 | Go ahead. | 13:34 |
| 10 | THE WITNESS:  I think also here there is true | 13:34 |
| 11 | costs, too.  There is the cost of the actual units. | 13:34 |
| 12 | You know, is the -- the unit cheaper? | 13:34 |
| 13 | There's also the development cost, which is | 13:34 |
| 14 | the -- the -- how much, you know, the -- the cost was | 13:34 |
| 15 | used to -- to develop the -- the -- those boards. | 13:34 |
| 16 | So is your question about the actual cost of | 13:34 |
| 17 | the -- the finished good, basically -- or not finished | 13:34 |
| 18 | good, but the cost of the boards -- of making the | 13:34 |
| 19 | boards, or the cost of developing, you know, the -- | 13:34 |
| 20 | the boards? | 13:34 |
| 21 | MR. KIM:  Let's talk about the cost for | 13:34 |
| 22 | developing the boards. | 13:34 |
| 23 | Q   So how much did it cost to develop the trade | 13:34 |
| 24 | secret of ███████████████████ | 13:35 |
| 25 | MR. JAFFE:  Objection; form; outside the | 13:35 |

Page 155

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    scope.                                           13:35
 2          THE WITNESS:  So -- so from my personal    13:35
 3    knowledge, the -- you know, the -- I don't -- you 13:35
 4    know, I don't have an actual tracking of all the cost 13:35
 5    used to -- to -- that we put in this.            13:35
 6          But, you know -- you know, in there is     13:35
 7    probably the cost of making prototypes, the cost of -- 13:35
 8    of -- you know, the cost of the engineering on   13:35
 9    designing those boards.                          13:35
10          MR. KIM:  Q.  So, you're not prepared to talk 13:35
11    about the cost of development of Trade Secret No. 2 as 13:35
12    Waymo's corporate designated witness; is that correct? 13:35
13       A   I'm not.                                  13:35
14          (Document marked Exhibit 1278              13:36
15           for identification.)                      13:36
16          THE VIDEOGRAPHER:  1278.                   13:36
17          THE WITNESS:  Thank you.                   13:36
18          MR. KIM:  So I've marked for identification, 13:36
19    as Exhibit No. 1278, an e-mail from John McCauley at 13:36
20    Quinn Emanuel, dated Wednesday, August 2nd, 2017, at 13:36
21    7:56 p.m.                                         13:36
22       Q   And, if you look at the second paragraph, it 13:36
23    says:                                            13:36
24          "Waymo designates Mr. Droz to testify with 13:36
25    regard to Topics 9 and 10 of Uber's second 30(b)(6) 13:37
```

Page 156