MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:  415.268.7000 / Fax:  415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
MICHAEL BRILLE (*Pro Hac Vice*)
mbrille@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Tel:  202.237.2727 / Fax:  202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel:  212.336.8330 / Fax:  212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                    Defendants. | Case No.     3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO WAYMO'S TRIAL BRIEF**<br><br>Trial Date: February 5, 2018 |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") respond to Waymo's untimely trial brief. (Dkt. 2538-4.) Although it purported to be a response to Defendants' trial brief, Waymo's brief raises new issues that should have been raised on January 23, 2018, as required by the Court's standing order.

**A.    WAYMO'S ISSUES**

   **1.    The Court Should Deny Waymo's Request to Reconsider the Court's Ground Rules with Respect to Levandowski's Invocation of Fifth Amendment Rights**

Waymo's trial brief asks the Court to reconsider and reverse two of its ground rules related to Anthony Levandowski's testimony, specifically (1) the timing of when Levandowski will be questioned by Uber (if he testifies at all) and (2) whether the Fifth Amendment may be referenced during opening statements or before Levandowski testifies (if he is allowed to testify). (*See* Dkt. 1535 ¶¶ 1, 3.) Neither request is valid—the Court's ground rules are consistent with the governing law and Rules of Evidence, and should remain in place.

   **a.    The Court Should Overrule Waymo's Objection to Ground Rule Number Three, Which Provides That Uber May Examine Levandowski at the End of Waymo's Case-in-Chief**

As Waymo explicitly acknowledges, "the Court has overruled Waymo's objection" to requiring Levandowski to appear "very close to the end of" Waymo's case-in-chief. (Dkt. 2538-4 (Waymo Trial Br. at 3 (citing Dkt. 1863 [9/27/17 Hr'g Tr.] at 142:16-150:17)); Dkt. 1535 ¶ 2.) Now, Waymo has raised a brand new complaint about the Court's third ground rule, which expressly gives Defendants the option to "either ask their questions based on the corroborating evidence already included in the trial record before the jury at the end of Waymo's case-in-chief, or to postpone their examination of Levandowski and require him to return at the end of defendants' case-in-chief for further questioning." Waymo chose not object to this ground rule as part of its objections submitted in September. (Dkt. 1811 (Waymo's objections to Fifth Amendment ground rules) (objecting to Paragraphs 1, 2, and 4 of the ground rules, but not objecting to Paragraph 3).) Waymo's trial brief submission, however, seeks to undo this ground rule by mandating that Uber wait until its own case-in-chief to ask its questions of Levandowski.

Waymo's trial brief provides no valid justification for reconsideration of the Court's

ground rule on this issue.  The sole "objection" that Waymo raises is that Uber should not be permitted to go beyond the "subject matter of the direct examination" and "matters of the witness's credibility."  But as Waymo acknowledges, "Federal Rule of Evidence 611(b) commits the scope of cross-examination to the trial judge's discretion," and may "permit cross-examination 'as to all matters reasonably related to the issues" that were "put in dispute by his testimony on direct.'" *United States v. Vasquez*, 858 F.2d 1387, 1392 (9th Cir. 1988) (citations omitted).  Furthermore, the Court has discretion under Rule 611(b) to "allow inquiry into additional matters as if on direct examination."  This discretion is to be exercised where it will "aid in the development of the evidence or otherwise facilitate the conduct of the trial."  Notes of Committee on the Judiciary, S. Rep. No. 93-1277, at 7071 (1974).  In the unique circumstance of a witness invoking the Fifth Amendment, the Court's proposed ground rule number three, which allows Uber to examine Levandowski during Waymo's case-in-chief, is a proper exercise of the Court's discretion.

In deciding whether Levandowski may be called to the stand even one time, the Court must balance whether the probative value of the witness's invocation of the Fifth Amendment is substantially outweighed by the danger of unfair prejudice and jury confusion from admission of such evidence.  *In re Urethane Antitrust Litigation*, No. 04-1616-JWL, 2013 WL 100250, at *4 (D. Kan. Jan. 8, 2013).  To reverse the ground rule already set by the Court and mandate that Levandowski be called to the stand a second time in order to answer questions put to him by Uber would exacerbate the risk of unfair prejudice and confusion.

The scope of Waymo's direct examination will be defined by Levandowski's (presumed) invocation of the Fifth Amendment.  Any questions that Uber asks on cross-examination which also elicit Fifth Amendment invocations necessarily are related to that same "subject matter," Fed. R. Evid. 611(b), because Uber's questions will (a) undermine the validity of the inferences Waymo is seeking by demonstrating the lack of probative value of the invocation; (b) support the competing inferences that Uber will argue are more appropriately drawn from Levandowski's invocation; or (c) do both of those things.  In all of those circumstances, Uber's questioning is related to the subject matter Waymo will have covered in its examination, and permitting Uber to

ask the questions at that time will certainly "facilitate the conduct of the trial." The Court thus properly exercised its discretion under Rule 611(b) in establishing its third ground rule and there is no basis for its reversal.

### b. The Court Should Adhere to Its Proposed Ground Rule Forbidding References to the Fifth Amendment During Opening Statement

Waymo's trial brief also renews its objection to the Court's ground rule prohibiting reference to potential Fifth Amendment invocations during opening statements. (Dkt. 1535 ¶ 1.) The proposed ground rule was proper in September and remains so now.

If Waymo were permitted to bring up the Fifth Amendment during their opening—or at any point in trial prior to when Levandowski is called to the stand (if he is called at all)—it would undoubtedly argue that the jury should infer from Levandowski's Fifth Amendment invocation that *Uber* has done something wrong, and it would do so without any corroborating evidence in the record or any appropriately tailored examination. The jury will have no context or understanding of the Fifth Amendment at that point; Waymo's blanket statement is an obvious attempt to poison the jury against Uber from the outset without the appropriate evidentiary safeguards. This is exactly the sort of blind inference that the Ninth Circuit has strictly forbidden. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (corroborating "independent evidence" must exist before any inference can be drawn).

Waymo's argument that the parties may ask about the Fifth Amendment in *voir dire*, its primary argument in September and repeated in its trial brief, is now moot. (Dkt. 2538-4 (Waymo's Trial Br. at 3); Dkt. 1863 (9/27/17 Hr'g Tr.) at 150:10–13.) Uber has advised Waymo's counsel that it would not be referencing the Fifth Amendment during *voir dire*. (Ex. 1[1] (1/27/18 Email from A. Gonzalez) ("We will not be raising this [Fifth Amendment] issue in voir dire.")). In light of this concession, Waymo should not be permitted to reference Levandowski's invocation in opening, or at any point prior to the time Levandowski is actually called (if at all). Nor do the cases Waymo cites in support of its position—*Cerro Gordo Charity v. Fireman's*

---

[1] All references to ("Ex.") are exhibits attached to the Declaration of Esther Kim Chang in Support of Defendants' Response to Waymo's Trial Brief.

1  *Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481 (8th Cir. 1987) and *Pac. Gas & Elec. Co. v. Howard
2  P. Foley Co.,* No. 85-2922-SW, 1993 WL 299219, at *10 (N.D. Cal. July 27, 1993)—require the
3  Court to allow Waymo to poison the jury with blanket references to the Fifth Amendment.
4  Neither case says ***anything at all*** about opening statement.

5        Finally, Waymo's meek claim of prejudice should again be rejected.  (Dkt. 2538-4
6  (Waymo's Trial Br. at 2).)  When Waymo sought reversal of this ground rule in September, the
7  Court clearly disagreed, saying: "I don't think you're very prejudiced."  (Dkt. 1863 (9/27/17 Hr'g
8  Tr.) at 146:13–14.)  Even if there were some potential "complication" of Waymo's opening
9  argument by virtue of the ground rule, there is still no basis for discarding it.  The Ninth Circuit
10 has cautioned that the "competing interests" of the parties where the privilege is concerned must
11 be "carefully balanced."  *Doe ex rel. Rudy-Glanzer*, 232 F.3d at 1265.  In this case, that balancing
12 requires the Court's thoughtful vetting of every question to be put to Levandowski in order to
13 prevent the jury from assigning his testimony undue weight or being improperly prejudiced
14 against Uber from the outset, as the Court's ground rules required.  (Dkt. 1535.)

### 2. The List of Trade Secrets Provided to the Jury Should Indicate That They Are Alleged Trade Secrets and Include a Short, Public Description

17       Uber agrees in principle to Waymo's proposal to provide the jury with binders that
18 contain a list of the alleged trade secrets, identifying each alleged trade secret by number and
19 including the text of the claimed trade secret.  (*See* Dkt. 25-7.)  But Uber requests that the word
20 "Alleged" be added before each trade secret number (*e.g.,* Alleged Trade Secret No. 2) and that a
21 short, public description be included for each trade secret.  Below is Uber's proposal for the short,
22 public description for each trade secret.

| Alleged Trade Secret No. | Short Description |
|---|---|
| ATS 2 | Single-block circuit board configuration |
| ATS 7 | ██████████ |
| ATS 9 | FAC lens |
| ATS 13 | ██████████ |
| ATS 14 | Guide holes |
| ATS 25 | LiDAR specifications |
| ATS 90 | Fiber laser amplification |
| ATS 111 | LiDAR design to avoid |

DEFENDANTS' RESPONSE TO WAYMO'S TRIAL BRIEF
Case No. 3:17-cv-00939-WHA
sf-3862417

4

### 3. The Court Should Allow Uber's Witnesses to Testify Truthfully to the Current Status of Fuji's Redesign

Waymo's request that the Court bar Uber's witnesses from testifying truthfully about the completion of Uber's Fuji redesign represents an attempt to revisit a motion *in limine* that Waymo *dropped* at the September pre-trial conference. As the Court may recall, Waymo's MIL 17 sought to preclude Uber's evidence of its Fuji redesign in part on the grounds that it was not timely disclosed. (*See* Dkt. 1558 at 2 (Waymo MIL 17).) Uber demonstrated that, to the contrary, Uber had timely disclosed the relevant evidence in deposition, documents (including CAD files showing the new designs), and interrogatory responses. (*See* Dkt. 1558-8 at 1-2 (Uber Opp'n); Dkt. 1558-3 at 31-35 (supplemental interrogatory responses citing redesign documents).) Waymo informed the Court it was dropping the MIL, and the Court embodied that resolution in its order on the MILs. (Dkt. 1863, Tr. Hr'g at 151:3-7 (withdrawing MIL 17); Dkt. 1885, Order at 3.)

Uber's disclosures before the close of fact discovery made clear that certain Fuji redesigns were underway, and provided the details of those redesigns (including CADs). Waymo does not contest that the previously-disclosed information about the redesigns can be presented at trial. The only issue is whether Uber's witnesses (particularly lead Fuji engineer James Haslim) can truthfully testify that those already disclosed redesigns have been implemented in hardware, and that the current prototypes of Fuji embody the previously-disclosed redesigns that avoid ATS 2, 7, 13, and 14.

Since MIL 17's resolution, Waymo has not raised questions about the Fuji redesigns or sought any further discovery. To avoid any claim of sandbagging, Uber notified Waymo of Mr. Haslim's intended testimony and offered to make him available for deposition. (Ex. 2 (1/15/18 Email from D. Muino); Ex. 3 at 2-3 (1/18/18 Email from D. Muino).) At Waymo's insistence, Uber also updated its document production. (Ex. 4 at 1 (1/22/18 Email from D. Muino).) But Waymo has apparently decided that the better course is to try to hold Mr. Haslim to a chronological straightjacket and even to testify untruthfully based on facts that are no longer current. That makes no sense.

DEFENDANTS' RESPONSE TO WAYMO'S TRIAL BRIEF
Case No. 3:17-cv-00939-WHA
sf-3862417

5

1    The better course is to allow updated and truthful testimony anchored by the disclosures made before the close of fact discovery. Uber does not intend to rely on any new documents— only those produced as of the fact discovery cut-off on August 24. Uber is still willing to make Mr. Haslim available for deposition, and that should be sufficient. *See Finjan, Inc. v. Blue Coat Sys.*, No. 13-cv-03999-BLF, 2015 WL 4129193, at *3 (N.D. Cal. July 8, 2015) (finding that "any prejudice from Defendant's disclosure [of a design around after fact discovery cutoff] is better addressed through discovery" and ordering a 3-hour deposition between the pretrial conference and start of trial).

As was true when Waymo earlier sought exclusion with its MIL 17, Uber's detailed and extensive disclosures of its redesigns before the discovery cut-off refute Waymo's current complaints. Uber responded to Waymo's interrogatory regarding redesign efforts with descriptions of the specific redesigns it was implementing and estimates of the time and costs to modify its design on July 28, 2017. (*See* Dkt. 1558-9 at 3-11; Dkt. 1558-8, Uber Opp'n to MIL 17 at 1-2 (quoting descriptions).) Waymo deposed Mr. Haslim about each of the contemplated redesigns on August 9. (*See e.g.*, Dkt. 1558-6, 8/9/17 Haslim Dep. at 425:6-434:7, 702:11-703:20 (Alleged Trade Secret ("ATS") 2 redesign), 662:3-670:17 (ATS 7 redesign); 434:9-443:24 (ATS 9 redesign), 703:21-706:19 (ATS 13/14 redesign).) Uber supplemented its interrogatory responses and disclosed documents pertaining to the redesigns, including CAD design files and the identity and statement of work (SOW) for the third-party vendor retained for the ATS 9 redesign, on August 24, 2017. (*See* Dkt. 1558-3 at 31 (TS 2), 32 (TS 7), 33-34 (TS 9), 34-35 (TS 13/TS 14).) These interrogatory responses also reported on the status of the redesigns as of that date. (*See id.* at 41-42 ("Receipt of newly designed PCBs" completed for ATS 7 redesign, "CAD drawing" completed for ATS 2 and ATS 13/ATS 14 redesign; "SOW sent to vendor" for ATS 9 redesign).) In particular, the responses state the expected completion date for the redesigns: "[r]eplacement of all old PCBs" in about "one month" for ATS 7 redesign; "[a]nticipated receipt of prototype PCBs" in 22 working days, with 7 working days of testing for ATS 2, ATS 13, and ATS 14 redesign; and "anticipated receipt of prototype lenses" in 22 weeks, with 3 weeks of testing for ATS 9 redesign. (*Id.*)

Because Uber disclosed its CAD design files, vendor statement of work, and time and cost estimates by August 24, little additional redesign evidence will be presented to the jury. Both Waymo and Uber's experts addressed the redesigns. (*See e.g.*, Dkt. 2238-5 at 178-179 (Waymo expert on Uber redesigns); Ex. 5 (Hesselink Rply Rpt. at 30-31, 38-39, 50-51, 58-60, 68-70).) At trial, Mr. Haslim would testify that operational Fuji prototypes now implement the ATS 7, ATS 2, ATS 13, and ATS 14 redesigns and that the ATS 9 redesign is expected to become available soon. He would add that the redesigns have been implemented consistent with the original estimates that were disclosed to Waymo before the close of fact discovery. He would also present a redesigned Fuji prototype. The benefit to the jurors of seeing the physical features instead of merely drawings outweighs any limited prejudice to Waymo. *See Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06–CV–72–DF, 2011 WL 8810604, at *12 (E.D. Tex. Aug. 2, 2011) (denying motion to strike supplemental declaration on implementation of non-infringing alternative, where costs and technical feasibility were already addressed in original declaration and declarant's deposition, and "the significance of [declarant's] supplementation, as well as its limited potential prejudice, if any, are insufficient to warrant striking it").

Waymo complains that it had no opportunity to subpoena and depose the third-party vendor for the ATS 9 redesign. (Dkt. 2539, Waymo Resp. at 6.) But Waymo never previously sought further discovery from Uber or the identified third-party vendor when this was disclosed to Waymo on August 24. Waymo also did not engage in any discovery regarding the disclosed estimated implementation dates. Uber does not object to any additional discovery from the third party vendor, and even offered to facilitate that discovery. (Ex. 4 at 1 (1/22/18 Email from D. Muino.) If Waymo decides that it cannot complete the discovery now, that is Waymo's fault, not Uber's.

Finally, Waymo is struggling to define its damages in light of this Court's rulings, but its most recent disclosures suggest it intends to seek more than $1 billion from Uber. Assuming Waymo prevails on its "use" arguments for the old Fuji designs, it would be a bizarre outcome for Waymo to collect such astronomical sums for alleged trade secrets that Uber not only plans not to use in the future, but has already stopped using. It would be unfair to deny Uber the opportunity

DEFENDANTS' RESPONSE TO WAYMO'S TRIAL BRIEF
Case No. 3:17-cv-00939-WHA
sf-3862417

7

1  to defend itself against such claims, and the Court should allow Uber to introduce evidence of tis
2  discontinued use of those alleged secrets.

**B.    UBER'S ISSUES**

### 1. The Court's Standing Order Regarding Disclosure of Exhibits Is in Effect and Applies to Exhibits for Direct Examination of Adverse Witnesses

Waymo's trial brief proceeds from a flawed conclusion regarding the disclosure of exhibits during trial.  Waymo claims that Uber agreed to exchange exhibits by 5:00 p.m. the day before a witness testifies.  (Dkt. 2538-4 at 8 n.2.)  That is not accurate.  Uber noted that it would agree to 5:00 as a compromise, but only if Waymo agreed to disclose exhibits pertaining to adverse witnesses.  (Dkt 2254-1 at 4 ("*If you agree* about adverse witnesses, then we agree to your proposal that exhibits will be disclosed by 5:00 the day before they are used.") (emphasis added).)  Waymo did not agree to that condition.  Thus, there was no agreement regarding the disclosure of exhibits.  Lest there be any doubt, Uber has not agreed and does not agree to any deviation from the Court's standing order regarding exhibit disclosures—whether for direct or cross examination.  (*See* Judge Alsup's Guidelines for Trial & Pretrial Conference in Civil Jury Cases (rev. May 8, 2017) (Judge Alsup's Guidelines") ¶ 11.)  Direct exhibits must be disclosed one day or two days before a witness testifies, depending upon whether the discloser wishes to see the other party's cross exhibits.  (*Id.*)  Waymo, as the Plaintiff, has over-designated thousands of exhibits, and the only way to avoid sandbagging is to stick to this Court's Trial Guidelines.

Because there is no agreement about cross-examination exhibits, there is no "distinction without a difference" (Dkt. 2538-4 at 7) between Uber's treatment of exhibits for adverse witnesses and cross-examination exhibits.  Under the Court's standing order, both must be disclosed (in the case of cross-examination exhibits, only if the party examining the witness discloses its direct examination exhibits two days in advance).  Again, this Court's standing order contemplates that direct examination exhibits for adverse witnesses must be disclosed:  it exempts from that requirement exhibits to be used for impeachment.  If the rule requiring disclosure of direct examination exhibits were intended to apply only to friendly witnesses (and not adverse witnesses), it would not have included an exception for impeachment because impeachment

applies only to adverse witnesses.

Moreover, if this Court wanted to exclude direct examination of adverse witnesses from its exhibit disclosure requirement, it would have said so. Because there is no agreement between the parties to deviate from the Court's standing order, that order controls. And under that order, exhibits to be used in the direct examination of any witness (including adverse witnesses) must be disclosed.

Given the many complex evidentiary issues that will arise during trial, Uber requests that the parties comply with this Court's stated preference that direct examination exhibits be disclosed two days before a witness testifies. Waymo has refused to narrow its list of trial exhibits and should not be allowed to engage in hide-the-ball litigation tactics. The Court's Trial Guidelines are fair and both sides should follow it.

### 2. Waymo Concedes That It Did Not Plead "Use" or "Disclosure" by MoFo or Stroz

Waymo's response confirms that this issue should not go to the jury. By its silence, Waymo concedes that it has never pled nor disclosed that it is pursuing a theory of trade secrets misappropriation based on any "use" or "disclosure" by MoFo or Stroz. (*See* Dkt. 2538-4 at 8.) Waymo also admits that it "does not intend to ask for damages based on MoFo or Stroz's use or disclosure of Waymo's trade secrets." (*Id.*)

Nonetheless, Waymo claims that it intends to show that Uber "wrongfully acquired the trade secrets at least when its agents MoFo and Stroz took possession of them." (*Id.*) Waymo claims that such evidence would support "an award of injunctive relief." (*Id.*) But this argument misses the boat—injunctive relief is equitable. Moreover, Waymo never disclosed that it was pursuing this claim. And perhaps most importantly, it is undisputed that MoFo and Stroz have Google materials. Without conceding liability, Uber would not oppose an injunction requiring MoFo and Stroz to return or destroy the materials they received as part of the Ottomotto acquisition due diligence after the end of this litigation, subject to any applicable preservation obligations, and after notice and an opportunity to object is given to affected parties. Thus, there is no need for this issue to be presented to the jury.

### 3. Waymo's Undisclosed Theory of "Disclosure" to Vendors

Having failed to timely disclose its new theory of liability based on Uber's alleged disclosure to its vendors, Waymo now attempts to shoehorn any disclosure relating to vendors as relevant to this new theory of liability. Waymo first points to its disclosure of William Grossman as evidence that it disclosed this theory of disclosure to vendors. But Waymo's own brief admits that Mr. Grossman was only disclosed as having "knowledge of 'matters that concern *Waymo's* accidental receipt of an email containing an *Otto* LiDAR PCB.'" (Dkt. 2538-4 at 9 (emphasis added).) The disclosure for Mr. Grossman relates to receipt of information by Waymo (not a vendor) and of Ottomotto's information (not Waymo's). The disclosure for Mr. Grossman fails to fulfill the intended notice function of disclosures and failed to put Uber on notice that Waymo may assert a theory of liability based on disclosure to vendors. In any event, to the extent that the disclosure for Mr. Grossman provided any notice for this theory, it was limited to disclosure by Ottomotto—not Uber.

Waymo also points to document requests asking for the identity of and communications with vendors as sufficient disclosure of its theory. Taken to its logical end, Waymo's position would mean that Waymo could assert any theory of liability with respect to any entity for which documents were requested. In this case, Waymo served almost 390 document requests, including requests directed at several named individuals (*e.g.*, Anthony Levandowski, Lior Ron, and Travis Kalanick), third-party entities (*e.g.*, Tyto, Odin Wave, Pouch Holdings), and groups of individuals (*e.g.*, former Waymo or Google employees). It cannot be that by doing so, Waymo has disclosed any conceivable theory of liability with respect to the subjects of the document requests.

Waymo also attempts to excuse its failure to disclose this theory in response to interrogatories calling for such disclosure by rewriting the interrogatory. (Dkt. 2538 at 9.) For example, Interrogatory No. 8 asks for "all instances in which the trade secret (or any Waymo LiDAR device utilizing the trade secret) was publicly or otherwise disclosed to third parties." (*Id.*) This interrogatory is not limited to Waymo's disclosure to third parties, but any disclosure of which Waymo was aware. By this interrogatory, Uber sought information regarding ***any*** disclosure of the alleged trade secrets—even by someone other than Waymo—because public

disclosure defeats trade secret status. Waymo now argues that the interrogatory was limited to "all instances in which the trade secret (or any Waymo LiDAR device utilizing the trade secret) was publicly or otherwise disclosed *by Waymo* to third parties." (Dkt. 2538-4 at 9.) But there is no such limitation in the plain wording of the interrogatory. (Dkt. 2517 at 4; Dkt. 2252-5.)

In its most recent order regarding jury instructions, the Court ruled that "no recovery theory [would] go to the jury for damages based solely on misappropriation by acquisition only." (Dkt. 2495 at 1.) This Court concluded that "Waymo failed to disclose an acquisition-only damages theory as required by FRCP 26(a) and [was thus] precluded from asserting any such theory at trial under FRCP 37(c)(1)." (*Id.* at 5.) For the same reason, any evidence or argument regarding Waymo's untimely disclosed theory pertaining to disclosure to vendors should be barred.

### 4. Waymo Offers No Persuasive Reason for Violating the Court's Disclosure Requirements for Waymo's New Witnesses

Waymo complains that Uber should have filed a *precis* to raise objections to witnesses and testimony that Waymo did not timely disclose. That is simply untrue. Uber has repeatedly and timely objected to each improper witness or subject of testimony. Uber raises them in its amended trial brief only because Waymo's attempt to go beyond its Rule 26(a)(1) witness disclosures is so egregious and extensive that it should be addressed before trial.

The problem with Waymo's position is glaring—it requires the Court to re-write Rule 26(a)(1) so that it no longer requires: (a) the disclosure of the identity of a witness as long as he is deposed or (b) the disclosure of the subject matter of the testimony of anyone working for the opposing party. There are good reasons these exceptions are not in Rule 26 and they should not be added now.

Waymo seeks to excuse its failure to disclose nine of *its own employees* because most of them were deposed by Uber, including Shawn Bananzadeh, whose addition is the subject of a pending motion (Dkts. 2305, 2323) and of whom the Court already ruled could not testify in Waymo's case-in-chief (Dkt. 2323 at 1-2.) The Court has already addressed and rejected this very argument the first time Waymo tried to add Mr. Bananzadeh:

> MS. ROBERTS: Well, your Honor, I think since -- since they deposed him, their approach to preparing to cross examine him at trial would be no different than their approach to cross examining everybody else because they have his deposition.
>
> THE COURT: Yeah, but under that theory that everybody who got deposed in the case then is open season. Anybody can -- can just automatically add them to their trial list, right? Everybody who was deposed.
>
> MS. ROBERTS: Fair enough, your Honor.

(Dkt. 2124 (10/26/2017 Hr'g Tr. at 12:13-22).)  The prejudice to Uber from this sandbagging is significant.  The fact that Uber sought to depose a Waymo witness to gather evidence for *its case* does not excuse Waymo's failure to disclose its own intent to rely on that witness for *Waymo's* case.  A deposition taken by a party to gather affirmative evidence is very different from one taken of a witness the opposing party intends to call at trial.  If Waymo's position were accepted, Uber would have needed to exhaust the knowledge on every conceivably relevant topic for all the dozens of individuals it noticed for deposition, in the event Waymo should decide to affirmatively offer their testimony at trial.

Waymo likewise argues that its addition of eight of its *own* employees—including its CEO—is justified because Uber added two **Waymo** employees from whom documents were produced during discovery.  The two are not remotely comparable.  Waymo added its own witnesses; Uber added two adverse witnesses.  Uber added witnesses from Waymo for which discovery revealed testimony may be needed at trial.  Waymo, on the other hand, offers no justification for adding *its own employees* after the close of discovery.

### 5. Waymo Likewise Offers No Persuasive Reason for Why Its Witnesses Should Be Allowed to Testify Beyond the Scope of the Testimony in the Disclosures

Uber's objections to the scope of testimony on Waymo's trial witness list are valid.  As noted above, many of Waymo's untimely additions are for its own Waymo witnesses.  Waymo was aware of the relevant subjects for these witnesses well before the end of discovery.  Waymo falsely claims equivalence between Uber's minor additions and clarifications to the topics for three witnesses (Dkt. 2538-4 at 14-15) and Waymo's massive rewriting of its vague initial disclosures that listed, for nearly every witness, just the subject "matters that concern the

misappropriation of trade secrets." (Dkt. 2517 at 7-8.) Uber refers the Court to Exhibit A of Uber's objections to Waymo's Fourth Amended Witness list, which demonstrates the egregiousness of Waymo's attempts to expand the subjects on which it now seeks to question witnesses. (Dkt. 2520-3.)

Moreover, Uber's minor modifications to the scope of testimony for three witnesses were for non-Uber witnesses: two Waymo employees, including Gary Brown (who was involved in the Google forensic investigation that Waymo initially tried to shield from discovery) and a Stroz Friedberg employee for whom Uber clarified—but did not change—the scope of the anticipated testimony.

### 6. Waymo Is Bound to Its Disclosed Damages Computation and Should Not Be Allowed to Admit Evidence of Reasonable Royalty Until the Proper Time

Waymo is not correct that all issues relating to Waymo's damages case (other than the two offers of proof) are settled. As Uber explained in its amended trial brief, Waymo has still failed to provide a computation of damages, as required by Rule 26. As a result, Rule 37 precludes Waymo from offering any damages computation that was not in its disclosures. In addition, with respect to theories of damages, Waymo cites the same colloquy with the Court, but fails to respond to the following point in Uber's amended trial brief: "The fact that a judge need not sort out precise damages *computations* ahead of time does not mean that a defendant is free to venture beyond its disclosed *theories* of damages." (Dkt. 2517 (Uber Trial Brief) at 12.) Trial is not the time for Waymo to disclose new theories of damages.

Waymo also wants to admit evidence relevant only to a reasonable royalty in the main case even though the jury will not be asked to compute a reasonable royalty. Such an approach would unduly prejudice Uber, confuse the issues, and mislead the jury. Fed. R. Evid. 403. Obviously, if evidence is relevant to liability or unjust enrichment, it can come in. But if evidence is relevant only to the issue of reasonable royalty, then it should not be admitted until a potential later phase that addresses reasonable royalty. Rather than allowing reasonable royalty evidence during the liability phase, the Court should allow unjust enrichment evidence in the reasonable royalty phase. Uber identified the types of evidence relevant only to unjust

enrichment in its trial brief.  (Dkt. 2517 (Uber Trial Brief) at 13-14.)  Admitting this limited evidence during the reasonable royalty phase would take little extra time, and it would be time well spent to ensure that Uber is not unduly prejudiced and the issues are not confused.

Finally, Uber objects to Waymo's proposal to have the jury compute reasonable royalty damages even if they are able to calculate unjust enrichment.  Such an approach is contrary to the law that reasonable royalty damages are available only if unjust enrichment cannot be calculated, and it would not be an efficient use of time.  *See*, *e.g.*, CUTSA § 3426.3(b); Dkt. 2229 at 2 (joint proposed reasonable royalty instructions).  Waymo's concern about losing an unjust enrichment award in post-trial briefing is not a legitimate excuse to have the Court, the parties, and the jury engage in the advisory exercise of computing reasonable royalty damages.

Dated:  January 29, 2018         MORRISON & FOERSTER LLP


By: _____/s/ Arturo J. González_____
       ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC