[COUNSEL LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>         Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>         Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**PARTIES' JOINT SUMMARY OF TOP 20 EVIDENTIARY RULINGS**<br><br>Trial Date: February 5, 2018 |

Pursuant to the Court's order (Dkt. 2559), Plaintiff Waymo LLC ("Waymo") and Defendants Uber Technologies Inc. and Ottomotto LLC (together, "Uber") hereby submit their joint summary of the top twenty evidentiary rulings in this case other than rulings made in the Court's order at Dkt. 2585. The parties' list is not ranked in order of importance. The parties acknowledge that, as with all evidentiary rulings, if either side opens the door to such evidence, the ruling may be revisited.

**AGREED-UPON SUMMARIES**

1. Evidence or argument that the reason Mr. Levandowski downloaded the 14,000 files was in order to substantiate his earning a bonus from Google or Waymo is excluded. Dkt. 1885 at 2; *see also* Dkt. 1561-4 (Waymo MIL 1).

2. Evidence or argument regarding, or questions designed to elicit, Uber's assertion of attorney-client or work-product protection are excluded. Such exclusion is without prejudice to either side seeking leave of Court to present specific evidence or argument regarding the other side's overruled claims of attorney-client or work-product privilege. Dkt. 1885 at 3-4; *see also* Dkt. 1546 (Uber Renewed MIL 2); Dkt. 641 (Uber MIL precis 1 regarding privilege assertions).

3. Bill Gurley may testify as to his own percipient knowledge regarding his tenure as a member of Uber's board of directors (and possibly other facts), but may not speculate about matters outside of his percipient knowledge. No evidence or argument about Benchmark's lawsuit against Travis Kalanick will be permitted, except that defendants may use that lawsuit for impeachment purposes. Dkt. 1885 at 4; *see also* Dkt. 1548-4 (Uber MIL 22).

4. Uber is permitted to introduce non-privileged evidence that it relied on the due diligence investigation to prevent trade secret misappropriation, and Waymo "remains free to raise targeted sword-and-shield objections at trial if Uber attempts to selectively use *privileged* evidence in its defense." Dkt. 2493 at 2; *see also* Dkt. 2194 (Waymo MIL 18).

5. Evidence or testimony of Waymo's expert, Lambertus Hesselink, on Waymo's saved development time estimates for alleged trade secret numbers 25, 90, and 111, as set forth in paragraphs 455-457 of his opening report, is excluded. Dkt. 2516 at 1-3; *see also* Dkt. 2198-4 (Uber MIL 27). Evidence or testimony of Hesselink regarding his "bottleneck" theory is only

permitted in Waymo's rebuttal case and only if Uber's expert Michael Lebby opens the door. Dkt. 2516 at 3-4; *see also* Dkt. 2198-4 (Uber MIL 27).

6. Waymo expert Jim Timmins may testify as to the paper trail between Levandowski and Tyto from a corporate perspective, without prejudice to targeted objections at trial if he offers improper legal opinions. On direct examination, Timmins must "come to grips with Uber's accusations that his opinion is simply incorrect and contradicts the actual documentary evidence." Dkt. 2493 at 2; *see also* Dkt. 1611-4 (Uber Daubert Mot. re Timmins).

7. Evidence of industry financial projections and "internal financial projections by Waymo" is excluded unless Uber opens the door. 1/30 Hr'g Tr. 61:7-9; 71:6-20. Both sides may present admissible evidence that Waymo and/or Uber saw the self-driving car market as huge. *Id*. at 60:24-61:4.

8. Order denying Uber's motion to preclude Waymo from calling Levandowski to trial for the purpose of demonstrating his Fifth Amendment invocation. Uber MIL 4; tentatively denied at Dkt. 874; Dkt. 1050 at 99:3-100:8 ("As long as there is a record of circumstantial evidence or direct evidence that would cause the answer to be trustworthy enough, the inference to be trustworthy enough, I'm going to allow Levandowski to be brought in and examined"). The Court's order at Dkt. 1535 re Ground Rules for Testimony by Anthony Levandowski remains in effect.

9. Order precluding Uber from referring to Waymo's reduction in number of trade secrets or dismissal of patent claims. Waymo MIL 10 originally filed at Dkt. 851; tentatively granted at Dkt. 874.

10. Evidence of Waymo's research and development expenses is excluded, unless and until the Court decides there is adequate proof in the record that would allow the jury, in the Court's judgment, to apportion those expenses among the eight alleged trade secrets, or unless and until the Court decides that Uber has opened the door. 1/30/18 Hr'g Tr. 70:24-71:12.

11. Ruling regarding Uber's use of the "empty chair" argument. 9/27/17 Hr'g Tr. 65:25-66:1-11 ("THE COURT: Are you going to make the empty-chair argument? If you are, I think you would wind up regretting it, because I would interrupt, and say to the jury, Okay.

Mr. Levandowski is not here. That's true. He's not a defendant. However, they have the right to sue Uber for whatever wrongs it did, if any. And if you find, ladies and gentlemen of the jury, that Uber did something wrong, then they're liable for that, even if Levandowski would also be liable for that. And this argument about the empty chair is bogus. Then I will spell it. B-o-g-u-s. So I have a feeling I'm putting you on notice I would not allow that argument."). This does not prevent Uber from, for example, telling the jury that "Anthony Levandowski is not the defendant here," 9/27/17 Hr'g Tr. 66:2-24, or presenting evidence of Google's arbitration proceeding against Mr. Levandowski. Dkt. 874 ¶ 8; Dkt. 851 at 9 (Waymo MIL 9). Moreover, the Court indicated it plans to inform the jury that there is a separate proceeding brought by Google against Levandowski. 9/27/17 Hr'g Tr. 66:20-24, 67:9-19; 1/30/18 Hr'g Tr. 108:24-109:6.

12. Undisclosed, present-day lay opinion testimony is excluded. *See* Dkt. 563 ¶ 5; 7/26/17 Hr'g Tr. 132:19-25 ("So if it's a present day new opinion that's not part of the fact pattern, you better disclose it. If it's part of the historical story . . . Okay, then you can take a chance on it, and it probably will be allowed without disclosure, because it's part of the historical story."); *see also id.* at 129:17-131:15. Waymo's disclosed lay opinion testimony is attached hereto as Exhibit A (8/3/2017 Waymo's List of Issues for Expert Testimony). Uber's disclosed lay opinion testimony is found at Dkt. 1079.

13. Ruling that Waymo can admit the Qi Slide after laying proper foundation. Dkt. 2166; 1/30/18 Hr'g Tr. 61:18-23 ("That document, for sure, is coming into evidence."); *see also* Guidelines for Trial in Civil Cases ¶ 25 ("Please move exhibits into evidence as soon as the foundation is laid"); Dkt. 2585 at 5 ("Both sides will have to prove their cases to the jury the old-fashioned way—by laying the necessary foundation and relying on admissible evidence and properly-designated witnesses.").

14. Evidence of any employment or other agreement between Google and Levandowski containing an arbitration clause is excluded, provided that Uber does not open the door. Dkt. 425 at 5 ("As stated, Waymo has expressly forsworn reliance on its agreements with Levandowski."); *see also* 4/27/17 Hr'g Tr. 5:13-24 (Mr. Verhoeven: "Waymo will forego any

reliance on the terms of any employment or other agreement with Levandowski containing an arbitration clause" and will not use any such agreement for any purpose in this case).

15. Order denying Uber's motion to preclude Waymo from introducing the LiDAR communications log. Uber MIL 23; denied at Dkt. 1885.

16. Uber may present evidence that Waymo inspected Uber's facilities, that its expert Kevin Faulkner searched for and did not find the 14,000 files on Uber's computer systems, and that Uber terminated Mr. Levandowski. *See* 7/26/17 Hr'g Tr. 71:7-73:4; Dkt. 913 (Waymo MIL 4); Dkt. 978 (Uber Opp'n thereto).

17. Order denying Uber's motion to preclude Waymo from introducing evidence of the 14,000 downloaded files. Uber MIL 25; denied at Dkt. 1885. However, "downloaded materials" "is not synonymous with 'alleged trade secrets" and Waymo "may present evidence and argument to the jury about the downloaded materials as a step in proving Uber's alleged misappropriation of trade secrets, but Waymo must take care not to conflate these issues." Dkt. 2585 at n.5.

18. Evidence or argument regarding irrelevant alleged misconduct by Uber, such as sexual harassment investigations, the Holder Report, Greyball, and criminal investigations, as well as the Court's referral of this matter to the United States' Attorney's Office, is excluded. 6/29/17 Hr'g Tr. 4:1-13; *see also* Dkt. 641 at 3-5 (Uber MIL Precis 2).

19. Evidence or argument that Waymo's lawsuit is an attempt to slow down a competitor, or that Waymo should have sued Levandowski, will be permitted. Dkt. 1885 at 3; *see also* Dkt. 1542-4 (Waymo MIL 15). Evidence and argument as to why Levandowski left Google will be permitted. Dkt. 874 ¶ 8; *see also* Dkt. 851 at 4 (Waymo MIL 2). Evidence that Waymo or Google employees have side businesses will be permitted. Dkt. 874 ¶ 8; *see also* Dkt. 851 at 5 (Waymo MIL 3).

**DISPUTE CONCERNING EVIDENTARY SUMMARY NO. 20**

20. The parties agree that the Court's ruling on Waymo's MIL 13 (Dkt. 1547, Uber's opposition at Dkt. 1544-5) belongs in the top 20 rulings. The Court granted Waymo's MIL 13, stating, "Based on briefing and counsel's argument during the final pretrial conference, the

proposed evidence and argument about Drummond would be a waste of time and should be excluded under FRE 403. This motion is therefore GRANTED." Dkt. 1885 at 3. The Court heard oral argument on Waymo MIL 13 on September 27, 2017. *See* 9/27/17 Hr'g Tr. 51:12-57:17. The parties disagree as to the scope of this ruling. Waymo's position is that this ruling prevents Uber from presenting evidence or argument that Waymo, Alphabet, or David Drummond somehow acted improperly because Mr. Drummond remained on the Uber Board through August 2016. Uber's position is that this ruling precludes Uber from presenting evidence or argument that David Drummond "acted improperly by failing to tell Uber that Waymo plans to enter the transportation-as-a-service ('TaaS') industry, or by collecting competitive intelligence about Uber for Waymo." Dkt. 1547 at 1:1-4 (Waymo MIL 13).

DATED: February 4, 2018          QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                 By /s/ Charles K. Verhoeven
                                    Charles K. Verhoeven

                                    Attorneys for Plaintiff
                                    WAYMO LLC

DATED: February 4, 2018          MORRISON & FOERSTER LLP
                                 BOIES SCHILLER FLEXNER LLP
                                 SUSMAN GODFREY LLP


                                 By /s/ Karen L. Dunn
                                    Karen L. Dunn

                                    Attorneys for Defendants
                                    UBER TECHNOLOGIES, INC. and
                                    OTTOMOTTO LLC

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from any other signatory to this document.

DATED: February 4, 2018            /s/ Arturo A. Gonzalez
                                                  Arturo A. Gonzalez

# Exhibit A

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>   Plaintiff,<br><br>   vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>   Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S LIST OF ISSUES ON WHICH IT WILL PRESENT EXPERT TESTIMONY DURING ITS CASE-IN-CHIEF AT TRIAL (DKT. 563)** |

In accordance with the Court's Case Management Order (Dkt. 563), Plaintiff Waymo LLC ("Waymo") hereby submits this list of issues on which it will offer any expert testimony in its case-in-chief. This List is made based on information currently available to Waymo, and Waymo requests the right to amend this List or supplement with further witnesses or subject-matter as necessary based on further discovery. Waymo also reserves the right to provide additional expert to rebut expert evidence disclosed by Defendants.

**Pierre-Yves Droz**: Mr. Droz is a Principal Hardware Engineer who has served as the technical lead on Waymo's LiDAR project since its inception. Although Mr. Droz's testimony is expected to depend, in part, on his technical and specialized knowledge as an engineer in the LiDAR and self-driving vehicle field, Waymo does not expect Mr. Droz to offer opinion testimony at this time within the scope of the Court's case management order.[1] In an abundance of caution, however, Waymo discloses that Mr. Droz is expected to also testify consistent with his March 9, 2017 Declaration in Support of Waymo's Motion for Preliminary Injunction (Dkt. 24-3), though his testimony may include additional facts, explanation, or context as necessary.

**Gary Brown**: Mr. Brown is a Security Engineer in Forensics with Google, Inc. Mr. Brown is expected to offer testimony regarding a forensic investigation he conducted relating to the activities of Mr. Levandowski and other former Google employees who departed to work for Uber. Mr. Brown is expected to testify as to his analysis of Google's networks and hardware devices, including Mr. Levandowski's Google-issued laptop computers. In particular, Mr. Brown is expected to testify to his analysis of various sets of log data and machine analyses concerning Mr. Levandowski's download of more than 14,000 files and trade-secret Google Drive documents, subsequent reformatting and erasure of the computer used to perform those downloads, subsequent insertion and removal of a USB card-reader, and related activities. Mr. Brown is expected to testify consistent with his March 9, 2017 Declaration in Support of Waymo's Motion for

---

[1] In an abundance of caution Waymo also hereby incorporates into this disclosure the list of fact witnesses identified in its June 29, 2017 List of Opinions. (Dkt. 770.)

1  Preliminary Injunction (Dkt. 24-2). Mr. Brown's testimony will include the conclusions drawn
2  from the results of his forensic investigation, as disclosed in his March 9, 2017 Declaration.
3       Waymo further expects that Mr. Brown will provide testimony regarding Waymo's
4  reasonable efforts to maintain the secrecy of its electronic systems, digital document storage
5  repositories , and computer networks
6       **Kristinn Gudjonsson**: Mr. Gudjonnson is a Security Engineer in Forensics with Google,
7  Inc., and Mr. Brown's manager. Mr. Gudjonsson is expected to testify to the initiation of the
8  investigation into Mr. Levandowski as well as the forensic investigation performed by Mr.
9  Gudjonsson and Mr. Brown into Mr. Levandowski's activities. In particular, Mr. Gudjonsson is
10 expected to testify to his forensic examination of two work laptops assigned to Mr. Levandowski
11 and used for the downloads at issue in this case, as well as his continuing investigation into Mr.
12 Levandowski's activities and Mr. Gudjonsson's involvement in the specific investigative steps
13 performed by his direct report Gary Brown. Mr. Gudjonsson is expected to testify consistent with
14 Mr. Brown's March 9, 2017 Declaration in Support of Waymo's Motion for Preliminary
15 Injunction (Dkt. 24-2). Mr. Gudjonsson's testimony will include the conclusions drawn from the
16 results of his and Mr. Brown's forensic investigation, as disclosed in Mr. Brown's March 9, 2017
17 Declaration.
18      Waymo further expects that Mr. Gudjonsson will provide testimony regarding Waymo's
19 reasonable efforts to maintain the secrecy of its electronic systems, digital document storage
20 repositories , and computer networks
21      **Retained Plaintiff's Technical Expert No. 1**: Waymo expects to provide technical expert
22 witness testimony pertaining to optics as it relates to a LiDAR system for a self-driving vehicle.
23 This expert witness is expected to offer testimony regarding general optics, LiDAR principles,
24 design considerations for a LiDAR system, including PCB design and component layout, as well
25 as the background state of the art. Retained Technical Expert No. 1 is expected to further explain
26 Waymo's asserted trade secrets relating to LiDAR optical systems, components, and design of the
27 same, and is expected to provide opinions regarding the level of skill and effort required to derive
28 such trade secrets based on the available evidence in this case. Retained Technical Expert No. 1 is

expected to also opine that Waymo's LiDAR systems embody certain of Waymo's disclosed trade secrets.

Retained Technical Expert No. 1 is expected to further offer opinions that (i) Waymo undertook reasonable efforts to maintain the secrecy of its hardware designs reflecting its asserted trade secrets; (ii) such trade secrets are not generally known by individuals within the relevant field and/or are not readily ascertainable; and (iii) such trade secrets derive independent economic value by virtue of their not being generally known in the relevant field.  Additionally, Retained Expert No. 1 is expected to opine regarding Defendants' misappropriation of certain of Waymo's disclosed trade secrets based on (i) contemporaneous technical evidence reflecting Defendants' acquisition, use, and/or disclosure of Waymo's disclosed trade secret concepts; (ii) the similarity of Defendants' technology to Waymo's disclosed trade secrets and/or Waymo's implementation of such trade secrets in Waymo's commercial products; and/or (iii) the lack of evidence supporting Defendants' independent development of their own technology.

Retained Technical Expert No. 1 is also expected to opine regarding the benefits and value of Waymo's disclosed trade secrets, the technical and operational value that Waymo's trade secrets add to Waymo's and Defendants' commercial products, the amount of time and effort saved by Defendants as a result of their trade secret misappropriation, and technical considerations informing a hypothetical royalty negotiation between Waymo and Defendants.

**Retained Plaintiff's Technical Expert No. 2**: Waymo expects to provide technical expert witness testimony pertaining to electrical components and circuitry for LiDAR systems and/or other self-driving vehicle applications.  This expert witness is expected to offer testimony regarding general electrical engineering and circuitry principles as they relate to LiDAR and other self-driving vehicle applications, as well as the background state of the art.  Retained Technical Expert No. 2 is expected to further explain Waymo's disclosed trade secrets relating to the electrical systems and circuitry of LiDAR and self-driving vehicle systems and is expected to provide opinions regarding the level of skill and effort required to derive such trade secrets based on the available evidence in this case.  Retained Technical Expert No. 2 is expected to also opine that Waymo's LiDAR systems embody certain of Waymo's disclosed trade secrets.

1 	Retained Technical Expert No. 2 is expected to further offer opinions that (i) such trade secrets are not generally known by individuals within the relevant field and/or are not readily ascertainable; and (ii) such trade secrets derive independent economic value by virtue of their not being generally known in the relevant field.  Additionally, Retained Technical Expert No. 2 is expected to opine regarding Defendants' misappropriation of certain of Waymo's disclosed trade secrets based on (i) contemporaneous technical evidence reflecting Defendants' acquisition, use, and/or disclosure of Waymo's disclosed trade secret concepts; (ii) the similarity of Defendants' technology to Waymo's disclosed trade secrets and/or Waymo's implementation of such trade secrets in Waymo's commercial products; and/or (iii) the lack of evidence supporting Defendants' independent development of their own technology.

Retained Technical Expert No. 2 is expected to also offer opinions regarding the invention disclosed and claimed in U.S. Patent 9,368,936.  Such opinions will include (i) the plain meaning of unconstrued claim terms as they would be understood by a person of ordinary skill in the art in light of the patent's specification and rebuttal to any arguments by Defendants regarding contrary interpretations; (ii) the background technology, relevant state of the art, and the level of ordinary skill in the art as of the patent's filing/priority dates; (iii) the embodiment of the claimed inventions by Waymo's commercial products; (iv) the infringement of Defendants' commercial products; (v) the meaning of relevant prior art as it would be understood by a person of ordinary skill in the art; and (vi) the validity of the patent's claims, including over any asserted prior art.

Finally, Retained Technical Expert No. 2 is expected to opine regarding the benefits and value of Waymo's disclosed trade secrets and patent claims, the technical and operational value that Waymo's trade secrets and patented inventions add to Waymo's and Defendants' commercial products, the amount of time and effort saved by Defendants as a result of their trade secret misappropriation and patent infringement, and technical considerations informing a hypothetical royalty negotiation between Waymo and Defendants.

**Retained Plaintiff's Digital/Electronic Forensics Expert**: Waymo expects to provide retained expert witness testimony regarding computer networks and electronic systems as well as forensic evidence (including but not limited to metadata) that can be derived from electronic

1  devices and files that are produced and/or made available for inspection in this case.  Waymo
2  further expects that its Retained Electronic Forensics Expert will provide opinions regarding
3  Waymo's reasonable efforts to maintain the secrecy of its electronic systems, digital document
4  storage repositories , and computer networks.  Waymo expects that its Retained Electronic
5  Forensics Expert will also provide opinions regarding the facts surrounding Anthony
6  Levandowski's downloading of Google confidential files in December 2015-January 2016.
7       Waymo's forensic expert will further provide analysis of the metadata and files provided
8  by Uber in discovery and/or any inspections conducted by said forensic expert of Mr.
9  Levandowski or other Uber computers made available.
10      **Retained Plaintiff's M&A Expert**: Waymo expects to provide retained expert witness
11 testimony regarding standard procedures in the field for mergers and acquisitions of start up
12 companies and otherwise and the similarities and differences between those standard practices and
13 the merger and acquisition of Defendant Ottomotto, LLC by Defendant Uber Technologies, Inc.
14 Retained M&A Expert is expected to also opine regarding how certain aspects of the acquisition
15 and implementing documents are atypical, including provisions relating to Uber's agreement to
16 indemnify Ottomotto executives for their prior "Bad Acts."  Retained M&A Expert is also
17 expected to testify on similar subjects as they relate to Uber's right to acquire Otto Trucking, LLC.
18 Retained M&A Expert is also expected to testify on valuation issues related to the acquisition of
19 Ottomotto, LLC and the right to acquire Otto Trucking, LLC.  Finally, Retained M&A Expert may
20 further testify regarding the corporate ownership structure of Defendants and affiliated corporate
21 entities, including, for example, Uber, Otto, Otto Trucking, Tyto Lidar (and their affiliates).
22      **Retained Plaintiff's Damages Expert**: Waymo expects to provide retained expert witness
23 testimony regarding an appropriate remedy in this case.  Retained Damages Expert is expected to
24 offer opinions regarding the potential total market value for LiDAR systems and other technology
25 for self-driving vehicles, expected or projected share of the major market participants, the role of
26 innovation in obtaining and retaining market share and/or market value, and the market impact
27 resulting from Defendants' trade secret misappropriation and patent infringement in this case.
28 Based on these analyses, Retained Damages Expert is expected to offer opinion testimony relating

to (i) actual damages suffered by Waymo as a result of Defendants' trade secret misappropriation and patent infringement; (ii) a hypothetical royalty negotiation between Waymo and Defendants with respect to the relevant technology; (iii) Waymo's anticipated lost profits or market share; (iv) the amount by which Defendants have been unjustly enriched as a result of their liability in this case; (v) the difficulties in quantifying damages in this market and the irreparable harm suffered by Waymo as a result of Defendants' trade secret misappropriation and patent infringement; and (vi) the amount of pre-judgment interest to which Waymo is entitled.

DATED:  August 3, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC