MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzález@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel:   415.268.7000 / Fax:   415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
MICHAEL BRILLE (*Pro Hac Vice*)
mbrille@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Tel:   202.237.2727 / Fax:   202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.:   212.336.8330 / Fax.:   212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF PRECLUDING WAYMO FROM SOLICITING SPECULATIVE, IRRELEVANT, AND PREJUDICIAL OPINION TESTIMONY FROM FORMER UBER BOARD MEMBER BILL GURLEY** |

Defendants Uber Technologies, Inc. and Ottomotto LLC (together, "Uber") submit this brief concerning Waymo's examination of former Uber board member Bill Gurley. Uber anticipates that Waymo will try to elicit opinions, listed below, that Gurley formed only after he received the Stroz Report in May 2017 for the purpose of helping Uber evaluate this litigation. The Court's previous rulings preclude Waymo from eliciting this testimony, but because the act of asking improper questions of Gurley in the presence of the jury would be extremely prejudicial, Uber files this brief in advance, respectfully asking the Court to instruct Waymo that it is forbidden from putting questions to Gurley that would require him to call on his knowledge of the Stroz Report, which he did not review until mid-2017.

Gurley's after-the-fact opinions (listed below) are precluded by the Court's *in limine* rulings. *See* Dkt. 1050 (7/26/17 Hr'g Tr.) at 125:15-24 (ruling, on Uber MIL 21, that if "the Board members and the lawyers at Uber received that Due Diligence Report solely to help evaluate this litigation . . . we don't want to get into that."); Dkt. 1885 at 4 (ruling, on Uber MIL 22, that Gurley "may not speculate about matters outside of his percipient knowledge" and Waymo may not introduce any evidence of the lawsuit brought against Uber's former CEO, Travis Kalanick, by Gurley's venture capital firm, Benchmark except that defendants may use that lawsuit for impeachment purposes). Admission of this testimony would also violate Federal Rules of Evidence 602 (barring witnesses from talking about matters on which they have no relevant personal knowledge) and 701 (barring lay witness opinion testimony that is not helpful to clearly understanding a witness's testimony or to determining a fact in issue).

**I.   Absent an Instruction from the Court, Waymo is Likely to Ask Improper and Prejudicial Questions in the Presence of the Jury.**

Waymo's deposition examination is filled with calls for speculation and opinions that Gurley could only possibly have formed in 2017, when he first reviewed the Stroz Report—and did so in his capacity as an Uber director evaluating this litigation—rather than facts that he actually observed in 2016 around the time of the Otto acquisition. For example:

- **Waymo asked Gurley to speculate whether information he learned from reviewing the Stroz Report during the litigation hypothetically would have been "material" to his decision to vote to approve the Otto transaction in 2016.**

    Q. Would you have considered that to be material information with respect to whether to approve the transaction or not?

    THE WITNESS: Yes.

Ex. 1, Gurley Dep. Tr. at 129:22-130:5 (objections omitted).

- **Waymo asked Gurley to opine whether Benchmark might have acted differently in 2016 had it received Stroz Report information that Gurley first saw in 2017.**

    Q. But it's your contention that Benchmark would not have approved the amended certificate of incorporation referenced here, or the voting agreement, if it had known the real facts behind the Otto acquisition, isn't it?

    THE WITNESS: Along with other things. But, yes. That was one of -- of many other things.

*Id.* at 160:23-161:6 (objections omitted).[1]

- **Waymo asked for Gurley's "reaction" to reviewing the Stroz Report during the course of this litigation.**

    Q. What was your reaction when you saw -- when you read the Stroz report with respect to the fact that it was not disclosed to the board at the time of the acquisition? Were you upset?

    THE WITNESS: Yes.

---

[1] At the September 27, 2017 pretrial conference during which Uber's MIL 22, regarding Gurley's testimony, was heard, the Court stated "maybe I would allow" testimony about opinions that Gurley *actually held in April 2016* ("back at the time in question") regarding what he would have done had he been given a report that due diligence was not "clean." Dkt. 1872 (9/27/17 Hr'g Tr.) at 105:24-106:5. Uber respectfully submits that any such question to Gurley would call for speculation about how Gurley's actions might have been different in a purely hypothetical scenario. As the Court noted, the notion that such an opinion would have actually been held back in April 2016 would give cause for the Court to be "highly suspect . . . that he has been primed to say that." *Id.* at 106:17-22. In any event, the questions that Waymo asked Gurley at his deposition, quoted herein, go much further, asking what Gurley would have done had he "known the real facts behind the Otto acquisition." Ex. 1, Gurley Dep. Tr. at 160:23-161:6. That plainly violates this Court's ruling, because Gurley cannot possibly have had an opinion "back in the time in question" on how he would have acted after reading the Stroz Report itself, which he never saw before 2017. Dkt. 1872 (9/27/17 Hr'g Tr.) at 105:24-106:5.

DEFENDANTS' BRIEF ISO PRECLUDING WAYMO FROM SOLICITING SPECULATIVE, IRRELEVANT, AND PREJUDICIAL OPINION TESTIMONY FROM BILL GURLEY
CASE NO. 3:17-CV-00939-WHA

2

*Id.* at 130:7-16 (objections omitted).

- **Waymo asked Gurley to opine whether his review of the Stroz Report during the litigation caused him to question Travis Kalanick's "ethical and moral values."**

    Q. Based on what you know now, including your review of the diligence report, don't you believe that the conduct of Mr. Kalanick and his team, with respect to the Otto acquisition, reflected a lack of ethical and moral values?

    THE WITNESS: I don't know. For me, that particular thing is really a question of materiality and whether you feel a responsibility of disclosure, which gets into understanding the criticality of something, whether or not you're withholding information that could be critical in that decision-making process. I can't speak to the reasoning for them making those decisions; and, therefore, then apply some type of label like this. I certainly think, as is expressed later in -- in our legal action, that it -- that it crossed a line of violating fraud and fiduciary duty. . . .

*Id.* at 149:18-150:11 (objections omitted).

- **Waymo asked Gurley to opine whether, based on his review and assessment of the Stroz Report during this litigation, he believed Travis Kalanick had committed fraud on Uber's board and a breach of fiduciary duties.**

    Q. You believe that Mr. Kalanick committed fraud on the board of directors by failing to disclose the facts underlying the Otto acquisition, right?

    A. Yes.

    * * *

    Q. And I take it it's your belief that his omission of that critical information during his presentation also constituted fraud and a breach of his fiduciary duties?

    THE WITNESS: That is correct. Once again, this statement refers to other issues also. But with regard to that specific issue, you are correct.

*Id.* at 150:22-25; 169:8-15 (objections omitted).

- **Waymo asked Gurley to opine, based on his review and assessment of the Stroz Report during the litigation, which statements of Kalanick during the time period of the Otto transaction he believed constituted a breach of fiduciary duty.**

    Q. Which of Mr. Kalanick's statements related to the Otto transaction breached his fiduciary duties?

    A. It would seem obvious that this statement that was made to the board that the diligence, which, as we already ascertained, was remarkably critical to the transaction, in light of the presence of the indemnity and all those things, was

> clean, left me -- and I can't speak for the other board members -- with an impression that is remarkably different from that that I hold today.

*Id.* at 168:23-169:7.

Furthermore, Waymo's trial witness list suggests they intend to ask improper questions during their examination of Gurley at trial:

> Mr. Gurley will be asked to provide noncumulative testimony regarding Uber's acquisition of Otto; board meetings, discussions, and knowledge concerning the Otto acquisition including Mr. Kalanick and others' representations; facts surrounding Mr. Kalanick and board discussions concerning his termination; negotiations with Mr. Kalanick concerning the Otto acquisition and his resignation; ***Stroz due diligence report***; and representations made by Mr. Kalanick regarding the Stroz report and Otto acquisition; and ***Benchmark's claim that Mr. Kalanick committed fraud and breached his fiduciary duty with respect to the Otto acquisition***.

Dkt. 2520-2 at 4:19-5:1 (emphasis added).

**II.    The Court's Motion *in Limine* Rulings Properly Applied Fed. R. Evid. 602 and Prohibited Waymo from Questioning Gurley on His Receipt and Evaluation of the Stroz Due Diligence Report.**

On July 17, 2017, Uber filed proposed motion *in limine* 21 seeking to "exclude evidence relating to post-complaint receipt of [the] due diligence report." Dkt. 916. The Court ruled that testimony from Uber board members who "received the Due Diligence Report solely to help evaluate this litigation" was something that "we don't want to get into" because "that's not what [Waymo] sued over." Dkt. 1050 (7/26/17 Hr'g Tr.) at 125:15-126:6. The Court further reasoned that "the people running the company ought to be able to evaluate this litigation" and that evidence relating to their evaluation of the litigation would be "too far afield." *Id.* The Court allowed Waymo to take *discovery* into the circumstances surrounding Uber board members' receipt of the Stroz Report so that the Court could determine whether they had received the report for the purpose of evaluating the litigation. Discovery showed, indisputably, that Gurley had:

> Q: Did you ask for the diligence report that was referenced in Exhibit 910 as a result of reading the preliminary injunction order?
>
> A: Yes.
>
> * * *

DEFENDANTS' BRIEF ISO PRECLUDING WAYMO FROM SOLICITING SPECULATIVE, IRRELEVANT, AND PREJUDICIAL OPINION TESTIMONY FROM BILL GURLEY
CASE NO. 3:17-CV-00939-WHA

4

> Q. And that was around May 12th of this year?
>
> THE WITNESS: I don't have any notes in front of me. That sounds like it would be in the general time frame, but I . . . it could be off, you know, by a week or two. I don't have the specific date.
>
> * * *
>
> Q. Why did you ask for it?
>
> A: As I already referenced, ***I felt that this litigation, the one we're involved in today, was critical*** and important to the company. Once I had gotten up to speed on Anthony's decision to plead the Fifth and the fact that we should be terminating, ***I felt that it was my duty as a board member to try and know as much as possible about this situation so I could advise the company in the best possible way.***

Ex. 1, Gurley Dep. Tr. at 104:3-105:21 (colloquy omitted) (emphasis added). Given this testimony, the Court's July 26 ruling bars Waymo from questioning Gurley to elicit his opinions formed after receiving the Report.

In its motion *in limine* 22, Uber asked the Court (among other things) to preclude Waymo from eliciting speculative testimony from Gurley about what his firm, Benchmark Capital, would have done had it known about the Stroz Report in 2016. The Court ruled that Gurley would be prohibited from "speculat[ing] about matters outside of his percipient knowledge." Dkt. 1885 at 4:6-11. Gurley's testimony that he did not receive the Stroz Report until May 2017 makes it clear that he has no relevant "percipient knowledge" about the Stroz Report from the time period in question in this case. The Court's motion *in limine* rulings correctly applied Fed. R. Evid. 602, which forbids non-expert witnesses from testifying on matters about which they have no "personal knowledge." Gurley's testimony where he offers opinions about events in 2016 that were formed after he received the Stroz Report in 2017 would violate Rule 602 because he had no "personal knowledge" until well after the time period in question here. In other words, Gurley's arguable acquisition of personal knowledge about the Stroz Report in 2017, after this litigation was commenced, does not change the only relevant and probative testimony he can give—his personal observations that were formed during the 2016 time period in which the Ottomotto transaction took place and which he experienced first-hand.

DEFENDANTS' BRIEF ISO PRECLUDING WAYMO FROM SOLICITING SPECULATIVE, IRRELEVANT, AND PREJUDICIAL OPINION TESTIMONY FROM BILL GURLEY
CASE NO. 3:17-CV-00939-WHA

5

### III. Fed. R. Evid. 701 and this Court's Orders Prohibit Waymo from Soliciting Lay Witness Opinions from Gurley Relating to the Stroz Report.

#### A. Gurley's Opinions on the Stroz Report Are Inadmissible Under Fed. R. Evid. 701.

Waymo may attempt to characterize the testimony it seeks to solicit from Gurley as a lay witness opinion. But such a characterization does not render the testimony admissible, because lay witness opinions developed after the litigation was filed about the significance of the Stroz Report and due diligence process are not at all helpful to the jury in weighing the evidence. Unhelpful opinion testimony thus must be excluded under Fed. R. Evid. 701, which requires that a witness's opinion be "helpful to clearly understanding the witness's testimony or to determining a fact in issue." The Court's prior rulings addressing motion *in limine* 22 recognized and applied this principle in prohibiting Gurley from speculating about what he would have done "if [he] had seen this report." Dkt. 1872 (9/27/17 Hr'g Tr.) at 102:12-15.

Waymo's only purpose for eliciting opinions from Gurley on the Stroz Report would be to have Gurley supplant the role of the jury by providing his personal opinion and speculation about what Uber knew and when it knew it. Gurley would in effect be empaneled as an eleventh juror weighing in with his views on what the Stroz Report shows and does not show. Opinions, speculation, and legal conclusions based on information (namely, the Stroz Report) that Gurley only came to learn in his capacity as an Uber board member in 2017, are completely unhelpful to the jury's task. Allowing such testimony to come into evidence would only serve to confuse the jury and prejudice Uber.

#### B. Gurley's Opinions Are Inadmissible Because They Were Not Disclosed by Waymo as Opinion Testimony that Waymo Intended to Offer at Trial.

These opinions are also inadmissible on the ground that Waymo never disclosed that it intended to offer such opinion testimony at trial. *See* Dkt. 563 ¶ 5; Dkt. 1050 (7/26/17 Hr'g Tr.) at 132:19-25 ("So if it's a present day new opinion that's not part of the fact pattern, you better disclose it. If it's part of the historical story . . . okay, then you can take a chance on it, and it probably will be allowed without disclosure, because it's part of the historical story."); *see also*

DEFENDANTS' BRIEF ISO PRECLUDING WAYMO FROM SOLICITING SPECULATIVE, IRRELEVANT, AND PREJUDICIAL OPINION TESTIMONY FROM BILL GURLEY
CASE NO. 3:17-CV-00939-WHA

6

*id.* at 129:17-131:15.  Waymo's disclosure of the opinion testimony it intends to offer at trial contains no mention of Gurley.  Dkt. 2614-1 (Waymo's list of disclosed opinion testimony).  Waymo never supplemented its list after Gurley was deposed in August 2017.

### IV. Conclusion

Uber respectfully requests that the Court instruct Waymo that it is prohibited from asking questions of Gurley that would require him to render opinions based on facts that he learned from reviewing the Stroz Report.

Dated: February 05, 2018

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP

By: */s/ Karen L. Dunn*
     KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

Case 3:17-cv-00939-WHA   Document 2625   Filed 02/05/18   Page 9 of 9

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. Gonzalez, am the ECF User whose ID and password are being used to file this Brief. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Karen L. Dunn has concurred in this filing.

Dated: February 5, 2018 　　　　　　　　　　*/s/ Arturo J. González*
　　　　　　　　　　　　　　　　　　　　ARTURO J. GONZÁLEZ