# Exhibit 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1   UNITED STATES DISTRICT COURT
2   NORTHERN DISTRICT OF CALIFORNIA
3   SAN FRANCISCO DIVISION
4   --oOo--
5   WAYMO LLC,
6             Plaintiff,
                                    Case
7   vs.                             No. 3:17-cv-00939-WHA
8   UBER TECHNOLOGIES, INC.;
    OTTOMOTTO LLC; OTTO TRUCKING LLC,
9
              Defendants.
10                                  /
11
12
13
14      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
15
16      VIDEOTAPED DEPOSITION OF JOHN WILLIAM GURLEY
17              THURSDAY, AUGUST 24, 2017
18
19
20
21  Reported by:
22  Anrae Wimberley
23  CSR No. 7778
24  Job No.  2687934
25  PAGES 1 - 182

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | that was referenced in the board | 11:02:42 |
| 2 | meeting -- board -- withdrawn. | 11:02:46 |
| 3 | Did you ask for the diligence report that was | 11:02:49 |
| 4 | referenced in Exhibit 910 as a result of reading the | 11:02:56 |
| 5 | preliminary injunction order? | 11:02:58 |
| 6 | MR. FLUMENBAUM: I'll let him answer yes or no to | 11:03:00 |
| 7 | that, but I don't want that to be a waiver. | 11:03:02 |
| 8 | Will you agree to that? | 11:03:04 |
| 9 | MR. VERHOEVEN: Agreed. | 11:03:05 |
| 10 | MR. FLUMENBAUM: You can answer that yes or no. | 11:03:06 |
| 11 | THE WITNESS: Yes. | 11:03:08 |
| 12 | BY MR. VERHOEVEN: | 11:03:08 |
| 13 | Q. Did you ask for it? | 11:03:10 |
| 14 | MR. FLUMENBAUM: Same rule? | 11:03:11 |
| 15 | MR. VERHOEVEN: Yes. | 11:03:14 |
| 16 | BY MR. VERHOEVEN: | 11:03:14 |
| 17 | Q. Yes or no? | 11:03:16 |
| 18 | A. Yes. | 11:03:16 |
| 19 | Q. Did you read it? | 11:03:18 |
| 20 | MR. FLUMENBAUM: Again, same rule? | 11:03:20 |
| 21 | MR. VERHOEVEN: Yes. | 11:03:21 |
| 22 | MR. FLUMENBAUM: You can answer that yes or no. | 11:03:24 |
| 23 | THE WITNESS: Yes. | 11:03:26 |
| 24 | BY MR. VERHOEVEN: | 11:03:26 |
| 25 | Q. And that was around May 12th of this year? | 11:03:30 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        MR. FLUMENBAUM:  You can answer that yes or no.     11:03:34
 2        THE WITNESS:  I don't have any notes in front of    11:03:36
 3   me.  That sounds like it would be in the general time    11:03:38
 4   frame, but I . . . it could be off, you know, by a       11:03:45
 5   week or two.  I don't have the specific date.            11:03:48
 6   BY MR. VERHOEVEN:                                        11:03:48
 7        Q.   In that range?                                 11:03:49
 8        A.   In that range.                                 11:03:50
 9        Q.   Why did you ask for it?                        11:03:52
10        MR. FLUMENBAUM:  Again, I'll let you answer that    11:03:57
11   question, but don't talk about any conversations that    11:04:06
12   you had with either Uber's counsel or your personal      11:04:10
13   counsel at this point.                                   11:04:14
14        THE WITNESS:  As I already referenced, I felt that  11:04:22
15   this litigation, the one we're involved in today, was    11:04:26
16   critical and important to the company.  Once I had       11:04:30
17   gotten up to speed on Anthony's decision to plead the    11:04:35
18   Fifth and the fact that we should be terminating, I      11:04:39
19   felt that it was my duty as a board member to try and    11:04:42
20   know as much as possible about this situation so I       11:04:45
21   could advise the company in the best possible way.       11:04:54
22   BY MR. VERHOEVEN:                                        11:04:54
23        Q.   After you read the diligence report, did you   11:04:59
24   take any action based on reading it?  Yes or no?         11:05:06
25        MR. FLUMENBAUM:  Again, no waiver; correct?         11:05:08
```

Veritext Legal Solutions
866 299-5127

```
 1   what's in the due diligence report, so -- is there a      11:37:58
 2   way you can rephrase that question?                        11:38:02
 3       MR. VERHOEVEN:  I don't think so.  I'm asking the      11:38:06
 4   witness -- I'll ask it again.                              11:38:08
 5   BY MR. VERHOEVEN:                                          11:38:08
 6       Q.  Without revealing the substance of the             11:38:11
 7   diligence report, if you had known about it at the         11:38:16
 8   time of the transaction, would you have objected to        11:38:19
 9   moving forward with the transaction?                       11:38:22
10       MR. BRILLE:  Object to form.                           11:38:23
11       MR. FLUMENBAUM:  Would you agree that follows our      11:38:25
12   non-waiver --                                              11:38:26
13       MR. VERHOEVEN:  Yes.                                   11:38:28
14       THE WITNESS:  Yes.                                     11:38:32
15       MR. VERHOEVEN:  And if I ask why, I assume I'll        11:38:40
16   get an instruction?                                        11:38:41
17       MR. FLUMENBAUM:  You will until that report is         11:38:42
18   released.                                                  11:38:44
19       MR. VERHOEVEN:  Okay.                                  11:38:44
20   BY MR. VERHOEVEN:
21       Q.  Was that -- withdrawn.                             11:38:48
22           Would you have considered that to be material      11:38:52
23   information with respect to whether to approve the         11:38:57
24   transaction or not?                                        11:38:59
25       MR. FLUMENBAUM:  Same -- not going to argue            11:39:03
```

Page 129

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   waiver?                                              11:39:03
 2       MR. VERHOEVEN:  Correct.                         11:39:04
 3       MR. BRILLE:  Object to form.                     11:39:05
 4       MR. FLUMENBAUM:  You can answer yes or no.       11:39:07
 5       THE WITNESS:  Yes.                               11:39:08
 6   BY MR. VERHOEVEN:                                    11:39:08
 7       Q.   What was your reaction when you saw -- when 11:39:32
 8   you read the Stroz report with respect to the fact   11:39:37
 9   that it was not disclosed to the board at the time of 11:39:39
10   the acquisition?  Were you upset?                    11:39:43
11       MR. BRILLE:  I'll object to form.                11:39:46
12       MR. FLUMENBAUM:  I'll object to the form also.   11:39:49
13   Again I'll let him answer that without claim of      11:39:55
14   waiver.                                              11:39:56
15       MR. VERHOEVEN:  Yes.                             11:39:56
16       THE WITNESS:  Yes.                               11:39:58
17   BY MR. VERHOEVEN:                                    11:39:58
18       Q.   Why?                                        11:40:00
19       MR. BRILLE:  Same objections.                    11:40:01
20       MR. VERHOEVEN:  I'm asking for his reaction.     11:40:03
21       MR. FLUMENBAUM:  So you got -- you got his answer. 11:40:06
22   He can't answer more than that without going into    11:40:09
23   substance.                                           11:40:10
24   BY MR. VERHOEVEN:                                    11:40:10
25       Q.   Did you call up Mr. Levandowski after reading 11:40:13
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | A.   Yep. | 12:13:45 |
| 2 | Q.   And your understanding that this perception | 12:13:50 |
| 3 | of lacking -- withdrawn. | 12:13:54 |
| 4 | This reference to "lacks ethical and moral | 12:13:58 |
| 5 | values" in this sentence is, in part, a reference to | 12:14:01 |
| 6 | the Waymo litigation, correct? | 12:14:03 |
| 7 | MR. BRILLE:   Object to form. | 12:14:07 |
| 8 | THE WITNESS:   I don't think it's a specific | 12:14:08 |
| 9 | reflection on that.  I think there -- as -- there are | 12:14:14 |
| 10 | numerous other issues that had been going on in the | 12:14:18 |
| 11 | company. | 12:14:18 |
| 12 | And I think if you read those articles that I | 12:14:21 |
| 13 | mentioned that were calling for the board to ask him | 12:14:25 |
| 14 | to resign, that created this public perception, you | 12:14:31 |
| 15 | would see much more references around that to other | 12:14:34 |
| 16 | things. | 12:14:36 |
| 17 | BY MR. VERHOEVEN: | 12:14:36 |
| 18 | Q.   Based on what you know now, including your | 12:14:39 |
| 19 | review of the diligence report, don't you believe that | 12:14:45 |
| 20 | the conduct of Mr. Kalanick and his team, with respect | 12:14:50 |
| 21 | to the Otto acquisition, reflected a lack of ethical | 12:14:58 |
| 22 | and moral values? | 12:15:01 |
| 23 | MR. BRILLE:   Object to form. | 12:15:08 |
| 24 | THE WITNESS:   I don't know.  For me, that | 12:15:12 |
| 25 | particular thing is really a question of materiality | 12:15:15 |

Page 149

| | | |
|---|---|---|
| 1 | and whether you feel a responsibility of disclosure, | 12:15:22 |
| 2 | which gets into understanding the criticality of | 12:15:28 |
| 3 | something, whether or not you're withholding | 12:15:32 |
| 4 | information that could be critical in that | 12:15:35 |
| 5 | decision-making process. | 12:15:36 |
| 6 |     I can't speak to the reasoning for them | 12:15:42 |
| 7 | making those decisions; and, therefore, then apply | 12:15:45 |
| 8 | some type of label like this. | 12:15:49 |
| 9 |     I certainly think, as is expressed later | 12:15:52 |
| 10 | in -- in our legal action, that it -- that it crossed | 12:15:56 |
| 11 | a line of violating fraud and fiduciary duty. | 12:16:02 |
| 12 |     And so to the extent that you want to wrap | 12:16:04 |
| 13 | those into those words, I guess you could, but I | 12:16:07 |
| 14 | don't -- I -- I wouldn't tie that specifically to that | 12:16:11 |
| 15 | label. | 12:16:11 |
| 16 |     That's not what we were thinking about when | 12:16:13 |
| 17 | we wrote that.  This says the "public perception is," | 12:16:17 |
| 18 | and I think that public perception, which is well | 12:16:20 |
| 19 | documented in a bunch of articles, was driven more by | 12:16:23 |
| 20 | other activities. | 12:16:24 |
| 21 | BY MR. VERHOEVEN: | 12:16:24 |
| 22 |     Q.   You believe that Mr. Kalanick committed fraud | 12:16:26 |
| 23 | on the board of directors by failing to disclose the | 12:16:30 |
| 24 | facts underlying the Otto acquisition, right? | 12:16:34 |
| 25 |     A.   Yes. | 12:16:35 |

```
1              Do you see that?                              12:30:24
2       A.     Yes.                                          12:30:25
3       Q.     And this refers, in part, to your prior       12:30:30
4   testimony that if Benchmark had known about the          12:30:35
5   information contained in the Stroz report, it would      12:30:37
6   never have agreed to this amendment, right?              12:30:45
7       MR. BRILLE:  Object to the form.                     12:30:46
8       MR. FLUMENBAUM:  Object to the form.                 12:30:47
9              You can answer.
10  BY MR. VERHOEVEN:
11      Q.     Well, you're correct.  Let me rephrase.       12:30:51
12             This refers to your prior testimony that      12:30:54
13  Benchmark never would have approved the transaction      12:30:56
14  had it been aware of the Stroz report, correct?          12:31:02
15      MR. BRILLE:  Same objection.                         12:31:03
16      MR. FLUMENBAUM:  Objection as to form, but you       12:31:05
17  may --                                                   12:31:06
18      THE WITNESS:  The only clarification I would make    12:31:08
19  is that there are many other matters, also.              12:31:10
20  BY MR. VERHOEVEN:
21      Q.     Yeah.
22      A.     But this is one of those.  Yes, correct.      12:31:14
23      Q.     But it's your contention that Benchmark would 12:31:18
24  not have approved the amended certificate of             12:31:18
25  incorporation referenced here, or the voting             12:31:22
```

Page 160

| | | |
|---|---|---|
| 1 | agreement, if it had known the real facts behind the | 12:31:25 |
| 2 | Otto acquisition, isn't it? | 12:31:28 |
| 3 |    MR. BRILLE:  Object to form. | 12:31:29 |
| 4 |    MR. FLUMENBAUM:  You may answer. | 12:31:30 |
| 5 |    THE WITNESS:  Along with other things.  But, yes. | 12:31:32 |
| 6 | That was one of -- of many other things. | 12:31:36 |
| 7 | BY MR. VERHOEVEN: | 12:31:36 |
| 8 |    Q.  The next sentence says: | 12:31:46 |
| 9 |    "Kalanick also understood that these matters, | 12:31:49 |
| 10 | once revealed, would likely force him to resign as | 12:31:53 |
| 11 | Uber's CEO." | 12:31:54 |
| 12 |    Do you see that? | 12:31:55 |
| 13 |    A.  I do. | 12:31:56 |
| 14 |    Q.  And one of those matters is the facts | 12:32:00 |
| 15 | underlying the Otto acquisition, correct? | 12:32:02 |
| 16 |    MR. BRILLE:  Object to form. | 12:32:04 |
| 17 |    MR. FLUMENBAUM:  You may answer. | 12:32:05 |
| 18 |    THE WITNESS:  Yes, one of those facts. | 12:32:08 |
| 19 | BY MR. VERHOEVEN: | 12:32:08 |
| 20 |    Q.  And throughout this sentence, if it refers to | 12:32:21 |
| 21 | these matters, your answer would be the same, that | 12:32:24 |
| 22 | included in the matters would be the Otto transaction? | 12:32:28 |
| 23 |    MR. FLUMENBAUM:  Objection as to form.  But . . . | 12:32:32 |
| 24 | BY MR. VERHOEVEN: | |
| 25 |    Q.  I mean, you can see the next -- okay.  I was | |

```
 1              That -- that discussion did take place at a    12:41:27
 2     board meeting, as we had discussed.                     12:41:28
 3              The argument was to why that headline figure   12:41:32
 4     was not un- -- was not unreasonable related to the      12:41:37
 5     notion of the milestones that we've previously          12:41:41
 6     discussed.                                              12:41:42
 7     BY MR. VERHOEVEN:                                       12:41:42
 8        Q.   I direct your attention to paragraph 67.        12:42:14
 9        A.   Oh, wow.                                        12:42:15
10        Q.   Page 30.  All right.  Take a second and read    12:42:31
11     it and tell me when you're ready to answer questions.   12:42:32
12          MR. FLUMENBAUM:  Paragraph 67?                     12:42:36
13          MR. VERHOEVEN:  Paragraph 67.                      12:42:38
14               (Witness reviews document.)                   12:42:49
15          THE WITNESS:  Okay.                                12:42:50
16     BY MR. VERHOEVEN:                                       12:42:50
17        Q.   And this -- this references:                    12:42:51
18               "Kalanick's fraudulent statements and         12:42:54
19     omissions breached his fiduciary duties, including,"   12:42:57
20     and then it gets more specific.                         12:42:59
21               Do you see that?                              12:43:00
22        A.   Um-hum.                                         12:43:01
23        Q.   Which of Mr. Kalanick's statements related to   12:43:08
24     the Otto transaction breached his fiduciary duties?     12:43:13
25        A.   It would seem obvious that this statement      12:43:22
```

Page 168

| | | |
|---|---|---|
| 1 | that was made to the board that the diligence, which, | 12:43:26 |
| 2 | as we already ascertained, was remarkably critical to | 12:43:33 |
| 3 | the transaction, in light of the presence of the | 12:43:34 |
| 4 | indemnity and all those things, was clean, left me -- | 12:43:37 |
| 5 | and I can't speak for the other board members -- with | 12:43:40 |
| 6 | an impression that is remarkably different from that | 12:43:44 |
| 7 | that I hold today. | 12:43:46 |
| 8 |    Q.   And I take it it's your belief that his | 12:43:55 |
| 9 | omission of that critical information during his | 12:44:00 |
| 10 | presentation also constituted fraud and a breach of | 12:44:09 |
| 11 | his fiduciary duties? | 12:44:11 |
| 12 |    MR. BRILLE:   Object to form. | 12:44:12 |
| 13 |    THE WITNESS:   That is correct.  Once again, this | 12:44:14 |
| 14 | statement refers to other issues also.  But with | 12:44:20 |
| 15 | regard to that specific issue, you are correct. | 12:44:24 |
| 16 | BY MR. VERHOEVEN: | 12:44:24 |
| 17 |    Q.   Does anything else come to mind, still on | 12:44:47 |
| 18 | paragraph 67 -- understanding it's a general | 12:44:52 |
| 19 | statement, but focusing specifically on the Otto | 12:44:55 |
| 20 | acquisition portion of it. | 12:44:57 |
| 21 |    A.   Um-hum. | 12:44:59 |
| 22 |    Q.   Does anything else come to mind, in addition | 12:45:02 |
| 23 | to what you've already testified to, that was either a | 12:45:09 |
| 24 | statement or omission by Mr. Kalanick that breached | 12:45:13 |
| 25 | his fiduciary duties or constituted fraud? | 12:45:17 |

Page 169

Veritext Legal Solutions
866 299-5127

## ERRATA SHEET

**Case Name:** *Waymo LLC v. Uber Technologies, Inc. et al*,
No. 17-cv-00939 (N.D. Cal.)

**Witness Name:** John William Gurley

**Deposition Date:** August 24, 2017

I wish to make the following changes for the following reasons:

| Page/Line | From | To | Reason |
|---|---|---|---|
| 4/13 | "Christina" | "Kristina" | Misspelling |
| 9/15 | "Taskahima" | "Takashima" | Misspelling |
| 11/6 | "we're" | "we were" | Transcription Error |
| 12/2 | "might" | "mind" | Transcription Error |
| 70/24 | "Cruze" | "Cruise" | Misspelling |
| 83/6; 83/7 | "Sally" | "Salle" | Misspelling |
| 83/5 | "Twaun" | "Thuan" | Misspelling |
| 120/13 | "past" | "passed" | Transcription Error |

_____
John William Gurley

Subscribed and sworn to before me
this ___ day of August, 2017.

_____
Notary Public

*See attached Notary form* of

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California  
County of ___San Francisco___ )

On ___September 5th, 2017___ before me, ___Carrie Adair Paton, Notary Public___,
Date                                     Here Insert Name and Title of the Officer

personally appeared ___John William Gurley___
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

[Notary Seal: CARRIE ADAIR PATON, COMM. # 2124672, NOTARY PUBLIC - CALIFORNIA, SAN FRANCISCO COUNTY, COMM. EXPIRES AUG. 23, 2019]

Place Notary Seal Above

---OPTIONAL---

Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____  
☐ Corporate Officer — Title(s): _____  
☐ Partner — ☐ Limited ☐ General  
☐ Individual ☐ Attorney in Fact  
☐ Trustee ☐ Guardian or Conservator  
☐ Other: _____  
Signer Is Representing: _____

Signer's Name: _____  
☐ Corporate Officer — Title(s): _____  
☐ Partner — ☐ Limited ☐ General  
☐ Individual ☐ Attorney in Fact  
☐ Trustee ☐ Guardian or Conservator  
☐ Other: _____  
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 178

1 litigation.  13:05:33
2 Q. Did you have a discussion with her about the  13:05:34
3 report?  13:05:35
4 MR. FLUMENBAUM: You can answer -- you can answer  13:05:38
5 that yes or no, if you recall.  13:05:40
6 THE WITNESS: I -- I -- I just don't recall.  13:05:46
7 BY MR. VERHOEVEN:  13:05:46
8 Q. Do you think you would have?  13:05:49
9 MR. FLUMENBAUM: Objection as to form.  13:05:51
10 THE WITNESS: It's possible.  13:05:52
11 BY MR. VERHOEVEN:  13:05:52
12 Q. I mean, you sent it to her?  13:05:55
13 A. Okay. If I did, then, it's likely that I  13:05:58
14 did.  13:05:58
15 Q. Have a conversation?  13:05:59
16 A. Yeah.
17 Q. You can't remember the substance of any  13:06:02
18 conversation?  13:06:04
19 MR. FLUMENBAUM: Asked and answered.  13:06:08
20 THE WITNESS: I -- I don't recall any specifics.  13:06:11
21 MR. VERHOEVEN: You're supposed to only object to  13:06:12
22 form.  13:06:13
23 BY MR. VERHOEVEN:  13:06:13
24 Q. What about Mr. Bonderman? Did you send a  13:06:19
25 copy of the report to him?  13:06:21

Page 179

1 A. I don't recall.  13:06:22
2 Q. Do you remember any conversations you had  13:06:26
3 with Mr. Bonderman about the report or the Otto  13:06:31
4 acquisition?  13:06:32
5 A. There were numerous discussions, as part of  13:06:38
6 the special committee, that may or may not have  13:06:43
7 involved the report, but those would be privileged.  13:06:46
8 Q. Was there lawyers in every meeting of the  13:06:49
9 special committee?  13:06:51
10 A. Yes.  13:06:51
11 Q. Who were they?  13:06:53
12 A. It was Patrick Robbins from Shearman.  13:06:57
13 Q. Anyone else? Any other firms?  13:07:03
14 A. No. No. Not as that -- not while I was a  13:07:06
15 member of the committee.  13:07:07
16 Q. Do you remember any conversations with  13:07:10
17 Mr. Bonderman outside of this -- of the committee  13:07:14
18 concerning the Otto acquisition?  13:07:20
19 A. I don't remember any specific conversations.  13:07:32
20 I would say that it's my opinion that he was also of  13:07:40
21 the belief that Anthony should have been terminated as  13:07:43
22 soon as he pled the Fifth.  13:07:45
23 Q. Is that based on conversations with him  13:07:47
24 generally?  13:07:49
25 A. Yes.  13:07:49

Page 180

1 Q. And you -- can you recall the specifics of  13:07:51
2 any of those conversations?  13:07:52
3 A. I don't remember any of the specifics.  13:07:55
4 Q. Did he contribute during board meetings on  13:07:57
5 this subject?  13:07:59
6 A. Yes.  13:07:59
7 Q. Can you remember what he said in any of those  13:08:01
8 meetings?  13:08:02
9 A. I -- I don't. I just know that his -- I know  13:08:04
10 that that was his point of view.  13:08:06
11 MR. VERHOEVEN: Thank you very much, Mr. Gurley.  13:08:28
12 I have no further questions at this time.  13:08:31
13     We have, as you've noticed, several privilege  13:08:34
14 instructions which are currently in dispute. And if  13:08:39
15 there's a ruling that certain documents have to be  13:08:43
16 produced, we -- just so you know, we may take the  13:08:47
17 position that you have to come back and answer some  13:08:49
18 questions about that.  13:08:50
19 THE WITNESS: Okay.  13:08:50
20 MR. VERHOEVEN: Thank you very much for your time.  13:08:53
21 THE WITNESS: Thank you.
22 MR. FLUMENBAUM: Anybody else?  13:08:54
23 MR. BRILLE: Not here, no.  13:08:56
24 MR. FLUMENBAUM: Thank you. Thank you all.  13:08:58
25 THE VIDEOGRAPHER: This concludes today's  13:09:01

Page 181

1 deposition of William Gurley, consisting of three  13:09:04
2 DVDs.  13:09:05
3     We're off the record at 1:09 p.m.  13:09:09
4     (Whereupon, the deposition was adjourned at
5     1:09 p.m.)

_____
JOHN WILLIAM GURLEY

46 (Pages 178 - 181)

```
 1        FEDERAL CERTIFICATE OF DEPOSITION OFFICER
 2        I, ANRAE WIMBERLEY, CSR NO. 7778, do hereby
    declare:
 3        That, prior to being examined, the witness named
    in the foregoing deposition was by me duly sworn
 4  pursuant to Section 30(f)(1) of the Federal Rules of
    Civil Procedure and the deposition is a true record of
 5  the testimony given by the witness;
 6        That said deposition was taken down by me in
    shorthand at the time and place therein named and
 7  thereafter reduced to text under my direction;
 8        X    That the witness was requested to
    review the transcript and make any changes to the
 9  transcript as a result of that review pursuant to
    Section 30(e) of the Federal Rules of Civil Procedure;
10             No changes have been provided by the
    witness during the period allowed;
11             The changes made by the witness are
12  appended to the transcript;
13             No request was made that the transcript
    be reviewed pursuant to Section 30(e) of the Federal
14  Rules of Civil Procedure.
15        I further declare that I have no interest in the
    event of the action.
16        I declare under penalty of perjury under the laws
17  of the United States of America that the foregoing is
    true and correct.
18        WITNESS my hand this 25th day of August, 2017.
19
20
21
22
23                  [signature: Anrae Wimberley]
24
25        ANRAE WIMBERLEY, CSR NO. 7778
```

Page 182