MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzález@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel:    415.268.7000 / Fax:   415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
MICHAEL A. BRILLE (*Pro Hac Vice*)
mbrille@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Tel:    202.237.2727 / Fax:   202.237.6131

WILLIAM C. CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN J. RABIN (*Pro Hac Vice*)
srabin@ susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel:    212.336.8330 / Fax:   212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>       Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO WAYMO'S OBJECTIONS AND PROPOSED MODIFICATIONS TO THE PENULTIMATE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION AND SPECIAL VERDICT FORM** |

## I.    There is no "improper-acquisition-free" route to liability __in this case__.

Waymo's liability theory from the outset of this lawsuit has always been that Uber is using trade secrets that it knew or had reason to know were acquired through improper means. That is the only theory of misappropriation that Waymo pleaded:

> Defendants misappropriated and threaten to further misappropriate trade secrets at least by acquiring trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means, and Defendants are using and threatening to use the trade secrets acquired by improper means without Waymo's knowledge or consent.

Dkt. 23 (Am. Compl.) ¶ 84 (emphasis added). Waymo neither pleaded nor pursued an "improper-acquisition-free" theory. Yet again, "Waymo must be held to prove its showcase contention". Dkt. 2495 at 6.

The lone theory of liability in Waymo's complaint was derived from one avenue of use-based misappropriation provided for in CUTSA and DTSA. Cal. Civ. Code §§ 3426.1(b)(2); *see also* 18 U.S.C. §§ 1839(5)(B) (substantively identical) (both block quoted at Dkt. 2550 at 2–3). Waymo does not appear to dispute that subdivisions (b)(2)(A) and (b)(2)(B)(i)—which line up with its Complaint ¶ 84—can be summarized as "acquisition, then use or disclosure." Indeed, under (b)(2)(B)(i), the definition of "improper means" includes inducing a breach of a duty to maintain secrecy. Cal. Civ. Code § 3426.1(a); 18 U.S.C. § 1839(6) (defining "improper means").

Instead, Waymo seeks to inject two brand-new "improper-acquisition-free" theories of liability, corresponding to subdivisions (b)(2)(B)(ii) and (iii) (for the DTSA, 18 U.S.C. §§ 1839(5)(B)(ii)(II) and (III)). Dkt. 2050-1 at 2. It claims, citing no authority, that it is a "recurring fact pattern" that "a subsequent employer commits misappropriation by using or disclosing trade secrets from an employee who first properly acquired knowledge of the trade secrets at his or her prior employment subject to a duty to maintain their secrecy." Dkt. 2550 at 2. First, this is not a correct statement of the law. Waymo omits that the new employer must have "kn[own] or have reason to know" of the former employee's breach of his duties. Cal. Civ. Code § 3426.1(b)(2)(B); 18 U.S.C. § 1839(5)(B)(ii).

Moreover, this hypothetical is simply not the theory Waymo chose to plead and pursue.

The theories of liability in (b)(2)(B)(ii) and (iii) depend on a "duty" to maintain the alleged trade secret's secrecy or limit its use, and Uber's knowledge of that duty. But Waymo made the strategic decision to "forsw[ear] reliance on its 2009 and 2012 agreements with Levandowski to prove up its claims." *See* Dkt. 425 at 4. In denying Uber's motion to compel arbitration, the Court noted equitable estoppel prevents "seeking to hold a nonsignatory liable via duties imposed by an agreement, while resisting arbitration called for by the same agreement on the ground that the defendant is a nonsignatory." *Id.* at 3:26–28. Yet that is precisely what Waymo would do here: it would seek to prove its employees breached their employment agreements and to hold Uber liable for those breaches, while avoiding Waymo's broad and clear agreement to arbitrate such claims.

The Court has already implicitly rejected Waymo's arguments twice. *See* Dkt. 2251, Dkt. 2449. The Court should do so again, and hold Waymo to the case it pled.

**II.     The jury should not be instructed on an improper-acquisition-only claim.**

Waymo argues that the jury should be instructed that it may find Uber liable for misappropriation if Uber improperly acquired any of the alleged trade secrets, even if Uber never used or disclosed them. But the Court has already held that Waymo has no damages claim based on acquisition. Dkt. 2495 at 6. Thus, Waymo has no right to a jury trial on acquisition:

> As noted, the Supreme Court has told us four times that the nature of the remedy is more important for Seventh Amendment purposes than the nature of the right. Where, as here, the two conflict, we conclude that the equitable nature of the relief is dispositive, unless Congress lacks the power to so limit the remedies available for violations of section 510.

*Spinelli v. Gaughan*, 12 F.3d 853, 857 (9th Cir. 1993) (emphasis added). The CACI jury instructions themselves state that "the jury should be instructed only on matters relevant to damage claims." CACI 4405 Directions for Use. Moreover, requiring the jury to determine acquisition alone would needlessly complicate matters by requiring resolution of thorny legal and factual questions regarding agency and imputation. It also would not save the Court any time, as any injunctive relief would require further judicial findings.

**III.     The Penultimate Jury Instructions ("PJIs") do not "conflate" liability and damages.**

Waymo argues again that damages should not be an element of its claim—but that is

contrary to the model instructions, as Uber previously demonstrated. Dkt. 2398. Moreover, PJI III clearly explains Waymo's damages theory and provides context for the limitation on acquisition damages so that the jury does not second-guess or overlook it. And, Waymo's "misappropriation claim for damages" is the only issue for the jury to decide. Injunctive relief is for the Court to decide—Waymo has no right to try a non-damages case to the jury. Finally, PJI IV properly and clearly sets forth the elements for Waymo "[t]o succeed on its claim for unjust enrichment," which is the only issue that should be put before the jury to decide.

**IV.   Waymo's revisions to PJI XVI are improper.**

Waymo seeks to transform PJI XVI from a targeted clarification of a specific "corner case" of the meaning of "use" in trade secrets law, into a lopsided laundry list of all the ways a defendant might "use" a trade secret. Waymo's proposed revisions—drawn from misstatements of non-binding decisions and untethered to the theories that Waymo pleaded—are unwarranted.

First, there are limits to the definition of "use." For example, "slight" contributions may not count if the resulting product or process can be said to derive from other sources of information or independent creation. Dkt. 2549 at 4–5. Likewise, there is no "use" if there is no reduction of the value of the trade secret to its owner or unfair trade advantage to the defendant. *Id.* Waymo's modifications to PJI XVI, however, suggest a variety of scenarios untethered to the facts or allegations in this case. By including multiple things that "use" ***could be***, but omitting the things that "use" ***is not***, Waymo gives an incomplete and misleading picture of the law.

Moreover, by instructing the jury that certain activities—like internal experimentation— "count" as use under the law, Waymo proposes to take a fact question away from the jury. This is error on its own, and would be compounded by the instruction's failure to tell the jury what factors might lead such internal experimentation not to count as improper use. For example, if a party never obtained any sort of "unfair trade advantage," such experimentation may not count as "use." *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010) (block quoted at Dkt. 2549 at 5); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005), *as amended*, 420 F. Supp. 2d 1070 (N.D. Cal. 2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007) (block quoted at Dkt. 2549 at 8).

1    Waymo's proposed additions also misstate the law. For example, Waymo asks to instruct

2    the jury that "Actual use does not require using all features, characteristics or elements of the

3    trade secret." Dkt. 2550-1 at 2. But in the ***very block quote that Waymo identifies*** as supposed

4    support for this proposition, the court said that "taking a bundle of trade secrets and not using the

5    entire bundle" could still count as "use"—not that use of only ***part*** of a ***single*** alleged trade secret

6    could incur liability. *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2015 WL 13357646, at *5

7    (C.D. Cal. May 6, 2015). Tellingly, Waymo also urges the Court to instruct the jury that a trade

8    secret can be combined from public elements. Dkt. 2550-1 at 2 (proposed PJI X). If Waymo's

9    modifications are both adopted, the jury could hold Uber liable for using information concededly

10   and wholly in the public domain. (*See also* Section V, *infra*).

11   As another example, Waymo's proposed addition that use can mean "using a competitor's

12   designs to accelerate its own research and development process" unduly emphasizes Waymo's

13   preferred theories. *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions

14   which place undue emphasis on matters favorable to either side constitute reversible error.")

15   (quotations omitted). And the non-binding *dicta* that Waymo cites is not about research and

16   development at all; it concerns alleged misappropriation of trade secrets through incorporation

17   into software. *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1028–29

18   (E.D. Cal. 2011).

19   Waymo's proposed additions are prejudicial in other ways. For example, Waymo would

20   have this Court instruct the jury regarding use of a "competitor's design," and even worse, a

21   "stolen design," rather than a competitor's ***trade secret***. This invites error by asking the jury to

22   find liability based on use of non-trade-secret aspects of a competitor's design.

23   **V.    Waymo's proposed revisions to PJI X are confusing and improper advocacy.**

24   Waymo proposes unnecessary and confusing additions to PJI X. This instruction concerns

25   the secrecy with which a company protects its information—not what the information ***is***. There is

26   no need to state that proprietary compilations of public data can sometimes be trade secrets, in

27   this or any other instruction. Moreover, this instruction is unnecessary on the facts of this case.

28   Waymo has never argued that its alleged trade secrets are protectable because they are compiled

from public sources. The case Waymo relies upon, *United States v. Nosal*, demonstrates just how far afield this action is from one where a "combinations" instruction would be proper. There, the court considered the misappropriation of a vast database not only of publicly available information about over a million executives, but also data that was enriched with proprietary algorithms enabling the owner, an executive search firm, to promptly identify the best candidates. 844 F.3d 1024 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 314 (2017). The very next paragraph after Waymo's quotation highlights the uniqueness of the database at issue:

> The source lists in question are classic examples of a trade secret that derives from an amalgam of public and proprietary source data. To be sure, some of the data came from public sources and other data came from internal, confidential sources. But cumulatively, the Searcher database contained a massive confidential compilation of data, the product of years of effort and expense. Each source list was the result of a query run through a propriety algorithm that generates a custom subset of possible candidates, culled from a database of over one million executives. The source lists were not unwashed, public-domain lists of all financial executives in the United States, nor otherwise related to a search that could be readily completed using public sources. Had the query been "who is the CFO of General Motors" or "who are all of the CFOs in a particular industry," our analysis might be different. Instead, the nature of the trade secret and its value stemmed from the unique integration, compilation, cultivation, and sorting of, and the aggressive protections applied to, the Searcher database.

*Id.* at 1042–43 (emphasis added). *Nosal* thus offers no support for Waymo's proposed addition to PJI X. And Waymo's proposed language omits this important dimension of the doctrine, as it fails to say anything about the requirement that it must be so difficult to reconstruct a "combination" trade secret that the trade secret is not "readily ascertainable" despite being a combination of public information; nor does it recognize that *Nosal* involved proprietary data and algorithms.

The prejudice to Uber would be especially severe if the Court also accepted Waymo's proposal to add to PJI XVI an instruction that misappropriation does not require using all features of a trade secret, as described above.

## VI.   Waymo's requested modifications to PJI XX are unnecessary and improper.

Waymo asks the Court to delete the instruction to the jury in PJI XX that they should subtract Uber's "reasonable expenses, including the dollar value of its own independent research and development" from any unjust enrichment amount. Dkt. 2550-1 at 4. Waymo offers no legal

1  support for the proposition that this clear and well-supported proposed instruction should be

2  changed. Instead, Waymo is asking the court to decide, as a matter of law and before the evidence

3  is in, that there is nothing to deduct. Waymo is wrong as a factual matter. The burden is on

4  Waymo to prove that any unjust enrichment was due to misappropriation of the trade secrets, and

5  among other issues, Waymo's argument refers to expenses related to the *entire company*.

6  Dkt. 2550 at 9–10. In any event, the Court should not take this question away from the jury before

7  both sides have a chance to put in evidence.

8  **VII.    A biased adverse inference instruction is improper and premature.**

9          The Court has already rejected Waymo's argument that the Court should prohibit the jury

10  from drawing inferences that are unfavorable to Waymo—in setting its ground rules for adverse

11  inferences the Court noted that "both sides" intend to ask the jury to draw inferences. Dkt. 1535.

12          Moreover, Waymo's proposed revisions are premature. It would be improper to decide the

13  scope of possible inferences—and against which side(s) the jury is permitted to draw them—

14  before the Court performs its gatekeeping function to determine which questions are supported by

15  independent corroborating evidence. *Id.* And if the Court does allow Levandowski to be called to

16  testify, it is the jury—not Waymo or its lawyers—who will decide whether to draw inferences

17  against one side or the other. To instruct that the jury must apply that law in favor of Waymo and

18  against Uber would prejudice Uber and erroneously take a question of fact away from the jury.

19  **VIII.   The Court should reject Waymo's efforts to confuse the jury by instructing that the**
20  **separate proceeding Waymo brought should not be accounted for in computing**
    **damages for trade secret misappropriation in this case.**

21          Waymo's proposed revisions to PJI XXVII are unnecessary, confusing and prejudicial. As

22  we said at the pretrial conference, Uber has no intention to argue that the jury "shouldn't do

23  anything because they [Waymo] have already sued Levandowski." 1/30/2017 PTC Hr'g Tr.

24  109:9–17. Nor does the Court's proposed PJI XXVII suggest as much; instead, it correctly

25  instructs the jury that in order to hold Uber or Ottomotto liable, Waymo most "prove the elements

26  of proof set forth in these instructions." Dkt. 2449 at 11. Waymo's proposed addition is not

27  tailored to this issue, however. Waymo instead would tell the jury that "You should not consider

28  any *recovery* that Waymo might obtain from Levandowski in the other proceeding, as this will

not compensate Waymo for its *losses* arising from any trade secret misappropriation." Dkt. 2550-1 at 5 (emphasis added). But nothing about the Court's proposed instruction suggests that recoveries Waymo might obtain from Levandowski should be applied as an offset by the jury. What is worse, Waymo's reference to its own "losses" would confuse the jury by injecting an irrelevant issue into a case where Waymo, by its own admission, has no claim for recovery of its losses. Dkt. 2397 at 4 ("Waymo does not seek damages in the form of actual losses").

**IX.    A reasonable royalty is an issue for the Court, not the jury, and Waymo has chosen to pursue a reasonable royalty theory that is predicated on first showing unjust enrichment.**

This issue is separately addressed in the parties' Joint Submission that was ordered by the Court on February 2. *See* Dkt. 2611. In addition, Uber notes that the only reasonable royalty theory Waymo has ever disclosed is based on a percentage increase over its unjust enrichment damages, so it is not clear how an unjust enrichment award could be overturned while the royalty award based on that number stands. There is a far greater risk of prejudice by allowing Waymo to infect the jury's unjust enrichment computation with reasonable royalty arguments.

**X.    The "Alleged Trade Secrets" should be described as "Alleged", not as "Claimed."**

The Court has already referred to the Alleged Trade Secrets as "alleged," and therefore Uber believes this objection is moot. In any event, it is meritless. Waymo has made allegations; now it has the burden to prove them. In claiming that the jury might be confused by this common word, Waymo quotes the *third and last* definition given for "alleged" in Merriam-Webster's. The *first two* definitions given for "alleged" demonstrate that "alleged" is the right word:

> 1 : accused but not proven or convicted • an *alleged* burglar;
> 2 : asserted to be true or to exist • an *alleged* miracle • an *alleged* conspiracy
> 3 : questionably true or of a specified kind : supposed, so-called • bought an alleged *antique* vase

Definition of Alleged, Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/alleged. Moreover, Waymo's proposed substitution—"claimed"—is prejudicial. "Claimed" fails to acknowledge that the alleged trade secrets might not be trade secrets at all, and also insinuates ownership, as in "patent claims" or "land claims." This suggests that Waymo has already satisfied one of the elements of its burden of proof—that it owned an

enforceable trade secret—when it is the jury who must make that determination. *See* PJI V.

**XI.     The last sentence of PJI XVII is accurate and will assist the jury.**

The sentence of PJI XVII that Waymo complains about is straight out of CACI 430. It is neither redundant nor confusing. Rather, it is a straightforward summation of "but-for" causation. The CACI Directions for Use indicate that this sentence should not be used in a "case involving concurrent independent causes," where but-for causation is inapplicable. This is not such a case.

Finally, Waymo's contention that the last sentence of PJI XVII incorrectly injects a requirement of showing "harm" into the elements of Waymo's case is just plain wrong. Waymo misquoted the Court's instruction in PJI XVII, which does not mention the word "harm." Rather, the Court's PJI XXVII states that "Conduct is not a substantial factor in causing unjust enrichment if the same benefit would have occurred without that conduct." Waymo's brief substitutes "harm" for "unjust enrichment," and "same harm" for "same benefit," and then argues against the misquoted language. No change to the instruction is needed.

Dated: February 6, 2018                         MORRISON & FOERSTER LLP
                                                BOIES SCHILLER FLEXNER LLP
                                                SUSMAN GODFREY LLP


                                                By:  */s/ Karen L. Dunn*_____
                                                      KAREN L. DUNN

                                                Attorneys for Defendants
                                                UBER TECHNOLOGIES, INC. and
                                                OTTOMOTTO LLC

1

## ATTESTATION OF E-FILED SIGNATURE

2          I, Arturo J. González, am the ECF User whose ID and password are being used to file this

3    Response. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Karen L. Dunn has

4    concurred in this filing.

5
                                                        */s/ Arturo J. González*
6    Dated:  February 6, 2018                           ARTURO J. GONZÁLEZ

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28