1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   David A. Perlson (Bar No. 209502)
3  davidperlson@quinnemanuel.com
   Melissa Baily (Bar No. 237649)
4  melissabaily@quinnemanuel.com
   John Neukom (Bar No. 275887)
5  johnneukom@quinnemanuel.com
   Jordan Jaffe (Bar No. 254886)
6  jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for WAYMO LLC

10                        UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12  | WAYMO LLC, | CASE NO. 3:17-cv-00939-WHA |
    |---|---|
13  | Plaintiff, | **PLAINTIFF WAYMO LLC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL ITS SUBMISSION IN RESPONSE TO DEFENDANTS' BRIEF ON THE PENULTIMATE JURY INSTRUCTIONS (DKT. 2549)** |
14  | vs. | |
15  | UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
17  | Defendants. | |

Pursuant to Civil L.R. 7-11 and 79-5, Plaintiff Waymo LLC ("Waymo") respectfully requests to file under seal information in its February 6, 2018 Submission in Response to Defendants' Brief on the Penultimate Jury Instructions ("Waymo's Submission").  Specifically, Waymo requests an order granting leave to file under seal the portions of the documents as listed below:

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Waymo's Submission | Portions highlighted in green | Waymo |
| Exhibit 1 to Waymo's Submission | Entire document | Waymo |

## I. LEGAL STANDARD

Civil Local Rule 79-5 requires that a party seeking sealing "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law" (*i.e.*, is "sealable").  Civil L.R. 79-5(b).  The sealing request must also "be narrowly tailored to seek sealing only of sealable material."  *Id.*

## II. THE COURT SHOULD SEAL WAYMO'S CONFIDENTIAL INFORMATION

The Court should seal the portions of Waymo's Submission (portions highlighted in green) identified by Waymo in the table above.  Waymo seeks to file this information under seal because it discloses Waymo's trade secrets.  *See* Cooper Dec., ¶ 3.  Courts have determined that trade secret information merits sealing.  *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, No. 14–cv–03078–JSC, 2015 WL 3993147, at *1 (N.D. Cal. June 30, 2015) (quoting *Kamakana*, 447 F.3d at 1179); *see also Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 211115, at *1, *3 (N.D. Cal. Jan. 17, 2013) (granting request to seal document that "consists entirely of descriptions of Brocade's trade secrets.").  Waymo seeks to seal trade secret information that fit squarely within these categories.  Cooper Dec. ¶ 3.  Waymo maintains this information as a trade secret (*see* Dkt. 25-31) and ensures the information remains secret with strict secrecy and security protocols (*see* Dkt. 25-47; Dkt. 25-49.).  *Id.*  Waymo has narrowly tailored its requests to only information meriting sealing.  *Id.*  In fact, both *Music Grp.* and *Brocade* found the confidential information at issue in those cases met the heightened "compelling reasons" standard for sealing.  *Music Grp.*, 2015 WL 3993147, at *1; *Brocade*, 2013 WL 211115, at *1, *3.  The information that

1  Waymo seeks to seal, therefore, also meets this heightened standard.  The disclosure of Waymo's
2  trade secret information would harm Waymo.  Cooper Dec. ¶ 3.  Moreover, the scope of information
3  that Waymo is seeking to seal is consistent with other administrative motions to seal that have already
4  been granted by the Court in this case.  (*See* Dkt. 681.)  Thus, the Court should grant Waymo's
5  administrative motion to seal.

**III.  CONCLUSION**

In compliance with Civil Local Rule 79-5(d), redacted and unredacted versions of the above listed documents accompany this Administrative Motion.  For the foregoing reasons, Waymo respectfully requests that the Court grant Waymo's Administrative Motion.

DATED:  February 6, 2018             QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles Verhoeven*
   Charles Verhoeven
   Attorneys for WAYMO LLC

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**DECLARATION OF LINDSAY COOPER IN SUPPORT OF PLAINTIFF WAYMO LLC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL ITS SUBMISSION IN RESPONSE TO DEFENDANTS' BRIEF ON THE PENULTIMATE JURY INSTRUCTIONS (DKT. 2549)** |

I, Lindsay Cooper, declare as follows:

1. I am an attorney licensed to practice in the State of California and am admitted to practice before this Court. I am an associate at the law firm Quinn Emanuel Urquhart & Sullivan, LLP, counsel for the Plaintiff Waymo LLC ("Waymo"). I have personal knowledge of the matters set forth in this Declaration, and if called as a witness I would testify competently to those matters.

2. I make this declaration in support of Waymo's Administrative Motion to File Under Seal information in its February 6, 2018 Submission in Response to Defendants' Brief on the Penultimate Jury Instructions (the "Administrative Motion"). The Administrative Motion seeks an order sealing the following materials:

| Document | Portions to Be Filed Under Seal | Designating Party |
|---|---|---|
| Waymo's Submission | Highlighted in green | Waymo |
| Exhibit 1 to Waymo's Submission | Entire document | Waymo |

3. Waymo's Submission and Exhibit 1 contain or refer to trade secret information, which Waymo seeks to seal. Portions of Waymo's Submission and Exhibit 1 contain, reference, and/or describe Waymo's asserted trade secret. Specifically, the highlighted portions describe certain technical specifications of Waymo's trade secrets. I understand that these trade secrets are maintained as secret by Waymo (Dkt. 25-47) and are valuable as trade secrets to Waymo's business (Dkt. 25-31). The public disclosure of this information would give Waymo's competitors access to in-depth descriptions—and analysis—of the functionality of Waymo's autonomous vehicle system. If such information were made public, I understand that Waymo's competitive standing would be significantly harmed. Waymo's request to seal is narrowly tailored to only the confidential information.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in San Francisco, California, on February 6, 2018.

By */s/ Lindsay Cooper*
Lindsay Cooper
Attorneys for WAYMO LLC

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Lindsay Cooper.

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>              Plaintiff,<br><br>       vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>              Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF WAYMO LLC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL ITS SUBMISSION IN RESPONSE TO DEFENDANTS' BRIEF ON THE PENULTIMATE JURY INSTRUCTIONS (DKT. 2549)** |

1    Plaintiff Waymo LLC ("Waymo") has filed an Administrative Motion to File Under Seal
2 ("Waymo's Administrative Motion") certain information in its Response to Defendants' Brief on
3 the Penultimate Jury Instructions ("Waymo's Submission").
4    Having considered Waymo's Administrative Motion, and good cause to seal having been
5 shown, the Court **GRANTS** Waymo's Administrative Motion and **ORDERS** sealed the
6 documents listed below:

| Document | Portions to Be Filed Under Seal |
|---|---|
| Waymo's Submission | Highlighted in green |
| Exhibit 1 to Waymo's Submission | Entire document |

**IT IS SO ORDERED.**

Dated: _____, 2018

_____
HON. WILLIAM ALSUP
United States District Court

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC,<br><br>Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S SUBMISSION IN RESPONSE TO DEFENDANTS' BRIEF ON THE PENULTIMATE JURY INSTRUCTIONS (DKT. 2549)**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: February 5, 2018<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

Waymo submits the following brief in response to Defendants' Response to the Court's Penultimate Jury Instructions on Trade Secret Misappropriation (Dkt. 2549) ("Resp.").

## I. PENJI 3 – DISCLOSURE-BASED MISAPPROPRIATION SHOULD REMAIN.

As the Court has already ruled that Waymo properly disclosed Uber's misappropriation by disclosure at least with respect to Gorilla Circuits, Dkt. 2610 at 125:14-15 ("Gorilla Circuits, I think you are on notice of that from day one in this case."), 118:14-15 (similar), 119:23-24 (similar), Uber's request to strike misappropriation by disclosure should be denied. Waymo will address the timing of its disclosures regarding Uber's misappropriation by disclosure to other vendors in the parties' forthcoming Court-ordered joint submission. *Id.* at 125:8-10; *see also* Dkt. 2539 at 8-10.

## II. PENJI 7 – MEMORIZATION, PHOTOCOPYING, OR DOWNLOADING TO TAKE THEIR PRIOR EMPLOYER'S TRADE SECRETS SHOULD REMAIN.

Uber's objections to the sentence "[n]or may they memorize or photocopy or download to take their prior employer's trade secrets with them" are meritless. Resp. at 1-2. *First*, this sentence is necessary as the PenJIs nowhere else articulate the vital concept that a trade secret may be acquired and retained in memory. *See* Dkts. 2171 at 4-5; 2196 at 4; 2278 at 5. *Second*, contrary to Uber's hyperbole, this sentence does not "supplant" the Court's extensive instructions on improper acquisition, *see* PenJIs 13 & 14, but provides a useful example of an employee improperly acquiring a prior employer's trade secrets in the otherwise confusing context of negative trade secrets. As PenJI 7 recognizes, certain "practical lessons" may supplement an engineer's skills, talents and abilities, and the engineer will "naturally" retain these when changing jobs. Dkt. 2449 at 4. This sentence helps explain, however, that on-the-job assimilation of skills differs greatly from improper acquisition in the form of seeking out particularized information to "memorize or photocopy or download ***to take their prior employer's trade secrets with them***." PenJI 7 (emphasis added). Uber cannot deny that intent is relevant to improper acquisition having repeatedly claimed—incorrectly—that intent is a ***prerequisite*** to it, *see, e.g.*, Dkt. 2076 at 4-5 ("acquisition requires a showing that a party engaged in conduct that was intended to secure dominion over a thing . . ."), and also having previously ***not*** sought to eliminate the above sentence, but instead to insert "intentionally" into it. *See* Dkt. 2279 at 1. *Third*, the jury should indeed be given practical guidance on improper acquisition, as (a) it is an element of at least *some* (but not all) types of

use and disclosure claims, *see* PenJI 4.2; Dkt 2550 at 1-4, and (b) Waymo has preserved the ability to seek an injunction based on Uber's improper acquisition. *See* Dkt. 2495 at 1 ("no ***recovery*** theory will go to the jury ***for damages*** based solely on misappropriation by acquisition only"); *see generally id.* (nowhere mentioning "liability"); Dkt. 2550 at 4. *Finally*, there is no need to insert use or disclosure into this sentence given the PenJIs' separate explanation of these concepts, *compare* PenJIs 13-14 *with* 15-16, and their repeated emphasis that acquisition alone is insufficient for damages, *see* PenJIs 3, 18.

### III.  PENJI 8 – PENJI 8 ACCURATELY STATES NEGATIVE TRADE SECRET LAW.

Uber argues that PenJI 8 should not be given because: (i) it is based on TS 111; (ii) TS 111 is broad; (iii) the "negative trade secret" concept in TS 111 is narrow, not broad; and (iv) a broad definition would impinge on employee mobility. Resp. at 2-3. In short, Uber does not dispute that PenJI 8 accurately states the law, but instead argues that the specific characteristics of TS 111 should disqualify it as a trade secret and moot the instruction. Uber's argument is either an improper and untimely motion for summary judgment or a premature Rule 50 motion.[1] Because Uber does not criticize ***any*** aspect of the Court's instruction and whether TS 111 qualifies as a trade secret is now a question for the jury, *see* PenJI 4.1, 5-12, the Court should disregard Uber's objection.

### IV.  PENJI 16 – STUDYING AND CONSULTING A TRADE SECRET IS ACTUAL USE.

Uber proposes to narrow the definition of use by eliminating "studying and consulting," and inserting a requirement of "actual exploitation of the trade secret information resulting in damages." Resp. at 4. Uber claims that studying or consulting a trade secret—even while designing a new employer's product—does not constitute use unless the new employer's design "actually make[s] some use of the trade secret information studied ***for its own advantage***." *Id.* Uber is wrong.

*First*, Uber's real criticism appears to be that studying or consulting cannot cause damages. Resp. at 4-6. But it would be unnecessary, duplicative and confusing to import elements three and four into the definition of use, as the jury will already receive lengthy instruction on these separate

---

[1] Uber's characterization is also false. TS 111 does ***not*** claim as a trade secret "broad practical lessons its engineers learned while working on a failed project," ███████████████ ███████████████. *See* Ex. 1 [Hesselink Report], at 42-43.

requirements. PenJIs 4.3-.4, 17, 20. This is particularly true because Waymo is seeking an injunction, and the jury must decide liability for misappropriation apart from any damages.

*Second*, Uber's citations do not support its argument. Uber cites the Restatement (Third) of Unfair Competition, § 40 cmt. c (Am. Law Inst. 1995), but that source states: "[t]here are **no** technical limitations on the nature of the conduct that constitutes 'use' of a trade secret," and "[a]s a general matter, any exploitation of the trade secret that is ***likely to*** result in injury to the trade secret owner or enrichment to the defendant is a 'use' under this Section." Resp. at 4. It plainly does not say that use ***requires*** actual injury. *Id.* Uber's citation to *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130-31 (9th Cir. 2010) is also unavailing. In *JustMed*, the Ninth Circuit found that possession alone was insufficient for use—no studying or consulting was involved—and retroactively mixed the elements of the claim by basing its finding of no "use" on a lack of damages. *Id.* Similarly, the passage Uber cites from *Silvaco Data Sys. v. Intel Corp.*, describes what is ***sufficient for***, not ***necessary to***, "use"—indeed, it is uncontroversial that "[o]ne ***clearly*** engages in the 'use' of a secret, in the ordinary sense, when one directly exploits it for his own advantage," *see* Resp. at 5—and does so in the context of finding that "using a ***product*** does not constitute a 'use' of trade secrets employed in its manufacture." 184 Cal. App. 4th 210, 224 (2010). Uber's proposed amendments to PenJI 16 should be rejected.

## V.     PENJI 20 – UBER'S PROPOSAL ADDS NOTHING USEFUL RE EXPENSES.

Uber's proposed addition of another sentence in PenJI 20 stating that Uber's own efforts should be excluded from damages is unnecessary, duplicative, and confusing. As shown previously, any instruction to deduct expenses risks double counting because "Uber's own reasonable expenses have ***already*** been factored into any net ***benefit***," as Waymo will show at trial. *See* Dkt. 2550 at 9-10. Uber's proposal only compounds the prejudice of the previous sentence in PenJI 20, without providing any additional clarity on the calculation at issue, as "legitimate efforts, creativity and hard work" add nothing to "reasonable expenses." Moreover, Uber's proposed language is drawn from an unreported district court decision, which has never been cited for this language and extracts that language from a non-trade secret case on the equitable relief of constructive trusts. Resp. at 7. Uber's proposal should be rejected.

## VI.    PENJI 21 – EXEMPLARY DAMAGES MUST BE DECIDED BY THE JURY.

The Seventh Amendment requires that the jury decide the amount of exemplary damages. *Cf.*

-3-

Dkt. 2077 at 4-9.  The Tenth Circuit's decision in *Jones v. United Parcel Service* is directly on point. 674 F.3d 1187 (10th Cir. 2012), *cert. denied* 568 U.S. 883 (2012).  In that case, the district court had sent the amount of punitive damages to the jury, despite that Kansas procedure requires the judge to determine that amount.  *Id.* at 1202; *see also Jones v. United Parcel Serv.*, 658 F. Supp. 2d 1308, 1316 (D. Kan. 2009).  After an in-depth review of Supreme Court and historical precedent, 674 F.3d at 1202-1205, the Tenth Circuit affirmed the district court's decision, finding a Seventh Amendment right to a jury determination because the state law at issue was procedural, not substantive:

> The Supreme Court has repeatedly affirmed the historical nature of the Seventh Amendment right to a trial by jury in federal cases involving punitive damages. Its decisions, taken together, indicate that this right includes the right to a jury determination regarding the amount of punitive damages. *See Capital Solutions,* 695 F.Supp.2d at 1152 (holding that "the Seventh Amendment does require that the jury also be allowed to determine the amount of any punitive damages awarded"). Rule 38, by preserving "the right to a trial by jury as declared by the Seventh Amendment," answers the question in dispute and requires that the jury determine the amount of the punitive damage award in federal court, despite conflicting state law. Thus, Rule 38 satisfies the first part of the *Shady Grove* test.

*Id.* at 1205–06 (finding requirement did not exceed statutory authorization or Congress' rulemaking power, the second prong of the *Shady Grove* test).  Other courts, including within this Circuit, have reached similar conclusions.  *See, e.g.*, *Grisham v. Philip Morris*, 670 F. Supp. 2d 1014, 1036 (C.D. Cal. 2009) ("Courts uniformly hold that a jury must determine the amount of punitive damages awarded."); *F.C. Bloxom v. Fireman's Fund*, 2012 WL 5992286, at *5-6 (W.D. Wash. Nov. 30, 2012) (the Seventh Amendment and FRCP 38 require that the jury determine "enhanced damages" under Washington State's Insurance Fair Conduct Act); *Def. Indus. v. Nw. Mut. Life*, 938 F.2d 502, 507 (4th Cir. 1991) ("An assessment by a jury of the amount of punitive damages is an inherent and fundamental element of the common-law right to trial by jury.  Therefore, we hold that the seventh [*sic*] amendment guarantees the right to a jury determination of the amount of punitive damages….").[2]

Similar logic applies here.  The California rule assigning exemplary damages to the jury is procedural, not substantive.  *See* Cal. Civ. Code § 3426.3(c).  Uber's inapposite authorities nowhere address the Seventh Amendment and instead rely on largely undisputed language in California law.

---

[2] "The Ninth Circuit has not yet addressed th[is] question." 9 Wright & Miller, *Fed Prac. & Proc.* § 2303 (3d ed. Apr. 2017 update).

Resp. at 7-9. And there is no reason why the Seventh Amendment would not require a jury trial on exemplary damages under DTSA as well as CUTSA. *See* 18 U.S.C. § 1836(b)(3)(C).

### VII. PENJI 23 – IMPUTATION FROM STROZ AND MOFO IS RELEVANT.

Uber's objections to PenJI 23 are groundless. Imputation of the knowledge or actions of an agent to its principal is foundational agency law. *See* Dkts. 1729 at 5-7, 2130 at 2-4, and 2232 at 4-6. And contrary to Uber's assertions, imputation *is* relevant to Waymo's claims: Stroz and MoFo, acting as Uber's agents, acquired both Waymo trade secrets and information about how Levandowski and other Uber employees came into possession of those secrets. If such knowledge or actions are imputed to Uber, that could help demonstrate (or constitute) misappropriation.[3]

Using "information" rather than "trade secrets" in PenJI 23 is correct for the same reason. Part of Waymo's burden or proof is demonstrating *improper* acquisition: that is, acquisition "by a person who knows or has reason to know that the trade secret was acquired by improper means." Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1839(5). Given this burden, relevant "information" appropriately includes not just trade secrets, but knowledge about circumstances regarding their acquisition, such as acquisition in violation of an obligation to keep them secret.

Uber's proposed alternative instruction misstates the law and should be rejected. Uber proposes, in part: "To prove misappropriation, Waymo must prove that Uber or Ottomotto improperly used or disclosed the Alleged Trade Secrets." Resp. at 10. As the Court has ruled, Waymo must prove use or disclosure to recover *damages* for misappropriation of trade secrets. But both CUTSA and DTSA define misappropriation to include acquisition *or* disclosure *or* use. Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1839(5). If the jury finds only acquisition, Uber still misappropriated Waymo's trade secrets, and the Court may still base an injunction on that misappropriation.

In addition, Uber's claim that this instruction could be misconstrued by the jury to support a

---

[3] Despite Uber's attempt to avoid imputation by claiming that Stroz and MoFo were obligated not to disclose the *substance* of trade secrets to Uber, Dkt. 2076 at 5, information concerning (i) how Levandowski and others came into possession of information and (ii) whether Levandowski and others owed a duty of secrecy to Waymo may still be imputed to Uber, especially since that information was central to what Stroz and MoFo were hired to investigate. This imputation of knowledge, while not itself comprising misappropriation, can help show mental states or elements of misappropriation. *See, e.g.*, Cal. Civ. Code § 3426.1(b)(2)(B)(ii)-(iii) & 18 U.S.C. § 1839(5)(b)(B)(ii)(I)-(II); Dkt. 2550 at 1-4.

finding of damages on the basis of acquisition alone is misplaced. A number of PenJIs describe exactly the showing needed for damages—namely, misappropriation by use or disclosure—and nothing in this instruction suggests that acquisition alone will be sufficient to award damages.

### VIII. PENJI 25 – STROZ AND MOFO DAMAGES CAN BE STRUCK.

Waymo does not object to eliminating this instruction. For the avoidance of doubt, however, Waymo intends to show that Uber "wrongfully acquired the trade secrets at issue when its agents MoFo and Stroz took possession of them," justifying an injunction, Dkt. 2539 at 8, and rejects Uber's hair-splitting, last-minute proposal to "not oppose an injunction." Resp. at 11. Uber's proposal is unacceptable, as it (a) would require only ***MoFo and Stroz, but not Uber,*** to return or destroy materials containing Waymo trade secrets (unlike if MoFo or Stroz's acquisition were imputed to Uber), and (b) would condition any agreement on preservation obligations, notice, and an opportunity for all affected parties to object. Uber's offer would only invite further litigation, and Uber has forfeited any claim to good faith (or to avoid a public finding that it misappropriated Waymo's trade secrets) by its repeated misconduct in this case, including failing to return this material months ago.

### IX. PENJI 26 – THE JURY SHOULD BE INSTRUCTED THAT IT MAY DRAW ADVERSE INFERENCES AGAINST DEFENDANTS, BUT NOT WAYMO.

It is uncontroversial that juries may draw adverse inferences against an employer or former employer from a key employee's invocation of the Fifth Amendment regarding his behavior on the job and/or to benefit the employer. Every Circuit Court that has considered this issue has adopted the Second Circuit's *LiButti* analysis for when a court may permit a jury to draw an adverse inference. *See* Dkt. 819 at 4-5 (collecting cases from the 2nd, 3rd, 5th, 8th, and 11th Circuits). Uber's conduct further supports an adverse inference, as it continued to employ Levandowski as head of its self-driving car unit for weeks after he told Uber of his intention to take the Fifth. Uber's last-ditch attempts to soften or avoid this adverse inference must be rejected.

*First*, the Court should refuse Uber's requests to (i) remove that the jury may find Levandowski's answers "would incriminate him" and (ii) insert that he is not necessarily guilty. The Fifth Amendment provides a right against ***self-incrimination***, and it is both axiomatic and well-known to the public that a person taking the Fifth does so to avoid giving answers ***that could incriminate him***.

This is the whole point of why an adverse inference may be drawn, and as Levandowski is not a party to this civil proceeding, he needs no protection—sanitizing this language and inserting that he is not necessarily guilty is entirely unnecessary. Uber's changes would also be very confusing because PenJI 26 concerns the comparatively rare circumstance when an adverse inference *may* be drawn; the Court should not include in the same instruction *permitting* an adverse inference confusing references to the presumption of innocence in a non-existent and irrelevant criminal proceeding. The authorities Uber cites are not to the contrary—these criminal cases affirm the undisputed notion that a person who invokes the Fifth is not necessarily guilty, without addressing civil adverse inferences at all. *See* Resp. at 11-12.

*Second*, the Court should refuse to add "trustworthy and fair" to the instruction. Resp. at 13. As an initial matter, *LiButti v. U.S.*, which Uber cites for this additional language, describes not what the *jury* must find, but what a *judge* must find before permitting the jury to consider an adverse inference. 107 F.3d 110, 124 (2d Cir. 1997). Thus, *LiButti* goes to the admissibility of the evidence, not its weight. *See* Dkt. 818-4; *cf.* FRE 403. Moreover, requiring that any adverse inference be "fair" is improperly vague and could mislead the jury to conclude that, for reasons of misplaced sympathy, it would be subjectively "unfair" to draw an adverse inference against Uber even if the evidence supported that inference. In addition, *LiButti* does not reference "fairness" and does not support adding such language. Resp. at 13 (quoting *LiButti*, 107 F.3d at 124). Finally, contrary to Uber's claims, its proposed addition would not "give more guidance to the jury," Resp. at 13, as these empty words add no clarity whatsoever.

*Third*, no adverse inference is permissible against Waymo, and Waymo should be removed from the instruction. The Court required briefing on this subject over six months ago and Uber was precluded from presenting evidence on the only theory it presented in support of an adverse inference against Waymo. Dkt. 1885. Having failed to timely disclose any other theory of adverse inference against Waymo, Uber cannot now seek an adverse inference on undisclosed and untested new theories.

**X.    VERDICT FORM – DISCLOSURE AND USE SHOULD NOT BE SEPARATED.**

Disclosure and use should not be separated on the verdict form because Waymo has presented a viable theory of misappropriation by disclosure and neither CUTSA nor DTSA distinguishes between use and disclosure in providing for relief.

Case 3:17-cv-00939-WHA   Document 2628-4   Filed 02/06/18   Page 9 of 9

| | |
|---|---|
| Dated: February 6, 2018 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By */s/ Charles K. Verhoeven* |
| | Charles K. Verhoeven |
| | Attorneys for WAYMO LLC |

-8-
WAYMO'S RESPONSE TO DEFENDANTS' BRIEF ON THE PENULTIMATE JURY INSTRUCTIONS (DKT. 2549)