# UNREDACTED VERSION OF EXHIBIT 1 SOUGHT TO BE FILED UNDER SEAL IN ITS ENTIRETY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3                  SAN FRANCISCO DIVISION

4

 _____

5   WAYMO LLC,                          )

6                  Plaintiff,           )

7      vs.                              ) Case No.

8   UBER TECHNOLOGIES, INC.;            ) 17-cv-00939-WHA

9   OTTOMOTTO, LLC; OTTO TRUCKING LLC, )

10                 Defendants.          )

 _____)

11

12        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

13

14        VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER

15               San Francisco, California

16               Friday, September 22, 2017

17                     Volume I

18

19

20   Reported by:

21   MARY J. GOFF

22   CSR No. 13427

23   Job No. 2714429

24

25   PAGES 1-145

                                          Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3               SAN FRANCISCO DIVISION

4

5    _____

6    WAYMO LLC,                        )

7              Plaintiff,             )

8       vs.                           ) Case No.

9    UBER TECHNOLOGIES, INC.;          ) 17-cv-00939-WHA

10   OTTOMOTTO, LLC; OTTO TRUCKING LLC, )

11             Defendants.            )

12   _____)

13

14             HIGHLY CONFIDENTIAL

15

16      Videotaped Deposition of MICHAEL J. WAGNER,

17      Volume I, taken on behalf of Defendants,

18      at Morrison & Foerster, 425 market Street,

19      33rd Floor, San Francisco, beginning at

20      9:34 a.m. and ending at 12:30 p.m., on

21      September 22, 2017, before MARY GOFF, Certified

22      Shorthand Reporter No. 13427.

23

24

25

                                            Page  2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A    Yeah, but I -- he thinks -- he thinks my | 12:07:51 |
| 2 | profile is not as good as my straight face. | 12:07:53 |
| 3 | THE VIDEOGRAPHER:  What he said.  Do you | 12:07:57 |
| 4 | want to stay on or -- we can stay on. | 12:07:59 |
| 5 | EXAMINATION BY COUNSEL FOR THE DEFENDANTS | 12:08:03 |
| 6 | BY MR. SCHUMAN: | 12:08:04 |
| 7 | Q    All right.  Good afternoon, Mr. Wagner. | 12:08:07 |
| 8 | A    Good afternoon, Mr. Schuman. | 12:08:10 |
| 9 | Q    Mr. Wagner, I represent a company called | 12:08:14 |
| 10 | Otto Trucking LLC.  Do you know who Otto Trucking | 12:08:16 |
| 11 | is? | 12:08:18 |
| 12 | A    I do. | 12:08:19 |
| 13 | Q    Who is Otto -- what's your understanding | 12:08:20 |
| 14 | of who Otto Trucking is? | 12:08:21 |
| 15 | A    Well, I -- I believe it's a company that's | 12:08:23 |
| 16 | owned by -- principally owned by Mr. Levandowski and | 12:08:25 |
| 17 | Lior. | 12:08:32 |
| 18 | And it is in -- has signed an -- an | 12:08:34 |
| 19 | acquisition of purchase agreement with Uber where | 12:08:37 |
| 20 | it -- it's Uber's discretion to purchase that | 12:08:42 |
| 21 | company between now and sometime in November.  And | 12:08:45 |
| 22 | it is a company that is focused on applying LiDAR | 12:08:48 |
| 23 | technology to trucks. | 12:08:52 |
| 24 | Q    Do you know whether Otto Trucking has any | 12:08:56 |
| 25 | employees? | 12:08:58 |

Page 126

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A    Well, my understanding is they do not, at | 12:08:59 |
| 2 | least from the last facts that I have. | 12:09:01 |
| 3 | Q    Do you have any understanding as to | 12:09:04 |
| 4 | whether Otto Trucking does any research and | 12:09:04 |
| 5 | development activities? | 12:09:07 |
| 6 | A    I -- I -- I don't know whether they do or | 12:09:12 |
| 7 | not.  I understand that Uber is advancing | 12:09:15 |
| 8 | development funds to them, so I -- I would think | 12:09:18 |
| 9 | they do.  But whether that's done with -- actually | 12:09:21 |
| 10 | being done by Uber and not your client, I -- I don't | 12:09:25 |
| 11 | know. | 12:09:28 |
| 12 | Q    Okay.  You're not offering any opinions in | 12:09:29 |
| 13 | this case as to any damages caused to Waymo specific | 12:09:31 |
| 14 | to Otto Trucking; is that right? | 12:09:36 |
| 15 | A    That's correct. | 12:09:38 |
| 16 | Q    Okay.  And so then your damages -- I'm | 12:09:38 |
| 17 | going to walk through briefly -- not in the level of | 12:09:44 |
| 18 | detail that Uber's counsel did, but I just want to | 12:09:46 |
| 19 | walk through your -- your principal opinions in this | 12:09:48 |
| 20 | case. | 12:09:50 |
| 21 | You have offered two unjust enrichment | 12:09:50 |
| 22 | calculations and a -- and a reasonable royalty | 12:09:55 |
| 23 | measure, correct? | 12:09:59 |
| 24 | A    That's fair. | 12:10:00 |
| 25 | Q    Okay.  The first unjust enrichment measure | 12:10:01 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | values the accelerated development to -- that Uber | 12:10:05 |
| 2 | was able to achieve through the alleged | 12:10:10 |
| 3 | misappropriation of these nine trade secrets, right? | 12:10:13 |
| 4 | A    Yes. | 12:10:16 |
| 5 | Q    And -- and your opinion -- that -- we'll | 12:10:17 |
| 6 | call that your first unjust enrichment opinion. | 12:10:20 |
| 7 | That opinion is based on internal Uber | 12:10:24 |
| 8 | documents showing some accelerated development, | 12:10:28 |
| 9 | correct? | 12:10:31 |
| 10 | A    That's fair. | 12:10:32 |
| 11 | Q    That opinion is not based on any Otto | 12:10:34 |
| 12 | Trucking documents; is that right? | 12:10:36 |
| 13 | A    It is not. | 12:10:40 |
| 14 | Q    So would you agree with me then that your | 12:10:42 |
| 15 | first unjust -- unjust enrichment theory is not | 12:10:45 |
| 16 | applicable to Otto Trucking? | 12:10:48 |
| 17 | MR. EISEMAN:  Objection as to form. | 12:10:50 |
| 18 | A    You know, I -- what I would say is that | 12:10:51 |
| 19 | unless Uber exercises its option to purchase Otto | 12:10:56 |
| 20 | Trucking or shares this accelerated depreciation -- | 12:11:01 |
| 21 | or accelerated development with Otto Trucking, then | 12:11:04 |
| 22 | my calculations have nothing to do with your client. | 12:11:10 |
| 23 | Q    (BY MR. SCHUMAN) Right.  And as we sit | 12:11:15 |
| 24 | here today, you know that Uber has not exercised the | 12:11:15 |
| 25 | option to the purchase Otto Trucking, right? | 12:11:18 |

Page 128

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A    I -- I don't know that.  But those facts | 12:11:21 |
| 2 | have not been brought to my attention.  And if it | 12:11:23 |
| 3 | had happened, I fully expect I would be aware of it. | 12:11:26 |
| 4 | Q    Right.  And the accelerated -- sharing the | 12:11:30 |
| 5 | accelerated development with Otto Trucking, what did | 12:11:33 |
| 6 | you mean by that? | 12:11:36 |
| 7 | A    Well, if -- if -- if as a result of Uber | 12:11:36 |
| 8 | accelerating development of LiDAR on their veh -- on | 12:11:43 |
| 9 | their vehicles for their transportation as a | 12:11:46 |
| 10 | service, they -- they're also -- then by Otto | 12:11:48 |
| 11 | Trucking -- and Otto Trucking is going to get into | 12:11:51 |
| 12 | the market one or two years earlier than they | 12:11:54 |
| 13 | otherwise would -- then I think it might be | 12:11:58 |
| 14 | appropriate to your client.  But unless those facts | 12:12:00 |
| 15 | occur, what I have calculated has nothing to do with | 12:12:03 |
| 16 | your client. | 12:12:05 |
| 17 | Q    All right.  And as we sit here today, you | 12:12:06 |
| 18 | do know that those facts that you have just in your | 12:12:07 |
| 19 | last answer summarized have not occurred yet, right? | 12:12:10 |
| 20 | A    That's correct. | 12:12:13 |
| 21 | Q    Your second unjust enrichment calculation | 12:12:14 |
| 22 | is based on the cost that -- that you have opined | 12:12:16 |
| 23 | Uber saved in its development of autonomous vehicles | 12:12:20 |
| 24 | through alleged use of these nine trade secrets, | 12:12:25 |
| 25 | right? | 12:12:29 |

Page 129

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A    Yes. | 12:12:29 |
| 2 | Q    And again, that's based on Uber documents | 12:12:29 |
| 3 | showing a $20 million per-month run rate for its R&D | 12:12:33 |
| 4 | program on autonomous vehicles, right? | 12:12:39 |
| 5 | A    Yeah, documents and I believe deposition | 12:12:42 |
| 6 | testimony of Mr. Bares. | 12:12:44 |
| 7 | Q    Fair.  Right.  And -- and so your second | 12:12:45 |
| 8 | unjust enrichment calculation is not based on any | 12:12:48 |
| 9 | Otto Trucking-specific evidence; is that fair? | 12:12:50 |
| 10 | A    That is fair. | 12:12:55 |
| 11 | Q    So your second unjust enrichment | 12:12:55 |
| 12 | calculation, would you agree with me, is not | 12:12:57 |
| 13 | applicable to Otto Trucking? | 12:13:00 |
| 14 | MR. EISEMAN:  Objection as to form. | 12:13:02 |
| 15 | A    Yes, with the same caveats as I discussed | 12:13:02 |
| 16 | on the first calculation. | 12:13:05 |
| 17 | Q    (BY MR. SCHUMAN) Right.  So assume -- | 12:13:07 |
| 18 | assume for purposes of this question that Otto | 12:13:08 |
| 19 | Trucking pays Uber some amount of money for the work | 12:13:11 |
| 20 | that Uber employees are -- are doing on | 12:13:18 |
| 21 | autonomous -- the development of autonomous trucks. | 12:13:22 |
| 22 | Have you seen any evidence in the | 12:13:25 |
| 23 | materials you reviewed as to what Otto Trucking's | 12:13:28 |
| 24 | burn rate is for that development? | 12:13:32 |
| 25 | A    No. | 12:13:35 |

Page 130

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q    Okay.  Did -- on the list of materials you | 12:13:36 |
| 2 | reviewed or at least considered is the Brent Schwarz | 12:13:39 |
| 3 | deposition. | 12:13:44 |
| 4 |      Do you recall reviewing any portions of | 12:13:45 |
| 5 | Mr. Schwarz's deposition? | 12:13:47 |
| 6 | A    I personally do not. | 12:13:48 |
| 7 | Q    You have a separate section of your | 12:13:55 |
| 8 | report -- and we were just covering this with Uber's | 12:13:58 |
| 9 | counsel -- unjust enrichment related to Trade Secret | 12:14:02 |
| 10 | No. 90.  And I think you have an $8 million unjust | 12:14:04 |
| 11 | enrichment figure for that; is -- | 12:14:08 |
| 12 | A    Yes -- | 12:14:10 |
| 13 | Q    -- that right? | 12:14:10 |
| 14 | A    -- that's correct. | 12:14:11 |
| 15 | Q    And that is -- that -- is that based on | 12:14:12 |
| 16 | any Otto Trucking documents or evidence? | 12:14:15 |
| 17 | A    No. | 12:14:17 |
| 18 | Q    Does that theory have any applicability to | 12:14:18 |
| 19 | Otto Trucking? | 12:14:20 |
| 20 |      MR. EISEMAN:  Objection as to form. | 12:14:21 |
| 21 | A    You know, I -- no, again, with the same | 12:14:22 |
| 22 | caveats.  And -- and I personally believe that my | 12:14:26 |
| 23 | work is only relevant unless client is -- you will | 12:14:28 |
| 24 | have no role at the trial, because your client will | 12:14:32 |
| 25 | be owned by Uber.  And I assume Uber's counsel will | 12:14:35 |

Page 131

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | be representing their interests at that point.  But | 12:14:38 |
| 2 | I -- that's only way I see my work as relevant to | 12:14:41 |
| 3 | your client. | 12:14:44 |
| 4 | Q    (BY MR. SCHUMAN) Right.  So the same | 12:14:49 |
| 5 | caveat -- the same caveats that you're referring to | 12:14:49 |
| 6 | in that answer are -- are the sort of -- we'll call | 12:14:51 |
| 7 | them speculative future possibility that Uber | 12:14:54 |
| 8 | acquires Otto Trucking and shares some of these | 12:14:58 |
| 9 | benefits that you have quantified with Otto Trucking | 12:15:01 |
| 10 | in the future; is -- | 12:15:04 |
| 11 | MR. EISEMAN:  Objection. | 12:15:05 |
| 12 | Q    (BY MR. SCHUMAN) -- that -- | 12:15:05 |
| 13 | MR. EISEMAN:  Objection.  Sorry. | 12:15:06 |
| 14 | Q    (BY MR. SCHUMAN) Am I -- | 12:15:07 |
| 15 | MR. EISEMAN:  Objection as to form. | 12:15:09 |
| 16 | Q    (BY MR. SCHUMAN) I didn't ask the question | 12:15:09 |
| 17 | yet.  Do you understand that -- do I understand your | 12:15:10 |
| 18 | caveats correctly? | 12:15:14 |
| 19 | MR. EISEMAN:  Objection as to form. | 12:15:15 |
| 20 | A    Yes.  If you took just the | 12:15:16 |
| 21 | word "speculative" out of your question, I would | 12:15:18 |
| 22 | agree with what you said. | 12:15:21 |
| 23 | I mean -- yeah, I don't know whether | 12:15:24 |
| 24 | they're going to get acquired or not.  But you know, | 12:15:25 |
| 25 | clearly your -- your client is -- is getting a lot | 12:15:27 |

Page 132

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | of funds from Uber.  Uber is forwarding -- committed | 12:15:29 |
| 2 | to forward a lot of funds to your client.  There -- | 12:15:32 |
| 3 | there is a -- a deal done that your client -- client | 12:15:34 |
| 4 | will have to accept and Uber can force on your | 12:15:38 |
| 5 | client, if they want to. | 12:15:41 |
| 6 | I don't know what their mind-set is right | 12:15:43 |
| 7 | now, and I don't know how much development on the | 12:15:45 |
| 8 | truck has been done as to whether Uber believes it's | 12:15:47 |
| 9 | appropriate to purchase your client. | 12:15:51 |
| 10 | So I don't think it's wild speculation, | 12:15:54 |
| 11 | but I clearly do not know whether it will happen or | 12:15:56 |
| 12 | not.  But then all the caveats apply. | 12:16:00 |
| 13 | Q     (BY MR. SCHUMAN) Right.  So fair enough. | 12:16:03 |
| 14 | Taking out the word "speculative."  I know we don't | 12:16:03 |
| 15 | like using that word.  The caveats you're referring | 12:16:06 |
| 16 | to regarding the applicability of your unjust | 12:16:09 |
| 17 | enrichment damage theories, those caveats are Uber | 12:16:12 |
| 18 | acquires Otto Trucking and that Uber shares some of | 12:16:17 |
| 19 | the technology it's developing using the allegedly | 12:16:21 |
| 20 | misappropriated trade secrets with Otto Trucking; is | 12:16:25 |
| 21 | that right? | 12:16:28 |
| 22 | A     That's -- that's -- again, that's my | 12:16:28 |
| 23 | conclusion -- or that would be my opinion as a | 12:16:30 |
| 24 | damage expert. | 12:16:33 |
| 25 | Q     If both of those assumptions are true, | 12:16:33 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    then your damages opinions -- your unjust enrichment      12:16:36

 2    damages opinions may have some applicability to Otto      12:16:39

 3    Trucking, correct?                                        12:16:41

 4            MR. EISEMAN:  Objection as to form.               12:16:44

 5       A    That's fair.                                      12:16:44

 6       Q    (BY MR. SCHUMAN) You also have a                  12:16:49

 7    reasonable royalty rate calculation, and that            12:16:52

 8    measures the amount that Uber would have agreed to        12:16:55

 9    pay Waymo in this hypothetical negotiation set in         12:16:57

10    the -- somewhere in the December 15 -- August --          12:17:01

11    between December '15 and August 2016 time period,         12:17:04

12    right?                                                    12:17:08

13       A    Correct.                                          12:17:09

14       Q    You didn't do any separate calculation of        12:17:09

15    the amount that Otto Trucking would have agreed to        12:17:11

16    pay Waymo at a hypothetical negotiation set during        12:17:15

17    that same time period, correct?                           12:17:20

18       A    That is accurate.                                 12:17:22

19       Q    Okay.  And then for the reasonable royalty        12:17:23

20    calculation that you did, you start with a baseline       12:17:25

21    of Uber's unjust enrichment.  And then you adjusted       12:17:28

22    upward based on some analysis you have done of            12:17:32

23    certain of the Georgia-Pacific factors.  Namely 4,        12:17:36

24    5, 6, 8, and 11, correct?                                 12:17:38

25       A    Those are the only ones that had any             12:17:42
```

Page 134

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | impact on changing the number from the baseline. | 12:17:45 |
| 2 | That is correct. | 12:17:47 |
| 3 | Q    And -- and Factor 5 -- this is addressed | 12:17:48 |
| 4 | in your report at paragraphs 399 to 401 -- that -- | 12:17:52 |
| 5 | that factor deals with the commercial relationship | 12:17:55 |
| 6 | between Waymo and Uber and some documents that you | 12:17:58 |
| 7 | referred regarding the -- the potential competitive | 12:18:02 |
| 8 | relationship between those two companies, right? | 12:18:08 |
| 9 | A    Yes. | 12:18:10 |
| 10 | Q    That analysis in Factor 5 is -- is | 12:18:11 |
| 11 | inapplicable to -- to my client Otto Trucking -- | 12:18:13 |
| 12 | A    Yeah -- | 12:18:16 |
| 13 | Q    -- correct? | 12:18:16 |
| 14 | A    -- as discussed in my report, that is | 12:18:16 |
| 15 | correct. | 12:18:19 |
| 16 | Q    Right.  And -- and Factor 8 deals with | 12:18:20 |
| 17 | expected future profitability.  And you analyzed | 12:18:25 |
| 18 | Waymo's and Uber's projections for profitability of | 12:18:29 |
| 19 | autonomous vehicles. | 12:18:36 |
| 20 | And in your view, that factor counseled in | 12:18:36 |
| 21 | favor of some enhancement to the baseline for the | 12:18:38 |
| 22 | reasonable royalty calculation, right? | 12:18:42 |
| 23 | A    That's fair. | 12:18:44 |
| 24 | Q    Okay.  And -- and you were working with | 12:18:45 |
| 25 | Waymo and Uber projections there, not any | 12:18:48 |

Page 135

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    projections from Otto Trucking, right?              12:18:51

 2        A    Correct.  I don't believe I have seen any  12:18:52

 3    projections for your client --                      12:18:54

 4        Q    Right.                                      12:18:56

 5        A    -- and so I poss -- I could not have       12:18:56

 6    possibly considered them.                            12:18:58

 7        Q    Okay.  You answered my next question, so   12:18:59

 8    that'll make us go a little faster.                  12:19:01

 9            Factor 11 talks about the extent of the     12:19:04

10    use of the invention.  This is addressed at          12:19:06

11    paragraphs 424 and 428 of your report.  And again,   12:19:09

12    you find that that factor pushes the base -- the --  12:19:12

13    the reasonable royalty baseline up a little bit      12:19:13

14    because of your assumptions based on the work of     12:19:17

15    others that -- that Uber has used these trade        12:19:21

16    secrets, right?                                      12:19:24

17        A    Yes.                                         12:19:25

18        Q    And you -- you have not done or are -- at   12:19:28

19    least -- have -- have you seen any evidence of any   12:19:30

20    use of any of these trade secrets by my client, Otto 12:19:33

21    Trucking?                                             12:19:36

22            MR. EISEMAN:  Objection as to form.          12:19:37

23        A    I have not.                                  12:19:37

24        Q    (BY MR. SCHUMAN) And so your analysis of    12:19:41

25    Factor 11 is inapplicable to my client, Otto         12:19:42
```

Page 136

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Trucking, right? | 12:19:46 |
| 2 | MR. EISEMAN:  Objection as to form. | 12:19:47 |
| 3 | A    Based on the information that I have at | 12:19:48 |
| 4 | this time, that is correct. | 12:19:50 |
| 5 | Q    (BY MR. SCHUMAN) Okay.  Mr. Wagner, if the | 12:19:53 |
| 6 | jury finds that -- and this is the hypothetical, so | 12:19:55 |
| 7 | it's -- follow me here.  If the jury finds that Uber | 12:19:57 |
| 8 | and Ottomotto -- strike that.  I'm going to start | 12:20:01 |
| 9 | over. | 12:20:05 |
| 10 | Hypothetical:  If at trial in this case | 12:20:05 |
| 11 | the jury finds in favor of Uber -- Uber and | 12:20:06 |
| 12 | Ottomotto -- so a defense verdict for them -- but | 12:20:10 |
| 13 | against Otto Trucking on liability, what's your | 12:20:13 |
| 14 | opinion as to the damages that Waymo would be | 12:20:17 |
| 15 | entitled to as to my client, Otto Trucking? | 12:20:20 |
| 16 | MR. EISEMAN:  Objection as to form. | 12:20:23 |
| 17 | A    I would need more facts to know if there's | 12:20:24 |
| 18 | any relevance of what I have done would apply to | 12:20:25 |
| 19 | your client in that hypothetical. | 12:20:28 |
| 20 | Q    (BY MR. SCHUMAN) So as you sit here today | 12:20:30 |
| 21 | based on the work you have done so far up to and | 12:20:32 |
| 22 | including today, you don't have an opinion of what | 12:20:35 |
| 23 | damages Waymo would be entitled to under that | 12:20:38 |
| 24 | hypothetical verdict -- | 12:20:40 |
| 25 | MR. EISEMAN:  Objection. | 12:20:41 |

Page 137

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q    (BY MR. SCHUMAN) -- is that fair? | 12:20:41 |
| 2 | MR. EISEMAN:  Objection as to form. | 12:20:43 |
| 3 | A    I do not. | 12:20:43 |
| 4 | Q    (BY MR. SCHUMAN) In -- in response to some | 12:20:44 |
| 5 | of the questions you got from Uber's counsel, you -- | 12:20:50 |
| 6 | you mentioned that you personally spent | 12:20:55 |
| 7 | approximately 64 hours total working on -- working | 12:20:58 |
| 8 | on your opinions in this case.  Obviously, your | 12:21:01 |
| 9 | staff spent many more hours than that. | 12:21:04 |
| 10 | Approximately what percentage of your | 12:21:06 |
| 11 | 64 hours, Mr. Wagner, did you spend focusing on | 12:21:09 |
| 12 | calculating damages specific to my client, Otto | 12:21:14 |
| 13 | Trucking? | 12:21:16 |
| 14 | A    Zero. | 12:21:17 |
| 15 | Q    Just bear with me a second. | 12:21:25 |
| 16 | A    But I could -- the approximate -- it's | 12:21:27 |
| 17 | exactly 64.0 hours through September 15.  And it's | 12:21:30 |
| 18 | been 13.4 hours since then before today. | 12:21:36 |
| 19 | Q    I would -- | 12:21:39 |
| 20 | A    -- between September 15 and today. | 12:21:40 |
| 21 | Q    In response to some questions from Uber's | 12:21:44 |
| 22 | counsel, I think you made clear that your damages | 12:21:45 |
| 23 | are based on Uber's use of -- alleged use of the | 12:21:46 |
| 24 | trade secrets in its development of its autonomous | 12:21:53 |
| 25 | vehicles. | 12:21:56 |

Page 138

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | If the evidence at trial shows that my | 12:22:01 |
| 2 | client, Otto Trucking, has not used any of those | 12:22:04 |
| 3 | trade secrets, would you agree with me that your | 12:22:07 |
| 4 | opinions are irrelevant to Otto Trucking? | 12:22:10 |
| 5 | MR. EISEMAN:  Objection as to form. | 12:22:13 |
| 6 | A    I'm not giving you a legal opinion.  But | 12:22:16 |
| 7 | as -- my judgment as a damage expert, you are | 12:22:17 |
| 8 | correct. | 12:22:20 |
| 9 | Q    (BY MR. SCHUMAN) You mentioned that you | 12:22:29 |
| 10 | had documents in this case from Uber with its own | 12:22:31 |
| 11 | modeling of the benefits of -- of -- well, let me -- | 12:22:38 |
| 12 | let me ask it -- strike that.  Let me start that | 12:22:44 |
| 13 | question again. | 12:22:47 |
| 14 | Do you remember some testimony you gave in | 12:22:48 |
| 15 | response to Uber's counsel where you characterized | 12:22:49 |
| 16 | some of the information you got from -- that you | 12:22:52 |
| 17 | were able to review from Uber as the Rosetta Stone | 12:22:55 |
| 18 | in your field? | 12:22:57 |
| 19 | Do you remember that -- | 12:22:59 |
| 20 | A    I -- | 12:22:59 |
| 21 | Q    -- testimony? | 12:22:59 |
| 22 | A    -- do remember that. | 12:23:00 |
| 23 | Q    And -- and what is the information again | 12:23:01 |
| 24 | that you characterize as being the Rosetta Stone in | 12:23:03 |
| 25 | your field? | 12:23:05 |

Page 139

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A     Well, you know, I -- well, let me -- let | 12:23:06 |
| 2 | me give you an example of another case that I | 12:23:07 |
| 3 | testified in last year in a similar fact situation | 12:23:10 |
| 4 | of this case where there's no product in the market | 12:23:13 |
| 5 | yet.  There's regulatory approvals that need to be | 12:23:16 |
| 6 | done that weren't done yet; that there would be no | 12:23:20 |
| 7 | commercialization for years into the future.  And I | 12:23:21 |
| 8 | had the business plans of the company that took the | 12:23:24 |
| 9 | trade secrets. | 12:23:30 |
| 10 | Now, there they provided me the model, and | 12:23:31 |
| 11 | they never made a calculation of what the impact | 12:23:36 |
| 12 | would be on them to accelerate the development by | 12:23:39 |
| 13 | any amount of time.  I had to get into their model, | 12:23:43 |
| 14 | understand the logic, and make that calculation | 12:23:46 |
| 15 | myself. | 12:23:47 |
| 16 | In this case I have the same thing in that | 12:23:49 |
| 17 | I have projections done at the time of the alleged | 12:23:51 |
| 18 | theft by the party who was alleged to have taken the | 12:23:55 |
| 19 | trade secrets. | 12:23:59 |
| 20 | But they have even gone to the next step | 12:24:01 |
| 21 | of actually quantifying the impact of acceleration, | 12:24:04 |
| 22 | and so that's why I say it's the Rosetta Stone. | 12:24:07 |
| 23 | Normally I have to do more work than I did in this | 12:24:09 |
| 24 | case, but Uber has done it for me. | 12:24:12 |
| 25 | Q     Right.  And have you seen any similar | 12:24:17 |

Page 140

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | documents from my client, Otto Trucking? | 12:24:20 |
| 2 | A    I knew that was next question.  The answer | 12:24:23 |
| 3 | is no.  And you're closing the loop. | 12:24:25 |
| 4 | MR. SCHUMAN:  Why don't we take a | 12:24:32 |
| 5 | two-minute break.  I don't think I have anything | 12:24:33 |
| 6 | more, but why don't we just -- | 12:24:36 |
| 7 | MR. BERRY:  I actually have a couple of | 12:24:36 |
| 8 | questions. | 12:24:38 |
| 9 | MR. SCHUMAN:  Well, I'm not sure I'm done | 12:24:38 |
| 10 | yet.  I just want to -- | 12:24:40 |
| 11 | MR. BERRY:  Okay. | 12:24:41 |
| 12 | MR. SCHUMAN:  -- take a two-minute break | 12:24:41 |
| 13 | and make sure.  And then if you have something else. | 12:24:41 |
| 14 | MR. BERRY:  Okay. | 12:24:44 |
| 15 | MR. SCHUMAN:  -- you guys can take that | 12:24:45 |
| 16 | up. | 12:24:46 |
| 17 | THE VIDEOGRAPHER:  It's 12:24 p.m.  We're | 12:24:47 |
| 18 | going off the record. | 12:24:49 |
| 19 | (A break was taken from 12:24 p.m. to | 12:24:51 |
| 20 | 12:28 p.m.) | 12:25:12 |
| 21 | THE VIDEOGRAPHER:  We are back on the | 12:28:09 |
| 22 | record.  It's 12:28 p.m. | 12:28:09 |
| 23 | Q    (BY MR. SCHUMAN) Mr. Wagner, did either | 12:28:15 |
| 24 | the Quinn firm or Waymo ask you or your firm to | 12:28:17 |
| 25 | prepare any damages opinions specific to my client, | 12:28:22 |

Page 141

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Otto Trucking? | 12:28:27 |
| 2 |     A   I don't recall that specific instruction. | 12:28:28 |
| 3 |     Q   As you sit here today, do you plan to do | 12:28:31 |
| 4 | any work between now and the time of trial on | 12:28:33 |
| 5 | developing opinions regarding damages specific to my | 12:28:38 |
| 6 | client, Otto Trucking? | 12:28:45 |
| 7 |     A   No. | 12:28:46 |
| 8 |        MR. SCHUMAN:  Okay.  I have no further | 12:28:47 |
| 9 | questions for you.  Thank you for your time. | 12:28:49 |
| 10 |     A   Thank you. | 12:28:52 |
| 11 |        MR. EISEMAN:  Mr. Berry, what do you | 12:28:56 |
| 12 | consider this -- these questions?  Do you consider | 12:28:58 |
| 13 | them to be redirect? | 12:28:59 |
| 14 |        MR. BERRY:  I haven't even thought about | 12:29:02 |
| 15 | how to characterize it. | 12:29:03 |
| 16 |      EXAMINATION BY COUNSEL FOR THE DEFENDANTS | 12:29:08 |
| 17 | BY MR. BERRY: | 12:29:12 |
| 18 |     Q   Mr. Wagner, I had a -- a couple of | 12:29:12 |
| 19 | questions.  The first is:  Your opinions in this | 12:29:13 |
| 20 | case assume that Uber is going to go to market and | 12:29:15 |
| 21 | commercialize its AV technology using the Fuji | 12:29:19 |
| 22 | LiDAR, right? | 12:29:23 |
| 23 |        MR. EISEMAN:  Objection as to form. | 12:29:24 |
| 24 |     A   I -- again, I -- I think that's assumed. | 12:29:24 |
| 25 | But again, that's a better question for | 12:29:27 |

Page 142

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1           I, MARY J. GOFF, CSR No. 13427, Certified

2    Shorthand Reporter of the State of California,

3    certify;

4           That the foregoing proceedings were taken

5    before me at the time and place herein set forth, at

     which time the witness declared under penalty of

6    perjury; that the testimony of the witness and all

7    objections made at the time of the examination were

8    recorded stenographically by me and were thereafter

9    transcribed under my direction and supervision; that

10   the foregoing is a full, true, and correct

11   transcript of my shorthand notes so taken and of the

12   testimony so given;

13          That before completion of the deposition,

14   review of the transcript (  ) was (XX) was not

15   requested:   (   ) that the witness has failed or

     refused to approve the transcript.

16          I further certify that I am not financially

17   interested in the action, and I am not a relative or

18   employee of any attorney of the parties, nor of any

19   of the parties.

20          I declare under penalty of perjury under the

21   laws of California that the foregoing is true and

22   correct, dated this 23rd day of September, 2017.

23

24   _____

25          MARY J. GOFF, CSR No. 13427

                                        Page 145