# *EXHIBIT 2*

***UNREDACTED VERSION
OF DOCUMENT
SOUGHT TO BE SEALED***

# *EXHIBIT 2*

2714429AMG.txt

```
              1        ROUGH ASCII--NOT FINAL CERTIFIED TRANSCRIPT
              2
09:34:28      3              THE VIDEOGRAPHER:  Good morning.  We are
09:34:29      4  going on the record at 9:34, on September 22 of the
09:34:35      5  Year 2017.  Please understand microphones are very
09:34:42      6  sensitive, and they may pick up whispering ad
09:34:44      7  private conversations and cellular interference.
09:34:49      8              Please turn off your cell phones or place
09:34:51      9  them away from the microphones, as they may
09:34:54     10  interfere with the audio.  Audio and video recording
09:34:57     11  will continue to take place unless all parties agree
09:35:01     12  to go off of the record.
09:35:03     13              This is Disc 1, Volume I in the video
09:35:06     14  deposition of Michael J. Wagner, taken by counsel
09:35:10     15  for Defendants in the matter of Waymo LLC v. Uber
09:35:16     16  Technologies.  It's filed in the United States
09:35:19     17  District Court, for the Northern District of
09:35:21     18  California, Case No. 17-cv-00939-WHA.
09:35:29     19              This is being taken at Morrison &
09:35:31     20  Foerster.  They're at 425 Market Street in
09:35:35     21  San Francisco.  My name is Kevin Foor, and I am here
09:35:40     22  with Mary Goff-Sharma, and we are from Veritext.
09:35:45     23  I'm not related to any party nor am I financially
09:35:49     24  interested in the outcome in any way.
09:35:52     25              Counsel and -- and all present in the
```

1

                                    2714429AMG.txt
12:08:16 23   Otto Trucking LLC.  Do you know who Otto Trucking
12:08:18 24   is?
12:08:19 25         A     I do.

                                                                    123

              1         ROUGH ASCII--NOT FINAL CERTIFIED TRANSCRIPT
12:08:20  2         Q     Who is Otto what's your understanding of
12:08:22  3   what Otto Trucking is?
12:08:23  4         A     Well, I -- I believe it's a company that's
12:08:25  5   owned by -- principally owned by Mr. Levandowski and
12:08:32  6   Lior.
12:08:34  7               And it is in -- has signed an -- an
12:08:37  8   acquisition of purchase agreement with Uber where it
12:08:43  9   it's Uber's discretion to purchase that company
12:08:46 10   between now and sometime in November.  And it is a
12:08:49 11   company that is focused on applying LiDAR technology
12:08:53 12   to trucks.
12:08:56 13         Q     Do you know whether Otto Trucking has any
12:08:58 14   employees?
12:08:59 15         A     Well, my understanding is they do not at
12:09:01 16   least from the last facts that I have.
12:09:04 17         Q     Do you have any understanding of as to
12:09:04 18   whether Otto Trucking does any research and
12:09:07 19   development activities?
12:09:12 20         A     I -- I I don't know whether they do or not
12:09:16 21   I understand that Uber is advancing development
12:09:18 22   funds to them.  So I -- I would think they do.  But
12:09:22 23   whether that's done with actually being done by Uber
12:09:26 24   and not your client, I don't know.

                              Page 116

```
                                    2714429AMG.txt
12:09:29 25        Q    Okay.  You're not offering any opinions in
```

                                                                              124

```
         1         ROUGH ASCII--NOT FINAL CERTIFIED TRANSCRIPT
12:09:31 2    this case as to any damages caused to Waymo specific
12:09:36 3    to oath Otto Trucking; is that right?
12:09:38 4         A    That's correct.
12:09:38 5         Q    Okay.  And so then your damages -- I'm
12:09:44 6    going to walk through briefly -- not in the level of
12:09:46 7    detail that Uber's counsel did -- but I just want to
12:09:48 8    walk through you principal opinions in this case.
12:09:50 9              You have offered two unjust enrichment
12:09:55 10   unjust enrichment calculations and a reasonable
12:09:58 11   royalty measure, correct?
12:10:00 12        A    That's fair.
12:10:01 13        Q    Okay.  The first unjust enrichment measure
12:10:05 14   values the accelerated development to -- that Uber
12:10:10 15   was able to achieve through the alleged
12:10:13 16   misappropriation of these nine trade secrets, right?
12:10:16 17        A    Yes.
12:10:17 18        Q    And -- and your opinion -- that -- we'll
12:10:20 19   call that your first unjust enrichment opinion.
12:10:24 20             That opinion is based upon internal Uber
12:10:28 21   documents showing some accelerated development,
12:10:31 22   correct?
12:10:32 23        A    That's fair.
12:10:34 24        Q    That opinion is not based upon any Otto
12:10:36 25   Trucking documents; is that right?
```

2714429AMG.txt

```
12:16:07  8   that word -- the caveats you're referring to
12:16:09  9   regarding the applicability of your unjust
12:16:12 10   enrichment damage theories, those caveats are Uber
12:16:17 11   acquires Otto Trucking and that Uber shares some of
12:16:21 12   the technology it's developing using the allegedly
12:16:25 13   misappropriated trade secrets with Otto Trucking; is
12:16:28 14   that right?
12:16:28 15        A    That's -- that's -- again, that's my
12:16:30 16   conclusion -- or that would be my opinion as a
12:16:33 17   damages expert.
12:16:33 18        Q    If both of those assumptions are true,
12:16:36 19   then your damages opinions -- your unjust enrichment
12:16:39 20   damages opinions may have some applicability to Otto
12:16:41 21   Trucking, correct?
12:16:44 22             MR. EISEMAN:  Objection as to form.
12:16:44 23        A    That's fair.
12:16:49 24        Q    (BY MR. BERRY) You also have a reasonable
12:16:53 25   royalty rate calculation.  And that measures the
```

                                                                131

```
          1        ROUGH ASCII--NOT FINAL CERTIFIED TRANSCRIPT
12:16:55  2   amount that Uber would have agreed to pay Waymo in
12:16:58  3   this hypothetical negotiation set in the --
12:17:01  4   somewhere in the December 15 -- August -- between
12:17:05  5   December '15 and August 2016 time period, right?
12:17:09  6        A    Correct?
12:17:09  7        Q    You didn't do any separate calculation of
12:17:11  8   the amount that Otto Trucking would have agreed to
12:17:15  9   pay Waymo at a hypothetical negotiation set during
```

```
                              2714429AMG.txt
12:17:20 10   that same time period, correct?
12:17:22 11        A    That is accurate.
12:17:23 12        Q    Okay.  And then for the reasonable royalty
12:17:25 13   calculation that you did, you start with a baseline
12:17:28 14   of Uber's unjust enrichment.  And then you adjusted
12:17:32 15   upward based on some analysis you have done of
12:17:36 16   certain of the Georgia-Pacific factors.  Namely 4,
12:17:38 17   5, 6, 8, and 11, correct?
12:17:42 18        A    Those are the only ones that had any
12:17:45 19   impact on changing the number from the baseline.
12:17:47 20   That is correct.
12:17:48 21        Q    And -- and Factor 5 -- this is addressed
12:17:52 22   in your report at paragraphs 399 to 401 -- that --
12:17:55 23   that factor deals with the commercial relationship
12:17:58 24   between Waymo and Uber and some documents that you
12:18:02 25   referred regarding the -- the potential competitive
```

                                                                        132

```
           1          ROUGH ASCII--NOT FINAL CERTIFIED TRANSCRIPT
12:18:08   2   relationship between those two companies, right?
12:18:10   3        A    Yes.
12:18:11   4        Q    That analysis in Factor 5 is -- is
12:18:13   5   inapplicable to -- to my client Otto Trucking --
12:18:16   6        A    Yeah --
12:18:16   7        Q    -- right?
12:18:16   8        A    -- as discussed in my report, that is
12:18:19   9   correct.
12:18:20  10        Q    Right.  And -- and Factor 8 deals with
12:18:25  11   expected future profitability.  And you analyzed
```

2714429AMG.txt

```
12:20:30 16        Q    So as we sit here today based on the work
12:20:33 17   you have done so far up to and including today, you
12:20:36 18   don't have an opinion of what damages Waymo would be
12:20:39 19   entitled to under that hypothetical verdict --
12:20:41 20             MR. EISEMAN:  Objection.
12:20:41 21        Q    -- is that fair (talking over each other
12:20:42 22   -- check *)?
12:20:43 23             MR. EISEMAN:  Objection as to form.
12:20:43 24        A    I do not.
12:20:44 25        Q    (BY MR. SCHUMAN) In -- in response to some
```

                                                                         135

```
          1         ROUGH ASCII--NOT FINAL CERTIFIED TRANSCRIPT
12:20:50  2   of the questions you got from Uber's counsel, you --
12:20:55  3   you mentioned that you personally spent
12:20:58  4   approximately 64 hours total working on -- working
12:21:01  5   on your opinions in this case.  Obviously, your
12:21:04  6   staff spent many more hours than that.
12:21:06  7             Approximately what percentage of your
12:21:09  8   64 hours, Mr. Wagner, did you spend focusing on
12:21:14  9   calculating damages specific to my client, Otto
12:21:16 10   Trucking?
12:21:17 11        A    Zero.
12:21:25 12        Q    Just bear with me a second.
12:21:27 13        A    But I could approximate -- it's exactly
12:21:31 14   64.0 hours through September 15.  And it's been 13.4
12:21:39 15   hours since then before today
12:21:39 16        Q    I would --
12:21:40 17        A    -- between September 15 and today (talking
```
                                 Page 127