# EXHIBIT 2

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## Ottomotto LLC

### Employee Attestation

I, the undersigned _MAXIME LEVANDOWSKI_, an employee of Ottomotto LLC, a Delaware limited liability company ("Ottomotto"), hereby certify and declare to Ottomotto that to my knowledge I have not committed any of the following acts:

- fraud in connection with me becoming employed by Ottomotto;

- willful, intentional or deliberate conduct that constitutes or directly leads or contributes to the infringement (direct or indirect) or misappropriation of any patents, copyrights, trademarks or trade secrets of my prior employer, including, without limitation, taking, removing and/or copying software, product plans, or invention disclosures, in electronic or tangible form that are owned by my prior employer;

- willful and/or intentional breach by me of any fiduciary duty or duty of loyalty to my prior employer; and/or

- willful and/or intentional breach by me of any lawful and enforceable non-solicitation, non-competition, confidentiality or other similar restrictive covenant or agreement between me and my prior employer.

Name: _LEVANDO WSKI  MAXIME_
Date: _04/07/2016_

UBER00319640

1.      I have provided to Stroz copies of and/or otherwise advised Stroz of any agreements or other obligations to which I am subject with "Former Employer" (as defined in the Indemnity Construct), regarding the nondisclosure of proprietary and confidential information, assignment of inventions or intellectual property, and restrictions on competition or solicitation of employees and customers, including any related side agreements, (collectively, "Agreements"), and subject to any matters or information disclosed to Stroz, I have complied with my obligations under any Agreements.

2.      I have provided and/or disclosed (as applicable) to Stroz all non-Former Employer computers (including but not limited to any laptops, desktops and tablets), internal or external computer readable storage media (including but not limited to any hard drives, flash drives, zip drives, thumb drives, floppy disks or CD-ROM disks), mobile phones, cloud storage, FTP or share sites, or email or social media accounts or other potential sources of -Former Employer- data that I have used or had access to during and after employment with Former Employer.

3.      Subject to any matters or information disclosed to Stroz, I (a) was not solicited by Newco or Unicorn to leave Former Employer or to join Newco or Unicorn; (b) have not solicited any other person to leave Former Employer or to join Newco or Unicorn; and (c) have not told any person or party to solicit anyone to leave Former Employer or to join Newco or Unicorn.

4.      Other than what I may have retained in my memory in the course and scope of my employment with Former Employer, and subject to any matters or information disclosed to Stroz, to my best knowledge I returned to Former Employer and have not retained Former Employer confidential or proprietary documents or information or property (including but not limited to hardware and software) after my employment with Former Employer.

5.      I have not instructed anyone to use or disclose to anyone other than Former Employer (including me) any Former Employer confidential or proprietary information (except to Stroz as part of its investigation), and I am not aware of anyone doing so.

6.      With the exception of questions to which I did not respond because I was not certain the questions were relevant, to my best knowledge, (a) I have provided good faith, complete and truthful responses in all material respects to Stroz's questions and (b) all of the information I have provided to Stroz is true and correct in all material respects.

Signature of Diligenced Employee: _____  Date: 09/11/2016

Soren Juelsgaard

UBER00319641

## RELEASE AGREEMENT

THIS RELEASE AGREEMENT (this "**Agreement**"), dated as of May 6, 2016, is made by and between Ottomotto LLC, a Delaware limited liability company (the "**Company**") and the undersigned.

### W I T N E S S E T H:

WHEREAS, pursuant to that certain Asset Purchase Agreement (the "**APA**"), dated as of May 5, 2016, by and among the Company and Tyto LiDAR, LLC, a California limited liability company ("**Tyto**"), subject to the terms and conditions set forth in the APA, the Company will acquire certain assets of Tyto.

WHEREAS, in connection with the APA, the undersigned will receive an offer of employment or consultancy with the Company and a bonus payment from the Company; and

WHEREAS, in order to induce the Company to complete the transactions contemplated by the APA, the undersigned is willing to enter into this Agreement.

NOW, THEREFORE, intending to be legally bound, in consideration of the foregoing and the mutual covenants and agreements herein contained, the parties hereto hereby agree as follows:

1.     Acknowledgment of Consideration. The undersigned hereby acknowledges and agrees that it is entering into this Agreement in consideration of (a) the bonus payment payable to the undersigned in connection with the APA and the undersigned's employment or consultancy with the Company and (b) an offer of employment or consultancy from the Company.

2.     Confidentiality. Other than as required by law, the undersigned agrees to at all times keep confidential and not divulge, furnish or make accessible any information regarding or relating to this Agreement or the APA (or any of the transactions contemplated hereby or thereby), or any claim or dispute arising out of or related to this Agreement, the APA or the transactions contemplated hereby or thereby to anyone other than agents, investors, attorneys, accountants and financial advisors of the undersigned who need to know such information and are (a) bound by confidentiality restrictions or (b) made aware of the confidential nature of such information, directed by the undersigned to treat such information as confidential and bound by legally enforceable codes of professional responsibility or agreements that require maintenance of confidentiality.

3.     General Release. Effective for all purposes as of the closing of the APA (the "**Closing**"), the undersigned acknowledges and agrees, on behalf of himself or herself and each of the undersigned's agents, trustees, beneficiaries, estate, successors and assigns (each, a "**Releasor**") that:

(a)  Releasor represents and warrants that, as of the date hereof, other than as set forth in the proviso in Section 3(b), he or she (together with each other Releasor) has no Claims (as defined below) against Tyto, the Company, Otto Trucking LLC, or any of their respective employees, managers, directors, members, stockholders, officers, agents, attorneys, representatives, predecessors, successors, assigns or the like (collectively, the "**Releasees**") relating to any contract or other matter between the Releasor and Tyto, or any of the Releasor's interest in Tyto, or in the Releasor's capacity as a current or former employee, manager or security holder of Tyto.

(b)  Releasor hereby irrevocably and unconditionally releases the Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements,

CONFIDENTIAL

UBER00319642

controversies, damages or causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs incurred) of any nature whatsoever, in law or equity, whether known or unknown, contingent or otherwise, which the Releasor now has, may ever have had in the past or may have in the future against any of the respective Releasees by reason of any act, omission, transaction, occurrence, conduct, circumstance, condition, harm, matter, cause or thing that has occurred or existed at any time from the beginning of time up to and including the Closing, including, without limitation, relating to any contract or other matter between the Releasor and Tyto, Releasor's employment (either as an employee or consultant, as applicable) with Tyto or the Releasor's interest in the equity or assets of Tyto (collectively, "**Claims**"), provided, however, that the foregoing release shall not cover Claims arising from rights of Releasor pursuant to (i) the APA or any other agreement delivered pursuant to the APA or in connection with the transactions contemplated thereby and/or (ii) any bonus incentive agreement between Releasor and Tyto.

(a)  Releasor acknowledges that he or she is familiar with Section 1542 of the Civil Code of the State of California ("**Section 1542**"), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(b)  Except for Claims not released pursuant to Section 3(b), Releasor hereby waives and relinquishes any rights and benefits that Releasor may have under Section 1542 or any similar statute or common law principle of any jurisdiction. Releasor acknowledges that he or she may hereafter discover facts in addition to or different from those that Releasor now knows or believes to be true with respect to the subject matter of this release, but it is Releasor's intention, subject to Section 3(a) and Section 3(b), to fully and finally and forever settle and release any and all Claims that do now exist, may exist or heretofore have existed with respect to the subject matter of this release. In furtherance of this intention, except for Claims not released pursuant to Section 3(b), the releases contained herein shall be and remain in effect as full and complete general releases notwithstanding the discovery or existence of any such additional or different facts.

4.  <u>Termination</u>. To the extent this Agreement is executed prior to the Closing of the APA, this Agreement is conditioned upon the Closing of the APA and shall become null and void and shall have no effect whatsoever, without any action on the part of any person or entity, upon termination of the APA for any reason prior to the Closing.

5.  <u>Miscellaneous</u>. This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which, when taken together, will constitute one and the same Agreement. The internal laws of the State of California, irrespective of its conflicts of law principles, shall govern the validity of this Agreement, the construction of its terms and the interpretation and enforcement of the rights and duties of the parties hereto. If any provision of this Agreement is determined to be invalid, unlawful, void or unenforceable to any extent, such provision or any portion thereof will be interpreted to best reflect the parties' intent, and the remainder of this Agreement will not be affected and will continue to be valid and enforceable to the fullest extent permitted by law. This Agreement may only be amended, modified and supplemented by written agreement of the parties hereto. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, heirs, personal representatives and assigns to the extent permitted under the Agreement.

UBER00319643

[Signature page follows]

CONFIDENTIAL

UBER00319644

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.

**Ottomotto LLC**

By: _____
      Name: Lior Ron
      Title: President

CONFIDENTIAL

UBER00319645

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.

By: _Michael Karasoff_

Name:

## RELEASE AGREEMENT

THIS RELEASE AGREEMENT (this "**Agreement**"), dated as of May 6, 2016, is made by and between Ottomotto LLC, a Delaware limited liability company (the "**Company**") and the undersigned.

## W I T N E S S E T H:

WHEREAS, pursuant to that certain Asset Purchase Agreement (the "**APA**"), dated as of May 5, 2016, by and among the Company and Tyto LiDAR, LLC, a California limited liability company ("**Tyto**"), subject to the terms and conditions set forth in the APA, the Company will acquire certain assets of Tyto.

WHEREAS, in connection with the APA, the undersigned will receive an offer of employment or consultancy with the Company and a bonus payment from the Company; and

WHEREAS, in order to induce the Company to complete the transactions contemplated by the APA, the undersigned is willing to enter into this Agreement.

NOW, THEREFORE, intending to be legally bound, in consideration of the foregoing and the mutual covenants and agreements herein contained, the parties hereto hereby agree as follows:

1.   <u>Acknowledgment of Consideration</u>. The undersigned hereby acknowledges and agrees that it is entering into this Agreement in consideration of (a) the bonus payment payable to the undersigned in connection with the APA and the undersigned's employment or consultancy with the Company and (b) an offer of employment or consultancy from the Company.

2.   <u>Confidentiality</u>. Other than as required by law, the undersigned agrees to at all times keep confidential and not divulge, furnish or make accessible any information regarding or relating to this Agreement or the APA (or any of the transactions contemplated hereby or thereby), or any claim or dispute arising out of or related to this Agreement, the APA or transactions contemplated hereby or thereby to anyone other than agents, investors, attorneys, accountants and financial advisors of the undersigned who need to know such information and are (a) bound by confidentiality restrictions or (b) made aware of the confidential nature of such information, directed by the undersigned to treat such information as confidential and bound by legally enforceable codes of professional responsibility or agreements that require maintenance of confidentiality.

3.   <u>General Release</u>. Effective for all purposes as of the closing of the APA (the "**Closing**"), the undersigned acknowledges and agrees, on behalf of himself or herself and each of the undersigned's agents, trustees, beneficiaries, estate, successors and assigns (each, a "**Releasor**") that:

(a)   Releasor represents and warrants that, as of the date hereof, other than as set forth in the proviso in Section 3(b), he or she (together with each other Releasor) has no Claims (as defined below) against Tyto, the Company, Otto Trucking LLC, or any of their respective employees, managers, directors, members, stockholders, officers, agents, attorneys, representatives, predecessors, successors, assigns or the like (collectively, the "**Releasees**") relating to any contract or other matter between the Releasor and Tyto, or any of the Releasor's interest in Tyto, or in the Releasor's capacity as a current or former employee, manager or security holder of Tyto.

(b)   Releasor hereby irrevocably and unconditionally releases the Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements,

controversies, damages or causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs incurred) of any nature whatsoever, in law or equity, whether known or unknown, contingent or otherwise, which the Releasor now has, may ever have had in the past or may have in the future against any of the respective Releasees by reason of any act, omission, transaction, occurrence, conduct, circumstance, condition, harm, matter, cause or thing that has occurred or existed at any time from the beginning of time up to and including the Closing, including, without limitation, relating to any contract or other matter between the Releasor and Tyto, Releasor's employment (either as an employee or consultant, as applicable) with Tyto or the Releasor's interest in the equity or assets of Tyto (collectively, "**Claims**"), provided, however, that the foregoing release shall not cover Claims arising from rights of Releasor pursuant to (i) the APA or any other agreement delivered pursuant to the APA or in connection with the transactions contemplated thereby and/or (ii) any bonus incentive agreement between Releasor and Tyto.

(a) Releasor acknowledges that he or she is familiar with Section 1542 of the Civil Code of the State of California ("**Section 1542**"), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(b) Except for Claims not released pursuant to Section 3(b), Releasor hereby waives and relinquishes any rights and benefits that Releasor may have under Section 1542 or any similar statute or common law principle of any jurisdiction. Releasor acknowledges that he or she may hereafter discover facts in addition to or different from those that Releasor now knows or believes to be true with respect to the subject matter of this release, but it is Releasor's intention, subject to Section 3(a) and Section 3(b), to fully and finally and forever settle and release any and all Claims that do now exist, may exist or heretofore have existed with respect to the subject matter of this release. In furtherance of this intention, except for Claims not released pursuant to Section 3(b), the releases contained herein shall be and remain in effect as full and complete general releases notwithstanding the discovery or existence of any such additional or different facts.

4.      Termination. To the extent this Agreement is executed prior to the Closing of the APA, this Agreement is conditioned upon the Closing of the APA and shall become null and void and shall have no effect whatsoever, without any action on the part of any person or entity, upon termination of the APA for any reason prior to the Closing.

5.      Miscellaneous. This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which, when taken together, will constitute one and the same Agreement. The internal laws of the State of California, irrespective of its conflicts of law principles, shall govern the validity of this Agreement, the construction of its terms and the interpretation and enforcement of the rights and duties of the parties hereto. If any provision of this Agreement is determined to be invalid, unlawful, void or unenforceable to any extent, such provision or any portion thereof will be interpreted to best reflect the parties' intent, and the remainder of this Agreement will not be affected and will continue to be valid and enforceable to the fullest extent permitted by law.  This Agreement may only be amended, modified and supplemented by written agreement of the parties hereto.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, heirs, personal representatives and assigns to the extent permitted under the Agreement.

UBER00319648

[Signature page follows]

CONFIDENTIAL

UBER00319649

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.

**Ottomotto LLC**

By: _____
    Name: Lior Ron
    Title: President

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.

By: _____

Name:   James Haslim

                                              UBER00319651

## RELEASE AGREEMENT

THIS RELEASE AGREEMENT (this "**Agreement**"), dated as of May 6, 2016, is made by and between Ottomotto LLC, a Delaware limited liability company (the "**Company**") and the undersigned.

## W I T N E S S E T H :

WHEREAS, pursuant to that certain Asset Purchase Agreement (the "**APA**"), dated as of May 5, 2016, by and among the Company and Tyto LiDAR, LLC, a California limited liability company ("**Tyto**"), subject to the terms and conditions set forth in the APA, the Company will acquire certain assets of Tyto.

WHEREAS, in connection with the APA, the undersigned will receive an offer of employment or consultancy with the Company and a bonus payment from the Company; and

WHEREAS, in order to induce the Company to complete the transactions contemplated by the APA, the undersigned is willing to enter into this Agreement.

NOW, THEREFORE, intending to be legally bound, in consideration of the foregoing and the mutual covenants and agreements herein contained, the parties hereto hereby agree as follows:

1. <u>Acknowledgment of Consideration</u>. The undersigned hereby acknowledges and agrees that it is entering into this Agreement in consideration of (a) the bonus payment payable to the undersigned in connection with the APA and the undersigned's employment or consultancy with the Company and (b) an offer of employment or consultancy from the Company.

2. <u>Confidentiality</u>. Other than as required by law, the undersigned agrees to at all times keep confidential and not divulge, furnish or make accessible any information regarding or relating to this Agreement or the APA (or any of the transactions contemplated hereby or thereby), or any claim or dispute arising out of or related to this Agreement, the APA or the transactions contemplated hereby or thereby to anyone other than agents, investors, attorneys, accountants and financial advisors of the undersigned who need to know such information and are (a) bound by confidentiality restrictions or (b) made aware of the confidential nature of such information, directed by the undersigned to treat such information as confidential and bound by legally enforceable codes of professional responsibility or agreements that require maintenance of confidentiality.

3. <u>General Release</u>. Effective for all purposes as of the closing of the APA (the "**Closing**"), the undersigned acknowledges and agrees, on behalf of himself or herself and each of the undersigned's agents, trustees, beneficiaries, estate, successors and assigns (each, a "**Releasor**") that:

     (a)     Releasor represents and warrants that, as of the date hereof, he or she (together with each other Releasor) has no Claims (as defined below) against Tyto, the Company, Otto Trucking LLC, or any of their respective employees, managers, directors, members, stockholders, officers, agents, attorneys, representatives, predecessors, successors, assigns or the like (collectively, the "**Releasees**") relating to any contract or other matter between the Releasor and Tyto, or any of the Releasor's interest in Tyto, or in the Releasor's capacity as a current or former employee, manager or security holder of Tyto.

     (b)     Releasor hereby irrevocably and unconditionally releases the Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, or causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs incurred) of any nature whatsoever, in law or equity, whether known or unknown, contingent or otherwise,

UBER00319652

which the Releasor now has, may ever have had in the past or may have in the future against any of the respective Releasees by reason of any act, omission, transaction, occurrence, conduct, circumstance, condition, harm, matter, cause or thing that has occurred or existed at any time from the beginning of time up to and including the Closing, including, without limitation, relating to any contract or other matter between the Releasor and Tyto, Releasor's employment (either as an employee or consultant, as applicable) with Tyto or the Releasor's interest in the equity or assets of Tyto (collectively, "**Claims**"), provided, however, that the foregoing release shall not cover Claims arising from rights of Releasor pursuant to the APA or any other agreement delivered pursuant to the APA or in connection with the transactions contemplated thereby.

(c)     Releasor acknowledges that he or she is familiar with Section 1542 of the Civil Code of the State of California ("**Section 1542**"), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(d)     Except for Claims not released pursuant to Section 3(b), Releasor hereby waives and relinquishes any rights and benefits that Releasor may have under Section 1542 or any similar statute or common law principle of any jurisdiction. Releasor acknowledges that he or she may hereafter discover facts in addition to or different from those that Releasor now knows or believes to be true with respect to the subject matter of this release, but it is Releasor's intention, subject to Section 3(a) and Section 3(b), to fully and finally and forever settle and release any and all Claims that do now exist, may exist or heretofore have existed with respect to the subject matter of this release. In furtherance of this intention, except for Claims not released pursuant to Section 3(b), the releases contained herein shall be and remain in effect as full and complete general releases notwithstanding the discovery or existence of any such additional or different facts.

4.     Termination. To the extent this Agreement is executed prior to the Closing of the APA, this Agreement is conditioned upon the Closing of the APA and shall become null and void and shall have no effect whatsoever, without any action on the part of any person or entity, upon termination of the APA for any reason prior to the Closing.

5.     Miscellaneous. This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which, when taken together, will constitute one and the same Agreement. The internal laws of the State of California, irrespective of its conflicts of law principles, shall govern the validity of this Agreement, the construction of its terms and the interpretation and enforcement of the rights and duties of the parties hereto. If any provision of this Agreement is determined to be invalid, unlawful, void or unenforceable to any extent, such provision or any portion thereof will be interpreted to best reflect the parties' intent, and the remainder of this Agreement will not be affected and will continue to be valid and enforceable to the fullest extent permitted by law. This Agreement may only be amended, modified and supplemented by written agreement of the parties hereto. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, heirs, personal representatives and assigns to the extent permitted under the Agreement.

[Signature page follows]

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.

**Ottomotto LLC**

By: _____
Name: Lior Ron
Title: President

CONFIDENTIAL

UBER00319654

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.



By: _____
Name:

## RELEASE AGREEMENT

THIS RELEASE AGREEMENT (this "**Agreement**"), dated as of May 9, 2016, is made by and between Ottomotto LLC, a Delaware limited liability company (the "**Company**") and the undersigned.

### W I T N E S S E T H :

WHEREAS, pursuant to that certain Asset Purchase Agreement (the "**APA**"), dated as of May 5, 2016, by and among the Company and Tyto LiDAR, LLC, a California limited liability company ("**Tyto**"), subject to the terms and conditions set forth in the APA, the Company will acquire certain assets of Tyto.

WHEREAS, in connection with the APA, the undersigned will receive an offer of employment or consultancy with the Company and a bonus payment from the Company; and

WHEREAS, in order to induce the Company to complete the transactions contemplated by the APA, the undersigned is willing to enter into this Agreement.

NOW, THEREFORE, intending to be legally bound, in consideration of the foregoing and the mutual covenants and agreements herein contained, the parties hereto hereby agree as follows:

1.  <u>Acknowledgment of Consideration</u>. The undersigned hereby acknowledges and agrees that it is entering into this Agreement in consideration of (a) the bonus payment payable to the undersigned in connection with the APA and the undersigned's employment or consultancy with the Company and (b) an offer of employment or consultancy from the Company.

2.  <u>Confidentiality</u>. Other than as required by law, the undersigned agrees to at all times keep confidential and not divulge, furnish or make accessible any information regarding or relating to this Agreement or the APA (or any of the transactions contemplated hereby or thereby), or any claim or dispute arising out of or related to this Agreement, the APA or the transactions contemplated hereby or thereby to anyone other than agents, investors, attorneys, accountants and financial advisors of the undersigned who need to know such information and are (a) bound by confidentiality restrictions or (b) made aware of the confidential nature of such information, directed by the undersigned to treat such information as confidential and bound by legally enforceable codes of professional responsibility or agreements that require maintenance of confidentiality.

3.  <u>General Release</u>. Effective for all purposes as of the closing of the APA (the "**Closing**"), the undersigned acknowledges and agrees, on behalf of himself or herself and each of the undersigned's agents, trustees, beneficiaries, estate, successors and assigns (each, a "**Releasor**") that:

    (a)      Releasor represents and warrants that, as of the date hereof, other than as set forth in the proviso in Section 3(b), he or she (together with each other Releasor) has no Claims (as defined below) against Tyto, the Company, Otto Trucking LLC, or any of their respective employees, managers, directors, members, stockholders, officers, agents, attorneys, representatives, predecessors, successors, assigns or the like (collectively, the "**Releasees**") relating to any contract or other matter between the Releasor and Tyto, or any of the Releasor's interest in Tyto, or in the Releasor's capacity as a current or former employee, manager or security holder of Tyto.

    (b)      Releasor hereby irrevocably and unconditionally releases the Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages or causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs

incurred) of any nature whatsoever, in law or equity, whether known or unknown, contingent or otherwise, which the Releasor now has, may ever have had in the past or may have in the future against any of the respective Releasees by reason of any act, omission, transaction, occurrence, conduct, circumstance, condition, harm, matter, cause or thing that has occurred or existed at any time from the beginning of time up to and including the Closing, including, without limitation, relating to any contract or other matter between the Releasor and Tyto, Releasor's employment (either as an employee or consultant, as applicable) with Tyto or the Releasor's interest in the equity or assets of Tyto (collectively, "**Claims**"), provided, however, that the foregoing release shall not cover Claims arising from rights of Releasor pursuant to the APA or any other agreement delivered pursuant to the APA or in connection with the transactions contemplated thereby.

(c)     Releasor acknowledges that he or she is familiar with Section 1542 of the Civil Code of the State of California ("**Section 1542**"), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(d)     Except for Claims not released pursuant to Section 3(b), Releasor hereby waives and relinquishes any rights and benefits that Releasor may have under Section 1542 or any similar statute or common law principle of any jurisdiction. Releasor acknowledges that he or she may hereafter discover facts in addition to or different from those that Releasor now knows or believes to be true with respect to the subject matter of this release, but it is Releasor's intention, subject to Section 3(a) and Section 3(b), to fully and finally and forever settle and release any and all Claims that do now exist, may exist or heretofore have existed with respect to the subject matter of this release. In furtherance of this intention, except for Claims not released pursuant to Section 3(b), the releases contained herein shall be and remain in effect as full and complete general releases notwithstanding the discovery or existence of any such additional or different facts.

4.     <u>Termination</u>. To the extent this Agreement is executed prior to the Closing of the APA, this Agreement is conditioned upon the Closing of the APA and shall become null and void and shall have no effect whatsoever, without any action on the part of any person or entity, upon termination of the APA for any reason prior to the Closing.

5.     <u>Miscellaneous</u>. This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which, when taken together, will constitute one and the same Agreement. The internal laws of the State of California, irrespective of its conflicts of law principles, shall govern the validity of this Agreement, the construction of its terms and the interpretation and enforcement of the rights and duties of the parties hereto. If any provision of this Agreement is determined to be invalid, unlawful, void or unenforceable to any extent, such provision or any portion thereof will be interpreted to best reflect the parties' intent, and the remainder of this Agreement will not be affected and will continue to be valid and enforceable to the fullest extent permitted by law.  This Agreement may only be amended, modified and supplemented by written agreement of the parties hereto.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, heirs, personal representatives and assigns to the extent permitted under the Agreement.

[Signature page follows]

UBER00319657

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.

**Ottomotto LLC**

By: _____
Name: Lior Ron
Title: President

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.

By: _____

Name: Benjamin M. Becker

UBER00319659

# RELEASE AGREEMENT

THIS RELEASE AGREEMENT (this "**Agreement**"), dated as of May 9, 2016, is made by and between Ottomotto LLC, a Delaware limited liability company (the "**Company**") and the undersigned.

## W I T N E S S E T H:

WHEREAS, pursuant to that certain Asset Purchase Agreement (the "**APA**"), dated as of May 5, 2016, by and among the Company and Tyto LiDAR, LLC, a California limited liability company ("**Tyto**"), subject to the terms and conditions set forth in the APA, the Company will acquire certain assets of Tyto.

WHEREAS, in connection with the APA, the undersigned will receive an offer of employment or consultancy with the Company and a bonus payment from the Company; and

WHEREAS, in order to induce the Company to complete the transactions contemplated by the APA, the undersigned is willing to enter into this Agreement.

NOW, THEREFORE, intending to be legally bound, in consideration of the foregoing and the mutual covenants and agreements herein contained, the parties hereto hereby agree as follows:

1.  <u>Acknowledgment of Consideration</u>. The undersigned hereby acknowledges and agrees that it is entering into this Agreement in consideration of (a) the bonus payment payable to the undersigned in connection with the APA and the undersigned's employment or consultancy with the Company and (b) an offer of employment or consultancy from the Company.

2.  <u>Confidentiality</u>. Other than as required by law, the undersigned agrees to at all times keep confidential and not divulge, furnish or make accessible any information regarding or relating to this Agreement or the APA (or any of the transactions contemplated hereby or thereby), or any claim or dispute arising out of or related to this Agreement, the APA or the transactions contemplated hereby or thereby to anyone other than agents, investors, attorneys, accountants and financial advisors of the undersigned who need to know such information and are (a) bound by confidentiality restrictions or (b) made aware of the confidential nature of such information, directed by the undersigned to treat such information as confidential and bound by legally enforceable codes of professional responsibility or agreements that require maintenance of confidentiality.

3.  <u>General Release</u>. Effective for all purposes as of the closing of the APA (the "**Closing**"), the undersigned acknowledges and agrees, on behalf of himself or herself and each of the undersigned's agents, trustees, beneficiaries, estate, successors and assigns (each, a "**Releasor**") that:

      (a)     Releasor represents and warrants that, as of the date hereof, other than as set forth in the proviso in Section 3(b), he or she (together with each other Releasor) has no Claims (as defined below) against Tyto, the Company, Otto Trucking LLC, or any of their respective employees, managers, directors, members, stockholders, officers, agents, attorneys, representatives, predecessors, successors, assigns or the like (collectively, the "**Releasees**") relating to any contract or other matter between the Releasor and Tyto, or any of the Releasor's interest in Tyto, or in the Releasor's capacity as a current or former employee, manager or security holder of Tyto.

      (b)     Releasor hereby irrevocably and unconditionally releases the Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages or causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs

UBER00319660

incurred) of any nature whatsoever, in law or equity, whether known or unknown, contingent or otherwise, which the Releasor now has, may ever have had in the past or may have in the future against any of the respective Releasees by reason of any act, omission, transaction, occurrence, conduct, circumstance, condition, harm, matter, cause or thing that has occurred or existed at any time from the beginning of time up to and including the Closing, including, without limitation, relating to any contract or other matter between the Releasor and Tyto, Releasor's employment (either as an employee or consultant, as applicable) with Tyto or the Releasor's interest in the equity or assets of Tyto (collectively, "**Claims**"), provided, however, that the foregoing release shall not cover Claims arising from rights of Releasor pursuant to (i) the APA or any other agreement delivered pursuant to the APA or in connection with the transactions contemplated thereby and/or (ii) any bonus incentive agreement between Releasor and Tyto.

(c)    Releasor acknowledges that he or she is familiar with Section 1542 of the Civil Code of the State of California ("**Section 1542**"), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(d)    Except for Claims not released pursuant to Section 3(b), Releasor hereby waives and relinquishes any rights and benefits that Releasor may have under Section 1542 or any similar statute or common law principle of any jurisdiction. Releasor acknowledges that he or she may hereafter discover facts in addition to or different from those that Releasor now knows or believes to be true with respect to the subject matter of this release, but it is Releasor's intention, subject to Section 3(a) and Section 3(b), to fully and finally and forever settle and release any and all Claims that do now exist, may exist or heretofore have existed with respect to the subject matter of this release. In furtherance of this intention, except for Claims not released pursuant to Section 3(b), the releases contained herein shall be and remain in effect as full and complete general releases notwithstanding the discovery or existence of any such additional or different facts.

4.    Termination. To the extent this Agreement is executed prior to the Closing of the APA, this Agreement is conditioned upon the Closing of the APA and shall become null and void and shall have no effect whatsoever, without any action on the part of any person or entity, upon termination of the APA for any reason prior to the Closing.

5.    Miscellaneous. This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which, when taken together, will constitute one and the same Agreement. The internal laws of the State of California, irrespective of its conflicts of law principles, shall govern the validity of this Agreement, the construction of its terms and the interpretation and enforcement of the rights and duties of the parties hereto. If any provision of this Agreement is determined to be invalid, unlawful, void or unenforceable to any extent, such provision or any portion thereof will be interpreted to best reflect the parties' intent, and the remainder of this Agreement will not be affected and will continue to be valid and enforceable to the fullest extent permitted by law.  This Agreement may only be amended, modified and supplemented by written agreement of the parties hereto.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, heirs, personal representatives and assigns to the extent permitted under the Agreement.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.

**Ottomotto LLC**

By: _____

Name: Lior Ron
Title: President

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Release Agreement to be duly executed as of the day and year first set forth above.

By: _____
Name:  BRENT SCHWARZ

UBER00319663

<u>Attestation</u>

1.     I have provided to Stroz copies of and/or otherwise advised Stroz of any agreements or other obligations to which I am subject with "Former Employer" (as defined in the Indemnity Construct), regarding the nondisclosure of proprietary and confidential information, assignment of inventions or intellectual property, and restrictions on competition or solicitation of employees and customers, including any related side agreements, (collectively, "Agreements"), and subject to any matters or information disclosed to Stroz, I have complied with my obligations under any Agreements.

2.     I have provided and/or disclosed (as applicable) to Stroz all non-Former Employer computers (including but not limited to any laptops, desktops and tablets), internal or external computer readable storage media (including but not limited to any hard drives, flash drives, zip drives, thumb drives, floppy disks or CD-ROM disks), mobile phones, cloud storage, FTP or share sites, or email or social media accounts or other potential sources of -Former Employer- data that I have used or had access to during and after employment with Former Employer.

3.     Subject to any matters or information disclosed to Stroz, I (a) was not solicited by Newco or Unicorn to leave Former Employer or to join Newco or Unicorn; (b) have not solicited any other person to leave Former Employer or to join Newco or Unicorn; and (c) have not told any person or party to solicit anyone to leave Former Employer or to join Newco or Unicorn.

4.     Other than what I may have retained in my memory in the course and scope of my employment with Former Employer, and subject to any matters or information disclosed to Stroz, to my best knowledge I returned to Former Employer and have not retained Former Employer confidential or proprietary documents or information or property (including but not limited to hardware and software) after my employment with Former Employer.

5.     I have not instructed anyone to use or disclose to anyone other than Former Employer (including me) any Former Employer confidential or proprietary information (except to Stroz as part of its investigation), and I am not aware of anyone doing so.

6.     With the exception of questions to which I did not respond because I was not certain the questions were relevant, to my best knowledge, (a) I have provided good faith, complete and truthful responses in all material respects to Stroz's questions and (b) all of the information I have provided to Stroz is true and correct in all material respects.

Signature of Diligenced Employee: _____ Date: 4/11/16

Anthony LevANDowski

CONFIDENTIAL

UBER00319664

## Attestation

1.     I have provided to Stroz copies of and/or otherwise advised Stroz of any agreements or other obligations to which I am subject with "Former Employer" (as defined in the Indemnity Construct), regarding the nondisclosure of proprietary and confidential information, assignment of inventions or intellectual property, and restrictions on competition or solicitation of employees and customers, including any related side agreements, (collectively, "Agreements"), and subject to any matters or information disclosed to Stroz, I have complied with my obligations under any Agreements.

2.     I have provided and/or disclosed (as applicable) to Stroz all non-Former Employer computers (including but not limited to any laptops, desktops and tablets), internal or external computer readable storage media (including but not limited to any hard drives, flash drives, zip drives, thumb drives, floppy disks or CD-ROM disks), mobile phones, cloud storage, FTP or share sites, or email or social media accounts or other potential sources of -Former Employer- data that I have used or had access to during and after employment with Former Employer.

3.     Subject to any matters or information disclosed to Stroz, I (a) was not solicited by Newco or Unicorn to leave Former Employer or to join Newco or Unicorn; (b) have not solicited any other person to leave Former Employer or to join Newco or Unicorn; and (c) have not told any person or party to solicit anyone to leave Former Employer or to join Newco or Unicorn.

4.     Other than what I may have retained in my memory in the course and scope of my employment with Former Employer, and subject to any matters or information disclosed to Stroz, to my best knowledge I returned to Former Employer and have not retained Former Employer confidential or proprietary documents or information or property (including but not limited to hardware and software) after my employment with Former Employer.

5.     I have not instructed anyone to use or disclose to anyone other than Former Employer (including me) any Former Employer confidential or proprietary information (except to Stroz as part of its investigation), and I am not aware of anyone doing so.

6.     With the exception of questions to which I did not respond because I was not certain the questions were relevant, to my best knowledge, (a) I have provided good faith, complete and truthful responses in all material respects to Stroz's questions and (b) all of the information I have provided to Stroz is true and correct in all material respects.

Signature of Diligenced Employee: _____ Date: __4/11/16__

Colin Sebern

UBER00319665

Attestation

1.    I have provided to Stroz copies of and/or otherwise advised Stroz of any agreements or other obligations to which I am subject with "Former Employer" (as defined in the Indemnity Construct), regarding the nondisclosure of proprietary and confidential information, assignment of inventions or intellectual property, and restrictions on competition or solicitation of employees and customers, including any related side agreements, (collectively, "Agreements"), and subject to any matters or information disclosed to Stroz, I have complied with my obligations under any Agreements.

2.    I have provided and/or disclosed (as applicable) to Stroz all non-Former Employer computers (including but not limited to any laptops, desktops and tablets), internal or external computer readable storage media (including but not limited to any hard drives, flash drives, zip drives, thumb drives, floppy disks or CD-ROM disks), mobile phones, cloud storage, FTP or share sites, or email or social media accounts or other potential sources of -Former Employer- data that I have used or had access to during and after employment with Former Employer.

3.    Subject to any matters or information disclosed to Stroz, I (a) was not solicited by Newco or Unicorn to leave Former Employer or to join Newco or Unicorn; (b) have not solicited any other person to leave Former Employer or to join Newco or Unicorn; and (c) have not told any person or party to solicit anyone to leave Former Employer or to join Newco or Unicorn.

4.    Other than what I may have retained in my memory in the course and scope of my employment with Former Employer, and subject to any matters or information disclosed to Stroz, to my best knowledge I returned to Former Employer and have not retained Former Employer confidential or proprietary documents or information or property (including but not limited to hardware and software) after my employment with Former Employer.

5.    I have not instructed anyone to use or disclose to anyone other than Former Employer (including me) any Former Employer confidential or proprietary information (except to Stroz as part of its investigation), and I am not aware of anyone doing so.

6.    With the exception of questions to which I did not respond because I was not certain the questions were relevant, to my best knowledge, (a) I have provided good faith, complete and truthful responses in all material respects to Stroz's questions and (b) all of the information I have provided to Stroz is true and correct in all material respects.

Signature of Diligenced Employee: _____   Date: 4/11/16

Donald Burnette

CONFIDENTIAL

UBER00319666

<u>Attestation</u>

1.     I have provided to Stroz copies of and/or otherwise advised Stroz of any agreements or other obligations to which I am subject with "Former Employer" (as defined in the Indemnity Construct), regarding the nondisclosure of proprietary and confidential information, assignment of inventions or intellectual property, and restrictions on competition or solicitation of employees and customers, including any related side agreements, (collectively, "Agreements"), and subject to any matters or information disclosed to Stroz, I have complied with my obligations under any Agreements.

2.     I have provided and/or disclosed (as applicable) to Stroz all non-Former Employer computers (including but not limited to any laptops, desktops and tablets), internal or external computer readable storage media (including but not limited to any hard drives, flash drives, zip drives, thumb drives, floppy disks or CD-ROM disks), mobile phones, cloud storage, FTP or share sites, or email or social media accounts or other potential sources of -Former Employer- data that I have used or had access to during and after employment with Former Employer.

3.     Subject to any matters or information disclosed to Stroz, I (a) was not solicited by Newco or Unicorn to leave Former Employer or to join Newco or Unicorn; (b) have not solicited any other person to leave Former Employer or to join Newco or Unicorn; and (c) have not told any person or party to solicit anyone to leave Former Employer or to join Newco or Unicorn.

4.     Other than what I may have retained in my memory in the course and scope of my employment with Former Employer, and subject to any matters or information disclosed to Stroz, to my best knowledge I returned to Former Employer and have not retained Former Employer confidential or proprietary documents or information or property (including but not limited to hardware and software) after my employment with Former Employer.

5.     I have not instructed anyone to use or disclose to anyone other than Former Employer (including me) any Former Employer confidential or proprietary information (except to Stroz as part of its investigation), and I am not aware of anyone doing so.

6.     With the exception of questions to which I did not respond because I was not certain the questions were relevant, to my best knowledge, (a) I have provided good faith, complete and truthful responses in all material respects to Stroz's questions and (b) all of the information I have provided to Stroz is true and correct in all material respects.

Signature of Diligenced Employee: _____     Date: 4/11/16

LIOR RON

CONFIDENTIAL

<u>Attestation</u>

1.      I have provided to Stroz copies of and/or otherwise advised Stroz of any agreements or other obligations to which I am subject with "Former Employer" (as defined in the Indemnity Construct), regarding the nondisclosure of proprietary and confidential information, assignment of inventions or intellectual property, and restrictions on competition or solicitation of employees and customers, including any related side agreements, (collectively, "Agreements"), and subject to any matters or information disclosed to Stroz, I have complied with my obligations under any Agreements.

2.      I have provided and/or disclosed (as applicable) to Stroz all non-Former Employer computers (including but not limited to any laptops, desktops and tablets), internal or external computer readable storage media (including but not limited to any hard drives, flash drives, zip drives, thumb drives, floppy disks or CD-ROM disks), mobile phones, cloud storage, FTP or share sites, or email or social media accounts or other potential sources of -Former Employer- data that I have used or had access to during and after employment with Former Employer.

3.      Subject to any matters or information disclosed to Stroz, I (a) was not solicited by Newco or Unicorn to leave Former Employer or to join Newco or Unicorn; (b) have not solicited any other person to leave Former Employer or to join Newco or Unicorn; and (c) have not told any person or party to solicit anyone to leave Former Employer or to join Newco or Unicorn.

4.      Other than what I may have retained in my memory in the course and scope of my employment with Former Employer, and subject to any matters or information disclosed to Stroz, to my best knowledge I returned to Former Employer and have not retained Former Employer confidential or proprietary documents or information or property (including but not limited to hardware and software) after my employment with Former Employer.

5.      I have not instructed anyone to use or disclose to anyone other than Former Employer (including me) any Former Employer confidential or proprietary information (except to Stroz as part of its investigation), and I am not aware of anyone doing so.

6.      With the exception of questions to which I did not respond because I was not certain the questions were relevant, to my best knowledge, (a) I have provided good faith, complete and truthful responses in all material respects to Stroz's questions and (b) all of the information I have provided to Stroz is true and correct in all material respects.

Signature of Diligenced Employee: _____  Date: _04/11/2016_

Soren Juelsgaard

The parties hereto have executed this Agreement as of the date first written above.

**OTTOMOTTO LLC:**                    **Employee:**

By: _____          _____
                                     Signature

Name: _____          Denis Rykov
                                     Name (Please Print)

Title: _____

*[Signature Page to Employee Invention Assignment and Confidentiality Agreement]*

CONFIDENTIAL                    UBER00319669