QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Waymo LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, | CASE NO. 3:17-cv-00939-WHA |
| Plaintiff, | **PLAINTIFF WAYMO'S MOTION TO COMPEL UBER SOURCE CODE** |
| vs. | |
| UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | |

# TABLE OF CONTENTS

<b>Page</b>

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

III. ARGUMENT .................................................................................................................. 4

    A. Uber's Current Source Code is Highly Relevant To The Question of Whether Uber Misappropriated Waymo Trade Secrets ............................................... 4

    B. Waymo Was Not On Notice of The Source Code Theft Before The Stroz Report ................................................................................................................... 5

    C. Waymo Requests This Discovery to Properly Comply with the Court's Oct. 23 Deadline .......................................................................................................... 6

    D. Waymo Did Not Waive The New Software Claims ................................................. 7

IV. CONCLUSION ............................................................................................................... 8

## I. INTRODUCTION

Waymo brought this case upon learning of a scheme orchestrated by Defendants[1] to misappropriate trade secrets in self driving cars, primarily related to hardware, and LIDAR sensors in particular. Seven months into the case, and less than a month before the original trial date, the Federal Circuit ordered Uber to produce a "due diligence" report prepared by Stroz Friedberg (the "Stroz Report"). As the Court has recognized, Uber previously fought tooth and nail to keep the Stroz Report hidden from view through improper claims of privilege. Dkt. 1965, Oct. 3 Hr'g. Tr. at 38:24-39:5 ("Uber is the one that set up this elaborate scheme to try to conceal the facts from the public and from – particularly from Waymo, if it ever came to light, and to engineer this elaborate attorney-client joint defense idea that now every judge has looked at it has rejected." )

The Stroz Report revealed *for the first time* that former Waymo employees took Waymo's autonomous vehicle source code when they were recruited to join Uber, including software related to the "brains" of the vehicle that determines how the car moves. Upon discovering a reference to source code in the Stroz Report, Counsel for Waymo promptly demanded the code, hired a forensic software expert, and began examining the code as soon as it was made available in an accessible format at the end of the day on October 2. Within the last seven days, Waymo has discovered good reason to believe that Uber has used trade secrets to develop the "brains" of its own autonomous vehicle ("AV") source code. Waymo does not yet, however, have Uber's current source code. Access to Uber's source code will allow Waymo to confirm that Uber has incorporated trade secrets from Waymo's source code into its latest AV technology.

Waymo is under an October 23, 2017 deadline to amend its list of trade secrets, prepare supplemental expert reports, and exhibit lists in view of the Stroz Report and other new discovery. Accordingly, upon receipt of this new information, Waymo asked to inspect Defendants current source code to investigate these new claims. Uber has refused, arguing that discovery is closed and

---

[1] Waymo primarily refers to Uber in this motion, as that is the party that previously made available source code and with which it met and conferred in advance of this motion. Waymo is not aware whether Otto Trucking has access, custody or control of this same code as it has not substantively participated in parties' meet and confers on this issue. To the extent Otto Trucking has custody or control of this source code, Waymo would request it similarly make it available.

1  Waymo cannot investigate new claims.  Uber's position is meritless.  As the Court is well aware,
2  Waymo previously was blocked from seeing the Stroz Report and its exhibits.  Under Judge Alsup's
3  orders, Waymo is entitled to seek discovery on new claims it was not previously on notice of by virtue
4  of Uber's improper privilege assertions.  Indeed, that is the reason why the Court continued the trial
5  date in this matter.

6        Waymo expects Uber will argue that because these new software related claims go beyond
7  Waymo's original list of trade secrets provided at the outset of this case, Waymo cannot seek
8  discovery on these claims.  Such an argument ignores that Uber hid behind claims of privilege the
9  necessary facts for Waymo to have made this motion earlier and taken this discovery earlier.  Prior to
10 filing its Complaint, Waymo was unaware of facts showing Uber had stolen Waymo's source code.
11 Accordingly the Complaint, and the detailed trade secret list filed shortly thereafter, was generally
12 limited to hardware technology, primarily focused on LIDAR.  After discovery commenced, Uber
13 improperly hid Waymo's stolen source code under a claim that it was protected by privilege.  Had
14 Uber complied with the Court's first March 16, 2017 order in this case and produced Waymo source
15 code by March 31 when it was ordered to do so, Waymo could have amended its trade secret list and
16 taken discovery on these claims at the outset of this case.  Dkt. 61.  Waymo should not be prejudiced
17 because of the delay caused by Uber's overruled privileged assertions, not to mention its improper
18 hiding of non-privileged Waymo documents and software behind this alleged privilege.

19       Because of Uber's tactics, Waymo must now take discovery on these new claims at this late
20 date in order to comply with the Court's Oct. 23 deadline.  If denied this discovery, Waymo will be
21 forced to file another lawsuit asserting additional trade secret misappropriation claims based on
22 information newly disclosed in the Stroz Report.  That is contrary to concerns of judicial economy as
23 well as this Court's guidance that Uber—not Waymo—should bear the brunt of any prejudice created
24 by the late production of the Stroz Report.  The Court should order Uber to immediately make
25 available its current source code repository.

26 **II.  BACKGROUND**

27       On September 13, Defendants produced the Stroz Report in response to a Federal Circuit
28 opinion affirming this Court's discovery orders.  The report summarizes a due diligence investigation

into the activities of five "Diligenced Employees," who left Waymo to form Ottomotto, Anthony Levadowski, Lior Ron, Don Burnette, Soren Juelsgaard, and Colin Sebern.  Dkt. 1928-24.

Relevant here, the report at various points references source code retained by the Diligenced Employees.  *See e.g.*, Stroz Report at 10 ("This information included source code, design files, laser files, engineering documents, and software related to Google self-driving cars."); 12 ("A review of the names of the deleted files indicates that they were source code and electronic design files relating to driverless cars.") 27 ("Stroz Friedberg identified images from Burnette's computer that appear to be snippets of source code.").   Stroz apparently did not investigate these files, stating "Given Stroz Friedberg's lack of context, we could not determine whether these files were related to Google self-driving cars or otherwise constituted Google confidential information.  A review of these files by Levandowski and/or a third-party expert could settle this issue, or they could be remediated in bulk."  Stroz Report at 17.  But the source code files were never "remediated" to Waymo as part of the due diligence process, nor, to Waymo's knowledge, was a further review of these files done by Levandowski or a third party expert.  For example, Exhibit 37 to the Stroz Report, described as a "snippet" found on Levandowski's Macbook Laptop and his Dropbox cloud account, contains Waymo source code related to route planning and changing lanes.  Ex. 1

Since Waymo received access to the segregated source code files from Stroz on October 2, its experts have reviewed the Stroz-provided source code almost every day, including weekends, in connection with its review of the Uber source code that has been provided to date.  Because Waymo's source code review involves review of three different source code bases (Uber, Stroz and Waymo), Waymo has retained a five new source code review experts, to get through the source code as quickly as possible.

As a result of its review of the Stroz Report and newly disclosed information, on September 30, Waymo requested that Uber produce "a current version of Uber source code," including any source code that implements this "lane change functionality" in order to compare the retained Waymo code with Uber's implementation.  Ex. 2.  Uber delayed in providing a substantive response, so Waymo requested a meet and confer with the Special Master on October 4.  During the meet and confer, Uber refused to produce the requested source code.

The Court has previously determined that at least some source code is relevant to Waymo's claims. On June 21, 2017, Waymo requested production of source code modules developed at Ottomotto in the Spring of 2016 and exchanged with Uber as part of the parties' acquisition negotiations. Dkt. 681-4 at 4. The Court granted Waymo's motion on July 12,[2] but Uber only produced them for inspection on August 17. Dkt. 881. In the absence of Uber's current source code, Waymo has been analyzing the earlier source code production. However, it cannot properly compare the Waymo code described in the Stroz Report to Uber's implementation because prior Uber code production did not yet fully include the motion planning software functionality. Only the new version contains the relevant code disclosed in the Stroz Report and related materials Waymo has discovered at Stroz. This is because, as one witness explained, Uber and Otto started "patches" and "refactoring" in the fall of 2016. Thus, the version of code Uber previously produced does not contain the code for motion planning operations like changing lanes. Dkt. 1928-21 at 157:10-25, 158:7-24; Ex. 3 at 123:24-124:14, 144:20-146:1, 151:13-152:16. Waymo thus requests the current source code to compare Uber's implementation to Waymo's source code.

### III.   ARGUMENT

#### A.   Uber's Current Source Code is Highly Relevant To The Question of Whether Uber Misappropriated Waymo Trade Secrets

On September 13, Waymo first learned that former Waymo employees not only had retained hardware related Waymo files after they left Waymo and while at Ottomotto, but also source code related to the brains of the self-driving car, including how to know when to change lanes. For example, current Uber software lead and one of the Diligenced Employees, Don Burnette, retained in his personal Gmail account his quarterly performance review that discusses aspects of the structure and design of Waymo's highly confidential motion planner, including the particular state variables used, their function and how they differ from prior implementations. Ex. 5.

In light of the source code identified in the Stroz Report and the materials retained by the Diligenced Employees, Waymo is entitled to inspect Uber's source code and determine the full scope

---

[2] Uber's objections to Magistrate Judge Corley's Order were overruled on August 14. Dkt. 1188.

of disclosure of Waymo's software-related trade secrets to Uber. Such an analysis goes to the heart of the question as to what Waymo trade secrets have been acquired, disclosed, or used by Uber. *See* Cal. Civ. Code § 3426.1. Uber's source code is thus unquestionably relevant and discoverable under Rule 26 for Waymo's claims of trade secret misappropriation by the Defendants.

The source code is particularly relevant given the involvement of the Diligenced Employees in its development. Mr. Burnette was previously responsible for developing source code responsible for motion planning and lane-change decisions at Waymo. Ex. 4 at 51:17-52:20. In Feburary 2016, he left Waymo to join Ottomotto with Mr. Levandowski, and took the role of software engineer. *Id*. at 18:5-20:23. At Ottomotto, Mr. Burnette developed source code responsible for motion planning and lane-change decisions. *Id*. at 52:21-24, 98:11-14. He later provided the motion planning source code to Uber engineers through "back channels," and helped them integrate it into their own code base. *Id*. at 97:10-25. He also helped Uber develop its own lane-change source code, solving a problem in a matter of days that Uber had previously been unable to complete. *Id*. While this prior deposition testimony elicited during fact discovery raised questions, it was not until receipt of the Stroz Report and its references to Waymo source code that Waymo was able to tie this suspiciously quick software development to the theft of its own intellectual property.

Given that Uber has already produced earlier iterations of its source code, updating its source code production is proportional to the needs of the case and imposes little burden on Defendants. Indeed, all Waymo asks now is for Uber to update that production with its full, current implementation, such that Waymo can compare the newly disclosed source code files and information to the current relevant functionality at Uber.

**B.     Waymo Was Not On Notice of The Source Code Theft Before The Stroz Report**

The Stroz Report was the first time that Waymo learned that the Diligenced Employees had retained any Waymo source code. Prior to September 13, Uber concealed the report itself, its exhibits, and enormous amounts of data under an improper claim of privilege. Uber also instructed the Diligenced Employees not to answer any questions concerning the Stroz investigation, including questions about the devices they handed over as part of the investigation. Ex. 4 at 142:2-14. Waymo

1  thus could not have requested discovery on materials that were hid from it throughout this case. Upon
2  receipt of the report, Waymo investigated the Stroz Report and related data that Stroz and Defendants
3  began producing following the Federal Circuit's order. After identifying the nature and extent of the
4  source code the Diligenced Employees had stolen, Waymo previously requested production of Uber's
5  source code .

6  Uber cannot legitimately claim any prejudice based on this request. Unlike Waymo, Uber has
7  been fully aware that the Diligenced Employees retained source code for over a year. But for Uber's
8  improper claim of privilege and disregard of this Court's orders, the source code discussed in the Stroz
9  Report would have been identified long ago and this issue would have been raised and resolved. The
10 Court has recognized that Uber should bear the brunt of discovery obligations stemming from
11 withholding the Stroz Report. Dkt. 1965, Oct. 3 Hr'g. Tr. at 38:24-39:5. Source code that the
12 Diligenced Employees developed while in possession of Waymo's source code and proprietary
13 information falls squarely within those obligations. The current source code is thus relevant and fully
14 within the proper scope of post-Stroz Report discovery.

15   **C.   Waymo Requests This Discovery to Properly Comply with the Court's Oct. 23 Deadline**

16 After receiving the Stroz Report, Waymo promptly informed the Court that the discovery
17 Waymo was receiving had the potential to expand the scope of trade secrets Waymo asserted beyond
18 the LiDAR manufacturing trade secrets that Waymo was aware of when it filed its complaint, and that
19 further discovery was necessary before Waymo could bring any additional claims of misappropriation.
20 Dkt. 1723, Sept. 20 Hr'g Tr. at 77:7-18 ("If discovery turns up something that we hadn't found -- for
21 example, we made our list on hardware LiDAR but, you know, the download from Levandowski
22 included much more than that. And the Stroz Report for the very first time shows he took a bunch of
23 software, hundreds of software files. Now, suppose we look at those and we can tie those back into
24 the software they provided so there's absolutely no question that he took some software and copied it
25 and put it in. We might bring that up to the Court and we might say we want to add that claim."); Dkt.
26 1603-4 at 4, 8-9, 12-13, 17. Waymo continued to apprise the Court of these issues in view of the

1  continuing production of Stroz-related discovery following the Federal Circuit ruling. Dkt. 1928-4 at
2  16-18; *see also* Dkt. 1847-4 at 2, 6, 11.

3  In light of these new disclosures, the Court granted Waymo leave to bring a motion to amend its list of asserted trade secrets for trial. Dkt. 1954 ("Any request by Waymo to amend its list of asserted trade secrets for trial, expert reports, or lineup of trial exhibits and witnesses must be made via a formal motion to be filed by OCTOBER 23 AT NOON, with any response due by OCTOBER 25 AT NOON and a hearing on OCTOBER 26 AT 8:00 A.M."). Waymo is thus required to provide by October 23 whatever new trade secrets it intends to assert for trial as well as the expert testimony and exhibits it intends to rely on to present such trade secrets at trial. It can be no surprise that Waymo needs discovery to complete these tasks, especially given that Waymo was not previously on notice of the retained source code.

### D. Waymo Did Not Waive The New Software Claims

There was also no waiver as to these claims previously because Waymo was not on notice of them. A waiver of a claim can occur only if a party intentionally and voluntarily makes the choice to waive. *See, e.g.*, *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) ("[W]aiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks omitted); *see generally*, Dkt. 1603-4 at 17-19. Waymo did not—and could not—have waived claims based on the new disclosures from the Stroz Report because it did not know about them. On the other hand, if, under the guise of a claim narrowing process, Waymo is deprived of its claims arising out of the Stroz Report, that would violate Waymo's due process rights. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311 (Fed. Cir. 2011) (the "district court's claim selection procedure risked erroneously depriving [the plaintiff] of its rights and that the risk outweighed the added costs associated with a substitute procedure."); *see also id.* at 1312-13 ("Katz could have sought to demonstrate that some of its unselected claims presented unique issues as to liability or damages. If, notwithstanding such a showing, the district court had refused to permit Katz to add those specified claims, that decision would be subject to review and reversal.").

To the extent the Court does not allow this discovery and trial on these claims, Waymo will be forced to file a second lawsuit to obtain relief, which would not serve any interests of judicial

economy and unfairly prejudice Waymo's ability to obtain relief in a timely fashion.  Uber should not be rewarded because it successfully delayed production of the Stroz Report.  Waymo should be able to access the relevant discovery now in order to comply with the Court's October 23, 2017 deadline.

## IV.    CONCLUSION

For the foregoing reasons, the Court should order Uber to produce the current the current version of its source code.

DATED:  October 9, 2017             QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                    By */s/ Charles K. Verhoeven*
                                        Charles K. Verhoeven
                                        Attorneys for WAYMO LLC