QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  Jordan R. Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>              Plaintiff,<br><br>      vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>              Defendants. | CASE NO. 3:17-cv-00939<br><br>**WAYMO LLC'S RESPONSE TO UBER'S MOTION TO MODIFY THE PROTECTIVE ORDER (DKT. 2726)**<br><br>**Hearing:**<br><br>**Date:      December 10, 2020**<br>**Time:     8:00 AM**<br>**Place:    Courtroom 12, 19th Floor**<br><br>**Judge:   Honorable William Alsup** |

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................................... I

I.      INTRODUCTION .......................................................................................................... 1

II.     FACTUAL BACKGROUND .......................................................................................... 2

        A.      Levandowski's Bankruptcy ................................................................................ 3

        B.      The Adversary Proceeding and Uber's Overbroad Subpoenas to Waymo ............... 3

        C.      Waymo's Proposed Compromise to Uber Relating to the Overbroad
                Subpoenas ......................................................................................................... 5

III.    ARGUMENT ................................................................................................................. 6

        A.      Waymo Does Not Oppose a Limited Modification of the Protective Order ............. 6

        B.      Uber's Request to Use the Entire Litigation Record Is Overbroad .......................... 8

        C.      Uber's Alternative Proposal Is Unworkable ......................................................... 10

IV.     CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

## Cases

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992)............................................................................... 7

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
    331 F.3d 1122 (9th Cir. 2003)............................................................................. 7

*In re Levandowski,*
    No. 20-30242 (Bankr. N.D. Cal. ) ...................................................................... 3

*Levandowski v. Uber Technologies, Inc.,*
    Dkt. 1, Case No. 3:20-ap-03050 (Bankr. N.D. Cal.) ......................................... 4

*Olympic Refining Co. v. Carter,*
    332 F.2d 260 (9th Cir. 1964)............................................................................... 7

*United Nuclear Corp. v. Cranford Ins. Co.,*
    905 F.2d 1424 (10th Cir. 1990)........................................................................... 7

*Wilk v. Am. Medical Ass'n,*
    635 F.2d 1295 (7th Cir. 1980)............................................................................. 7

# I.   **INTRODUCTION**

Uber Technologies, Inc.'s ("Uber") motion stems from a desire to use confidential information produced by parties and non-parties in one litigation (this case, *Waymo v. Uber*) in another litigation (a bankruptcy case, *Levandowski v. Uber*, referred to as the "Adversary Proceeding").  Uber seeks to modify the protective order to allow this without providing any notice to third parties that produced confidential information in this proceeding, and despite Waymo's objections to the overbroad scope of this request.

Uber previously raised its request to use the entire *Waymo v. Uber* record in the Adversary Proceeding.  In October 2020, Uber moved the bankruptcy court overseeing the Adversary Proceeding to "compel Waymo to consent to Uber's review and use in this action of the entire record from [*Waymo v. Uber*]."  Dkt. 2726-7 at 2-3.  Waymo explained that this request was overbroad and inconsistent with this Court's protective order.  The bankruptcy court agreed:

> This court has two simple rules for discovery: Don't be greedy and don't be stingy. This means that parties seeking discovery should request only relevant, non-privileged information and that parties who possess relevant, nonprivileged information should cough it up. Uber's request runs afoul of the first of these general rules.
> Uber concedes that the Protective Order prohibits the relief it seeks. Uber does not, however, offer any authority that might permit this court to modify another court's order. This court is not aware of such authority. The court views Uber's request as one more properly presented to the judge who entered the Protective Order.
> And as Waymo, Google, and Mr. Levandowski point out, the entire record of the Waymo Litigation cannot possibly be relevant to this action. They concede to some overlap of legal and factual issues, but they also credibly point to issues that are not common to both cases. In order to be entitled to discovery, Uber must prove the relevance of the material it requests. It has made no such showing here.

Dkt. 2726-7 at 4-5.

Uber now asks this Court for two forms of relief:  (1) a ruling that all of the parties in the Adversary Proceeding—Uber, Levandowski and intervenor Google LLC—be allowed to review the entire record in this case, subject to its confidentiality designations and (2) a ruling granting Uber carte blanche to use the full record from this case in the Adversary Proceeding, without regard to whether or not these materials are relevant to that proceeding.  Waymo has consistently told Uber it is interested in practical solutions, not unnecessary discovery costs.  Thus, Waymo

1    does not oppose the first request, provided relevant third parties are notified.  However, it does

2    oppose the second, consistent with the bankruptcy judge's ruling.

3            Specifically, because the entire record from this case is not relevant to the Adversary

4    Proceeding, Waymo does not agree that Uber should be able to ***use*** (i.e., produce) all the materials

5    from this case.  Waymo thus requests that its objections, including its relevance objections, be

6    preserved.  If the parties to the Adversary Proceeding later dispute the relevancy of a specific

7    document or set of documents that they want to use from this case, they can raise that before the

8    bankruptcy judge.  This approach provides a practical path forward, while preserving Waymo's

9    objections to Uber's overbroad discovery demands.

10   **II.      FACTUAL BACKGROUND**

11           In February 2017, Waymo filed this action, alleging patent infringement and trade secret

12   misappropriation by Ottomotto LLC ("Otto") and Uber.  Dkt. 1.  The parties engaged in discovery

13   through the end of 2017.  The case settled after four days of trial in February 2018.  As part of the

14   settlement, an independent expert evaluated Waymo's claims of trade secret misappropriation

15   related to certain software.

16           As this Court is aware, the parties in this case took a massive amount of discovery.  There

17   were approximately 205 deposition transcripts, 30 third party subpoenas, and 18 testifying experts

18   who served one or more expert reports.  Decl. ¶ 4.  Waymo itself produced over 145,000 pages of

19   documents, including documents protected by non-disclosure agreements ("NDAs") between

20   Waymo and third parties.  Decl. ¶ 5.  Waymo provided 50 notices to third parties under those

21   NDAs.  *Id.*  When produced, these documents were designated by Waymo under the protective

22   order, but include third party confidential information.  Decl. ¶ 6.

23           This voluminous discovery was provided in accordance with the Northern District of

24   California Patent Local Rule 2-2 Interim Protective Order.[1]  That order provides that a "Receiving

25

26   _____

27       [1]  On March 16, 2017, the Court ordered that the "the Patent Local Rule 2-2 Interim Model
     Protective Order will apply in this case, effective immediately."  Dkt. 60.  The parties never
     agreed on a customized or different protective order, and thus it still applies to this case.

28   Therefore, when quoting the operative protective order, Waymo quotes the Patent Local Rule 2-2
     Interim Model Protective Order.

1  Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party
2  in connection with this case ***only*** for prosecuting, defending, or attempting to settle this litigation."
3  Patent Local Rule 2-2 Interim Protective Order, ¶ 7.1 (emphasis added).  The protective order also
4  explains what to do if Protected Material is subpoenaed or ordered to be disclosed in other
5  litigation.  The party receiving the subpoena or subject to the order must promptly notify the
6  designating party in writing, and notify the party causing the subpoena or order to issue that the
7  material covered by the subpoena is subject to the protective order.  Patent Local Rule 2-2 Interim
8  Protective Order, ¶ 10.

9      **A.      Levandowski's Bankruptcy**

10      Separate from and before this trade secret case, in October 2016, Google initiated an
11  arbitration against Anthony Levandowski for breaching his contractual and legal duties not to
12  compete against Google or solicit its employees when he formed a competing company, staffed it
13  with Google engineers and then sold the company to Uber in 2016.  As part of Levandowski's
14  deal with Uber, Uber had entered into an Indemnity Agreement with him in April 2016, agreeing
15  to indemnify him if his former employer, Google, sued him.  The arbitration was not about trade
16
17  secret theft.

18      In December 2019, the arbitral panel unanimously found Levandowski liable for these
19  breaches, and awarded Google about $179 million in damages.  On March 4, 2020—the same day
20  this award was converted to a state court judgment—Levandowski filed bankruptcy.  He filed
21  bankruptcy specifically to "stay Google's collection of the Judgment while his and Uber's
22  respective rights under the Indemnification Agreement can be determined."  *In re Levandowski*,
23
24  No. 20-30242 (Bankr. N.D. Cal. ), Dkt. 64 at 2.

25      **B.      The Adversary Proceeding and Uber's Overbroad Subpoenas to Waymo**

26      On July 16, 2020, Anthony Levandowski filed the Adversary Proceeding in bankruptcy
27  court against Uber, seeking, *inter alia*, to enforce the April 2016 Indemnification Agreement and
28  have Uber indemnify him for Google's $179 million judgment against him resulting from the

-3-

1    arbitration brought by Google. *Levandowski v. Uber Technologies, Inc.*, Dkt. 1, Case No. 3:20-

2    ap-03050 (Bankr. N.D. Cal.). On August 31, 2010, Uber answered and counterclaimed, seeking to

3    avoid any indemnity obligations to Levandowski for the arbitration award. Adversary Proceeding,

4    Dkt. 34. Two of Uber's primary arguments to avoid its indemnity obligations are (1) that

5    Levandowski did not truthfully respond to questions posed during the due diligence investigation

6    conducted by Stroz Friedberg LLC ("Stroz") relating to the acquisition of Otto by Uber;[2] and (2)

7    that Levandowski misappropriated Google's trade secrets after April 2016 while working for Otto

8    or Uber. *Id.* at 77. Google moved to intervene in the Adversary Proceeding, and was permitted to

9    do so for the count in Levandowski's complaint seeking a declaratory judgment that Uber cannot

10   rescind its Indemnification Agreement. Adversary Proceeding, Dkt. 35.

11          On September 8, 2020, Uber's counsel in the Adversary Proceeding contacted counsel for

12   Waymo in this case, seeking to use material designated under this Court's protective order in the

13   Adversary Proceeding. Declaration of Jordan R. Jaffe ("Decl."), Ex. 1.[3] Uber suggested

14   stipulating to modify this Court's protective order to allow this. *Id.* In response, Waymo

15   explained its view that this Court's protective order did not allow that type of stipulation without

16   notifying third parties. Moreover, Waymo disputed that the entire litigation record was relevant to

17   the Adversary Proceeding. As a compromise, Waymo suggested that Uber issue targeted

18   subpoenas in the Adversary Proceeding for relevant Waymo-only information, which Waymo

19   could then quickly consent to produce under the terms of the Bankruptcy Court's protective order

20   because responsive documents would not implicate third party confidential information.[4] Decl. ¶

21   8. Uber signaled possible agreement to this approach, though it reserved the right to issue a

22   subpoena for the whole record. Decl. ¶ 9.

23          Uber then served Waymo with two subpoenas for production of documents. Exs. 2, 3.

24

25          [2]  *See* Dkt. 566 at 4 (describing Stroz investigation).

26          [3]  All further exhibit citations are to the Jaffe declaration.

27          [4]  This approach would have avoided the "odd predicament" that Uber claims it is now in.
     For example, Uber could have issued a targeted subpoena for the deposition transcripts of former
28   Google or Waymo employees who then joined Uber, which Waymo could have promptly
     produced once it confirmed their transcripts contain no third party confidential information.

Rather than provide targeted subpoenas, however, Uber issued overbroad ones, requesting all documents from this litigation designated as confidential by Waymo and third parties.  It requested: "All Documents, in their complete and un-redacted form, from or related to the Waymo Litigation that were produced by Waymo or designated with some level of confidentiality by Waymo only…." Ex. 2 at RFP No. 1.  It also requested "any and all materials preceding or relating to" an independent software expert report created post-settlement.  *Id.* at RFP No. 2.

Uber's second subpoena sought "All Documents . . . from or related to the Waymo Litigation that were ***produced by non-parties or third parties*** to the Waymo Litigation."  Ex. 3 at RFP No. 1 (emphasis added).  Because these requests covered third party confidential information, Waymo advised Uber it would be required to first give notice to all affected third parties before producing the materials.  *See* Patent Local Rule 2-2 Interim Protective Order, ¶ 10.

**C.    Waymo's Proposed Compromise to Uber Relating to the Overbroad Subpoenas**

After Uber served the subpoenas, Waymo explained that because they are facially overbroad, they clearly request information irrelevant to the Adversary Proceeding.  Waymo also explained the third party confidentiality issues.  Uber, however, refused to narrow its subpoenas, arguing that it needs access to the full record from this case to search for and identify materials that may be relevant.  Since Uber was dead set on reviewing the entire record—including the portions with no relevance at all to Uber's current claims in the Adversary Proceeding—Waymo suggested as a compromise that Uber file a motion before this Court to amend the "use" restriction in the protective order to allow review (not use) of the full record.  Waymo stated that, under these specific circumstances, where the documents remain subject to their original confidentiality designations (*e.g.*, AEO) and Uber lawyers previously had access to this material, it would not oppose a motion to permit review of the whole record, subject to seeing the motion itself.  Uber agreed to this procedure.  On October 3, Uber's counsel confirmed by email that it would "be filing a motion before Judge Alsup, which will seek to modify the 'use' restriction in the Waymo protective order to permit Uber's counsel, [*sic*] to review the record from the Waymo litigation,

1   including the independent software expert's findings, on an attorney's eyes only basis."  Ex. 4.

2          Four days later, Uber reversed course and instead filed a motion to compel before the

3   Bankruptcy Court.  Ex. 5.  The parties then briefed the dispute before the bankruptcy judge, the

4   Honorable Hannah L. Blumenstiel.  As quoted above, on October 23, 2020, the Court agreed with

5   Waymo in denying the motion to compel the overbroad subpoenas.  Dkt. 2726-7.  Almost two

6   weeks later, on November 5, 2020, Uber filed its motion to modify the protective order in this

7   Court.  Dkt. 2726.

8   **III.**    **ARGUMENT**

9          **A.**    **Waymo Does Not Oppose a Limited Modification of the Protective Order**

10         As discussed in more detail below, Uber has failed to show that the entire record in this

11  case is relevant to the Adversary Proceeding.  But, Waymo is not interested in creating

12  unnecessary discovery costs.  To avoid a dispute, Waymo does not oppose one part of the relief

13  Uber seeks in its motion—that all of "the parties to the Adversary Proceeding" be permitted "to

14  review the record in this case for the limited purpose of determining its relevance to the Adversary

15  Proceeding" (Uber Mot. at 13; see also *id.* at 6, ¶ 14)—provided that this Court's protective order

16  is modified to permit that, the relevant third parties are given notice and the opportunity to object,

17  and relevance objections by Waymo (or any other party) are preserved.[5]

18         But the parties disagree on what the current protective order requires as to third parties that

19  produced confidential information in this case.  Waymo believes that Paragraph 10 of the

20  Protective Order requires notice to third parties who produced confidential information in this

21  case, in order to give them the opportunity to object before their information is disclosed in

22  another case, to different parties.  Specifically, Paragraph 10 of the Protective Order requires that

23  "[i]f a Party is served with a subpoena or a court order issued in other litigation that compels

24  disclosure of any information or items designated in this action …that Party must: (a) promptly

25  notify in writing the Designating Party…."  The Protective Order also provides third parties the

26  opportunity to object and move for a protective order after being notified.  *Id.*  Uber's motion does

27

28         [5]  All review should be subject to the current protective order's designations—*e.g.*, an outside
    Attorneys Eyes Only ("AEO") document would remain AEO, etc.

1  not provide any notice or the opportunity for third parties to object to their confidential

2  information being used in another proceeding.  Waymo believes the correct course is to modify the

3  protective order to allow review of the record for purposes of the Adversary Proceeding, but

4  require Uber to provide notice to any affected third parties.  Waymo does not oppose such a

5  modification, provided that Uber, as the requesting party, bears the burden of providing notice.

6     Uber's cited case law does not support depriving these third parties of notice.  None of

7  them address a modification of a protective order without giving notice or an opportunity to object

8  to the non-parties that provided discovery in reliance on that order.  *See Foltz v. State Farm Mut.*

9  *Auto. Ins. Co.*, 331 F.3d 1122, 1128, 1137 (9th Cir. 2003) (case did not concern third-party

10  discovery, only certain confidential information of third parties in medical records produced by

11  parties, which the court held can be redacted); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470,

12  471 (9th Cir. 1992) (modification permitted as to six deposition transcripts of employees of the

13  defendant where defendant had opportunity to object to modification); *Olympic Refining Co. v.*

14  *Carter*, 332 F.2d 260, 262 (9th Cir. 1964) (discovery requested did not concern third parties);

15  *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428-29 (10th Cir. 1990) (no mention

16  that discovery requested concerns third parties, and in any case, court noted that because

17  defendants—and parties opposing modification of protective order—are parties to the collateral

18  suits, they have both the interest and standing to raise relevancy and privilege objections to the

19  production of any materials in those courts); *Wilk v. Am. Medical Ass'n*, 635 F.2d 1295, 1296 (7th

20  Cir. 1980) (no mention that discovery requested concerned third parties).

21     Indeed, Uber's statement that the Ninth Circuit in *Beckman* held that "the fact that one or

22  more **non-parties** (or even parties) produced information in reliance on the protective order is not

23  enough, on its own, to justify refusing to modify the protective order" is incorrect.  Dkt. 2726 at 5

24  (emphasis added).  *Beckman* involved the deposition transcripts of employees of a party.[6] And in

25  any event, the Court in *Beckman* made no such holding as to non-parties.

26

27

28     [6]  *Beckman*, 966 F. 2d. at 471 ("Discovery included the depositions of six International employees involved in the development and administration of the EIL policies sold to policy holders around the country. ")

-7-

1    Uber further argues that non-parties may "prefer that the Court not modify the Protective

2   Order" but states their information will remain "fully protected" pursuant to the Adversary

3   Proceeding protective order.  Dkt. 2726 at 10.  This reasoning is flawed.  First, the non-parties'

4   information would no longer be protected by the "use" restriction in this Court's protective order

5   as it existed when they produced information.  The current protective order restricts use to this

6   litigation only.  Uber's proposed modification would deprive third parties of that protection and

7   permit their confidential information to be disclosed to new parties (*e.g.*, Levandowski),  for new

8   purposes, and in a new forum that they likely are not monitoring.  Second, Uber's proposal does

9   not provide third parties the protection found in Paragraph 10 of this Court's protective order,

10   which requires that if third party confidential information is required to be disclosed, third parties

11   are given notice and the right to object.  Under Uber's proposal, third parties will be given no

12   notice that their information may be disclosed to other parties and used in the Adversary

13   Proceeding.

14    Accordingly, Waymo does not oppose a limited modification of the protective order to

15   allow Uber and all the parties to the Adversary Proceeding to review the entire litigation record,

16   but it believes the rights of third parties under the existing protective order should be protected.[7]

17    **B.  Uber's Request to Use the Entire Litigation Record Is Overbroad**

18    Uber does not request only to review the entire litigation record.  It also seeks permission

19   to **use** (i.e., produce in discovery) the entire record in the Adversary Proceeding.  But the

20   Adversary Proceeding relates to whether Uber has to indemnify Levandowski under the terms of a

21   specific contract between Levandowski and Uber.  And Uber has not shown that **all** of the

22   materials in this case are relevant to that proceeding.  This is exactly what Waymo previously

23   explained in its briefing before Judge Blumenstiel (Ex. 6 at 3-4) and with which the court agreed.

24   Dkt. 2726-7.  Uber appears not to have taken Judge Blumenstiel's comments to heart.  And Uber

25   offers no justification for why this Court should revisit that ruling.  Waymo therefore requests that

26

27    [7]  Waymo agrees with Uber that to the extent that Uber is granted any rights for purposes of
28   the Adversary Proceeding, all "other parties" to the Adversary Proceeding (*i.e.*, Levandowski and
    Google) should have the same rights.  Uber Mot. at 6, ¶ 14.

-8-

1   this Court's ruling on Uber's motion preserve all relevance and other objections to Uber's use (i.e.

2   production) of material from this record in the Adversary Proceeding.

3       In its latest motion, Uber largely recycles the relevance arguments it unsuccessfully

4   presented to Judge Blumenstiel.  As in that proceeding, none of the arguments establishes that the

5   entire litigation record is relevant to the Adversary Proceeding.  To address each in turn:

6       **Overlap in Witnesses**: Uber argues that there is overlap in witnesses deposed in this case

7   and the witnesses identified in the parties' Initial Disclosures in the Adversary Proceeding.  Dkt.

8   2726 at 8.  That there are some overlapping witnesses does not mean that the full record in this

9   litigation is relevant.  Uber does not even identify the subject matter that those witnesses testified

10  about and how it is relevant.

11      **"Core Facts" Alleged Overlap**: Uber argues that "core facts" and events in this case are

12  relevant to the Adversary Proceeding.  But Uber did not limit its request to just those allegedly

13  overlapping "core facts."  For example, Uber argues that whether Levandowski provided accurate

14  and complete information to Stroz, and whether Levandowski possessed or retained access to

15  Waymo confidential information after April 11, 2016, are relevant overlapping issues.  Waymo

16  does not dispute that some information related to the Stroz investigation could be relevant to

17  Uber's defenses.[8]  Waymo already produced, in response to Uber's subpoena in the Adversary

18  Proceeding, both sides' forensic expert reports after verifying those reports did not include third

19  party confidential information.  But this does not establish that the entire record is relevant as this

20  was only one aspect of the litigation.

21      Moreover, Stroz collected confidential personal information of several former Google

22  employees that went to work at Uber.  Uber does not address why the personal information of

23  these employees other than Levandowski is relevant.

24      **"Post-Signing Bad Act" Defense**:  Uber argues that Levandowski's role in the

25  misappropriation of trade secrets or patent infringement is relevant to its claims or defenses,

26  including as a "Post-Signing Bad Act."  Dkt. 2726 at 8.  As an initial matter, Uber's current

27

28      [8]   Waymo understands that Levandowski issued a subpoena to Stroz in the Adversary
        Proceeding on Nov. 13, 2020, requesting documents that he believes are relevant to his claims.

1    position—that Levandowski committed or was aware of trade secret misappropriation while

2    employed by Uber or Otto —is quite an about face from the positions it took before this Court.

3    But all these arguments relate to what Levandowski knew or did.  And while Levandowski was no

4    doubt a central player in this case, this case was *Waymo v. Uber*, not *Waymo v. Levandowski*.

5    Thus, large swaths of discovery in this case concerned topics unrelated to the Adversary

6    Proceeding even under Uber's theories.  This includes, but is not limited to: Waymo's product

7    development, Waymo's business plans and forecasts for its self-driving car technology, Waymo's

8    financial information, Waymo's partnerships and potential partnerships with third parties, the

9    early history of Waymo's self-driving car program, a former Uber employee's whistleblower

10    letter, and the discovery that Uber took of Waymo as a result of that letter.  *See, e.g.*, Dkt. 2383.

11    In sum, Uber's arguments fall far short of establishing that the ***entire*** record is relevant to its

12    claims in the Adversary Proceeding.

13         Finally, in its motion before the Bankruptcy Court, Uber offered to exclude from its

14    request Waymo's source code.  Ex. 5 at 4.  For whatever reason, it did not similarly agree to carve

15    out that request in its motion before this Court.  This is further evidence that the whole record is

16    not relevant or necessary to be produced in the Adversary Proceeding.

17         To reiterate, Waymo does not oppose allowing Uber, Levandowski, and Google to review

18    the entire record under the terms described above, even though it includes material that is clearly

19    irrelevant to the Adversary Proceeding.  This compromise eliminates Uber's concerns with being

20    allegedly unable to figure out what evidence is relevant from the litigation record, as well as

21    prevents Waymo from having to redo discovery in response to further subpoenas from Uber.

22    Waymo just asks that any relevance and other objections be preserved before ***use*** (*i.e.* production)

23    of that material in the Adversary Proceeding.  If Uber reviews some set of documents and wants to

24    use them in the Adversary Proceeding, the parties can discuss and hopefully agree to produce

25    those documents.  If there is a remaining dispute, the parties can raise it before Judge Blumenstiel

26    as necessary.

27        **C.**     <u>**Uber's Alternative Proposal Is Unworkable**</u>

28         In the alternative, Uber asks for permission to access and use eight vague categories of

1  documents in the Adversary Proceeding.  Dkt. 2726 at 11-12.  The request is more akin to a

2  subpoena than a motion to modify the protective order.  It is unclear how Uber is asking the Court

3  to modify the protective order to provide access only to those materials, or how those materials

4  will be listed or cabined in a reasonable fashion in a modified protective order.  For example, Uber

5  asks for "related materials" from certain expert witnesses.[9]  Left unexplained are what comprises

6  "related materials" and how the parties would resolve any disputes about what is a related material

7  or not.  This request further does not address the third party confidential information included in

8  these enumerated categories.

9         The Court need not wade into these issues.  To the extent it understands Uber's categories,

10  Waymo does not agree that each document possibly embraced by them would be relevant or

11  properly produced in response to a subpoena.  But Waymo does not oppose Uber being permitted

12  to review all these enumerated materials when reviewing the entire record as described previously,

13  including after third party notice issues have been resolved.  And any necessary future

14  determination regarding whether specific documents are or are not relevant to the Adversary

15  Proceeding can be appropriately determined by Judge Blumenstiel, the judge presiding over the

16  Adversary Proceeding.

17         In addition, Uber's requests are emblematic of the improper approach to discovery with

18  Waymo it has taken thus far.  One of Uber's requested categories is "The documents and data

19  produced by non-party Stroz Friedberg LLC."  Dkt. 2726 at 12.  But "Stroz was and is Uber's

20  agent."  Dkt. 2128 at 5.  If Uber wants evidence from Stroz to support its claims and defenses in

21  the Adversary Proceeding, the appropriate course would have been to request the material from its

22  agent directly.  If Stroz was unwilling to produce it voluntarily, Uber should have subpoenaed it

23  from them in the Adversary Proceeding.  Uber has apparently made no efforts to get this material

24  from Stroz, instead embroiling Waymo in unnecessary motion practice in two courts.

25  **IV.    CONCLUSION**

26         For the foregoing reasons, Waymo does not oppose a limited modification of the

27

28     [9]  Even though listed in Uber's motion, Waymo already produced in response to Uber's
subpoenas expert reports from Andrew Crain and Paul French.

1  Protective Order to: (1) allow the parties to the Adversary Proceeding to *review* confidential

2  information for purposes of the Adversary Proceeding; (2) provided that third parties are

3  appropriately notified; and (3) all relevancy objections are preserved.  It opposes Uber's blanket

4  request to *use* the entire record over Waymo's objections because the entire record is not relevant

5  to the Adversary Proceeding.  Waymo also opposes Uber's alternative approach, which is

6  unworkable in practice and does not address third party notice concerns.

7

8  DATED:  November 19, 2020                    QUINN EMANUEL URQUHART & SULLIVAN,
                                                LLP
9
                                          By  */s/ Jordan R. Jaffe*
10                                            _____
                                              Jordan R. Jaffe
11                                            50 California Street, 22nd Floor
                                              San Francisco, California 94111
12                                            Tel: 415-875-6344
                                              jordanjaffe@quinnemanuel.com
13
                                              Attorneys for WAYMO LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28