# EXHIBIT 6

**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

WRITER'S DIRECT DIAL NO.
**(415) 875-6315**

WRITER'S EMAIL ADDRESS
**jordanjaffe@quinnemanuel.com**

October 19, 2020

Hon. Hannah L. Blumenstiel
United States Bankruptcy Court for the
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

Re:  <u>Levandowski v. Uber Technologies, Inc.</u>, Adv. Pro. No. 20-03050; Dispute re production of record and discovery from the matter of <u>Waymo LLC v. Uber Technologies, Inc.</u>

Dear Judge Blumenstiel:

We represent non-party Waymo LLC ("Waymo") in responding to the subpoenas served by Defendant Uber Technologies, Inc. ("Uber") in the above-referenced adversary proceeding ("Adversary Proceeding"). Waymo submits this letter in response to Uber's October 7, 2020 letter, whereby Uber is seeking to enforce two vastly overbroad subpoenas against Waymo. Waymo respectfully requests that the Court deny Uber's request.

There is a simple path to resolve this dispute. It is one to which Uber's counsel agreed only days before it filed its letter. As discussed below, Waymo disputes the relevancy of the *entire* record from *Waymo LLC v. Uber Technologies, Inc.*, Case No. 3:17-cv-00939 ("Waymo Litigation"). There are likely dozens of depositions and thousands of pages of documents with no relevance whatsoever to Uber's claims as articulated in its letter. But, Waymo does not oppose Uber's current counsel reviewing the entire Waymo Litigation record on an outside counsel only basis, provided that Judge Alsup, who presided over the Waymo Litigation, modify the operative protective order to permit that and Waymo's relevance objections are preserved.

This should not be controversial. Uber's own letter brief admits that "the protective order entered in the Waymo Litigation prohibits the parties from using confidential materials for a purpose other than the Waymo Litigation." Uber letter at 2. Neither Waymo nor Uber can unilaterally modify the protective order entered by Judge Alsup. And Waymo does not believe that it can simply consent to allowing third party confidential information produced in another case to be used in the manner Uber suggests. But, again, Waymo does not oppose Uber asking Judge Alsup to modify the Waymo protective order to allow that either.

Uber agreed to this compromise only days before filing its letter, stating "Uber will be filing a

quinn emanuel urquhart & sullivan, llp

01980-00104/12375727.7

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

motion before Judge Alsup, which will seek to modify the 'use' restriction in the Waymo protective order to permit Uber's counsel, to review the record from the Waymo litigation, including the independent software expert's findings, on an attorney's eyes only basis." Uber has not informed Waymo why it has reneged on this compromise, but it is the only path that abides by the Waymo Litigation protective order while addressing Uber's current overbroad subpoenas. Uber's motion to compel should be denied.

I. **RELEVANT FACTUAL BACKGROUND**

    A. **Discovery in the Waymo Litigation**

In February 2017, Waymo filed suit against Uber in the U.S. District Court for the Northern District of California, alleging trade secret misappropriation by Uber—not Mr. Levandowski, the Debtor in this action. The parties engaged in discovery through the end of 2017. The case settled after four days of trial in February 2018. As part of the settlement, an independent expert evaluated Waymo's claims of trade secret misappropriation related to certain software.

The parties to the Waymo Litigation took a massive amount of discovery. There are 205 deposition transcripts, roughly 30 third party subpoenas, and 18 testifying experts who served one or more expert reports. Waymo itself produced over 145,000 pages of documents in the Waymo Litigation, including documents protected by non-disclosure agreements ("NDAs") between Waymo and third parties. Waymo provided 50 notices to third parties under those NDAs. When produced, these documents were designated by Waymo under the protective order, but include third party confidential information.

Large swaths of discovery in the Waymo Litigation concerned topics unrelated to Uber's defenses in this action. This includes but is not limited to: Waymo's proprietary technology, Waymo's product development, Waymo's business plans and forecasts for its self-driving car technology, Waymo's partnerships and potential partnerships with third parties, the early history of Waymo's self-driving car program, a former Uber employee's whistleblower letter claiming, *inter alia*, that Uber had secret devices to hide evidence, and the discovery that Uber took of Waymo as a result of that development. *See, e.g.*, Waymo Litigation, Dkt. No. 2383.

This voluminous discovery in the Waymo Litigation was provided in accordance with the Northern District of California Patent Local Rule 2-2 Interim Protective Order, which provides that a "Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case ***only*** for prosecuting, defending, or attempting to settle this litigation." Patent Local Rule 2-2 Interim Protective Order, ¶ 7.1 (emphasis added). The Waymo Litigation protective order also explains what to do if Protected Material is subpoenaed or ordered produced in other litigation. The party receiving the subpoena or subject to the order must promptly notify the designating party in writing, and notify the party causing the subpoena or order to issue that the material covered by the subpoena is subject to the protective order. Patent Local Rule 2-2 Interim Protective Order, ¶ 10.

    B. **Uber's Subpoenas to Waymo**

Uber originally proposed that Waymo and Uber stipulate to modify the Waymo Litigation protective order to allow Uber's new counsel to conduct what it called a "relevance" review of

the entire Waymo Litigation record. Waymo explained that the protective order did not allow that type of stipulation, and moreover, Waymo disputed that the entire Waymo Litigation was relevant to Uber's defenses in the Adversary Proceeding. As a compromise, Waymo suggested that Uber issue targeted subpoenas for relevant Waymo-only information, which Waymo could then quickly produce under the terms of this Court's protective order because it would not implicate third party confidential information. Uber signaled possible agreement to this approach, though it reserved the right to issue a subpoena for the whole record.

Uber then served two subpoenas for production of documents on Waymo. Rather than provide targeted subpoenas, however, Uber issued grossly overbroad ones, requesting all documents from the litigation designated as confidential by Waymo and/or third parties.

### C. Waymo's Proposed Compromise to Uber

After being served with Uber's subpoenas, Waymo explained to Uber the sheer breadth of material requested, that not all of the requested material could possibly be relevant to the Adversary Proceeding, and the third party confidentiality issues. Uber, however, refused to narrow its subpoenas, arguing that it needs access to the *full record* from the Waymo Litigation to search for and identify materials that may be relevant. Since Uber was dead set on reviewing the entire record—including the portions with no relevance at all to Uber's current claims—Waymo suggested as a compromise that Uber file a motion before Judge Alsup to amend the "use" restriction in the Waymo Litigation protective order. Waymo said that it would not oppose such a motion, subject to seeing the motion itself. ***Uber agreed to this procedure.*** On October 3, Uber's counsel confirmed by email that it would "be filing a motion before Judge Alsup, which will seek to modify the 'use' restriction in the Waymo protective order to permit Uber's counsel, [sic] to review the record from the Waymo litigation, including the independent software expert's findings, on an attorney's eyes only basis." Four days later, Uber reversed course and submitted its letter to this Court. Uber still has not sought to amend the "use" restriction in the Waymo protective order.

## II. ARGUMENT

### A. Uber's Subpoenas are Overbroad.

Uber's subpoenas seek production of the full record from the Waymo Litigation. Uber's letter fails to show that the huge volume of materials Uber seeks is relevant to the Adversary Proceeding. Waymo acknowledges that *some* materials from the Waymo Litigation may be relevant to the Adversary Proceeding. But, Uber has not made any showing that *all* of the materials from the Waymo Litigation are relevant to the Adversary Proceeding. None of Uber's relevance arguments address this fundamental point. To address each in turn:

**Overlap in Witnesses**: Uber argues that there is overlap in witnesses in the Waymo Litigation and witnesses identified in the parties' Initial Disclosures in the Adversary Proceeding. That there are some overlapping witnesses—none of whom Uber identifies by name—does not mean that the full record in the Waymo Litigation is relevant. Uber does not even identify the subject matter that those witnesses testified about and how it is relevant.

**"Core Facts" Alleged Overlap**: Uber argues that "core facts" and events in the Waymo

01980-00104/12375727.7                             3

Litigation underlie the Adversary Proceeding.  Again, although there may be *some* overlapping issues related to Uber's defenses, Uber did not limit its subpoenas to just those issues.  And, the handful of purportedly overlapping issues do not establish that entire litigation record is relevant.

**Stroz Friedberg Materials**: Uber argues that whether Debtor provided accurate and complete information to Stroz Friedberg, and whether Debtor possessed or retained access to Google confidential information after April 11, 2016, are relevant overlapping issues.[1]  Waymo does not dispute that some information related to the Stroz investigation could be relevant to Uber's defenses.  Waymo already produced, in response to Uber's subpoena, both sides' forensic expert reports after verifying those reports did not include third party confidential information.  But this does not establish that the entire record is relevant as this was only one aspect of the litigation.

Moreover, Waymo cannot produce all materials Stroz collected without third party consent. Stroz collected confidential personal information of several former Google employees that went to work at Uber.  The parties and the former Waymo employees negotiated a protocol to safeguard their privacy under the terms of the protective order.  *See, e.g.*, Waymo Litigation, Dkt. 1329 at 1.  Uber does not address why the personal information of these employees other than Mr. Levandowski is relevant, nor how it would safeguard their privacy.

**Post-Settlement Software Review**: Uber never explains why this material is relevant as a "Post-Signing Bad Act" other than its own *ipse dixit*.  Uber already has a redacted version of the report, where most—if not all—of the "post-signing" material included in the report is marked as ***Uber*** confidential information.  Waymo is unaware of any "post-signing" Waymo confidential information included in the report and thus it is unnecessary to be produced.

Finally, Uber offers to exclude from its motion to compel source code belonging to Google or Waymo.  The concession, however, does not cure Uber's failure to articulate how the full Waymo Litigation record is relevant.  It is not, and thus Uber's subpoenas are overbroad.

To reiterate, while Waymo maintains that Uber failed to show the relevance of the ***entire*** record, to avoid a dispute, Waymo does not oppose Uber reviewing it on an outside counsel only basis, provided that the protective order is appropriately modified by Judge Alsup to allow it, and Waymo's relevancy objections are preserved.

### B. The Burden of Addressing Third-Party Confidentiality Concerns Outweighs the Probative Value of the Material Requested.

Given that Uber has not shown that the full scope of materials it requests is relevant, the burden to Waymo of producing the documents requested outweighs the probative value of the material. To be clear, the burden is not the act of physically producing the documents since, in this case, the documents are already possessed by Uber's counsel in the Waymo Litigation.  Rather, the burden to Waymo is in complying with its obligations to third parties under the Waymo

---

[1] This is an odd request since Stroz Friedberg was (and perhaps still is) Uber's agent in conducting the investigation.  Waymo Litigation, Dkt. 2128 ("Stroz was and is Uber's agent.") Uber provides no explanation why it cannot or has not sought the "Stroz" materials directly from its own agent, rather than from third party Waymo.

Litigation protective order and under various non-disclosure agreements.

In particular, although Waymo designated its own production under the protective order, as noted above, that production included documents covered by NDAs. Waymo would need to identify the relevant confidential documents within its production and provide notice to the implicated third parties prior to production to Uber in the Adversary Proceeding. With respect to things like depositions and expert reports, Waymo would need to review them all to confirm that they were only designated by Waymo and/or only reflected information that was designated by Waymo. For example, an expert report could refer to Protected Material of both Waymo and other entities. That, however, will not be evident from the face of the document. Instead, to identify documents responsive to Uber's request, Waymo would have to review the entirety of the report to confirm whether only Waymo Protected Material is reflected therein.

This burden on Waymo could be lifted if Uber simply moved to amend the Waymo protective order to allow for the material produced in the Waymo Litigation to be used in the Adversary Proceeding. The burden on Uber of filing such a motion is minimal, and much lower than the burden on non-party Waymo to provide notice to the various third parties.

Uber argues that Waymo's burden argument lacks merit because the issue of third party notices came up in connection with producing materials from the Arbitration. This is a red herring. For one, Uber never asked Waymo to notify third parties in any of the parties' meet and confers; instead, it wanted to amend the Waymo Litigation protective order so that notices would not be required. The first time this request appeared was in its motion to compel. Moreover, as Waymo understands it, a more substantial portion of the Arbitration record would likely be relevant to the Adversary Proceeding because the arbitral award is what the Debtor is seeking indemnity for.

Uber also argues that it is not a proper basis to withhold documents because there is a protective order in place in the Adversary Proceeding. But Waymo does not dispute for these purposes that this Court's protective order is sufficient to protect Waymo's confidential information. But that does not mean Waymo should be compelled to produce highly confidential *irrelevant* documents simply because Uber requests them. And Waymo cannot speak for third parties in providing their consent for their confidential information to be used in another case without notice and an opportunity to object, nor can it unilaterally modify the "use" restriction in the Waymo Litigation protective order.

Finally, to the extent that the Court finds that the entire record should be produced without modifying the Waymo Litigation protective order, Waymo requests that the Court order Uber identify, provide notice and get the consent of the third parties at issue. In its letter, Uber touts that its lawyers already possess these documents, and that it is little burden to provide notice. If Uber's arguments about the lack of burden are taken at face value, it should be more than willing to provide notice to third parties itself, rather than forcing that task on non-party Waymo.

***************

Waymo respectfully requests that the Court deny Uber's motion to compel.

Respectfully submitted,

Jordan R. Jaffe
Counsel for Third Party Waymo LLC

01980-00104/12375727.7