1

Debra I. Grassgreen (CA Bar No. 169978)

2

Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP

3

150 California Street, 15th Floor
San Francisco, CA 94111

4

Telephone:     (415) 263-7000
Facsimile:      (415) 263-7010

5

E-mail:         dgrassgreen@pszjlaw.com
                mmanning@pszjlaw.com

6

7

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)

8

JENNER & BLOCK LLP
353 N. Clark St.

9

Chicago, IL 60654
Telephone: (312) 222-9350

10

E-mail:         dbradford@jenner.com
                tmascherin@jenner.com

11

12

*Counsel for Uber Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

13

**NORTHERN DISTRICT OF CALIFORNIA**

14

**SAN FRANCISCO DIVISION**

15

WAYMO LLC,

Case No. 3:17-cv-00939-WHA

16

                              Plaintiff,

**DEFENDANT UBER TECHNOLOGIES,**

17

                                        **INC.'S REPLY IN SUPPORT OF MOTION**
                                        **TO MODIFY THE INTERIM MODEL**

          v.

18

                                        **PROTECTIVE ORDER**

19

UBER TECHNOLOGIES, INC.,
OTTOMOTTO LLC,  OTTO TRUCKING

<u>**Hearing:**</u>

20

LLC

**Date:  December 10, 2020**

21

                              Defendants.

**Time:  8:00 AM**
**Place:  Courtroom 12, 19th Floor**

22

23

**Judge:  Honorable William H. Alsup**

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      The Court Should Modify The Protective Order To Allow The Parties To The
        Adversary Proceeding To Use The Materials From This Case In That Dispute. .....................2

        A.      Controlling Case Law Supports Granting Uber's Request And Makes No
                Distinction Between Reviewing Documents And Using Them. ..................................3

        B.      Uber's Request Is Not Overbroad Because A Substantial Portion Of The
                Documents From This Case Are Relevant To The Adversary Proceeding. .................6

        C.      Waymo's Proposed Approach To Modifying The Protective Order Is
                Untenable. ...........................................................................................................7

        D.      Waymo Mischaracterizes The Events Leading To This Motion. ................................9

II.     In The Alternative, Waymo Should Identify Specific Materials That Will Cause
        Actual Prejudice If Disclosed In The Adversary Proceeding, And The Court
        Should Grant The Motion Except As To Those Specific Materials. .....................................11

III.    Waymo's Agreement That The Parties To The Adversary Proceeding Should Be
        Permitted To Review The Entire Record From This Case Resolves Any Issue
        About That Aspect Of Uber's Motion. ..................................................................................12

CONCLUSION ......................................................................................................................13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) ................................................................................4, 5, 6, 12

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) ............................................................................ *passim*

*Olympic Refining Co. v. Carter*,
332 F.2d 260 (9th Cir. 1964) ...................................................................................4, 5

REPLY IN SUPPORT OF MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER
CHICAGO:3012326.7

**INTRODUCTION**

Through its Motion, Uber seeks to avoid a wasteful duplication of efforts that would result if it were forced to re-conduct the same discovery in the Adversary Proceeding that was already conducted in this case. Uber also seeks to arrange a practical and efficient way for the parties to the Adversary Proceeding to secure access to and use of those discovery materials, while protecting the legitimate confidentiality interests of the producing parties.

Waymo's principal opposition to this motion, like its opposition to the motion before Judge Blumenstiel, is that the entire record in this case is not relevant to the Adversary Proceeding. Uber agrees with that point. Uber has never sought to *use* the entire record in this case in the Adversary Proceeding. Rather, Uber seeks to use only those portions of the record that it or other parties determine to be relevant, subject to a final determination by the trial judge as to relevance and admissibility.[1] Uber did request the right to *review* the entire record (all of which is already in its possession or control) because that is the most efficient way for it to determine what is relevant. Having persuaded Judge Blumenstiel that Uber was "greedy" because it wanted the right to review the entire record, Waymo now agrees that all parties to the Adversary Proceeding should be able to review the entire record, and does not oppose that aspect of Uber's Motion. The only apparent remaining dispute between Uber and Waymo is what happens when a party to the Adversary Proceeding seeks to *use* in the Adversary Proceeding a document or testimony from this case. Uber respectfully submits that the answer is supplied by clear Ninth Circuit authority: the parties to the Adversary Proceeding have a right to use the materials provided that they comply with a comparable protective order, such as the one that has already been entered in the Adversary Proceeding.

Apart from its own confidentiality concerns, Waymo raises concerns about the confidentiality interests of nonparties who produced documents in this case, and wrongly accuses Uber of seeking to

---

[1] It should not be necessary to decide, as a precondition to a party's right to use material in either discovery or motion practice, that the material is "relevant" for admissibility purposes. Whether or not material is ultimately determined to be "relevant" and thus admissible, an attorney should be permitted to use it in depositions as they determine appropriate in their professional judgment, including for example, to determine if the witness can offer admissible testimony about the document and/or to refresh the witness's recollection.

deprive them of notice.  Not true.  The nonparties have been served with Uber's motion via ECF and are fully on notice of the relief that Uber seeks.  Uber also took steps to ensure that the nonparties' interests are fully protected: it secured the entry in the Adversary Proceeding of a protective order that is, in all material respects, identical to this Court's protective order.  Granting the relief requested in this Motion will result in the disclosure of those nonparties' documents to only *one party* who has not necessarily already seen them: Mr. Levandowski.  Mr. Levandowski's potential use of the materials for the limited purpose of a dispute with two other parties who already have access to the information (Uber and Google) will not meaningfully impact the nonparties' confidentiality interests.

The most appropriate, practical, and efficient path forward is for the Court to modify the protective order to allow the parties to the Adversary Proceeding to use the relevant materials from this case solely for prosecuting, defending, and attempting to settle the Adversary Proceeding—subject to the stringent restrictions of the protective order in that matter.  Accordingly, the Court should grant Uber's motion.

The Court should overrule Waymo's objection and modify the protective order so it does not preclude the parties to the Adversary Proceeding from actually *using* the record materials that they determine to be relevant to that dispute, provided they treat the materials with the same level of confidentiality the materials are afforded under this Court's protective order (Part I).  Alternatively, Waymo should be required to promptly identify specific materials as to which disclosure to Mr. Levandowski or his counsel (under the Adversary Proceeding protective order) would cause harm to Waymo, and the Court should grant the motion except as to those specific materials (Part II).  Finally, Waymo's concern about notice to third parties is moot (Part III), so there is no remaining issue in dispute with respect to Uber's request to review the record in this case for the purpose of identifying relevant materials.

## ARGUMENT

### I.   The Court Should Modify The Protective Order To Allow The Parties To The Adversary Proceeding To <u>Use</u> The Materials From This Case In That Dispute.

Despite agreeing to Uber's request to *review* the record, Waymo argues that Uber should not be able to *use* those same documents in the Adversary Proceeding, primarily because Waymo believes

2

not all of the documents are relevant.  (Opp. Br. 8-10.)  As discussed in Part A below, controlling Ninth Circuit precedent provides that because Waymo has not identified any actual harm or prejudice that will result from the relief sought, the parties to the Adversary Proceeding should not be precluded from using the record from this case in the context of another dispute.  That precedent provides no basis for drawing a line between reviewing the materials and using them, as Waymo suggests.  As discussed in Part B below, Waymo's relevance argument is unavailing because Waymo cannot deny that a substantial portion of the materials in this case *are* relevant to the Adversary Proceeding, and because Judge Blumenstiel is perfectly capable of keeping irrelevant information out of the Adversary Proceeding without this Court imposing any additional procedures to allow Waymo to make relevancy objections in a case to which it is not a party.  Further, as discussed in Part C below, Waymo's proposed approach to limiting Uber's ability to use the documents makes no sense and is a clear overreach.  Finally, as set forth in Part D below, Waymo has mischaracterized the events leading to this motion.

### A.      Controlling Case Law Require Supports Granting Uber's Request And Makes No Distinction Between Reviewing Documents And Using Them.

Uber cited controlling Ninth Circuit precedent establishing that "where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would *tangibly prejudice substantial rights* of the party opposing modification." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) (emphasis added) (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990)); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264–66 (9th Cir. 1964).  Waymo has not alleged, let alone shown, any harm or prejudice that would result to it or to any third party from the use of the materials in the Adversary Proceeding.  (*See generally* Opp. Br.)  It has thus come nowhere near to establishing "a tangibl[e] prejudice [to] substantial rights," as required to justify a refusal to modify the protective order.  *Foltz*, 331 F.3d at 1132.  Accordingly, Ninth Circuit precedent clearly indicates that Waymo's objection should be overruled and the Motion should be granted in full.  *Beckman*, 966 F.2d at 476 (affirming modification of protective order where

1    objecting party did not show actual prejudice); *Foltz*, 331 F.3d at 1131 (reversing refusal to modify

2    protective order where objecting party had not shown specific harm or prejudice).

3         These controlling Ninth Circuit cases do not draw a line between reviewing documents versus

4    using them in the collateral litigation, as Waymo proposes.  *Foltz*, 331 F.3d at 1132; *Beckman*, 966

5    F.2d at 475; *Olympic*, 332 F.2d at 264–66.  Each case addresses whether the protective order should

6    be modified to allow collateral litigants to ***use*** the documents in their separate dispute—just as Uber

7    seeks to do here.  *Foltz*, 331 F.3d at 1130 (noting collateral litigants sought access to documents "***for***

8    ***use*** in their collateral litigation") (emphasis added); *Beckman*, 966 F.2d at 475 (noting that

9    "intervenors already have agreed ***to use*** the information in accordance with protective orders in the

10   [collateral] actions") (emphasis added); *Olympic*, 332 F.2d at 266 (ordering modification of the

11   protective orders "in such manner that Olympic may have access to the documents in question ***for use***

12   ***in the [collateral] case***") (emphasis added).  None of these cases remotely suggests it would be

13   appropriate to allow the collateral litigants to *review* the record, but require them to seek permission

14   from the original litigants each time they want to *use* a document.  Indeed, *Foltz* speaks to the

15   impropriety of such a suggestion: there, the Ninth Circuit explained that "the court responsible for the

16   original protective order decides whether modifying the order will eliminate the potential for

17   duplicative discovery," and that "once [that] court has modified its protective order, it must refrain

18   from embroiling itself in the specific discovery disputes applicable only to the collateral suits."  331

19   F.3d at 1133.

20        This established precedent supports Uber's request that the Court modify the protective order

21   so as not to preclude the use in the Adversary Proceeding of documents produced in this case, subject

22   to the comparable protective order that was entered in the Adversary Proceeding.  *See Foltz*, 331 F.3d

23   at 1132; *Beckman*, 966 F.2d at 475; *Olympic*, 332 F.2d at 264–66.  Waymo has no real response to

24   this precedent.  (Opp. Br. 7.)  Instead, it tries two tacks.  First, it attacks a straw man proposition,

25   which Uber never made, by arguing that the Ninth Circuit cases do not say a nonparty should be

26   deprived of notice.  (*Id.*)  As discussed in Part III below, Uber *has* provided notice of this motion to

27   nonparties.  Second, Waymo tries to distinguish the cases on the basis that they do not speak

28

REPLY IN SUPPORT OF MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER
CHICAGO:3012326.7

specifically to third party discovery.  (*Id.*)  That is untrue:  *Foltz* notes that the objecting party pointed to the existence of confidential third party information in the record.  331 F.3d at 1131.  The court quickly disposed of that objection, noting that "[a]ny . . . *third-party medical or personnel information* can be protected by placing the Private Intervenors under the same use and disclosure restrictions contained in the original protective order," which is exactly the case here.  *Id.* at 1134 (emphasis added).

But more importantly, whether the cases speak specifically to third party information or not has no bearing on the rule.  The cases explain that the mere fact that a producing party relied on a protective order is not a reason to refuse to modify that protective order, where doing so would serve judicial efficiency and a comparable protective order will provide the same level of protection. *Beckman*, 966 F.2d at 476 (citing *Olympic*, 332 F.2d at 264); *Foltz*, 331 F.3d at 1138.  That logic applies equally whether the producing entity was a named party to the case, or a nonparty.  The cases emphasize the strong presumption in favor of access to the documents.  *Beckman*, 966 F.2d at 475 ("Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation."); *Foltz*, 331 F.3d at 1131 ("This court strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation.").  There is no reason this principle applies with less force where the producing entity is a nonparty.  And finally, the cases focus on whether the restrictions in the collateral litigation will protect the documents to the same extent as the restrictions in the initial litigation.  *Beckman*, 966 F.2d at 475; *Foltz*, 331 F.3d at 1134.  This inquiry does not turn on whether the producing entity is a named party to the case.

Waymo has not identified any reason this Court should not follow controlling Ninth Circuit precedent that supports modifying the protective order.  Nor has Waymo identified any countervailing authority—or so much as a single case where a court does what Waymo asks this Court to do, in allowing the review but not the use of materials.  Accordingly, the Court should modify the order as requested in Uber's motion.

5

**B.      Uber's Request Is Not Overbroad Because A Substantial Portion Of The Documents From This Case Are Relevant To The Adversary Proceeding.**

Waymo objects to Uber's use of the documents in the Adversary Proceeding on the basis that not all of the record in this case is relevant to the Adversary Proceeding. (Opp. Br. 8.)  Although Uber agrees that the entire record in this case is not relevant, the objection to modifying the protective order on that basis is without merit for multiple reasons.

*First*, the fact that *some* documents from this case will not be relevant to the Adversary Proceeding is not a reason to deny the relief requested.  No party has a right to use irrelevant documents—including because an irrelevant document, by definition, would not advance any claim or defense asserted.  But the fact that some documents are irrelevant is not a reason to preclude a party from seeking to use documents that they determine *are* relevant—subject to the same limitations on use and admissibility as applies in any proceeding.

*Second,* as Waymo now appears to acknowledge, the only practical way for all the parties to the Adversary Proceeding to have a fair opportunity to determine what documents from this case are relevant to the Adversary Proceeding is to permit them to review the record and make that assessment for themselves.  This is not a situation where only a few documents from this case are likely to be relevant to the Adversary Proceeding.  To the contrary, a substantial portion will likely be relevant. Uber, for example, seeks damages, contribution, and setoff from Mr. Levandowski for the amount it paid to settle this case.  (Ex. A to Grassgreen Decl., Uber Answer & Counterclaims, at Affirmative Defense 10, Counterclaims VI and VII.)  To litigate these claims and defenses, Uber will need to present evidence of the role that Mr. Levandowski's wrongdoing played in the claims in this case. Additionally, Uber contends in the Adversary Proceeding that Mr. Levandowski's wrongful misappropriation, retention, and use of Google confidential information—which was the topic of substantial discovery in this case—nullifies the Indemnification Agreement that is at the heart of the Adversary Proceeding.  (*Id.* at Affirmative Defense 4, Counterclaim III.)  Uber further contends that Mr. Levandowski's fraud during the due diligence process—which process was also the topic of extensive discovery in this case—prompted and supports Uber's rescission of the Indemnification Agreement.  (*Id.* at Affirmative Defense 7, Counterclaim VIII.)

6

Waymo cannot dispute the two matters have a substantial overlap in core facts, witnesses, and legal issues. (Opp. Br. 9-10.) Waymo's attempts to quibble about the extent of the overlap, notwithstanding the concession, miss the mark:

- When it comes to witnesses, Waymo concedes that many of the witnesses from this case have been identified in the Adversary Proceeding Rule 26 disclosures (there are 35 in Uber's disclosure and 20 in Mr. Levandowski's), but faults Uber for not "identify[ing] the subject matter that those witnesses testified about and how it is relevant." (Opp. Br. 9.) This argument defies logic; obviously, Uber cannot describe the testimony from the Waymo Litigation without reviewing it for purposes of the Adversary Proceeding, which it is currently prohibited from doing.

- Waymo suggests that the information Stroz collected from employees other than Levandowski is irrelevant to the Adversary Proceeding. (*Id.*) Not so; under the Indemnification Agreement, if Levandowski knew about, permitted, or induced a bad act by those employees, the Indemnification Agreement is nullified to the same extent as if Levandowski committed the bad act himself.

- Waymo also lists a number of types of documents that were produced in this case that it claims are not relevant to the Adversary Proceeding, such as documents related to its product development, the history of its self-driving car program, business plans and forecasts, financial information, and partnerships. (*Id.* at 10.) Of course, Uber cannot demonstrate the relevance of documents it has not been able to review for purposes of the Adversary Proceeding; however, Uber strongly disputes the idea that these types of documents are *per se* irrelevant without evaluating them. For instance, to the extent that documents related to Waymo's product development reflect that Levandowski misappropriated confidential information, that would be relevant to Uber's claims and defenses based on Levandowski's wrongful conduct.

*Third*, Waymo's concerns about relevance are also misplaced because Judge Blumenstiel, who is presiding over the Adversary Proceeding, is more than capable of keeping irrelevant information out. This Court need not try to construct some additional procedure for adjudicating relevance in another matter that is not already at the parties' and Judge Blumenstiel's disposal.

## C. Waymo's Proposed Approach To Modifying The Protective Order Is Untenable.

In addition, Waymo's objection to the *use* of the materials, as distinguished from the *review* of them, makes no sense. (*See, e.g.*, Opp. Br. 10.) Waymo made clear that by "use," it means "produce." (Opp. Br. 8 ("use (i.e., produce in discovery)," 9 ("objections to Uber's use (i.e. production)"), 10 ("before *use* (*i.e.* production)").) Therefore, Waymo is apparently agreeing that Uber, Levandowski, and Google can each *review* all the materials in this case, but not that they can *produce those same*

7

*materials to each other*.  But how can Mr. Levandowski review the documents if the documents cannot be produced to him?

Waymo's position is so illogical that even Waymo struggles to articulate what it is asking for.  In the same paragraph, Waymo states that Uber, Google, and Levandowski may review the entire record, but also states that if Uber wants to produce a document to Levandowski, Uber should have to seek Waymo's permission first.  (Opp. Br. 10.)  Waymo also claims to be asking this Court only to preserve its objections, but in the same paragraph seeks to impose a system in which (a) Waymo has to approve each and every use of a document in the Adversary Proceeding—in advance, and (b) absent Waymo's agreement, Uber has to engage in motion practice before Judge Blumenstiel prior to using any document from this case.  (*Id.*)

The only thing that is clear from Waymo's proposal is that it will further delay the progress of the Adversary Proceeding and interject Waymo into a case to which it is not a party.  (Opp. Br. 10.)  Waymo seeks to give itself unheard of power over Uber's ability to defend itself in the Adversary Proceeding—it wants Uber to have to come to Waymo each time Uber seeks to use a document from this case (regardless of who the producing party was).  (*Id.*)  Waymo wants Uber to have to explain the manner in which it intends to use each and every document and make a case for why each is relevant.  (*Id.*)  If Waymo does not like the reason for which Uber seeks to use the document, Waymo wants to be able to force Uber to incur the time and expense of motion practice.  (*Id.*)  This would severely delay and impinge Uber's ability to use relevant documents at deposition, on a motion, and at trial, which is now scheduled for April 2021.  The close of fact discovery is not far off; it is currently set for January 29, 2021.  Waymo's proposal, which enjoys no support in the protective order, case law, or any other source, would put enormous power into Waymo's hands—power to delay and obstruct Uber's defense in a case to which Waymo is not even a party.[2]

---

[2] Waymo's counsel has already sought to wield this kind of power. Waymo's counsel has required Uber to explain its rationale, in detail, for every request to see a document, no matter how bland or unobjectionable. For instance, Waymo would not agree to Uber's review of an *engagement letter* for an independent expert appointed by both parties before Uber first explained why it wanted to see the letter.  (*See* Ex. B to Declaration of David Bradford at 2, October 28, 2020 email from J. Jaffe to K. Ciliberti.)

8

### D.     Waymo Mischaracterizes The Events Leading To This Motion.

Finally, Waymo grossly mischaracterizes the events leading to this motion.  In truth, Uber has been diligently pursuing ways to litigate and resolve the Adversary Proceeding in an efficient manner, and Waymo has been obstructing Uber's efforts to do so.

*First*, Uber never proposed that the parties could alter the protective order in this case without seeking the Court's approval.  (*Cf.* Opp. Br. 4.)  Uber suggested that Waymo and Uber stipulate to a proposed modification, and then *file that stipulation for the Court's review and approval*—exactly as the parties have done numerous times to extend the destruction deadline set forth in Paragraph 15 of the Order.  The suggestion that Uber has sought to circumvent or unilaterally modify the Court's protective order is false.

*Second*, Uber has never sought to deprive the nonparties in this matter of notice that Uber is seeking to use documents in the Adversary Proceeding.  Quite the opposite: Uber's motion to Judge Blumenstiel expressly sought to *compel Waymo to provide notice to the nonparties* before complying with the subpoena, as required by the protective order.  (Opp. Br. Ex. 5 to Jaffe Decl., Uber letter-brief to Judge Blumenstiel at 3 ("Uber asks this Court to enforce the subpoenas against Waymo *and require Waymo to provide notices to third parties,* as it agreed to do in the Waymo Litigation protective order.") (emphasis added).)

*Third*, contrary to Waymo's assertions, Uber has worked with Waymo and made targeted requests for specific materials within the record, notwithstanding the broad language in its subpoenas—and Waymo has still refused to cooperate at every turn.  In meet-and-confer discussions, Waymo requested that Uber serve multiple subpoenas upon it so that it could better evaluate the information that Uber sought to review, and that Uber send a separate request for only the materials that did not implicate nonparty interests.  Uber complied with both requests, yet Waymo has still refused to produce any of the materials identified, except four sets of expert reports and a handful of document requests.  Waymo then asked Uber to identify smaller categories of materials that Uber wished to prioritize.  Uber complied by identifying lists of (1) specific reports and transcripts for

REPLY IN SUPPORT OF MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER

certain of Uber's own expert witnesses,[3] (2) specific deposition transcripts and related document productions for certain of Waymo's current and former employees,[4] and (3) specific reports and materials related to certain of Waymo's expert witnesses.[5]   Uber also specifically requested that Waymo consent to Uber's review of deposition transcripts for two of Uber's own fact witnesses that Waymo had designated confidential.[6]  Yet, with the exception of the four sets of expert materials, Waymo has otherwise refused to comply with even these more targeted requests.  Waymo's assertion that Uber has not made targeted requests for specific materials (Opp. Br. 4-5 and n.4) is objectively untrue.[7]   At the same time, Waymo mischaracterized Uber's position before Judge Blumenstiel, contending that Uber had been overreaching and not identifying targeted document categories.  (*See* Opp. Br. Ex. 6 to Jaffe Decl., Waymo letter-brief to Judge Blumenstiel at 3.)

*Fourth,* Uber did not agree to one path and then unreasonably reverse course. (*Cf.* Opp. Br. 5-6.)  During the parties' meet-and-confer conferences, Waymo requested that Uber file a motion in this Court to modify the protective order.  Uber agreed to do so under the mistaken assumption that Waymo would not oppose the motion.  (Ex. C to Declaration of David Bradford at 1, October 5, 2020 Email from D. Bradford to J. Jaffe.)  However, when Waymo made clear that it believed it had the right to assert relevancy objections to Uber's use of the documents that Uber determined to be relevant (*see id.* at October 5, 2020 Email from J. Jaffe to D. Bradford), Uber concluded that relevancy issues would best be resolved by the trial judge presiding over the Adversary Proceeding.  Further, Uber concluded

---

[3] Ex. A to Declaration of David Bradford at 1, September 29, 2020 Email from K. Ciliberti to J. Jaffe (listing McManamon, Lebby, Hobbs, Shaw, Faulkner, and Laykin); *see also* Ex. B to Declaration of David Bradford at 3, October 27, 2020 Email from K. Ciliberti to J. Jaffe (renewing request to review the reports of Uber's own experts McManamon, Lebby, and Hobbs).

[4] During one or more of the meet-and-confer calls, Uber verbally advised Waymo that the specific witnesses listed by name in Paragraphs 1(a) and 1(b) of its September 23 subpoena were the fact witnesses whose materials Uber sought to prioritize, though it reserved its rights related to others.

[5] Again, Uber made this request verbally on one or more meet-and-confer calls by explaining that the experts listed by name in Paragraph 1(c) of its September 23 subpoena were the ones whose materials Uber sought to prioritize, though it reserved all rights.

[6] Ex. B to Declaration of David Bradford at 1, November 10, 2020 email from K. Ciliberti to J. Jaffe (requesting permission to review transcripts of Uber witnesses Droz and Burnette).

[7] Indeed, Uber even sought to identify specific categories of materials that were more likely to be relevant in its Motion to this Court.  (Mem. 11-13.)  Yet, Waymo takes issue with this alternative proposal as "unworkable." (Opp. Br. 10-11.)

10

that it could secure the right to use the materials already in its possession simply by asking that Waymo be required to comply with Paragraph 10 of the protective order so that Waymo could move forward with respect to Uber's subpoenas.  Ultimately, Judge Blumenstiel decided that it was more appropriate for Uber to seek modification of the protective order in this case before reviewing the documents, and Uber has now done so.

*Fifth*, Waymo misleadingly relies on Judge Blumenstiel's comment that Uber's request was "greedy"—when in fact, Waymo has since agreed that the parties to the Adversary Proceeding should be permitted to review the entire record to determine what documents they will seek to use in the Adversary Proceeding.  Uber's counsel accepts responsibility for not making clear to Judge Blumenstiel that Uber was not seeking to *use* all documents from this case, but rather was seeking the right to *review* all documents to determine which documents it needs to use—something that Waymo has now conceded is reasonable.  As noted, Uber will then seek to *use* only that portion of the record that it determines will advance its claims or defenses in the Adversary Proceeding, consistent with the Federal Rules of Evidence and Federal Rules of Civil Procedure.  Uber submits that if the Court grants the Motion, any relevancy or "scope" objection asserted to Uber's use of particular documents—by parties to the Adversary Proceeding—would best be resolved by Judge Blumenstiel.  However, of course, Uber will proceed in whatever manner this Court directs, should this Court determine that it is appropriate to preclude Uber from reviewing or using particular categories of documents.

## II.    In The Alternative, Waymo Should Identify Specific Materials That Will Cause Actual Prejudice If Disclosed In The Adversary Proceeding, And The Court Should Grant The Motion Except As To Those Specific Materials.

Uber has always been, and remains, willing to keep certain categories of materials off limits if they truly impact a legitimate confidentiality interest (even when used in a manner consistent with the protective order).   In that spirit, Uber has already agreed that it need not review any of Google's source code for the purpose of the Adversary Proceeding.  Of course, Uber is prepared to agree that it will not seek to *use* these materials either, absent particular circumstances in which it can demonstrate that the material is relevant or will lead to discovery of relevant evidence.  And, if Waymo had been able to identify additional categories of documents for which disclosure would present actual harm or

11

prejudice to Waymo and which are not appropriate to use in discovery, Uber would have agreed not to review or use those as well.

Accordingly, as an alternative to the full relief sought, if the Court is inclined to limit in advance what materials Uber may use in the Adversary Proceeding, Uber requests that the Court grant its Motion except as to specific, narrow categories of documents as to which Waymo demonstrates that substantial harm and prejudice would result from the use of these documents.  Uber submits that Waymo has had an opportunity to demonstrate this kind of prejudice in its opposition brief, and failed to do so; therefore, this Court need not give Waymo another chance.  *Beckman*, 966 F.2d at 476 (affirming modification of protective order where objecting party did not show specific harm or prejudice); *Foltz*, 331 F.3d at 1130-31 (reversing refusal to modify protective order where objecting party did not show specific harm or prejudice).  However, as an alternative, Uber respectfully requests that the Court grant this Motion, subject to Waymo having a further opportunity to seek relief from this Court as to any materials for which Waymo can demonstrate actual harm from use in conformity with the protective order.

Finally, as one other alternative, Uber proposes that the Court grant its Motion except as to the categories of documents that Waymo lists on page 10 of its opposition, with the caveat that Uber may move for leave to review and use materials in these categories that if Uber has reason to believe that they may lead to the discovery of admissible evidence.

### III.   Waymo's Agreement That The Parties To The Adversary Proceeding Should Be Permitted To <u>Review</u> The Entire Record From This Case Resolves Any Issue About That Aspect Of Uber's Motion.

Waymo does not oppose Uber's request that the parties to the Adversary Proceeding be permitted to review the entire record in this case, provided that the nonparties who produced documents in this case are notified.  (*See* Opp. Br. 6.)  Waymo therefore has agreed to Uber's review, because the nonparties *have been* notified.  The ECF service list for this case includes numerous intervenors, interested parties, movants, and "miscellaneous" non-parties, including, by way of example only, Don Burnette, John Gardner, Stroz Friedberg LLC, Richard Jacobs, Collin Sebern, John Cooper, Anthony Levandowski, Soren Julesgaard, Travis Kalanick, Slack Inc., Lyft Inc., Lior Ron,

Aurora Innovation Inc., Velodyne LiDAR Inc., Sandstone Group LLC, Tyto LiDAR LLC, Ognen Stojanovski, Edward Russo, Jacob Nocon, Mathew Henley, and Nicholas Gicinto.  Each of these persons and entities (and more) received ECF service of Uber's motion, and therefore are on notice that Uber is seeking to use the documents from this case in the Adversary Proceeding.  Notably, none of those parties filed an opposition to Uber's motion.  If either Waymo or this Court believes there are other nonparties that should be notified of this motion, Uber will serve it on those persons or entities at the Court's direction.

The lack of objection by any of these nonparties is not surprising, because their interests (as well as those of all parties to the case) will be fully protected by the protective order entered in the Adversary Proceeding. That protective order contains the exact same categories of confidentiality as the one entered in this matter.  It contains the exact same restrictions on how each category of documents can be disclosed and filed.  It sets forth the same procedures to be followed if a party is subpoenaed or subject to a document request or court order in another matter.  It has the same limitation on the purpose for which the documents may be used (except, of course, limited to the Adversary Proceeding instead of limited to this case).  And it sets forth the same destruction requirements at the conclusion of the dispute.  The *only* additional disclosure that will be permitted if this Court modifies the protective order as requested is a disclosure to Levandowski.  None of the nonparties has objected to disclosure to Levandowski, and Levandowski's use will be strictly limited to the purposes of litigating, defending, and settling the Adversary Proceeding.

Thus, there is no remaining issue in dispute with respect to Uber's request that the protective order be modified to permit the parties to the Adversary Proceeding to review the record from this case for the purpose of identifying materials relevant to that dispute.

## CONCLUSION

Uber respectfully requests that this Court modify paragraph 7 of the protective order in this case to permit the parties to the Adversary Proceeding to review, produce, and use as appropriate, the record and discovery from this case, subject to the Adversary Proceeding protective order.  In the alternative, Uber respectfully submits that Waymo should be required to promptly identify specific

13

materials that would cause actual harm to Waymo were they to be used in conformity with the Adversary Proceeding protective order.  As one other alternative, Uber proposes that the Court grant its Motion except as to the categories of materials Waymo lists on page 10 of its opposition, subject to Uber's ability to move for leave to review and use those materials.


Respectfully submitted:

DATED: November 25, 2020                          PACHULSKI STANG ZIEHL & JONES LLP


                                                 By:___/s/ *Debra I. Grassgreen*_____
                                                 Debra I. Grassgreen
                                                   -and-
                                                 JENNER & BLOCK LLP
                                                 David J. Bradford
                                                 Terri L. Mascherin

                                                 *Counsel for Defendant*
                                                 *Uber Technologies, Inc.*

14

Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:    (415) 263-7000
Facsimile:     (415) 263-7010
E-mail:         dgrassgreen@pszjlaw.com
                   mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail:         dbradford@jenner.com
                   tmascherin@jenner.com

*Counsel for Uber Technologies, Inc.*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                    Plaintiff,<br><br>       v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC,  OTTO TRUCKING LLC<br><br>                 Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DECLARATION OF DAVID BRADFORD IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER**<br><br>**Hearing:**<br><br>**Date:   December 10, 2020**<br>**Time:  8:00 AM**<br>**Place:  Courtroom 12, 19th Floor**<br><br>**Judge:  Honorable William H. Alsup** |

I, David Bradford, hereby declare as follows:

1.     I am co-counsel to defendant Uber Technologies, Inc. ("**Uber**") in the above-entitled action and have personal knowledge of the facts contained in this Declaration, which are true and correct, and if sworn as a witness, I could and would testify competently thereto.  I am also co-counsel to Uber in the adversary proceeding of *Anthony Levandowski v Uber Technologies, Inc.*, N.D. Cal. Bankr., Adv. Pro. No. 20-03050 (HLB) (the "**Adversary Proceeding**"), pending in the U.S.

Bankruptcy Court for the Northern District of California in connection with the bankruptcy proceeding *Anthony Levandowski*, Case No. 20-30242 (HLB)(the "**Bankruptcy Case**").

2.      I submit this declaration in support of the *Defendant's Reply In Support of Motion to Modify the Interim Model Protective Order.*[1]

3.      Attached hereto as **Exhibit A** is a true and correct copy of an email chain between counsel for Waymo and counsel for Uber in which the most recent communication is a September 29, 2020 email from K. Ciliberti to J. Jaffe listing the reports of those of Uber's own expert witnesses that Uber sought permission to review.

4.      Attached hereto as **Exhibit B** is a true and correct copy of an email chain between counsel for Waymo and counsel for Uber in which the most recent communication is a November 10, 2020 email from K. Ciliberti to J. Jaffe requesting production of an engagement letter and consent to review two deposition transcripts and exhibits.

5.      Attached hereto as **Exhibit C** is a true and correct copy of an email chain between counsel for Waymo and counsel for Uber in which the most recent communication is an October 5, 2020 email from J. Jaffe to D. Bradford indicating that Waymo would not consent to submit an agreed motion to modify the protective order.

**The Parties' Meet-And-Confer Conferences**

6.      Counsel for Uber and counsel for Waymo have engaged in a number of meet-and-confer discussions with respect to Uber's efforts to secure access to documents from the Waymo v. Uber litigation for the purpose of the Adversary Proceeding.

7.      During one or more of the meet-and-confer discussions, Uber verbally advised Waymo that the specific persons listed by name in Paragraphs 1(a), 1(b), and 1(c) of its September 23, 2020 subpoena were the witnesses whose materials Uber sought to prioritize, though it reserved its rights related to others.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

8.      During one or more of the meet-and-confer discussions, Uber verbally advised Waymo that the specific nonparty materials listed in Paragraph 1 of its September 28, 2020 subpoena were the nonparty materials that Uber sought to prioritize, though it reserved its rights related to others.

9.      Uber has been unable even to obtain prioritized material through meet-and-confer requests.  As but one example, in response to Waymo's refusal to agree to Uber's counsel's request to review an independent software expert report and related materials (which expert was appointed by both Waymo and Uber as part of a process set forth in the parties' settlement agreement in this matter), Uber asked Waymo to, in the first instance, produce the engagement letter for that expert.  Waymo would not agree to this request before Uber first explained why it wanted to see the engagement letter.  Later, when Uber offered an explanation and renewed its request, Waymo declined to provide the letter and asked why Uber's counsel did not already have a copy in its possession.  Uber explained that it has not been able to locate or obtain access to a copy of the letter.  Waymo then insisted upon having another meet-and-confer call for Uber's counsel to explain why it did not have the letter at its disposal.  Waymo has still not provided a copy of this letter for Uber's review.  We provide this information not to point fingers at Waymo or its counsel, but to illustrate how burdensome and time-consuming it may be if Uber is required to ask Waymo's permission every time it seeks to use a document in the Adversary Proceeding.

10.      Since the meet and confer discussions began, Waymo has agreed to let Uber review only (a) four sets of expert reports, (b) a number of requests for production served in this case, and (c) the engagement letter discussed above, though Waymo has thus far refused to provide a copy of that letter to Uber.

11.      During the meet-and-confer discussions, counsel for Uber has agreed that Uber need not review any of Google's source code for the purpose of the Adversary Proceeding.

I declare under penalty of perjury that the forgoing is true and correct.  Executed on this 25th day of November 2020.

*/s/ David J. Bradford*
David J. Bradford

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

(September 29, 2020 email chain)

**Kras, Cheryl J.**

| | |
|---|---|
| **From:** | Ciliberti, Katharine R. |
| **Sent:** | Tuesday, September 29, 2020 9:51 AM |
| **To:** | Jordan Jaffe; Andrea P Roberts |
| **Cc:** | Mascherin, Terri L.; Bradford, David J.; Berry, John; rmeny@keker.com |
| **Subject:** | RE: Levandowski - Waymo-Uber record |

Hi Jordan,

Following upon the second point below, related to Uber's ability to review and use its own expert reports from the Waymo litigation notwithstanding any references to Waymo's expert opinions, or other information designated confidential.

After consulting with Boies Schiller, we have determined that in the first instance, we would prioritize the review of the following Uber expert reports:

- Responsive Expert Report of Dr. Michael Lebby (September 7, 2017)
- Responsive Expert Report of Dr. Paul McManamon (September 7, 2017)
- Responsive Expert Report of Dr. Philip Hobbs on non-infringement of U.S. Patent No. 9,368,936 (September 7, 2017)
- Rebuttal Expert Report of Joseph Shaw, PH.D. Relating to Alleged Trade Secrets (September 7, 2017)
- Supplemental Responsive Expert Report of Dr. Michael Lebby (November 6, 2017)
- Supplemental Responsive Expert Report of Dr. Paul McManamon (November 6, 2017)
- Expert Report of Erik Laykin (August 24, 2017)
- Expert Report of Kevin Faulkner (September 7, 2017)
- Corrected Supplemental Expert Report of Kevin Faulkner (November 16, 2017)
- Additional Supplemental Expert Report of Kevin Faulkner (January 19, 2018)

Of course, Uber reserves all rights with respect to the other experts not listed above.

We understand that each of these reports touches in some way on Waymo's claims that Uber and/or Levandowski misappropriated Google/Waymo trade secrets or confidential information, or that Uber infringed upon a Google/Waymo patent. As we have advised you and counsel for Google, such claims and allegations are relevant to the adversary proceeding because they pertain to a number of Uber's defenses to Levandowski's claims for indemnification, including but not limited to Uber's rescission of the indemnification agreement based on fraudulent inducement, Uber's Post-Signing Specified Bad Act defense, and Uber's Excluded Claim defense.

Please confirm Waymo's consent that Jenner may review and use these materials in full, without redactions, for the purpose of the adversary proceeding, notwithstanding the fact that they may refer to, cite, or quote Waymo's expert materials or other materials that Waymo designated as confidential.

Thanks,
Katie

---

**From:** Jordan Jaffe
**Sent:** Wednesday, September 23, 2020 6:55 PM
**To:** Ciliberti, Katharine R. ; Andrea P Roberts

**Cc:** Mascherin, Terri L. ; Bradford, David J. ; Berry, John ; rmeny@keker.com
**Subject:** RE: Levandowski - Waymo-Uber record

External Email – Exercise Caution

Katie,

I saw your team just sent over a subpoena before I replied to your email. In any event, with regard to the Waymo subpoena you mentioned, can you clarify what expert materials you're referencing? Are you referencing all the expert reports and related material in the case? Based on my understanding of the parties' claims, there are expert materials from the trade secret case that are irrelevant to you, including describing Waymo's highly confidential IP information that isn't at issue in the adversary proceeding. If it would be helpful to move this along quickly, Waymo does not object to Jenner discussing with Uber's former counsel (Boies), the identity of the parties' experts and the general topics each expert opined upon. This will enable Jenner to better understand which experts may be relevant to the parties' claims in the adversary proceeding. It will also streamline the subpoena process to get you the materials you're most interested in as quickly as possible.

On the second point, we are willing to discuss your request on a case-by-case basis, but cannot agree in a blanket fashion. Without doing a full re-review of the reports, my recollection is there is third party confidential information in some of Uber's expert reports, which Waymo cannot agree to waive or forgo under the Protective Order. For example, I recall one of Uber's technical experts included information from third party Velodyne in at least one of its expert reports. There's also the question of relevance for some of the expert reports. Regardless, if Uber identifies a specific Uber expert report it has in mind, we will address the request promptly. To be clear, however, Waymo does not at all object to Uber reviewing any expert report, transcript, exhibit or other document from the litigation that contains only Uber confidential information or public information.

Finally, I can confirm that QE can accept service for a Waymo subpoena.

Best regards,


**Jordan R. Jaffe** // Quinn Emanuel // 415.498.0556 // **jordanjaffe@quinnemanuel.com**

---

**From:** Ciliberti, Katharine R. [mailto:KCiliberti@jenner.com]
**Sent:** Tuesday, September 22, 2020 12:32 PM
**To:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Cc:** Mascherin, Terri L. <TMascherin@jenner.com>; Bradford, David J. <dbradford@jenner.com>; Berry, John <John.Berry@mto.com>; rmeny@keker.com
**Subject:** RE: Levandowski - Waymo-Uber record

**[EXTERNAL EMAIL]**

---

Jordan,

Consistent with our discussion during our last meet and confer, and pursuant to your request that we proceed by way of subpoena, Uber plans to issue more than one subpoena to Waymo to request materials from the Waymo litigation in tranches. Please confirm that you will accept service for Waymo.

We anticipate that the first such subpoena will request, in part, Waymo's expert materials (expert reports, transcripts, exhibits, etc.).

In the meantime, we would appreciate your confirmation that we (Jenner), as outside counsel to Uber, may immediately review and use Uber's own expert reports, transcripts, exhibits, etc. from the Waymo litigation, notwithstanding the fact that these materials may contain references to the reports, transcripts, exhibits, etc. of Waymo's expert witnesses.

Thanks,
Katie

---

**From:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>
**Sent:** Friday, September 18, 2020 11:45 AM
**To:** Bradford, David J. <dbradford@jenner.com>; Berry, John <John.Berry@mto.com>; rmeny@keker.com
**Cc:** Ciliberti, Katharine R. <KCiliberti@jenner.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Subject:** RE: Levandowski - Waymo-Uber record

External Email – Exercise Caution
David,

To follow up on our call, Waymo does not object to you and your firm accessing the parties' Rule 26 initial disclosures in the trade secret case. Those disclosures list the relevant witnesses in that case, their positions/affiliations at the time, and the topics the parties expected them to testify about. Please treat the disclosures as AEO under the terms of the bankruptcy protective order for the time being.

Waymo also does not object to Uber's former counsel (Boies Schiller) looking at these disclosures and giving Jenner Boies's impressions about which witnesses it believes are relevant to the ongoing bankruptcy proceeding. To be clear, this agreement tracks our prior discussion--whereby a Boies lawyer could provide their mental impressions on what witnesses it believes are relevant to the bankruptcy proceeding. But it does not include approval for Boies to go back and look at confidential Waymo or third party documents or testimony from the litigation when doing so.

I will separately follow up with a revised stipulation to extend the protective order deadline.

If you'd like to discuss, please let us know.

Best regards,

**Jordan R. Jaffe** // Quinn Emanuel // 415.498.0556 // **jordanjaffe@quinnemanuel.com**

---

**From:** Bradford, David J. <dbradford@jenner.com>
**Sent:** Wednesday, September 16, 2020 7:03 AM
**To:** Berry, John <John.Berry@mto.com>; Jordan Jaffe <jordanjaffe@quinnemanuel.com>; rmeny@keker.com
**Cc:** Ciliberti, Katharine R. <KCiliberti@jenner.com>
**Subject:** RE: Levandowski - Waymo-Uber record

**[EXTERNAL EMAIL]**

---

John, thanks. My partner, Katie Ciliberti, will be joining us. I have forwarded the invite to her. Thanks again, David

-----Original Appointment-----
**From:** Berry, John <John.Berry@mto.com>
**Sent:** Tuesday, September 15, 2020 11:01 PM
**To:** Bradford, David J.; jordanjaffe@quinnemanuel.com; rmeny@keker.com

3

**Subject:** Levandowski - Waymo-Uber record
**When:** Wednesday, September 16, 2020 1:30 PM-2:00 PM (UTC-08:00) Pacific Time (US & Canada).
**Where:**

External Email – Exercise Caution

Hi there,

John Berry is inviting you to a scheduled RingCentral meeting.

**Join RingCentral Meeting**

For the best audio
experience, please
use computer
audio.

| | |
|---|---|
| iPhone one-tap: | US: +1(650)2424929,,2136839571# |
| | +1(213)2505700,,2136839571# |
| | +1(346)9804201,,2136839571# |
| | +1(623)4049000,,2136839571# (US West) |
| | +1(720)9027700,,2136839571# (US Central) |
| | +1(773)2319226,,2136839571# (US North) |
| | +1(312)2630281,,2136839571# |
| | +1(469)4450100,,2136839571# (US South) |
| | +1(470)8692200,,2136839571# (US East) |
| | +1(646)3573664,,2136839571# |
| | US: +1(877)3802210,,2136839571# |
| Meeting URL: | https://meetings.ringcentral.com/j/2136839571 |

**Join by Telephone**

For higher quality, dial a number based on your current location.

| | |
|---|---|
| Dial: | US: +1(650)2424929 |
| | +1(213)2505700 |
| | +1(346)9804201 |
| | +1(623)4049000 (US West) |
| | +1(720)9027700 (US Central) |
| | +1(773)2319226 (US North) |
| | +1(312)2630281 |

+1(469)4450100 (US South)

+1(470)8692200 (US East)

+1(646)3573664

US: +1(877)3802210

Meeting ID:          213 683 9571

International numbers

**Join from an H.323/SIP room system**

H.323:          199.255.120.208##2136839571 (US West)

199.255.120.151##2136839571 (US East)

SIP:          2136839571@wcrc.ringcentral.com (US West)

2136839571@ecrc.ringcentral.com (US East)

---

**David J. Bradford**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com
+1 312 923 2975 | TEL
+1 847 721 9350 | MOBILE
+1 312 527 0484 | FAX
dbradford@jenner.com
Download V-Card | View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**EXHIBIT B**

(November 10, 2020 email chain)

**Kras, Cheryl J.**

**Subject:**                FW: Waymo Responses & Objections to Subpoena

---

**From:** Ciliberti, Katharine R. <KCiliberti@jenner.com>
**Sent:** Tuesday, November 10, 2020 5:15 PM
**To:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Cc:** Berry, John <John.Berry@mto.com>; Rachael Meny <rmeny@keker.com>; Miriam Manning
<mmanning@pszjlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Bradford, David J.
<dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Steege, Catherine L.
<CSteege@jenner.com>; Reid P. Mullen (rmullen@keker.com) <rmullen@keker.com>; Gorin, Alex
<Alex.Gorin@mto.com>
**Subject:** RE: Waymo Responses & Objections to Subpoena

Hi Jordan,

We have confirmed that we do not have access to the engagement letter for Professor Gerdes. We ask that you kindly
provide us a copy.

Separately, while the motion to modify the protective order is pending, we request that Waymo agree that Uber can
review, on an AEO basis, the deposition transcripts and associated exhibits for Burnette and Droz from the Waymo v.
Uber litigation. We expect these transcripts may contain information pertinent to Uber's fraud and Post-Signing
Specified Bad Acts defenses which are the subject of pending interrogatories from Mr. Levandowski, but we understand
that Waymo has designated these transcripts (or portions of them) confidential.

Thank you,
Katie

---

**From:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>
**Sent:** Friday, October 30, 2020 2:41 PM
**To:** Ciliberti, Katharine R. <KCiliberti@jenner.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Cc:** Berry, John <John.Berry@mto.com>; Rachael Meny <rmeny@keker.com>; Miriam Manning
<mmanning@pszjlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Bradford, David J.
<dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Steege, Catherine L. <CSteege@jenner.com>
**Subject:** RE: Waymo Responses & Objections to Subpoena

External Email – Exercise Caution
Thanks for that clarification, Katie.

To address the engagement letter point first.  You are correct that Waymo has lodged objections relating to production
of the software review materials pursuant to the subpoena.  The engagement letter, however, was jointly entered into
by Uber and Waymo.  It's also already in Uber's possession.  Accordingly, rather than Waymo "produce" this pursuant to
the subpoena, Waymo does not have an objection to you all, as Uber's counsel, simply looking at the copy already in
Uber's possession.   To be clear, this lack of objection is without prejudice to Waymo's objections to Uber's subpoenas
and is expressly not a waiver of any confidentiality rights that Waymo has under the protective order, the engagement
letter itself, the parties' settlement agreement or otherwise.

Regarding the technical expert reports, as I think I've previously related to you and David, at least one (and perhaps more) of the reports you mentioned include third party confidential information.  Therefore, as we've explained, we do not think that Waymo can simply consent to Uber's review of that material under the terms of the Waymo Protective Order.   In any event, if Uber is seeking "broader relief" from the Protective Order before Judge Alsup, including clearance to review third party confidential information without providing notice, it would seem to make more sense to allow that to resolve first.  However, let me know if you'd like to discuss.

Best regards,

**Jordan R. Jaffe** // **Quinn Emanuel** // **415.498.0556** // **jordanjaffe@quinnemanuel.com**

---

**From:** Ciliberti, Katharine R. <KCiliberti@jenner.com>
**Sent:** Thursday, October 29, 2020 6:02 AM
**To:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Cc:** Berry, John <John.Berry@mto.com>; Rachael Meny <rmeny@keker.com>; Miriam Manning <mmanning@pszjlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Bradford, David J. <dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Steege, Catherine L. <CSteege@jenner.com>
**Subject:** RE: Waymo Responses & Objections to Subpoena

**[EXTERNAL EMAIL]**

Thanks, Jordan.

We would like to see the engagement letter to understand the terms of his engagement, to help evaluate the relevance of his work.

Regards,
Katie

---

**From:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>
**Sent:** Wednesday, October 28, 2020 7:36 PM
**To:** Ciliberti, Katharine R. <KCiliberti@jenner.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Cc:** Berry, John <John.Berry@mto.com>; Rachael Meny <rmeny@keker.com>; Miriam Manning <mmanning@pszjlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Bradford, David J. <dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Steege, Catherine L. <CSteege@jenner.com>
**Subject:** RE: Waymo Responses & Objections to Subpoena

External Email – Exercise Caution
Katie,

I wanted to confirm receipt of this request and the request that David just sent via separate cover.  We will confer with our client and promptly get back to you regarding your and David's various requests.  One interim question:  What is the relevance of Prof. Gerdes' engagement letter to the current litigation?

Best regards,

**Jordan R. Jaffe** // **Quinn Emanuel** // **415.498.0556** // **jordanjaffe@quinnemanuel.com**

---

**From:** Ciliberti, Katharine R. <KCiliberti@jenner.com>
**Sent:** Tuesday, October 27, 2020 3:05 PM

**To:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Cc:** Berry, John <John.Berry@mto.com>; Rachael Meny <rmeny@keker.com>; Miriam Manning <mmanning@pszjlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Bradford, David J. <dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Steege, Catherine L. <CSteege@jenner.com>
**Subject:** RE: Waymo Responses & Objections to Subpoena

**[EXTERNAL EMAIL]**

---

Hi Jordan,

Thank you for agreeing that we may review the below-listed expert reports on an AEO basis "for the time being."

We would like to renew our request that Waymo consent to our review of Uber's own expert reports, notwithstanding that they may reference Waymo or Google confidential information. In particular for present purposes, we would like to review the reports of Michael Lebby, Paul McManamon, and Phillip Hobbs. Please confirm that we, as Uber's current outside counsel, may review these reports for the purpose of the Adversary Proceeding.

Separately, as you know, Uber's first subpoena requested all materials relating to the J Christian Gerdes expert findings. We understand that Waymo is objecting to this. As an interim step, we request that Waymo produce the engagement agreement with Mr. Gerdes.

Please advise.
Katie

---

**From:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>
**Sent:** Monday, October 5, 2020 7:41 PM
**To:** Andrea P Roberts <andreaproberts@quinnemanuel.com>; 'mmanning@pszjlaw.com' <mmanning@pszjlaw.com>; 'dgrassgreen@pszjlaw.com' <dgrassgreen@pszjlaw.com>; Bradford, David J. <dbradford@jenner.com>; Mascherin, Terri L. <TMascherin@jenner.com>; Ciliberti, Katharine R. <KCiliberti@jenner.com>; Steege, Catherine L. <CSteege@jenner.com>
**Cc:** Berry, John <John.Berry@mto.com>; Rachael Meny <rmeny@keker.com>
**Subject:** RE: Waymo Responses & Objections to Subpoena

External Email – Exercise Caution
+John and Rachel

David and Katie,

Pursuant to our meet and confer discussions, we determined, to the best of our ability, that the following reports contain only Waymo or Uber confidential information:

2017-09-07 Faulkner Rpt re Stroz Friedberg & 14,000 Files
2017-09-07 Laykin Rpt re Security
2017-09-14 French Report in Rebuttal to Faulkner
2017-09-14 French Report in Rebuttal to Laykin Report
2017-10-23 Crain, Andy Opening Rept
2017-11-13 Faulkner Suppl Expert Rpt.
2017-11-17 Crain Reply
2017-11-17 French Reply Report
2018-01-12 French Supplemental Report
2018-01-20 Add'l Faulkner Supplement

Waymo therefore can agree these are deemed produced under the terms of the bankruptcy protective order and in response to Uber's first subpoena.   Please treat them as Waymo AEO for the time being.  If there are portions that you contend comprise solely Uber confidential information, please let us know and we're happy to discuss the designation for that portion.

Best regards,

**Jordan R. Jaffe // Quinn Emanuel // 415.498.0556 // jordanjaffe@quinnemanuel.com**

---

**From:** Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Sent:** Wednesday, September 30, 2020 10:56 AM
**To:** 'mmanning@pszjlaw.com' <mmanning@pszjlaw.com>; 'dgrassgreen@pszjlaw.com' <dgrassgreen@pszjlaw.com>; 'dbradford@jenner.com' <dbradford@jenner.com>; 'tmascherin@jenner.com' <tmascherin@jenner.com>; 'kciliberti@jenner.com' <kciliberti@jenner.com>; 'csteege@jenner.com' <csteege@jenner.com>
**Cc:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Subject:** Waymo Responses & Objections to Subpoena

Counsel,

Please see attached.

**Andrea Pallios Roberts**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5023 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
andreaproberts@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

## Katharine R Ciliberti

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456  |  jenner.com
+1 312 840 7292 | TEL
+1 312 825 5190 | MOBILE
+1 312 840 7392 | FAX
KCiliberti@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**<u>EXHIBIT C</u>**

(October 5, 2020 email chain)

**Kras, Cheryl J.**

| | |
|---|---|
| **From:** | Jordan Jaffe <jordanjaffe@quinnemanuel.com> |
| **Sent:** | Monday, October 5, 2020 7:33 PM |
| **To:** | Bradford, David J.; Andrea P Roberts; Berry, John; Rachael Meny; Vu, Hong-An; Schuman, Brett |
| **Cc:** | DL_Uber – AL Team; Debra Grassgreen; Miriam Manning |
| **Subject:** | RE: Production of Waymo Record - confidential |

External Email – Exercise Caution
David,

To respond to your earlier email, while it generally tracks our discussions, it is not entirely accurate. To summarize Waymo's position:

1. Waymo does not expect it will oppose Uber's request for relief, but will not be able to take a final position until it sees the content of the motion itself. As I mentioned, Waymo and Uber appear to have different views on what the protective order requires, such as the required notice to third parties. Further, to the extent that the Court denies Uber's request, Waymo will request that Uber bear the burden to identify and provide notice to all necessary third parties.

2. Your email is unclear on what "attorneys eyes only review" of the record Uber will be requesting. My understanding from our conversation is that the motion will request that Uber's current counsel be able to review it on an attorneys' eyes only basis *only* to determine what it believes is relevant to the adversary proceeding. We discussed, but did not agree on, any follow-up protocol that would allow Uber to use specific documents from the Waymo/Uber record in the bankruptcy proceeding. But you recognized that such a "second step" was necessary. To be clear, Waymo maintains its right to object to the future use of any Waymo document from the *Waymo/Uber* litigation in the adversary proceeding identified pursuant to a modified use restriction. Waymo is potentially willing to consent to this type of "AEO relevance review" solely as a compromise and to avoid discovery disputes. It does not change its opposition to Uber's position that the entire litigation record is relevant and should be produced in the adversary proceeding.

3. For other parties' access and how that would be accomplished, let me discuss that with Waymo and get back to you.

Finally, given that this will not be an agreed motion (i.e. one that we file jointly), if Uber would still like to seek expedited consideration, let us know what briefing schedule and/or hearing date Uber is proposing. Waymo can then get back to you promptly whether it consents or opposes.

Best regards,


**Jordan R. Jaffe // Quinn Emanuel // 415.498.0556 // jordanjaffe@quinnemanuel.com**

---

**From:** Bradford, David J.
**Sent:** Monday, October 05, 2020 2:10 PM
**To:** Jordan Jaffe ; Andrea P Roberts ; Berry, John ; Rachael Meny ; Vu, Hong-An ; Schuman, Brett
**Cc:** DL_Uber – AL Team ; Debra Grassgreen ; Miriam Manning
**Subject:** RE: Production of Waymo Record - confidential

**[EXTERNAL EMAIL]**

Jordan, we are hoping that the motion can be submitted as agreed – in which event there should be no reason for a hearing date or briefing schedule, unless the Judge determines otherwise. Thanks, David

**From:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>
**Sent:** Monday, October 5, 2020 3:35 PM
**To:** Bradford, David J. <dbradford@jenner.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>; Berry, John <John.Berry@mto.com>; Rachael Meny <rmeny@keker.com>; Vu, Hong-An <HVu@goodwinlaw.com>; Schuman, Brett <BSchuman@goodwinlaw.com>
**Cc:** DL_Uber – AL Team <DL_UberALTeam@jenner.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Miriam Manning <mmanning@pszjlaw.com>
**Subject:** RE: Production of Waymo Record - confidential

External Email – Exercise Caution
David,

I can confirm receipt of your email from over this weekend on behalf of Waymo. I expect to respond later today (i.e., within one business day of your email).

On the last point from your Saturday email, what briefing schedule and hearing date are Uber proposing?

**Jordan R. Jaffe // Quinn Emanuel // 415.498.0556 // jordanjaffe@quinnemanuel.com**

**From:** Bradford, David J. <dbradford@jenner.com>
**Sent:** Monday, October 05, 2020 1:29 PM
**To:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>; Berry, John <John.Berry@mto.com>; Rachael Meny <rmeny@keker.com>; Vu, Hong-An <HVu@goodwinlaw.com>; Schuman, Brett <BSchuman@goodwinlaw.com>
**Cc:** DL_Uber – AL Team <DL_UberALTeam@jenner.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Miriam Manning <mmanning@pszjlaw.com>
**Subject:** RE: Production of Waymo Record - confidential

### [EXTERNAL EMAIL]

Jordan, John and Hong An,

Please let us know if we you agree to our filing an agreed motion before Judge Alsup per the email below. If we do not confirm your agreement today, we will seek to compel Waymo's compliance with our subpoenas before Judge Blumenstiel. Thanks, David

**From:** Bradford, David J.
**Sent:** Saturday, October 3, 2020 11:37 AM
**To:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>; Berry, John <John.Berry@mto.com>; Rachael Meny <rmeny@keker.com>; 'Vu, Hong-An' <HVu@goodwinlaw.com>; Schuman, Brett <BSchuman@goodwinlaw.com>
**Cc:** DL_Uber – AL Team <DL_UberALTeam@jenner.com>; 'Debra Grassgreen' <dgrassgreen@pszjlaw.com>; 'Miriam Manning' <mmanning@pszjlaw.com>
**Subject:** Production of Waymo Record

Jordan, John, and Hong-An,

Per our discussion with Jordan earlier this week, Uber will be filing a motion before Judge Alsup, which will seek to modify the "use" restriction in the Waymo protective order to permit Uber's counsel, to review the record from the Waymo litigation, including the independent software expert's findings, on an attorney's eyes only basis. Per your request, we would include a request that Mr. Levandowski's counsel and Google's counsel may also review the record on that same basis, based on our further understanding that Waymo (and Google and Mr Levandowski) will not object to the relief sought in the motion. We would also like to confirm that, assuming the motion is granted, and to the extent that Mr. Levndowski or Google seek access to this record, they will seek that access from Waymo and not from Uber. (Given our lack of access to the record, it would be difficult for us to respond to such a request on a reasonably prompt basis). Please confirm this is also agreeable.

Finally, please confirm that you will consent to asking for Judge Alsup to resolve the motion on an expedited timeline, shorter than his standard 35-day process.
Thanks, David

---

**From:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>
**Sent:** Wednesday, September 30, 2020 12:35 PM
**To:** Ciliberti, Katharine R. <KCiliberti@jenner.com>; Bradford, David J. <dbradford@jenner.com>
**Cc:** Andrea P Roberts <andreaproberts@quinnemanuel.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>
**Subject:** RE: preservation stipulation

External Email – Exercise Caution
Yes

**Jordan R. Jaffe // Quinn Emanuel // 415.498.0556 // jordanjaffe@quinnemanuel.com**

---

**From:** Ciliberti, Katharine R. [mailto:KCiliberti@jenner.com]
**Sent:** Wednesday, September 30, 2020 10:33 AM
**To:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>; Bradford, David J. <dbradford@jenner.com>
**Cc:** Andrea P Roberts <andreaproberts@quinnemanuel.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>
**Subject:** RE: preservation stipulation

**[EXTERNAL EMAIL]**

---

Thanks, Jordan.

Can you please confirm that we have authority to put your signature on this and file it?

Thanks,
Katie

---

**From:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>
**Sent:** Wednesday, September 30, 2020 12:12 PM
**To:** Bradford, David J. <dbradford@jenner.com>
**Cc:** Ciliberti, Katharine R. <KCiliberti@jenner.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>
**Subject:** RE: preservation stipulation

External Email – Exercise Caution
+Andrea

Please see attached further edits.

**Jordan R. Jaffe // Quinn Emanuel // 415.498.0556 // jordanjaffe@quinnemanuel.com**

---

**From:** Bradford, David J. [mailto:dbradford@jenner.com]
**Sent:** Wednesday, September 30, 2020 9:09 AM
**To:** Jordan Jaffe <jordanjaffe@quinnemanuel.com>
**Cc:** Ciliberti, Katharine R. <KCiliberti@jenner.com>
**Subject:** preservation stipulation

**[EXTERNAL EMAIL]**

---

Jordan, given the fast approaching deadline for destruction of Waymo record material and the importance of affording Judge Alsup time to review, we would like to get the agreed stipulation on file today. Please let us know promptly if there is any reason that we cannot do so. Thanks, David

---

**David J. Bradford**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com
+1 312 923 2975 | TEL
+1 847 721 9350 | MOBILE
+1 312 527 0484 | FAX
dbradford@jenner.com
Download V-Card | View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
**PACHULSKI STANG ZIEHL & JONES LLP**
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:    (415) 263-7000
Facsimile:     (415) 263-7010
E-mail:         dgrassgreen@pszjlaw.com
                  mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail: dbradford@jenner.com
          tmascherin@jenner.com

*Counsel for Uber Technologies, Inc.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| WAYMO LLC,<br><br>                         Plaintiff,<br><br>          v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC, OTTO TRUCKING LLC<br><br>                         Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**CERTIFICATE OF SERVICE OF:**<br><br>**(1)  DEFENDANT'S REPLY IN SUPPORT OF MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER; AND**<br><br>**(2)  DECLARATION OF DAVID BRADFORD IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER** |

DOCS_SF:104595.1 85647/001

1   STATE OF CALIFORNIA        )
                                       )

2   CITY OF SAN FRANCISCO     )

3         I, Hung Phan, am employed in the city and county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 150 California Street, 15th Floor, San Francisco, California 94111-4500.

        On November 25, 2020, I caused to be served the following documents in the manner stated below:

- **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER; AND**

- **DECLARATION OF DAVID BRADFORD IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER**

☑   (BY EMAIL) On **November 25, 2020,** I caused to be served the above-described documents by email to the parties indicated on the service list below at the indicated email address.

| ATTORNEYS FOR GOOGLE LLC | Attorneys for Anthony S. Levandowski |
|---|---|
| **MUNGER, TOLLES & OLSON LLP**<br>Thomas B. Walper (thomas.walper@mto.com)<br>John W. Berry (john.berry@mto.com)<br>Alexander S. Gorin (alex.gorin@mto.com)<br><br>**KEKER, VAN NEST & PETERS LLC**<br>Rachael E. Meny (rmeny@keker.com)<br>Thomas E. Gorman (tgorman@keker.com) | **KELLER BENVENUTTI KIM LLP**<br>Tobias S. Keller (tkeller@kbkllp.com)<br>Dara L. Silveira (dsilveira@kbkllp.com)<br><br>**GOODWIN PROCTER LLP**<br>Brett Schuman (bschuman@goodwinlaw.com)<br>Rachel M. Walsh (rwalsh@goodwinlaw.com)<br>Hong-An Vu (hvu@goodwinlaw.com) |
| **COUNSEL FOR TYTO GROUP** | **COUNSEL FOR PEAK TRUST** |
| **SAWYER & LABAR LLP**<br>Adrian Sawyer (sawyer@sawyerlabar.Com) | **JERMAIN, DUNNAGAN & OWENS, P.C.**<br>Diane F. Vallentine (dvallentine@jdolaw.com) |

        I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

        Executed on November 25, 2020 at San Francisco, California.

                                       */s/ Hung Phan*
                                     *Legal* Assistant