Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:     (415) 263-7000
Facsimile:     (415) 263-7010
E-mail:     dgrassgreen@pszjlaw.com
            mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail: dbradford@jenner.com
        tmascherin@jenner.com

*Counsel for Uber Technologies, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **WAYMO LLC,** | Case No. 3:17-cv-00939-WHA |
| **Plaintiff,** | **DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND SUPPLEMENTAL MOTION TO MODIFY INTERIM PROTECTIVE ORDER** |
| **v.** | |
| **UBER TECHNOLOGIES, INC., OTTOMOTTO LLC,  OTTO TRUCKING LLC** | Hearing: <br> Date:  February 18, 2021 <br> Time:  8:00 AM <br> Place: Courtroom 12, 19th Floor <br> Judge:  Hon. William H. Alsup |
| **Defendants.** | |

## TO:  CERTAIN NON-PARTIES WHO HAVE PRODUCED MATERIALS UNDER THE PROTECTIVE ORDER, AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE**[1] that on February 18, at 8:00 a.m., or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, 450 Golden Gate Ave, Courtroom 12, San Francisco Courthouse, before the Honorable William H. Alsup, defendant Uber Technologies, Inc. does and hereby move for an order granting its *Supplemental Motion to Modify Interim Protective Order* ("**Supplemental Motion**").  By way of the

---

[1]  Pursuant to GENERAL ORDER 72-6, In re: Coronavirus Disease Public Health Emergency, the Court may decide the motion on the papers without a hearing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Supplemental Motion, Uber respectfully requests that the *Order Modifying Protective Order* entered on December 22, 2020 (Dkt. 2733) ("**December 22 Order**") be deemed applicable to the Remaining Third Parties (as defined below),  and in so doing, modify the "use" restrictions of Paragraph 7 of the Interim Model Protective Order in effect in the above-captioned matter (the "**Litigation**") including subsections 7.1 through 7.4, to allow the parties to the separate proceeding of *Anthony Levandowski v Uber Technologies, Inc.*, N.D. Cal. Bankr., Adv. Pro. No. 20-03050 (HLB) (the "**Adversary Proceeding**") to (a) review the Protected Materials (as defined below) produced by the Remaining Third Parties, and (b) use such materials for prosecuting, defending, and attempting to settle the Adversary Proceeding, pursuant to a substantially identical protective order already entered in the Adversary Proceeding, and subject to the caveat set forth in Judge Alsup's December 22 Order.

The relief requested in the Supplemental Motion is as to those third parties that were not on the ECF Service List identical to that which was granted as to those parties who received notice of the Initial Motion.  *See*, *Order Modifying Protective Order* entered on December 22, 2020 (Dkt. 2733).  To ensure that all third parties who produced documents and/or provided testimony pursuant to the Protective Order are subject to the December 22 Order (and the Protective Order entered in the Adversary Proceeding), Uber has filed this Supplemental Motion and served all third parties who were not served with the Initial Motion.

**PLEASE TAKE FURTHER NOTICE** that any opposition to the Supplemental Motion must be filed and served not more than 14 days after the Supplemental Motion was filed.

The Supplemental Motion is based on this notice of motion and supporting memorandum of points and authorities, the supporting declaration of Debra Grassgreen and accompanying exhibits, as well as other written or oral argument that Uber may present to the Court.

DATED: January 14, 2021

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*
Debra I. Grassgreen
Miriam Manning

and

JENNER & BLOCK LLP
David J. Bradford
Terri L. Mascherin

*Counsel for Defendant*
*Uber Technologies, Inc.*

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.  BACKGROUND ................................................................................................... 2

III. ARGUMENT ........................................................................................................ 4

A.   The Ninth Circuit Strongly Favors Providing Collateral Litigants Access To Discovery In The Interests of Judicial Economy.   4

B.   The Protected Materials May Be Relevant to the Adversary Proceeding Because of the Substantial Overlap Between the Two Proceedings.   6

C.   The Relief Sought Will Promote Judicial Economy and Efficiency.   7

IV.  CONCLUSION ..................................................................................................... 8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470, 475 (9th Cir. 1992) .......................................................................... 4, 5, 6, 8

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122, 1131-34 (9th Cir. 2003) ................................................................. 4, 5, 6, 8

*Olympic Refining Co. v. Carter*,
   332 F.2d 260, 264-66 (9th Cir. 1964) ............................................................................... 4

*United Nuclear Corp. v. Cranford Ins. Co.*,
   905 F.2d 1424, 1428 (10th Cir. 1990) ........................................................................... 4, 5

*Wilk v. Am. Med. Ass'n*,
   635 F.2d 1295, 1299 (7th Cir. 1980) ................................................................................. 4

**Other Authorities**

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure §
   2044.1 (2d ed. 1994) ......................................................................................................... 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

I.

**PRELIMINARY STATEMENT**

On December 22, 2020, the Court issued an *Order Modifying Protective Order* which allows the parties to a pending bankruptcy Adversary Proceeding to review the record in this Litigation for appropriate use in the bankruptcy Adversary Proceeding.  The December 22 Order, however, only applies to those parties who received notice of Uber's Initial Motion.  Several third parties who had produced confidential documents and/or testimony pursuant to the Interim Model Protective Order (the "**Protective Order**"), but who did not appear on the ECF docket, were not served with the Initial Motion and thus the December 22 Order does not apply to those persons or entities.  Uber therefore files this Supplemental Motion to provide notice to those third parties who were not served with the Initial Motion of its request that the December 22 Order be amended or deemed to apply to them.

Through the relief sought in this Supplemental Motion (as with the Initial Motion), Uber seeks to eliminate any risk that Uber may inadvertently run afoul of the December 22 Order by reviewing materials that turn out to reference, cite, or include information disclosed by the Remaining Third Parties.  Uber does not expect to use any of the documents marked "Confidential" by the Remaining Third Parties, but rather files this Supplemental Motion in an abundance of caution in the event that materials designated by other parties (who were served with the Initial Motion and subject to the December 22 Order) may contain references to confidential information produced by the Remaining Third Parties.  If the December 22 Order is amended to apply to the Remaining Third Parties, the documents and/or testimony produced by them in the Litigation will be governed by a protective order entered in the Adversary Proceeding that is nearly identical to the one entered in this Litigation.  The protective order entered in the Adversary Proceeding contains the same categories of confidentiality and the same restrictions on the use and disclosure of the confidential materials which will fully protect the confidentiality interests of those who have testified and/or produced confidential discovery in this Litigation, including the Remaining Third Parties.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## II.

## BACKGROUND

1.      Uber has not restated the entire factual background of this matter and instead incorporates by reference the facts set forth in the Initial Motion (a copy of the Initial Motion is attached as Exhibit A to the supporting declaration of Debra Grassgreen filed concurrently with this Supplemental Motion).  However, a brief summary of the factual record is provided below.

2.      The parties to the Litigation and various third parties produced documents and/or testimony pursuant to a Protective Order which became effective in this Litigation on March 16, 2017.  (*See* Dkt 60).  Uber and/or its former counsel continue to possess the materials and testimony that were produced pursuant to the Protective Order (the "**Protected Material**").

3.      On July 16, 2020, Anthony Levandowski filed the Adversary Proceeding against Uber entitled, *Anthony Levandowski vs. Uber Technologies, Inc.* (APN 20-03050 HLB) in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"). On September 16, 2020, the Bankruptcy Court entered a protective order in the Adversary Proceeding ("**Adversary Proceeding Protective Order**") that is virtually identical to the Protective Order that was entered in the District Court.

4.      Because of the substantial overlap in parties, witnesses and issues between this Litigation and the Adversary Proceeding, Uber sought permission from this Court to review the Protected Material for potential use in the Adversary Proceeding, subject to the terms and conditions in the Adversary Proceeding Protective Order.  On November 5, 2020 Uber filed the Initial Motion which this Court granted over the objection of plaintiff, Waymo LLC.  The *Order Modifying the Protective Order* provides –

> So, our protective order will hereby be modified to permit Uber to review our record for appropriate use in the bankruptcy proceeding. "[O]nce [a] district court has modified its protective order, it must refrain from embroiling itself in the specific discovery disputes applicable only to the collateral suits." *Id.* at 1133. That is to say, no part of this amendment of the protective order actually gives Uber any right to *introduce* portions of our record into the bankruptcy record. Our entire record will not be relevant there. Waymo and third parties may object in the

bankruptcy proceedings to the use of specific portions of their material. Uber may not introduce any protected material into the bankruptcy record or disclose such material to third parties, experts, or deponents (or anyone present at a deposition) without prior reasonable notice to all affected parties, including third parties, protected by our protective order and an opportunity for them to be heard in the bankruptcy court. And, this modification offers equal access to our record to all parties in the bankruptcy court.

(December 22 Order, pg. 2, lines 5-16).

5.     The December 22 Order, however, did not apply to those third parties who produced Protected Material but who were not on the ECF docket for this case and who therefore did not receive notice of the Initial Motion ("**Remaining Third Parties**").   The Remaining Third Parties have been served with the Supplemental Motion as reflected on the accompanying certificate of service and consist of the following individuals and entities:  Allen & Company LLC, Ariana Huffington, Benchmark Capital Partners VII, L.P., Matt Cohler, Chris Urmson, Collier Law Firm, Cybel LLC, GDK Consulting LLC, David Trujillo, The SMC, Gorilla Circuits, Halunen Law, IX Blue Photonics, Lazard Group LLC, Luminar Technologies, Inc., Nautalis Group, Inc., Quintel LLC, Quanergy Systems, Inc., Radu Raduta, Red Five Security, LLC, Shearman & Sterling LLP, Tal Global, Voyage Auto, Inc.  Therefore, in order to ensure that all third parties who produced Protected Material are subject to the December 22 Order, Uber files this Supplemental Motion as to the Remaining Third Parties.

6.     As the primary defendant in the Litigation, Uber (or its former counsel) already has possession of the complete record from the Litigation and all the materials produced in discovery, including the Protected Materials provided by the Remaining Third Parties.  However, the Protective Order contains restrictions -- relevant to the Remaining Third Parties -- that limit not only the disclosure of the Protected Material, but also limits its use by the parties to the Litigation. Specifically, Section 7 provides that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

prosecuting, defending, or attempting to settle *this litigation*." (Dkt. 60, Protective Order 7.1 (emphasis added)).

7.     Because of the potential relevance to the Adversary Proceeding of the Protected Materials that were produced in the Litigation, Uber seeks to review and use relevant portions of such Protected Material in the Adversary Proceeding, subject to the Adversary Proceeding Protective Order and consistent with the terms of the December 22 Order.  Uber does not expect to use any of the documents marked confidential by the Remaining Third Parties, but rather recognizes that such materials could be intermixed with other parts of the record or referenced, quoted, or described in other documents or testimony.  Accordingly, Uber files this Supplemental Motion, in an abundance of caution, to avoid the risk of inadvertently running afoul of the December 22 Order, and to be sure it has permission to review the full record in this Litigation and potentially use relevant portions in the Adversary Proceeding.

## III.

## ARGUMENT

**A.     The Ninth Circuit Strongly Favors Providing Collateral Litigants Access To Discovery In The Interests of Judicial Economy.**

8.     The Ninth Circuit strongly favors allowing access to discovery materials to meet the needs of parties engaged in collateral litigation.  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131-34 (9th Cir. 2003); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264-66 (9th Cir. 1964).  As the Ninth Circuit has explained, "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery."  *Foltz,* 331 F.3d at 1131.  For that reason, "where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *Id.* at 1132 (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990)); *see also Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) (noting that particularly when the original litigation was of a large magnitude, the extreme

wastefulness that would result from duplication of discovery militates strongly in favor of modifying the protective order); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2044.1 (2d ed. 1994) ("Once entered, protective orders need not remain in place permanently, and they are not immutable in their terms. . . .  Where modification is designed to enable litigants to use information in other cases, modification can serve important efficiency and litigation fairness goals.").

9.     The mere fact that a party or non-party relied upon the protective order in producing documents in the original litigation, without more, is not enough to justify a refusal to modify the protective order to "meet the reasonable needs of other parties in other litigation." *Beckman*, 966 F.2d at 475-76 (rejecting argument that protective order should not be modified because defendant had relied on it in voluntarily providing more disclosure than was required and in entering into consent decree).  Moreover, even where a party opposing the modification of a protective order demonstrates a substantial confidentiality interest, "legitimate interests in privacy can be protected by putting the [collateral litigants] under the same restrictions as those contained in the original protective order." *Id.* at 475 (citing *United Nuclear*, 905 F.2d at 1428); *accord Foltz*, 331 F.3d at 1133-34.  In sum, "[w]here reasonable restrictions . . . will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order . . . should generally be granted." *Foltz*, 331 F.3d at 1132 (citing *Beckman*, 966 F.2d at 475; *Carter*, 332 F.2d at 265-66).

10.     Here, allowing the parties to the Adversary Proceeding to use the Protected Materials provided by the Remaining Third Parties will eliminate any risk that Uber may inadvertently run afoul of the December 22 Order if it reviews or seeks to use any of the Protected Materials which may cite, reference or include information that had been produced by the Remaining Third Parties. If the December 22 Order is amended to apply to the Remaining Third Parties, the Protected Materials produced by them in the Litigation will be governed by the Adversary Proceeding Protective Order which is nearly identical to the one entered in this Litigation.  Therefore, modifying the Protective Order will not prejudice the Remaining Third Parties as their confidentiality interests

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

will continue to be protected.  Accordingly, the Court should extend the reach of the December 22 Order to the Remaining Third Parties.

**B.    The Protected Materials May Be Relevant to the Adversary Proceeding Because of the Substantial Overlap Between the Two Proceedings.**

11.    There is substantial overlap between the Litigation and the Adversary proceeding, not only as to the core facts and events, but also as to parties, witnesses, allegations, and issues.

12.    *First*, while there is not a perfect identity of parties between the two proceedings, all of the parties to the Litigation are effectively (if not technically) involved in the Adversary Proceeding. Uber is a party to both proceedings.  Ottomotto LLC and Otto Trucking LLC were parties to the Litigation, and both have been acquired by Uber or its affiliates and therefore have no confidentiality interests distinct from Uber.  Levandowski was a critical non-party in the Litigation and his conduct was important to this case; he is also the plaintiff in the Adversary Proceeding. Finally, although Waymo is not technically a party to the Adversary Proceeding, its role in the Litigation was as successor-in-interest to Google, who *is* a party to the Adversary Proceeding (as an intervenor in one count).  Google was the actual entity involved in the events underlying the Litigation and the Adversary Proceeding; at the time the events occurred, it was *Google* information that was allegedly misappropriated and Levandowski's obligations to *Google* that were breached by Levandowski.  Waymo succeeded to Google's self-driving car business.  Waymo and Google remain affiliates owned by the same parent company, Alphabet Inc., and are characterized as merely different "business segments" of Alphabet.[2]  Further, Google and Alphabet are both signatories to the settlement agreement resolving the Litigation.  While a complete identity of parties between the matters is not required to justify a modification of the protective order, *see Foltz*, 331 F.3d at 1132; *Beckman*, 966 F.2d at 475, the overlap in parties that exists here strongly suggests that no prejudice will result from allowing the use of the materials in the Adversary Proceeding.

13.    *Second*, there is also considerable overlap in the witnesses relevant to the Litigation and the Adversary Proceeding.  As noted in the Initial Motion, both Uber and Levandowski

---

[2]  Alphabet, Inc. SEC Form 10-Q, June 30, 2020, at p. 31, *available at* https://www.sec.gov/Archives/edgar/data/1652044/000165204420000032/goog-20200630.htm.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

identified 20 witnesses in the Adversary Proceeding who were deposed in the Litigation. (*See*, Initial Motion, Exhibits C and D, Rule 26 Disclosures).  Certainly, the documents produced and testimony given by those witnesses in the Litigation may be relevant to the Adversary Proceeding and their relevancy can only be determined by review of the materials.  In addition, materials that were designated by other parties (who were served with the Initial Motion and subject to the December 22 Order) may also contain references to confidential information that was produced by the Remaining Third Parties, further justifying the need for the December 22 Order to be amended to apply to the Remaining Third Parties.

14.     *Third*, and as more fully set forth in the Initial Motion, many of the core facts and events underlying the Litigation are relevant to the Adversary Proceeding, including for example: (a) allegations of misappropriation of trade secrets or infringement; (b) Levandowski's role in such acts; and (c) the Stroz investigation.

15.     Therefore, to the extent that the Remaining Third Parties produced Protected Material that is relevant to the Adversary Proceeding or were referenced or identified in materials designated by other parties (who were served with the Initial Motion and subject to the Order), Uber should be permitted to review such material for the purpose of the Adversary Proceeding, subject to the terms of the Adversary Proceeding Protective Order and December 22 Order.

**C.     The Relief Sought Will Promote Judicial Economy and Efficiency.**

16.     Because of the substantial overlap between the underlying events, parties, allegations, and issues in the Litigation and those in the Adversary Proceeding, much of the record and the discovery from the Litigation is likely to be relevant to the Adversary Proceeding.  Information produced by the Remaining Third Parties may be intermixed with or referenced in other parts of the record, and parsing through the entire record to confirm that they do not reference information produced by the Remaining Third Parties is not practical.

17.     There is no countervailing concern weighing against the modification of the Protective Order as it relates to the Remaining Third Parties.  Although it is possible that the Remaining Third Parties may prefer that the Court not modify the Protective Order as to them, their confidentiality interests will be fully protected because the Adversary Proceeding Protective Order

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  contains the same protections as the Protective Order entered in this Litigation. Indeed, all non-party

2  information will be subject to the exact same level of protection that it was subject to in the

3  Litigation. (*See* Ex. B Adversary Proceeding Protective Order.)  Under these circumstances,

4  "[w]here reasonable restrictions . . . will continue to protect an affected party's legitimate interests in

5  privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective

6  order . . . should generally be granted."  *Foltz*, 331 F.3d at 1132.   And, as the Ninth Circuit held in

7  *Beckman,* the fact that one or more non-parties (or even parties) produced information in reliance on

8  the protective order is not enough, on its own, to justify refusing to modify the protective order.

9  *Beckman*, 966 F.2d at 475-76.

10     18.    Accordingly, now that each of the Remaining Third Parties have been served with the

11  Supplemental Motion, Uber respectfully requests that the December 22 Order be amended so that it

12  is deemed applicable to the Remaining Third Parties and in so doing, obviate any risk that Uber may

13  inadvertently run afoul of the December 22 Order by reviewing materials that turn out to reference,

14  cite, or include information disclosed by the Remaining Third Parties.

## IV.

## CONCLUSION

17  For the foregoing reasons, Uber respectfully requests that this Court amend the December 22

18  Order so that it is deemed applicable to the Remaining Third Parties and thus permit the parties to

19  the Adversary Proceeding to review the Protected Material provided by the Remaining Third Parties

20  for potential use in the Adversary Proceeding, subject to the Adversary Proceeding Protective Order

21  and the December 22 Order.

22  Respectfully submitted:

23  DATED:  January 14, 2021          PACHULSKI STANG ZIEHL & JONES LLP

24                                   By: */s/ Debra I. Grassgreen*
                                     Debra I. Grassgreen
25                                   Miriam Manning

26                                   and

27                                   JENNER & BLOCK LLP
                                     David J. Bradford
28                                   Terri L. Mascherin
                                     *Counsel for Defendant Uber Technologies, Inc.*

1   Debra I. Grassgreen (CA Bar No. 169978)
    Miriam Manning (CA Bar No. 178584)
2   PACHULSKI STANG ZIEHL & JONES LLP
    150 California Street, 15th Floor
3   San Francisco, CA 94111
    Telephone:    (415) 263-7000
4   Facsimile:    (415) 263-7010
    E-mail:       dgrassgreen@pszjlaw.com
5                 mmanning@pszjlaw.com

6   David J. Bradford (admitted *pro hac vice*)
    Terri L. Mascherin (admitted *pro hac vice*)
7   JENNER & BLOCK LLP
    353 N. Clark St.
8   Chicago, IL 60654
    Telephone: (312) 222-9350
9   E-mail: dbradford@jenner.com
            tmascherin@jenner.com
10
    *Counsel for Uber Technologies, Inc.*
11

12                  **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
13                       **SAN FRANCISCO DIVISION**

14  WAYMO LLC,,                          Case No. 3:17-cv-00939-WHA

15                        Plaintiff,     **DECLARATION OF DEBRA**
                                         **GRASSGREEN IN SUPPORT OF UBER**
16              v.                       **TECHNOLOGIES, INC.'S**
                                         **SUPPLEMENTAL MOTION TO MODIFY**
17  UBER TECHNOLOGIES, INC.,             **THE INTERIM MODEL PROTECTIVE**
    OTTOMOTTO LLC,  OTTO TRUCKING        **ORDER**
18  LLC
                                         **Hearing:**
19                        Defendants.
                                         **Date:  February 18 , 2021**
20                                       **Time:  8:00 AM**
                                         **Place:  Courtroom 12, 19th Floor**
21                                       **Judge:  Hon. William H. Alsup**

22

23          I, Debra Grassgreen, hereby declare as follows:

24          1.      I am co-counsel to defendant Uber Technologies, Inc. ("**Uber**") in the above entitled

25  action and have personal knowledge of the facts contained in this Declaration, which are true and

26  correct, and if sworn as a witness, I could and would testify competently thereto.  I am also

27  bankruptcy counsel to Uber in the bankruptcy case of *Anthony Levandowski*, Case No. 20-30242

28  (HLB) pending in the United States Bankruptcy Court for the Northern District of California

("**Bankruptcy Case**") and in the adversary proceeding pending in the Bankruptcy Case: *Anthony Levandowski v Uber Technologies, Inc.*, N.D. Cal. Bankr., Adv. Pro. No. 20-03050 (HLB) (the "**Adversary Proceeding**").

2.     I submit this declaration in support of *Uber Technologies, Inc.'s Supplemental Motion to Modify the Interim Model Protective Order* ("**Supplemental Motion**").[1]

3.     On March 16, 2017, the Court ordered that the parties to this Litigation be bound by the Interim Model Protective Order (the "**Protective Order**"). Dkt. 60. Paragraph 7 of the Protective Order provides that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case *only for prosecuting, defending, or attempting to settle this litigation.*" (Dkt. 60, Protective Order ¶ 7.1). Numerous parties produced documents and/or provided testimony that were designated as confidential in this Litigation pursuant to the Protective Order and Uber (and/or its former counsel) continues to possess the confidential materials and testimony (the "**Protected Material**").

4.     On July 16, 2020, Anthony Levandowski filed the Adversary Proceeding against Uber. On September 3, 2020, the Bankruptcy Court allowed Google LLC to intervene in the Adversary Proceeding on a limited basis. On September 16, 2020, the Bankruptcy Court entered a protective order in the Adversary Proceeding ("**Adversary Proceeding Protective Order**") that is virtually identical to the Protective Order that was entered in the District Court.

5.     Because of the substantial overlap in parties, witnesses and issues between the litigation in the District Court and the Adversary Proceeding, and to avoid unnecessary duplication of discovery efforts, Uber sought permission from this Court to review the Protected Material for potential use in the Adversary Proceeding, subject to the terms and conditions in the Adversary Proceeding Protective Order. Accordingly, on November 5, 2020 Uber filed a *Motion to Modify Interim Protective Order* ("**Initial Motion**") [Dkt 2726]. The Initial Motion was granted over the objection of plaintiff, Waymo LLC. [Dkt 2727]. A true and correct copy of the Initial Motion and

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Supplemental Motion.

1    supporting declaration of Debra Grassgreen (with Exhibit B attached hereto) is attached hereto as

2    **Exhibit A**.

3            6.      On December 22, 2020, the Court approved the Initial Motion and entered an *Order*

4    *Modifying the Protective Order* ("**December 22 Order**") [Dkt 2733].  A true and correct copy of the

5    Order is attached hereto as **Exhibit B**.

6            7.      The December 22 Order, however, did not apply to those third parties who produced

7    Protected Material but who were not on the ECF docket for this case and who therefore did not

8    receive notice of the Initial Motion ("**Remaining Third Parties**").  The Remaining Third Parties

9    have been served with the Supplemental Motion as reflected on the accompanying certificate of

10   service and consist of the following individuals and entities:  Allen & Company LLC, Ariana

11   Huffington, Benchmark Capital Partners VII, L.P., Matt Cohler, Chris Urmson, Collier Law Firm,

12   Cybel LLC, GDK Consulting LLC, David Trujillo, The SMC, Gorilla Circuits, Halunen Law, IX

13   Blue Photonics, Lazard Group LLC, Luminar Technologies, Inc., Nautalis Group, Inc., Quintel LLC,

14   Quanergy Systems, Inc., Radu Raduta, Red Five Security, LLC, Shearman & Sterling LLP, Tal

15   Global, Voyage Auto, Inc.  Therefore, in order to ensure that all third parties who produced

16   Protected Material are subject to the December 22 Order, Uber files this Supplemental Motion as to

17   the Remaining Third Parties.

18           8.      Uber does not expect to use any of the documents marked "Confidential" by the

19   Remaining Third Parties, but rather files the Supplemental Motion in an abundance of caution in the

20   event that materials designated by other parties (who were served with the Initial Motion and subject

21   to the December 22 Order) may contain references to confidential information produced by the

22   Remaining Third Parties. In an effort to eliminate any risk that Uber may inadvertently run afoul of

23   the Order by reviewing materials that turn out to reference, cite, or include information disclosed by

24   the Remaining Third Parties, modification of the December 22 Order is requested so that it applies

25   equally to all parties who have produced Protected Material in the Litigation.

26           I declare under penalty of perjury that the forgoing is true and correct.  Executed on this 14th

27   day of January 2021.

28                                                   */s/ Debra I. Grassgreen*
                                                     Debra I. Grassgreen

GRASSGREEN DECL ISO MOTION TO MODIFY THE INTERIM MODEL PROTECTIVE ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT A</u>**

(Initial Motion and Grassgreen Declaration)

1  Debra I. Grassgreen (CA Bar No. 169978)
   Miriam Manning (CA Bar No. 178584)
2  PACHULSKI STANG ZIEHL & JONES LLP
   150 California Street, 15th Floor
3  San Francisco, CA 94111
   Telephone:    (415) 263-7000
4  Facsimile:    (415) 263-7010
   E-mail:    dgrassgreen@pszjlaw.com
5         mmanning@pszjlaw.com

6  David J. Bradford (admitted *pro hac vice*)
   Terri L. Mascherin (admitted *pro hac vice*)
7  JENNER & BLOCK LLP
   353 N. Clark St.
8  Chicago, IL 60654
   Telephone: (312) 222-9350
9  E-mail: dbradford@jenner.com
          tmascherin@jenner.com
10
11  *Counsel for Uber Technologies, Inc.*

12              **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
13               **SAN FRANCISCO DIVISION**

14  WAYMO LLC,                          Case No. 3:17-cv-00939-WHA

15                     Plaintiff,       **DEFENDANT UBER TECHNOLOGIES,**
                                        **INC.'S NOTICE OF MOTION AND**
16        v.                            **MOTION TO MODIFY THE INTERIM**
                                        **MODEL PROTECTIVE ORDER**
17  UBER TECHNOLOGIES, INC.,
    OTTOMOTTO LLC,  OTTO TRUCKING        **Hearing:**
18  LLC
                                        **Date:   December 10, 2020**
19                     Defendants.       **Time:  8:00 AM**
                                        **Place:  Courtroom 12, 19th Floor**
20
                                        **Judge:  Honorable William H. Alsup**
21

22  **TO PLAINTIFF WAYMO LLC, ALL OTHER PARTIES, AND THEIR COUNSEL OF**

23  **RECORD:**

24        PLEASE TAKE NOTICE[1] that on December 10, 2020, at 8:00 a.m., or as soon thereafter as

25  this matter may be heard, in the United States District Court for the Northern District of California,

26
_____
27  [1] Pursuant to GENERAL ORDER 72-6, In re: Coronavirus Disease Public Health Emergency, the Court will determine
28  whether to hold a hearing on the Motion or decide the matter on the papers.  If the Court decides to conduct a hearing,
    it will notify the parties prior to the hearing date.

San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, in

Courtroom 12, before the Honorable William H. Alsup, defendant Uber Technologies, Inc. does and

hereby move for an order granting its *Motion to Modify Interim Protective Order* ("**Motion**").  By

way of the Motion, Uber respectfully requests that the Court modify the "use" restrictions of

Paragraph 7 of the Interim Model Protective Order (the "**Protective Order**"), in the above-captioned

matter (the "**Litigation**") including subsections 7.1 through 7.4, to allow the parties to the separate

proceeding of *Anthony Levandowski v Uber Technologies, Inc.*, N.D. Cal. Bankr., Adv. Pro. No. 20-

03050 (HLB) (the "**Adversary Proceeding**") to (a) review the Protected Materials for the purpose of

evaluating whether they are relevant to the Adversary Proceeding, and (b) use (and produce in

discovery) such materials for prosecuting, defending, and attempting to settle the Adversary

Proceeding, pursuant to a substantially identical protective order already entered in the Adversary

Proceeding.  In the alternative, Uber seeks the same relief but limited to a subset of the Protected

Materials identified below.

       The Motion is based on this notice of motion and supporting memorandum of points and

authorities, the supporting declaration of Debra Grassgreen and accompanying exhibits, as well as

other written or oral argument that Uber may present to the Court.

DATED: November 5, 2020              PACHULSKI STANG ZIEHL & JONES LLP

                                    By: */s/ Debra I. Grassgreen*          
                                    Debra I. Grassgreen
                                    Miriam Manning

                                    and

                                    JENNER & BLOCK LLP
                                    David J. Bradford
                                    Terri L. Mascherin

                                    *Counsel for Defendant*
                                    *Uber Technologies, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................1

BACKGROUND ........................................................................................1

ARGUMENT .............................................................................................5

    I.        The Ninth Circuit Strongly Favors Providing Collateral Litigants
              Access to Discovery in the Interests of Judicial Economy. ....................................5

    II.      The Litigation Materials, or At Least A Significant Portion of
              Them, Are Relevant to the Adversary Proceeding Because There
              Is Substantial Overlap Between the Litigation and the Adversary Proceeding. ......7

    III.     The Relief Sought Will Promote Judicial Economy and Efficiency. ......................9

    IV.     In The Alternative, the Parties to the Adversary Proceeding Should
              Be Permitted to Review and Use Specified Testimony and Record Materials......11

CONCLUSION..........................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992)..................................................................5, 6, 7, 10

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003)................................................................5, 6, 7, 10

*Olympic Refining Co. v. Carter*,
   332 F.2d 260 (9th Cir. 1964)............................................................................5, 6

*United Nuclear Corp. v. Cranford Ins. Co.*,
   905 F.2d 1424 (10th Cir. 1990)........................................................................5, 6

*Wilk v. Am. Med. Ass'n*,
   635 F.2d 1295 (7th Cir. 1980)...............................................................................5

**OTHER AUTHORITIES**

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure §
   2044.1 (2d ed. 1994) ...............................................................................................5

**PRELIMINARY STATEMENT**

Through the relief sought in this Motion, Uber seeks to avoid the wasteful duplicative discovery that would result if it were forced to conduct the same discovery in the Adversary Proceeding that has already been conducted in this Litigation.  If this Court modifies Paragraph 7 of the Protective Order to permit use of materials designated Confidential in this Litigation for purposes of the Adversary Proceeding, the use of the Protected Materials will be governed by a protective order entered in the Adversary Proceeding that is almost identical to the one entered in this Litigation.  The protective order entered in the Adversary Proceeding contains the same categories of confidentiality and the same restrictions on the use and disclosure of the confidential materials.  Thus, for example, any materials marked Attorneys Eyes Only in this Litigation will continue to be treated as Attorneys Eyes Only in the Adversary Proceeding, subject to the very same restrictions on disclosure—but for the purpose of the Adversary Proceeding.  This will fully protect the confidentiality interests of any parties and non-party witnesses who testified or produced discovery in this Litigation.   In support of this Motion, Uber states as follows:

**BACKGROUND**

1.      This Court is familiar with the scope of this Litigation, which concerned allegations that Anthony Levandowski ("**Levandowski**") misappropriated trade secrets from Google and took them to Google's competitor, Uber.  The Litigation involved Levandowski's departure from Google, Uber's purchasing Ottomotto LLC ("**Otto**") in which Levandowski had a substantial interest, Uber's efforts to ensure that Levandowski did not bring any of Google's confidential information (including Waymo's confidential information) to Otto or Uber, and allegations that Google's and Waymo's confidential information nevertheless was used by Levandowski or others acting under his direction at Otto.  The parties settled the Litigation on February 8, 2018, through a settlement agreement signed by Uber, Otto, Google, Waymo (the business unit that now runs Google's self-driving car business), and Alphabet, Inc. ("**Alphabet**") (the parent company of both Google and Waymo).

2.      As this Court is aware, Google also sued Levandowski in private arbitration.  There, Google alleged (among other things) that Levandowski was disloyal while still employed at Google, and that he violated contractual, statutory, and other obligations to Google by competing and

soliciting Google employees.  Google sought and ultimately obtained disgorgement of all the compensation it had paid to Levandowski during the period when Levandowski was engaging in unlawful conduct and breaching his obligations to Google.  On December 23, 2019, the arbitration panel issued a corrected final award, *nunc pro tunc* as of December 6, 2019, finding that Levandowski had been disloyal and dishonest in his dealings with Google by concealing his competitive activities, and that he had obtained his $127 million Chauffeur Bonus only by concealing those competitive activities.  It ordered him to disgorge an approximately $127 million bonus, together with other compensation, interest, attorneys' fees, and costs.  On March 4, 2020, the California Superior Court confirmed the arbitration award as a judgment against Levandowski in the amount of approximately $179 million.

3.      On the same day the California Superior Court entered the judgment against Levandowski (March 4, 2020), Levandowski filed for bankruptcy in the United States Bankruptcy Court for the Northern District of California.  (*In re Anthony Scott Levandowski*, No. 20-30242 (HLB) (Bankr. N.D. Cal.).)  On April 1, 2020, Levandowski asserted claims against Uber for indemnification of the $179 million judgment and also sought damages for an alleged breach of contract.  On April 13, 2020, Uber answered those claims and sought, among other things, a declaration that the 2016 Indemnification Agreement that Levandowski relied on had been rescinded in full.  On July 6, 2020, Uber filed a proof of claim in Levandowski's bankruptcy proceeding, seeking, among other things, damages for Levandowski's fraudulently inducing Uber to enter into the Indemnification Agreement.  Ultimately, Uber and Levandowski agreed to resolve all of the disputes between them in the Adversary Proceeding.  Thereafter, Google was permitted to intervene with respect to one of Levandowski's adversary claims, which seeks a declaratory judgment that Uber may not rescind the Indemnification Agreement.

4.      On September 16, 2020, the Bankruptcy Court entered a protective order in the Adversary Proceeding ("**Adversary Proceeding Protective Order**") that is virtually identical to the Protective Order that was entered in this Litigation.  If the Court grants the Motion, Uber's use of the materials from this Litigation will be governed by the Adversary Proceeding Protective Order.

5.     Many of the same events underlying the Litigation are now at issue in the Adversary Proceeding because Uber is defending against Levandowski's indemnification claim based in part upon Levandowski's misconduct that was at issue in this Litigation.  (*See* Ex. A, *Uber's Answer and Counterclaims to First Amended Complaint in Adversary Proceeding*.)  As discussed below, scores of witnesses who testified in this case have been identified in the Rule 26 disclosures in the Adversary Proceeding.

6.     As the primary defendant in the Litigation, Uber already has possession of the complete record from the Litigation and all the materials produced in discovery.  However, the Protective Order entered in this Litigation on March 16, 2017, which is the same as this Court's Model Order, contains restrictions that limit not only the disclosure of the Protected Material, but also its use by the parties to the Litigation.  Specifically, Section 7 provides that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case *only for prosecuting, defending, or attempting to settle this litigation*." (Dkt. 60, Protective Order 7.1 (emphasis added).)

7.     Because of the indisputable relevance to the Adversary Proceeding of portions of the record and discovery in this Litigation, Uber seeks to review the record and discovery in this case that is already in Uber's possession and to use and produce relevant portions of it in the Adversary Proceeding.

8.     Uber sought relief on this issue from Judge Blumenstiel, who is presiding over the Adversary Proceeding.  Specifically, Uber sought the enforcement of two subpoenas that it had served on Waymo, requesting the production of materials from this Litigation for use in the Adversary Proceeding.  Even though all these materials are already in Uber's possession, those subpoenas were sent to Waymo (at Waymo's request) based upon Waymo's representation that it would facilitate a possible agreement on such production if Uber made the request via subpoena. Waymo and Levandowski opposed Uber's requested relief before Judge Blumenstiel, as did Google. Judge Blumenstiel ruled that Uber's request was more properly presented to this Court, as the Judge who entered the Protective Order in the Litigation.

9.     Judge Blumenstiel wrote in her Order that although Waymo, Google, and Levandowski acknowledge that there is factual overlap between the Adversary Complaint and this Litigation, the entire record in this case cannot be relevant to the Adversary Proceeding.  (*See* Ex. E, Judge Blumenstiel's Order).  Uber submits that the optimal way for Uber to ascertain what material from this case is relevant to the Adversary Proceeding is for Uber to be permitted to review the entire record in this Litigation in order to make that assessment.  As a party, Uber already has the record from this Litigation in its possession, and permitting Uber's counsel to review it will not impose any burden on any other party or person.  In the alternative, Uber requests permission to review that portion of the record that Uber believes is most likely to be relevant: specifically, the testimony and document productions from witnesses identified in the Rule 26 disclosures in the Adversary Proceeding together with certain expert reports and depositions discussed below.

10.     To date, Levandowski has served document requests and two interrogatories in the Adversary Proceeding.  (*See* Ex. F, Levandowski First Req. Produc., First & Second Interrog. Uber).  The document requests require Uber to produce, among other things, materials that it may use or rely upon in the Adversary Proceeding.  The interrogatories request Uber to identify all facts and evidence that support its claim that Levandowski committed fraud or Post-Signing Specified Bad Acts.  Uber expects that testimony and evidence in this Litigation is responsive to both the interrogatories and the document requests, but Uber is currently prohibited from reviewing substantial parts of the record in this case in order to identify that evidence.  Although Waymo has consented to Uber reviewing a very small subset of materials from the Litigation relating to four expert witnesses, that permission does not encompass substantial responsive material in which Waymo or others have asserted confidentiality interests.  Moreover, once Uber has the ability to review the Waymo Litigation materials to determine what is responsive, Uber will need Levandowski and Google to have permission to review the materials as well, so that it may produce the materials in response to their discovery requests.

**ARGUMENT**

**I.    The Ninth Circuit Strongly Favors Providing Collateral Litigants Access To Discovery In The Interests of Judicial Economy.**

11.    The Ninth Circuit strongly favors allowing access to discovery materials to meet the needs of parties engaged in collateral litigation.  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131-34 (9th Cir. 2003); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264-66 (9th Cir. 1964).  As the Ninth Circuit has explained, "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery."  *Foltz,* 331 F.3d at 1131.  For that reason, "where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification."  *Id.* at 1132 (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990)); *see also Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) (noting that particularly when the original litigation was of a large magnitude, the extreme wastefulness that would result from duplication of discovery militates strongly in favor of modifying the protective order); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2044.1 (2d ed. 1994) ("Once entered, protective orders need not remain in place permanently, and they are not immutable in their terms. . . .  Where modification is designed to enable litigants to use information in other cases, modification can serve important efficiency and litigation fairness goals.").

12.    The mere fact that a party or non-party relied upon the protective order in producing documents in the original litigation, without more, is not enough to justify a refusal to modify the protective order to "meet the reasonable needs of other parties in other litigation."  *Beckman*, 966 F.2d at 475-76 (rejecting argument that protective order should not be modified because defendant had relied on it in voluntarily providing more disclosure than was required and in entering into consent decree).  Moreover, even where a party opposing the modification of a protective order demonstrates a substantial confidentiality interest, "legitimate interests in privacy can be protected

by putting the [collateral litigants] under the same restrictions as those contained in the original protective order." *Id.* at 475(citing *United Nuclear*, 905 F.2d at 1428); *accord Foltz*, 331 F.3d at 1133-34. In sum, "[w]here reasonable restrictions . . . will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order . . . should generally be granted." *Foltz*, 331 F.3d at 1132 (citing *Beckman*, 966 F.2d at 475; *Carter*, 332 F.2d at 265-66).

13. Here, allowing the parties to the Adversary Proceeding to use the Protected Materials from the Litigation will avoid the extremely wasteful duplication of discovery. As discussed further in Part II, there is a substantial overlap between the two proceedings in terms of the core nucleus of events, the parties, and the witnesses; therefore, much of the discovery taken in the Litigation will be relevant to the Adversary Proceeding. Furthermore, modifying the Protective Order will not prejudice any party because the Adversary Proceeding is already governed by a protective order equally as protective as the one entered in this Litigation. Accordingly, the Court should modify the Protective Order to allow the use of the Protected Material in the Adversary Proceeding. *See Foltz*, 331 F.3d at 1132; *Beckman*, 966 F.2d at 475.

14. At present, out of all the Litigation materials, Uber is permitted to review only (1) the materials that bear no confidentiality designations by anyone other than Uber, and (2) a very small set of materials (expert reports for four expert witnesses) that Waymo has consented to let Uber review on an "attorneys' eyes only" basis. Waymo has refused to agree to further access by Uber's attorneys in the Adversary Proceeding. Thus, even as to the testimony of and documents produced on behalf of *Uber's own current and former employees and expert witnesses*, Uber is in the odd predicament where its current outside counsel are not permitted to review un-redacted versions, for the reason that the testimony touched upon information designated as confidential by Waymo or Google. Uber should be permitted to review these materials subject to the restrictions of the protective order entered in the Adversary Proceeding, which affords the same level of protection as did the Protective Order in the Litigation. Furthermore, the other parties to the Adversary Proceeding should be granted permission to review and use these materials as well, to facilitate the most expeditious resolution of the Adversary Proceeding.

## II. The Litigation Materials, or At Least A Significant Portion of Them, Are Relevant to the Adversary Proceeding Because There Is Substantial Overlap Between the Litigation and the Adversary Proceeding.

15.    There is substantial overlap between the Litigation and the Adversary proceeding, not only as to the core facts and events, but also as to parties, witnesses, allegations, and issues.

16.    *First*, while there is not a perfect identity of parties between the two proceedings, all of the parties to the Litigation are effectively (if not technically) involved in the Adversary Proceeding. Uber, of course, is a party to both proceedings.  Ottomotto LLC and Otto Trucking LLC were parties to the Litigation, and both have been acquired by Uber or its affiliates, so they have no confidentiality interests distinct from Uber's.  Levandowski was a critical non-party in the Litigation and his conduct was important to this case; he is also a party to the Adversary Proceeding.  Finally, although Waymo is not technically a party to the Adversary Proceeding, its role in the Litigation was as successor-in-interest to Google, who *is* a party to the Adversary Proceeding (as an intervenor in one count).  Google was the actual entity involved in the events underlying the Litigation and the Adversary Proceeding; at the time the events occurred, it was *Google* information that was allegedly misappropriated and Levandowski's obligations to *Google* that were breached.  Waymo succeeded to Google's self-driving car business.  Waymo and Google remain affiliates owned by the same parent company, Alphabet Inc., and are characterized as merely different "business segments" of Alphabet.[2]  Further, Google and Alphabet are both signatories to the settlement agreement resolving the Litigation.  While a complete identity of parties between the matters is not required to justify a modification of the protective order, *see Foltz*, 331 F.3d at 1132; *Beckman*, 966 F.2d at 475, the overlap in parties that exists here strongly suggests that no prejudice will result from allowing the use of the materials in the Adversary Proceeding.

17.    *Second*, there is considerable overlap in the witnesses relevant to the Litigation and the Adversary Proceeding.  In its Rule 26 initial disclosures, Uber identified *thirty-five witnesses*

---

[2]  Alphabet, Inc. SEC Form 10-Q, June 30, 2020, at p. 31, *available at* https://www.sec.gov/Archives/edgar/data/1652044/000165204420000032/goog-20200630.htm.

who were deposed and/or testified in this Litigation.[3]  (*See* Ex. C, Uber Rule 26 Disclosures).  In his disclosures, Levandowski listed *twenty witnesses* who were deposed and/or testified in this Litigation, a number of whom were not on Uber's list.[4]  (*See* Ex. D Levandowski Rule 26 Disclosures.)  Certainly, the documents produced and testimony given by those witnesses in the Litigation may be relevant to the Adversary Proceeding and their relevancy can only be determined by review of the materials.

18.     *Third*, many of the core facts and events underlying the Litigation are relevant to the Adversary Proceeding.  By way of example only, one of the major topics in the Litigation was the forensic review performed by Stroz Friedberg LLC ("**Stroz**"), before Uber acquired Levandowski's company, for the express purpose of preventing any Google confidential information from making its way to Uber's systems.  In the Adversary Proceeding, at least three of Uber's counterclaims and affirmative defenses to indemnification (rescission, "Excluded Claims," and "Post-Signing Specified Bad Acts") will be informed by (a) whether Levandowski provided accurate and complete information to Stroz during its review regarding his trade secret misappropriation and secret control of a competing venture, and (b) whether Levandowski possessed or retained access to Google confidential information after Uber signed the deal to acquire his company (on April 11, 2016).  (*See* Ex. A at pp. 63-68, Defenses 4, 5, 7.)  Thus, the evidence and discovery related to the Stroz review is relevant to the Adversary Proceeding.  As another example, the Litigation focused on whether Uber, through the conduct of Levandowski and other employees, had misappropriated any Google or Waymo trade secret or infringed upon any Google or Waymo patent.  In the Adversary Proceeding, one of Uber's defenses is that the Indemnification Agreement is nullified by Levandowski's inducing, directing, knowingly permitting, or failing to disclose acts that would constitute the

---

[3]  Those witnesses are: Barton Sweeney, Andrew; Bentley, Adam; Boehmke, Scott; Burnette, Don; Chew, Hanley; Cooper, Alex; Droz, Pierre Yves; Faulkner, Kevin; Friedberg, Eric; Fulginiti Genow, Mary; Gassend, Blaise; Haslim, James; Kalanick, Travis; Lenius, Sam; Levandowski, Anthony; Linaval, Asheem; Maugeri, Melanie; McCann, Will; Meyhofer, Eric; Morgan, Rhian; Morriss, Zachary; Palomar, Matthew; Pennecot, Gaetan; Poetzscher, Cameron; Qi, Nina; Raduta, Radu; Ratner, Daniel; Ron, Lior; Schwarz, Brent; Sebern, Colin; Stojanovski, Ognen; Suhr, Justin; Tate, Eric Akira; Ulrich, Drew; Wachter, Luke.

[4]  Those witnesses are: Bares, John; Chew, Hanley; Drummond, David; Friedberg, Eric; Fulginiti, Mary; Holden, Jeff; Kalanick, Travis; Krafcik, John; Levandowski, Anthony; Maugeri, Melanie; McClendon, Brian; Padilla, Angela; Poetzscher, Cameron; Qi, Nina; Ron, Lior; Schwarz, Brent; Stojanovski, Ognen; Suhr, Justin; Tate, Eric; Xing, Michael.

transfer or use of Google confidential information, trade secrets, or intellectual property. Thus, Litigation materials related to the alleged misappropriation of trade secrets or infringement of patents, and Levandowski's role in the same, are relevant to the Adversary Proceeding. As another example, allegations in the Litigation encompassed the topic of whether Levandowski or those acting under his direction solicited other Google employees to leave and join Uber. Likewise, one of Uber's defenses in the Adversary Proceeding hinges upon whether Levandowski participated in, facilitated, or knew of any solicitation of Google employees after April 11, 2016. (*Id.* at pp. 63–65, Defense 4.) Thus, the discovery in the Litigation about Levandowski's role in any such solicitation will be relevant to the Adversary Proceeding. As another example, the discovery in the Litigation encompassed events related to felonious activity on the part of Levandowski—including but not limited to felony trade secret theft. Likewise, one of Uber's defenses in the Adversary Proceeding is that California law prohibits indemnification for felonious conduct. (*Id.* at pp.62–63, Defense 3.) Thus, any discovery in the Litigation that relates to Levandowski's felonious activity is relevant to the Adversary Proceeding.

19.     *Fourth*, another of Uber's key defenses to indemnification in the Adversary Proceeding, the Post-Signing Bad Act defense, requires showing that bad acts committed by Levandowski were the "subject of" a claim by a former employer of Levandowski—regardless whether that claim was asserted directly against Levandowski. (*See id.* at pp. 63–65, Defense 4) (asserting that Indemnification Agreement is nullified by "Post-Signing Specified Bad Acts" that was or were "the subject of a Former Employer Claim."). For these purposes, Waymo qualifies as a Former Employer, including because the complaint in this case alleges that Levandowski was a manager of Waymo (*see, e.g.*, Am. Compl. ¶¶ 4, 41), and this Litigation qualifies as a Former Employer Claim. Thus, the record in the Litigation is relevant not only in terms of showing whether Levandowski in fact committed a Post-Signing Specified Bad Act (as defined in the Indemnification Agreement), but also whether that bad act was the subject of a claim in this case. (*Id.*)

## III.    The Relief Sought Will Promote Judicial Economy and Efficiency.

20.     Because of the substantial overlap between the underlying events, parties, allegations, and issues in the Litigation and those in the Adversary Proceeding, much of the record and the

discovery from the Litigation is likely to be relevant to the Adversary Proceeding.  A substantial duplication of effort would result if Uber were forced to re-conduct all of the discovery anew; this would defy principles of judicial economy and efficiency and would result in needless waste.  The wastefulness would be particularly egregious given that Uber *already has the relevant materials in its possession*, and no additional production would be necessary for Uber to make use of those materials in the Adversary Proceeding.

21.     There is no countervailing concern weighing against the modification of the Protective Order because all the parties to the Litigation have a direct or indirect interest in the Adversary Proceeding.  And although it is possible that non-parties who produced information or testified in the Litigation may prefer that the Court not modify the Protective Order, those non-parties' confidentiality interests will be fully protected because an equally strong protective order has been entered in the Adversary Proceeding.  Indeed, all non-party information will be subject to the exact same level of protection that it was subject to in the Litigation.  (*See* Ex. B Adversary Proceeding Protective Order.)  Under these circumstances, "[w]here reasonable restrictions . . . will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order . . . should generally be granted." *Foltz*, 331 F.3d at 1132.  And, as the Ninth Circuit held in *Beckman,* the fact that one or more non-parties (or even parties) produced information in reliance on the protective order is not enough, on its own, to justify refusing to modify the protective order.  *Beckman*, 966 F.2d at 475-76.

22.     Accordingly, Uber respectfully requests that the court modify Section 7 (including subsections 7.1 through 7.4) of the Protective Order in this Litigation to allow the parties to the Adversary Proceeding to use the Protected Material for prosecuting, defending, and attempting to settle the Adversary Proceeding.

23.     Uber recognizes that certain material produced in this Litigation may not be relevant to the Adversary Proceeding.  However, the optimal way for Uber to be certain it has identified all relevant materials is to review the entirety of the record in this case.  Without at least conducting keyword searches in the testimony of each witness, it is impossible for Uber to know what topics their testimony covered.

**IV.     In the Alternative, The Parties to the Adversary Proceeding Should Be Permitted to Review and Use Specified Testimony and Record Materials.**

24.     At minimum, and in the alternative, Uber and the other parties to the Adversary Proceeding should be permitted to review the testimony and documents that Uber believes—based on the minimal information available to it at present—are most likely to be relevant to the Adversary Proceeding.  That includes:

        a.     The testimony of, and documents produced by, all of the witnesses who were identified in the Rule 26 disclosures in the Adversary Proceeding (*See generally,* Ex. C and D) by either Uber or Levandowski.  In those disclosures, Uber identified 35 witnesses who were deposed and/or testified in this Litigation, and Mr. Levandowski identified 20 such witnesses.  Thirteen of these witnesses overlapped.  The descriptions of these witnesses' expected testimony in the Adversary Proceeding reflects that these witnesses will testify about some of the same issues they likely testified about in this Litigation, including alleged solicitation of employees, alleged theft of trade secrets, and/or the business transactions related to Google's, Waymo's, Otto's and/or Uber's development of technology for autonomous vehicles.  Clearly some of the testimony of these witnesses in this Litigation is likely to be relevant, but that testimony cannot be precisely identified without reviewing the transcripts of their testimony.

        b.     The testimony, reports, and related materials of the following expert witnesses retained by Waymo in the Litigation: Andrew Crain, Paul French, Lambertus Hesselink, Jonathan How, and Martin Rinard.  These experts are likely to have testified on matters relevant to the Adversary Proceeding because, on information and belief, Crain and French were forensic experts, Hesselink was a technology expert, and How and Rinard were trade secret experts.

        c.     The testimony of, and documents produced by or on behalf of, then-Google-employees Gary Brown, Tim Willis, Sean Noyce, Jai Krishna, Dimitri Dolgov, and Sasha Zbrozek, as well as former Google/Waymo employees Bryan Salesky, Sebastian Thrun, and Chris Urmson.  These witnesses are likely to have information relevant to the Adversary

Proceeding because, with the exception of Zbrozek, each was identified by either Waymo or Google as having information related to the alleged misappropriation of trade secrets by Levandowski or other employees who left Google and came to Uber, and/or the development of those trade secrets. (*See* Dkt. 797-2, 797-3.) Zbrozek is likely to have relevant information about Google's investigation into what information Levandowski took from Google. (*See, e.g.*, Dkt. 2658, Waymo opening statement.)

d.     The testimony of, and documents produced by or on behalf of, John Gardner, Stefanie Olsen, and Rudy Kim. These witnesses are likely to have information relevant to the Adversary Proceeding because each was identified by Waymo as having information related to the alleged misappropriation of trade secrets by Levandowski or other employees. (*See* Dkt. 797-3.)

e.     The complete and un-redacted copy of the final report of J Christian Gerdes, dated 11/4/2019, and any and all materials and party submissions preceding or relating to that report. These materials are likely to be relevant to the Adversary Proceeding because, upon information and belief, the findings of that report reflect and relate to a Post-Signing Specified Bad Act that nullifies the Indemnification Agreement.

f.     The documents and data produced by non-party Stroz Friedberg LLC. These materials are almost certainly relevant to the Adversary Proceeding because they bear on whether Levandowski committed one or more Post-Signing Specified Bad Acts, and whether Levandowski made full and accurate disclosures prior to entering into the Indemnification Agreement.

g.     The testimony, reports, and related materials of the experts retained by *Uber* in the Litigation, notwithstanding the fact that they may refer to information or documents designated confidential by Waymo or another person/entity. Uber has possession of these materials, but is in the odd predicament where its current outside counsel are not permitted to review them because they may reference documents or information that have been designated confidential by other parties or non-parties. Uber's current outside counsel should be permitted to review these materials subject to the restrictions of the protective order entered

in the Adversary Proceeding, which affords the same level of protection as did the Protective Order in the Litigation.

        h.     The testimony of, and documents produced by or on behalf of, Uber's current and former employees. Again, Uber is in the odd predicament where its current outside counsel are not permitted to review un-redacted versions of some of Uber's own employees' testimony, and documents because they may reference documents or information that have been designated confidential by other parties or non-parties. Uber's current outside counsel should be permitted to review these materials subject to the restrictions of the protective order entered in the Adversary Proceeding, which affords the same level of protection as did the Protective Order in the Litigation.

## **CONCLUSION**

For the foregoing reasons, Uber respectfully requests that this Court authorize the modification of paragraph 7 of the Protective Order to permit the parties to the Adversary Proceeding to review the record in this case for the limited purpose of determining its relevance to the Adversary Proceeding and to use and produce relevant parts of the record subject to the Adversary Proceeding Protective Order. All confidentiality designations made in this Litigation will apply as though they had been made in the Adversary Proceeding, unless the Designating Party revises the designation or the designation is challenged pursuant to the terms of the Adversary Proceeding Protective Order. In the alternative, Uber requests that the Court authorize the modification of the Protective Order to permit the parties to the Adversary Proceeding to review and use, and produce as appropriate, the materials listed in Paragraph 24 above, subject to the Adversary Proceeding Protective Order.

Respectfully submitted:

DATED: November 5, 2020

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*
Debra I. Grassgreen
Miriam Manning
and
JENNER & BLOCK LLP
David J. Bradford
Terri L. Mascherin
*Counsel for Defendant Uber Technologies, Inc.*

1  Debra I. Grassgreen (CA Bar No. 169978)
   Miriam Manning (CA Bar No. 178584)
2  PACHULSKI STANG ZIEHL & JONES LLP
   150 California Street, 15th Floor
3  San Francisco, CA 94111
   Telephone:    (415) 263-7000
4  Facsimile:    (415) 263-7010
   E-mail:       dgrassgreen@pszjlaw.com
5                mmanning@pszjlaw.com

6  David J. Bradford (admitted *pro hac vice*)
   Terri L. Mascherin (admitted *pro hac vice*)
7  JENNER & BLOCK LLP
   353 N. Clark St.
8  Chicago, IL 60654
   Telephone: (312) 222-9350
9  E-mail: dbradford@jenner.com
           tmascherin@jenner.com
10
   *Counsel for Uber Technologies, Inc.*
11

12                      UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
13                         SAN FRANCISCO DIVISION

14 WAYMO LLC,,                          Case No. 3:17-cv-00939-WHA

15                      Plaintiff,      **DECLARATION OF DEBRA
                                        GRASSGREEN IN SUPPORT OF
16         v.                           DEFENDANT'S MOTION TO MODIFY
                                        THE INTERIM MODEL PROTECTIVE
17 UBER TECHNOLOGIES, INC.,             ORDER**
   OTTOMOTTO LLC,  OTTO TRUCKING
18 LLC                                  **Hearing:**

19                      Defendants.     **Date:   December 10, 2020
                                        Time:  8:00 AM
20                                      Place:  Courtroom 12, 19th Floor**

21                                      **Judge:  Honorable William H. Alsup**

22

23         I, Debra Grassgreen, hereby declare as follows:

24         1.      I am co-counsel to defendant Uber Technologies, Inc. ("**Uber**") in the above entitled

25 action and have personal knowledge of the facts contained in this Declaration, which are true and

26 correct, and if sworn as a witness, I could and would testify competently thereto.  I am also

27 bankruptcy counsel to Uber in the bankruptcy case of *Anthony Levandowski*, Case No. 20-30242

28 (HLB) pending in the United States Bankruptcy Court for the Northern District of California (the

"**Bankruptcy Case**") and in the adversary proceeding pending in the Bankruptcy Case: *Anthony Levandowski v Uber Technologies, Inc.*, N.D. Cal. Bankr., Adv. Pro. No. 20-03050 (HLB) (the "**Adversary Proceeding**").

2.      I submit this declaration in support of the *Defendant's Motion to Modify the Interim Model Protective Order.*[1]

3.      On March 16, 2017, the Court ordered that plaintiff Waymo LLC ("**Waymo**") and Defendants be bound by the Interim Model Protective Order (the "**Protective Order**").  Dkt. 60.

4.      On February 8, 2018, the Litigation was settled through a settlement agreement signed by Defendants, Google, Waymo (the business unit that now runs Google's self-driving car business), and Alphabet, Inc. (the parent company of both Google and Waymo).

5.      Paragraph 7 of the Protective Order provides that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case *only for prosecuting, defending, or attempting to settle this litigation.*"  (Dkt. 50, Protective Order ¶ 7.1).  By way of the Motion, Uber requests permission to modify paragraph 7 so as to allow the parties to the Adversary Proceeding to (a) review the Protected Materials for the purpose of evaluating whether they are relevant to the Adversary Proceeding, and (b) use (and produce in discovery) such materials for prosecuting, defending, and attempting to settle the Adversary Proceeding, pursuant to a substantially identical protective order already entered in the Adversary Proceeding.

**The Bankruptcy Proceeding**

6.      On March 4, 2020, Anthony Scott Levandowski ("**Levandowski**") filed a chapter 11 petition in the United States Bankruptcy Court for the Northern District of California (Case No. 20-30242) on the same day that the California Superior Court issued a judgment confirming an arbitration award against Mr. Levandowski and in favor of Google, in the amount of approximately $179 million.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

7.     On July 6, 2020, Uber filed a proof of claim in the Bankruptcy Case seeking, among other things, damages for Mr. Levandowski's fraudulent inducement of Uber to enter into a certain Indemnification Agreement, dated April 11, 2016.

8.     On July 16, 2020, Mr. Levandowski commenced the Adversary Proceeding by filing a complaint against Uber seeking declaratory relief, specific performance, damages, and an objection to Uber's proof of claim.  On September 3, 2020, the Bankruptcy Court allowed Google LLC to intervene on a single claim in the Adversary Proceeding.

9.     By way of the Adversary Proceeding, Mr. Levandowski seeks, among other things, contractual indemnification from Uber for the approximate $179 million dollar arbitration award and judgment.  Uber seeks to defend the indemnification claim, in part, by demonstrating (1) that Mr. Levandowski committed certain wrongful acts that constitute an express contractual ground for nullifying the Indemnification Agreement (referred to in the contract as "Post-Signing Specified Bad Acts"), (2) that Mr. Levandowski fraudulently induced Uber into entering into the Indemnification Agreement by concealing and lying about his long-running breaches of duties to Google and his theft of trade secrets, and (3) that the award is not indemnifiable under California law.

10.     Attached hereto as **Exhibit A** is a true and correct copy of Uber's Answer and Counterclaims to First Amended Complaint in Adversary Proceeding.

11.     Many of the same facts and events underlying the Litigation are now at issue in the Adversary Proceeding due to  the fact that Mr. Levandowski's misconduct that was at issue in this Litigation bears on Uber's defenses to Mr. Levandowski's indemnification claim and some of Uber's counterclaims.

12.     On September 16, 2020, the Bankruptcy Court entered a protective order in the Adversary Proceeding that is virtually identical to the Protective Order that was entered in this case. Attached hereto as **Exhibit B** is a true and correct copy of the Protective Order entered in the Adversary Proceeding ("**Adversary Proceeding Protective Order**").  If the Court grants the Motion, the parties' use of the materials from this Litigation will be governed by the Adversary Proceeding Protective Order.

13.     There is considerable overlap between the witnesses who testified and/or produced documents in the Litigation and those who were identified as witnesses in the Adversary Proceeding. Uber identified 35 witnesses in its Rule 26 Disclosures who also testified in this Litigation. Attached hereto as **Exhibit C** is a true and correct copy of Uber's Rule 26 Disclosures.

14.     Levandowski also identified additional witnesses who had testified in the Litigation on his Rule 26 Disclosures. Attached hereto as **Exhibit D** is a true and correct copy of Levandowski's Rule 26 Disclosures.

15.     Uber contends that some of the documents that were produced in this case may be relevant to Uber's claims and defenses asserted in the Adversary Proceeding. Uber therefore issued two subpoenas to Waymo in connection with the Adversary Proceeding requesting that Uber be permitted to review the material that was already in its possession for use in the Adversary Proceeding. While Waymo agreed that Uber may review a very small subset of documents from this case, it objected to Uber's review of substantial portions of the record because of its own confidentiality interests, its position that not all of the materials are relevant to the Adversary Proceeding, and its desire to avoid providing notice to third parties as required by the protective order in this Litigation once a subpoena has been issued.

16.     To resolve the dispute, Uber presented a letter brief to the Bankruptcy Court on October 7, 2020, asking the court to enforce the subpoenas against Waymo.

17.     Waymo, Google and Mr. Levandowski each opposed Uber's position and submitted their own letter briefs to the Bankruptcy Court. Waymo argued (among other things) that the better path—rather than having the bankruptcy court enforce the subpoenas—was for Uber to seek to modify the Protective Order in this Court.

18.     On October 23, 2020, the Bankruptcy Court issued a *Second Order Re Discovery Dispute* in which the court noted that the issue of whether the Protective Order should be modified is "one more properly presented to the judge who entered the Protective Order." (Second Order, Pg. 2; lines 24-26). Attached hereto as **Exhibit E** is a true and correct copy of the Bankruptcy Court order.

19.     To date, Mr. Levandowski has served document requests and two interrogatories in the Adversary Proceeding on Uber. The document requests require Uber to produce, among other

things, materials that it may use or rely upon in the Adversary Proceeding. The interrogatories request Uber to identify all facts and evidence that support its claim that Mr. Levandowski committed fraud or Post-Signing Specified Bad Acts. Attached hereto as **Exhibit F** is a true and correct copy of the Document Request and First and Second Sets of Interrogatories propounded on Uber.

20. Uber expects that testimony and evidence in this Litigation is responsive to both the interrogatories and the document requests.

21. In light of the Bankruptcy Court's order and in an effort to respond to the discovery propounded on Uber and prepare for trial, Uber seeks permission from this Court to modify paragraph 7 of the Protective Order to allow the parties to the Adversary Proceeding to review the record and discovery from this case and to use such material in the Adversary Proceeding.

I declare under penalty of perjury that the forgoing is true and correct. Executed on this 5th day of November 2020.

*/s/ Debra I. Grassgreen*
Debra I. Grassgreen

---

1

## EXHIBIT B

(Adversary Proceeding Protective Order)

**Entered on Docket**
**September 16, 2020**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Debra I. Grassgreen (CA Bar No. 169978)

**Signed and Filed: September 16, 2020**

2  Miriam Manning (CA Bar No. 178584)
   PACHULSKI STANG ZIEHL & JONES I

3  150 California Street, 15th Floor
   San Francisco, CA 94111

4  Telephone:    (415) 263-7000
   Facsimile:    (415) 263-7010

5  E-mail:       dgrassgreen@pszjlaw.com
                 mmanning@pszjlaw.com

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

6

7  David J. Bradford (*pro hac vice*)
   Catherine Steege (*pro hac vice*)

8  Terri L. Mascherin (*pro hac vice*)
   JENNER & BLOCK LLP

9  353 N. Clark St.
   Chicago, IL 60654

10 Telephone: (312) 222-9350

11 E-mail: dbradford@jenner.com
           csteege@jenner.com

12         tmscherin@jenner.com

13 *Counsel for Uber Technologies, Inc.*

14

15     **UNITED STATES BANKRUPTCY COURT FOR THE**
       **NORTHERN DISTRICT OF CALIFORNIA**

16     **SAN FRANCISCO DIVISION**

17 In re:                                    Bankruptcy Case No. 20-30242 (HLB)

18 ANTHONY SCOTT LEVANDOWSKI,                 Chapter 11

19                                            Hon. Hannah L. Blumenstiel
          Debtor.

20

21 ANTHONY SCOTT LEVANDOWSKI,                 Adv. Pro. No. 20-03050

22        Plaintiff,

23     v.                                     **PROTECTIVE ORDER**

24 UBER TECHNOLOGIES, INC.,

25        Defendant.

26

27

28

1
PROTECTIVE ORDER
Case No. 20-03050

1.    PURPOSES AND LIMITATIONS

        Disclosure and discovery activity in this Adversary Proceeding (the "action") are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.  This Order does not confer blanket protections on all disclosures or responses to discovery and the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. As set forth in Section 14.4 below, this Protective Order does not entitle the Parties to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2.    DEFINITIONS

        2.1.    Challenging Party:  a Party or Non-Party that challenges the designation of information or items under this Order.

        2.2.    "CONFIDENTIAL" Information or Items:  information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

        2.3.    Counsel (without qualifier):  Outside Counsel of Record and House Counsel (as well as their support staff).

        2.4.    Designated House Counsel:  House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter.

        2.5.    Designating Party:  a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

        2.6.    Disclosure or Discovery Material:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony,

2

transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7.    Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.8.    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9.    "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items:  extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.10.    House Counsel:  attorneys who are employees of a party to this action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11.    Non-Party:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.12.    Outside Counsel of Record:  attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.13.    Party:  any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

3

2.14.   Producing Party:  a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.15.   Professional Vendors:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16.   Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.17.   Receiving Party:  a Party that receives Disclosure or Discovery Material from a Producing Party.

3.   SCOPE

The protections conferred by this Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Order do not cover the following information:  (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  Any use of Protected Material at trial shall be governed by a separate agreement or order.

4.   DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and

4

defenses in this action, with or without prejudice; and (2) final judgment herein after the completion

and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the

time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.       DESIGNATING PROTECTED MATERIAL

5.1.       Exercise of Restraint and Care in Designating Material for Protection.  Each Party or

Non-Party that designates information or items for protection under this Order must take care to

limit any such designation to specific material that qualifies under the appropriate standards.  To the

extent it is practical to do so, the Designating Party must designate for protection only those parts of

material, documents, items, or oral or written communications that qualify – so that other portions of

the material, documents, items, or communications for which protection is not warranted are not

swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited.  Designations that are shown

to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily

encumber or retard the case development process or to impose unnecessary expenses and burdens on

other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for

protection do not qualify for protection at all or do not qualify for the level of protection initially

asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the

mistaken designation.

5.2.       Manner and Timing of Designations.  Except as otherwise provided in this Order (see,

e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or

Discovery Material that qualifies for protection under this Order must be clearly so designated

before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)       for information in documentary form (e.g., paper or electronic documents, but

excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party

affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY,"

5

or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE") to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(b)    for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to 10 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 10 days shall be covered by the provisions of this Protective Order. Alternatively, a Designating Party may specify, at the deposition or up to 10

6

days afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Parties shall give the other parties notice if they reasonably expect a deposition, hearing, or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings.  The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party.  The Designating Party shall inform the court reporter of these requirements.  Any transcript that is prepared before the expiration of a 10-day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed.  After the expiration of that period, the transcript shall be treated only as actually designated.

(c)    for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3.    Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material.  Upon timely correction of a

7

designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1.    Timing of Challenges.  Any Party or Non-Party may challenge a designation of confidentiality at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2.    Meet and Confer.  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order.  The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 5 days of the date of service of notice.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3.    Judicial Intervention.  If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Bankruptcy Local Rule 7007-1 (and in compliance with Civil Local Rule 79-5, if applicable) within 10 days of the initial notice of challenge or within 7 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier.  Each such motion must be

8

accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 10 days (or 7 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.    <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

7.1.    <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

9

7.2.    Disclosure of "CONFIDENTIAL" Information or Items.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b)    the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)    Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)    the court and its personnel;

(e)    court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)    during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order.

(g)    the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.3.    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items.  Unless otherwise ordered

10

by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a)      the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b)      Designated House Counsel of the Receiving Party (1) who has no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed;[1]

(c)      Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed;

(d)      the court and its personnel;

(e)      court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(f)      the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.4.   <u>Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Designated House Counsel or Experts</u>.

(a)(1) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Designated House Counsel any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

[1] This Order contemplates that Designated House Counsel shall not have access to any information or items designated "HIGHLY CONFIDENTIAL – SOURCE CODE."

11

pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated House Counsel and the city and state of his or her residence and (2) describes the Designated House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision-making.

(a)(2) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to paragraph 7.3(c) first must make a written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years,[2] and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

(b)     A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Designated House Counsel or Expert unless, within 7 days of delivering the request, the Party receives a written objection from the Designating Party.  Any such objection must set forth in detail the grounds on which it is based.

---

[2] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

12

(c)    A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within five days of the written objection.  If no agreement is reached, the Party seeking to make the disclosure to Designated House Counsel or the Expert may file a motion as provided in Bankruptcy Local Rule 7007-1(and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court to do so.  Any such motion must describe the circumstances with specificity, set forth in detail the reasons why disclosure to Designated House Counsel or the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk.  In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding, the Party opposing disclosure to Designated House Counsel or the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated House Counsel or Expert.

8. <u>PROSECUTION BAR</u>

Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office").  For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.[3]  To avoid any doubt, "prosecution" as used in this paragraph does not

---

[3] Prosecution includes, for example, original prosecution, reissue and reexamination proceedings.

13

include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* reexamination).  This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual and shall end two (2) years after final termination of this action.

9.      SOURCE CODE

        (a)     To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL – SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.

        (b)     Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, including the Prosecution Bar set forth in Paragraph 8, and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 7.3 and 7.4, with the exception of Designated House Counsel.

        (c)     Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon location.  The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

        (d)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purpose of

14

reviewing the source code other than electronically as set forth in paragraph (c) in the first instance. The Producing Party shall provide all such source code in paper form, including bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE." The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

(e)     The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form.  The Receiving Party shall maintain all paper copies of any printed portions of the source code in a secured, locked area.  The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format.  The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case.  Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

10.     <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE," that Party must:

(a)     promptly notify in writing the Designating Party.  Such notification shall include a copy of the subpoena or court order;

(b)     promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification shall include a copy of this Protective Order; and

15

1         (c)     cooperate with respect to all reasonable procedures sought to be pursued by

2 the Designating Party whose Protected Material may be affected.[4]  If the Designating Party timely

3 seeks a protective order, the Party served with the subpoena or court order shall not produce any

4 information designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL –

5 ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a

6 determination by the court from which the subpoena or order issued, unless the Party has obtained

7 the Designating Party's permission.  The Designating Party shall bear the burden and expense of

8 seeking protection in that court of its confidential material – and nothing in these provisions should

9 be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful

10 directive from another court.

11   11.    <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS</u>

12              <u>LITIGATION</u>

13          (a)     The terms of this Order are applicable to information produced by a Non-

14 Party in this action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL –

15 ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." Such

16 information produced by Non-Parties in connection with this litigation is protected by the remedies

17 and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a

18 Non-Party from seeking additional protections.

19          (b)     In the event that a Party is required, by a valid discovery request, to produce a

20 Non-Party's confidential information in its possession, and the Party is subject to an agreement with

21 the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

22              1.     promptly notify in writing the Requesting Party and the Non-Party that

23 some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

24

25

26

27 _____
[4] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to
28 afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from
which the subpoena or order issued.

16

2.      promptly provide the Non-Party with a copy of the Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3.      make the information requested available for inspection by the Non-Party.

(c)      If the Non-Party fails to object or seek a protective order from this court within 7 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.[5] Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

12.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

13.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).  This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production

---

[5] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non- Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

without prior privilege review.  Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in a stipulated protective order submitted to the court.

14.   MISCELLANEOUS

    14.1.   Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

    14.2.   Right to Assert Other Objections.  No Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

    14.3.   Export Control.  Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere.  The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

    14.4.   Filing Protected Material.  Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material.  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5.  Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.  Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law.  If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(e) is denied by the court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule 79-5(e)(2) unless otherwise instructed by the court.

18

15.      FINAL DISPOSITION

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.  Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the United States Bankruptcy Court for the Northern District of California on _____ [date] in the case of _____ **[insert formal name of the case and the number and initials assigned to it by the court]**.  I agree to comply with and to be bound by all the terms of this Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States Bankruptcy Court for the Northern District of California for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____
                            [printed name]

Signature: _____
                       [signature]

***END OF ORDER***

20

COURT SERVICE LIST

1

**<u>EXHIBIT B</u>**

(District Court *Order Modifying the Protective Order*, dated December 22, 2020)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WAYMO LLC,

        Plaintiff,

    v.

UBER TECHNOLOGIES, INC., et al.,

        Defendants.

No.  C 17-00939 WHA

**ORDER MODIFYING
PROTECTIVE ORDER**

Waymo sued Uber.  We generated an extensive record, and the protective order has restricted use of that material to "this litigation."  Yet our underlying facts spawned several other disputes, including the ongoing bankruptcy proceeding of Anthony Levandowski, who has worked for both parties.  Uber seeks to amend our protective order so that it may review and perhaps use material from our record in the bankruptcy proceeding.  To the following extent, it may do so.

Our court of appeals encourages avoiding wasteful duplicative discovery by using a record created in one case to aid resolution of another.  "Where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy," a protective order should be amended to permit the collateral litigants' access.  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131–32 (9th Cir. 2003).  No one doubts that the bankruptcy court's protective order will suffice.

To prevent, however, a collateral litigant "from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding," we condition such modification of the protective order on a showing that our record "is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order."  Uber points to a substantial overlap in parties, witnesses, and issues between the proceedings, which Waymo does not dispute (Dkt. No. 2726 at 7–9).  We

also consider the extent to which parties' reliance on the protective order induced their contribution to our record. Though where, as here, the protective order in question offered blanket protection, such reliance interests typically do not override the interests in amendment. Regardless, no party points to particular instances of reliance. *See id.* at 1132–33.

So, our protective order will hereby be modified to permit Uber to review our record for appropriate use in the bankruptcy proceeding. "[O]nce [a] district court has modified its protective order, it must refrain from embroiling itself in the specific discovery disputes applicable only to the collateral suits." *Id.* at 1133. That is to say, no part of this amendment of the protective order actually gives Uber any right to *introduce* portions of our record into the bankruptcy record. Our entire record will not be relevant there. Waymo and third parties may object in the bankruptcy proceedings to the use of specific portions of their material. Uber may not introduce any protected material into the bankruptcy record or disclose such material to third parties, experts, or deponents (or anyone present at a deposition) without prior reasonable notice to all affected parties, including third parties, protected by our protective order and an opportunity for them to be heard in the bankruptcy court. And, this modification offers equal access to our record to all parties in the bankruptcy court.

During oral argument, it came out that Uber gave notice of this motion only to those third parties who appeared on our ECF docket, not to those third parties who produced documents or testimony without appearing on the ECF docket, yet might have done so in reliance on our protective order. This order does not apply to evidence provided by such parties. To the foregoing extent, then, the motion is **GRANTED**.

**IT IS SO ORDERED.**

Dated: December 22, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

2

1  Debra I. Grassgreen (CA Bar No. 169978)
   Miriam Manning (CA Bar No. 178584)
2  **PACHULSKI STANG ZIEHL & JONES LLP**
   150 California Street, 15th Floor
3  San Francisco, CA 94111
   Telephone:    (415) 263-7000
4  Facsimile:    (415) 263-7010
   E-mail:       dgrassgreen@pszjlaw.com
5                mmanning@pszjlaw.com

6  David J. Bradford (admitted *pro hac vice*)
   Terri L. Mascherin (admitted *pro hac vice*)
7  **JENNER & BLOCK LLP**
   353 N. Clark St.
8  Chicago, IL 60654
   Telephone: (312) 222-9350
9  E-mail: dbradford@jenner.com
           tmascherin@jenner.com
10
   *Counsel for Uber Technologies, Inc.*
11

12            **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
13               **SAN FRANCISCO DIVISION**

14 WAYMO LLC,                          Case No. 3:17-cv-00939-WHA

15                   Plaintiff,        **CERTIFICATE OF SERVICE**

16          v.

17 UBER TECHNOLOGIES, INC.,
   OTTOMOTTO LLC,  OTTO TRUCKING
18 LLC

19                   Defendants.

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  STATE OF CALIFORNIA             )
                                   )
2  CITY OF SAN FRANCISCO           )

3        I, Hung Phan, am employed in the city and county of San Francisco, State of California.
   I am over the age of 18 and not a party to the within action; my business address is 150
4  California Street, 15th Floor, San Francisco, California 94111-4500.

5        On January 14, 2021, I caused to be served the following documents in the manner
   stated below:
6
7      •  **DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION
          AND SUPPLEMENTAL MOTION TO MODIFY INTERIM PROTECTIVE
8         ORDER**

9      •  **DECLARATION OF DEBRA GRASSGREEN IN SUPPORT OF UBER
          TECHNOLOGIES, INC.'S SUPPLEMENTAL MOTION TO MODIFY THE
10        INTERIM MODEL PROTECTIVE ORDER**

11     •  **[PROPOSED] ORDER APPROVING UBER TECHNOLOGIES, INC.'S
          SUPPLEMENTAL MOTION TO MODIFY INTERIM PROTECTIVE
12        ORDER**

13 | ☑ | (BY MAIL)  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.   Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |
14
15
16
17 |   | ***SEE ATTACHED SERVICE LIST*** |
18 | ☑ | (BY EMAIL) On **January 14, 2021,** I caused to be served the above-described documents by email to the parties indicated on the service list below at the indicated email address. |
19
   |   | ***SEE ATTACHED SERVICE LIST*** |
20

21       I declare under penalty of perjury, under the laws of the State of California and the
   United States of America that the foregoing is true and correct.
22       Executed on January 14, 2021 at San Francisco, California.

23                                        ___/s/ Hung Phan___
24                                        *Legal* Assistant

25
26
27
28

CERTIFICATE OF SERVICE
2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**SERVED VIA EMAIL**

| Attorneys for Google LLC | Attorneys for Anthony S. Levandowski |
|---|---|
| Thomas B. Walper<br>John W. Berry<br>Alexander S. Gorin<br>MUNGER, TOLLES & OLSON LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA  90071<br>Email: thomas.walper@mto.com<br>      john.berry@mto.com<br>      alex.gorin@mto.com<br><br>Rachael E. Meny<br>Thomas E. Gorman<br>Reid Mullen<br>KEKER, VAN NEST & PETERS LLC<br>633 Battery Street<br>San Francisco, CA  90071<br>Email: rmeny@keker.com<br>     tgorman@keker.com<br>     rmullen@keker.com | Tobias S. Keller<br>Dara L. Silveira<br>KELLER BENVENUTTI KIM LLP<br>650 California Street. Ste. 1900<br>San Francisco. CA  94108<br>Email: tkeller@kbkllp.com<br>      dsilveira@kbkllp.com<br><br>Brett M. Schuman<br>Rachel M. Walsh<br>Hong-An Vu<br>GOODWIN PROCTER LLP<br>Three Embarcadero Center<br>San Francisco, CA  94111<br>Email: bschuman@goodwinlaw.com<br>     rwalsh@goodwinlaw.com<br>     hvu@goodwinlaw.com |
| **Counsel for Tyto Group** | **Counsel for Peak Trust** |
| Adrian Sawyer<br>SAWYER & LABAR LLP<br>201 Mission Street, Suite 2240<br>San Francisco, CA  94105<br>Email: sawyer@sawyerlabar.com | Diane F. Vallentine<br>JERMAIN, DUNNAGAN & OWENS, P.C.<br>3000 A Street, Suite 300<br>Anchorage, Alaska  99503<br>Email: dvallentine@jdolaw.com |

**SERVED VIA US MAIL**

| | | |
|---|---|---|
| ALLEN & COMPANY LLC<br>Attn:  Officer, Director, Managing Member<br>711 Fifth Avenue, 4th Floor<br>New York, NY  10022 | ALLEN & COMPANY LLC<br>Attn: Noah Snyder<br>650 Alabama Street, Suite 101<br>San Francisco, CA  94110 | ALLEN & COMPANY LLC<br>c/o Pillsbury Winthrop Shaw Pittman LLP<br>Brian Beckerman<br>David Keyko<br>31W 52 Street, 29th Floor<br>New York, NY  10019 |
| ARIANA HUFFINGTON<br>c/o Willkie Farr & Gallagher LLP<br>Joseph T. Baio<br>787 Seventh Avenue<br>New York, NY  10019-60989 | BENCHMARK CAPITAL PARTNERS<br>VII, L.P., MATT COHLER<br>c/o Paul Weiss Rifkind Wharton &<br>Garrison<br>Martin Flumenbaum, Esq.<br>1285 Avenue of the Americas<br>New York, NY  10019-6064 | BENCHMARK CAPITAL PARTNERS<br>VII, L.P.<br>Matt Cohler, Managing Member<br>2480 Sand Hill Road, Suite 200<br>Menlo Park, CA  94025 |
| CHRIS URMSON<br>c/o Singer Cashman LLP<br>Benjamin Singer<br>601 Montgomery Street, Suite 1950<br>San Francisco, CA 94111 | COLLIER LAW FIRM<br>Joshua Socks<br>Dustin Collier<br>1 Sansome Street, Suite 3500<br>San Francisco, CA  94104 | CYBEL LLC<br>Dr. Jean-Marc Delavaux, President<br>1195 Pennsylvania Avenue<br>Bethlehem, PA  18018 |

| | | |
|---|---|---|
| GDK CONSULTING LLC<br>Gary Kesner, President<br>1355 San Carlos Avenue, Suite B<br>San Carlos, CA 94070 | GDK CONSULTING LLC/DAVID<br>TRUJILLO<br>c/o McMahon Serepca LLP<br>Peter McMahon<br>985 Industrial Rd., Unit 201<br>San Carlos, CA 94070 | DAVID TRUJILLO/THE SMC<br>c/o Susman Godfrey L.L.P.<br>Cory Buland<br>1301 Avenue of the Americas, 32nd Fl.<br>New York, NY 10019 |
| GORILLA CIRCUITS<br>Attn: Officer, Managing or Gen. Agent<br>Karl Rauch, VP Sales<br>1445 Oakland Road<br>San Jose, CA 95112 | GORILLA CIRCUITS<br>c/o Haynes Boone<br>Roger Royse<br>525 University Avenue, Suite 400<br>Palo Alto, CA 94301 | HALUNEN LAW<br>IDS Center<br>80 South 8th Street #1650<br>Minneapolis, MN 55402 |
| HALUNEN LAW<br>c/o Anthony Ostlund Baer & Louwagie<br>Joseph Anthony<br>90 South 7th Street<br>3600 Wells Fargo Center<br>Minneapolis, MN 55402 | IX BLUE PHOTONICS<br>c/o Adler Pollock & Sheehan P.C.<br>Brian Birke<br>175 Federal Street<br>Boston, MA 02110 | LAZARD GROUP LLC<br>Attn: Officer, Dir, Managing Member<br>4 Embarcadero Center, 24th Floor<br>San Francisco, CA 94111 |
| LAZARD GROUP LLC<br>c/o CT Corporation System<br>818 West Seventh Street, Suite 930<br>Los Angeles, CA 90017 | LAZARD GROUP LLC<br>c/o Baker Botts L.L.P.<br>Jonathan Shapiro<br>101 California St<br>San Francisco, CA 94111 | LUMINAR TECHNOLOGIES, INC.<br>Attn: Officer, Dir or Man Agent<br>1891 Page Mill Rd<br>Palo Alto, CA 94304 |
| LUMINAR TECHNOLOGIES, INC.<br>Attn: Officer, Dir or Man Agent<br>12601 Research Parkway<br>Orlando, FL 32826 | LUMINAR TECHNOLOGIES, INC.<br>c/o Knobbe Martens<br>Douglas Muehlhauser<br>2040 Main Street, 14th Floor<br>Irvine, CA 92614 | NAUTALIS GROUP, INC.<br>Randall Miller, President<br>1433 Webster Street, Suite 200<br>Oakland, CA 94612 |
| NAUTALIS GROUP, INC.<br>c/o RAD Build, LLC<br>Randall Miller<br>1433 Webster Street, Suite 200<br>Oakland, CA 94612 | NAUTALIS GROUP, INC.<br>c/o Ginn & Crosby, LLP<br>David W. Ginn<br>1485 Treat Boulevard #200<br>Walnut Creek, CA 94597 | QUINTEL LLC<br>David P. Pigott Jr<br>546 3rd Avenue<br>San Francisco, CA 94118 |
| QUINTEL LLC<br>c/o Mills & Henry<br>Austin Henry<br>200 Benedum Trees Building<br>223 Fourth Avenue<br>Pittsburgh, PA 15222 | QUANERGY SYSTEMS, INC.<br>Patrick Archambault<br>433 Lakeside Drive<br>Sunnyvale, CA 94085 | QUANERGY SYSTEMS, INC.<br>c/o Holland Law<br>Ethan Jacobs<br>220 Montgomery Street, Suite 800<br>San Francisco, CA 94104 |
| RADU RADUTA<br>c/o Swanson & McNamara LLP<br>Mary McNamara, Esq./Ed Sawnson, Esq.<br>Britt Evangelist, Esq.<br>300 Montgomery Street, Suite 1100<br>San Francisco, CA 94104 | RED FIVE SECURITY, LLC<br>R. Kris Coleman, President & CEO<br>228 Hamilton Avenue, 3rd Floor<br>Palo Alto, CA 94301 | RED FIVE SECURITY, LLC<br>Attn: Officer, Director, Managing Member<br>1420 Beverly Road, Suite 270<br>McLean, VA 22101 |
| RED FIVE SECURITY, LLC<br>c/o Parker Partners PLC<br>Christina L. Parker<br>P.O. Box 544<br>McLean, VA 22101 | SHEARMAN & STERLING LLP<br>Attn: Managing Partner<br>535 Mission Street, 25th Floor<br>San Francisco, CA 94105 | SHEARMAN & STERLING LLP<br>c/o Susman Godfrey, LLP<br>Attn: Corey Buland<br>1301 Avenue of the Americas, 32nd Fl<br>New York, NY 10019-6023 |
| TAL GLOBAL<br>Jonathan Tal<br>1999 S. Bascom Ave, Suite 925<br>Campbell, CA 95008 | VOYAGE AUTO, INC.<br>Oliver Cameron<br>1271 De Altura Commons<br>San Jose, CA 95126 | VOYAGE AUTO, INC.<br>Oliver Cameron<br>844 E Charleston Road<br>Palo Alto, CA 94043 |

| | | |
|---|---|---|
| VOYAGE AUTO, INC.<br>c/o Greenberg Traurig<br>Ian C. Ballon/Karen Rosenthal<br>1900 University Avenue, 5th Floor<br>East Palo Alto, CA  94303 | | |